# United States District Court
## Northern District of Illinois – CM/ECF LIVE, Ver 4.2 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:08–cv–03697
### *Internal Use Only*

National Rifle Association of America, Inc. et al v. The City of Chicago et al

Assigned to: Honorable Milton I. Shadur

Case in other court:  08–04241.

10–03957

Cause: 28:2201 Constitutionality of State Statute(s)

Date Filed: 06/27/2008
Date Terminated: 12/18/2008
Jury Demand: Defendant
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/27/2008 | 1 | 6 | COMPLAINT filed by National Rifle Association of America, Inc., Kathryn Tyler, Anthony Burton, Van F Welton, Brett Benson. (jmp, ) (Entered: 06/30/2008) |
| 06/27/2008 | 2 | 17 | CIVIL Cover Sheet.(jmp, ) (Entered: 06/30/2008) |
| 07/08/2008 | 5 | 18 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752000000002916808. (Attachments: # 1 Exhibit Stephen P. Halbrook court admissions information)(Halbrook, Stephen) (Entered: 07/08/2008) |
| 07/25/2008 | 6 | 21 | EXECUTIVE COMMITTEE ORDER: In accordance with the provisions of Local Rule 40.4, Finding of Relatedness, case reassigned to the Honorable Milton I. Shadur for all further proceedings. Signed by Executive Committee on 7/25/2008. (jmp, ) (Entered: 07/28/2008) |
| 07/29/2008 | 7 | 22 | MINUTE entry before the Honorable Milton I. Shadur: Stephen P. Halbrooks motion for leave to appear pro hac vice 5 is granted. Mailed notice (jmp, ). (Entered: 07/29/2008) |
| 08/18/2008 | 9 | 23 | MINUTE entry before the Honorable Milton I. Shadur:Status hearing held on 8/18/2008. City of Chicago's Answer is due on or before September 2, 2008. Status hearing set for 9/10/2008 at 09:00 AM.Mailed notice (srn, ) (Entered: 08/18/2008) |
| 09/02/2008 | 11 | 24 | ANSWER to Complaint with Jury Demand by The City of Chicago(Aguiar, William) (Entered: 09/02/2008) |
| 09/02/2008 | 12 | 37 | NOTICE by The City of Chicago re answer to complaint 11 (Aguiar, William) (Entered: 09/02/2008) |
| 10/22/2008 | 16 | 39 | MOTION by Plaintiffs National Rifle Association of America, Inc., Kathryn Tyler, Anthony Burton, Van F Welton, Brett Benson to set a briefing schedule *Rule 16 Motion for Briefing and Disposition of Second Amendment* |

| | | | |
|---|---|---|---|
| | | | *Incorporation Issue and to Stay Discovery Pending Same* (Attachments: #1 Exhibit Defendant's First Document Request, #2 Exhibit Defendant's First Interrogatories, #3 Exhibit Letter to Defense Counsel of 10.17.08)(Kolodziej, Stephen) (Entered: 10/22/2008) |
| 10/23/2008 | 18 | 62 | MOTION by Plaintiffs National Rifle Association of America, Inc., Kathryn Tyler, Anthony Burton, Van F Welton, Brett Benson to strike *Motion to Strike Jury Demand* (Attachments: #1 Exhibit Oak Park Motion to Strike Jury Demand)(Kolodziej, Stephen) (Entered: 10/23/2008) |
| 10/28/2008 | 20 | 74 | MINUTE entry before the Honorable Milton I. Shadur:Motion to set a briefing schedule 16 is granted. Parties' submissions are due on or before December 1, 2008. Motion to strike jury demand 18 is entered and continued to November 10, 2008 at 9:15 a.m. Motion hearing held on 10/28/2008 Status hearing set for 12/4/2008 at 09:00 AM.Mailed notice (srn, ) (Entered: 10/29/2008) |
| 11/07/2008 | 21 | 75 | MINUTE entry before the Honorable Milton I. Shadur:Motion to strike jury demand 18 is denied as moot. By agreement of the parties the jury demand is withdrawn. The November 10, 2008 status date is stricken. Status hearing set for 12/4/2008 at 09:00 AM.Mailed notice (srn, ) (Entered: 11/07/2008) |
| 12/01/2008 | 22 | 76 | MEMORANDUM by National Rifle Association of America, Inc., Kathryn Tyler, Anthony Burton, Van F Welton, Brett Benson *Memorandum in Support of Claim that the Second Amendment is Incorporated into the Fourteenth Amendment so as to be Applicable to States and Localities* (Kolodziej, Stephen) (Entered: 12/01/2008) |
| 12/01/2008 | 23 | 91 | NOTICE by National Rifle Association of America, Inc., Kathryn Tyler, Anthony Burton, Van F Welton, Brett Benson re memorandum, 22 *Notice of Filing* (Kolodziej, Stephen) (Entered: 12/01/2008) |
| 12/03/2008 | 24 | 93 | MINUTE entry before the Honorable Milton I. Shadur:The December 4, 2008 status date is stricken. This Court will set a new status date after the completion of the trial that it is currently conducting.Mailed notice (srn, ) (Entered: 12/03/2008) |
| 12/04/2008 | 25 | 94 | MINUTE entry before the Honorable Milton I. Shadur:Enter Memorandum Opinion and Order. Status hearing set for 12/9/2008 at 08:45 AM.Mailed notice (srn, ) (Entered: 12/04/2008) |
| 12/04/2008 | 26 | 95 | MEMORANDUM Opinion and Order Signed by the Honorable Milton I. Shadur on 12/4/2008:Mailed notice(srn, ) (Entered: 12/04/2008) |
| 12/09/2008 | 27 | 101 | |

| | | | |
|---|---|---|---|
| | | | MINUTE entry before the Honorable Milton I. Shadur:Status hearing held on 12/9/2008. Counsel is to submit a draft order for consideration. Status hearing set for 12/18/2008 at 08:45 AM.Mailed notice (srn, ) (Entered: 12/09/2008) |
| 12/09/2008 | 28 | 102 | MOTION by Plaintiff Anthony BurtonDrop Party Plaintiff *Rule 21 Motion to Drop Party Plaintiff* (Kolodziej, Stephen) (Entered: 12/09/2008) |
| 12/18/2008 | 30 | 104 | STIPULATION of Dismissal *Stipulation of Dismissal of Count III of the Complaint With Prejudice* (Kolodziej, Stephen) (Entered: 12/18/2008) |
| 12/18/2008 | 31 | 106 | NOTICE by National Rifle Association of America, Inc., Kathryn Tyler, Van F Welton, Brett Benson re stipulation of dismissal 30 *Notice of Filing Stipulation of Dismissal of Count III of the Complaint With Prejudice* (Kolodziej, Stephen) (Entered: 12/18/2008) |
| 12/18/2008 | 32 | 108 | NOTICE of appeal by National Rifle Association of America, Inc., Kathryn Tyler, Van F Welton, Brett Benson regarding orders 31 Filing fee $ 455, receipt number 07520000000003368579. (Kolodziej, Stephen) (Entered: 12/18/2008) |
| 12/18/2008 | 33 | 110 | Amended Notice of Appeal by National Rifle Association of America, Inc., Kathryn Tyler, Van F Welton, Brett Benson (Kolodziej, Stephen) (Entered: 12/18/2008) |
| 12/18/2008 | 37 | 112 | MINUTE entry before the Honorable Milton I. Shadur: Status hearing held. Plaintiff's motion to drop party plaintiff is granted [28–1] Anthony Burton is dropped as a party plaintiff. Pursuant to the Stipulation of Dismissal filed 12/1/2008, Count III of the Complaint is hereby dismissed with prejudice. Enter Order. This Court hereby grants the oral motion of the City of Chicago pursuant o Fed. R. Civ. P. 12 for judgment on the pleadings on Counts I and II of the Complaint. Judgment is hereby entered in favor of the City of Chicago and against Plaintiffs on Counts I and II of the complaint. Anthony Burton terminated., Civil case terminated. [For further detail see separate order(s).] Mailed notice (jmp, ) (Entered: 12/22/2008) |
| 12/18/2008 | 38 | 113 | ENTER ORDER Signed by the Honorable Milton I. Shadur on 12/18/2008: Mailed notice (jmp, ) (Entered: 12/22/2008) |
| 12/18/2008 | 39 | 114 | ENTERED JUDGMENT (jmp, ) (Entered: 12/22/2008) |
| 06/24/2009 | 53 | 115 | BILL OF COSTS Taxed in favor of City of Chicago in amount of $ 190.80 and against National Rifle Association of America, Inc., et al. (jmp, ) (Entered: 06/24/2009) |
| 12/31/2009 | 56 | 118 | RECORD for certiorari transmittal form from the Seventh Circuit.(tc, ) (Entered: 01/04/2010) |

| 09/16/2010 | <u>60</u> | 120 | BILL of Costs from the USCA Appeal nos. 08–4241, 08–4243, 08–4244. (psm, ) (Entered: 09/17/2010) |
|---|---|---|---|
| 09/16/2010 | <u>61</u> | 123 | BILL of Costs from the USCA Appeal nos. 08–4241, 08–4243, 08–4244. (psm, ) (Entered: 09/17/2010) |
| 09/16/2010 | <u>62</u> | 126 | BILL of Costs from the USCA Appeal nos. 08–4241, 08–4243, 08–4244. (psm, ) (Entered: 09/17/2010) |
| 10/12/2010 | <u>63</u> | 129 | MINUTE entry before Honorable Milton I. Shadur:This action is hereby dismissed as moot.Mailed notice (srn, ) (Entered: 10/12/2010) |
| 10/21/2010 | <u>64</u> | 130 | MOTION by Plaintiffs Brett Benson, National Rifle Association of America, Inc., Kathryn Tyler, Van F Welton for attorney fees *Motion for Entry of Schedule for Motion for Attorneys' Fees* (Kolodziej, Stephen) (Entered: 10/21/2010) |
| 10/26/2010 | <u>66</u> | 132 | MINUTE entry before Honorable Milton I. Shadur:Motion for attorney fees <u>64</u> is entered and continued. Simultaneous cross filings and supporting memorandum as to prevailing party status are to be filed on or before 11/23/10. Motion hearing held on 10/26/2010. Status hearing set for 11/29/2010 at 08:45 AM.Mailed notice (srn, ) (Entered: 10/26/2010) |
| 11/10/2010 | <u>67</u> | 133 | MOTION by Defendant The City of Chicago for extension of time *to file cross briefs regarding prevailing party status* (Hirsch, Rebecca) (Entered: 11/10/2010) |
| 11/12/2010 | <u>69</u> | 136 | MINUTE entry before Honorable Milton I. Shadur:Motion for extension of time to file briefs regarding prevailing party status to and including 12/15/10 <u>67</u> is granted. Status hearing set for 12/21/2010 at 09:00 AM. The 11/29 status date is vacated.Mailed notice (srn, ) (Entered: 11/12/2010) |
| 12/15/2010 | <u>70</u> | 137 | MEMORANDUM by The City of Chicago *Contesting Plaintiffs' Status As Prevailing Parties Entitled To Attorneys' Fees* (Attachments: # <u>1</u> Exhibit Exhibits A through D)(Hirsch, Rebecca) (Entered: 12/15/2010) |
| 12/15/2010 | <u>71</u> | 167 | MEMORANDUM motion for attorney fees <u>64</u> by Brett Benson, National Rifle Association of America, Inc., Kathryn Tyler, Van F Welton *Memorandum In Support of Plaintiffs' "Prevailing Party" Status in Relation to Their Motion for Attorneys' Fees* (Attachments: # <u>1</u> Appendix Reports of Proceedings)(Kolodziej, Stephen) (Entered: 12/15/2010) |
| 12/22/2010 | <u>74</u> | 221 | MINUTE entry before Honorable Milton I. Shadur: Enter Memorandum Opinion and Order. Accordingly NRA's motions for Section 1988 fee awards are denied. <u>64</u> Mailed notice (srn, ) (Entered: 12/22/2010) |
| 12/22/2010 | <u>75</u> | 222 | MEMORANDUM Opinion and Order Signed by the Honorable Milton I. Shadur on 12/22/2010:Mailed notice(srn, ) (Entered: 12/22/2010) |

| | | | |
|---|---|---|---|
| 12/27/2010 | <u>76</u> | 235 | NOTICE of appeal by Brett Benson, National Rifle Association of America, Inc., Kathryn Tyler, Van F Welton regarding orders <u>74</u> , <u>75</u> Filing fee $ 455, receipt number 0752–5553200. (Attachments: #<u>1</u> Exhibit Memorandum Opinion and Order 12/22/2010)(Kolodziej, Stephen) (Entered: 12/27/2010) |
| 01/07/2011 | <u>82</u> | 252 | MINUTE entry before Honorable Milton I. Shadur:Enter Supplement to Memorandum Opinions and Orders. And that,given the intervening repeal of the ordinance, was clearly a dismissal for mootness, again not a Buckhannon–qualifying ruling.Mailed notice (srn, ) (Entered: 01/10/2011) |
| 01/07/2011 | <u>83</u> | 253 | Supplement to MEMORANDUM Opinion and Order Signed by the Honorable Milton I. Shadur on 1/7/2011:Mailed notice(srn, ) (Entered: 01/10/2011) |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., DR. KATHRYN TYLER, ANTHONY BURTON, VAN F. WELTON, and BRETT BENSON, | ) ) ) ) ) |
|      Plaintiffs, | ) ) |
| v. | ) Civil Action No. |
| | ) |
| THE CITY OF CHICAGO and RICHARD M. DALEY, Mayor of the City of Chicago, | ) ) ) ) |
|      Defendants. | ) ) |

```
FILED: JUNE 27, 2008
08CV3697
JUDGE LEINENWEBER
MAGISTRATE JUDGE KEYS
EDA
```

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiffs, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., DR. KATHRYN TYLER, ANTHONY BURTON, VAN F. WELTON and BRETT BENSON, by and through their attorneys, Stephen P. Halbrook, Ph. D. and Stephen A. Kolodziej (the latter of Brenner, Ford, Monroe & Scott, Ltd.), as and for their complaint against Defendants, THE CITY OF CHICAGO and RICHARD M. DALEY, Mayor, City of Chicago, state as follows:

1.    This is an action to vindicate the rights of residents of Chicago, Illinois, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution, which guarantees the right of law-abiding citizens to keep handguns in the home for lawful defense of their families and other lawful purposes.

**PARTIES**

2.    Plaintiff, National Rifle Association of America, Inc. (hereafter "NRA"), is a non-profit association incorporated under the laws of New York, with its principal place of business in Fairfax, Virginia.  NRA has a membership of 4 million persons many of which reside in or travel

through Chicago, Illinois.  The purposes of the NRA include the protection of the right of citizens to have firearms for the lawful defense of their families, persons, and property, and to promote public safety and law and order.  NRA brings this action on behalf of itself and its members.

3.      Plaintiffs, Dr. Kathryn Tyler ("Tyler"), Anthony Burton ("Burton"), Van F. Welton ("Welton") and Brett Benson ("Benson") are residents of Chicago, Illinois, citizens of the United States, and members of the NRA.

4.      Numerous members of Plaintiff-NRA who are not residents of Chicago frequently travel through Chicago.

5.      Defendant, Richard M. Daley (hereinafter "Daley") is the Mayor of the City of Chicago, which is his principal place of business.  He is being sued in his official capacity.  The City of Chicago is a political subdivision of the State of Illinois.  Daley and the City of Chicago and their officers, agents and employees are sometimes hereinafter referred to as "Defendants".

## JURISDICTION

6.      Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of Illinois and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

7.      This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND

8.      The City of Chicago prohibits possession of a firearm unless it is registered. Municipal Code of Chicago, § 8-20-040(a).  "No registration certificate shall be issued for any of

the following types of firearms: . . . (c) Handguns . . . ." § 8-20-050(c).  The only non-governmental exceptions are "Those validly registered to a current owner in the City of Chicago prior to the effective date of this chapter" in 1982, § 8-20-050(c)(I), and those owned by security personnel or private detective agencies. § 8-20-050(c)(2) & (3). "'Handgun' means a firearm designed to be held and fired by the use of a single hand, and includes a combination of parts from which such firearm can be assembled." § 8-20-030(k).

9.      The registration requirement, and hence the handgun prohibition, does not apply to: "Any nonresident of the City of Chicago participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction; provided, that such weapon shall be unloaded and securely wrapped and that his possession or control of such firearm is lawful in the jurisdiction in which he resides. . . ." § 8-20-040(b )(5).

10.      Any person possessing a firearm "shall have on his person or within his immediate custody a valid registration certificate for such firearm issued hereunder, which shall be exhibited for inspection to any peace officer upon demand." § 8-20-150. Failure to exhibit a registration certificate "shall be presumptive evidence that he is not authorized to possess such firearm" and "shall also be cause for the confiscation of such firearms." *Id*. A confiscated firearm, when not needed as evidence, must be destroyed. § 8-20-220.

11.      A first violation is punishable by a fine of not less than $300 or more than $500, and incarceration for not less than ten days or more than 90 days. A subsequent conviction is punishable by a fine of $500 and by incarceration of not less than 90 days or more than six months. § 8-20-250.

12.      Defendant Daley is responsible for enforcing the above provisions through law enforcement agencies under his direction and control.

13.     Defendant Daley and the law enforcement agencies that operate under his supervision have no legal duty to protect Chicago residents, including plaintiffs, from robbery, rape, murder, or any other crime.

## FACTS

14.     Plaintiffs, as well as thousands of members of Plaintiff-NRA, reside in Chicago. But for Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-250, and the enforcement thereof by Defendants, Plaintiffs and numerous such NRA members would forthwith (a) lawfully obtain handguns to keep at home for lawful purposes including self-protection and the protection of their families and loved ones and (b) transfer handguns which they lawfully store outside of Chicago to their homes.  Should they do so in violation of such provisions, they would be subject to arrest, prosecution, imprisonment, and fines.

15.     Plaintiffs, and thousands of members of Plaintiff-NRA, either travel through or need to travel through Chicago.  Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-250 and the enforcement thereof by Defendants subjects such persons who are otherwise lawfully transporting firearms to the threat of arrest, prosecution, imprisonment, and fines or requires them to travel on other routes to avoid arrest, prosecution, imprisonment, and fines.

16.     Plaintiff Welton wishes to obtain a handgun.  He is eligible under the laws of the United States and of the State of Illinois to possess firearms.  But for Municipal Code of Chicago, § 8-20-050(c), he would forthwith obtain and register a handgun to keep at home for self-protection.

17.     Plaintiff Burton is a tow truck driver.  Plaintiff Tyler is a veterinarian.  They lawfully own and store handguns outside the City of Chicago.  But for Municipal Code § 8-20-050(c), they would forthwith register their handguns and keep them at their residences in the City of Chicago for self-protection.

18.     Plaintiff Benson wants to own a handgun but cannot as he has no place to store it outside of the City of Chicago.  If allowed to possess a handgun in the City, he and others in his position could keep handguns in their homes for lawful defense from any unlawful, sudden, deadly attack by an intruder.  However, Plaintiffs and others face arrest, prosecution, and incarceration should they possess an unregistered handgun in violation of Municipal Code of Chicago, § 8-20-050(c), § 8-20-040(a), and § 8-20-250.  As a result of § 8-20-040(a), Defendants and their agents and employees refuse to register any handgun.  But for § 8-20-040(a), members of NRA and the individual Plaintiffs would imminently obtain handguns and register them pursuant to § 8-20-040(a).

19.      As a proximate cause of Municipal Code of Chicago, § 8-20-050(c), § 8-20-040(a), and § 8-20-250 and the enforcement thereof by Defendants and their agents and employees, Plaintiffs are subjected to irreparable harm in that they are unable to obtain handguns to protect themselves in their homes, subjecting them to endangerment from criminal intruders and violating their constitutional rights as set forth herein.

## <u>COUNT I</u>

### <u>(Second and Fourteenth Amendments)</u>

20.     Paragraphs 1 through 19 are realleged and incorporated herein by reference.

21.     The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  The Fourteenth Amendment to the United States Constitution provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal

protection of the laws." The Second Amendment is applicable to the States and political subdivisions thereof through the Fourteenth Amendment.

22.     Because Municipal Code of Chicago, § 8-20-050(c) requires all firearms to be registered, but § 8-20-040(a) prohibits the registration of any handgun, § 8-20-040(a) infringes on the right of the people, including Plaintiffs and members of Plaintiff-NRA, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution and is thus null and void.

WHEREFORE, Plaintiffs pray that the Court:

A.      Enter a declaratory judgment that Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-040(b)(5), and 8-20-150 are null and void because such provisions infringe on the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution.

B.      Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-040(b)(5), and 8-20-150.

C.      Issue preliminary and permanent injunctions and a writ of mandamus requiring Defendants and their officers, agents, and employees to register handguns on behalf of Plaintiffs herein pursuant to Municipal Code of Chicago, §§ 8-20-050(c).

D.      Grant such other and further relief as may be proper.

E.      Award Plaintiffs attorneys' fees and costs.

## COUNT II

### (Equal Protection)

23.     Paragraphs 1 through 22 are realleged and incorporated herein by reference.

24.    The Fourteenth Amendment to the United States Constitution provides that no State shall deny to any person the equal protection of the laws.

25.    Possession of handguns is prohibited to persons generally, including Plaintiffs and to members of Plaintiff-NRA.  Municipal Code of Chicago, §§ 8-20-040(a), 8-20-050(c).

26.    However, the following categories of persons are exempted from the prohibition:

   (a)    Handguns "validly registered to a current owner in the City of Chicago prior to the effective date of this chapter" in 1982, § 8-20-050(c)(1);

   (b)    Handguns owned by security personnel or private detective agencies, § 8-20-050(c)(2) & (3); and,

   (c)    Any nonresident of the City of Chicago participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction…. § 8-20-040(b)(5).

27.    The above exemptions irrationally discriminate against all non-exempted persons, including Plaintiffs and members of Plaintiff-NRA, denying to them the equal protection of the laws, in violation of the Fourteenth Amendment.

WHEREFORE, Plaintiffs pray that the Court:

A.    Enter a declaratory judgment that Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-040(b)(5), and 8-20-150 are null and void because such provisions violate the equal protection of the laws guaranteed by the Fourteenth Amendment.

B.    Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-040(b)(5), and 8-20-150.

C.      Issue preliminary and permanent injunctions and a writ of mandamus requiring Defendants and their officers, agents, and employees to register handguns on behalf of Plaintiffs herein pursuant to Municipal Code of Chicago, §§ 8-20-050(c).

D.      Grant such other and further relief as may be proper.

E.      Award Plaintiffs attorneys' fees and costs.

## COUNT III

## (18 U.S.C. § 926A)

28.     Paragraphs 1 through 27 are realleged and incorporated herein by reference.

29.     Plaintiffs and members of Plaintiff-NRA may lawfully transport firearms through the City of Chicago pursuant to the Firearms Owners' Protection Act of 1986 ("FOPA"), 18 U.S.C. § 926A, which provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

30.     Chicago's registration requirement for firearms, and hence the handgun prohibition, does not apply to: "Any nonresident of the City of Chicago participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction; provided, that such weapon shall be unloaded and securely wrapped and that his possession or control of such firearm is lawful in the jurisdiction in which he resides . . . ." II Municipal Code of Chicago, § 8-20-040(b)(5).  Chicago thus limits such transportation (a) to non-residents, precluding

residents who lawfully store unregistered firearms, including handguns, outside of Chicago from such transportation, and (b) to participation in recreational activities, precluding other lawful activities.

30.     Moreover, Chicago provides that any person possessing a firearm "shall have on his person or within his immediate custody a valid registration certificate for such firearm issued hereunder, which shall be exhibited for inspection to any peace officer upon demand." § 8-20-150. Failure to exhibit a registration certificate "shall be presumptive evidence that he is not authorized to possess such firearm" and "shall also be cause for the confiscation of such firearms." *Id.* Persons lawfully transporting firearms through Chicago are thereby subject to arrest and prosecution.

31.     The above provisions and the enforcement thereof by Defendants violate the entitlement of persons, including Plaintiffs and members of Plaintiff-NRA, to transport firearms pursuant to 18 U.S.C. § 926A, and are thus preempted and void.

WHEREFORE, Plaintiffs pray that the Court:

A.     Enter a declaratory judgment that Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-040(b)(5), and 8-20-150 are null and void because such provisions are preempted by 18 U.S.C. § 926A.

B.     Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-040(b)(5), and 8-20-150.

C.     Issue preliminary and permanent injunctions and a writ of mandamus requiring Defendants and their officers, agents, and employees to register handguns on behalf of Plaintiffs herein pursuant to Municipal Code of Chicago, §§ 8-20-050(c).

D.      Grant such other and further relief as may be proper.

E.      Award Plaintiffs attorneys' fees and costs.


                            Respectfully Submitted,

                            **NATIONAL RIFLE ASSOCIATION
                            OF AMERICA, INC.,**
                            Plaintiff


                            By:      s/  Stephen A. Kolodziej
                                    Stephen A. Kolodziej
                                    One of Its Attorneys

                            Local Counsel:
                            **Stephen A. Kolodziej**
                            Brenner, Ford, Monroe & Scott, Ltd.
                            33 North Dearborn Street
                            Suite 300
                            Chicago, Illinois 60602
                            Tel.:  312-781-1970
                            Fax:  312-781-9202


                            **Stephen P. Halbrook**
                            10560 Main Street
                            Suite 404
                            Fairfax, Virginia 22030
                            Tel.: 703-352-7276
                            Fax:  703-359-0938
                            (*Pro hac vice* application pending)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., DR. KATHRYN TYLER, ANTHONY BURTON, VAN F. WELTON, and BRETT BENSON, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. |
| THE CITY OF CHICAGO and RICHARD M. DALEY, Mayor of the City of Chicago, | ) ) ) ) ) |

## LR 3.2 Notification Of Affiliates

Pursuant to Local Rule 3.2 of the Rules of the United States District Court for the Northern District of Illinois, Plaintiff National Rifle Association of America, Inc., a non-profit corporation, hereby states that it has no publicly held affiliates.

s/ Stephen A. Kolodziej

Stephen A. Kolodziej
One of the Attorneys for Plaintiffs

**CIVIL COVER SHEET**

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form isrequired for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**

National Rifle Association of America, Inc., Dr. Kathryn Tyler, Anthony Burton, Van F. Welton, and Brett Benson

**DEFENDANTS**

The City of Chicago and Richard M. Daley

**(b)** County of Residence of First Listed Plaintiff   Fairfax County, Virginia
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn Street, Suite 300

Attorneys (If Known)

Unknown

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (excl. vet.) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | ☐ 840 Trademark | ☐ 490 Cable/Satellite TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Inj. | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Security/Commodity/Exch. |
| ☐ 195 Contract Product Liability | **PERSONAL INJURY** | | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 362 Personal Injury— Med. Malpractice | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 365 Personal Injury — Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | **PERSONAL PROPERTY** | | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 370 Other Fraud | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 371 Truth in Lending | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 380 Other Personal Property Damage | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 385 Property Damage Product Liability | | | ☑ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | | | |
| **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | |
| ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 442 Employment | Habeas Corpus: | | | |
| ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 445 ADA—Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 446 ADA — Other | ☐ 550 Civil Rights | | | |
| ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

Actions under 28 U.S.C. 2201 and 2202 and 42 U.S.C. 1983 challenging the constitutionality of municipal firearm ordinances

**VII. PREVIOUS BANKRUPTCY MATTERS** (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary)

**VIII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

**IX. This case**

- ☑ is not a refiling of a previously dismissed action.
- ☐ is a refiling of case number _____, previously dismissed by Judge

DATE   6/27/08

SIGNATURE OF ATTORNEY OF RECORD

s/ Stephen A. Kolodziej

(Revised 06/08)

## United States District Court  Northern District of Illinois
## MOTION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Case Title: | Plantiff(s) |
| VS. | |
| | Defendant(s) |

| | |
|---|---|
| Case Number: | Judge: |

I, _____ hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

_____ by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | Date Admitted |
|---|---|
| | |
| | |
| | |
| | |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if
necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

**Has the applicant designated local counsel?   Yes** ○        **No** ○

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Has the applicant ever been:

**censured, suspended, disbarred, or witherwise disciplined by any court?**    **Yes** ○    **No** ○

**or is the applicant currently the subject of an investigation of the applicant's professional conduct?**    **Yes** ○    **No** ○

**transferred to inactive status, voluntarily withdrawn, or resigned from the bar of nay court?**    **Yes** ○    **No** ○

**denied admission to the bar of any court?**    **Yes** ○    **No** ○

**held in contempt of court?**    **Yes** ○    **No** ○

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them.  I declare under penalty of perjury that the foregoing is true and correct.

S/

_____          _____
Date                                 Electronic Signature of Applicant

| Applicant's Name | Last Name | | First Name | Middle Name/Initial |
|---|---|---|---|---|
| Applicant's Law Firm | | | | |
| Applicant's Address | Street Address | | | Room/Suite Number |
| | City | State | ZIP Code | Work Phone Number |

**(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk.  No admission under Rule 83.14 is effective until such time as the fee has been paid.)**

**NOTE:**  Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of the Court.  The fee for admission to the General Bar is $100.00  The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date.  Admission to the general bar permits an attorney to practice before this Court.  Pro hac vice admission entitles an attorney to appear in a particular case only.  Application for such admission must be made in each case; and the admission fee must be paid in each case.

**Stephen P. Halbrook**

**Motion for Leave to Appear *Pro Hac Vice***

I am a member in good standing and eligible to practice before the following courts:

| | |
|---|---|
| Supreme Court of Virginia | (9/22/78) |
| U.S. Supreme Court | (12/14/81) |
| District of Columbia Court of Appeals | (1981) |
| U.S. Court of Appeals for the D.C. – First | (11/22/2000) |
| U.S. Court of Appeals for the D.C – Second | (5/11/92) |
| U.S. Court of Appeals for the D.C – Third | (6/13/96) |
| U.S. Court of Appeals for the D.C – Fourth | (11/22/78) |
| U.S. Court of Appeals for the D.C – Fifth | (9/29/80) |
| U.S. Court of Appeals for the D.C – Sixth | (2/19/87) |
| U.S. Court of Appeals for the D.C – Seventh | (5/7/82) |
| U.S. Court of Appeals for the D.C – Ninth | (5/23/90) |
| U.S. Court of Appeals for the D.C – Eleventh | (6/19/89) |
| U.S. Court of Appeals Federal Circuit | (1/8/88) |

# United States District Court
# Northern District of Illinois

In the Matter of

National Rifle Association

v.

City of Chicago

Case No. 08 C 3697

Designated Magistrate Judge
Arlander Keys

## FINDING OF RELATEDNESS PURSUANT TO
## LOCAL RULE 40.4

In accordance with the provisions of Local Rule 40.4 of this Court, I find the above captioned case, presently pending on the calendar of Judge **Harry D. Leinenweber** to be related to **08-3645** which is pending on my calendar. Accordingly, I request that the Executive Committee order said case to be reassigned to my calendar as a related case.

_____
Judge Milton I. Shadur

Dated: July 25, 2008

## ORDER OF THE EXECUTIVE COMMITTEE

IT IS HEREBY ORDERED that the above captioned case be reassigned to the calendar of Judge **Milton I. Shadur**.

## ENTER

## FOR THE EXECUTIVE COMMITTEE

_____
Chief Judge James F. Holderman

Dated: **JUL 2 5 2008**

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 3697 | **DATE** | 7/29/2008 |
| **CASE TITLE** | National Rifle Association vs. The City of Chicago | | |

**DOCKET ENTRY TEXT**

Stephen P. Halbrook's motion for leave to appear pro hac vice is granted. (5-1)

Docketing to mail notices.

| | Courtroom Deputy Initials: | SN |
|---|---|---|

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.2.1
### Eastern Division

National Rifle Association of America, Inc., et al.

Plaintiff,

v.                                                    Case No.: 1:08−cv−03697

Honorable Milton I. Shadur

The City of Chicago, et al.

Defendant.

# NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, August 18, 2008:

MINUTE entry before the Honorable Milton I. Shadur:Status hearing held on 8/18/2008. City of Chicago's Answer is due on or before September 2, 2008. Status hearing set for 9/10/2008 at 09:00 AM.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **No. 08 C 3697** |
| | ) | |
| **THE CITY OF CHICAGO, et al.,** | ) | **Judge Milton I. Shadur** |
| | ) | **Magistrate Judge Keys** |
| **Defendants.** | ) | |

**DEFENDANT CITY OF CHICAGO'S ANSWER, DEFENSE,
AND JURY DEMAND TO PLAINTIFFS' COMPLAINT
FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Defendant City of Chicago ("City"), by its attorney, Mara S. Georges, Corporation Counsel

for the City of Chicago, hereby submits its Answer, Defense, and Jury Demand to Plaintiffs'

Complaint for Declaratory Judgment and Injunctive Relief.[1]

**ANSWER**

1.      This is an action to vindicate the rights of residents of Chicago, Illinois, to keep and
bear arms as guaranteed by the Second and Fourteenth Amendments to the United States
Constitution, which guarantees the right of law-abiding citizens to keep handguns in the home for
lawful defense of their families and other lawful purposes.

**ANSWER:**      The City admits this action purports to be "an action to vindicate the rights

of residents of Chicago, Illinois, to keep and bear arms as guaranteed by the Second and Fourteenth

Amendments to the United States Constitution."   The City denies the remaining allegations

contained in Paragraph 1.

---

[1]      Based on this Court's orders dated June 27, 2008 and July 7, 2008 in *McDonald, et al. v. City of Chicago*, No. 08 C 3645, and the Court's comments in open court, the City believes that Mayor Daley is no longer a party to this action, and Mayor Daley therefore does not join in the City's answer.  Should the Court decide that Mayor Daley remains a defendant, he will promptly answer Plaintiffs' Complaint.

## PARTIES

2.      Plaintiff, National Rifle Association of America, Inc. (hereafter "NRA"), is a nonprofit association incorporated under the laws of New York, with its principal place of business in Fairfax, Virginia.  NRA has a membership of 4 million persons many of which reside in or travel through Chicago, Illinois.  The purposes of the NRA include the protection of the right of citizens to have firearms for the lawful defense of their families, persons, and property, and to promote public safety and law and order.  NRA brings this action on behalf of itself and its members.

**ANSWER:**      The City is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 2.

3.      Plaintiffs, Dr. Kathryn Tyler ("Tyler"), Anthony Burton ("Burton"), Van F. Welton ("Welton") and Brett Benson ("Benson") are residents of Chicago, Illinois, citizens of the United States, and members of the NRA.

**ANSWER:**      The City is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 3.

4.      Numerous members of Plaintiff-NRA who are not residents of Chicago frequently travel through Chicago.

**ANSWER:**      The City is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 4.

5.      Defendant, Richard M. Daley (hereinafter "Daley") is the Mayor of the City of Chicago, which is his principal place of business.  He is being sued in his official capacity.  The City of Chicago is a political subdivision of the State of Illinois.  Daley and the City of Chicago and their officers, agents and employees are sometimes hereinafter referred to as "Defendants".

**ANSWER:**      The City admits that Richard M. Daley is the Mayor of the City of Chicago

and that the City of Chicago is Mayor Daley's principal place of business.  The City admits that it

is a municipal corporation organized under the laws of the State of Illinois.  The City admits that

Plaintiffs have sued Mayor Daley in his official capacity but, consistent with this Court's orders

dated June 27, 2008 and July 7, 2008 in *McDonald, et al. v. City of Chicago*, No. 08 C 3645, and

the Court's comments in open court, denies that Mayor Daley is a defendant in this action.

2

## JURISDICTION

6.     Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of Illinois and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

**ANSWER:**     The City admits that the Court has jurisdiction over this matter pursuant to

28 U.S.C. §§ 1331 and 1343.  The City denies the remaining allegations contained in Paragraph 6.

7.     This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

**ANSWER:**     The City admits that Plaintiffs seek relief pursuant to 28 U.S.C. §§ 2201 &

2202 and 42 U.S.C. § 1983 but denies that Plaintiffs are entitled to any such relief or that Plaintiffs

have stated a claim against the City.   The City admits the remaining allegations contained in

Paragraph 7.

## BACKGROUND

8.     The City of Chicago prohibits possession of a firearm unless it is registered. Municipal Code of Chicago, § 8-20-040(a).  "No registration certificate shall be issued for any of the following types of firearms: ... (c) Handguns ...." § 8-20-050(c).  The only non-governmental exceptions are "Those validly registered to a current owner in the City of Chicago prior to the effective date of this chapter" in 1982, § 8-20-050(c)(1), and those owned by security personnel or private detective agencies.  § 8-20-050(c)(2) & (3).  "'Handgun' means a firearm designed to be held and fired by the use of a single hand, and includes a combination of parts from which such firearm can be assembled."  § 8-20-030(k).

**ANSWER:**     The City admits that section 8-20-040(a) prohibits possession of a firearm

unless it is registered pursuant to Chapter 8-20 of the Chicago Municipal Code.  The City admits

that section 8-20-030(k) contains the language quoted in Paragraph 8.  The City admits that section

8-20-050(c) prohibits the registration of a handgun unless the registrant meets one of four exceptions

codified at section 8-20-050(c)(1) - (4).  The City admits that section 8-20-050(c)(1) contains the

language quoted in Paragraph 8 but denies that Paragraph 8 fully and completely cites the entirety

3

of section 8-20-050(c)(1). The City admits that section 8-20-050(c)(3) contains an exception for

handguns owned by "security personnel." The City admits that section 8-20-050(c)(4) contains an

exception for handguns owned by "private detective agencies licensed under Chapter 111.2601, et

seq., Illinois Revised Statutes." The City denies that section 8-20-050(c)(2) contains an exception

for handguns owned by either security personnel or private detective agencies. The City admits that

Chapter 8-20 of the Chicago Municipal Code first became effective in 1982. The City denies the

remaining allegations contained in Paragraph 8.

9.     The registration requirement, and hence the handgun prohibition, does not apply to:
"Any nonresident of the City of Chicago participating in any lawful recreational firearm-related
activity in the city, or on his way to or from such activity in another jurisdiction; provided, that such
weapon shall be unloaded and securely wrapped and that his possession or control of such firearm
is lawful in the jurisdiction in which he resides...." § 8-20-040(b)(5).

**ANSWER:**     The City admits that section 8-20-040(b)(5) contains the language quoted in

Paragraph 9 but denies that it contains ellipses. The City admits the remaining allegations contained

in Paragraph 9.

10.     Any person possessing a firearm "shall have on his person or within his immediate
custody a valid registration certificate for such firearm issued hereunder, which shall be exhibited
for inspection to any peace officer upon demand." § 8-20-150. Failure to exhibit a registration
certificate "shall be presumptive evidence that he is not authorized to possess such firearm" and
"shall also be cause for the confiscation of such firearms." *Id.* A confiscated firearm, when not
needed as evidence, must be destroyed. § 8-20-220.

**ANSWER:**     The City admits that section 8-20-150 contains the language quoted in

Paragraph 10 but denies that Paragraph 10 fully and completely cites the entirety of section 8-20-

150. The City admits that section 8-20-220 provides that a confiscated firearm "if not required for

evidence . . . shall be destroyed at the direction of the superintendent" of police. The City denies

the remaining allegations of Paragraph 10.

11.     A first violation is punishable by a fine of not less than $300 or more than $500, and
incarceration for not less than ten days or more than 90 days. A subsequent conviction is punishable

by a fine of $500 and by incarceration of not less than 90 days or more than six months.  § 8-20-250.

**ANSWER:**   The City admits that section 8-20-250 provides: "Any person who violates any provision of this chapter, where no other penalty is specifically provided, shall upon conviction for the first time, be fined not less than $300.00, nor more than $500.00; or be incarcerated for not less than ten days nor more than 90 days or both.  Any subsequent conviction for a violation of this chapter shall be punishable by a fine of $500.00 and by incarceration for a term of not less than 90 days, nor more than six months."  The City denies the remaining allegations of Paragraph 11.

12.   Defendant Daley is responsible for enforcing the above provisions through law enforcement agencies under his direction and control.

**ANSWER:**   Consistent with this Court's orders dated June 27, 2008 and July 7, 2008 in *McDonald, et al. v. City of Chicago*, No. 08 C 3645, and the Court's comments in open court, the City denies that Mayor Daley is a defendant in this action and therefore asserts that the allegations contained in Paragraph 12 are irrelevant and improper and therefore do not require an answer. Should the Court decide otherwise, the City will promptly answer the allegations contained in Paragraph 12.

13.   Defendant Daley and the law enforcement agencies that operate under his supervision have no legal duty to protect Chicago residents, including plaintiffs, from robbery, rape, murder, or any other crime.

**ANSWER:**   Consistent with this Court's orders dated June 27, 2008 and July 7, 2008 in *McDonald, et al. v. City of Chicago*, No. 08 C 3645, and the Court's comments in open court, the City denies that Mayor Daley is a defendant in this action and therefore asserts that the allegations contained in Paragraph 12 are irrelevant and improper and therefore do not require an answer. Should the Court decide otherwise, the City will promptly answer the allegations contained in Paragraph 13.

## FACTS

14.     Plaintiffs, as well as thousands of members of Plaintiff-NRA, reside in Chicago. But for Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-250, and the enforcement thereof by Defendants, Plaintiffs and numerous such NRA members would forthwith (a) lawfully obtain handguns to keep at home for lawful purposes including self-protection and the protection of their families and loved ones and (b) transfer handguns which they lawfully store outside of Chicago to their homes.  Should they do so in violation of such provisions, they would be subject to arrest, prosecution, imprisonment, and fines.

**ANSWER:**     The City admits that any person who violates Chapter 8-20 of the Chicago

Municipal Code would be subject to the penalties provided by law.  The City lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 14.

15.     Plaintiffs, and thousands of members of Plaintiff-NRA, either travel through or need to travel through Chicago.  Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-250 and the enforcement thereof by Defendants subjects such persons who are otherwise lawfully transporting firearms to the threat of arrest, prosecution, imprisonment, and fines or requires them to travel on other routes to avoid arrest, prosecution, imprisonment, and fines.

**ANSWER:**     The City admits that any person who violates Chapter 8-20 of the Chicago

Municipal Code would be subject to the penalties provided by law.  The City lacks knowledge or

information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15.

16.     Plaintiff Welton wishes to obtain a handgun.  He is eligible under the laws of the United States and of the State of Illinois to possess firearms.  But for Municipal Code of Chicago, § 8-20-050(c), he would forthwith obtain and register a handgun to keep at home for self-protection.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 16.

17.     Plaintiff Burton is a tow truck driver.  Plaintiff Tyler is a veterinarian.  They lawfully own and store handguns outside the City of Chicago.  But for Municipal Code § 8-20-050(c), they would forthwith register their handguns and keep them at their residences in the City of Chicago for self-protection.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the

6

truth of the allegations contained in Paragraph 17.

18.     Plaintiff Benson wants to own a handgun but cannot as he has no place to store it outside of the City of Chicago.  If allowed to possess a handgun in the City, he and others in his position could keep handguns in their homes for lawful defense from any unlawful, sudden, deadly attack by an intruder.  However, Plaintiffs and others face arrest, prosecution, and incarceration should they possess an unregistered handgun in violation of Municipal Code of Chicago, § 8-20-050(c), § 8-20-040(a), and § 8-20-250.  As a result of § 8-20-040(a), Defendants and their agents and employees refuse to register any handgun.  But for § 8-20-040(a), members of NRA and the individual Plaintiffs would imminently obtain handguns and register them pursuant to § 8-20-040(a).

**ANSWER:**     The City admits that any person who violates Chapter 8-20 of the Chicago

Municipal Code would be subject to the penalties provided by law.  The City denies that, pursuant

to section 8-20-040(a), it refuses to register handguns.  The City lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 18.

19.     As a proximate cause of Municipal Code of Chicago, § 8-20-050(c), § 8-20-040(a), and § 8-20-250 and the enforcement thereof by Defendants and their agents and employees, Plaintiffs are subjected to irreparable harm in that they are unable to obtain handguns to protect themselves in their homes, subjecting them to endangerment from criminal intruders and violating their constitutional rights as set forth herein.

**ANSWER:**     The City denies that it has violated Plaintiffs' constitutional rights or caused

them irreparable harm.  The City lacks knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in Paragraph 19.

### COUNT I
### (Second and Fourteenth Amendments)

20.     Paragraphs 1 through 19 are realleged and incorporated herein by reference.

**ANSWER:**     For its answer to Paragraph 20, the City incorporates by reference its answers

to Paragraphs 1 through 19 as if set forth fully herein.

21.     The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  The Fourteenth Amendment to the United States Constitution provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty,

7

or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  The Second Amendment is applicable to the States and political subdivisions thereof through the Fourteenth Amendment.

**ANSWER:**    The City admits that the Second Amendment to the United States Constitution contains the language quoted in Paragraph 21.  The City admits that the Fourteenth Amendment to the United States Constitution contains the language quoted in Paragraph 21.  The City denies the remaining allegations contained in Paragraph 21.

22.    Because Municipal Code of Chicago, § 8-20-050(c) requires all firearms to be registered, but § 8-20-040(a) prohibits the registration of any handgun, § 8-20-040(a) infringes on the right of the people, including Plaintiffs and members of Plaintiff-NRA, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution and is thus null and void.

**ANSWER:**    The City admits that section 8-20-040(a) requires that all firearms be registered in accordance with the provisions of Chapter 8-20 of the Chicago Municipal Code.  The City admits that section 8-20-050(c) does not allow handguns to be registered except under the circumstances enumerated in sections 8-20-050(c)(1)-(4).  The City denies the remaining allegations contained in Paragraph 22.

**WHEREFORE**, the City respectfully requests that the Court enter judgment in its favor and against Plaintiffs on Count I and grant the City such other and further relief as the Court deems just and appropriate.

## COUNT II
### (Equal Protection)

23.    Paragraphs 1 through 22 are realleged and incorporated herein by reference.

**ANSWER:**    For its answer to Paragraph 23, the City incorporates by reference its answers to Paragraphs 1 through 22 as if set forth fully herein.

24.    The Fourteenth Amendment to the United States Constitution provides that no State shall deny to any person the equal protection of the laws.

8

**ANSWER:**    The City admits that the Fourteenth Amendment to the United States Constitutions provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  The City denies the remaining allegations contained in Paragraph 24.

25.    Possession of handguns is prohibited to persons generally, including Plaintiffs and to members of Plaintiff-NRA.  Municipal Code of Chicago, §§ 8-20-040(a), 8-20-050(c).

**ANSWER:**    The City admits that section 8-20-040(a) requires that all firearms be registered in accordance with the provisions of Chapter 8-20 of the Chicago Municipal Code.  The City admits that section 8-20-050(c) does not allow handguns to be registered except under the circumstances enumerated in sections 8-20-050(c)(1)-(4).  The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25.

26.    However, the following categories of persons are exempted from the prohibition:

    (a)    Handguns "validly registered to a current owner in the City of Chicago prior to the effective date of this chapter" in 1982, § 8-20-050(c)(l);

    (b)    Handguns owned by security personnel or private detective agencies, § 8-20-050(c)(2) & (3); and,

    (c)    Any nonresident of the City of Chicago participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction.... § 8-20-040(b)(5).

**ANSWER:**    The City admits that section 8-20-050(c)(1) permits the registration of handguns that are "validly registered to a current owner in the City of Chicago prior to the effective date of this chapter" provided that the requirements of sections 8-20(c)(1)(i) and (c)(1)(ii) are met. The City admits that section 8-20-050(c)(3) permits the registration of handguns owned by "security personnel." The City admits that section 8-20-050(c)(4) permits the registration of handguns owned by "private detective agencies licensed under Chapter 111.2601, et seq., Illinois Revised Statutes." The City denies that section 8-20-050(c)(2) permits the registration of handguns by either security

personnel or private detective agencies.  The City admits that section 8-20-040(b)(5) exempts from

the registration requirement of section 8-20-040(a) "[a]ny nonresident of the City of Chicago

participating in any lawful recreational firearm-related activity in the city, or on his way to or from

such activity in another jurisdiction; provided that such weapon shall be unloaded and securely

wrapped and that his possession or control of such firearm is lawful in the jurisdiction in which he

resides."  The City denies the remaining allegations contained in Paragraph 26.

27.     The above exemptions irrationally discriminate against all non-exempted persons, including Plaintiffs and members of Plaintiff-NRA, denying to them the equal protection of the laws, in violation of the Fourteenth Amendment.

**ANSWER:**     The City denies the allegations contained in Paragraph 27.

**WHEREFORE**, the City respectfully requests that the Court enter judgment in its favor and

against Plaintiffs on Count II and grant the City such other and further relief as the Court deems just

and appropriate.

## COUNT III
## (18 U.S.C. § 926A)

28.     Paragraphs 1 through 27 are realleged and incorporated herein by reference.

**ANSWER:**     For its answer to Paragraph 28, the City incorporates by reference its answers

to Paragraphs 1 through 27 as if set forth fully herein.

29.     Plaintiffs and members of Plaintiff-NRA may lawfully transport firearms through the City of Chicago pursuant to the Firearms Owners' Protection Act of 1986 ("FOPA"), 18 U.S.C. § 926A, which provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition

being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle:  Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

**ANSWER:**    The City admits that 18 U.S.C. § 926A contains the language quoted in Paragraph 29.  The City denies the remaining allegations contained in Paragraph 29.

30.    Chicago's registration requirement for firearms, and hence the handgun prohibition, does not apply to:  "Any nonresident of the City of Chicago participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction; provided, that such weapon shall be unloaded and securely wrapped and that his possession or control of such firearm is lawful in the jurisdiction in which he resides . . ." II Municipal Code of Chicago, § 8-20-040(b)(5). Chicago thus limits such transportation (a) to non-residents, precluding residents who lawfully store unregistered firearms, including handguns, outside of Chicago from such transportation, and (b) to participation in recreational activities, precluding other lawful activities.

**ANSWER:**    The City admits that section 8-20-040(b)(5) contains the language quoted in Paragraph 30.   The City admits that section 8-20-040(b)(5) only exempts from the firearm registration requirement of section 8-20-040(a) a non-resident of the City of Chicago who participates in a lawful recreational firearm-related activity in the City or on his way to or from such activity in another jurisdiction, provided that the firearm is unloaded and securely wrapped and that his possession or control of such firearm is lawful in the jurisdiction in which he resides.  The City denies the remaining allegations contained in Paragraph 30.

30.[sic]  Moreover, Chicago provides that any person possessing a firearm "shall have on his person or within his immediate custody a valid registration certificate for such firearm issued hereunder, which shall be exhibited for inspection to any peace officer upon demand."  § 8-20-150. Failure to exhibit a registration certificate "shall be presumptive evidence that he is not authorized to possess such firearm" and "shall also be cause for the confiscation of such firearms."  *Id.*  Persons lawfully transporting firearms through Chicago are thereby subject to arrest and prosecution.

**ANSWER:**    The City admits that section 8-20-150 provides that "[a]ny person carrying or having in his possession or under his custody or control any firearm, shall have on his person or

11

within his immediate custody a valid registration certificate for such firearm issued hereunder, which shall be exhibited for inspection to any peace officer upon demand." The City admits that section 8-20-150 further provides that the "[f]ailure of any person to exhibit a registration certificate for any fireman in his possession, custody or control shall also be the cause for the confiscation of such firearms and revocation of any registration certificates issues therefore under this chapter." The City denies that individuals who satisfy and comply with section 8-20-040(b)(5)of the Chicago Municipal Code as they transport firearms through the City of Chicago are subject to the penalties set forth in section 8-20-150. The City denies the remaining allegations contained in Paragraph 30[sic].

31.    The above provisions and the enforcement thereof by Defendants violate the entitlement of persons, including Plaintiffs and members of Plaintiff-NRA, to transport firearms pursuant to 18 U.S.C. § 926A, and are thus preempted and void.

**ANSWER:**    The City denies the allegations contained in Paragraph 31.

**WHEREFORE**, the City respectfully requests that the Court enter judgment in its favor and against Plaintiffs on Count III and grant the City such other and further relief as the Court deems just and appropriate.

## DEFENSE - FAILURE TO STATE A CLAIM

The Complaint fails to state any claim upon which relief can be granted.

## JURY DEMAND

The City demands a trial by jury.

Date: September 2, 2008                    Respectfully submitted,

                                           MARA S. GEORGES
                                           Corporation Counsel for the City of Chicago

                                           By:___/s/William Macy Aguiar_____
                                                 Assistant Corporation Counsel

12

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-9018 / 6975  / 7129 / 4216

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al.,** | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08 C 3697 |
| | ) | |
| **THE CITY OF CHICAGO, et al.,** | ) | **Judge Milton I. Shadur** |
| | ) | **Magistrate Judge Keys** |
| Defendants. | ) | |

**NOTICE OF FILING**

**TO:**  Stephen A. Kolodziej        Stephen P. Halbrook
Brenner, Ford, Monroe & Scott, Ltd.     10560 Main Street
33 North Dearborn Street, Suite 300     Fairfax, Virginia 22030
Chicago, IL 60602

    **PLEASE TAKE NOTICE** that on September 2, 2008, we filed with the Clerk of the Court, United States District Court for the Northern District of Illinois, Eastern Division, 219 S. Dearborn Street, Chicago, Illinois 60604, **Defendant City of Chicago's Answer, Defense, and Jury Demand to Plaintiffs' Complaint for Declaratory Judgment and Injunctive Relief**, a copy of which is attached and is hereby served upon you.

Date: September 2, 2008          Respectfully submitted,

                                      MARA S. GEORGES
                                      Corporation Counsel for the City of Chicago

                               By:    /s/William Macy Aguiar
                                       Assistant Corporation Counsel

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-9018 / 6975 / 7129 / 4216

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I, William Macy Aguiar, an attorney, hereby certify that on this, the 2nd day of September, 2008, I caused a copy of: (1) **Notice of Filing**; and (2) **Defendant City of Chicago's Answer, Defense, and Jury Demand to Plaintiffs' Complaint for Declaratory Judgment and Injunctive Relief**, to be served on

> Stephen A. Kolodziej
> Brenner, Ford, Monroe & Scott, Ltd.
> 33 North Dearborn Street, Suite 300
> Chicago, IL 60602

by electronic filing (ECF) and on

> Stephen P. Halbrook
> 10560 Main Street
> Fairfax, VA 22030

by depositing the same in the United States mail, proper first-class postage prepaid, at 30 N. LaSalle Street, Chicago, IL 60602.


                                          /s/ William Macy Aguiar
                                          William Macy Aguiar

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

NATIONAL RIFLE ASSOCIATION )
OF AMERICA, INC., DR. KATHRYN TYLER, )
ANTHONY BURTON, VAN F. WELTON, )
and BRETT BENSON, )
                       )
                Plaintiffs, )
                       )
       vs. )      No.  08 CV 3697
                       )
                       )      Judge Milton I. Shadur
THE CITY OF CHICAGO, )      Magistrate Judge Keys
City of Chicago, )
                       )
              Defendant. )

**RULE 16 MOTION FOR BRIEFING AND DISPOSITION OF**
**SECOND AMENDMENT INCORPORATION ISSUE**
**AND TO STAY DISCOVERY PENDING SAME**

NOW COME plaintiffs, National Rifle Association of America, Inc., Kathryn Tyler, Anthony Burton, Van F. Welton, and Brett Benson, by and through their attorneys Stephen P. Halbrook and local counsel Stephen A. Kolodziej, and move the court pursuant to Fed. R. Civ. P. 16(c)(2) to allow the parties to brief the issue of whether the Second Amendment to the United States Constitution applies to the defendant City of Chicago by incorporation into the Fourteenth Amendment to the United States Constitution, and to decide this issue after briefing for purposes of formulating and simplifying the issues in this case.  Plaintiffs further move the court to stay discovery in this case pending the resolution of the Second Amendment incorporation issue.  In support of this motion, plaintiffs state as follows:

1.      At the last status conference before the court on September 10, 2006, the plaintiffs advised the court that they considered this case to involve purely legal issues that did not require discovery to enable the court to fully adjudicate them.  Defendant City of Chicago advised the

court that it considered discovery necessary in this case.  The court directed the parties to confer regarding the necessity and scope of discovery, and set this matter for a subsequent status conference on November 10, 2008.

2.      On October 10, 2008, without any prior conference with plaintiffs' counsel, the City served its First Document Request and First Interrogatories on the plaintiffs.  Copies of these discovery requests are attached hereto as Exhibits 1 and 2.  As the court will note, these discovery requests are extremely broad, and seek a great deal of information and documents that are wholly irrelevant to the Constitutional and legal issues presented by this case.

3.      In response to these discovery requests, counsel for plaintiffs sent a letter to defense counsel on October 17, 2008, a copy of which is attached hereto as Exhibit 3.  That letter requested that the parties conduct a Rule 16 conference to discuss limiting the issues initially to that of incorporation, and to stay discovery pending the court's ruling on that legal issue, as the court's ruling will frame any remaining issues in the case and enable the parties to better assess and discuss the necessity and scope of discovery pertaining to those issues.

4.      Counsel for the City called plaintiffs' counsel on October 22, 2008 to advise that the City is considering plaintiffs' proposal, and will advise plaintiffs' counsel of its position shortly.  In view of the Rule 16 motion filed by plaintiffs in *McDonald v. City of Chicago*, Case No. 08-cv-3645, currently set for presentment on October 28, 2008, plaintiffs in this matter have filed this motion in the interest of judicial economy, as both motions can be presented to the court simultaneously.

5.      Plaintiffs believe that a central issue in this case is the Second Amendment incorporation issue, and that determination of this issue will both greatly advance the expeditious resolution of this matter, and necessarily determine whether and to what extent discovery may be

necessary on any issues that remain in the case thereafter.  Incorporation is a purely legal matter that does not require discovery, and can be decided by the court based upon the briefs and arguments of the parties.

6.     *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), held that a prohibition on possession of handguns in the home violates the individual right to keep and bear arms guaranteed by the Second Amendment.   The Court noted that nineteenth-century precedents holding the First and Second Amendments not to apply to the states "did not engage in the sort of Fourteenth Amendment inquiry required by our later cases."  *Id.* at 2813 n.23.

7.     *Heller* overrules *Quilici v. Village of Morton Grove*, 695 F.2d 261, 270 (7th Cir. 1982), *cert. denied*, 464 U.S. 863 (1983), which held that "the right to keep and bear handguns is not guaranteed by the second amendment."  Further, in ruling that the Second Amendment is not incorporated into the Fourteenth Amendment, *Quilici* failed to engage in the Fourteenth Amendment inquiry *Heller* states is "required by our later cases."

8.     "We must, with exceptions not applicable here, decide cases in light of intervening Supreme Court decisions."   *Consolidation Coal Co. v. Office of Workers' Compensation Programs*, 54 F.3d 434, 437 (7th Cir. 1995).  This Court must decide whether the "later cases" on the Fourteenth Amendment referenced above in conjunction with the *Heller* decision have effectively overruled the Seventh Circuit's decision in *Quilici*.

9.  Plaintiffs therefore request the court pursuant to Rule 16(c)(2) to allow briefing on this issue *instanter* and set a briefing schedule accordingly.   Given the substantial breadth and burdensomeness of the City's recently propounded discovery requests, plaintiffs further request that the court stay all discovery in this matter pending a ruling on the incorporation issue.

WHEREFORE, plaintiffs respectfully pray that the court enter an order pursuant to Rule 16(c)(2) setting a briefing schedule for the parties to brief the issue of whether the Second Amendment applies to the defendant by incorporation into the Fourteenth Amendment; and staying all discovery in the case pending disposition of this issue by the court.

Respectfully Submitted,

**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al.**
Plaintiffs


By:___s/  Stephen A. Kolodziej
        Stephen A. Kolodziej
        One of Its Attorneys


Lead Counsel
**Stephen P. Halbrook**
3925 Chain Bridge Road, Suite  403
Fairfax, Virginia 22030
Tel.: 703-352-7276
Fax:  703-359-0938


Local Counsel:
**Stephen A. Kolodziej**
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn Street
Suite 300
Chicago, Illinois 60602
Tel.:  312-781-1970
Fax:  312-781-9202

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 3697 |
| THE CITY OF CHICAGO, et al., | ) ) ) | Judge Milton I. Shadur Magistrate Judge Keys |
| Defendants. | ) | |

## **DEFENDANT CITY OF CHICAGO'S FIRST DOCUMENT REQUEST**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, defendant City of Chicago ("City") hereby requests that Plaintiffs produce the following documents described herein within thirty days of this request. Such production should be made to the City of Chicago, 30 North LaSalle Street, Suite 1230, Chicago, Illinois 60602, or at any other location otherwise agreed upon by the parties. The City specifically reserves all rights to propound additional document requests in support of its defense of this case.

## **DEFINITIONS**

1.     As used in this discovery request, the term "person" includes any natural person and any artificial person, including, but not limited to, any corporation, partnership, union, other organization, association or entity recognized by law, as well as the directors, officers, employees, independent contractors, consultants, investigators, partners, representatives, agents, members, or any other person, entity, organization, or group of any type acting at the direction of, or on behalf of one or more of them.

2.     As used in this discovery request, the term "City" means City of Chicago, and includes all departments, agencies, employees, agents, officials, representatives of that municipal

corporation.

3.      As used in this discovery request, the term "document" includes, without limitation, the following items, whether printed, microfilmed, electronically recorded in sound and /or pictures and/or any computer language or reproduced by any process or written or produced by hand, and regardless of whether claimed to be privileged, confidential, or personal: letters, correspondence, memoranda, reports, bids, contracts, agreements, compilations, writings, summaries, notes, maps, studies, tests, notebooks, bulletins, circulars, notices, credit files, checks or any other negotiable instrument, evidences of indebtedness, credit files, articles of incorporation, by-laws, directives, new releases, newspapers, magazines or periodicals of any type, periodic reports of any type or time, balance sheets, ledgers, journals, financial and/or accounting worksheets or work papers of any type, financial and/or accounting reports of any type, bills, vouchers, budgets, offers, orders, receipts, invoices, rules, regulations, prospectuses, directions, filings with any governmental agencies or court, or body, sketches, prints, microfilms, films, videos, photographs, printed forms, manuals, brochures, booklets, articles, manuals, speeches, stenographic notes, diaries, telephone records, books, data compilations, lists, publications, agreements, working papers, electronic mail or messages of any type, intra-office and/or inter-office communications, intra-company and/or inter-company communications, forecasts, statistical statements, graphs, charts, plans, drawings, diaries, calendars, appointment or time keeping lists or compilations, transcripts or minutes or notes or records or recordings of/on any medium or memoranda of meetings or conferences or conversations, policy statements, evaluations, recommendations post cards, recordings of any type of/on any medium, blueprints, schematics, slides, interviews, cables, telegrams, teletype or telemail messages, mailgrams, and any and all other writings or recordations or memorialization

2

of any type or any summaries, condensations, or paraphrases of any type, no matter how done or denominated for any and all of the foregoing.

4.     As used in this discovery request, the terms "and" and "or," the singular and the plural, and the masculine and feminine shall be construed to include the other, so as to maximize the scope of the request and the number of documents responsive to the request.

5.     As used in this discovery request, the term "relating" means directly or indirectly referring, reflecting, containing, constituting, describing, discussing, stating, assessing, recording, or otherwise connected with the matter described.

6.     As used in this discovery request, the term "Individual Plaintiff" refers to Dr. Kathryn Tyler, Anthony Burton, Van F. Welton, and/or Brett Benson, plaintiffs in this lawsuit.

7.     As used in this discovery request, the term "NRA" refers to National Rifle Association of America, Inc., plaintiff in this lawsuit, and includes all officers, directors, employees, agents, assignees or members of the NRA, or any other person or entity acting at the direction of, or on behalf of, the NRA or any officer, director, employee, agent, assignee or member of the NRA.

## INSTRUCTIONS

1.     A request for production of a document is a request that each non-identical copy be produced, including all marginalia and/or stamped material, any envelopes and/or file folders in which the document is enclosed and each attachment to each document.

2.     For each document responsive to these requests that is known to have existed, but cannot be located, or has been destroyed or discarded, identify the author(s) date, and recipient(s) of the document, and summarize its contents.

3.     Unless a particular request states otherwise, produce all responsive documents,

3

regardless of date, to the present.

4. With respect to any document withheld from production on the grounds of privilege or protection, for each such document, state the date(s) on which the document was drafted; state the date(s) on which the document was sent or distributed; state each privilege or protection, including the statute rule or decision which is claimed to give rise to the privilege or protection upon which you rely in withholding the document; identify the person(s) who drafted the document; identify the person(s) who sent the document; identify the person(s) to whom the document was addressed; identify each person who received the document; state the date the document was received by each person who received a copy of the document; state the content of the document in as much detail as is possible without revealing the privileged matter; state the number of pages of the document; state the number, the number of pages and give a description of each attachment to the document; state the location(s) of the original and the location(s) of each copy of the document; identify the person(s) with custody of the original and each copy of the document; and identify the method of preparation and format of the document.

5. The following document requests encompass any and all responsive information in the possession, custody, or control of Plaintiffs. In the event that any Plaintiff refuses to furnish responsive information not in its physical possession, such information will be obtained by appropriate legal process, and any underlying documentation should not be destroyed or altered in any fashion.

6. Any ambiguity in this discovery request shall be resolved so as to construe the request as broadly as possible.

4

## DOCUMENT REQUESTS

1.     All documents relating to any Individual Plaintiff's ownership of a firearm, including but not limited to documents evincing the purchase and/or acquisition of said firearm.

2.     All documents relating to any Individual Plaintiff's registration or licensure of any firearm with any governmental entity or jurisdiction, including but not limited to applications, licenses, and/or registrations.

3.     All documents relating to any Individual Plaintiff's registration or licensure of any firearm with the City, including but not limited to applications, licenses, and/or registrations.

4.     All documents relating to any re-registration or re-licensure of any firearm with any governmental entity or jurisdiction, including but not limited to applications, licenses, and/or registrations.

5.     All documents relating to any re-registration or re-licensure of any firearm with the City, including but not limited to applications, licenses, registrations.

6.     All documents relating to communications with the City regarding any Individual Plaintiff's attempt to register or re-register a firearm with the City, including but not limited to documents denying applications to register or re-register a firearm.

7.     All documents relating to any fine or penalty imposed by the City for failure to comply with the City's firearms laws and/or regulations.

8.     All documents relating to the current location or place of storage of any firearm owned and/or possessed by any Individual Plaintiff.

9.     All documents relating to the specifications of any firearm owned and/or possessed by any Individual Plaintiff, including but not limited to ownership manuals.

10.     All documents relating to any safety feature of any firearm owned and/or

5

possessed by any Individual Plaintiff, including but not limited to trigger locks, load indicators, and/or safety switches.

11. All documents relating to any purpose for which any Individual Plaintiff owns and/or possesses any firearm, including but not limited to self-defense and/or recreation.

12. All documents relating to any alleged burden associated with complying with the Chicago Municipal Code sections and/or requirements challenged in the Complaint.

13. All documents relating to any communication involving any Individual Plaintiff or the NRA and relating to the instant lawsuit, including but not limited to communications concerning the matters challenged in the instant lawsuit or concerning the decision to file a lawsuit challenging the City's firearms laws and/or regulations.

14. All documents relating to the organization and purposes of the NRA, including but not limited to, incorporation documents, charters, by-laws, or minutes.

15. All documents relating to members of the NRA who reside in Chicago, including but not limited to documents relating to the number of such members and/or the attempts of those members to register firearms in Chicago.

16. All documents relating to any firearm that any Individual Plaintiff owns and/or possesses, and/or has used, for the purpose of self defense in the home or elsewhere, or for the purpose of responding to the actual, attempted, or anticipated commission of a crime and/or bodily attack against said Plaintiff, against said Plaintiff's family members or members of Plaintiff's household, or within or on Plaintiff's household or place of residence.

17. All documents relating to any weapon and/or arm, other than a firearm, that any Individual Plaintiff owns and/or possesses, and/or has used, for the purpose of self defense in the home or elsewhere, or for the purpose of responding to the actual, attempted, or anticipated

6

commission of a crime and/or bodily attack against said Plaintiff, against said Plaintiff's family members or members of Plaintiff's household, or within or on Plaintiff's household or place of residence.

18.  All documents relating to the actual or anticipated commission of a crime and/or bodily attack on any Individual Plaintiff, on said Plaintiff's family members or members of Plaintiff's household, or within or on Plaintiff's household or place of residence, including all documents relating to communications with law enforcement authorities.

19.  All documents relating to any attempts by any Individual Plaintiff to request the assistance of law enforcement authorities in responding to the actual or anticipated commission of a crime and/or bodily attack on said Plaintiff, on Plaintiff's family members or members of Plaintiff's household, or within or on Plaintiff's household or place of residence, including all documents relating to communications with law enforcement authorities.

20.  All studies, statistics, analyses, reports, or other data, whether created or prepared by any plaintiff or obtained from any other source, relating to: the impact or efficacy of gun control laws in reducing firearms violence against members of the public and/or law enforcement officers; the impact or efficacy of handguns as a tool for self defense in the home or elsewhere, or in reducing or deterring the commission of crime against members of the public; the impact or efficacy of other types of firearms (aside from handguns) as a tool for self defense in the home or elsewhere, or in reducing or deterring the commission of crime against members of the public; the impact or efficacy of other types of weapons (aside from firearms) as a tool for self defense in the home or elsewhere, or in reducing or deterring the commission of crime against members of the public.

21.  All documents that in any way support, demonstrate, or relate to any damages,

7

harm, injury, or stigmatization suffered by any Plaintiff as a result of the City's conduct as alleged in the Complaint.

22.    All documents that in any way support the claim of Plaintiffs that their constitutional and/or statutory rights have been violated by the City as alleged in the Complaint, including any documents supporting each specific claim of a violation alleged in the Complaint.

23.    All documents that are responsive to, or support the answer of, any interrogatory or request to admit propounded to any Plaintiff by the City in this litigation.

24.    All documents relating to any Individual Plaintiff's membership in or affiliation with the NRA.

Respectfully submitted,

Mara S. Georges, Corporation Counsel for
    the City of Chicago

By:    _Andrew Worseck_
Assistant Corporation Counsel

Michael A. Forti
Deputy Corporation Counsel
Mardell Nereim
Chief Assistant Corporation Counsel
Andrew W. Worseck
Assistant Corporation Counsel
William Macy Aguiar
Assistant Corporation Counsel
Rebecca Alfert-Hirsch
Assistant Corporation Counsel
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230
Chicago, IL 60602
312-744-9010

Dated: October 10, 2008.

8

## CERTIFICATE OF SERVICE

The undersigned, an attorney of record for the City of Chicago, hereby certifies that on October 10, 2008, he served a copy of the **Defendant City of Chicago's First Document Request** and **First Set of Interrogatories**, along with this certificate of service, on:

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn Street
Suite 300
Chicago, IL 60602

and

Stephen P. Halbrook
10560 Main Street
Suite 404
Fairfax, VA 22030

by first class United States Mail, postage pre-paid, by placing them in the United States Mail box at 30 North LaSalle Street, Chicago, Illinois 60602.

Andrew Worseck

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 3697 |
| THE CITY OF CHICAGO, et al., | ) ) ) | Judge Milton I. Shadur Magistrate Judge Keys |
| Defendants. | ) | |

### DEFENDANT CITY OF CHICAGO'S FIRST INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant City of Chicago ("City") hereby requests that Plaintiffs respond to the following interrogatories within thirty days of this request. The City specifically reserves all rights to propound additional interrogatories in support of its defense of this case.

### DEFINITIONS

1. As used in this discovery request, the term "person" includes any natural person and any artificial person, including, but not limited to, any corporation, partnership, union, other organization, association or entity recognized by law, as well as the directors, officers, employees, independent contractors, consultants, investigators, partners, representatives, agents, members, or any other person, entity, organization, or group of any type acting at the direction of, or on behalf of one or more of them.

2. As used in this discovery request, the term "City" means City of Chicago, and includes all departments, agencies, employees, agents, officials, representatives of that municipal corporation.

3.     As used in this discovery request, the term "document" includes, without

limitation, the following items, whether printed, microfilmed, electronically recorded in sound

and /or pictures and/or any computer language or reproduced by any process or written or

produced by hand, and regardless of whether claimed to be privileged, confidential, or personal:

letters, correspondence, memoranda, reports, bids, contracts, agreements, compilations, writings,

summaries, notes, maps, studies, tests, notebooks, bulletins, circulars, notices, credit files, checks

or any other negotiable instrument, evidences of indebtedness, credit files, articles of

incorporation, by-laws, directives, new releases, newspapers, magazines or periodicals of any

type, periodic reports of any type or time, balance sheets, ledgers, journals, financial and/or

accounting worksheets or work papers of any type, financial and/or accounting reports of any

type, bills, vouchers, budgets, offers, orders, receipts, invoices, rules, regulations, prospectuses,

directions, filings with any governmental agencies or court, or body, sketches, prints, microfilms,

films, videos, photographs, printed forms, manuals, brochures, booklets, articles, manuals,

speeches, stenographic notes, diaries, telephone records, books, data compilations, lists,

publications, agreements, working papers, electronic mail or messages of any type, intra-office

and/or inter-office communications, intra-company and/or inter-company communications,

forecasts, statistical statements, graphs, charts, plans, drawings, diaries, calendars, appointment

or time keeping lists or compilations, transcripts or minutes or notes or records or recordings

of/on any medium or memoranda of meetings or conferences or conversations, policy statements,

evaluations, recommendations post cards, recordings of any type of/on any medium, blueprints,

schematics, slides, interviews, cables, telegrams, teletype or telemail messages, mailgrams, and

any and all other writings or recordations or memorialization of any type or any summaries,

2

condensations, or paraphrases of any type, no matter how done or denominated for any and all of the foregoing.

4.     As used in this discovery request, the terms "and" and "or," the singular and the plural, and the masculine and feminine shall be construed to include the other, so as to maximize the scope of the request and the number of documents responsive to the request.

5.     As used in this discovery request, the term "relating" means directly or indirectly referring, reflecting, containing, constituting, describing, discussing, stating, assessing, recording, or otherwise connected with the matter described.

6.     As used in this discovery request, the term "Individual Plaintiff" refers to Dr. Kathryn Tyler, Anthony Burton, Van F. Welton, and/or Brett Benson, plaintiffs in this lawsuit.

7.     As used in this discovery request, the term "identify" (or any form of "identify") when used with reference to a document, means to set forth the date, author or originator, persons to whom the document was addressed or sent, persons to whom copies of the document were addressed or sent, type of document (e.g., letter, contract, chart, etc.), subject matter, and the present or last-known custodian of the original and any copies.

8.     As used in this discovery request, the term "identify" (or any form of "identify") when used with reference to a communication other than a document, means to set forth the form, date, persons participating in, and subject matter of such communication.

9.     As used in this discovery request, the term "identify" (or any form of "identify") when used with reference to a natural person, means to state his or her present or last-known full name, any known variations on those names, address, business address, telephone number(s), fax number(s), e-mail address(es), web sites, position and business affiliation.

3

10. As used in this discovery request, the term "identify" (or any form of "identify") when used with reference to a person other than a natural person, means to set forth the full name of the person, any known variations on those names, the form of the person (e.g., corporation, joint venture, partnership, sole proprietorship, etc.), the partners, officers, directors or other principals, and the present or last-known place of business, any known telephone number(s), fax number(s) or e-mail address(es), or web sites.

## INSTRUCTIONS

1. Any ambiguity in these interrogatories shall be resolved so as to construe these interrogatories as broadly as possible.

2. In accordance with the parties' obligations under the Federal Rules of Civil Procedure, these interrogatories shall be construed to include any responsive information discovered after the date of response.

3. The following requests encompass any and all responsive information in the possession, custody, or control of any Plaintiff. In the event that any Plaintiff refuses to furnish responsive information not in its possession, such information will be obtained by appropriate legal process, and any underlying documentation should not be destroyed or altered in any fashion.

## INTERROGATORIES

1. List and describe any and all instances in which a crime and/or bodily attack was committed, attempted, or anticipated against an Individual Plaintiff, against said Plaintiff's family members or members of Plaintiff's household, or within or on Plaintiff's household or place of residence.

4

**ANSWER:**

2.    List and describe any and all attempts by any Individual Plaintiff to request the assistance of law enforcement authorities in responding to the actual, attempted, or anticipated commission of a crime and/or bodily attack against said Plaintiff, against said Plaintiff's family members or members of Plaintiff's household, or within or on Plaintiff's household or place of residence. Also list and describe the content and outcome of any such attempts to request the assistance of law enforcement authorities.

**ANSWER:**

3.    List and describe any firearm that any Individual Plaintiff has used for the purpose of responding to the actual, attempted, or anticipated commission of a crime and/or bodily attack against said Plaintiff, against said Plaintiff's family members or members of Plaintiff's household, or within or on Plaintiff's household or place of residence. For each firearm, describe the circumstances and manner of its use.

**ANSWER:**

4.    List and describe any weapon and/or arm, other than a firearm, that any Individual Plaintiff has used for the purpose of responding to the actual, attempted, or anticipated commission of a crime and/or bodily attack against said Plaintiff, against said Plaintiff's family members or members of Plaintiff's household, or within or on Plaintiff's household or place of

5

residence. For each weapon and/or arm, describe the circumstances and manner of its use.

**ANSWER:**


5.      List and describe any and all ways in which any Individual Plaintiff is burdened by the requirements of and/or complying with, the Chicago Municipal Code sections and/or requirements challenged in the Complaint.

**ANSWER:**


6.      For each firearm owned and/or possessed by any Individual Plaintiff, list and describe:

      a.      the make, model, and serial number;

      b.      the date each firearm was purchased or otherwise obtained;

      c.      the place where each firearm is kept or stored;

      d.      any registrations and/or licenses obtained for the firearm;

      e.      any registrations and/or licenses applied for, but not received, for the firearm;

      f.      any registration and/or license renewals obtained for the firearm;

      g.      any registration and/or license renewals applied for, but not received, for the firearm;

      h.      whether any fine or penalty has been assessed by any governmental entity or jurisdiction based on the failure to comply with applicable firearms laws and/or regulations as to the firearm;

      i.      the purposes for which each firearm is used or maintained.

6

**ANSWER:**

7.     To the extent that any Plaintiff has ever been involved in any legal proceeding, either as a defendant or plaintiff, identify the name, date, court, and docket number of each proceeding filed, the subject matter of each proceeding, the result of each proceeding, including any judgment/settlement obtained, and the attorneys involved in each proceeding.

**ANSWER:**

8.     Set forth with particularity the amount of any damages Plaintiffs claim and the basis(es) for each element of this claim. With regard to each element of each damages claim, specify the type and legal basis of the claim, specify the amount demanded for each claim and describe in detail the method of calculation by which Plaintiffs arrived at the monetary sum sought for each claim, identify any and all documents relating to Plaintiffs' answer to any part of this interrogatory, identify any and all witnesses supporting, confirming, or relating to Plaintiffs' answer to any part of this interrogatory.

**ANSWER:**

9.     Identify any documents that were used in preparing the answers to these interrogatories or in any manner relating to any of the answers to these interrogatories.

**ANSWER:**

10.     Identify each person who participated or was consulted in answering these

interrogatories, and for each such person, identify the interrogatory(ies) that he or she was involved in answering.

**ANSWER:**

Respectfully submitted,

Mara S. Georges, Corporation Counsel for
the City of Chicago

By: _____
Assistant Corporation Counsel

Michael A. Forti
Deputy Corporation Counsel
Mardell Nereim
Chief Assistant Corporation Counsel
Andrew W. Worseck
Assistant Corporation Counsel
William Macy Aguiar
Assistant Corporation Counsel
Rebecca Alfert-Hirsch
Assistant Corporation Counsel
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230
Chicago, IL 60602
312-744-9010

Dated: October 10, 2008.

AMY L. ANDERSON
SHELDON A. BRENNER
SCOTT R. BRITTON
JAMES W. FORD
STEPHEN A. KOLODZIEJ
TERESA R. MAHER
RANDALL C. MONROE
MARY KAY SCOTT

# BRENNER, FORD, MONROE & SCOTT, LTD

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

33 NORTH DEARBORN STREET • SUITE 300
CHICAGO, ILLINOIS  60602-3102

TELEPHONE 312-781-1970
FACSIMILE 312-781-9202
www.brennerlawfirm.com

MAGGIE C. BEDNAR
JOSHUA C. BELL
PEDRO E. KOE-KROMPECHER
MELISSA L. MITCHELL
FRED A. NICKL
ANDRES PADUA
KATIE A. WHITEHEAD

October 17, 2008

**Via Facsimile (312) 742-3925 and U.S. Mail**

William Macy Aguiar
City of Chicago
Department of Law
Constitutional and Commercial
Litigation Division
30 North LaSalle Street
Suite 1230
Chicago, Illinois  60602

   Re: *National Rifle Association v. City of Chicago*
     Case No. 2008 CV 3697

Dear Mr. Aguiar:

   During our telephone conference on September 8, 2008, I advised you that the plaintiffs believe that this case presents purely legal issues that can be decided by the court without the necessity of discovery.  You advised me that it is the City's position that discovery is necessary on a number of issues, although you did not specify those issues.  At the status hearing on September 10, 2008, after being advised of the foregoing, Judge Shadur instructed the parties to confer regarding the scope of necessary discovery in this case in order to determine whether and to what extent discovery should proceed.

   I did not hear from you or any other attorney for the City after the status hearing in this regard.  Instead, I received this week interrogatories and requests for production of documents that are extremely broad, and in our opinion seek information that is irrelevant to the issues in this case and not reasonably calculated to lead to the discovery of admissible evidence.

   Based on the court's suggestion on September 10 that the parties attempt to advance the issues of the case as efficiently as possible, we believe it would be constructive to hold a Rule 16 conference to discuss limiting the issues initially to that of

William Macy Aguiar
October 17, 2008
Page 2 of 2

incorporation. We believe a conference is also necessary pursuant to Rule 26(c), and in accordance with Judge Shadur's prior instructions.

We propose that the parties agree to stay proceedings on the equal protection and Section 926A claims, and file dispositive motions on the sole issue of whether the Second Amendment applies to the states by incorporation into the Fourteenth Amendment. Resolution of this issue clearly requires no discovery. We therefore further propose that all discovery – including that recently propounded by the City -- be stayed by agreement pending the court's resolution of the incorporation issue. Once that issue is decided, the parties will be in a much better position to discuss and assess the necessity and scope of discovery pertaining to any remaining issues in the case.

Please contact me at your earliest convenience to discuss the details of this proposal and to schedule a conference pursuant to Rules 16 and 26(a).

Very truly yours,

BRENNER, FORD, MONROE & SCOTT, LTD.

Stephen A. Kolodziej

SAK/ms
cc:    Stephen P. Halbrook, Esq.

BRENNER, FORD, MONROE & SCOTT, LTD.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION | ) | |
| OF AMERICA, INC., DR. KATHRYN TYLER, | ) | |
| ANTHONY BURTON, VAN F. WELTON, | ) | |
| and BRETT BENSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  08 CV 3697 |
| | ) | |
| | ) | Judge Milton I. Shadur |
| THE CITY OF CHICAGO and | ) | |
| RICHARD M. DALEY, MAYOR, Mayor of the | ) | Magistrate Judge Keys |
| City of Chicago, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MOTION TO STRIKE JURY DEMAND**</u>

NOW COME plaintiffs, National Rifle Association of America, Inc., Dr. Kathryn Tyler, Anthony Burton, Van F. Welton, and Brett Benson, by and through their attorneys Stephen P. Halbrook, Ph. D. and local counsel Stephen A. Kolodziej (the latter of Brenner, Ford, Monroe & Scott, Ltd.), and move the court pursuant to Fed. R. Civ. Pro. 57, 38 and 39 to strike the jury demand filed by defendant the City of Chicago in this cause.  In support of this motion, plaintiffs state as follows:

1.      This is a declaratory judgment action challenging the constitutionality of certain provision of the Municipal Code of Chicago regulating the possession and registration of handguns in the City of Chicago.  Plaintiffs' complaint is entitled "Complaint for Declaratory Judgment and Injunctive Relief."   The complaint seeks relief in the form of a declaratory judgment that pertinent sections of the Municipal Code of Chicago violate the Second and Fourteenth Amendments to the United States Constitution and are therefore null and void;

issuance of preliminary and permanent injunctions enjoining defendants from enforcing the subject Municipal Code sections; and issuance of preliminary and permanent injunctions and a writ of mandamus requiring defendants to register handguns on behalf of plaintiffs herein.

2.      On September 2, 2008, defendant City of Chicago filed a pleading entitled "Answer, Defense and Jury Demand to Plaintiff's Complaint for Declaratory and Injunctive Relief," Document 11 in the court's ECF system.  This pleading contains a demand for a trial by jury.

3.      Plaintiffs hereby adopt, join in, and incorporate by reference as though fully set forth herein the arguments and citations to authority set forth in the plaintiffs' motion to strike jury demand filed in *National Rifle Association of America, Inc., et al. v. Village of Oak Park*, Case No. 08 CV 3696, previously filed with the court on October 21, 2008 as Document 22 in that case (attached hereto), as those arguments are equally applicable to and supportive of this motion.

WHEREFORE, plaintiffs respectfully pray that the Court strike the City of Chicago's jury demand and grant all such further relief as the Court deems just and appropriate.

Respectfully Submitted,

**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al.**
Plaintiffs


By:___s/  Stephen A. Kolodziej
         Stephen A. Kolodziej
         One of Its Attorneys
Lead Counsel
**Stephen P. Halbrook**
3925 Chain Bridge Road, Suite  403
Fairfax, Virginia 22030
Tel.: 703-352-7276
Fax:  703-359-0938

Local Counsel:

**Stephen A. Kolodziej**
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn Street
Suite 300
Chicago, Illinois 60602
Tel.:  312-781-1970
Fax:  312-781-9202

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ROBERT KLEIN ENGLER, and DR. GENE A. REISINGER, | ) ) ) | |
| | ) | No. 08 CV 3696 |
| Plaintiffs, | ) ) | |
| | ) | Honorable Milton I. Shadur |
| v. | ) ) | |
| VILLAGE OF OAK PARK, | ) ) | |
| Defendants. | ) ) ) | |

## MOTION TO STRIKE JURY DEMAND

Plaintiffs, National Rifle Association of America, Inc., Robert Klein Engler, and Dr. Gene A. Reisinger, by and through their attorneys, Freeborn & Peters LLP and Stephen P. Halbrook, file this Motion to Strike Jury Demand, and in support hereof state as follows:

## INTRODUCTION

Defendant Village of Oak Park's ("Oak Park") demand for a jury in this action violates the basic tenet of American jurisprudence that juries are neither warranted nor allowed in actions seeking purely equitable relief. The complaint in this case seeks only equitable relief in the form of a declaratory judgment that Oak Park's firearms ordinances violate the United States Constitution and 18 U.S.C. § 926A, and an injunction prohibiting enforcement of those ordinances. The complaint does not seek any money damages. The complaint focuses purely on equitable relief, making Oak Park's jury demand inappropriate and abusive. For these reasons, the Court should strike it.

## FACTUAL AND PROCEDURAL BACKGROUND

**Oak Park's Firearms Ban**

On June 27, 2008, Plaintiffs filed their complaint alleging that several provisions of the Oak Park Municipal Code relating to possession and transportation of firearms violate the Second and Fourteenth Amendments of the United States Constitution as well as 18 U.S.C. § 926A. (Dkt. No. 1.) For example, § 27-2-1 of Oak Park's Municipal Code states that "[i]t shall be unlawful for any person to possess or carry, or for any person to permit another to possess or carry on his/her land or in his/her place of business any firearm . . . ." Oak Park Municipal Code, § 27-2-1. Oak Park's Municipal Code defines firearms as "pistols, revolvers, guns and small arms of a size and character that may be concealed on or about the person, commonly known as handguns." *Id.* § 27-1-1. These provisions effectively ban the possession and transportation of handguns anywhere in the Village of Oak Park, including in or to one's own home.[1] The complaint seeks a declaratory judgment that Oak Park's handgun ban violates the Second Amendment of the United States Constitution, which states that "the right of the people to keep and bear arms, shall not be infringed," AND WHICH IS INCORPORATED BY THE FOURTEENTH AMENDMENT SO AS TO PROHIBIT INFRINGEMENT BY STATES AND LOCALITIES. (Compl. at ¶ 25.) The complaint also seeks an injunction preventing enforcement of that provision. (*Id.*)

Oak Park prohibits the transportation of other types of firearms as well. It is unlawful "to carry" a rifle, shotgun, or firearm in a vehicle, or to permit another to do so in a vehicle one owns" unless the weapon is broken down in a nonfunctioning state and is not immediately accessible. *Id.* § 27-2-1(I). The complaint seeks a declaratory judgment that Oak Park's

---

[1] Oak Park does allow for the transportation of handguns through the Village of Oak Park as long as the weapon is broken down in a non-functioning state and the gun's transport does not originate or end within the Village of Oak Park. *See* Oak Park Municipal Code § 27-2-1(I).

prohibition on transporting shotguns and rifles through the Village of Oak Park in a functioning state violates 18 U.S.C. § 926A. (*Id.* at ¶ 34.) That statute provides that individuals may transport firearms to and from any location where they may legally be possessed so long as the weapons are unloaded and not readily accessible. 18 U.S.C. § 926A. The complaint seeks an injunction prohibiting enforcement of the prohibition on transporting shotguns and rifles. (Compl. at ¶ 34.)

**Irrational Exceptions to Oak Park's Firearms Ban**

Oak Park does provide certain exceptions to its ban on possessing handguns and transporting other firearms, but those exceptions are irrational. Any person licensed as a firearm collector, for example, may possess a handgun provided that he or she file a copy of their collector license with Oak Park's Chief of Police. Oak Park Mun. Code § 27-1-1. Members of established theater organizations located in Oak Park that perform a regular performance schedule to the public also are exempt from the handgun ban if they adhere to certain safety practices. *See id.* § 27-2-1(L). Oak Park also exempts licensed hunters or fishermen commuting with a rifle or shotgun to or from established game areas from the prohibition on transporting rifles and shotguns. *Id.* § 27-2-1(H).

Due to the irrational nature of the exemptions, the complaint seeks a declaratory judgment that the exemptions, in combination with the prohibition on possessing and transporting firearms, violate the Fourteenth Amendment by denying equal protection to handgun owners who are not members of established theater groups or gun collectors. (Compl. at ¶ 29.)

The complaint does not seek any monetary relief. Further, the complaint does not allege that the Plaintiffs have suffered monetary harm or that they will suffer monetary harm as a result

of Oak Park's enforcement of its gun ordinances. Despite the lack of any request for money damages in the complaint, Oak Park filed an answer to the complaint in which Oak Park demands a trial by jury. (Dkt. No. 16.) Oak Park's jury demand should be denied and the Court should strike it.

## ARGUMENT

### I.  The Court Should Strike Oak Park's Jury Demand Because The Complaint Seeks Only Equitable Relief.

Federal Rule of Civil Procedure 37 states that, in actions for declaratory judgments such as the Plaintiffs' action here, "the right to trial by jury may be demanded under the circumstances and in the manner provided in rules 38 and 39" of the Federal Rules. Under Rules 38 and 39, a litigant may demand a jury under the conditions set forth in the Seventh Amendment to the United States Constitution. *See* Fed. R. Civ. P. 38(a) and 39(a). The Seventh Amendment, in turn, provides that, "[i]in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." Given the Seventh Amendment's limitation on jury trials to common law actions for money damages, courts have recognized that, "if a case is 'purely an equitable one,' it is not considered a suit at common law, and 'the parties are not entitled to a jury.'" *Medtronic, Inc. v. Benda*, 689 F.2d 645, 660 (7th Cir. 1982) (adopting holding of district court denying jury trial) (citing *Owens-Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1189 (3d Cir. 1979)). Thus, in order to determine whether a declaratory action warrants a jury trial, courts must determine whether the action is legal or equitable in nature.

In order to determine whether a declaratory judgment action is legal or equitable, courts consider: (1) whether the issues raised in the complaint are such that they would have been triable to a jury at common law and (2) whether the complaint seeks equitable or legal relief.

*Int'l Fin. Serv. Corp. v. Chromas Tech. Canada, Inc.*, 356 F.3d 731, 735 (7th Cir. 2004). The second consideration is more important than the first. *Id.* If the court determines that the plaintiff is seeking equitable relief, a jury is not warranted. *Id.*; *see also Owens-Illinois*, 61 F.2d at 1189. A useful test in determining whether declaratory judgment actions are equitable or legal has been "to determine in what kind of suit the claim would have come to the court if there were no declaratory judgment remedy. *Owens-Illinois*, 61 F.2d at 1189; *see also Northgate Homes, Inc. v. City of Dayton*, 126 F.3d 1095, 1099 (8th Cir. 1997) (refusing to grant jury demand where relief sought was equitable). If absent the request for declaratory relief, the suit would have come to the court as an equitable claim, the parties are not entitled to a jury. *Owens-Illinois*, 61 F.2d at 1189; *Northgate*, 126 F.3d at 1099.

In cases where plaintiffs seek declaratory or injunctive relief in order to enforce a constitutional right, courts generally have held that a jury is not warranted. In *Northgate*, for example, the plaintiff sought a declaratory judgment that its use of a residential mobile home park to sell mobile homes did not violate a city zoning ordinance. *Northgate*, 126 F.3d at 1098. The plaintiff also alleged that, in attempting to prohibit the sale of mobile homes, the City of Dayton had initiated a taking without just compensation under the Fifth Amendment and had violated the plaintiffs' due process rights. *Id.* The court held that the plaintiff was not entitled to a jury because, the plaintiff's claim, "in the absence of a declaratory judgment procedure, would have arisen in an action to enjoin the City from enforcing its zoning ordinance" and would have been "an equitable claim." *Id.* at 1099.

In *Leary v. Daeschner*, 349 F.3d 888 (6th Cir. 2003), the plaintiffs sought a declaratory judgment and injunction to protect their first amendment rights to free speech and their rights to due process. *Leary*, 349 F.3d at 895. The plaintiffs, two teachers, alleged that a school district

sought to transfer them to different schools in retaliation for their comments and actions criticizing their school. *Id.* In addition to seeking the declaratory judgment, the plaintiffs sought an injunction to prevent their transfer. *Id.* The court held that, "[b]ecause Plaintiffs requested only injunctive and declaratory relief for the violation of their First Amendments rights, we must consider these claims equitable in nature, and thus the remaining decisions in this case rest exclusively with the court rather than a jury." *Id.* at 910-11.

Like the *Leary* and *Northgate* cases, this case is completely equitable in nature, and thus Oak Park's jury demand must be stricken. Count I seeks a declaration that the ban on possession of handguns violates the right to keep and bear arms as protected by the Second and Fourteenth Amendments, and seeks an injunction prohibiting enforcement of the ban. Count II seeks a declaratory judgment that the exceptions to Oak Park's handgun ban violates Plaintiffs' right to equal protection under the Fourteenth Amendment, and seeks an injunction prohibiting enforcement of the handgun ban. Count III seeks a declaratory judgment that Oak Park's prohibition on transporting firearms violates, and is preempted by, 18 U.S.C. § 926A, and seeks an injunction prohibiting enforcement of the ordinance. Thus, like the *Leary* and *Northgate* cases, the equitable nature of the relief precludes the parties' right to a jury trial. The court therefore should strike Oak Park's jury demand.

**II.** **The Court Should Strike Oak Park's Jury Demand Because The Complaint Raises Only Legal Issues of Whether Oak Park's Handgun Ban Violates Federal Statute Or The United States Constitution.**

Oak Park's jury demand also must be stricken because purely legal issues that do not turn on the factual record must be decided by the Court, not a jury. This is particularly true of constitutional challenges to a statute or local ordinance. *See Doctor John's, Inc. v. City of Sioux City*, 467 F. Supp. 2d 925, 936, 937 (N.D. Iowa 2006) (holding that broad constitutional

- 6 -

challenge to city ordinance outlawing adult-oriented businesses was legal issue not appropriate for a jury). Likewise, whether a state or local statute is preempted by federal law also is a purely legal issue that is not proper for consideration by a jury. *See Forrest Park II v. Hadley*, 336 F.3d 724, 731 (8th Cir. 2003) (upholding district judge's ruling that only legal issues were involved in determining whether state statute was preempted by federal statute); *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 329 (D. Mass. 1997) (holding that preemption "is a discrete question, the decision of which is not affected by any fact finding that will be the foundation for the disposition of the other claims in the complaint"); *A.T. Clayton & Co., Inc. v. Missouri-Kansas-Texas RR Co.*, 901 F.2d 833, 834 (10th Cir. 1990) (upholding trial judge's ruling on preemption and holding that the preemption issue is a purely legal conclusion subject to *de novo* review).

Here, Plaintiffs seek declaratory and injunctive relief based on the unconstitutionality of Oak Park's firearms ban and the preemption of that ban by the Firearm Owner's Protection Act, 18 U.S.C. § 926A. Those issues do not depend on a jury's application of facts to law. Rather, they are purely legal issues that require a judge's interpretation of the firearms ban, the Second Amendment, and § 926A. A jury is not proper for legal interpretation of Oak Park's ordinance, the Constitution, or § 926A. *See Local 1239 Int'l. Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers v. Allsteel, Inc.*, 9 F. Supp. 2d 901, 902 (N.D. Ill. 1998) (holding that statutory interpretation is issue of pure law appropriate for summary judgment by judge). Without any issue to send to a jury, the Court should strike Oak Park's jury demand.

WHEREFORE Plaintiffs respectfully request that the Court strike Oak Park's jury demand and grant all such further relief as the court deems just and appropriate.

Dated: October 21, 2008

**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ROBERT KLEIN ENGLER, and DR. GENE A. REISINGER** Plaintiffs

BY:     s/ William N. Howard
                One of Their Attorneys

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276
Fax (703) 359-0938
(*Pro Hac Vice pending*)

Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
Tel (312) 360-6415
Fax (312) 360-6573

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

NATIONAL RIFLE ASSOCIATION OF )
AMERICA, INC., ROBERT KLEIN )
ENGLER, and DR. GENE A. REISINGER, )
                                        )     No. 08 CV 3696
       Plaintiffs, )
                                          )     Honorable Milton I. Shadur
       v. )
                                          )
VILLAGE OF OAK PARK, )
                                          )
       Defendants. )

## CERTIFICATE OF SERVICE

Daniel S. Dooley, an attorney, certifies that, on October 21, 2008, true and correct copies

of the foregoing Motion to Strike Jury Demand, were transmitted to and served upon counsel for

the Village of Oak Park, named below, by the Court's ECF filing system.

                                         _____ s/ Daniel S. Dooley _____

Lance C. Malina
Klein, Thorpe & Jenkins, Ltd.
20 North Wacker Drive, Suite 1660
Chicago, Illinois 60606
*Counsel for the Village of Oak Park*

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.2.2**
**Eastern Division**

National Rifle Association of America, Inc., et al.

                Plaintiff,

v.                               Case No.: 1:08–cv–03697

                               Honorable Milton I. Shadur

The City of Chicago, et al.

                Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, October 28, 2008:

      MINUTE entry before the Honorable Milton I. Shadur:Motion to set a briefing schedule [16] is granted. Parties' submissions are due on or before December 1, 2008. Motion to strike jury demand [18] is entered and continued to November 10, 2008 at 9:15 a.m. Motion hearing held on 10/28/2008 Status hearing set for 12/4/2008 at 09:00 AM.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.2.2**
**Eastern Division**

National Rifle Association of America, Inc., et al.

                                              Plaintiff,

v.                                                      Case No.: 1:08–cv–03697
                                                       Honorable Milton I. Shadur

The City of Chicago, et al.

                                              Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Friday, November 7, 2008:

     MINUTE entry before the Honorable Milton I. Shadur:Motion to strike jury demand [18] is denied as moot. By agreement of the parties the jury demand is withdrawn. The November 10, 2008 status date is stricken. Status hearing set for 12/4/2008 at 09:00 AM.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 08 CV 3697 |
| v. | ) ) | Honorable Milton I. Shadur |
| THE CITY OF CHICAGO, | ) ) | Magistrate Judge Keys |
| Defendant. | ) ) ) ) ) | |

**MEMORANDUM IN SUPPORT OF CLAIM THAT THE SECOND
AMENDMENT IS INCORPORATED INTO THE FOURTEENTH
AMENDMENT SO AS TO BE APPLICABLE TO STATES AND LOCALITIES**

Plaintiffs, National Rifle Association of America, Inc., Dr. Kathryn Tyler, Anthony Burton, Van F. Welton, and Brett Benson, by and through their attorneys Stephen P. Halbrook and local counsel Stephen A. Kolodziej (the latter of Brenner, Ford, Monroe & Scott, Ltd.), pursuant to this Court's order entered October 29, 2008, respectfully file this memorandum in support of their claim in Count One of the Complaint that the Second Amendment is incorporated into the Fourteenth Amendment so as to be applicable to states and localities, and in support hereof state as follows:

**Introduction**

The City of Chicago bans possession of a handgun by requiring all firearms to be registered but prohibiting registration of a handgun. Municipal Code of Chicago, §§ 8-20-040(a), 8-20-050(c). Possession of an unregistered firearm is a crime punishable by minimum mandatory incarceration, fines, and confiscation. § 8-20-250.

Count One of the Complaint alleges that Chicago's handgun ban infringes on the right of the people to keep and bear arms as guaranteed by the Second Amendment to the U.S. Constitution, which is incorporated into the Fourteenth Amendment and is thus applicable to states and localities. Chicago denies that allegation and asserts that the Complaint fails to state a claim on which relief can be granted. Answer ¶ 21-22 & Defense.

To expedite the disposition of this action, the Court should decide this threshold legal issue at this early stage in the litigation.  If the Fourteenth Amendment protects the right to keep and bear arms, then Chicago's prohibition is void as a matter of law.

As the following demonstrates, the Second Amendment applies to the states through the Fourteenth Amendment.  *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), held the District of Columbia's prohibition on possession of handguns infringes on the Second Amendment right of the people to keep and bear arms.  While incorporation was not an issue, the Court suggests that the Second Amendment is incorporated in the Fourteenth Amendment.  First, *Heller* suggests that the right to have arms is a fundamental right, in that "the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right".  *Id.* at 2797.  Second, it notes that nineteenth-century decisions that the Second Amendment does not apply to the states "did not engage in the sort of Fourteenth Amendment inquiry required by our later cases." *Id.* at 2813 n.23.

*Heller* directly contradicts a Seventh Circuit decision that relied on the same nineteenth-century decisions to hold that the Second Amendment is not incorporated into the Fourteenth Amendment and therefore does not prohibit local firearms bans.  *See Quilici v. Village of Morton Grove*, 695 F.2d 261, 270 (7th Cir. 1982), *cert. denied*, 464 U.S. 863 (1983).  Contrary to *Quilici*, the Supreme Court clarifies in *Heller* that it has left open whether the Second Amendment is incorporated into the Fourteenth Amendment, and strongly suggests that it is.  *Quilici* therefore no longer applies on the issue of incorporation.  Instead, applying the "Fourteenth Amendment inquiry required by [the Supreme Court's] later cases," the right to keep and bear arms must be held applicable to the states.

## ARGUMENT

### I.     The Right To Keep And Bear Arms Is A Fundamental, Personal Right Explicitly Guaranteed By The Constitution.

*Heller* recognizes the right to keep and bear arms as an explicitly-guaranteed right in the same category as other fundamental rights.  "By the time of the founding, the right to have arms had become fundamental for English subjects." *Heller*, 128 S. Ct. at 2798.  Blackstone "cited the arms provision of the [English] Bill of Rights as one of the fundamental rights of Englishmen. . . . It was, he said, 'the natural right of resistance and self-preservation,' . . . and 'the right of having and using arms for self-preservation and defense. . . .'" *Id.* (citations omitted).

"[T]he Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right.  The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it 'shall not be infringed.'"  *Id.* at 2797.  Thus, "[t]his is not a right granted by the Constitution.  Neither is it in any manner dependent upon that instrument for its existence." *Id.* at 2797 (quoting *United States v. Cruikshank*, 92 U. S. 542, 553 (1876)).[1]

As with other fundamental rights, the explicit nature of "the right of the people" to keep and bear arms precludes application of the rational-basis standard of review.  As *Heller* states:

> Obviously, the same test could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms.  *See United States v. Carolene Products Co.,* 304 U.S. 144, 152, n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938) ("There may be narrower scope for operation of the presumption of constitutionality [i.e., narrower than that provided by rational-basis review] when legislation appears on its face to be within a specific prohibition of the Constitution, such as those of the first ten amendments . . .").

*Id.* at 2818 n.27.

*Heller* rejects Justice Breyer's proposed "judge-empowering 'interest-balancing inquiry' that 'asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests.'"  *Id.* at 2821.  Such a test would allow "arguments for and against gun control" and the upholding of a handgun ban "because handgun violence is a problem, [and] because the law is limited to an urban area. . . ."[2]  *Id.  Heller* responds:

> We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach.  The very enumeration of the right takes out of the hands of government -- even the Third Branch of Government -- the power to decide on a case-by-case basis whether the right is really worth insisting upon. . . . Like the First, it [the Second Amendment] is the very product of an interest-balancing by the people. . . . And whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.

*Id.*

---

[1]  *Cruikshank* made the same point about the First Amendment:  "The right of the people peaceably to assemble for lawful purposes existed long before the adoption of the Constitution of the United States. . . . It was not, therefore, a right granted to the people by the Constitution."  92 U.S. at 551-52.
[2]  Defendant's discovery requests in this case primarily seek information that would be relevant only if this "interest-balancing inquiry" was permissible.  It is not.

The fundamental character of the right to keep and bear arms, and why that right precludes a handgun ban, is tied to the protection of life.  *Heller* explains:

> the inherent right of self-defense has been central to the Second Amendment right. The handgun ban amounts to a prohibition of an entire class of "arms" that is overwhelmingly chosen by American society for that lawful purpose.  The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute.  Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," . . . would fail constitutional muster.

*Id.* at 2817-l8.

In sum, the Second Amendment protects the fundamental right to keep and bear arms, including the possession of handguns in the home for lawful purposes.  As with other constitutional rights, regulation of this right is subject to heightened scrutiny.

## II.     The Fourteenth Amendment Was Intended To Protect The Right To Keep And Bear Arms From State Prohibition.

*Heller* noted conflicting views in the antebellum era about whether the Bill of Rights applied to the states.  Some state supreme courts and commentators opined that the Second Amendment applied directly to the states. *Id.* at 2808-09.  *Barron v. Mayor of Baltimore*, 7 Pet. 243, 8 L.Ed. 672 (1833), resolved that the Bill of Rights did not apply directly to the states.  However, the Fourteenth Amendment was intended to overturn *Barron*.[3]

*Heller* explains the intent of the Reconstruction Congress to protect the right of freed slaves to keep and bear arms from state infringement by its proposal of the Fourteenth Amendment and passage of civil rights legislation.  "In the aftermath of the Civil War, there was an outpouring of discussion of the Second Amendment in Congress and in public discourse, as people debated whether and how to secure constitutional rights for newly free slaves."[4]  As the Court notes,

---

[3]  "Representative [John] Bingham . . . explained that he had drafted § 1 of the Fourteenth Amendment with the case of *Barron v. Mayor of Baltimore*, 7 Pet. 243 (1833), especially in mind."  *Monell v. Dep't of Social Services*, 436 U.S. 658,686-87 (1978).  On the same page of that speech, Bingham characterized "the right of the people to keep and bear arms" as one of the "limitations upon the power of the States . . . made so by the Fourteenth Amendment."  Cong. Globe, 42nd Cong., 1st  Sess., App. 84 (Mar. 31, 1871).

[4]  *Heller*, 128 S. Ct. at 2809-10, citing S. Halbrook, Freedmen, the Fourteenth Amendment, and the Right to Bear Arms, 1866-1876 (1998).  This book includes an exhaustive study of the original intent that the Fourteenth Amendment incorporates the Second Amendment.

"Blacks were routinely disarmed by Southern States after the Civil War.  Those who opposed these injustices frequently stated that they infringed blacks' constitutional right to keep and bear arms."[5]

*Heller* quotes the following from the Freedmen's Bureau Act of 1866:  "[T]he right . . . to have full and equal benefit of all laws and proceedings concerning personal liberty, personal security, and the acquisition, enjoyment, and disposition of estate, real and personal, including the constitutional right to bear arms, shall be secured to and enjoyed by all the citizens . . . without respect to race or color, or previous condition of slavery. . . ."[6]  The Act was passed by over two-thirds vote of the same Congress that proposed the Fourteenth Amendment,[7] and sought to guarantee the same rights.[8]

The Fourteenth Amendment protects from state infringement the "indefeasible right of personal security, personal liberty and private property."  *Griswold v. Connecticut,* 381 U.S. 479, 485 n.* (1965).[9]  As noted above, the Freedmen's Bureau Act listed "the constitutional right to

---

[5]  *Id.* at 2810.  *Heller* quotes the following 1866 documents: Report of the Commission of the Freedmen's Bureau (Kentucky seized arms from blacks; "Thus, the right of the people to keep and bear arms as provided in the Constitution is infringed."); Joint Committee on Reconstruction (firearms seized from freedmen in South Carolina, "in clear and direct violation of their personal rights as guaranteed by the Constitution of the United States, which declares that 'the right of the people to keep and bear arms shall not be infringed.'"); *The Loyal Georgian* (Augusta) ("[a]ll men, without distinction of color, have the right to keep and bear arms to defend their homes, families or themselves.").

*See also Bell v. Maryland*, 378 U.S. 226,247-48 & n.3 (1964) (Douglas, J., concurring) (Fourteenth Amendment intended to eradicate the black codes, under which "Negroes were not allowed to bear arms."); *Silveira v. Lockyer*, 328 F.3d 567,577 (9th Cir. 2003) (Kleinfeld, C.J., joined by C.J.s Kozinski, O'Scannlain, & T.G. Nelson, dissenting from denial of rehearing en banc) ("The 'Black Codes' often contained restrictions on firearm ownership and possession. . . . A substantial part of the debate in Congress on the Fourteenth Amendment was its necessity to enable blacks to protect themselves from White terrorism and tyranny in the South.").

[6]  *Id*. at 2810 (quoting 14 Stat. 176-177 (1866)).  *Heller* added:

> The understanding that the Second Amendment gave freed blacks the right to keep and bear arms was reflected in congressional discussion of the bill, with even an opponent of it saying that the founding generation "were for every man bearing his arms about him and keeping them in his house, his castle, for his own defense." Cong. Globe, 39th Cong., 1st Sess., 362, 371 (1866) (Sen. Davis).

[7]  Cong. Globe, 39th Cong., 1st Sess. 3842, 3850 (July 16, 1866).

[8]  *Jones v. Alfred H. Mayer Co*., 392 U.S. 409, 423-24, 436 (1968); *Regents of University of California v. Bakke*, 438 U.S. 265, 397-98 (1978) (Marshall, J.).

[9]  "[T]he right to personal security constitutes a 'historic liberty interest' protected substantively by the Due Process Clause."  *Estate of Porter by Nelson v. Illinois*, 36 F.3d 684, 688 (7th Cir. 1994). "Although it would be impossible to catalogue and to describe precisely each 'liberty' interest protected by the Due Process Clause, it can hardly be doubted that chief among them is the right to some degree of bodily integrity."  *White v. Rochford,* 592 F.2d 381, 383 (7th Cir. 1979).

bear arms" as included in the rights to "personal liberty, personal security, and . . . estate." *Heller*, 128 S. Ct. at 2810.

*Heller* noted that "Similar discussion attended the passage of the Civil Rights Act of 1871 and the Fourteenth Amendment." 128 S. Ct. at 2810. "With respect to the proposed Amendment, Senator Pomeroy described as one of the three 'indispensable' 'safeguards of liberty . . . under the Constitution' a man's 'right to bear arms for the defense of himself and family and his homestead."[10] The Court quoted similar material on the origins of the Civil Rights Act.[11]

*Heller* concluded: "It was plainly the understanding in the post-Civil War Congress that the Second Amendment protected an individual right to use arms for self-defense." *Id.* at 2811. It was further the understanding that this right would be protected from state violation by the Fourteenth Amendment.

### III. Nineteenth-Century Precedents Held that the Bill Of Rights Does Not Apply Directly to the States, But Did Not Decide Whether Such Guarantees Are Incorporated Into the Fourteenth Amendment.

#### A. *Cruikshank, Presser,* and *Miller* "Did Not Engage in the Sort of Fourteenth Amendment Inquiry Required by Our Later Cases"

*Heller* clarifies that the Court has never decided whether the Second Amendment applies to the states through the Fourteenth Amendment, but strongly suggests that it does. A trio of nineteenth-century precedents held that the First, Second, and Fourth Amendments do not apply to the states directly, but did not consider whether the rights therein are incorporated into the Fourteenth Amendment so as to prohibit violation of such rights by the states.

*United States v. Cruikshank,* 92 U.S. 542, 553 (1876), "in the course of vacating the convictions of members of a white mob for depriving blacks of their right to keep and bear arms, held that the Second Amendment does not by its own force apply to anyone other than the Federal Government." *Heller,* 128 S. Ct. at 2812. It stated about the Second Amendment right of "bearing arms for a lawful purpose" that "the people [must] look for their protection against any violation by their fellow-citizens of the rights it recognizes" to the States' police power. *Id.* at 2812-13 (quoting *Cruikshank*, 92 U.S. at 553).

---

[10] *Id.* at 2810-11 (citing Cong. Globe, 39th Cong., 1st Sess., 1182 (1866)).
[11] *Id.* at 2810-11 (quoting Rep. Butler on the intent "to enforce the well-known constitutional provision guaranteeing the right of the citizen to 'keep and bear arms.'").

*Heller* commented:  "With respect to *Cruikshank's* continuing validity on incorporation, a question not presented by this case, we note that *Cruikshank* also said that the First Amendment did not apply against the States and did not engage in the sort of Fourteenth Amendment inquiry required by our later cases."  *Id.* at 2813 n.23.  *Heller* added that two subsequent decisions "reaffirmed that the Second Amendment applies only to the Federal Government."  *Id.* (citing *Presser v. Illinois*, 116 U. S. 252, 265 (1886), and *Miller v. Texas*, 153 U. S. 535, 538 (1894)) .

*Heller* quoted *Presser* as having held that forbidding military organizations or armed parades in cities without authorization did not violate the right to bear arms, concluding:  "*Presser* said nothing about the Second Amendment's meaning or scope, beyond the fact that it does not prevent the prohibition of private paramilitary organizations."  *Id.* at 2813.

More specifically, *Presser* held that a prohibition on unlicensed armed marches in cities "do[es] not infringe the right of the people to keep and bear arms," adding that the Second Amendment did not, in and of itself, limit state action.[12]   116 U.S. at 265.  *Presser* made no mention of the Fourteenth Amendment in this discussion.

*Presser* next considered whether the ban on unlicensed armed parades violated the privileges-or-immunities clause of the Fourteenth Amendment, given that the First Amendment protected the right to assemble to petition for a redress of grievances.  Since armed marches had no such purpose, and the states were entitled to suppress armed mobs, the Court rejected any such First Amendment right.  *Id.* at 266-68.

Finally, *Presser* found the argument that the act "deprives him of either life, liberty, or property without due process of law . . . is so clearly untenable as to require no discussion."  *Id.* at 268.  As *Heller* notes, this Fourteenth Amendment due process claim was unrelated to the claim concerning the right to keep and bear arms.  *Heller*, 128 S. Ct. at 2813.[13]

*Miller v. Texas*, *supra*, agreed that the Second and Fourth Amendments did not apply directly to the states, and refused to consider whether these provisions applied to the states through the Fourteenth Amendment.  *Miller*, 153 U.S. 535, 538.  Specifically, "it is well settled that the restrictions of these [Second and Fourth] amendments operate only upon the federal power, and

---

[12]  "But a conclusive answer to the contention that *this amendment* [the Second] prohibits the legislation in question lies in the fact that *the amendment* is a limitation only upon the power of congress and the national government, and not upon that of the state."  116 U.S. at 265 (emphasis added).
[13]  Presser's brief did not raise the issue of whether the Fourteenth Amendment protects the individual right to keep and bear arms.  S. Morrison, "Does the Fourteenth Amendment Incorporate the Bill of Rights?" 2 Stanford L. Rev. 140, 147 (1949).

have no reference whatever to proceedings in state courts." *Id.* at 538. *Miller* explicitly stated that it was not deciding whether the Fourteenth Amendment protects Second and Fourth Amendment rights:  "If the Fourteenth Amendment limited the power of the States as to such rights [to bear arms and against warrantless searches] as pertaining to citizens of the United States, we think it was fatal to this claim that it was not set up in the trial court. . . . [A] privilege or immunity under the constitution of the United States cannot be set up here . . . when suggested for the first time in a petition for rehearing after judgment."[14]

*Miller* clarifies that the Court did not, in that case or in *Cruikshank* and *Presser*, consider whether the Second Amendment is incorporated into the Fourteenth.  To the contrary, that trio of cases decided only that the First, Second, and Fourth Amendments did not apply directly to the states.  Had the preceding cases rejected incorporation, *Miller* would have said so; instead, it refused to consider the issue.  And *Miller* refused to consider incorporation under the privileges-or-immunities clause of the Fourteenth Amendment -- analysis under the due process clause of the Fourteenth Amendment would not occur until years later.

No wonder, as *Heller* comments, that such cases as *Cruikshank* "did not engage in the sort of Fourteenth Amendment inquiry required by our later cases."  128 S. Ct. at 2813 n.23.  It is incumbent on this Court to make such an inquiry.

**B.      Heller Supersedes Circuit Precedent Rejecting Incorporation**

"We must, with exceptions not applicable here, decide cases in light of intervening Supreme Court decisions." *Consolidation Coal Co. v. Office of Workers' Comp. Programs*, 54 F.3d 434,437 (7th Cir. 1995).  *Heller* undermines adverse Seventh Circuit precedent on the meaning of the Second Amendment and on whether it is incorporated into the Fourteenth Amendment.

*Heller*'s holding that the Second Amendment guarantees an individual right to keep and bear arms, including handguns, squarely overrules the Seventh Circuit's ruling that "the right to

---

[14]  *Id.* at 538-39 (citing, *inter alia*, *Spies v. Illinois*, 123 U.S. 131 (1887)).  *Spies* reiterated that the Bill of Rights was inapplicable to state action.  123 U.S. at 166. For the first time ever, it was also argued before the Court that the Fourteenth Amendment incorporated the Bill of Rights, thereby prohibiting the States from violating "the privilege of freedom of speech and press – of peaceable assemblages of the people – of keeping and bearing arms--of immunity from search and seizure--immunity from self-accusation, from second trial--and privilege of trial by due process of law." *Id.* at 150-51; *see also* 166-67.  *Spies* refused to decide that issue because it was not raised in the trial court. *Id.* at 181.  *See* Akhil Reed Amar, "The Bill of Rights and the Fourteenth Amendment," 101 Yale Law Journal 1193, 1259-60, 1270-72 (April 1992).

keep and bear handguns is not guaranteed by the second amendment." *Quilici v. Village of Morton Grove*, 695 F.2d 261, 270 (7th Cir. 1982), *cert. denied*, 464 U.S. 863 (1983).

*Quilici* relied primarily on *Presser* to hold "that the second amendment does not apply to the States . . . ." *Id. Presser* did indeed so hold, but *Presser* never considered whether the Second Amendment applies to the states through the Fourteenth Amendment. In misreading *Presser* to have resolved the issue, *Quilici* ignored the clarification to the contrary in *Miller v. Texas* that the Second Amendment did not apply directly to the states, but that whether it applied through the Fourteenth Amendment was undecided.

*Quilici* rejected the arguments "that *Presser* is no longer good law or would have been decided differently today." 695 F.2d at 270. While *Presser* remains good law for the limited proposition that the Bill of Rights does not apply *directly* to the states, *Heller* makes clear that it would be decided differently today -- such cases "did not engage in the sort of Fourteenth Amendment inquiry required by our later cases." 128 S. Ct. at 2813 n.23. It is unremarkable that jurisprudence evolves over time and that later cases require new inquiries not known when earlier cases were decided.

*Quilici* fails to cite *Miller v. Texas,* which – consistent with *Cruikshank* and *Presser* – held that the Second and Fourth Amendments did not *directly* apply to the states. 153 U.S. at 538. *Miller* explicitly stated that it was *not* deciding the question of whether the Fourteenth Amendment protects the right to keep and bear arms. *Id.* at 538-39.

*Cruikshank, Presser*, and *Miller* "came well before the Supreme Court began the process of incorporating certain provisions of the first eight amendments into the Due Process Clause of the Fourteenth Amendment, and . . . they ultimately rest on a rationale equally applicable to all those amendments . . . ." *United States v. Emerson,* 270 F.3d 203, 221 n.13 (5th Cir. 2001), *cert. denied*, 536 U.S. 907 (2002) (holding that the Second Amendment protects individual rights).

Similarly noting that *Cruikshank* and *Presser* were "decided before the Supreme Court held that the Bill of Rights is incorporated by the Fourteenth Amendment's Due Process Clause," the Ninth Circuit observed:

> Following the now-rejected *Barron v. Baltimore*, 32 U.S. (7 Pet.) 243, 8 L.Ed. 672 (1833) (holding that the Bill of Rights did not apply to the states), *Cruikshank* and *Presser* found that the Second Amendment restricted the activities of the federal government, but not those of the states. One point about which we are in agreement with the Fifth Circuit is that *Cruikshank* and *Presser* rest on a principle that is now thoroughly discredited. *See Emerson*, 270 F.3d at 221 n.13.

*Silveira v. Lockyer*, 312 F.3d 1052, 1067, *reh. denied*, 328 F.3d 567 (9th Cir. 2003), *cert. denied*, 540 U.S. 1046 (2003).[15]

Rather than characterizing those old cases as resting on a discredited principle, it suffices to note that they are simply inapplicable. They held only that the Bill of Rights does not apply directly to the states, and did not consider whether the Fourteenth Amendment incorporates those rights. For that, one must look to twentieth-century jurisprudence.

Circuit Judge Coffey's dissenting opinion in *Quilici*, which is now vindicated by *Heller*, sought to apply that jurisprudence as follows:

> The majority cavalierly dismisses the argument that the right to possess commonly owned arms for self-defense and the protection of loved ones is a fundamental right protected by the Constitution. Justice Cardozo in *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 151, 82 L. Ed. 288 (1937), defined fundamental rights as those rights "implicit in the concept of ordered liberty." Surely nothing could be more fundamental to the "concept of ordered liberty" than the basic right of an individual, within the confines of the criminal law, to protect his home and family from unlawful and dangerous intrusions.

*Quilici*, 695 F.2d at 278 (Coffey, C.J., dissenting).[16]

Finally, *Quilici* rejected the normal enquiry into what was "intended by the Framers and made part of the Constitution upon the States' ratification of those of those [Civil War] Amendments . . . ." *Metro. Hous. Dev. Corp. v. Arlington Heights*, 616 F.2d 1006, 1010 (7th Cir. 1980).[17] *Quilici* stated:

---

[15]  We should . . . revisit whether the requirements of the Second Amendment are incorporated into the Due Process Clause of the Fourteenth Amendment." *Nordyke v. King*, 319 F.3d 1185, 1193 & n.3 & 4 (9th Cir. 2003) (Gould, C.J., specially concurring) (discussing literature on incorporation).

[16] Judge Coffey further wrote (*id*. at 280):

> A fundamental part of our concept of ordered liberty is the right to protect one's home and family against dangerous intrusions subject to the criminal law. Morton Grove, acting like the omniscient and paternalistic "Big Brother" in George Orwell's novel, "1984", cannot, in the name of public welfare, dictate to its residents that they may not possess a handgun in the privacy of their home.

[17]  "The Court has not hesitated to re-examine past decisions according the Fourteenth Amendment a less central role in the preservation of basic liberties than that which was contemplated by its Framers when they added the Amendment to our constitutional scheme." *Malloy v. Hogan*, 378 U.S. 1,5 (1964). As *Heller* itself states, citing incorporation cases, 128 S. Ct. at 2816:

> We conclude that nothing in our precedents forecloses our adoption of the original understanding of the Second Amendment. It should be unsurprising that such a significant matter has been for so long judicially unresolved. For most of our history, the

Appellants devote a portion of their briefs to historical analysis of the development of English common law and the debate surrounding the adoption of the second and fourteenth amendments. This analysis has no relevance on the resolution of the controversy before us. Accordingly, we decline to comment on it, other than to note that we do not consider individually owned handguns to be military weapons.

*Quilici,* 695 F.2d at 270 n.8.

Yet a considerable portion of *Heller* is devoted to the same "historical analysis" that *Quilici* rejected. As shown by *Heller*'s discussion of Reconstruction and the intent of the Fourteenth Amendment discussed above, this historical background contradicts *Quilici's* holding against incorporation. 128 S. Ct. at 2809-11. Much more could be added to that discussion. For instance, when Senator Jacob M. Howard introduced the Fourteenth Amendment to the Senate in 1866, he referred to

the personal rights guaranteed and secured by the first eight amendments of the Constitution; such as . . . the right to keep and bear arms. . . . The great object of the first section of this amendment is, therefore, to restrain the power of the States and compel them at all times to respect these great fundamental guarantees.

Cong. Globe, 39th Cong., 1st Sess. 2766 (May 23, 1866), *quoted in Duncan v. Louisiana*, 391 U.S. 145, 166-67 (1968) (Black, J., concurring).

Following *Quilici,* the Seventh Circuit in *Sklar v. Byrne,* 727 F.2d 633,637 (7th Cir. 1984), upheld Chicago's handgun ban, stating: "The Chicago handgun ordinance does not impinge upon any federal constitutional right to bear arms." Given that the ordinance "does not impinge upon fundamental rights," *Sklar* upheld it under the rational-basis test in reliance on the legislative finding that "handguns and other firearms play a major role in crimes and accidental deaths and injuries." *Id.* at 639-40. *Sklar* thus applied the very same rational basis and interesting-balancing tests that *Heller* rejected.

In sum, *Heller* squarely overruled the holding in *Quilici* that the Second Amendment does not guarantee an individual right to possess handguns. Further, *Heller* supersedes the holding in *Quilici* that such rights are not incorporated into the Fourteenth Amendment, in that *Quilici* relied on cases that "did not engage in the sort of Fourteenth Amendment inquiry required by our later

---

Bill of Rights was not thought applicable to the States. . . . Other provisions of the Bill of Rights have similarly remained unilluminated for lengthy periods.

cases." *Heller*, 128 S. Ct. at 2813 n.23. The following sets forth the inquiry that is required by those later cases.

IV. **The "Fourteenth Amendment Inquiry Required By Our Later Cases" Mandates Incorporation of the Second Amendment.**

A right is "fundamental" if it is "explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17, 33 (1973). As such, the Second Amendment should be recognized as incorporated into the Fourteenth Amendment.

Beginning in 1897, the Supreme Court has found substantive Bill of Rights guarantees incorporated into the due process clause of the Fourteenth Amendment. The reasoning in these opinions is *a priori*, requiring only a sentence or two. Its basis is that the respective rights have explicit constitutional recognition.

*Heller* referred to "the historical reality that the Second Amendment was not intended to lay down a 'novel principl[e]' but rather codified a right 'inherited from our English ancestors. . . .'" *Id.* at 2801-02 (quoting *Robertson v. Baldwin*, 165 U.S. 275, 281 (1897)). *Robertson* referred to "the right of the people to keep and bear arms (article 2)" among other Bill of Rights guarantees as having been incorporated "into the fundamental law." 165 U.S. at 281-82.

Just after the above decision, *Chicago B. & Q. R. Co. v. Chicago,* 166 U.S. 226 (1897), held that the just compensation guarantee of the Fifth Amendment is incorporated into the Fourteenth Amendment's due process clause. The Court referred to "limitations on such power which grow out of the essential nature of all free governments" and "implied reservations of individual rights . . . which are respected by all governments entitled to the name." *Id.* at 237 (citation omitted). It relied on a decision by Justice Jackson as a circuit judge explaining that the Fourteenth Amendment put "limitations and restraints . . . upon their [states'] power in dealing with individual rights. . . ." 166 U.S. at 238-39 (quoting *Scott v. Toledo*, 36 F. 385, 395-96 (C.C. Ohio 1888)).[18]

The First Amendment rights of free speech and press were incorporated into the Fourteenth Amendment in *Gitlow v. New York*, 268 U.S. 652, 666 (1925), in a single sentence: "freedom of

---

[18] In the paragraph before the above, Judge Jackson explained, 36 F. at 395:

> The first 10 amendments to the constitution recognized and secured to all citizens certain rights, privileges, and immunities essential to their security. . . . So far as the states were concerned, citizens of the United States were . . . left without adequate protection and security in their persons and property. The fourteenth amendment was adopted to remedy and correct this defect in the supreme organic law of the land.

12

speech and of the press . . . are among the fundamental personal rights and 'liberties' protected by the due process clause of the 14th Amendment from impairment by the states."[19]

*De Jonge v. Oregon,* 299 U.S. 353, 364 (1937), recognized the incorporation of the right to assemble into the Fourteenth Amendment as follows:

> The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental. As this Court said in *United States v. Cruikshank*, 92 U.S. 542, 552, 23 L. Ed. 588: "The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances." . . . [T]he right is one that cannot be denied without violating those fundamental principles of liberty and justice which lie at the base of all civil and political institutions,--principles which the Fourteenth Amendment embodies in the general terms of its due process clause.[20]

Freedom of religion required little discussion to be incorporated. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), held:

> The fundamental concept of liberty embodied in that [Fourteenth] Amendment embraces the liberties guaranteed by the First Amendment. The First Amendment declares that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof. The Fourteenth Amendment has rendered the legislatures of the states as incompetent as Congress to enact such laws.[21]

The Fourth Amendment, which protects both substantive and procedural rights, was recognized as incorporated by *Wolf v. Colorado*, 338 U.S. 25, 27-28 (1949),[22] as follows:

> The security of one's privacy against arbitrary intrusion by the police--which is at the core of the Fourth Amendment--is basic to a free society. It is therefore implicit in "the concept of ordered liberty" and as such enforceable against the States through the Due Process Clause. The knock at the door, whether by day or by night, as a prelude to a search, without authority of law but solely on the authority of the police, did not need the commentary of recent history to be condemned as inconsistent with the conception of human rights enshrined in the history and the basic constitutional documents of English-speaking peoples.

While most procedural guarantees of the Bill of Rights have been incorporated, the grand jury indictment clause has not.[23] *Hurtado v. California,* 110 U.S. 516, 532 (1884), explained that

---

[19]  *See also Fiske v. Kansas*, 274 U.S. 380, 387 (1927) ("the act is an arbitrary and unreasonable exercise of the police power of the state, unwarrantably infringing the liberty of the defendant in violation of the due process clause of the 14th Amendment.").

[20]  As noted, *Cruikshank* made similar statements about the Second Amendment. 92 U.S. at 553.

[21]  Accord, *Everson v. Bd. of Educ.*, 330 U.S. 1, 8 (1947) (establishment clause).

[22]  *Overruled on other grounds*, *Mapp v. Ohio*, 367 U.S. 643 (1961).

due process "must be held to guaranty, not particular forms of procedure, but the very substance of individual rights to life, liberty, and property." But in deciding the Sixth Amendment right to jury trial in a criminal case to be incorporated, *Duncan v. Louisiana*, 391 U.S. 145, 147-48 (1968), noted about the due process clause: "In resolving conflicting claims concerning the meaning of this spacious language, the Court has looked increasingly to the Bill of Rights for guidance; many of the rights guaranteed by the first eight Amendments to the Constitution have been held to be protected against state action by the Due Process Clause of the Fourteenth Amendment."[24]

Substantive guarantees in the Bill of Rights are not subject to the question of whether a particular procedure is necessary for due process. In recognizing Bill of Rights guarantees to be incorporated, the Court relied on their status as such and did not purport to rely on evidence produced in discovery to determine if a constitutional right had enough importance or should really exist.[25]

The Second Amendment does not represent an inferior right which a court may subjectively relegate as beneath the usual rules of incorporation. "To view a particular provision of the Bill of Rights with disfavor inevitably results in a constricted application of it. This is to disrespect the Constitution." *Ullmann v. United States*, 350 U.S. 422, 428-29 (1956). No constitutional right is "less 'fundamental' than" others, and "we know of no principled basis on which to create a hierarchy of constitutional values. . . ." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc*., 454 U.S. 464, 484 (1982).

*Planned Parenthood v. Casey*, 505 U.S. 833, 848 (1992), explains that the Fourteenth Amendment protects specific Bill of Rights guarantees but is not limited to them:

> "[T]he full scope of the liberty guaranteed by the Due Process Clause cannot be found in or limited by the precise terms of the specific guarantees elsewhere provided in the Constitution. This 'liberty' is not a series of isolated points pricked out in terms of the taking of property; the freedom of speech, press, and religion; the right to

---

[23] In addition, "The Court has not held that the right to jury trial in civil cases is an element of due process applicable to state courts through the Fourteenth Amendment." *Curtis v. Loether*, 415 U.S. 189, 192 n.6 (1974) (Seventh Amendment right where the value in controversy exceeds $20).

[24] *Accord Benton v. Maryland*, 395 U.S. 784, 794 (1969) (holding "that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment.").

[25] *See Edwards v. South Carolina*, 372 U.S. 229,235 (1963) (the right to petition for a redress of grievances is incorporated as "it has long been established that these First Amendment freedoms are protected by the Fourteenth Amendment from invasion by the States.").

keep and bear arms; the freedom from unreasonable searches and seizures; and so on." (Citation omitted.)

In sum, since the Second Amendment encompasses an explicitly-guaranteed, substantive right, it meets the standards of the Supreme Court's jurisprudence on incorporation of fundamental rights into the Fourteenth Amendment.  Accordingly, a state or local prohibition on possession of a handgun violates the right to keep and bear arms guaranteed by the Second and Fourteenth Amendments.

<u>**CONCLUSION**</u>

*Heller* directs the courts to "engage in the sort of Fourteenth Amendment inquiry required by our later cases." 128 S. Ct. at 2813 n.23.  *Heller* and the inquiry it requires supersedes *Quilici v. Village of Morton Grove*, 695 F.2d 261,270 (7th Cir. 1982).  As a matter of law, Chicago's handgun ban violates the Second Amendment as incorporated into the Fourteenth Amendment. Accordingly, Count One of the Complaint states a claim on which relief may be granted and the Defense in the Answer that it does not should be overruled.  Moreover, no discovery is relevant in regard to Count One.

This Court should issue an appropriate order embodying each of the above determinations and conclusions of law.  In the alternative, should the Court decide that the Second Amendment is not incorporated into the Fourteenth Amendment and dismiss Count I, the Plaintiffs reserve all rights of appeal with respect to that dismissal.

<div style="margin-left:40%">

Respectfully Submitted,

**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al.**
Plaintiffs
By:___s/  Stephen A. Kolodziej
      Stephen A. Kolodziej
      One of Its Attorneys

</div>

| Lead Counsel | Local Counsel |
|---|---|
| **Stephen P. Halbrook** | **Stephen A. Kolodziej** |
| 3925 Chain Bridge Road, Suite  403 | Brenner, Ford, Monroe & Scott, Ltd. |
| Fairfax, Virginia 22030 | 33 North Dearborn Street, Suite 300 |
| Tel.: 703-352-7276 | Chicago, Illinois 60602 |
| Fax: 703-359-0938 | Tel.:  312-781-1970 |
| | Fax: 312-781-9202 |

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION | ) | |
| OF AMERICA, INC., DR. KATHRYN TYLER, | ) | |
| ANTHONY BURTON, VAN F. WELTON, | ) | No. 08 CV 3697 |
| and BRETT BENSON, | ) | |
| | ) | Judge Shadur |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF FILING

TO:  Counsel of record
(See attached service list)

Please take notice that on **December 1, 2008,** we filed with the Clerk of the United States District Court for the Northern District of Illinois Plaintiffs' **Memorandum In Support Of Claim That The Second Amendment Is Incorporated Into The Fourteenth Amendment So As To Be Applicable To States And Localities**, a copy of which has been served upon you**.**

**BRENNER, FORD, MONROE & SCOTT, LTD.**
33 North Dearborn Street, Suite 300
Chicago, Illinois 60602
Tel.:  312-781-1970
Fax: 312-781-9202

## CERTIFICATE OF SERVICE

I, Stephen A. Kolodziej, an attorney, state under oath that service of the foregoing document was accomplished pursuant to ECF as to Filing Users on December 1, 2008, and that additional copies of said documents were served by mailing to the above-named parties at the above-listed address and depositing same in the U.S. Mail at 33 North Dearborn Street, Chicago, Illinois on the 1st day of December, 2008, with proper postage prepaid.

s/ Stephen A. Kolodziej
Stephen A. Kolodziej
Counsel for Plaintiffs

*NRA vs. City of Chicago, et al.*
*Court No. 08 CV 3697*

## SERVICE LIST

Alan Gura
Gura & Possessky, PLLC
101 North Columbus Street
Suite 405
Alexandria, VA  22314
Tel:      (703)   835-9085
Fax:      (703)   997-7665

David G. Sigale
Law Firm of David G. Sigale, P.C.
4300 Commerce Court
Suite 300-3
Lisle, Illinois  60532
Tel:      (630)   452-4547
Fax:      (630)   596-4445

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street
Suite 1230
Chicago, Illinois  60602

William N. Howard, Esq.
 FREEBORN & PETERS, LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606
Tel:      (312)   360-6415

Stephen P. Halbrook
3925 Chain Bridge Road, Suite 403
Fairfax, VA  22030
Tel:      (703)   352-7276
Fax:      (703)   359-0938

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.2.2**
**Eastern Division**

National Rifle Association of America, Inc., et al.

<div align="center">Plaintiff,</div>

v.                                                          Case No.: 1:08−cv−03697
                                                            Honorable Milton I. Shadur

The City of Chicago, et al.

<div align="center">Defendant.</div>

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Wednesday, December 3, 2008:

     MINUTE entry before the Honorable Milton I. Shadur:The December 4, 2008 status date is stricken. This Court will set a new status date after the completion of the trial that it is currently conducting.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.2.2**
**Eastern Division**

National Rifle Association of America, Inc., et al.

                       Plaintiff,

v.                                      Case No.: 1:08–cv–03697
                                      Honorable Milton I. Shadur

The City of Chicago, et al.

                       Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Thursday, December 4, 2008:

      MINUTE entry before the Honorable Milton I. Shadur:Enter Memorandum Opinion and Order. Status hearing set for 12/9/2008 at 08:45 AM.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.  08 C 3696 |
| VILLAGE OF OAK PARK, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) ) | |
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.  08 C 3697 |
| CITY OF CHICAGO, | ) ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Fresh from a historic victory for their cause before the Supreme Court in <u>Dist. of Columbia v. Heller</u>, 128 S.Ct. 2783 (2008), the National Rifle Association of America, Inc. ("Association") and some of its members filed these two lawsuits just one day after the <u>Heller</u> decision.[1]  These cases have taken aim at the gun control ordinances in the City of Chicago and the

---

[1] Even so, the Association was not quite as quick on the trigger as counsel for the plaintiffs in <u>McDonald v. City of Chicago</u>, 08 C 3645, who actually filed suit here on the same morning that <u>Heller</u> was decided in Washington!  What is eminently plain is that both sets of lawyers--the counsel who are handling both of these cases and another set of lawyers in <u>McDonald</u>--came loaded for bear, on the assumption that the Supreme Court majority would rule as it did.

Village of Oak Park.  Although counsel's constitutional arguments
are set out in 15 well-written pages,[2] they may be encapsulated
in a simple syllogism:

> 1.  Under Heller, the Second Amendment's guaranty of
> the right to keep and bear arms has invalidated the District
> of Columbia's prohibition on the possession of handguns.

> 2.  Almost all of the guaranties that apply against the
> federal government and its agencies under the Bill of Rights
> (the first ten amendments to the Constitution) have been
> held to have been incorporated in the guaranties that apply
> against the states and their subordinate units of government
> under the Fourteenth Amendment.

> 3.  Ergo, the Second Amendment's guaranty of the right
> of the people to keep and bear arms, as construed in Heller,
> also extends to Oak Park and Chicago via the Fourteenth
> Amendment.  QED.

That approach, however, ignores a fundamental and critical
jurisprudential curb that confronts a district judge such as the
writer who is asked to confirm that third proposition--the
judge's duty to follow established precedent in the Court of
Appeals to which he or she is beholden, even though the logic of

---

[2]  After brief introductory paragraphs, the remaining 14
pages of the two memoranda are word-for-word replicas of each
other.  This memorandum order will accordingly cite only to the
memorandum filed in the City of Chicago case.

more recent caselaw may point in a different direction.  As stressed in <u>Sabin v. United States Dep't of Labor</u>, 509 F.3d 376, 378 (emphasis in original)--one of many cases standing for the same proposition:[3]

> The Supreme Court has told the lower courts that they are not to anticipate the overruling of a Supreme Court decision, but are to consider themselves bound by it until and unless <u>the Court</u> overrules it, however out of step with current trends in the relevant case law the case may be.

That posture of the Court of Appeals vis-a-vis the Supreme Court is of course echoed in the posture of this Court vis-a-vis our Court of Appeals.

In this instance our Court of Appeals has squarely upheld the constitutionality of a ban on handguns a quarter century ago in <u>Quilici v. Village of Morton Grove</u>, 695 F.2d 261 (7th Cir. 1982).  And in reaching that conclusion, <u>Quilici</u>, <u>id</u>. at 269 relied on the Supreme Court's decision in <u>Presser v. Illinois</u>, 116 U.S. 252, 265 (1886):

> It is difficult to understand how appellants can assert that <u>Presser</u> supports the theory that the second amendment right to keep and bear arms is a fundamental right which the state cannot regulate when the Presser decision plainly states that "[t]he Second Amendment declares that it shall not be infringed, but this... means no more than that it shall not be infringed by Congress.  This is one of the amendments that has no other effect than to restrict the powers of the National government...."

---

[3]  See also, e.g., <u>United States v. Santiago-Ochoa</u>, 447 F.3d 1015, 1020-21 (7th Cir. 2006).

3

In doing so, _Quilici_, _id_. at 270 rejected arguments (1) that later Supreme Court decisions that had incorporated other Bill of Rights provisions into the Fourteenth Amendment had effectively overruled _Presser_ and (2) that the entire Bill of Rights had been implicitly incorporated into the Fourteenth Amendment to apply to the states.

Indeed, _Heller_ itself (128 S.Ct. at 2812-13) confirmed that both _Presser_ and the Court's predecessor decision in _United States v. Cruikshank_, 92 U.S. 542 (1876) have held that the Second Amendment applies only to the federal government.  _Heller_, _id_. at 2812 described _Cruikshank_ as having "held that the Second Amendment does not by its own force apply to anyone other than the Federal Government," after which _Heller_, _id_. at 2813 n.23 went on to state:

> With respect to _Cruikshank_'s continuing validity on incorporation, a question not presented by this case, we note that _Cruikshank_ also said that the First Amendment did not apply against the States and did not engage in the sort of Fourteenth Amendment inquiry required by our later cases.  Our later decisions in _Presser v. Illinois_, 116 U.S. 252, 265, 6 S.Ct. 580, 29 L.Ed. 615 (1886) and _Miller v. Texas_, 153 U.S. 535, 538, 14 S.Ct. 874, 38 L.Ed. 812 (1894), reaffirmed that the Second Amendment applies only to the Federal Government.

To be sure, as the just-quoted language reflects, both _Cruikshank_ and _Presser_ long antedated the more modern jurisprudence of implied incorporation that began with the initial suggestion in _Gitlow v. New York_, 268 U.S. 652 (1925)

4

that the First Amendment was brought into play against the states via the Fourteenth Amendment, and then continued with selective incorporation thereafter.  But <u>Heller</u> deliberately and properly did not opine on the subject of incorporation vel non of the Second Amendment (after all, that question was not before the Court).  It is simply wrong--an overreaching obviously prompted by the enthusiasm of advocacy--for plaintiffs' counsel to state (Mem. 8-9, emphasis added):

> <u>Heller</u>'s holding that the Second Amendment guarantees an individual right to keep and bear arms, including handguns, <u>squarely overrules</u> the Seventh Circuit's ruling that "the right to keep and bear handguns is not guaranteed by the second amendment."

This Court should not be misunderstood as either rejecting or endorsing the logic of plaintiffs' argument--it may well carry the day before a court that is unconstrained by the obligation to follow the unreversed precedent of a court that occupies a higher position in the judicial firmament.  But as later-to-be-Justice Oliver Wendell Holmes famously observed in 1881 in <u>The Common Law</u>:

> The life of the law has not been logic:  it has been experience.

In sum, this Court--duty bound as it is to adhere to the holding in <u>Quilici</u>, rather than accepting plaintiffs' invitation to "overrule" it (!)--declines to rule that the Second Amendment is incorporated into the Fourteenth Amendment so as to be applicable to the Chicago or Oak Park ordinances.  These actions

5

are set for a status hearing at 8:45 a.m. December 9, 2008 to discuss further proceedings.

_____
Milton I. Shadur
Senior United States District Judge

Date:  December 4, 2008

6

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.2.2**
**Eastern Division**

National Rifle Association of America, Inc., et al.

          Plaintiff,

v.                              Case No.: 1:08–cv–03697

                              Honorable Milton I. Shadur

The City of Chicago, et al.

          Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, December 9, 2008:

      MINUTE entry before the Honorable Milton I. Shadur:Status hearing held on 12/9/2008. Counsel is to submit a draft order for consideration. Status hearing set for 12/18/2008 at 08:45 AM.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION | ) | |
| OF AMERICA, INC., DR. KATHRYN TYLER, | ) | |
| ANTHONY BURTON, VAN F. WELTON, | ) | |
| and BRETT BENSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  08 CV 3697 |
| | ) | |
| | ) | Judge Milton I. Shadur |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## RULE 21 MOTION TO DROP PARTY PLAINTIFF

NOW COMES plaintiff Anthony Burton ("Burton"), by and through his attorneys Stephen P. Halbrook, Ph. D. and local counsel Stephen A. Kolodziej (the latter of Brenner, Ford, Monroe & Scott, Ltd.), and moves the court pursuant to Fed. R. Civ. Pro. 21 to drop him as a party plaintiff to this case, with the case to continue as to all other plaintiffs.

Respectfully Submitted,

**ANTHONY BURTON,**
Plaintiff


By:      s/  Stephen A. Kolodziej
         Stephen A. Kolodziej
         One of His Attorneys

Lead Counsel
**Stephen P. Halbrook**
3925 Chain Bridge Road, Suite  403
Fairfax, Virginia 22030
Tel.: 703-352-7276
Fax:  703-359-0938

Local Counsel:
**Stephen A. Kolodziej**
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn Street
Suite 300
Chicago, Illinois 60602
Tel.:  312-781-1970
Fax:  312-781-9202

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION | ) | |
| OF AMERICA, INC., DR. KATHRYN TYLER, | ) | |
| VAN F. WELTON, | ) | |
| and BRETT BENSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  08 CV 3697 |
| | ) | |
| | ) | Judge Milton I. Shadur |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**STIPULATION OF DISMISSAL OF COUNT III
OF THE COMPLAINT WITH PREJUDICE**

Plaintiffs National Rifle Association of America, Inc., Dr. Kathryn Tyler, Van F. Welton and Brett Benson (collectively, "Plaintiffs"), through their counsel, Stephen Halbrook and Stephen A. Kolodziej (the latter of Brenner, Ford, Monroe & Scott, Ltd.), and Defendant City of Chicago, through its counsel, Andrew W. Worseck, file this Stipulation of Dismissal of Count III of the Complaint With Prejudice, and in support hereof state as follows:

1.      Plaintiffs have determined that they no longer wish to proceed with Count III of the Complaint, and wish to dismiss that count, with prejudice.

2.      Defendant City of Chicago does not object to the dismissal of Count III, with prejudice.

3.      The parties agree that each party will bear its own costs and attorneys' fees with regard to any proceedings relating to Count III.

WHEREFORE, the parties hereby agree and stipulate that Count III of the Complaint be dismissed, with prejudice, each party to bear its own costs and fees.

Dated: December 17, 2008                    Respectfully submitted,


  s/ Stephen A. Kolodziej                      s/ Andrew W. Worseck
Stephen  A. Kolodziej                        Andrew W. Worseck


Brenner, Ford, Monroe & Scott, Ltd.          City of Chicago - Department of Law
33 North Dearborn Stree, Suite 300           Constitutional and Commercial -
Chicago, Illinois 60602                          Litigation Division
Tel:  (312) 781-1970                         30 North LaSalle Street, Suite 1230
Fax: (312) 781-9202                          Chicago, Illinois  60602
                                             Tel:    (312)   744-4342
                                             Fax:    (312)   742-3925

1721671v2

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION | ) | |
| OF AMERICA, INC., DR. KATHRYN TYLER, | ) | |
| VAN F. WELTON, | ) | No.  08 CV 3697 |
| and BRETT BENSON, | ) | |
| | ) | Judge Shadur |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

### NOTICE OF FILING

TO:     Counsel of record
         (See attached service list)

Please take notice that on **December 18, 2008,** we filed with the Clerk of the United States District Court for the Northern District of Illinois, **Stipulation of Dismissal of Count III of the Complaint With Prejudice,** a copy of which has been served upon you**.**

**BRENNER, FORD, MONROE & SCOTT, LTD.**
33 North Dearborn Street, Suite 300
Chicago, Illinois 60602
Tel.:  312-781-1970
Fax: 312-781-9202

### CERTIFICATE OF SERVICE

I, Stephen A. Kolodziej, an attorney, state under oath that service of the foregoing document was accomplished pursuant to ECF as to Filing Users on December 18, 2008, and that additional copies of said documents were served by mailing to the above-named parties at the above-listed address and depositing same in the U.S. Mail at 33 North Dearborn Street, Chicago, Illinois on the 18th day of December, 2008, with proper postage prepaid.

s/ Stephen A. Kolodziej
Stephen A. Kolodziej
Counsel for Plaintiffs

*NRA vs. City of Chicago, et al.*
*Court No. 08 CV 3697*

### SERVICE LIST

Alan Gura
Gura & Possessky, PLLC
101 North Columbus Street
Suite 405
Alexandria, VA  22314
Tel:     (703)   835-9085
Fax:     (703)   997-7665

David G. Sigale
Law Firm of David G. Sigale, P.C.
4300 Commerce Court
Suite 300-3
Lisle, Illinois  60532
Tel:     (630)   452-4547
Fax:     (630)   596-4445

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street
Suite 1230
Chicago, Illinois  60602

William N. Howard, Esq.
 FREEBORN & PETERS, LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606
Tel:     (312)   360-6415

Stephen P. Halbrook
3925 Chain Bridge Road, Suite 403
Fairfax, VA  22030
Tel:     (703)   352-7276
Fax:     (703)   359-0938

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION | ) | |
| OF AMERICA, INC., DR. KATHRYN TYLER, | ) | |
| VAN F. WELTON, | ) | |
| and BRETT BENSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  08 CV 3697 |
| | ) | |
| | ) | Judge Milton I. Shadur |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that Plaintiffs, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., DR. KATHRYN TYLER, VAN F. WELTON and BRETT BENSON, appeal to the United States Court of Appeals for the Seventh Circuit from this Court's Order entered in this action on December 18, 2008.

Dated: December 18, 2008                     Respectfully submitted,

**NATIONAL RIFLE ASSOCIATION
OF AMERICA, INC., DR. KATHRYN TYLER,
VAN F. WELTON and BRETT BENSON,**
Plaintiffs


BY:   s/ Stephen A. Kolodziej
                         One of Their Attorneys

                                                Local Counsel:
Stephen P. Halbrook                             Stephen A. Kolodziej
Attorney at Law                                 **Brenner, Ford, Monroe & Scott, Ltd.**
3925 Chain Bridge Road, Suite 403               33 North Dearborn Street, Suite 300
Fairfax, Virginia 22030                         Chicago, Illinois 60602
Tel. (703) 352-7276                             Tel (312) 360-6415
Fax (703) 359-0938                              Fax (312) 360-6573

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION | ) | |
| OF AMERICA, INC., DR. KATHRYN TYLER, | ) | |
| VAN F. WELTON, | ) | |
| and BRETT BENSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  08 CV 3697 |
| | ) | |
| | ) | Judge Milton I. Shadur |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused a true and correct copy of the foregoing instrument to be served upon the parties of record, as shown below, via the Court's CM/ECF filing system on the **18th** day of **December 2008.**

> Andrew W. Worseck
> William Macy Aguiar
> City of Chicago Department of Law
> Constitutional and Commerical Litigation Division
> 30 North LaSalle Street, Suite 1230
> Chicago, Illinois 60602

s/  Stephen A. Kolodziej

Local Counsel:
Stephen A. Kolodziej
**Brenner, Ford, Monroe & Scott, Ltd.**
33 North Dearborn Street, Suite 300
Chicago, Illinois 60602
Tel (312) 781-1970
Fax (312) 781-1970

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276
Fax (703) 359-0938
(*Pro Hac Vice*)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |  |
|---|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., DR. KATHRYN TYLER, VAN F. WELTON, and BRETT BENSON, | ) ) ) ) ) | | |
| Plaintiffs, | ) ) | | |
| vs. | ) ) ) | No.  08 CV 3697 Judge Milton I. Shadur | |
| THE CITY OF CHICAGO, | ) ) | | |
| Defendant. | ) | | |

## <u>AMENDED NOTICE OF APPEAL</u>

Notice is hereby given that Plaintiffs, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., DR. KATHRYN TYLER, VAN F. WELTON and BRETT BENSON, appeal to the United States Court of Appeals for the Seventh Circuit from this Court's Order entered in this action on December 18, 2008 entering judgment in favor of the City of Chicago and against Plaintiffs on Counts I and II of the Complaint.

Dated: December 18, 2008

Respectfully submitted,

**NATIONAL RIFLE ASSOCIATION
OF AMERICA, INC., DR. KATHRYN TYLER,
VAN F. WELTON and BRETT BENSON,**
Plaintiffs

BY:    s/ Stephen A. Kolodziej
　　　　　　One of Their Attorneys

Local Counsel:
Stephen P. Halbrook　　　　　　Stephen A. Kolodziej
Attorney at Law　　　　　　**Brenner, Ford, Monroe & Scott, Ltd.**
3925 Chain Bridge Road, Suite 403　　33 North Dearborn Street, Suite 300
Fairfax, Virginia 22030　　　　　Chicago, Illinois 60602
Tel. (703) 352-7276　　　　　　Tel (312) 360-6415
Fax (703) 359-0938　　　　　　Fax (312) 360-6573

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., DR. KATHRYN TYLER, VAN F. WELTON, and BRETT BENSON, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No.  08 CV 3697 ) |
| THE CITY OF CHICAGO, | ) Judge Milton I. Shadur ) |
| Defendant. | ) ) |

### CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused a true and correct copy of the foregoing instrument to be served upon the parties of record, as shown below, via the Court's CM/ECF filing system on the **18th** day of **December 2008.**

> Andrew W. Worseck
> William Macy Aguiar
> City of Chicago Department of Law
> Constitutional and Commerical Litigation Division
> 30 North LaSalle Street, Suite 1230
> Chicago, Illinois 60602

> s/  Stephen A. Kolodziej

| | |
|---|---|
| Local Counsel: | Stephen P. Halbrook |
| Stephen A. Kolodziej | Attorney at Law |
| **Brenner, Ford, Monroe & Scott, Ltd.** | 3925 Chain Bridge Road, Suite 403 |
| 33 North Dearborn Street, Suite 300 | Fairfax, VA 22030 |
| Chicago, Illinois 60602 | Tel. (703) 352-7276 |
| Tel (312) 781-1970 | Fax (703) 359-0938 |
| Fax (312) 781-1970 | (*Pro Hac Vice*) |



Order Form(01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 3697 | **DATE** | 12/18/2008 |
| **CASE TITLE** | NRA vs. City of Chicago | | |

### DOCKET ENTRY TEXT

Status hearing held. Plaintiff's motion to drop party plaintiff is granted. (28-1) Anthony Burton is dropped as a party plaintiff. Pursuant to the Stipulation of Dismissal filed 12/18/08, Count III of the Complaint is hereby dismissed with prejudice. Enter Order. This Court hereby grants the oral motion of the City of Chicago pursuant to Fed. R. Civ. P. 12( c) for judgment on the pleadings on Counts I and II of the Complaint. Judgment is hereby entered in favor of the City of Chicago and against Plaintiffs on Counts I and II of the Complaint.

■ [ For further detail see separate order(s).]

Docketing to mail notices.

00:15

| | Courtroom Deputy Initials: | SN |
|---|---|---|

08C3697 NRA vs. City of Chicago

Page 1 of 1



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

NATIONAL RIFLE ASSOCIATION )
OF AMERICA, INC., DR. KATHRYN TYLER, )
ANTHONY BURTON, VAN F. WELTON, )
and BRETT BENSON, )
                     )
          Plaintiffs, )
                     )
    vs. )      No. 08 CV 3697
                     )
                     )     Judge Milton I. Shadur
THE CITY OF CHICAGO, )
                     )
          Defendant. )

### ORDER

      The Court having ruled on December 4, 2008, that it is bound to follow the holding of

*Quilici v. Village of Morton Grove*, 695 F.2d 261 (7th Cir. 1982) that the Second Amendment is

not incorporated into the Fourteenth Amendment, the Plaintiffs having objected to that

determination, and the Plaintiffs having taken the position that the viability of Counts I and II in

their Complaint depends on a ruling that the Second Amendment is incorporated into the

Fourteenth Amendment, the Court hereby grants the December 9, 2008 oral motion of the City

of Chicago pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings on Counts I and II of

the Complaint. Judgment is hereby entered in favor of the City of Chicago and against Plaintiffs

on Count I and II of the Complaint.

Dated: December *18*, 2008          **ENTERED:**

                                       *[signature]*
                                 The Honorable Milton I. Shadur
                                 United States District Court Judge



# United States District Court
## Northern District of Illinois
### Eastern Division

NRA

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 08 C 3697

City of Chicago

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that final judgment is entered in favor of the City of Chicago and against Plaintiffs on Count I and II of the Complaint.

Michael W. Dobbins, Clerk of Court

Date: 12/18/2008

/s/ Sandy Newland, Deputy Clerk

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## BILL OF COSTS

June 24, 2009

Taxed in Favor of: <u>City of Chicago</u>

| | |
|---|---|
| No.: 08-4241 | NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED, et al.,<br>Plaintiffs - Appellants<br><br>v.<br><br>CITY OF CHICAGO,<br>Defendant - Appellee |

| | |
|---|---|
| No.: 08-4244 | OTIS MCDONALD, et al.,<br> Plaintiffs - Appellants<br><br>v.<br><br>CITY OF CHICAGO,<br>Defendant - Appellee |
| No.: 08-4243 | NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED, et al.,<br> Plaintiffs - Appellants<br><br>v.<br><br>VILLAGE OF OAK PARK,<br>Defendant - Appellee |

| Originating Case Information: |
| --- |
| District Court No: 1:08-cv-03697<br>Northern District of Illinois, Eastern Division<br>District Judge Milton I. Shadur |

| Originating Case Information: |
| --- |
| District Court No: 1:08-cv-03645<br>Northern District of Illinois, Eastern Division |

| Originating Case Information: |
| --- |
| District Court No: 1:08-cv-03696<br>Northern District of Illinois, Eastern Division |

The mandate or agency closing letter issued in this cause on June 24, 2009.

BILL OF COSTS issued in the amount of: $190.80.

|   |   | Cost of<br>Each Item | Total Cost<br>Each Item |
| --- | --- | --- | --- |
| 1. | For docketing a case on appeal or review or docketing any other proceeding:<br>_____ | _____ | _____ |
| 2. | For reproduction of any record or paper, per page:<br>_____ | _____ | _____ |
| 3. | For reproduction of briefs:<br>_____ | $   190.80 | _____ |
| 4. | _____<br>_____ | _____ | _____ |
| 5. | _____<br>_____ | _____ | _____ |
|   |   | TOTAL: | $   190.80 |

form name: **c7_BillOfCosts** (form ID: **140**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## RECORD FOR CERTIORARI TRANSMITTAL FORM

December 30, 2009

TO:     Supreme Court of the United States
        Office of the Clerk
        1 First Street N.E.
        Washington, DC 20543-0001

| | |
|---|---|
| Nos.: 08-4241 & 08-4243 | NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED, et al., <br> Plaintiffs - Appellants <br><br> v. <br><br> CITY OF CHICAGO, et al., <br> Defendants - Appellees |

**Originating Case Information:**

District Court Nos.: 1:08-cv-03697 & 1:08-cv-03696
Northern District of Illinois, Eastern Division
District Judge Milton I. Shadur

| | |
|---|---|
| No.: 08-4244 | OTIS MCDONALD, et al., <br> Plaintiffs - Appellants <br><br> v. <br><br> CITY OF CHICAGO, <br> Defendant - Appellee |

**Originating Case Information:**

District Court No: 1:08-cv-03645
Northern District of Illinois, Eastern Division
District Judge Milton I. Shadur

Pursuant to a request from the Supreme Court of the United States dated December 22, 2009, Supreme Court Case Number: 08-1497 and Supreme Court Case Number: 08-1521, I, GINO J. AGNELLO, Clerk of the United States Court of Appeals for the Seventh Circuit, do hereby certify that the foregoing contains a true copy of:

[x]    public docket sheet

[x]    briefs

[x]    Circuit Rule 28(j) Supplemental Authority(s)

[x]    final order / opinion / judgment

[ ]    petitions(s) for rehearing

[ ]    answer(s) to petition(s) for rehearing

[ ]    order(s) denying rehearing

The original record on appeal has been returned to the District Court upon issuance of this Court's mandate. This Court, by copy of this document, requests the District Court to transmit the record directly to the Supreme Court.

IN TESTIMONY WHEREOF



I hereunto subscribe my name and affix the seal of said United States Court of Appeals for the Seventh Circuit, this 30th day of December , 2009

_____
Deputy Clerk, United States Court of Appeals for the Seventh Circuit

cc:      Michael W. Dobbins

CERTIFIED COPY

A True Copy
Teste:

Christ̲i̲n̲e̲ ̲...̲
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

form name: **c7_Cert_Roa_Trans** (form ID: **181**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov



CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

## BILL OF COSTS

September 16, 2010

Taxed in Favor of: Appellants in 08-4244 - <u>Colleen Lawson, David Lawson, Otis McDonald,  Adam Orlov and Second Amendment Foundation, Incorporated</u>

| | |
|---|---|
| No.: 08-4241 | NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED, et al.,<br>Plaintiffs - Appellants<br><br>v.<br><br>CITY OF CHICAGO,<br>Defendant - Appellee |
| No.: 08-4243 | NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED, et al.,<br> Plaintiffs - Appellants<br><br>v.<br><br>VILLAGE OF OAK PARK,<br>Defendant - Appellee |
| No.: 08-4244 | OTIS MCDONALD, et al.,<br> Plaintiffs - Appellants<br><br>v.<br><br>CITY OF CHICAGO, |

|  | Defendant - Appellee |
| --- | --- |

| **Originating Case Information:** |
| --- |
| District Court No: 1:08-cv-03697<br>Northern District of Illinois, Eastern Division<br>District Judge Milton I. Shadur |

| **Originating Case Information:** |
| --- |
| District Court No: 1:08-cv-03696<br>Northern District of Illinois, Eastern Division |

| **Originating Case Information:** |
| --- |
| District Court No: 1:08-cv-03645<br>Northern District of Illinois, Eastern Division |

The mandate or agency closing letter issued in this cause on September 16, 2010.

BILL OF COSTS issued in the amount of: $829.26.

|  |  | Cost of Each Item | Total Cost Each Item |
| --- | --- | --- | --- |
| 1. | For docketing a case on appeal or review or docketing any other proceeding:<br>_____ | _____ | _____ |
| 2. | For reproduction of any record or paper, per page:<br>_____ | _____ | _____ |
| 3. | For reproduction of briefs:<br>_____ | $    829.26 | _____ |
| 4. | _____<br>_____ | _____ | _____ |

TOTAL:   $    829.26

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov



CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

## BILL OF COSTS

September 16, 2010

Taxed in Favor of: Appellant in 08-4241- <u>National Rifle Association of America, Incorporated</u>

| No.: 08-4241 | NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED, et al.,<br>Plaintiffs - Appellants<br><br>v.<br><br>CITY OF CHICAGO,<br>Defendant - Appellee |
|---|---|
| No.: 08-4243 | NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED, et al.,<br> Plaintiffs - Appellants<br><br>v.<br><br>VILLAGE OF OAK PARK,<br>Defendant - Appellee |
| No.: 08-4244 | OTIS MCDONALD, et al.,<br> Plaintiffs - Appellants<br><br>v.<br><br>CITY OF CHICAGO, |

|  | Defendant - Appellee |
|---|---|

| **Originating Case Information:** |
|---|
| District Court No: 1:08-cv-03697<br>Northern District of Illinois, Eastern Division<br>District Judge Milton I. Shadur |

| **Originating Case Information:** |
|---|
| District Court No: 1:08-cv-03696<br>Northern District of Illinois, Eastern Division |

| **Originating Case Information:** |
|---|
| District Court No: 1:08-cv-03645<br>Northern District of Illinois, Eastern Division |

The mandate or agency closing letter issued in this cause on September 16, 2010.

BILL OF COSTS issued in the amount of: $902.80.

|  |  | Cost of<br>Each Item | Total Cost<br>Each Item |
|---|---|---|---|
| 1. | For docketing a case on appeal or review or docketing any other proceeding: _____ | _____ | _____ |
| 2. | For reproduction of any record or paper, per page: _____ | _____ | _____ |
| 3. | For reproduction of briefs: _____ | $    902.80 | _____ |
|  |  | TOTAL:    $    902.80 |  |

form name: **c7_BillOfCosts** (form ID: **140**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov



CERTIFIED COPY
A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

## BILL OF COSTS

September 16, 2010

Taxed in Favor of: Appellant in 08-4243 - <u>National Rifle Association of America, Incorporated</u>

| | |
|---|---|
| No.: 08-4241 | NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED, et al.,<br>Plaintiffs - Appellants<br><br>v.<br><br>CITY OF CHICAGO,<br>Defendant - Appellee |
| No.: 08-4243 | NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED, et al.,<br> Plaintiffs - Appellants<br><br>v.<br><br>VILLAGE OF OAK PARK,<br>Defendant - Appellee |
| No.: 08-4244 | OTIS MCDONALD, et al.,<br> Plaintiffs - Appellants<br><br>v.<br><br>CITY OF CHICAGO, |

|  | Defendant - Appellee |
|---|---|
| **Originating Case Information:** | |
| District Court No: 1:08-cv-03697<br>Northern District of Illinois, Eastern Division<br>District Judge Milton I. Shadur | |
| **Originating Case Information:** | |
| District Court No: 1:08-cv-03696<br>Northern District of Illinois, Eastern Division | |

| **Originating Case Information:** |
|---|
| District Court No: 1:08-cv-03645<br>Northern District of Illinois, Eastern Division |

The mandate or agency closing letter issued in this cause on September 16, 2010.

BILL OF COSTS issued in the amount of: $450.00.

|  |  | Cost of<br>Each Item | Total Cost<br>Each Item |
|---|---|---|---|
| 1. | For docketing a case on appeal or review or docketing any other proceeding:<br>_____ | _____ | _____ |
| 2. | For reproduction of any record or paper, per page:<br>_____ | _____ | _____ |
| 3. | For reproduction of briefs:<br>_____ | $    450.00 | _____ |
| 4. | _____<br>_____ | _____ | _____ |
|  |  | TOTAL:  $    450.00 | |

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.1.1
### Eastern Division

National Rifle Association of America, Inc., et al.

                           Plaintiff,

v.                                      Case No.: 1:08−cv−03697

                                      Honorable Milton I. Shadur

The City of Chicago, et al.

                           Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, October 12, 2010:

      MINUTE entry before Honorable Milton I. Shadur:This action is hereby dismissed as moot.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION | ) | |
| OF AMERICA, INC., DR. KATHRYN TYLER, | ) | |
| VAN F. WELTON, | ) | |
| and BRETT BENSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  08 CV 3697 |
| | ) | |
| | ) | Judge Milton I. Shadur |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR ENTRY OF SCHEDULE
FOR MOTION FOR ATTORNEYS' FEES**

Pursuant to Local Rule 54.3 and Federal Rule of Civil Procedure 54, plaintiffs the National Rifle Association of America, Inc., Dr. Kathryn Tyler, Van F. Welton and Brett Benson, by and through their attorneys, Stephen P. Halbrook and Stephen A. Kolodziej, hereby file this Motion for Entry of Schedule for Motion for Attorneys' Fees, and in support hereof state as follows:

1.      Pursuant to Northern District of Illinois Local Rule 54.3 ("LR 54.3"), the parties to this litigation are required to meet and confer regarding any potential motion by a party for the award of fees and/or costs.  Local Rule 54.3 sets forth certain deadlines for the parties to exchange information, confer regarding objections to certain fee requests, and to create a joint statement regarding the fee request.  Under LR 54.3(b), the Court may modify the deadlines set forth in LR 54.3.

2.      Plaintiffs and Defendant have conferred regarding an appropriate schedule for meeting LR 54.3's requirements.  Defendant has confirmed that it does not object to the proposed dates set forth below.  Defendant has further stated, however, that it does not stipulate

or agree that the Court has jurisdiction to consider a motion for fees and costs by Plaintiffs or that Plaintiffs

are prevailing parties under 42 U.S.C. 1988.

3.      Based on the parties' agreement on an appropriate schedule for compliance with LR 54.3,

and without prejudicing Defendant's right to oppose an award of fees, Plaintiffs request that the Court

enter the following schedule with regard to LR 54.3's requirements:

**November 23, 2010** – Plaintiffs shall comply with Local Rules 54.3(d)(1)-(4) by providing
Defendant all information required under such Rules.

**December 21, 2010** – If necessary, Defendant shall comply with the first paragraph of Local Rule
54.3(d)(5) and subsections (A)-(D) thereunder, by providing Plaintiffs all information required under such
rules.

**January 4, 2010** – If necessary, the parties shall comply with Local Rule 54.3(d)(5) by: (1)
identifying all hours, billing rates, or related nontaxable expenses (if any) that will and will not be objected
to, the basis of any objections and the specific hours, billing rates, and related nontaxable expenses that in
the parties' respective views are reasonable and should be compensated; and (2) attempting to resolve any
remaining disputes.

**January 18, 2010** – The parties shall comply with Local Rule 54.3(e) by filing a joint statement
setting forth the information specified in such Rule.

**January 25, 2011** – If necessary, Plaintiffs shall file their motion for attorneys' fees.

WHEREFORE, Plaintiffs respectfully request that the Court enter an order setting the above

schedule for the parties to comply with LR 54.3 and Federal Rule of Civil Procedure 54.

Dated:  October 21, 2010.          **NATIONAL RIFLE ASSOCIATION**
                                   **OF AMERICA, INC.,  Dr. KATHRYN TYLER,**
                                   **VAN F. WELTON and BRETT BENSON**
                                   Plaintiffs

                                   BY:___s/ Stephen A. Kolodziej_____
                                          One of Their Attorneys

Stephen P. Halbrook               Stephen A. Kolodziej
Attorney at Law                   Brenner, Ford, Monroe & Scott, Ltd.
3925 Chain Bridge Road, Suite 403 33 North Dearborn Street, Suite 300
Fairfax, VA 22030                 Chicago, Illinois 60602
Tel. (703) 352-7276               Tel (312) 781-1970
Fax (703) 359-0938                Fax (312) 781-9209

2

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.1.1
### Eastern Division

National Rifle Association of America, Inc., et al.

<div align="right">Plaintiff,</div>

v.

<div align="right">Case No.: 1:08–cv–03697<br>Honorable Milton I. Shadur</div>

The City of Chicago, et al.

<div align="right">Defendant.</div>

# NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, October 26, 2010:

MINUTE entry before Honorable Milton I. Shadur:Motion for attorney fees [64] is entered and continued. Simultaneous cross filings and supporting memorandum as to prevailing party status are to be filed on or before 11/23/10. Motion hearing held on 10/26/2010. Status hearing set for 11/29/2010 at 08:45 AM.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION ) | |
| OF AMERICA, INC., DR. KATHRYN TYLER, ) | |
| VAN F. WELTON, ) | |
| and BRETT BENSON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No.  08 CV 3697 |
| ) | |
| ) | Judge Milton I. Shadur |
| THE CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT'S UNOPPOSED MOTION FOR EXTENSION OF TIME
### TO FILE CROSS-BRIEFS REGARDING PREVAILING PARTY STATUS

Defendant City of Chicago (the "City"), by its attorney, Mara S. Georges, Corporation

Counsel for the City of Chicago, respectfully requests that the Court grant the parties an extension

of time within which to file their cross memoranda regarding prevailing party status for purposes of

attorneys' fees, up to and including December 15, 2010.  In support thereof, the City states as

follows:

1.     On October 26, 2010, the parties appeared before the Court on Plaintiffs' Motion for

Entry of Schedule for Motion for Attorneys' Fees.  Also appearing before the Court were the parties

to *NRA, et al.  v. Village of Oak Park*, *et al.*, Case No. 08- cv-3696, wherein Plaintiff NRA had filed

an identical motion for entry of schedule for motion for attorneys' fees.

2.     At that time, the Court determined that it would be prudent to resolve the issue of

prevailing party status first, before entering a schedule consistent with Local Rule 54.1, namely,

setting deadlines for the exchange of certain billing information, the parties to confer regarding

objections, and the preparation of a joint statement regarding the fee request.

3.      The Court determined that the parties should file simultaneous cross briefs on the issue of prevailing party status, to be filed on or before November 23, 2010.  The Court set a status for November 29, 2010, and entered and continued Plaintiffs' motion for entry of schedule for motion for attorneys' fees.

4.      Due to the workloads and upcoming absences of the City attorneys working on this matter – including scheduled medical absences by the undersigned attorney Rebecca Hirsch – it will not be feasible for the City to adequately prepare and file its brief by November 23.  The City therefore requests that the parties be given an additional three weeks, up to and including December 15, to file such memoranda.

5.      Counsel for the City conferred with counsel for Plaintiffs on November 5 regarding this request for extension, and Plaintiffs' counsel stated that they had no objection.

6.      Accordingly, the City requests that the Court grant an extension of time up to and including December 15, 2010, for the parties in both this case and Case No. 08-3696 to file their cross briefs regarding prevailing party status.

7.      The City also requests that the Court strike the status hearing scheduled for November 29 and reset it for December 21, after the parties have filed their memoranda, and further enter and continue Plaintiffs' motion for entry of schedule for motion for attorneys' fees.

WHEREFORE, the City respectfully requests that the Court grant this extension of time for the parties to file their cross memoranda regarding prevailing party status, up to and including December 15, and that the Court strike the status hearing set for November 29 and reset it for December 21.

2

Respectfully submitted,

Mara S. Georges, Corporation Counsel for
the City of Chicago

By: /s/ Rebecca Alfert Hirsch
Assistant Corporation Counsel

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230
Chicago, IL 60602
(312) 742-0260

Dated: November 10, 2010

3

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.1.1
### Eastern Division

National Rifle Association of America, Inc., et al.

<div align="right">Plaintiff,</div>

v.                                                      Case No.: 1:08–cv–03697

<div align="right">Honorable Milton I. Shadur</div>

The City of Chicago, et al.

<div align="right">Defendant.</div>

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, November 12, 2010:

     MINUTE entry before Honorable Milton I. Shadur:Motion for extension of time to file briefs regarding prevailing party status to and including 12/15/10 [67] is granted. Status hearing set for 12/21/2010 at 09:00 AM. The 11/29 status date is vacated.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **NATIONAL RIFLE ASSOCIATION** | ) | |
| **OF AMERICA, INC.,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **No.  08 CV 3697** |
| | ) | **Judge Milton I. Shadur** |
| **THE CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S MEMORANDUM OF LAW CONTESTING PLAINTIFFS' STATUS AS PREVAILING PARTIES ENTITLED TO ATTORNEYS' FEES

Defendant City of Chicago ("Defendant" or the "City"), by its attorney, Mara S. Georges, Corporation Counsel for the City of Chicago, respectfully submits this memorandum in support of its position that Plaintiffs the National Rifle Association of America, Inc. ("NRA"), Kathleen Tyler ("Tyler"), Van F. Welton ("Welton"), and Brett Benson ("Benson") (collectively, "Plaintiffs") are not prevailing parties entitled to attorneys' fees under 42 U.S.C. § 1988(b) in this matter.

### INTRODUCTION

Plaintiffs' request for attorneys' fees in this case is a novel one: they seek an award of fees as "prevailing parties" without having actually received judgment or court ordered relief in their favor on any one of their claims.  The single favorable ruling Plaintiffs received was a determination of a *preliminary* legal issue (albeit from the Supreme Court) that was never applied to any of their claims. That ruling resulted solely in an order vacating the Seventh Circuit's judgment, and remanding for further proceedings.  As discussed fully below, this measure of "success" falls far short of the standard necessary to confer prevailing party status.  Plaintiffs' request for prevailing party status, and their corresponding request for an award of fees, should be denied.

## FACTUAL BACKGROUND

Plaintiffs filed this lawsuit, together with *National Rifle Association v. Village of Oak Park*, Case No. 08-cv-3696, one day after the Supreme Court held that the Second Amendment conferred an individual right to keep and bear arms in the home for purposes of self-defense. *See District of Columbia v. Heller*, 128 S. Ct. 2783, 2799 (2008). Although originally assigned to different judges, this Court reassigned both of the *NRA* cases to its docket as related to the already pending case of *McDonald v. City of Chicago*, Case No. 08-cv-3645, filed the very same day that *Heller* was decided.

Plaintiffs alleged that several provisions of the City's Municipal Code regulating the ownership and possession of firearms (the "Ordinance") violated the Second Amendment, as incorporated against the states via the Fourteenth Amendment. *See* Plfs' Comp., docket entry # 1. Plaintiffs brought three Counts: (1) Count I, challenging provisions of the Ordinance that prohibited registration (and thereby possession) of any handgun within the City limits; (2) Count II, alleging an equal protection claim based on the prohibition of handgun possession except for certain exempt categories of persons; and (3) Count III, alleging that the City's handgun ban violated federal law, 18 U.S.C. § 926A, which permits persons to carry and transport firearms under certain circumstances. For each of these claims, Plaintiffs sought a declaration that the Ordinance's provisions were null and void and sought injunctive relief prohibiting the City from enforcing those provisions and allowing Plaintiffs to register and possess handguns. *Id*.

The Court noted that the threshold question of whether the Second Amendment was incorporated against the states via the Fourteenth Amendment should be decided as a preliminary issue, since the answer would impact the legal standards governing the Ordinance's constitutionality. Accordingly, Plaintiffs in all three cases filed briefs in support of incorporation. *See, e.g,* docket entry # 22. Before any of the defendants filed a response, however, this Court issued an opinion holding that Supreme Court

precedent required it to find that the Second Amendment was not incorporated.  *See* December 4, 2008

Mem. Opinion and Order, docket entry # 26.  On December 18, 2008, Defendant was granted judgment

on the pleadings on Counts I and II and, by stipulation of the parties, Count III of Plaintiffs' Complaint

was dismissed with prejudice.  Docket entry #s 38 and 39.

Plaintiffs in all three cases appealed this Court's order to the Seventh Circuit, where the appeals

were consolidated.  The Seventh Circuit affirmed, finding that it was also bound by Supreme Court

precedent to rule against incorporation.  *See National Rifle Association of America v. City of Chicago*,

567 F.3d 856 (7th Cir. 2009).  The *NRA* and *McDonald* plaintiffs then filed separate petitions for writs

of certiorari in the Supreme Court.  The Supreme Court granted the petition filed in *McDonald,* but did

not act upon the writ filed by the NRA plaintiffs.  On June 28, 2010, the Supreme Court issued its opinion

holding that the Fourteenth Amendment incorporates the Second Amendment, reversing the decision of

the Seventh Circuit and remanding for further proceedings.  *McDonald v. City of Chicago*, 130 S. Ct.

3020, 3050 (2010).  On the same day, the Supreme Court granted the NRA's petition for writ of certiorari

and remanded the case to the Seventh Circuit. *See* June 29 Order, attached as Exhibit A.

On July 2, the City repealed the Ordinance and enacted a new firearm ordinance (the

"Responsible Gun Owners Ordinance"), which allows for possession of handguns within the home but

places certain restrictions on ownership and possession of firearms.  *See* Chicago Mun. Code § 8-20-020

*et seq*.  Oak Park repealed its handgun ordinance on July 19.  In light of the repeals, the Seventh Circuit

issued an order vacating the district court's judgment in all three cases and remanding with instructions

to dismiss as moot. *See* August 25 Order, attached as Exhibit B.  The order further stated that "[w]e do

not express any opinion on the question whether the repealers [sic], enacted before the Supreme Court's

decision could be implemented on remand, affect the availability of fees under the approach of

*Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001)." *Id.*

On October 12, this Court dismissed all three cases as moot. The *NRA* Plaintiffs filed a motion for attorneys' fees under 42 U.S.C. § 1988, and the Court and the parties agreed that it would be most efficient to first resolve the issue of whether Plaintiffs qualified as prevailing parties. Accordingly, the City submits this memorandum of law explaining why, under Supreme Court and Seventh Circuit precedent, Plaintiffs do not qualify as prevailing parties.

## **ARGUMENT**

### I.    **Legal Standard For Attorneys' Fees Under 28 U.S.C. § 1988.**

42 U.S.C. § 1988(b) authorizes district courts to allow the "prevailing party" in civil rights litigation its "reasonable attorney's fee as part of the costs." *See, e.g.*, *Federation of Advertising Indus. Reps., Inc v. City of Chicago*, 326 F.3d 924 (7th Cir. 2003); *Hastert v. Illinois State Bd. Of Elections*, 28 F.3d 1430, 1439 (7th Cir. 1994). Status as a prevailing party is a threshold determination under Section 1988. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). While a plaintiff need not be successful on all of his claims to qualify as a prevailing party, he must, at a minimum, have obtained "some relief on the merits of his claims." *Ferrar v. Hobby*, 506 U.S. 103, 112 (1992); *see also Buckhannon,* 532 U.S. at 605 (2001) (prevailing party must have achieved "a judicially sanctioned change in the legal relationship of the parties."); *Zessar v. Keith*, 536 F.3d 788, 795 (7th Cir. 2008) (party considered prevailing when court enters final judgment in its favor on some portion of merits of claims).[1]

---

[1] Even where a party is deemed a "prevailing party," he is not necessarily entitled to fees-- a technical victory may be so insignificant that an award of fees would be unreasonable. *See Farrar*, 506 U.S. at 114-15. Because this memorandum addresses Plaintiffs' status as prevailing parties only, Defendant will make, if necessary, other arguments regarding the propriety of awarding any fees at a later date.

In *Buckhannon,* the Supreme Court rejected the "catalyst theory,"(followed by the Seventh Circuit and most other circuit courts), which had held that a plaintiff is a prevailing party if the lawsuit achieved the desired result through a voluntary change in the defendant's conduct. 532 U.S. at 605. There, plaintiff operated an assisted living facility that the state shut down because its residents failed the state "self-preservation" requirement. Plaintiffs sought a declaratory judgment that the self-preservation requirement violated federal law. *Id.* at 601-02. The state legislature then repealed the requirement, and the case was dismissed as moot. *Id.* Plaintiffs sought attorneys' fees, arguing that the lawsuit had achieved their desired result because of the state's repeal of the requirement, but the Supreme Court held that the catalyst theory was not a permissible basis for an award of attorneys' fees. *Id.*

The Court first emphasized that to be a prevailing party, a litigant must have obtained "an enforceable judgment on the merits," a "court-ordered consent decree[s]," or "some other judicially sanctioned material alteration of the legal relationship of the parties." *Id.* at 604-05. *See also Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792 (1989) ("plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."). The Court held that the alteration of the relationship "requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Id.* at 603. The Court then concluded that voluntary change in conduct, such as repealing an ordinance before a ruling on its constitutionality, "lacks the necessary judicial *imprimatur* on the change" to confer prevailing party status. *Id.*

## II.     Plaintiffs Were Not Parties To *McDonald v. City of Chicago*.

As an initial matter, Plaintiffs should not be considered "parties" to the *McDonald* case for purposes of attorneys' fees. The cases were brought separately by different plaintiffs. The *NRA* plaintiffs fought hard to distance themselves from *McDonald*, and strongly opposed reassignment of their cases

5

to this Court. *See, e.g., McDonald,* Case No. 08-3645, docket entry # 39. After the Court issued its ruling on incorporation, the Seventh Circuit consolidated all three appeals into one proceeding to determine the identical legal issue, but it did not consolidate *the cases*. *See NRA,* 567 F.3d at 856. Continuing to distance themselves from each other, the *McDonald* and *NRA* plaintiffs then filed separate petitions for writ of certiorari. The Supreme Court granted the *McDonald* plaintiffs' petition, and then, only after it issued its decision, did it separately grant the *NRA* plaintiffs' petition and remand the case. *See* Ex. A.

Certainly, according to its own operating procedures, the Supreme Court considered the *NRA* plaintiffs parties to *McDonald*. *See* Sp. Ct. Rule 12(6) ( "[a]ll parties to the proceeding in the court whose judgment is sought to be reviewed are deemed parties entitled to file documents in this Court."). In such cases, any party for whom certiorari was not granted is automatically assigned the role of "respondent," and allowed to file a brief. *Id*. As a party-respondent under the Supreme Court's operating rule, the *NRA* plaintiffs filed their own separate brief with the Court. (They were also permitted oral argument, but only after moving for leave, and not as a matter of right). But the Supreme Court's procedural rule designating them as parties should not confer substantive rights, such as entitlement to attorneys' fees as the prevailing party under an entirely unrelated federal statute. Indeed, Defendant found no cases holding that a "party" for purposes of filing designations in the Supreme Court equates to a "party" for purposes of fee awards under 42 U.S.C. § 1988. Therefore, Plaintiffs should not be considered parties entitled to recover any fees. *See, e.g.*, *Federation,* 326 F.3d at 933 (denying award of attorneys' fees where City amended ordinance after Supreme Court decision in which neither City nor plaintiff was party).

## III.    Plaintiffs Do Not Satisfy The Test For "Prevailing Party" Status.

Even if Plaintiffs could be considered parties to the *McDonald* decision, they do not qualify as "prevailing" parties under Supreme Court or Seventh Circuit precedent. While *McDonald* determined

an important legal issue, it was not a judgment on the merits of any of Plaintiffs' claims, nor did it materially alter the legal relationship between Plaintiffs and the City.[2]

A.    *McDonald* **Is Not A Judgment On The Merits Of Plaintiffs' Claims.**

Without question, *McDonald* was a significant ruling on an important constitutional issue. Governments, individuals, and the courts will be testing and analyzing countless state and municipal firearm regulations to determine their compatibility with the Second Amendment. The *future* implications of incorporation, however, do not transform Plaintiffs into prevailing parties in *this case*.

First and foremost, Plaintiffs have not obtained a judgment on the merits of any of their claims. Plaintiffs sought declaratory and injunctive relief prohibiting enforcement of the City's handgun Ordinance, alleging that it violated the Second Amendment, the equal protection clause of the Fourteenth Amendment, and 18 U.S.C. § 926A.  Neither this Court, the Seventh Circuit, nor the Supreme Court decided or issued judgment for Plaintiffs on any one of these claims.  This Court, following Supreme Court precedent, decided the interim legal issue of incorporation against Plaintiffs, and the Seventh Circuit affirmed.  The Supreme Court reversed, holding that the Second Amendment applies to the states via the Fourteenth Amendment.  *McDonald*, 130 S. Ct. at 3021.  It did not, however, invalidate the City's Ordinance under the Second Amendment.  It did not decide Plaintiffs' equal protection claim.  In short, it did not prohibit the City from enforcing the Ordinance, or otherwise direct the City to do, or refrain from doing, anything.  Rather, it reversed and vacated the Seventh Circuit's order, and remanded the case for further proceedings.[3]

---

[2]Because there is no settlement or consent decree at issue in this case, that factor recognized in *Buckhannon* and subsequent Seventh Circuit decisions is not applicable.

[3]  The fact that the Supreme Court ordered costs in favor of Plaintiffs is immaterial; under Supreme Court Rule 43.2, costs are automatically assessed in favor of the petitioner or appellant in cases

Because both the City and Oak Park voluntarily repealed their ordinances before the Supreme Court's ruling was applied to any of Plaintiffs' claims, the cases were dismissed as moot. The City could have chosen, however, to defend the Ordinance, and the parties would have continued to litigate Plaintiffs' claims to a final resolution. While Plaintiffs suggest that, under *Heller* and *McDonald*, there was no longer any viable way to defend the handgun ban, the actual outcome of Plaintiffs' claims will forever be unknown. The City is a uniquely-situated municipality, its Ordinance was not identical to the ordinance at issue in *Heller*, and there are ways the City could have defended the Ordinance and perhaps prevailed. But the important point is not whether the City had arguments to make but, rather, that it *could* have made them if it chose. The incorporation ruling was merely an interim pronouncement of a *standard of law* that left open a determination of the City's liability. There simply was no judgment on the merits.[4] *See, e.g.*, *Hanrahan v. Hampton*, 446 U.S. 754, 758-59 (1980) (where appellate order reversed directed verdict for defendant and remanded for new trial, plaintiff had not "prevailed" since jury could ultimately decide some or all issues in defendant's favor); *Richardson v. Penfold*, 900 F.2d 116, 119 (7th Cir. 1990) (request for fees denied where plaintiff succeeded in getting summary judgment against him reversed: plaintiff still had to prove case, and had not obtained any substantive relief).

In *Walker v. Calumet City*, 565 F.3d 1031 (7th Cir. 2009), the Seventh Circuit explained what constitutes a "judgment on the merits" for fee purposes. The plaintiff had brought a class action challenging the constitutionality of certain city property code provisions. *Id*. at 1033. While her claim

---

where the judgment is reversed or vacated.

[4] Indeed, plaintiffs could not have brought a case simply to determine whether the Second Amendment was incorporated. That issue is not a cause of action with a specific claim of injury that can be redressed by the courts; thus, there would be no Article III case or controversy. *See, e.g*., *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir.2003).

8

was pending, the City inspected her property and, after some repairs were made, declared the property in compliance. *Id*. The city sought dismissal of the case as moot and the court agreed, but included in its dismissal order the city's representations that it would not enforce the code provisions against plaintiff. *Id*. The district court awarded plaintiff her fees but the Seventh Circuit reversed, finding that, because the district court had not held the ordinance unconstitutional, it had not issued a "judgment on the merits of her claim." *Id*. at 1036 ("the district court never addressed the merits of Walker's suit."). Likewise, no court in this case ruled that the City's Ordinance was unconstitutional. *See also Federation,* 326 F.3d at 930-33 (denying attorneys' fees where city repealed ordinance before any ruling or judgment on its constitutionality); *Covenant Media of Ill. v. City of Des Plaines,* 2009 WL 2391851, *3-4 (N.D. Ill. July 31, 2009) (attached as Exhibit C) (where plaintiff succeeded on preliminary injunction causing defendant to amend ordinance, plaintiff not prevailing party: "[t]hat [plaintiff] might benefit from the [amendment], should it in the future actually make and complete an application for a sign, is insufficient to distinguish it from any other non-party potential beneficiary of [plaintiff's] endeavor.").

And while fees were ultimately awarded in *Palmetto Properties*, *Inc. v. County of DuPage*, 375 F.3d 542 (7th Cir. 2004), that case actually illustrates the requirement for a substantive judgment. There, the plaintiffs sued the county claiming that a local ordinance violated the First Amendment by restricting locations for adult-entertainment clubs. *Id*. at 544. The district court granted partial summary judgment for the plaintiffs, declaring a part of the challenged ordinance unconstitutional. *Id*. After summary judgment was decided, but before final judgment entered, the county offered to repeal the unconstitutional portions of the ordinance. The court continued the case to allow the county time to repeal the ordinance, and then dismissed the case as moot. *Id*. at 546.

9

Following dismissal, the district court awarded plaintiff attorneys' fees, and the Seventh Circuit affirmed. Even though there was no final judgment, the court explained that it would defy logic "to hold that simply because the district court abstained from entering a final order formally closing the case [based on Defendant's representations], Palmetto somehow did not obtain a "judicially sanctioned change" in the parties' legal relationship.... ." Thus, the court refused to deny plaintiff prevailing party status merely because of a technicality: no *final* order had been entered. But the court emphasized that the district court had made "a substantive determination as to essentially all the constitutional claims save one" in its summary judgment order. *Id*. at 549-550. Accordingly, unlike here, *Palmetto* involved substantive rulings in the plaintiffs' favor on almost all of its claims, not just an antecedent legal issue in the case. *See also Zessar,* 536 F.3d at 795-97 (reversing district court's award of fees to plaintiff who obtained summary judgment granting future injunctive relief; state repealed ordinance before final judgment entered and thus claims were moot and judgment vacated).

Whatever success Plaintiffs achieved in the Supreme Court, they did not obtain a judgment on the merits. *McDonald* determined that the Second Amendment is incorporated against the states – an interim legal ruling on a standard of constitutional law that was never actually applied to any of Plaintiffs' specific claims. Therefore, Plaintiffs cannot satisfy this requirement under *Buckhannon*.

**B.    McDonald Did Not Materially Alter The Legal Relationship Between The Parties.**

Falling short of a "judgment on the merits," Plaintiffs are left to show that the *McDonald* decision is an otherwise sufficient "judicial *imprimatur*" on their case to qualify them as prevailing parties. This they also cannot do.

*Buckhannon* recognized that there could be instances – other than a judgment on the merits or a consent decree – constituting a judicial *imprimatur* that renders a party as "prevailing." But merely

10

obtaining a favorable, isolated ruling on a point of law is not enough.  Rather, the judicial relief must directly and materially alter the legal relationship of the parties.  *See, e.g., Buckhannon*, 532 U.S. at 604; *Farrar*, 506 U.S. at 111 (plaintiff prevails only when relief on merits of claim "modif[ies] the defendant's behavior in a way that directly benefits the plaintiff."); *Petersen v. Gibson*, 372 F.3d 862, 865 (7th Cir. 2004) (plaintiff must obtain formal judicial relief, not merely 'success,' to be deemed prevailing party), quoting *Crabill v. Trans Union*, 259 F.3d 662, 667 (7th Cir. 2001); *see also Cady v. City of Chicago*, 43 F.3d 326, 330 (7th Cir. 1994) (unless plaintiff "can point to a direct benefit or redressed grievance other than the 'psychic satisfaction' of ending 'invidious discrimination,'" cannot be prevailing party).

For this reason, legal rulings that do not directly affect the legal relationship of the litigating parties lack the requisite judicial *imprimatur* to confer prevailing party status.  *See, e.g., Farrar*, 506 U.S. at 112 ("a judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party."); *Hewitt v. Helms*, 482 U.S. 755, 760-62 (1987) (favorable instruction and opinion from Third Circuit regarding unconstitutionality of defendant's conduct insufficient to confer prevailing party status where plaintiff ultimately received no substantive relief); *see also Citizens for Better Forestry v. U.S.D.A.*, 567 F.3d 1128, 1133 (9th Cir. 2009) ("a favorable determination on a legal issue, even if it might have put the handwriting on the wall, is not enough by itself.... ").

*Peterson* illustrates this point well.  There, the plaintiff sued her hair salon and a responding police officer for claims arising out of a hair service mishap and refusal to pay for services.  *Id*. at 864.  The jury returned a verdict for the plaintiff, finding the officer liable for false arrest but awarding nominal damages only.  *Id*.  The court granted the plaintiff's post-trial motion to vacate the nominal damages

award and, faced with a new trial, the officer settled for $10,000. *Id*. at 865. The court awarded the plaintiff attorneys' fees, but the Seventh Circuit reversed. *Id*.

The Seventh Circuit emphasized that the relief must be "real" to achieve prevailing party status, and relief is real only when it changes the legal relationship of the parties. *Id*. at 865. Even though the plaintiff had obtained a favorable jury verdict, the nominal damages award had been vacated and the settlement followed. Thus, "the only judgment in this case is a determination that [Plaintiff's] rights were violated. . . As the Supreme Court noted in *Buckhannon*, however, attorney's fees are not available where plaintiff has "acquired a judicial pronouncement that the defendant has violated the Constitution unaccompanied by '*judicial* relief.'" *Id*.at 866. The court concluded that it was "the *settlement*, not the judgment of the court, that obtained the practical relief sought by [Plaintiff], and therefore the judgment cannot provide the basis for prevailing party status." *Id*. (emphasis added).[5] *See also Neblock Trucking v. Scott*, 2010 WL 3023486, *5 (N.D. Ill, July 28, 2010) (attached as Exhibit D) (voluntary removal of special condition in permit after plaintiffs' claims survived motion to dismiss could not confer prevailing party status because "[n]o injunction has been provided, nor have [defendant's] actions been required by a judicially enforceable order or settlement agreement.").

Indeed, at best, *McDonald* is akin to a declaratory judgment that provided no "real" relief to Plaintiffs. And a declaratory judgment supports a fee award only if it directly "affects the behavior of the defendant toward the plaintiff," such as terminating or requiring some conduct by the defendant. *Rhodes*

---

[5] For this reason, this Court's decision in *C.Z. ex rel. Ziemba v. Plainfield Community,* 680 F. Supp.2d 950 (N.D. Ill. 2010), is inapposite. There, the defendant agreed to provide the plaintiffs all of their requested relief, but only after the hearing officer presiding over their due process proceeding intervened and then entered a final order in the plaintiffs' favor. *Id*. at 952-53. Moreover, in denying the defendant's motion to dismiss plaintiffs' petition for attorneys' fees, the court also strongly rejected the defendant's position that the due process hearing lacked sufficient judicial *imprimatur* because it was "quasi-judicial" only. *Id*.

*v. Stewart*, 488 U.S. 1, 4 (1988) (for declaratory judgment to afford prevailing party status, relief basically must be same as injunction). In *Rhodes*, two prisoners sued prison officials alleging violations of their constitutional rights because they were refused magazine subscriptions. *Id*. at 2. The district court held that the defendants had not complied with constitutional standards in denying the request, and ordered them to comply. It then awarded the plaintiffs attorneys' fees, and the Sixth Circuit affirmed. *Id*. The Supreme Court reversed the grant of attorneys' fees, finding that, because one of the prisoners had died before the district court's order, and the other one had been released from prison, the plaintiffs had not actually received any real relief. *Id*. at 4 (declaratory judgment constitutes relief for purposes of § 1988 "if, *and only if*, it affects the behavior of the defendant toward the plaintiff.") (emphasis added). Even though the court had declared the defendant's actions unconstitutional and ordered compliance, the plaintiffs did not obtain relief because a "modification of prison policies on magazine subscriptions could not in any way have benefitted either plaintiff." *Id*. *See also King v. Illinois State Bd. Of Elections*, 410 F.3d 404, (7th Cir. 2005) (recognizing rule that declaratory judgments confer prevailing party status only when they directly compel some conduct of defendant towards plaintiff).

Here, of course, Plaintiffs did not obtain a formal declaratory judgment. The only favorable order Plaintiffs received was an order reversing the Seventh Circuit's decision on incorporation, and remanding for further proceedings. While the legal issue of incorporation was decided in Plaintiffs' favor, that ruling did *not* alter the legal relationship of the parties. *See, e.g.*, *Hewitt*, 482 U.S. at 761-63 (where defendants' liability on remand precluded by valid defenses such as immunity, declaratory judgment not basis to award fees). As discussed above, the City could have gone on to defend the Ordinance after *McDonald*, and may have prevailed on some or all of the claims. Plaintiffs received no court ordered payment of

13

damages, specific performance, or termination of conduct from the City in this case. Therefore, they did not obtain the requisite judicial *imprimatur*, and they should be denied prevailing party status.

### C. Any Relief Plaintiffs Obtained From Repeal Of The Ordinance Was Voluntary.

Finally, to the extent that Plaintiffs contend that *McDonald* afforded them real relief because it "forced" the City to repeal the Ordinance, such argument is not supported by, and indeed would contradict, existing case law.

First, it is undisputed that no order in this case ever enjoined the enforcement of the Ordinance or directed Defendant to repeal it. Thus, even assuming *McDonald* impacted the City's decision to repeal the Ordinance, the repeal *itself* was not directed by any judicial order. Without that (or a preceding judgment on the merits),[6] the repeal can only be seen as voluntary. *See, e.g.*, *Farrar*, 506 U.S. at 111 ("whatever relief the [party] secures must directly benefit him *at the time of the judgment or settlement*.") (emphasis added); *Peterson*, 372 F.3d at 865 (where plaintiff received jury verdict, but damages paid were result of post-verdict settlement, relief did not satisfy test for prevailing party). Thus, the judgment or order itself must command the change in conduct, not merely motivate or lead to it.

Second, this argument would undermine the rationale of *Buckhannon*. In rejecting the catalyst theory, *Buckhannon* essentially rejected an inquiry into the defendant's motivations for its change of conduct. Indeed, the Court re-emphasized its prior holdings that "[a] request for attorney's fees should

---

[6] In *Palmetto Properties*, the Seventh Circuit noted that the county repealed its ordinance only after the determination of liability had been made "and presumably *because of it* ...." 375 F.3d at 550 (emphasis in original). There, however, the court had actually ruled on the plaintiffs underlying claims in its favor, where here, there was no such ruling. *See also Southworth v. Board of Regents of Univ. of Wisconsin*, 376 F.3d 757, 768 (7th Cir. 2004) (plaintiffs first received judgment that defendant's mandatory fee policy violated First Amendment, which then led to change in policy). Likewise, in *Federation*, the court assumed *arguendo* that the city repealed the ordinance because of the Supreme Court decision in another case, but did not actually hold that the city's actions were involuntary. Moreover, there, the court denied plaintiffs' request for fees. 326 F.3d at 933.

not result in a second major litigation." *Buckhannon*, 532 U.S. at 609, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Analyzing the defendant's subjective motivations for changing its conduct would "likely depend on a highly factbound inquiry and may turn on reasonable inferences from the nature and timing of the defendant's change in conduct."  *Id*. at 610 (internal citations omitted).  The Court recognized that such inquiries would not lend themselves to "ready administrability," as fee awards should. *Id*.  Accordingly, even where a judicial ruling sets certain voluntary acts of the defendant in motion, those voluntary acts cannot be bootstrapped into a determination that the plaintiff "prevailed." To hold otherwise would "constitute an impermissible drift towards the 'catalyst theory' that was clearly rejected in *Buckhannon*." *Neblock Trucking,* 2010 WL 3023486 at * 5.

## CONCLUSION

For the reasons stated herein, Defendant the City of Chicago respectfully requests that the Court find that Plaintiffs are not prevailing parties entitled to attorneys' fees under 42 U.S.C. § 1988, deny Plaintiffs' request for any such award of fees, and grant Defendant any other relief the Court deems just.

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel of the City of Chicago

By:      /s/ Rebecca Alfert Hirsch
              Assistant Corporation Counsel
              for the City of Chicago

Michael A. Forti
Mardell Nereim
Rebecca Alfert Hirsch
William Macy Aguiar
Andrew W. Worseck
City of Chicago Department of Law
30 North LaSalle Street, Suite 1230
Chicago, IL 60602
(312) 742-0260

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney of record for the Defendants, hereby certifies that on December 15, 2010, she served copies of the foregoing **Defendant's Memorandum of Law Contesting Plaintiffs' Status As Prevailing Parties Entitled To Attorneys' Fees** via electronic means to the counsel of record listed below:

Stephen P. Halbrook
10560 Main Street, Suite 404
Fairfax, VA 33030
protell@aol.com

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott Ltd.
33 North Dearborn, Suite 300
Chicago, IL 60602
skolodziej@brennerlawfirm.com

/s/  Rebecca Alfert Hirsch

16

SUPREME COURT OF THE UNITED STATES

No.    08-1497

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ET AL.,

Petitioners

v.

CITY OF CHICAGO, ILLINOIS, ET AL.

The Court today reversed the judgment below in *McDonald* v. *Chicago*, 561 U.S. ___ (2010).  Therefore, the petition for a writ of certiorari is granted, and the case is remanded to the United States Court of Appeals for the Seventh Circuit for further proceedings .

**IT IS FURTHER ORDERED** that the petitioners National Rifle Association of America, Inc., et al. recover from City of Chicago, Illinois, et al. Three Hundred Dollars ($300.00) for costs herein expended.

June 29, 2010

**Clerk's costs:**      **$300.00**


A True copy WILLIAM K. SUTER
Test:
Clerk of the Supreme Court of the United States
By:

EXHIBIT

A

| NONPRECEDENTIAL DISPOSITION |
| To be cited only in accordance with |
| Fed. R. App. P. 32.1 |

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

August 25, 2010

## Before

FRANK H. EASTERBROOK, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

**Nos.** 08-4241, 08-4243 & 08-4244

NATIONAL RIFLE ASSOCIATION OF AMERICA,
INC., *et al.*,
    *Plaintiffs-Appellants*,

      **v.**

CITY OF CHICAGO, ILLINOIS, and VILLAGE OF
OAK PARK, ILLINOIS,
    *Defendants-Appellees*.

On Remand from the
Supreme Court of the
United States.

## Order

After the Supreme Court's decision in *McDonald v. Chicago*, 130 S. Ct. 3020 (2010), both the City of Chicago and the Village of Oak Park repealed the ordinances that had been the subject of this litigation. Accordingly, we vacate the district court's judgments and remand with instructions to dismiss as moot. See *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950).

Plaintiffs contend that the new ordinances enacted to supersede the ones challenged in these suits have constitutional flaws. Plaintiffs are entitled to pursue those contentions in new suits. The subject matter of this litigation, however, no longer exists.

EXHIBIT

tabbies®  B

If plaintiffs believe that the repeals entitle them to attorneys' fees under 28 U.S.C. §1988, they may file appropriate motions in the district court. We do not express any opinion on the question whether the repealers, enacted before the Supreme Court's decision could be implemented on remand, affect the availability of fees under the approach of *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001).

Westlaw.

Slip Copy, 2009 WL 2391851 (N.D.Ill.)
**(Cite as: 2009 WL 2391851 (N.D.Ill.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
COVENANT MEDIA OF ILLINOIS, L.L.C., Plaintiff,
v.
CITY OF DES PLAINES, ILLINOIS, Defendant.
**No. 04 C 8130.**

July 31, 2009.

E. Adam Webb, Law Offices of E. Adam Webb, Atlanta, GA, Kurt Joseph Levitus, Levitus Law Offices, Chicago, IL, for Plaintiff.

Ellen Kornichuk Emery, Allen Duarte, Ancel, Glink, Diamond, Bush, Dicianni & Krafthefer, P.C., Chicago, IL, David R. Wiltse, City of Des Plaines, Des Plaines, IL, for Defendant.

**OPINION AND ORDER**

JOAN HUMPHREY LEFKOW, District Judge.

*1 In this civil rights case plaintiff, Covenant Media, Inc. ("Covenant"), has moved for an award of attorney's fees and costs under the provisions of 42 U.S.C. § 1988. The motion must denied for the reasons that follow.

On December 16, 2004, Covenant initiated this action alleging that the City of Des Plaines's Sign Ordinance was unconstitutional under the First Amendment. It sought damages and an injunction against enforcement of the ordinance. On June 8, 2005, this court denied a motion to dismiss for lack of standing and for failure to state a claim upon which relief may be granted (Dkt. No. 21). In response to this ruling, on August 29, 2005, Des Plaines amended its ordinance in an effort to eliminate unconstitutional provisions.

On June 22, 2005, Covenant moved for a preliminary injunction. The amended ordinance became the subject of Covenant's motion for preliminary injunction. On September 15, 2005, this court issued an opinion

and order granting Covenant's motion for a preliminary injunction against enforcement of Des Plaines's amended sign ordinance during the pendency of this litigation (Dkt. No. 43). The docket entry of that date directed the parties to submit a proposed draft injunction order (in conformity with Federal Rule of Civil Procedure 65(d)(1) [FN1] to chambers by September 20, 2005 (Dkt. No. 42). On September 20, Des Plaines filed a proposed order (Dkt. No. 46). Any proposed injunction order that may have been submitted by Covenant is not on the case docket.

> FN1. Rule 65(d)(1), Fed R. Civ. P., provides that "[e]very order granting an injunction and every restraining order must:
>
> (A) state the reasons why it issued;
>
> (B) state its terms specifically; and
>
> (C) describe in reasonable detail-and not by referring to the complaint or other document-the act or acts restrained or required."

On September 22, 2005, however, before entry of a draft injunction order, the court ruled the motion moot because Des Plaines had amended its sign ordinance a second time ("Second Amended Sign Ordinance") correcting the constitutional violations that had been identified in the September 15, 2005 order. *See* Mem. Op. and Order of March 7, 2007 at 7-8 (Dkt. No. 121) ("On September 20, 2005, [Des Plaines] enacted the Second Amended Sign Ordinance, removing the provisions identified by the court as the basis for granting Covenant's request for injunctive relief. As a result, this court determined that the motion for preliminary injunction previously granted had become moot and declined to enter Covenant's proposed draft order for injunction.").

The opinion of September 15, 2005 stated fully the reasons for the injunction, and the Order at the end of the Memorandum Opinion stated, "The City is enjoined from enforcing its Amended Sign Ordinance as contained in Article 11 of the City's Zoning Ordinance during the pendency of this suit." Mem. Op.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



EXHIBIT

C

Slip Copy, 2009 WL 2391851 (N.D.Ill.)
(Cite as: 2009 WL 2391851 (N.D.Ill.))

and Order of Sep. 15, 2005 at 14 (Dkt. No. 43). Des Plaines has not rested its position on the fact that an injunction was never entered, so the Court will treat the question before the court as if the September 15 Opinion and Order were sufficiently compliant with Rule 65(d) to amount to an injunction.

The case proceeded. On March 7, 2007 (Dkt. No. 121), the court granted Des Plaines's motion for summary judgment. It concluded that Covenant lacked standing to pursue its as-applied challenge to the Second Amended Sign Ordinance because Covenant could not demonstrate that it had suffered a redressable injury in that Des Plaines would have denied the applications for other valid reasons. Specifically, the court found that all of Covenant's applications were within an area where signs could be prohibited: single family residential areas within 660 feet of an interstate highway and beyond the 1959 city limits. For the same reason, the court rejected Covenant's facial challenge. *See id.* at 27 (Covenant has not submitted evidence of "either a causal nexus between its injury and the provisions of the Sign Ordinance it challenges or that a favorable decision would redress its injuries.").

**\*2** Covenant, however, convinced the court to reconsider its summary judgment on the as-applied challenge because it had overlooked a genuine issue of material fact as to whether Covenant's application to erect a sign at 911 E. Touhy could have been granted but for the offending original ordinance. There was evidence in the record that despite the original ordinance's prohibition of signs in single family residential areas within 660 feet of an interstate highway and beyond the 1959 city limits, like the 911 E. Touhy site, several sign permits had been granted in such areas. Thus the court permitted the case to go to trial, framing the issue as follows:

Accordingly, the court's mistake of fact led it incorrectly to conclude ... that Covenant's injuries as to the denial of its permit application for the 911 E. Touhy location were not redressable. That is not to say, though, that the standing issue has now been conclusively and finally determined. Since the Illinois Act and the IDOTs [Illinois Department of Transportation's] implementing regulations on their face appear to preclude the erection of the billboard at the subject location, the case must proceed to trial to determine whether Covenant can satisfy the

redressibility element of the tripartite test for standing.

Mem. Op. and Order of July 26, 2007 at 5 (Dkt. No. 154). The jury was instructed that in order to find for Covenant it must find that Covenant (1) would have completed its application for a sign at 911 E. Touhy by fulfilling specific requirements and (2) would have provided IDOT with the information required to receive an IDOT permit. Jury Instructions at 15 (Dkt. No. 205, incorrectly titled "Proposed" Jury Instructions). The jury returned a verdict for Des Plaines. The only permissible inference of fact from the verdict is that Covenant would not have completed the application for the 911 E. Touhy site. This means that Covenant lacked standing and the court lacked jurisdiction.

**ANALYSIS**

The Attorney's Fees Awards Act of 1976, codified at 42 U.S.C. § 1988(b), authorizes the court in civil rights cases to allow the prevailing party (other than the United States) a reasonable attorney's fee as part of the costs. The issue is whether Covenant is a prevailing party for purposes of 42 U.S.C. § 1988.

Covenant contends that its success on the motion for preliminary injunction that resulted in Des Plaines's amending its unconstitutional ordinance to comply with the court's opinion establishes its prevailing party status because "(i) the Court, based upon a finding of a likelihood of Plaintiff's success on the merits, entered a judicially enforceable injunction materially altering the legal relationship between the parties; (ii) the City chose not to appeal from that order and remained subject to its restrictions for over two years; and (iii) the defendant ultimately avoided final resolution of the merits of Plaintiff's initial case by enacting new legislation." Covenant's Mem. in Supp. of Mot. at 4-5 (Dkt. No. 232-2). Des Plaines contends that, in spite of Covenant's success on the preliminary injunction, Covenant is not a prevailing party because the jury ultimately decided that Covenant had no standing to sue, voiding any temporary victory achieved in the preliminary injunction.

**\*3** Des Plaines relies on *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Res.,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), which rejected the "catalyst theory" of pre-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2391851 (N.D.Ill.)
**(Cite as: 2009 WL 2391851 (N.D.Ill.))**

vailing party status [FN3] and held that a litigant who had not obtained a "material alteration of the legal relationship of the parties" [FN4] was not a "prevailing party." *Id.* at 604-05. *See Palmetto Props., Inc. v. County of DuPage,* 375 F.3d 542, 548 (7th Cir.2004) (characterizing *Buckhannon* as holding "that in order to be a 'prevailing party,' a litigant must have obtained a judgment on the merits, a consent decree, or some other judicially sanctioned change in the legal relationship of the parties.").

> FN3. The Court described the catalyst theory as one "which posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon,* 532 U.S. at 601.

> FN4. The Court cited as examples a judgment on the merits or a court-ordered consent decree.

Covenant distinguishes *Buckhannon* on the basis that the decision does not foreclose prevailing party status where, as here, Des Plaines adopted the Second Amended Sign Ordinance as a direct result of the court's issuance of an injunction order in favor of Covenant, whereas in *Buckhannon,* it was not a court order or consent decree, but voluntary action by the State, that changed the legal relationship of the parties. The difficulty with Covenant's position is that the court order in this case did not change the legal relationship *between Covenant and Des Plaines.* That Covenant might benefit from the Second Amended Sign Ordinance, should it in the future actually make and complete an application for a sign, is insufficient to distinguish it from any other non-party potential beneficiary of Covenant's endeavor.

Des Plaines also relies on *Sole v. Wyner,* 551 U.S. 74, 77-78, 127 S.Ct. 2188, 2191-92, 167 L.Ed.2d 1069 (2007), which held that "prevailing party" does not include a plaintiff who gains a preliminary injunction after an abbreviated hearing but is denied a permanent injunction after a dispositive adjudication on the merits. Covenant attempts to distinguish *Sole* on the basis that in *Sole* the preliminary injunction was "reversed, dissolved, or otherwise undone" by the final decision in the same case, whereas here the preliminary injunction was not undone by this court's decision on summary judgment, or the jury's verdict at

trial. Covenant's Reply at 5 (Dkt. No. 234).

In *Sole,* the plaintiff obtained a preliminary injunction against Florida's "bathing suit rule" that interfered with her ability to display a Valentine's Day anti-war artwork using nude individuals on a beach. The court preliminarily enjoined enforcement against the plaintiff so long as the artwork was displayed behind a screen that protected members of the public on the beach who did not want to observe nudity. At the actual event, however, the participants failed to stay behind the screen, so when the plaintiff sought a permanent injunction for future displays, the court denied it because it determined that the bathing suit rule was necessary to protect the public from the unwanted observation of nudity on a public beach.

*4 The plaintiff sought fees on the basis that, although she did not ultimately prevail, she did obtain a preliminary injunction that permitted her to display her Valentine's Day artwork one time. The district court accepted that argument, but the Supreme Court did not: "Prevailing party status, we hold, does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case." *Sole,* 551 U.S. at 83.

*Sole* is instructive here because, in the end, the facts found by the jury determined the result that plaintiff had no standing to bring this lawsuit in the first place. That can only mean that a preliminary injunction was a preliminary decision based on incomplete facts just as it had been in *Sole.* As the Court there stated, "[T]he eventual ruling on the merits for defendants, after both sides considered the case fit for final adjudication, superseded the preliminary ruling. [The plaintiff's] temporary success rested on a premise the District Court ultimately rejected." *Id.* at 84-85.

Recently, the Seventh Circuit decided *Walker v. Calumet City,* 565 F.3d 1031, 1032 (7th Cir.2009), where the plaintiff, a property owner, challenged the constitutionality of an ordinance that required properties to be inspected and code violations corrected before they could be sold. The district court entered a preliminary injunction. When the plaintiff's property was inspected and it was determined that violations had been corrected, and the city agreed not to enforce its ordinance against the subject property and to designate it as a legal nonconforming use, the court dismissed the case as moot but still awarded attorney's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2391851 (N.D.Ill.)
**(Cite as: 2009 WL 2391851 (N.D.Ill.))**

fees because the plaintiff had achieved "total victory." The court of appeals ruled that the award of fees was in conflict with *Buckhannon:* "[B]ecause no judgment was rendered by the district court on the merits of her claims, [the plaintiff] is not a prevailing party under the first example given in *Buckhannon." Walker,* 565 F.3d at 1034.

There is no need to elaborate further.[FN5] No judgment on the merits of Covenant's claims was rendered because, at the end of this long road of litigation, Covenant's lack of standing to bring its law suit was established. Without standing to sue, the court lacks jurisdiction. Without jurisdiction, there can be no judicially sanctioned change in the relationship between the parties.

> FN5. Covenant cites many cases, some predating *Buckhannon,* which will not be discussed here, and most from other circuits, which lend little guidance where the Seventh Circuit has rendered ample exposition of *Buckhannon* to guide the analysis. The post-*Buckhannon* Seventh Circuit cases that Covenant cites are addressed briefly in this note.

> *Southworth v. Bd. of Regents of Univ. of Wis. Sys.,* 376 F.3d 757, 759 (7th Cir.2004), affirmed an award of fees to students who, although they did not prevail in the United States Supreme Court on their original complaint seeking to bar the university from collecting mandatory student fees, they were permitted to amend their complaint on remand and did obtain a district court ruling that the mandatory fee system violated the principle of viewpoint neutrality. The district court's ruling led the University to adopt detailed criteria and procedures governing funding decisions that did benefit the plaintiff students (according to the court-but this might be questionable since the litigation was filed in 1996 and at least two generations of students would likely have come and gone during that period of time). *See Fry v. Bd. of Regents of Univ. of Wis. Sys.,* 132 F.Supp.2d 744 (W.D.Wis.2000) (reflecting a 1996 filing date.)) The students also prevailed on appeal challenging some

of those criteria. *Southworth,* F376 F.3d at 768. Although the cases are parallel in that the court's ruling on the preliminary injunction led directly to Des Plaines's amending its ordinance, here, unlike the students in *Southworth,* Covenant achieved nothing for itself, so there was no change in the legal relationship of the parties.

> *Gatreaux v. Chicago Hous. Auth.,* 491 F.3d 649, 662 (7th Cir.2007), dealt with post-consent decree enforcement proceedings, where the court rejected CHA's argument that agreed-to modifications to the decree over a period of years eliminated the plaintiffs' prevailing party status. The situation in *Gatreaux* is hardly comparable, but it is significant that the court rested its ruling on the continued binding effect of the original decree and the actual benefits achieved for the plaintiff class, facts not present here. *See id.* at 654ff.

> In *Palmetto Props., Inc. v. County of DuPage,* 375 F.3d 542, 546 (7th Cir.2004), the district court ruled in favor of the plaintiffs on a motion for summary judgment, holding that a portion of the County's ordinance restricting location of an adult entertainment establishment within a certain distance of a forest preserve was unconstitutional. The County advised the court that it intended to amend the ordinance, so the court continued the case in lieu of entering a final judgment order. Once the ordinance was amended, the court ruled the case moot. The district court awarded fees and the court of appeals affirmed, finding that the legal relationship of the parties was changed by the summary judgment, also indicating that the County qualified as "mischievous," *id.* at 550, and stating,

> It would defy reason and contradict the definition of "prevailing party" under *Buckhannon* and our subsequent precedent to hold that simply because the district court abstained from entering a final order formally closing the case-a result of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2391851 (N.D.Ill.)
**(Cite as: 2009 WL 2391851 (N.D.Ill.))**

the Defendant's assertions that it would repeal the challenged portion of the ordinance-Palmetto somehow did not obtain a "judicially sanctioned change" in the parties' legal relationship.

*Id.* at 549-50. If Des Plaines set out to game § 1988 by mooting the case with its Second Amended Sign Ordinance, its strategy was ineffective. Rather, this litigation continued two-and-a-half years past the entry of the preliminary injunction, through a trial and, ultimately, Des Plaines's original position that Covenant lacked standing prevailed.

## ORDER

Covenant's motion for attorney's fees is denied. Costs and expenses are also denied.

N.D.Ill.,2009.
Covenant Media of Illinois, L.L.C. v. City of Des Plaines, Illinois
Slip Copy, 2009 WL 2391851 (N.D.Ill.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3023486 (N.D.Ill.)
**(Cite as: 2010 WL 3023486 (N.D.Ill.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
NEBLOCK TRUCKING, INC., John Andruch and
Jack Andruch, Jr. d/b/a/ Walnut Farms, Plaintiffs,
v.
Douglas P. SCOTT, in his official capacity as Director of the Illinois Environmental Protection Agency,
Defendant.
**No. 09 C 1985.**

July 28, 2010.

West KeySummary
**Civil Rights 78 ⚖ 1482**

<u>78</u> Civil Rights
   <u>78III</u> Federal Remedies in General
      <u>78k1477</u> Attorney Fees
         <u>78k1482</u> k. Results of Litigation; Prevailing Parties. <u>Most Cited Cases</u>
Environmental Protection Agency's (EPA) voluntary removal of a special condition on waste transfer station operator's operational permit did not make operator a "prevailing party," in a <u>§ 1983</u> action against EPA challenging the validity of the condition. Therefore, operator was ineligible for attorneys' fees. <u>42 U.S.C.A. §§ 1983</u>, <u>1988</u>.

Jennifer J. Sackett-Pohlenz, Querrey & Harrow, Ltd., Chicago, IL, <u>Charles M. English</u>, <u>Wendy M. Yoviene</u>, Ober, Kaler, Grimes & Shriver PC, Washington, DC, for Plaintiffs.

<u>James Allen Lang</u>, Rachel Jana Fleischmann, Illinois Attorney General's Office, Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

<u>RUBEN CASTILLO</u>, District Judge.

**\*1** Neblock Trucking, Inc. ("Neblock"), John Andruch and Jack Andruch, Jr. (the "Andruch Broth-

ers") (collectively, "Plaintiffs") filed this action against Douglas P. Scott ("Scott"), in his official capacity as Director of the Illinois Environmental Protection Agency ("IEPA"), alleging that a permit issued by the IEPA violated <u>Article I, Section 8, Clause 3 of the U.S. Constitution</u> (the "Commerce Clause"). (R. 17, Corrected Compl.) After the Court's ruling on a prior motion to dismiss, Scott filed an additional motion to dismiss pursuant to <u>Federal Rule of Civil Procedure 12(b)(1)</u>. (R. 41, Def.'s Mot. to Dismiss.) In his motion, Scott argued that actions subsequently taken by the IEPA rendered Plaintiffs' action moot. (*Id.*) The Court granted Scott's motion on December 17, 2009, and dismissed Plaintiffs' suit without prejudice.<u>FN1</u> (R. 44, Min.Entry.) Presently before the Court is Plaintiffs' petition for fees and motion for instructions pursuant to <u>42 U.S.C. § 1988</u> ("<u>Section 1988</u>"), <u>Federal Rule of Civil Procedure 56(d)</u>, and Local Rule 54.3. (R. 49, Pls.' Pet.) For the reasons stated below, Plaintiffs' petition and motion are denied.

> <u>FN1</u>. Plaintiffs subsequently filed a motion for reconsideration and clarification. (R. 45, Pls.' Mot. for Recons.) This motion was denied on July 21, 2010. (R. 64, Min.Entry.) In denying their motion for reconsideration, the Court, after concluding that there was no substantive legal difference between Plaintiffs' corrected and amended complaint, also dismissed their amended complaint without prejudice.

**BACKGROUND**

**I. Relevant Prior Proceedings**

Prior to December 22, 2004, the Illinois Environmental Protection Act (the "Act"), 415 Ill. Comp. Stat. 5/1 *et seq.*, distinguished between regional pollution control facilities ("RPCFs") and local pollution control facilities ("LPCFs"). (R. 17, Corrected Compl. ¶ 6.) LPCFs were prohibited from receiving waste generated outside of the local general purpose unit of government in which they were located, while RPCFs did not have such a limitation. (*Id.* ¶ 18.) To obtain an IEPA permit for a LPCF, zoning approval of the local government in which the LPCF was lo-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



EXHIBIT

D

Slip Copy, 2010 WL 3023486 (N.D.Ill.)
**(Cite as: 2010 WL 3023486 (N.D.Ill.))**

cated was required. (*Id.*) RPCFs, on the other hand, had to obtain site location approval pursuant to the Act. (*Id.*) After the December 22, 2004 effective date of an amendment to the Act, the distinction between RPCFs and LPCFs was eliminated, and all new pollution control facilities, including transfer stations, were required to obtain site location approval. (*Id.* ¶ 20.)

Prior to the effective date of this amendment, United Disposal of Bradley, Inc. ("United Disposal")-which operates both a waste collection business and a waste transfer station-applied for a development permit to construct a LPCF in Bradley, Illinois. (*Id.* ¶¶ 4, 21, 23.) After United Disposal received local zoning approval from Bradley, the IEPA granted its application for a development permit on September 21, 1994 (No.1994-306-DE). (*Id.* ¶ 23.) On December 5, 1994, United Disposal applied for an operational permit from the IEPA. (*Id.* ¶ 24.) In January 1995, the IEPA issued United Disposal the operational permit for its solid waste transfer station in Bradley (No.1994-306-OP). (*Id.*) The issued operational permit contained Special Condition No. 9, which provided: "No waste generated outside of the municipal boundaries of the Village of Bradley may be accepted at this facility." (*Id.*)

**\*2** On March 31, 2003, United Disposal filed an application with the IEPA for the modification of their operating permit, in which they requested that Special Condition No. 9 be removed from their operational permit. (*See id.* ¶ 25; R. 45, Pls.' Mot. for Recons., Ex. B at 3.) The IEPA denied their request, and the Illinois Pollution Control Board ("IPCB") subsequently affirmed the denial. (R. 45, Pls.' Mot. for Recons., Ex. B at 13.) In affirming, the IPCB found that before the IEPA could grant the requested modification to United Disposal's operating permit, "United Disposal must request a corresponding change to its development permit." *United Disposal of Bradley v. Ill. Envtl. Prot. Agency,* PCB 03-325, 2004 WL 1470978, at \*14 (Ill. Poll. Control Bd. June 17, 2004). Additionally, the IPCB concluded that "proof of local siting approval is a condition precedent to the [IEPA] granting a modification to [United Disposal's] development permit." (*Id.*) United Disposal appealed the IPCB's decision to the Appellate Court of Illinois, Third District. (R. 17, Corrected Compl. ¶ 25.) Again, the denial of United Disposal's application was affirmed. *United Disposal of Brad-*

*ley, Inc. v. Pollution Control Bd.,* 363 Ill.App.3d 243, 299 Ill.Dec. 809, 842 N.E.2d 1161, 1168 (Ill.App.Ct.2006).

**II. The Present Litigation**

Neblock is a corporation engaged in the business of hauling steel. (*Id.* ¶ 9, 299 Ill.Dec. 809, 842 N.E.2d 1161.) In the execution of its business in and outside of Illinois, Neblock also generates waste. (*Id.*) Neblock has sought to have United Disposal collect and transfer waste through United Disposal's Bradley waste transfer station. (*Id.*) United Disposal informed Neblock that it could not accept waste generated outside of Bradley because of Special Condition No. 9's geographic limitation. (*Id.*)

The Andruch Brothers operate Walnut Farms, a feed and livestock farm, and have sought to bring the waste they generate on their farm to United Disposal's transfer station. (*Id.* ¶ 11, 299 Ill.Dec. 809, 842 N.E.2d 1161.) Similarly, United Disposal informed them that it was unable to accept waste generated outside of Bradley because of Special Condition No. 9. (*Id.*)

On March 31, 2009, Plaintiffs, along with several other parties, filed a two-claim complaint against Scott.[FN2] (R. 1, Compl.) In their complaint, Plaintiffs alleged that Special Condition No. 9, acting in conjunction with 415 Ill. Comp. Stat. 5/21(d)(1),[FN3] "discriminates against waste generated outside of Bradley and outside of Illinois in violation of [the Commerce Clause]." (R. 17, Corrected Compl. ¶ 35.) As a remedy for this alleged violation, Plaintiffs sought declaratory and injunctive relief. (*Id.* ¶ 36, 299 Ill.Dec. 809, 842 N.E.2d 1161.)

> FN2. Due to an electronic filing error, Plaintiffs filed a corrected complaint on May 7, 2009. (R. 17, Corrected Compl.)

> FN3. This provision of state law prohibits any person from conducting any waste-storage, waste-treatment, or waste-disposal operation without a permit or in violation of any conditions imposed by a permit. *See* 415 Ill. Comp. Stat. 5/21(d)(1).

Scott filed a motion to dismiss on May 20, 2009. (R.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3023486 (N.D.Ill.)
(Cite as: 2010 WL 3023486 (N.D.Ill.))

24, Def.'s Prior Mot. to Dismiss.) The Court, on August 26, 2009, partially granted his motion. *Liberty Disposal, Inc. v. Scott,* 648 F.Supp.2d 1047, 1056 (N.D.Ill.2009). Specifically, the Court dismissed all parties-except for Neblock and the Andruch Brothers-for lack of standing. *Id.* at 1054. Additionally, Plaintiffs' first claim for relief was also dismissed. *Id.* The Court did, however, find that Plaintiffs' second claim for relief pursuant to 42 U.S.C. § 1983 ("Section 1983")-which alleged a violation of the Commerce Clause-withstood the motion to dismiss. *Id.* at 1055.

**\*3** On December 11, 2009, the IEPA removed Special Condition No. 9 from United Disposal's permit.[FN4] (R. 41, Def.'s Mot, Ex. A.) That same day, Scott filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). (*Id.*) In his motion, Scott argued that the IEPA's voluntary removal of Special Condition No. 9 rendered Plaintiffs' action moot. (*Id.* at 2-3.) The Court granted Scott's motion on December 17, 2009, and dismissed Plaintiffs' suit without prejudice. (R. 44, Min.Entry.) The Court retained post-judgment jurisdiction on the issue of attorneys' fees. (R. 51, Tr. of Dec. 17, 2009 Proceedings at 4-5.)

> FN4. The letter setting forth this change suggests that the modification was made to United Disposal's development and operational permits. (*See* R. 41, Def.'s Mot. to Dismiss, Ex. A ("The special conditions of revised Permit No. 1994-306-DE/OP are identical to all previous permits, except Condition A.13 has been modified by removal of the description of the waste acceptance area.").)

Plaintiffs filed a motion for reconsideration and clarification on January 14, 2010. (R. 45, Pls.' Mot. for Recons.) In their motion, they argued that Scott's "voluntary, unilateral decision to modify the permit is insufficient to resolve the controversy." (*Id.* at 3.) Plaintiffs maintained that because Scott's authority to remove Special Condition No. 9 is questionable, potential third-party suits challenging the revised permit indicate that he "has certainly not shown it is 'absolutely clear' that future litigation will not force him to restore the restrictions or that a future administration will not do so." (*Id.* at 6.) As a result, they contended that this action is not moot. (*Id.* at 4-6.) Alternatively,

they asked the Court to "clarify that [our] mootness determination of December 17, 2009, relies on and incorporates [our] August 26, 2009 Memorandum and Opinion." (*Id.* at 9.) The Court denied Plaintiffs' motion for reconsideration and clarification on July 21, 2010. (R. 64, Min.Entry.)

Approximately two weeks after filing their motion for reconsideration and clarification, Plaintiffs filed a petition for attorneys' fees and motion for instructions. (R. 49, Pls.' Pet.) In their petition for fees, Plaintiffs argue that they are prevailing parties entitled to fees because the removal of Special Condition No. 9 from United Disposal's permits came after Scott "los[t] the [May 2009 motion to dismiss] in such a way that the discrimination issue had been decided in the Plaintiffs' favor." (R. 49, Pls.' Pet. ¶¶ 4, 12.) Additionally, given Scott's alleged "all-or-nothing approach" towards fees, Plaintiffs ask, pursuant to Local Rule 54.3(g), for "instructions from the Court as to what, if any, further procedure in addition to this Petition, the Court wants Plaintiffs to initiate with [Scott] on fees." (*Id.* ¶¶ 15-19.)

## LEGAL STANDARD

In any action or proceeding to enforce Section 1983, The Civil Rights Attorney's Fees Awards Act of 1976 authorizes district courts to award reasonable attorney's fees to a "prevailing party." 42 U .S.C. § 1988(b). It is well-established that the term "prevailing party" as used in Section 1988 "includes only those parties that have achieved a 'judicially sanctioned change in the legal relationship of the parties.' " *Zessor v. Keith,* 536 F.3d 788, 795 (7th Cir.2008) (quoting *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.,* 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)). " '[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim.' " *Id.* (quoting *Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). Status as a prevailing party is a threshold determination under Section 1988. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

## ANALYSIS

**\*4** Plaintiffs argue that the Court's August 2009 Memorandum Opinion and Order establishes their

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3023486 (N.D.Ill.)
(Cite as: 2010 WL 3023486 (N.D.Ill.))

status as "prevailing parties" under Section 1988, and thus provides the basis for their petition for attorneys' fees. (R. 49, Pls.' Pet. ¶¶ 4-5.) Specifically, they contend that the Court's ruling decided a "critical and central legal issue" by concluding that Special Condition No. 9 was facially discriminatory and subject to the *per se* rule under Dormant Commerce Clause doctrine.[FN5] (*Id.*) They assert that this ruling, combined with subsequent admissions made by Scott,[FN6] establish that "the core legal and factual issues in the cases were determined in favor of Plaintiffs." (*Id.* ¶ 7.) Accordingly, Plaintiffs maintain that they "are prevailing parties entitled to fees in this case, as they succeeded on the merits of their case ... and [Scott] had removed the *per se* discriminatory permit condition from United Disposal's transfer station permits only after losing the Motion to Dismiss in such a way that the discrimination issue had been decided in Plaintiffs' favor." [FN7] (*Id.* ¶ 12 .) The Court disagrees.

> FN5. The Dormant Commerce Clause is generally analyzed under a two-tiered approach. *Alliant Energy Corp. v. Bie,* 330 F.3d 904, 911 (7th Cir.2003). The first tier is often referred to as the *"per se"* rule, which is applied when a statute "directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests." *Id.* (quoting *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.,* 476 U.S. 573, 578, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986)). In such cases, the statute can only be saved by a showing that it "advances a legitimate local purpose that cannot adequately be served by reasonable nondiscriminatory alternatives." *Id.* (quoting *Oregon Waste Sys. v. Dep't of Envtl. Quality,* 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994)). The second tier is for cases where a statute "has only indirect or incidental effects on interstate commerce and regulates evenhandedly." *Id.* (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970)). Under the second tier analysis, a court will employ the Pike balancing test and uphold the statute "unless the burden imposed on [interstate] commerce is clearly excessive in relation to the local benefits." *Id.* In its August 2009 ruling, the Court found that Plaintiffs stated a Dormant Commerce Clause

claim that was properly analyzed under the *"per se"* approach. *Liberty Disposal,* 648 F.Supp.2d at 1054-56.

> FN6. Plaintiffs point to two admissions: (1) that "the permit conditions at issue prohibit[ed] acceptance of waste from outside of Bradley"; and (2) that "waste is a commodity in interstate commerce." (R. 49, Pls.' Pet. ¶ 6.)

> FN7. Contrary to Plaintiffs' statements in their petition, the Court has not recognized that they are "prevailing parties" entitled to fees. In the portion of the record cited by Plaintiffs, the Court merely stated that "there's an argument to be made that plaintiffs have prevailed in this case[.]" (R. 51, Tr. of Dec. 17, 2009 Proceedings at 4-5.)

In *Buckhannon,* the Supreme Court rejected as a basis for awarding attorney's fees the "catalyst theory," which deemed the plaintiff a "prevailing party" if it achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. 532 U.S. at 601-02, 610. Instead, it held that the term "prevailing party," as used in various fee-shifting statutes, includes only those parties who have obtained a "judicially sanctioned change in the relationship of the parties." *Id.* at 605. In rejecting the "catalyst theory," the Supreme Court observed that a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* As examples of the sort of "judicially sanctioned change" required to be deemed a "prevailing party," it cited "enforceable judgments on the merits and court-ordered consent decrees." *Id.* at 604. These two examples, the Supreme Court noted, create the "material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees. *Id.* Such an alteration, it held, must be accompanied by some award of judicial relief. *Id.* at 603; *see Walker v. Calumet City, Ill.,* 565 F.3d 1031, 1033-34 (7th Cir.2009) (holding that the material alteration "must arise from a court order").

Here, the Court finds that Plaintiffs are not prevailing parties under Section 1988. In its August 2009 ruling, the Court did not enter an enforceable judgment on

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3023486 (N.D.Ill.)
**(Cite as: 2010 WL 3023486 (N.D.Ill.))**

the merits. *Liberty Disposal,* 648 F.Supp.2d at 1056. Nor has a court-ordered consent decree been entered. All that the August 2009 ruling found was that "Plaintiffs have stated a claim under the dormant Commerce Clause." *Id.* As the Supreme Court observed in *Buckhannon,* mere survival of a motion to dismiss cannot serve as the basis for "prevailing party" status. *See* 532 U.S. at 605 ("Even under a limited form of the 'catalyst theory,' a plaintiff could recover attorney's fees if it established that the 'complaint had sufficient merit to withstand a motion to dismiss for lack of jurisdiction of failure to state a claim on which relief may be granted ... This is not the type of legal merit that our prior decisions, based upon plain language and congressional intent, have found necessary."). Indeed, even a partial victory on a motion for summary judgment is insufficient to confer "prevailing party" status where the order lacks finality and is unenforceable. *Zessar,* 536 F.3d at 798 (holding that the lack of enforceable terms and disputed nature of the district court's partial summary judgment order rendered it insufficient to provide the basis for "prevailing party" status). Rather, what is needed is a court-ordered material alteration of the legal relationship between the parties. *Walker,* 565 F.3d at 1033-34. In the absence of any enforceable judicial relief to Plaintiffs, there has been no such change in the legal relationship between Plaintiffs and Scott. Accordingly, Plaintiffs cannot be considered a "prevailing party," and are thus ineligible for attorneys' fees pursuant to Section 1988.

*5 In support of their position, Plaintiffs correctly note that *Buckhannon* did not limit the judicial actions necessary to confer "prevailing party" status to enforceable judgments on the merits and court-ordered consent decrees. (R. 63, Pls.' Reply at 2.) What they fail to establish is how survival on a motion to dismiss led to the "material alteration of the *legal* relationship" of the parties in this case. *Buckhannon,* 532 U.S. at 604 (emphasis added). Plaintiffs do not provide any case law which either directly or indirectly supports the proposition that stating a claim for relief-which in turn leads to a non-court ordered change on the part of the defendant-is enough to transform a litigant into a "prevailing party." [FN8] The cases Plaintiffs cite to support their position are inapposite for one simple reason: they all involve situations where the prevailing party was granted some award of judicial relief which altered the legal relationship between the parties. *See Perez v. Westchester County Dep't of Corrections,* 587 F.3d

143, 149-53 (2d Cir.2009) (plaintiffs deemed "prevailing parties" after the entry of a judicially reviewed and revised settlement agreement which provided for judicial enforcement); *Saint John's Organic Farm v. Gem County Mosquito Abatement Dist.,* 574 F.3d 1054, 1058-61 (9th Cir.2009) (plaintiff considered "prevailing party" where settlement agreement was judicially enforceable, required certain behavior by defendant, and indicated actual relief on the merits of plaintiff's claim); *Dearmore v. City of Garland,* 519 F.3d 517, 524-26 (5th Cir.2008) (status as "prevailing party" partially established by the district court's entry of a preliminary injunction); *Select Milk Producers, Inc. v. Johanns,* 400 F.3d 939, 949 (D.C.Cir.2005) (same); *Pres. Coal. of Erie County v. Fed. Transit Admin.,* 356 F.3d 444 (2d Cir.2004) (finding that plaintiff attained "prevailing party" status when it obtained a court order which materially altered the legal relationship of the parties).

> FN8. Plaintiffs' reliance on *Young v. City of Chicago,* 202 F.3d 1000 (7th Cir.2000) to support an argument regarding the Seventh Circuit's interpretation of *Buckhannon* is misplaced, as *Young* predates *Buckhannon.*

In this case, there has been no award of judicial relief. No injunction has been provided, nor have Scott's actions been required by a judicially enforceable order or settlement agreement. Thus, despite Plaintiffs' statements to the contrary, Scott's removal of Special Condition No. 9 was voluntary. [FN9] As previously noted, such a voluntary change by a defendant does not make a plaintiff a "prevailing party." *See Buckhannon,* 532 U.S. at 605 ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change."). Acceptance of Plaintiffs' position in this case would constitute an impermissible drift towards the "catalyst theory" that was clearly rejected in *Buckhannon.* Plaintiffs have not provided any persuasive arguments grounded in existing case law that would justify such a development. Thus, Plaintiffs have failed to show that they are "prevailing parties" under Section 1988.

> FN9. Plaintiffs argue that they are "prevailing parties" because "Defendant represented, when it amended its complaint against United Disposal in a pending state

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3023486 (N.D.Ill.)
**(Cite as: 2010 WL 3023486 (N.D.Ill.))**

court action, that this Court found the subject geographical permit restriction to be unconstitutional and, as a result, the state court complaint was amended." (R. 63, Pls.' Reply at 6.) Indeed, the record does indicate that the State of Illinois, in amending its enforcement proceeding against United Disposal, did consider the Court's August 2009 ruling. (*See* R. 63, Pls.' Reply, Ex. A ¶¶ 2-3.) Its subjective belief regarding the import of the August 2009 ruling, however, does not disturb the Court's analysis under the line of cases flowing from *Buckhannon*.

## CONCLUSION

**\*6** Plaintiffs are not "prevailing parties," and are thus ineligible for attorneys' fees pursuant to <u>Section 1988</u>. Accordingly, Plaintiffs' petition for fees (R. 49) is DENIED. Given this conclusion, Plaintiffs' motion for instructions (R. 49) is also DENIED.

N.D.Ill.,2010.
Neblock Trucking, Inc. v. Scott
Slip Copy, 2010 WL 3023486 (N.D.Ill.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION | ) | |
| OF AMERICA, INC., DR. KATHRYN TYLER, | ) | |
| VAN F. WELTON, and BRETT BENSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 08 CV 3697 |
| v. | ) | |
| | ) | Honorable Milton I. Shadur |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' "PREVAILING PARTY"
STATUS IN RELATION TO THEIR MOTION FOR ATTORNEY'S FEES**

Pursuant to this Court's order of October 26, 2010, Plaintiffs hereby submit this memorandum in support of their status as "prevailing parties" for purposes of an award of attorney's fees under 42 U.S.C. § 1988.

### Introduction

42 U.S.C. § 1988(b) provides in part: "In any action or proceeding to enforce a provision of section[] . . . 1983 . . ., the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."  The actions of plaintiffs National Rifle Association *et al.* ("NRA") challenging Chicago's and Oak Park's handgun bans were brought to enforce a provision of § 1983, which allows an action for "deprivation of any rights, privileges, or immunities secured by the Constitution . . . ."  Plaintiffs claimed that the bans infringed on the right of the people to keep and bear arms, which is guaranteed by the Second and Fourteenth Amendments.[1]

---

[1]*See Moore v. Muncie Police and Fire Merit Com'n*, 312 F.3d 322, 326 (7th Cir. 2002) (§ 1983 action requires showing of conduct "committed by a person acting under color of state law" which "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States").

*McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010), in which the NRA plaintiffs were Respondents in Support of Petitioners, ruled that the Second Amendment applies to the States through the Fourteenth Amendment. Chicago and Oak Park immediately recognized that their handgun bans were indefensible after *McDonald*, which effectively struck them down. The repeals of their bans *after* the Supreme Court decision do not render the cases moot for purposes of recovery of attorney's fees. Accordingly, the NRA plaintiffs are prevailing parties.

## I. THE NRA PLAINTIFFS ARE "PARTIES"

The NRA plaintiffs were "parties" in the District Court, the Court of Appeals, and the Supreme Court. *See National Rifle Ass'n v. Village of Oak Park*, 617 F. Supp.2d 752 (N.D. Ill. 2008), *aff'd sub nom.*, *National Rifle Ass'n v. City of Chicago*, 567 F.3d 856 (7th Cir. 2009), *rev'd sub. nom.*, *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010), *cert. granted & remanded*, *NRA v. City of Chicago*, 2010 WL 2571876 (U.S. 2010).

The Supreme Court originally granted the petition for a writ of certiorari of the McDonald litigants, but not of the NRA litigants. In *McDonald*, the NRA litigants remained parties as "Respondents in Support of Petitioners." As provided by Supreme Court Rule 12.6:

> All parties to the proceeding in the court whose judgment is sought to be reviewed are deemed parties entitled to file documents in this Court . . . . All parties other than the petitioner are considered respondents, but any respondent who supports the position of a petitioner shall meet the petitioner's time schedule for filing documents . . . . Parties who file no document will not qualify for any relief from this Court.[2]

The NRA litigants were "parties to the proceeding in the court whose judgment [was] sought to be reviewed," i.e., *National Rifle Ass'n v. City of Chicago*, 567 F.3d 856 (7th Cir. 2009). As "parties entitled to file documents" in the Supreme Court, they were "respondent[s]

---

[2] *See Black v. United States*, 130 S.Ct. 2963, 2966 n.1 (2010) (noting party who "is a respondent in support of petitioners who qualifies for relief under this Court's Rule 12.6").

who support[ed] the position of [the] petitioner[s]," and thus met "the petitioner's time schedule

for filing documents."  Thus, they filed opening[3] and reply briefs[4] according to the petitioners'

time schedule.

The Court granted NRA's motion for divided argument.  *McDonald v. City of Chicago*,

130 S.Ct. 1317 (2010) (*mem.*).  Oral argument on behalf of the NRA was conducted by Paul D.

Clement, former U.S. Solicitor General.  *See McDonald v. City of Chicago*, 2010 WL 710088,

*17-28 (Oral Argument) (Mar. 2, 2010).

After rendering the *McDonald* decision, the Supreme Court entered the following order

pursuant to NRA's petition for a writ of certiorari:[5] "The Court reversed the judgment below in

*McDonald v. Chicago*, 561 U.S. ___ (2010). Therefore, the petition for a writ of certiorari is

granted, and the case is remanded to the United States Court of Appeals for the Seventh Circuit

for further proceedings." *NRA v. Chicago*, 2010 WL 2571876 (U.S. 2010).

On remand, the Seventh Circuit issued the following order:

> After the Supreme Court's decision in *McDonald v. Chicago*, 130 S.Ct. 3020
> (2010), both the City of Chicago and the Village of Oak Park repealed the
> ordinances that had been the subject of this litigation. Accordingly, we vacate the
> district court's judgments and remand with instructions to dismiss as moot. *See*
> *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950). . . .[6]

---

[3]*See* Brief for Respondents the National Rifle Association of America, Inc., *et al.*, in Support of
Petitioners, 2009 WL 3844394 (Nov. 16, 2009).

[4]*See* Reply Brief for Respondents the National Rifle Association of America, Inc., *et al.* in Support of
Petitioners, 2010 WL 581625 (Jan. 29, 2010).

[5]See NRA's Petition for a Writ of Certiorari, 2009 WL 1556563 (Jun. 3, 2009), and NRA's Reply to Brief
in Opposition, 2009 WL 2491800 (Aug. 14, 2009).

[6]*Munsingwear* involved an injunction suit alleging violation of price controls which became moot on
appeal when the prices were decontrolled.  *Id*. at 37.  "The established practice of the Court in dealing
with a civil case from a court in the federal system which has become moot while on its way here or
pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction
to dismiss."  *Id*. at 39.

> If plaintiffs believe that the repeals entitle them to attorneys' fees under 28 U.S.C. §1988, they may file appropriate motions in the district court. We do not express any opinion on the question whether the repealers, enacted before the Supreme Court's decision could be implemented on remand, affect the availability of fees under the approach of *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001).

*National Rifle Association of America, Inc., et al. v. City of Chicago, Ill., et al.*, Nos. 08-4241, 08-4243, & 08-4244 (7th Cir., Aug. 25, 2010).

As shown below, plaintiffs won prevailing-party status by the Supreme Court's decision that the Second Amendment is incorporated into the Fourteenth Amendment. Defendants recognized that this decision doomed their handgun bans and necessitated repeal thereof.

## II. THE NRA PLAINTIFFS ARE "PREVAILING PARTIES" BASED ON *MCDONALD*'S HOLDING THAT THE SECOND AMENDMENT APPLIES TO THE STATES, RENDERING THE HANDGUN BANS INDEFENSIBLE

The McDonald Petitioners and NRA Respondents in Support of Petitioners are parties who prevailed in that they secured the Supreme Court decision that the Second Amendment applies to the States through the Fourteenth Amendment, thereby rendering the municipal handgun bans indefensible. As *McDonald v. City of Chicago*, 130 S.Ct. 3020, 3021 (2010), states:

> Two years ago, in *District of Columbia v. Heller,* 554 U.S. – , 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), we held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense, and we struck down a District of Columbia law that banned the possession of handguns in the home. The city of Chicago (City) and the village of Oak Park, a Chicago suburb, have laws that are similar to the District of Columbia's, but *Chicago and Oak Park argue that their laws are constitutional because the Second Amendment has no application to the States.* We have previously held that most of the provisions of the Bill of Rights apply with full force to both the Federal Government and the States. Applying the standard that is well established in our case law, we hold that the Second Amendment right is fully applicable to the States. (Emphasis added.)

In holding that the Second Amendment is "fully" applicable to the States, *McDonald* rejected the municipalities' argument "to treat the right recognized in *Heller* as a second-class

4

right, subject to an entirely different body of rules than the other Bill of Rights guarantees . . . ." *Id*. at 3044.  The Court noted: "Municipal respondents therefore urge us to allow state and local governments to enact any gun control law that they deem to be reasonable, including a complete ban on the possession of handguns in the home for self-defense."  *Id*. at 3046.  In response, the Court explained:

> Unless we turn back the clock or adopt a special incorporation test applicable only to the Second Amendment, municipal respondents' argument must be rejected. Under our precedents, if a Bill of Rights guarantee is fundamental from an American perspective, then, unless *stare decisis* counsels otherwise,[7] that guarantee is fully binding on the States and thus *limits* (but by no means eliminates) their ability to devise solutions to social problems that suit local needs and values.

*Id*. at 3046.

*Heller* invalidated the handgun ban of a federal enclave, and the standard would be no different for the States: "The relationship between the Bill of Rights' guarantees and the States must be governed by a single, neutral principle."  *Id*. at 3032-33 (also rejecting "the notion that the Fourteenth Amendment applies to the States only a watered-down, subjective version of the individual guarantees of the Bill of Rights.") (citation omitted).[8]  Accordingly, *McDonald* concluded:

> In *Heller,* we held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense.  Unless considerations of *stare decisis* counsel otherwise, a provision of the Bill of Rights that protects a right that is fundamental from an American perspective applies equally to the Federal Government and the States. . . . We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings.

---

[7]*See id.* at 30 (grand jury and civil jury provisions not incorporated).

[8]*See also id.* at 3104 (Stevens, J., dissenting) ("the gravamen of this complaint is plainly an appeal to keep a handgun or other firearm of one's choosing in the home.").

*Id.* at 3050.

In sum, *McDonald* held that the Second Amendment fully applies to the States through the Fourteenth Amendment, rendering the handgun bans at issue indefensible. The NRA plaintiffs achieved their entire litigation goals with the judicial *imprimatur* of the Supreme Court, which in turn caused Chicago and Oak Park to repeal their handgun bans.

### III.  CHICAGO AND OAK PARK ACKNOWLEDGED THAT THE DECISION RENDERED THEIR HANDGUN BANS INDEFENSIBLE

In their brief to the Supreme Court, Chicago and Oak Park recognized that they could not prevail if the Second Amendment is incorporated. They conceded that their laws amounted to handgun bans, *see, e.g.*, Brief for Respondents City of Chicago *et al.*, No. 08-1521, *McDonald v. City of Chicago*, at 12 ("Chicago and Oak Park ban handgun possession nearly entirely"); *id.* at 14 ("[t]he people of Chicago . . . and Oak Park . . . have determined" to adopt "a handgun ban"). And they acknowledged that the Second Amendment as interpreted in *Heller* would be fatal to such sweeping restrictions. *See id.* at 23 (under *Heller*, "the federal government may not ban . . . handguns, no matter how dangerous they are in a particular community and no matter the benefits of doing so"); *see also id.* at 13 ("Second Amendment incorporation would severely limit such regulation").

Before *McDonald* was rendered, Corporation Counsel Mara Georges advised: "If the Supreme Court were to find incorporation of the Second Amendment, the city's handgun ban would be invalidated . . . ." City of Chicago, Committee on Police & Fire, Report of Proceedings, June 18, 2010, 5-6 (Appendix ["App."] A herein). After the decision was announced, she recommended a new ordinance because "the section of our ordinance that prohibits the registration of handguns is unenforceable. It is clear that such a provision will ultimately be struck down based on the Supreme Court's decision in the Heller case . . . ." *Id.*,

June 29, 2010, at 3-4 (App. B herein).  Ms. Georges said that the proposed new ordinance was "drafted in response to the Supreme Court decision earlier this week in the *McDonald* case."  *Id.*, July 1, 2010, at 7 (App. C herein).  She added that, on remand, "it really becomes impossible to defend it [the existing ordinance]."  *Id.* at 21.[9]

Mayor Richard Daley stated: "'It's clear to all that our current handgun ordinance will soon be struck down by the 7th Circuit Court of Appeals. . . . With that in mind, today I want to announce our proposal to rewrite Chicago's gun laws.'"[10]

In the ensuing session that repealed the handgun ban, Mayor Daley noted: "We're here because the Supreme Court decision was rendered against the City of Chicago." Special Meeting of the Chicago City Council (July 2, 2010).[11]  Alderman Latasha Thomas added that "we're following the dictates of our Supreme Court. We are responding to what they have told us we can and can't do . . . ." *Id.*  Alderman Toni Preckwinkle referred to "the Supreme Court justices that voted to strike down our handgun laws . . . ." *Id.*  Alderman Ed Burke said the bill is "mandated by what the law is right now . . . ." *Id.*

Accordingly, the Chicago City Council unanimously repealed its handgun ban.  Journal of Proceedings, July 2, 2010, at 96235.  The enactment found: "On June 28, 2010 the Supreme Court issued its opinion in the *McDonald* case and ruled that the Second Amendment's right to possess a handgun for self-defense in the home also applied to the states . . . ." *Id.*  It stated that

---

[9]"What the Supreme Court has said is that the Second Amendment applies to the City, and the Second Amendment guarantees a right to a handgun in the home for self-defense.  So in other words, a ban by the City on handguns will not withstand the McDonald decision." *Id.*

[10]Mayor Daley Outlines Details of City's New Gun Ordinance, July 1, 2010, http://mayor.cityofchicago.org/mayor/en/press_room/press_releases/2010/july_2010/0701_supreme_ct_gun.html.

[11]http://www.chicityclerk.com/City_Council_Video/2010_Video_Meetings/July2_2010/.

"it is essential for the City Council of the City of Chicago to promptly pass an ordinance that provides for reasonable regulation of firearms *in compliance with the rulings of the United States Supreme Court . . . .*" *Id.* (emphasis added).

On passage, Mayor Daley said that "Chicago's new gun ordinance . . . addresses this week's U.S. Supreme Court ruling . . . . The Court's June 28 ruling effectively overturned Chicago's previous handgun ban."[12]

Oak Park's voice in reaction to *McDonald* was Raymond L. Heise, Village Attorney of Oak Park, who was on the briefs as counsel in the Court of Appeals and the Supreme Court. Heise was quoted as acknowledging "a reality where Oak Park no longer has a handgun ban . . . . Heise, who as village attorney drafted Oak Park's handgun ban in the 1980s, said Monday [June 28] that the decision means Oak Park will eventually have to rescind its ban on the possession of handguns in homes."[13]

The proposed ordinance to repeal Oak Park's handgun ban was on the Village's Board agenda for July 19, 2010. The minutes reflect:

> Mr. Heise gave a brief explanation of the Supreme Court decision regarding the case of McDonald vs. Chicago, et. al. Although the Village's handgun ordinance was not overturned, the provision regarding the right to possess a handgun in one's home for purposes of self defense was found to be unconstitutional. This amendment would ensure that the Village's ordinance was in compliance with the law.[14]

---

[12]Mayor Daley Says City's New Ordinance Addresses Supreme Court Ruling, July 2, 2010, http://mayor.cityofchicago.org/mayor/en/press_room/press_releases/2010/july_2010/0702_supreme_court.html.

[13]Marty Stempniak, "Top court kills Oak Park gun ban," June 29, 2010, http://www.wednesdayjournalonline.com/main.asp?SectionID=1&SubSectionID=1&ArticleID=17855.

[14]Approved Minutes - Regular Board Meeting, Village of Oak Park, July 19, 2010, p. 4, http://www.oak-park.us/public/pdfs/2010%20Minutes/07.19.10_minutes.pdf.

Ordinance 2010-0-47 repealing the handgun ban then passed unanimously.[15]

In sum, Chicago and Oak Park fully recognized that the ruling in *McDonald* required that they repeal their handgun bans.

## IV. PLAINTIFFS PREVAILED BY SECURING A SUPREME COURT RULING WHICH NECESSITATED THE REPEAL OF THE ORDINANCES

*McDonald* definitively ruled that the Second Amendment applies to the States and it does so according to the same standards set forth in *Heller*, thereby rendering the handgun bans at issue impossible to defend. Recognizing that, Chicago and Oak Park prudently repealed them. Since the Supreme Court's decision materially altered the legal relationship of the parties, the repeal of the ordinances did not moot the cases for purposes of recovering attorney's fees.[16]

The seminal case on whether intervening legislation moots a case for "prevailing party" status is *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 600 (2001), which addressed the situation of "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved

---

[15]*Id.* Heise was elsewhere quoted as saying that the "high court justices' message was clear on citizens' rights to have guns in their homes," "[t]he Supreme Court decision became the law of the land the day they released it," and the decision "found that a narrow provision of both the Chicago and Oak Park handgun ordinances was in fact unconstitutional." "Oak Park Gun Law Amended to Allow Guns in Registered Users' Homes," Sun-Times Media Wire, July 20, 2010, http://www.myfoxchicago.com/dpp/news/metro/gun-law-legalized-oak-park-registered-users-homes-20100720.

[16]As the cases discussed *infra* exemplify, a district court has collateral jurisdiction to consider petitions for attorney's fees after a case is dismissed as moot. "It is well established that a federal court may consider collateral issues after an action is no longer pending. " *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). "[M]otions for costs or attorney's fees are 'independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree.'" *Id.* (citation omitted.) "No Article III case or controversy is needed with regard to attorney's fees as such, because they are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot. Its jurisdiction outlasts the 'case or controversy.'" *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir.1999). *See also Wisconsin v. Hotline Industries, Inc.*, 236 F.3d 363, 365 (7th Cir. 2000) ("district courts retain jurisdiction to consider collateral matters after remand and . . . attorney's fees may be awarded under a separate order").

the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."   In that case, an assisted-living home failed an inspection under a State law and brought suit to challenge the requirement; the agency agreed to stay enforcement and then the State legislature repealed the requirement.  The district court declared the case moot and denied fees.  *Id*. at 600-01.

Precedent suggested that "a 'prevailing party' is one who has been awarded some relief by the court . . . ."  *Id*. at 603.  "[E]nforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties'" warranting a fee award, so that a prevailing party includes "a party who has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal."  *Id*. at 604 (citations omitted).

*Buckhannon* rejected the "catalyst theory" in which the mere filing of a lawsuit leads to a voluntary change by the defendant, as "there is no judicially sanctioned change in the legal relationship of the parties."  *Id*. at 605.  "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change."  *Id*.  "Prevailing party" excludes "a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief."  *Id*. at 606.[17]

Plaintiffs here meet these standards.  The decision in *McDonald* – not "the lawsuit" – "brought about" an *in*voluntary "change in the defendant's conduct."  532 U.S. at 600.  There

---

[17]Concurring, Justice Scalia noted that status as a prevailing party "*presumes* the existence of a judicial ruling."  *Id*. at 614 (Scalia, J., concurring).  The term does not include a case in which "the merits of the plaintiff's case remain unresolved – when, for all one knows, the defendant only 'abandon[ed] the fray' because the cost of litigation – either financial or in terms of public relations – would be too great."  *Id*. at 617.

could be no higher "judicial *imprimatur* on the change" than the Supreme Court decision, which created the material alteration of the legal relationship of the parties. *Id*. at 605. It cannot be said that the NRA "simply fil[ed] a nonfrivolous but nonetheless potentially meritless lawsuit" which reached its objective "without obtaining any judicial relief." *Id*. at 606. Chicago and Oak Park did not capitulate based on the mere filing of lawsuits, but fought hard all the way to the Supreme Court. Their frank concessions that *McDonald* left them no choice but to repeal their bans demonstrated a prudent desire to comply with the decision and to avoid potential future liability.[18] The repeals were anything but "voluntary."[19]

*Buckhannon* was applied in *Palmetto Properties, Inc. v. County of Dupage*, 375 F.3d 542 (7th Cir. 2004), which parallels this case. There, the district court ruled adult-entertainment zoning regulations to be unconstitutional. Like here, the County understood that the court ruling rendered its ordinance void and promptly repealed it. No need existing to enter a final judgment, the case was dismissed as moot. *Id*. at 543-46. The lack of a final judgment declaring the ordinance unconstitutional did not negate plaintiff's prevailing party status:

> It would defy reason and contradict the definition of "prevailing party" under *Buckhannon* and our subsequent precedent to hold that simply because the district court abstained from entering a final order formally closing the case – a result of the Defendant's assertions that it would repeal the challenged portion of the ordinance – Palmetto somehow did not obtain a "judicially sanctioned change" in the parties' legal relationship.

*Id*. at 549-50.

---

[18]Further enforcement of the handgun ban and failure to pass an ordinance to allow lawful handgun possession would have exposed Chicago and Oak Park to civil rights lawsuits without any qualified immunity defenses in that *Heller-McDonald* rendered handgun possession a "clearly-established right." *See Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009) ("In ascertaining whether a right is clearly established, this court looks to controlling Supreme Court and 7th Circuit precedent.").

[19]The Supreme Court routinely remands for the lower courts to engage in subsequent proceedings. *Buckhannon* does not suggest that after a locality loses on the dispositive issue in a higher court, it can then quickly capitulate to avoid fees.

11

*Palmetto Properties* noted that in *Buckhannon*, the repeal of the challenged law mooted the case "*before* the district court made *any* substantive rulings." *Id*. at 550. *Buckhannon* thus "construed the change in the defendants' conduct as *voluntary*, lacking the necessary judicial imprimatur." *Id*. But here, the district court ruled favorably on the constitutional claims, and "the County repealed the ordinance only *after* that determination had been made and presumably *because of it*." *Id*. "To be sure, the Defendants were free to moot the case *before* the summary-judgment ruling, in which case the action would have been voluntary. They did not. Hence, their action is most persuasively construed as involuntary – indeed exhibiting judicial imprimatur." *Id*.

In short, "the County's 'voluntary cessation' of the 'challenged practice' . . . was done *after* the district court determined its illegality." *Id*. The plaintiff "secured a favorable substantive ruling from the district court, which, in turn, prompted the Defendants to repeal the zoning restriction." *Id*. at 551. The plaintiff was thus a prevailing party entitled to attorney's fees. *Id*. at 551-52. The same occurred here – the ordinances were repealed *after* the Supreme Court's ruling.

Similarly, in *Southworth v. Board of Regents of University of Wisconsin System*, 376 F.3d 757, 768 (7th Cir. 2004), students obtained a court ruling that a university policy on student fees was not viewpoint neutral and violated the First Amendment. "[I]n response to that ruling, the University altered the mandatory fee system," which thus "resulted from a court-ordered change in the legal relationship between the plaintiff and the defendant." *Id*. (quotation marks deleted). The students were prevailing parties, and *Buckhannon* was inapplicable, because "the University substantially revised its funding system in response to a court ruling . . . ." *Id*. at 771. Again, Chicago and Oak Park repealed their handgun bans in response to a court ruling.

12

In *Young v. City of Chicago*, 202 F.3d 1000 (7th Cir. 2000), a preliminary injunction was issued to allow demonstrations at a political convention.  The City appealed after the convention ended, and the court "dismissed the appeal as moot, the injunction having been limited to demonstrations at that convention."  *Id*.  Attorney's fees awarded on remand were proper:

> The City appeals from that award, arguing that since the suit became moot before a definitive determination of its merits by this court, the plaintiffs cannot obtain fees. Not so. A defendant cannot defeat a plaintiff's right to attorneys' fees by taking steps to moot the case after the plaintiff has obtained the relief he sought, for in such a case mootness does not alter the plaintiff's status as a prevailing party.

*Id*. at 1000-001.

While *Young* was decided before *Buckhannon*, its rule was reaffirmed in *Dupuy v. Samuels*, 423 F.3d 714, 720 (7th Cir. 2005), which explained: "We upheld the award despite the fact that a final judgment on the merits had not been entered. . . . In *Young,* the litigation manifestly had come to an end *despite* the lack of a final judgment on the merits."  This case is even clearer, in that the *McDonald* ruling was acknowledged by defendants themselves as a determination of the merits.

"A judgment in a party's favor" constitutes  a "material alteration of the legal relationship of the parties," even where "everyone denies liability as part of the underlying settlement, and the judge takes no position on the merits."  *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) (consent decree).  Where one party "obtained a favorable judgment" because the other party "threw in the towel," that did not make the first party "less the victor than it would have been had the judge granted summary judgment or a jury returned a verdict in its favor."  *Id*.

Given their decisive defeat in the Supreme Court, it does not matter that the municipalities here, quite responsibly, threw in the towel before the cases were remanded.[20]

By contrast, fees were denied in *Walker v. Calumet City, Ill.*, 565 F.3d 1031, 1032-33 (7th Cir. 2009), in which the City found plaintiff to be in compliance with challenged rental code provisions and assured her that they would not be enforced against her.   (Here, defendants did not remotely suggest that the handgun bans would not be enforced.)  *Walker* explicitly contrasted *Palmetto Properties*, where "prior to the change in circumstances, the court made a decision on the merits in favor of the plaintiff." *Id*. at 1037. [21]

Finally, in *Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 933 (7th Cir. 2003), the plaintiff challenged Chicago's advertising restrictions, but the opinion of the Court of Appeals "did not provide Federation any relief at all; rather, it further limited Federation's ability to advertise."[22] After the plaintiff filed a motion for summary judgment but before Chicago responded, in a wholly separate case, the Supreme Court invalidated similar restrictions under the First Amendment.  *Id*. at 928.  The fact that Chicago then repealed its restrictions did not make the plaintiff a prevailing party, in that "neither Federation nor the City were parties to that case."  *Id*. at 933.  Even if the Supreme Court

---

[20] Plaintiffs would not be prevailing parties if the defendant "changed its position without any judicial input."  *C.Z. ex rel. Ziemba v. Plainfield Community Unit School Dist. No. 202*, 680 F. Supp.2d 950, 955 (N.D. Ill. 2010) (citation omitted).  However, where a favorable decision led to a change in policy and then a dismissal for mootness, it was "the height of absurdity" for a defendant to urge "the absence of court approval when any need for that was attributable to its own surrender . . . ."  *Id*. at 956.  It is "sufficient finality" that is "enough to trigger an award."  *Id*.

[21] *See also Zessar v. Keith*, 536 F.3d 788, 797 (7th Cir. 2008) (fees denied where effect of partial summary judgment disputed, defendants sought an interlocutory appeal, and the law then changed.  "Cases will sometimes arise where, despite there being no final judgment or consent decree, the legal relationship of the parties will be changed due to a defendant's change in conduct brought about by a judicial act exhibiting sufficient finality. *Palmetto* was such a case."  *Id*. at 798).

[22] *See also Franzen v.  Ellis Corp*., 543 F.3d 420, 431 (7th Cir. 2008) ("So far as the merits go, plaintiffs not only did not prevail but also suffered dismissal of their complaint with prejudice.").

14

decision supported the plaintiff's position, "it was not a judgment that changed the legal relationship between the parties in *this* case – and that is what *Buckhannon* requires." *Id*. NRA is a prevailing party here because it *was* a party in *McDonald*, which changed the legal relationship between the parties in this case.

In sum, the NRA plaintiffs were prevailing parties in *McDonald*, which created the material alteration of the legal relationship of the parties by ruling that the Second Amendment applies to the States according to the same standards it applies to the federal government, thereby rendering the handgun bans indefensible.  The repeals of the subject ordinances after the Supreme Court's ruling, based on the admissions of Chicago and Oak Park that compliance with the ruling required such repeals, thus does not moot the cases for purposes of recovery of attorney's fees.

## CONCLUSION

This Court should find and decide that Plaintiffs National Rifle Association *et al.* are "prevailing parties" for purposes of an award of attorney's fees under 42 U.S.C. § 1988.

Dated: December 15, 2010.

<div style="margin-left:40%">

**NATIONAL RIFLE ASSOCIATION**
**OF AMERICA, INC., Dr. KATHRYN TYLER,**
**VAN F. WELTON and BRETT BENSON,**
Plaintiffs

BY:    s/ <u>Stephen A. Kolodziej</u>
        One of Their Attorneys

</div>

Stephen P. Halbrook                Stephen A. Kolodziej
Attorney at Law                   Brenner, Ford, Monroe & Scott, Ltd.
3925 Chain Bridge Road, Suite 403     33 North Dearborn Street, Suite 300
Fairfax, VA 22030              Chicago, IL 60602
Tel. (703) 352-7276            Tel. (312) 781-1970
Fax (703) 359-0938            Fax (312) 781-9209

# APPENDIX

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

NATIONAL RIFLE ASSOCIATION )
OF AMERICA, INC., DR. KATHRYN TYLER, )
VAN F. WELTON, )
and BRETT BENSON, )
)
             Plaintiffs, )
)
      vs. )    No. 08 CV 3697
)
)    Judge Milton I. Shadur
THE CITY OF CHICAGO, )
)
          Defendant. )

## DECLARATION OF STEPHEN A. KOLODZIEJ

I, Stephen A. Kolodziej, am competent to state, and declare the following based upon my personal knowledge:

1.     I am designated local counsel for the plaintiffs in the above-captioned matter.

2.     I am also designated local counsel for plaintiffs in the case of *Benson, et al. v. City of Chicago, et al.*, No. 10-CV-4184, currently pending before the Honorable Judge Ronald A. Guzman of this Court.

3.     Attached hereto is a copy of the City of Chicago's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)(A) that was served upon me by defendants on October 15, 2010 in the *Benson* matter. In item No. 1 of that disclosure, the City of Chicago identified the record of proceedings held by the Chicago City Council Committee on Police and Fire on June 18, June 29, and July 1, 2010, and a copy of that record was enclosed with the Disclosure.

4.     Attached to the Memorandum in Support of Plaintiffs' "Prevailing Party" Status in Relation to their Motion for Attorneys' Fees that has been filed with this Court is an Appendix,

which consists of excerpts from the record of proceedings that was served upon me by the City of Chicago with its Rule 26(a)(1)(A) Disclosure in the *Benson* lawsuit, and that was identified in that Disclosure as the record of proceedings held by the Chicago City Council Committee on Police and Fire on June 18, June 29, and July 1, 2010.

I declare under penalty of perjury that the foregoing is true and correct.

Dated December 9, 2010.

s/_____Stephen A. Kolodziej_____

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn Street, Suite 300
Chicago, Illinois 60602
312-781-1970
skolodziej@brennerlawfirm.com

2



**City of Chicago**
Richard M. Daley, Mayor

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

October 15, 2010

Jesse Panuccio
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
*Delivered via U.S. Mail*

Stephen Kolodziej
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn Street, Suite 300
Chicago, IL 60602
*Delivered via messenger*

**Re: Benson v. City of Chicago, 10 C 4184**

Dear Counsel:

Enclosed please find the Defendants' Rule 26(a)(1)(A) disclosures and the legislative record described therein.

Sincerely,

Andrew Worseck
312-744-7129





IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BENSON, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 10-CV-4184 |
| | ) | Judge Ronald A. Guzman |
| CITY OF CHICAGO, ET AL., | ) | Magistrate Judge Geraldine Soat |
| | ) | Brown |
| Defendants. | ) | |

**DEFENDANTS' INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)(A)**

Defendants City of Chicago and Mayor Richard M. Daley, by and through their attorney,

Mara S. Georges, Corporation Counsel for the City of Chicago, hereby submit their Fed. R. Civ.

P. 26(a)(1)(A) disclosures.

**I.      Rule 26(a)(1)(A)(i) & (ii).**

Defendants state that in supporting their claims or defenses, they may use the record of

proceedings held by the Chicago City Council Committee on Police and Fire ("Committee") on

June 18, June 29, and July 1, 2010.   A copy of that record is being produced herewith.

Defendants may also use the proceedings of the Chicago City Council on July 2, 2010.  Those

proceedings have not been transcribed but can be viewed at:

http://www.chicityclerk.com/City_Council_Video/2010_Video_Meetings/July2_2010/ .

Further, (1) without waiving any arguments as to the proper standard(s) of scrutiny that

govern Plaintiffs' various claims, and the factual material that is relevant under a particular

standard or to a particular claim, (2) reserving all objections to any discovery propounded by

Plaintiffs upon Defendants or upon third-parties, including but not limited to the objections that

the discovery seeks irrelevant information, or improper or premature expert discovery, and (3) without warranting that the following individuals or subject matters are within the permissible bounds of discovery, Defendants state that the name, address and telephone number (if known), and subject matter of testimony of individuals who testified at the Committee proceedings identified above, or of individuals who authored studies, reports, or other documents that were discussed at or submitted during those proceedings, are contained within the record of the proceedings. Further, Defendants state that these disclosures are preliminary, that their investigation continues, and that they reserve the right to supplement these disclosures.

**II.      Rule 26(a)(1)(A)(iii).**

Not applicable.

**III.      Rule 26(a)(1)(A)(iv).**

Not applicable.

Dated: October 15, 2010                    Respectfully submitted,

                                            MARA S. GEORGES,
                                            Corporation Counsel for the City of Chicago

                                            By:      _Andrew Worseck_
                                                      Assistant Corporation Counsel

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division

30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-9018 / 6975  / 7129 / 4216

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Andrew Worseck, an attorney, hereby certify that on this, the 15th day of September,

2010, I caused a copy of the forgoing **Defendants' Initial Disclosures Pursuant to Fed. R. Civ.**

**P. 26(a)(1)(A),** to be served by first-class United States mail, postage prepaid, on:

> Charles J. Cooper
> David H. Thompson
> Jesse Panuccio
> Cooper & Kirk, PLLC
> 1523 New Hampshire Ave., NW
> Washington, DC 20036

and by messenger delivery on:

> Stephen Kolodziej
> BRENNER FORD MONROE & SCOTT LTD.
> 33 N. Dearborn Street, Suite 300
> Chicago, IL 60602

4

# APPENDIX A

ORIGINAL

1

```
 1          CITY OF CHICAGO
        COMMITTEE ON POLICE AND FIRE
 2

 3
    RE:  HEARING TO DISCUSS GUN VIOLENCE AND
 4       FIREARM REGISTRATION REGULATION

 5

 6

 7

 8          REPORT OF PROCEEDINGS of a

 9  meeting of the City of Chicago, Committee on Police

10  and Fire, taken on June 18th, 2010, 10:00 a.m.,

11  City Council Chambers, Chicago, Illinois, and

12  presided over by ALDERMAN ANTHONY A. BEALE,

13  Chairman.

14

15
        Reported by:  Bernice Betts, C.S.R.
16

17

18

19

20

21

22
```

2

1        ALDERMAN BEALE:  It's 10:08, and the

2   Committee on Police and Fire will now come to

3   order.  We have a public hearing today to discuss

4   gun violence and firearm registration regulation.

5   And we have quite a few people that want to

6   testify.  If there's anyone who wishes to testify,

7   if you can please fill out the appropriate paper

8   work and get it turned in.

9            We're going to try to move this

10  hearing along as quickly as possible, because we

11  have a lot of testimony.

12            First, we want to bring Mara Georges

13  up from Corporation Counsel to discuss the

14  importance of having gun registration, and to

15  discuss some gun violence.

16      CORPORATION COUNSEL GEORGES:  For the record,

17  my name is Mara Georges G-e-o-r-g-e-s.  I'm the

18  Corporation Counsel for the City of Chicago.

19  Mr. Chair, Members of the City Council's Police and

20  Fire Committee and honored guests.

21            After a dully noted finding that

22  firearms, and especially handguns, play a major

3

1    role in the commission of homicides, aggravated

2    assaults and armed robberies on March 19th of 1982,

3    Alderman Edward M. Burke moved to pass, and the

4    Chicago City Council enacted, by a vote of 30 yeas

5    and 11 nays a firearms ordinance, which renders

6    most handguns unregistrable in the city of Chicago.

7              The ordinance, still in effect today

8    with modification, allows for the registration of

9    rifles and shotguns that are not sawed off, short

10   barreled or assault weapons.  It requires

11   registrable firearms to be registered before being

12   possessed in Chicago and registration must be

13   renewed annually.  Failure to renew shall "cause

14   the firearm to become unregistrable."  The

15   ordinance provides that no person may possess "any

16   firearm which is unregistrable" within the city

17   confines.

18             On June 26th of 2008, 26 years after

19   the enactment of that handgun ban the Illinois

20   State Rifle Association and various other

21   Plaintiffs in the McDonald case filed in the

22   Federal District Court for the Northern District of

4

1  Illinois a challenge to the city's handgun ban and

2  certain registration requirements contained in the

3  ordinance.

4          The Plaintiffs in the McDonald case

5  alleged in pertinent part that Chicago's handgun

6  ban violates the Second Amendment as allegedly

7  incorporated into the 14th Amendment's due process

8  clause and privileges or immunities clause.

9          The following day, June 27th of

10 2008, the National Rifle Association filed two

11 similar lawsuits.  One challenging Chicago's

12 handgun ban, and the other Oak Park's.  McDonald

13 and the two NRA cases proceeded before the same

14 District Court Judge, and on December 18th of 2008,

15 Judge Milton I. Schader (phonetic) entered judgment

16 on the pleadings in favor of the city and Oak Park

17 in all three cases on the basis that the Second

18 Amendment does not apply to the states.

19         The Seventh Circuit Court of Appeals

20 consolidated the cases and affirmed the District

21 Court's decisions on June 2nd of 2009.  The Court

22 held that it was bound by previous decisions of the

5

1   United States Supreme Court refusing to apply the

2   Second Amendment to the states.

3              The Supreme Court granted certiorari

4   in the McDonald case on September 30th of 2009 and

5   heard oral argument on March 2nd of 2010.  The

6   issue of incorporation of the Second Amendment to

7   the states is the issue being considered by the

8   United States Supreme Court.

9              The Supreme Court has publicized

10  that opinions will be issued on Monday, June 21st

11  and Monday, June 28th, and experts believe the

12  court will also release opinions on Thursday,

13  June 24th, and Wednesday, June 30th.

14             When the Supreme Court issued its

15  opinion in the Heller case involving Washington,

16  D.C.'s handgun ban, the opinion was issued on the

17  last day of the term.  If the Supreme Court were to

18  follow suit, that day would be June 30th of this

19  year.

20             If the Supreme Court were to find

21  incorporation of the Second Amendment, the city's

22  handgun ban would be invalidated.  As the Court's

CITY 000005

6

1  decision in Heller has already found a right to

2  possess a handgun in the home for self-defense

3  purposes.

4           Assuming hypothetically that the

5  city's handgun ban were to be invalidated, the city

6  could seek approval from the City Council for a new

7  ordinance regulating firearms.  The Council could

8  consider limitations on number of firearms,

9  insurance and training requirements, ballistics

10 testing, and minimum qualifications for handgun

11 eligibility.

12           In today's hearing a number of

13 individuals who have spent years studying various

14 aspects of the firearms industry will testify.

15 These individuals have specific recommendations

16 regarding potential aspects of a new ordinance.

17 They realized that of the 412 homicides caused by

18 firearms in the city of Chicago during 2008, 98

19 percent of those or 402 resulted from handguns.

20 Thank you.

21      CHAIRMAN BEALE:  Thank you.  Any questions?

22 I'm sorry, not so fast.  Alderman Rugai.

1

# APPENDIX B

COPY

1

2                        CITY OF CHICAGO

3              COMMITTEE ON POLICE AND FIRE

4

5

6

7

8

9

10

11                        REPORT OF PROCEEDINGS of a

12    meeting of the City of Chicago, Committee on

13    Police and Fire, taken on June 29, 2010, 1:00

14    p.m., City Council Chambers, Chicago, Illinois,

15    and presided over by ALDERMAN ANTHONY BEALE,

16    Chairman.

17

18

19         Reported by:  Donna T. Wadlington, C.S.R.

20

21

22

2

1          CHAIRMAN BEALE:  It's 1:10.  The

2     Committee on Police and Fire is now called to

3     order.  We're going to go out of regular order

4     of business.  Alderman Pope.

5          ALDERMAN POPE:  Thank you,

6     Mr. Chairman.

7               I'd like to make a motion that

8     we reconsider the five items that were heard at

9     yesterday's hearing, all that were approved by

10    this body.  So a motion to reconsider, please.

11         CHAIRMAN BEALE:  There's a motion to

12    reconsider.

13               All in favor?  All opposed?

14               The no's have it.  Those items

15    will be reported out tomorrow at City Council.

16               The item before us now is off

17    the supplemental agenda regarding the gun ban.

18    We have expert testimony from quite a few

19    people.  First, we're going to bring up Mara

20    George from Corporation Counsel.

21         CORPORATION COUNSEL GEORGES:

22    Alderman, do you mind if I turn this around?

3

1          CHAIRMAN BEALE:  Sure.  Do you want me

2     to get that for you?

3          CORPORATION COUNSEL GEORGES:  Good

4     afternoon.  My name is Mara Georges,

5     G-e-o-r-g-e-s.  I'm the Corporation Counsel of

6     the City of Chicago.

7               Mr. Chair, members of the

8     Police and Fire Committee, yesterday in a

9     landmark five to four decision that reversed 130

10    years of case law, the United States Supreme

11    Court ruled that the Second Amendment of the

12    U.S. Constitution applies to state and local

13    governments, as well as the Federal Government.

14               As the Mayor said, this

15    decision was disappointing but not surprising

16    given the Court's ruling in the *Heller* case.

17               I'm sure that many of you have

18    questions about what this ruling means for

19    Chicago's current ordinance and the extent to

20    which we can regulate firearms in the future.

21               The Supreme Court did not

22    strike down any part of our ordinance.  The

1    Court reversed the lower court decision

2    upholding our handgun ban and remanded the case

3    to the Seventh Circuit Court of Appeals for

4    further proceedings.  Therefore, technically,

5    our current ordinance is still in effect until

6    the Seventh Circuit invalidates it.  However, as

7    a practical matter, the section of our ordinance

8    that prohibits the registration of handguns is

9    unenforceable.

10                   It is clear that such a

11   provision will ultimately be struck down based

12   on the Supreme Court's decision in the *Heller*

13   case, in which the Court ruled that Washington,

14   DC's handgun ban violated the Second Amendment.

15   Therefore, it is important that we continue to

16   work to craft a new ordinance that promotes safe

17   and responsible gun ownership and complies with

18   the Court's ruling in this case.

19                   As we move forward, I want to

20   emphasize that the case before the Supreme Court

21   involved only the ban on the ownership of a

22   handgun in the home for self-defense purposes.

# APPENDIX C

1

COPY

1

2                    CITY OF CHICAGO

3              COMMITTEE ON POLICE AND FIRE

4

5

6

7

8

9

10

11                    REPORT OF PROCEEDINGS of a

12    meeting of the City of Chicago, Committee on

13    Police and Fire, taken on July 1, 2010, 10:00

14    a.m., City Council Chambers, Chicago, Illinois,

15    and presided over by ALDERMAN ANTHONY BEALE,

16    Chairman.

17

18

19        Reported by:  Donna T. Wadlington, C.S.R.

20

21

22

CITY000307

2

1          ALDERMAN BALCER:  I'd like to call the

2     meeting to order of the Police and Fire

3     Committee.

4               And I'd also like to recess it

5     at this time until the Chairman returns.

6     Recessed until the Chairman gets here.

7               (WHEREUPON, the Committee is

8               in recess.)

9     CHAIRMAN BEALE:  It's 11:25.  The

10    Committee on Police and Fire will continue its

11    recessed meeting.

12              The sole purpose of this

13    meeting is to consider on the agenda an

14    ordinance introduced directly into Committee by

15    Corporation Counsel concerning responsible gun

16    ownership.

17              On June 18th and June 29th,

18    the Committee held a hearing on gun violence and

19    took testimony from experts on possible policies

20    to reduce such violence in our city.  These

21    hearings contemplated the impact of the United

22    States Supreme Court's ruling -- *McDonald*

1    decision on the City's handgun ban and the

2    future policies the City can enact to address

3    gun violence.

4                              More than 30 people testified

5    at the hearing.  We heard from numerous experts

6    on gun violence from the Corporation Counsel,

7    other legal experts, from the Superintendent of

8    the Chicago Police Department, and other CPD

9    officers, from business owners, from leaders of

10   our faith-based community, community

11   organizations and others who have lost loved

12   ones to gun violence and even some from the

13   Plaintiffs in the *McDonald* case.

14                              Among those experts testified

15   were Robyn Thomas, David Hemenway, Thom Mannard,

16   Tom VandenBerk, Mark Walsh, Dr. Marie Crandall,

17   Claude Robinson, Annette Holt, Juliet Leftwich,

18   and Daniel Webster.

19                              I would also like to

20   acknowledge one of the experts we invited.

21   Dr. Jens Ludwig, a Professor of Social Service

22   Administration, Law and Public Policy at the

1    University of Chicago's Crime Lab, was unable to

2    testify but we also distributed -- more

3    testimony from -- his testimony was also

4    submitted to the record.

5              During prior hearings we also

6    distributed and placed on the record testimony

7    from several of our other experts, as well as

8    references from other work of numerous and other

9    studies in case and effect of gun violence and

10   recommend that we -- what we can do to address

11   the problem.

12             From the evidence that we

13   presented at the hearing, the Committee would

14   like to make the following findings:

15             Chicago, like other big

16   cities, have serious problems of gun violence.

17   The total economic and social costs of gun

18   violence in Chicago are substantial.  Gun

19   violence severely impacts Chicago's criminal

20   justice and health care system.  Gun violence

21   foments fears in Chicago's communities, which

22   can harm property value and drive residents from

1    -- and also fleeing our neighborhoods.  It also

2    can increase -- I'm sorry.

3                    An increase in the number of

4    guns in circulation can contribute to an

5    increase in the number of incidents of gun

6    violence.  The presence of guns can also make

7    crime more lethal and would be -- also it can be

8    -- I'm sorry.  I need some water.

9                    An increase in the number of

10   guns in circulation contribute to an increase in

11   the number of incidents of gun violence.  The

12   presence of guns makes crime more lethal than

13   others when guns are not present.  Handguns are

14   extremely -- to an extreme degree

15   disproportionately contribute to gun violence

16   and death in Chicago.

17                    A strong permitting system

18   from firearms owners is vital.  A vigorous

19   firearm registration system is necessary.

20   Registration gives law enforcement essential

21   information about firearm ownership allowing

22   first responders to determine in advance whether

1    individuals may be -- may have firearms.

2                        Shootings -- I'm sorry.

3    Shootings in the home are a major cause of

4    death, particularly in children and minors,

5    requiring owners to secure or store their

6    firearms when minors are present.

7                        Requiring owners to quickly

8    notify law enforcement of the lost, theft or

9    destruction of their firearm aid law enforcement

10   in reducing illegal gun trafficking and

11   identifying the -- and prosecuting gun

12   traffickers.

13                       Limiting the number of guns in

14   circulation is essential to public safety.

15   Limiting registration of handguns to one person

16   per month would help limit handgun injuries and

17   also reduce crime.

18                       The carrying of firearms in

19   public should be prohibited.  In a dense urban

20   environment like Chicago, public carrying

21   presents a high risk that everyday interpersonal

22   conflicts will result in injury.

CITY000312

1          The public safety requires a

2    ban on assault weapons.

3          Okay.  Mara, suggested that I

4    submit the rest of this for the record, and we

5    will get right into testimony.  Thank you.

6          Corporation Counsel, Mara

7    Georges.  And I do apologize.  I'm extremely

8    tired you all.  It's been a long day.

9          CORPORATION COUNSEL GEORGES:  Good

10   morning, Chairman Beale and members of the

11   Police and Fire Committee.  My name is Mara

12   Georges, G-e-o-r-g-e-s.  I'm the Corporation

13   Counsel for the City of Chicago.

14          With me and to my right is

15   Rose Kelly, who is the drafter of the

16   Responsible Gun Ownership Ordinance, which is

17   before you today and on which we urge your

18   support.

19          This was an ordinance drafted

20   in response to the Supreme Court decision

21   earlier this week in the *McDonald* case.  We

22   believe that this ordinance effectively balances

1   the right to possess a gun in the home for the

2   purpose of self-defense, with the substantial

3   risks to public safety that are associated with

4   guns.

5            The proposed ordinance is

6   comprehensive.  It regulates the sale and

7   possession of firearms, establishes a permit

8   process for gun owners, and includes a

9   registration requirement for guns that allows

10  for the registration of handguns.

11           First, I think it's easiest to

12  begin by describing what is banned under this

13  ordinance.

14           Banned are the sale of

15  firearms in the city of Chicago, certain types

16  of ammunition, including metal and armor

17  piercing bullets and 50 caliber bullets, the

18  sale of any ammunition to minors, laser-sight

19  accessories, silencers, and mufflers, certain

20  types of guns including sawed-off shotguns, 50

21  caliber rifles, machine guns, short-barreled

22  rifles and assault weapons, and handguns deemed

1    unsafe by the Police Superintendent.

2                         These guns are unregisterable

3    and it is illegal to possess an unregisterable

4    weapon within the city of Chicago.  Also banned

5    are shooting galleries and target ranges, except

6    for law enforcement purposes.

7                         Consistent with the Supreme

8    Court's ruling, we are allowing the possession

9    of handguns in a limited circumstance.  That is,

10   within the home for self-defense purposes.

11                        So that there is no confusion

12   about the scope of handgun possession within the

13   city of Chicago, home is defined in the

14   ordinance as the inside of a person's dwelling

15   unit which is traditionally used for living

16   purposes.  Not the garage, not porches, not the

17   stairs, not the back, side or front yard space.

18   Dormitories, hotels, and group living homes are

19   excluded from the definition of home within the

20   ordinance.

21                        In addition, there is a two

22   step registration requirement for guns.  The

1   first step requires individuals to obtain a

2   Chicago Firearm Permit, a CFP, prior to owning a

3   gun.  And the second step requires gun owners to

4   obtain a registration certificate for each of

5   their firearms.  Both the CFP and the

6   registration certificate are issued by the

7   Chicago Police Department.

8                     The ordinance imposes

9   reasonable limitations on who can obtain a CFP.

10  For example, individuals must be at least 21

11  years of age or 18 to 20 years of age with

12  parental permission to be eligible for a CFP.

13  They must possess a valid Illinois FOID card.

14  They must not have been convicted of a violent

15  crime or of two or more offenses for driving

16  under the influence of alcohol or drugs.

17                     They must not have been

18  convicted of an unlawful use of weapon charge

19  involving a firearm.  They must not have

20  violated any other Municipal Code provision

21  regarding possession of laser-sight accessories,

22  silencers or mufflers, or unlawful sales of

1    firearms, or otherwise be ineligible to possess

2    a firearm under any law.

3                    Individuals must demonstrate

4    that they've undergone firearm safety training

5    both in a classroom and on a firing range.

6                    As I previously stated, the

7    CFP must be obtained prior to taking possession

8    of any gun, and it must be renewed every three

9    years.

10                   As with our previous

11   ordinance, the responsible gun ownership

12   ordinance includes a registration requirement

13   for guns.  The new ordinance, however, allows

14   for the registration of handguns.  A

15   registration certificate is required for every

16   firearm.  The application for the registration

17   certificate must be submitted no more than five

18   business days after taking possession of the

19   gun.

20                   Each applicant will be issued

21   only one registration certificate per month for

22   a handgun which must be used for the home in

1    which the applicant resides.  So, in other

2    words, we're limiting the amount of handguns to

3    one per month for use within the home.

4              Individuals have 90 days after

5    the effective date of the ordinance to register

6    weapons, including guns that were not previously

7    registered, like handguns.  So we're urging

8    members of the public to come in within this

9    90-day period after the ordinance's effective

10   date, assuming that this body were to approve

11   it, and register their unregistered weapons.

12             The ordinance also contains a

13   procedure for individuals who are denied either

14   a CFP or a firearm registration certificate to

15   appeal such denials.

16             I'd like to briefly discuss

17   the regulations contained in the responsible gun

18   ownership ordinance regarding where guns can be

19   possessed.  These regulations are in addition to

20   any applicable state laws.

21             As I previously mentioned,

22   handguns are only allowed in the registrant's

1    home for self-defense purposes.  Long guns are

2    only allowed in the individual's home or fixed

3    place of business.  You cannot possess a gun in

4    your vehicle, unless it's broken down into a

5    non-functioning state.

6              Each person who keeps or

7    possesses a firearm in his or her home must keep

8    no more than one firearm in the home assembled

9    and operable.  All other firearms must be broken

10   down in a non-functioning state or have a

11   trigger lock or other mechanism making the

12   firearm temporarily inoperable.

13             In homes with minors under the

14   age of 18, guns must be kept secured, secured on

15   the person of the registrant, with trigger locks

16   or in locked boxes.

17             This ordinance also

18   establishes a gun offender registry.  Any gun

19   offender, a person convicted of a gun offense,

20   who lives, works or attends school in the city

21   must register with the Police Superintendent.

22   The registry will be posted on the Police

1　Department's website and available for review by
2　the public.
3　　　　　Consequences for violating the
4　responsible gun ownership ordinance are severe.
5　Penalties include fines of $1,000 to $5,000 and
6　incarceration for not less than 20, nor more
7　than 90 days for certain offenses. Subsequent
8　convictions are punishable by fines of $5,000 to
9　$10,000 and by incarceration of not less than 30
10　days, nor more than six months, the maximum
11　allowable under state law for the City to
12　impose.
13　　　　　Further, the ordinance
14　authorizes the seizure and destruction of any
15　weapons kept in violation of the chapter. This
16　ordinance was crafted through careful discussion
17　and review. We have listened to the Council and
18　tried to accommodate the Council's wishes in
19　crafting this ordinance.
20　　　　　Further, we are confident that
21　this ordinance is consistent with the Supreme
22　Court's rulings in the *Heller* and *McDonald*

1   decisions.  We are hopeful that you will support

2   it.  Thank you.

3                 CHAIRMAN BEALE:  Thank you.

4                         Any questions from the

5   committee?  Alderman Rugai.

6                 ALDERMAN RUGAI:  Thank you,

7   Mr. Chairman.

8                         We heard it discussed this

9   morning that the ages of many that commit crimes

10  of handguns are 13 to 16 year olds, and there is

11  no real punishment for those youths.  As in some

12  of our previous legislation perhaps for curfew,

13  for example, we have the parents responsible and

14  they are fined in that instance.

15                        Have we ever looked at or are

16  we just prohibited from making the parents

17  responsible if those young people are arrested

18  and convicted of possessing a handgun and using

19  it?

20                 CORPORATION COUNSEL GEORGES:  It's a

21  good point, Alderman, but the problem is, of

22  course, if we were to prosecute a minor under

1    our ordinance, typically, that goes then to

2    juvenile court where we can't be imposing our

3    ordinance as a mechanism.

4              ALDERMAN RUGAI:  And not this

5    ordinance.  I mean, can we do something

6    separately to make parents responsible -- you

7    know, they are responsible for their children.

8    And if they -- their children were to be found

9    with guns, could they be prosecuted?

10             CORPORATION COUNSEL GEORGES:  I think

11   you raise a very good point and we will look at

12   it.

13             ALDERMAN RUGAI:  I mean, because it's

14   another side of our ordinance that's before us

15   today, but it was something that stuck in my

16   mind from the press conference this morning that

17   I thought we need to be attending to that side

18   of it as well.

19             CORPORATION COUNSEL GEORGES:  Yes.

20   Good point.

21             ALDERMAN RUGAI:  Thank you.

22             CHAIRMAN BEALE:  Alderman Balcer.

```
 1              ALDERMAN BALCER:   Thank you,
 2   Mr. Chairman.
 3                     What is the -- are there
 4   provisions in here for retired police officers
 5   --
 6              CORPORATION COUNSEL GEORGES:   Yes.
 7              ALDERMAN BALCER:   -- and their right
 8   to carry a -- or have weapons?
 9              CORPORATION COUNSEL GEORGES:   We
10   exclude many classes of people from many of the
11   ordinance requirements, and many of those
12   exclusions apply to current police officers,
13   retired police officers, current military
14   personnel and the like.  So we have tried to
15   accommodate what we heard from Chairman Burke
16   and the others in hearings, that many of these
17   provisions should not apply to retired CPD.
18              ALDERMAN BALCER:   So we're not --
19   people can still defend their homes if they're
20   inside of their homes?
21              CORPORATION COUNSEL GEORGES:   The idea
22   is that individuals have a right to a handgun
```

CITY000323

1   within the home for self-defense purposes, and

2   we're allowing them to register one per month;

3   one of those handguns per month to have within

4   their home to use for self-defense purposes.

5          ALDERMAN BALCER:  For self-defense

6   purposes.  No one's right is being taken away to

7   defend their home?

8          CORPORATION COUNSEL GEORGES:  Correct.

9          ALDERMAN BALCER:  Good.  My next

10  question and I just -- you can have long rifles

11  and shotguns except sawed-off shotguns; am I

12  correct?

13         CORPORATION COUNSEL GEORGES:  That is

14  correct.  We allow rifles and other long guns.

15         ALDERMAN BALCER:  And you can have

16  one, two, three, four -- you can have as many as

17  you want?

18         CORPORATION COUNSEL GEORGES:  Correct.

19         ALDERMAN BALCER:  And you can have a

20  pistol.  You can buy one pistol per month?

21         CORPORATION COUNSEL GEORGES:  Correct.

22         ALDERMAN BALCER:  They can have twelve

1    in a year?

2            CORPORATION COUNSEL GEORGES:  Yes.

3    Each qualified applicant.

4            ALDERMAN BALCER:  Can have twelve in a

5    year?

6            CORPORATION COUNSEL GEORGES:  Can have

7    twelve in a year.  Yes.

8            ALDERMAN BALCER:  I think that's quite

9    fair.  I'll be honest.  I think that's quite

10   fair to a person.

11            And right now you can have as

12   many rifles that meet the requirements and

13   shotguns if you -- if you want?  And they are

14   registered and so on?

15            CORPORATION COUNSEL GEORGES:  Correct.

16   And that continues.  That it is an unlimited

17   number.

18            ALDERMAN BALCER:  That continues.

19   That -- there's no -- nothing prohibiting that.

20   There's nothing saying you can't have one rifle,

21   one shotgun.  You can have --

22            I'll be honest.  I think

1   that's quite fair.  And quite honest, if you

2   can't defend your home with umpteen rifles and

3   shotguns and a pistol, I don't see what else a

4   person can ask for in this.  Thank you.

5           CORPORATION COUNSEL GEORGES:  You're

6   welcome.

7           CHAIRMAN BEALE:  Alderman Fioretti.

8           ALDERMAN FIORETTI:  Thank you,

9   Mr. Chairman.

10                  When we started the hearing

11  the other day, you described the -- still I want

12  to refer to the decision, that the mandate would

13  probably come down within 30 days give or take,

14  correct?

15          CORPORATION COUNSEL GEORGES:  Correct.

16          ALDERMAN FIORETTI:  And then you said

17  at that time that we can go into court to ask

18  for some kind of advisory assistance here in the

19  drafting of this -- of this ordinance.  Wasn't

20  that correct?

21          CORPORATION COUNSEL GEORGES:  I don't

22  believe that's what I said.  No.

1          I said when the mandate came

2    back to the Court of Appeals, the Court of

3    Appeals may ask us for briefs, position papers,

4    kind of on where we stand, saying to us, all

5    right, now in light of the decision from the

6    Supreme Court in *McDonald*, saying you have a

7    right to a handgun in your home for

8    self-defense, City, how do you defend your

9    handgun ban?  And at that point it really

10   becomes impossible to defend it.

11          ALDERMAN FIORETTI:  Okay.  And so what

12   was legal or what is illegal out of the

13   ordinance as it existed the day before the

14   decision was handed down?

15          CORPORATION COUNSEL GEORGES:  What the

16   Supreme Court has said is that the Second

17   Amendment applies to the City, and the Second

18   Amendment guarantees a right to a handgun in the

19   home for self-defense.

20          So in other words, a ban by

21   the City on handguns will not withstand the

22   *McDonald* decision.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.1.1
### Eastern Division

National Rifle Association of America, Inc., et al.

<div align="center">Plaintiff,</div>

v.

<div align="right">Case No.: 1:08–cv–03697<br>Honorable Milton I. Shadur</div>

The City of Chicago, et al.

<div align="center">Defendant.</div>

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, December 22, 2010:

      MINUTE entry before Honorable Milton I. Shadur: Enter Memorandum Opinion and Order. Accordingly NRA's motions for Section 1988 fee awards are denied. [64] Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATIONAL RIFLE ASSOCIATION      )
OF AMERICA, INC., et al.,       )
                                )
        Plaintiffs,             )
                                )
    v.                          )   No.  08 C 3696
                                )
VILLAGE OF OAK PARK, et al.,    )
                                )
        Defendants.             )
                                )
_____ )
                                )
NATIONAL RIFLE ASSOCIATION      )
OF AMERICA, INC., et al.,       )
                                )
        Plaintiffs,             )
                                )
    v.                          )   No. 08 C 3697
                                )
CITY OF CHICAGO,                )
                                )
        Defendant.              )


MEMORANDUM OPINION AND ORDER

    National Rifle Association of America, Inc. ("NRA") has

filed motions, pursuant to 42 U.S.C. §1988,[1], each seeking an

award of attorney's fees in a now-closed Section 1983 lawsuit

that had been initiated by NRA some 2-1/2 years ago -- one of

them targeting the Village of Oak Park ("Village") and the other

brought against the City of Chicago ("City").  Both motions[2]

_____

        [1] All further references to Title 42's provisions will
simply take the form "Section --."

        [2] Because NRA has filed identical motions in each case and
because Village has adopted City's response as its own, this
opinion cites to NRA's motions as "N. Mot. --" and to the City-

follow the cases' journey to the Supreme Court and back again, ending with the dismissal of both actions by this Court on mootness grounds.  For the reasons stated below, both NRA motions are denied.

## Factual Background

NRA filed these lawsuits one day after the Supreme Court decided <u>Dist. of Columbia v. Heller</u>, 554 U.S. 570 (2008).  This Court properly requested, and the Executive Committee of this District Court granted, the reassignment of both cases to its docket based on their relatedness to <u>McDonald v. City of Chicago</u>, 08 C 3645, which had been filed on the same morning that <u>Heller</u> was decided.  All three cases charged that municipal ordinances that made it unlawful for any person to posses a handgun ran afoul of the Second Amendment, as incorporated against the States via the Fourteenth Amendment.

Because this Court followed (as it was obligated to do) existing Supreme Court and Seventh Circuit precedent (both pre-<u>Heller</u>, of course), it ruled that the Second Amendment was not incorporated against the States, and Village and City were therefore granted judgment on the pleadings.  After consolidating the appeals in all three cases, our Court of Appeals affirmed this Court's ruling in <u>NRA v. City of Chi.</u>, 567 F.3d 856 (7th Cir. 2009).

---

Village responses as "C. Mot. -."

NRA and McDonald then filed separate petitions for writs of certiorari in the Supreme Court.  Although the Supreme Court granted the <u>McDonald</u> petition, it did not act on the NRA petition until after it issued its June 28, 2010 opinion in <u>McDonald v. City of Chi.</u>, 130 S. Ct. 3020 (2010), holding that the Fourteenth Amendment does incorporate the Second Amendment.  On the next day the Supreme Court granted NRA's petition and remanded the case to the Seventh Circuit for further proceedings (<u>NRA v. City of Chi.</u>, 130 S.Ct. 3544 (2010)).

Three days later (on July 2) City replaced its gun ordinance with one that does not contain a total ban on handguns (Journal of the Proceedings of the City Council of the City of Chicago, Illinois at 96235).  For its part, Village repealed its gun ordinance on July 19 (Approved Minutes -- Regular Board Meeting, Village of Oak Park p.4, http://www.oak-park.us/public/pdfs/2010%20Minutes/07.19.10_minutes.pdf).  In light of those actions, our Court of Appeals vacated this Court's judgment in all three cases and remanded with instructions to dismiss them as moot (<u>NRA v. City of Chi.</u>, 2010 WL 3398395 (7th Cir. Aug. 25)).  On October 12, 2010 this Court followed that direction.

### Attorney's Fee Awards under Section 1988

Both sides agree that the Supreme Court opinion in <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &</u>

<u>Human Resources</u>, 532 U.S. 598 (2001) brought a sea change in the jurisprudence governing Section 1988 attorney's fee awards.  It deep-sixed the "catalyst" concept that the vast majority of federal courts had been applying consistently in that area, replacing it instead with a more demanding standard.

Section 1988(b) states that in a Section 1983 action "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs."  In the wake of <u>Buckhannon</u> the Supreme Court has reconfirmed its earlier view that "[t]he touchstone of the prevailing party inquiry ... is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute" (<u>Sole v. Wyner</u>, 551 U.S. 74, 82 (2007) (internal quotation marks omitted)).

On that score <u>Buckhannon</u>, 532 U.S. at 604 had held "that enforceable judgments on the merits and court-ordered consent decrees create" the essential "material alteration."  Thus the Court distinguished settlements memorialized by consent decrees from private settlements on the ground that consent decrees are "court-ordered" (<u>id</u>.).  In elaborating on its reasons for rejecting the "catalyst theory," the Court reasoned that a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial <u>imprimatur</u> on the change"

4

(id. at 605).  Buckhannon, id. at 606 (internal quotation marks omitted) succinctly summarized the Court's concerns and the applicable standard:

> We cannot agree that the term "prevailing party" authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the sought-after designation without obtaining any judicial relief.

Closer to the bone, our Court of Appeals has implemented Buckhannon in Zessar v. Keith, 536 F.3d 788 (7th Cir. 2008), a case where as here a statute had been found unconstitutional. Zessar, id. at 796 held that alone was not enough -- instead such a situation "gives a plaintiff a hurdle to overcome if he is to show that he is a prevailing party because the Supreme Court has repeatedly held that, other than a settlement made enforceable under a consent decree, a final judgment on the merits is the normative judicial act that creates a prevailing party."  NRA fails to clear that hurdle.

Simply put, there has never been a final judgment on the merits in these cases.  There was no final court order requiring Village or City to do anything.  After the Supreme Court remanded the cases to the Seventh Circuit for proceedings consistent with its  McDonald opinion, this Court never had the opportunity to conduct such proceedings because it was ordered by the Court of Appeals to dismiss the cases as moot.  Both Village (by repealing its ordinance) and City (by adopting a new one that eliminated

any outright prohibition) forwent the alternative of litigating
the actions to an ultimate conclusion.

It must be remembered that these cases have been closed by
final judgments of dismissal.  If either Village or City were to
decide to reenact its previous ordinance, NRA would not be able
to bring an enforcement action based upon some action previously
taken by this Court.  It would instead be required to file new
lawsuits to seek judgments on the merits.   This is just another
way of demonstrating that there was no court-ordered or court-
implemented material alteration of any legal relationship in
either action.  Under the prevailing precedents, NRA cannot
fairly be said to be a "prevailing party" under Section 1988.

And there is more to the same effect from our Court of
Appeals.  Walker v. Calumet City, 565 F.3d 1031 (7th Cir. 2009),
considered a case that had originated before this Court, one in
which plaintiff had sued claiming that municipality's point-of-
sale ordinance violated plaintiff's constitutional rights.  Upon
reinspection of plaintiff's property, Calumet City found it to be
in compliance and moved to dismiss the case as moot (id. at
1033).  This Court issued a dismissal order that in part listed
representations made by the city that it would not renege on its
promises (id.).  Then our Court of Appeals reversed this Court's
later award of attorney's fees under Section 1988 because there,
as here, this Court had "never reached the merits of

6

[plaintiff's] claims" (id. at 1034) and its order "did not provide for judicial enforcement" or "vest the court with continuing jurisdiction" (id. at 1035).

Fed'n of Adver. Representatives, Inc. v. City of Chi., 326 F.3d 924 (7th Cir. 2003) is also instructive.  There plaintiff claimed that City's advertising restrictions violated the First Amendment (id. at 928).  After the Supreme Court had invalidated a similar restriction in a Massachusetts case,[3] Judge Kennelly granted City's motion for dismissal on mootness grounds in response to plaintiff's motion for summary judgment.  In deciding the "prevailing party" issue on appeal, the Seventh Circuit assumed without deciding that City had changed its ordinance in response to the Supreme Court decision but still found that plaintiff was not entitled to "prevailing party" status (id. at 933).

NRA correctly points out that one reason for that decision was that plaintiff was not a party to the relevant Supreme Court case (id.).  But even if NRA can distinguish the instant cases from Federation on the basis that it was a party to the Supreme

---

[3] Ironically the Federation case had originally been assigned to this Court's calendar, and it held City's ordinance invalid on preemption grounds.  Then our Court of Appeals held such total preemption was incorrect and reversed in part, sending the case back.  Further District Court proceedings were before this Court's colleague Honorable Matthew Kennelly, and it was during those later proceedings that the Supreme Court's decision on the Massachusetts statute confirmed the correctness of this Court's original preemption decision.

Court decision in <u>McDonald</u>,[4] that contention blithely ignores the
second and independent reason announced in <u>Federation</u>, <u>id</u>. as to
why City's change of conduct in response to the Supreme Court
decision did not confer "prevailing party" status on the
plaintiff there:

> Even assuming after [the Supreme Court decision], the
> district court would have granted [plaintiff's] motion had
> the [defendant] not repealed its ordinance, the fact remains
> that no such ruling was made and thus no judicial relief was
> awarded to Federation.

By the same token, even assuming that this Court would have ruled
for NRA had Village and City not done away with their challenged
ordinances, no such relief was awarded, and so no "prevailing
party" status can be conferred.

   NRA fares no better with its other arguments.  Though all of
them could be dispatched on the basis of the clear teaching of

---

   [4] N. Mot. 2-3 argues in contrast that NRA should win
prevailing party status by virtue of being designated a party
respondent by the Supreme Court in <u>McDonald</u>.  But that argument
is a red herring.  As Village and City correctly point out and as
evidenced by the rest of this opinion, NRA's party-respondent
status in the Supreme Court is irrelevant because the Supreme
Court's decision in <u>McDonald</u> -- which, it will be remembered,
resulted in no judicial implementation on remand -- did not meet
the requirements of Section 1988 under <u>Buckhannon</u> (C. Mot. 5-6).
Indeed, NRA's argument demonstrates its essential reliance on the
"catalyst theory."  Disputes over whether a litigant was a party
to a decision where the bound parties cannot easily be
determined, unlike a judgment on the merits or a consent decree,
invite the additional round of litigation expressly disfavored by
<u>Buckhannon</u>,532 U.S. at 609.  That said, this discussion should
not be misunderstood as foreclosing any arguments that the
plaintiff in <u>McDonald</u> may raise to differentiate himself from NRA
for the purposes of "prevailing party" inquiry (more on this
later).

Buckhannon and its progeny as already described, this action will
go on to treat them -- albeit with some brevity.

First NRA argues that in the wake of McDonald, Village and
City publicly acknowledged that their handgun bans were
unconstitutional (N. Mot. 6-9).  NRA cites numerous public
statements to that effect, both to the press and in the context
of local political proceedings (id.).  But that amounts to
nothing more than (to paraphrase Matthew 9:17) seeking to put the
old "catalyst theory" wine into new bottles.  Public statements,
however numerous and forceful, do not grant "prevailing party"
status when they have not received the essential judicial
imprimatur.

NRA also contends that it received "judicial relief" because
Village and City  "fought hard all the way to the Supreme Court"
(N. Mot. 11).  But that is plainly not enough -- as Farrar v.
Hobby, 506 U.S. 103, 112-13 (1992) (internal quotation marks and
citation omitted) put it:

> To be sure, a judicial pronouncement that the defendant has
> violated the Constitution, unaccompanied by an enforceable
> judgment on the merits, does not render the plaintiff a
> prevailing party.  Of itself, the moral satisfaction [that]
> results from any favorable statement of law cannot bestow
> prevailing party status.  No material alteration of the
> legal relationship between the parties occurs until the
> plaintiff becomes entitled to enforce a judgment, consent
> decree, or settlement against the defendant.

And at the risk of repetition, none of those things occurred in
these cases.

9

Nor is NRA assisted by any of the Seventh Circuit cases that it seeks to call to its aid. Although a mere reading of these opinions confirms their inapplicability to the situation here. this opinion will touch on the obvious distinctions.

Thus <u>Riviera Distribs., Inc. v. Jones</u>, 517 F.3d 927-28 (7th Cir. 2008) found that the plaintiffs were "prevailing parties" under the Copyright Act of 1976, though the district judge had never reached the merits of the case, because the case was dismissed with prejudice. That of course materially altered the legal relationship of the parties, in contrast to the wholly nonsubstantive dismissal of the cases here as moot.

<u>Palmetto Props., Inc. v. County of DuPage</u>, 375 F.3d 542 (7th Cir. 2004) presents a different scenario. There the district court dismissed the case as moot when defendants repealed an ordinance after the district court had held the ordinance unconstitutional on a motion for summary judgment, but before the Court entered final judgment (<u>id</u>. at 545-46). NRA's efforts to parallel its cases with <u>Palmetto</u> totally ignores the wholly different posture of the judicial rulings involved, as explained expressly in <u>Palmetto</u>, <u>id</u>. (emphasis in original):

> In <u>Buckhannon</u> the challenged state law was repealed, thereby mooting the case, <u>before</u> the district court had made <u>any</u> substantive rulings. ... In this case, not only did the district court make a substantive determination ... the County repealed the ordinance only <u>after</u> that determination had been made and presumably <u>because of it</u>.

Indeed, <u>Zessar</u>, 536 F.3d at 797 distinguished <u>Palmetto</u> from its

situation, where the district court found an Illinois statute unconstitutional on a motion for summary judgment but did not direct the parties to do anything pending further proceedings as to the appropriate relief.

Lastly in that group, NRA fares no better in its attempted reliance on Southworth v. Bd. of Regents of Univ. of Wis. Sys., 376 F.3d 757 (7th Cir. 2004).  There our Court of Appeals (id. at 770) took pains to distinguish between post-trial court-ordered changes and voluntary changes made by the defendant -- the very distinction that this opinion has stressed in the present cases.

NRA tries to attach one more string to its bow, but that too is broken.  It cites Young v. City of Chi., 202 F.3d 1000 (7th Cir. 2000)(per curiam), in which the district court granted plaintiffs a preliminary injunction against City, enjoining its imposition of a security perimeter around the 1996 Democratic National Convention.  Though City's appeal of the preliminary injunction was later dismissed as moot after the convention ended, because the preliminary injunction of course applied only to that specific convention, Young, id. at 1000-01 upheld the award of fees to plaintiff under Section 1988.

On that score the obvious distinction is that the district court there had already granted relief to plaintiffs via its preliminary injunction order, clearly altering the legal relationship between the two parties.  Hence the awarding of fees

11

simply prevented City from "taking steps to moot the case after the plaintiff has obtained the relief he sought" (id.).

### Conclusion

In the context of this case, the lesson taught by Buckhannon and its relevant progeny is that the proverbial handwriting on the wall does not alone suffice to trigger a Section 1988 entitlement to attorney's fees, no matter how clear the penmanship may appear to be.  Instead that figurative handwriting must have been memorialized in a judicial ruling or like judicial action, and nothing of the sort had taken place in these two cases before Village and City dispatched their challenged ordinances and thus mooted the two cases.  Accordingly NRA's motions for Section 1988 fee awards are denied.[5]

Date:      December 22, 2010          _____
                                       Milton I. Shadur
                                       Senior United States District Judge

_____

[5] When these actions came on for a preset status hearing on December 21 for the sole purpose of confirming that the litigants had met head-on in addressing the issues posed by NRA's motions, counsel for plaintiff in the McDonald case appeared and voiced vigorous criticism at having assertedly been kept out of the loop by NRA's counsel.  This Court, which of course had no knowledge of anything of the sort (it will be recalled that the cases had been terminated by the dismissal orders based on mootness, so that this Court had no need to follow its normal practice of setting periodic status hearing in all cases pending on its calendar), rejected the motion by McDonald's counsel to stay the determination of the fully briefed motions in these two cases. As this Court assured that lawyer, as and when he may advance a Section 1988 motion in that case this Court will address it on the merits, for which purpose it may or may not find that the McDonald plaintiffs occupy the same position announced here as to NRA (a function of whatever similarities and differences may exist as between the McDonald case and the two NRA cases).

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION | ) | |
| OF AMERICA, INC., DR. KATHRYN TYLER, | ) | |
| VAN F. WELTON, | ) | |
| and BRETT BENSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  08 CV 3697 |
| | ) | |
| | ) | Judge Milton I. Shadur |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that Plaintiffs, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., DR. KATHRYN TYLER, VAN F. WELTON, and BRETT BENSON, appeal to the United States Court of Appeals for the Seventh Circuit from this Court's Memorandum Opinion and Order entered in this action on December 22, 2010 denying Plaintiffs' motion for Section 1988 attorneys' fee award.  (A true and correct copy of the December 22, 2010 Memorandum Opinion and Order is attached hereto as **Exhibit "A"** and made a part hereof.)

Dated: December 27, 2010

Respectfully submitted,

**NATIONAL RIFLE ASSOCIATION
OF AMERICA, INC., DR. KATHRYN TYLER,
VAN F. WELTON and BRETT BENSON,**
Plaintiffs

BY:___s/ Stephen A. Kolodziej_____
One of Their Attorneys

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, Virginia 22030
Tel. (703) 352-7276
Fax (703) 359-0938

Stephen A. Kolodziej
**Brenner, Ford, Monroe & Scott, Ltd.**
33 North Dearborn Street, Suite 300
Chicago, Illinois 60602
Tel (312) 360-6415
Fax (312) 360-6573

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION | ) | |
| OF AMERICA, INC., DR. KATHRYN TYLER, | ) | |
| VAN F. WELTON, | ) | |
| and BRETT BENSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  08 CV 3697 |
| | ) | |
| | ) | Judge Milton I. Shadur |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused a true and correct copy of the foregoing instrument to be served upon the parties of record, as shown below, via the Court's CM/ECF filing system on the **27th** day of **December 2010.**

Andrew W. Worseck
William Macy Aguiar
City of Chicago Department of Law
Constitutional and Commerical Litigation
Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602

s/  Stephen A. Kolodziej

Local Counsel:
Stephen A. Kolodziej
**Brenner, Ford, Monroe & Scott, Ltd.**
33 North Dearborn Street, Suite 300
Chicago, Illinois 60602
Tel (312) 781-1970
Fax (312) 781-1970

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276
Fax (703) 359-0938
(*Pro Hac Vice*)

**EXHIBIT A**

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

NATIONAL RIFLE ASSOCIATION    )
OF AMERICA, INC., et al.,     )
                              )
          Plaintiffs,         )
                              )
     v.                       )    No.  08 C 3696
                              )
VILLAGE OF OAK PARK, et al.,  )
                              )
          Defendants.         )
                              )
_____ )
                              )
NATIONAL RIFLE ASSOCIATION    )
OF AMERICA, INC., et al.,     )
                              )
          Plaintiffs,         )
                              )
     v.                       )    No. 08 C 3697
                              )
CITY OF CHICAGO,              )
                              )
          Defendant.          )
```

<u>MEMORANDUM OPINION AND ORDER</u>

National Rifle Association of America, Inc. ("NRA") has
filed motions, pursuant to 42 U.S.C. §1988,[1], each seeking an
award of attorney's fees in a now-closed Section 1983 lawsuit
that had been initiated by NRA some 2-1/2 years ago -- one of
them targeting the Village of Oak Park ("Village") and the other
brought against the City of Chicago ("City").  Both motions[2]

_____

[1] All further references to Title 42's provisions will
simply take the form "Section --."

[2] Because NRA has filed identical motions in each case and
because Village has adopted City's response as its own, this
opinion cites to NRA's motions as "N. Mot. --" and to the City-

follow the cases' journey to the Supreme Court and back again, ending with the dismissal of both actions by this Court on mootness grounds.  For the reasons stated below, both NRA motions are denied.

**Factual Background**

NRA filed these lawsuits one day after the Supreme Court decided <u>Dist. of Columbia v. Heller</u>, 554 U.S. 570 (2008).  This Court properly requested, and the Executive Committee of this District Court granted, the reassignment of both cases to its docket based on their relatedness to <u>McDonald v. City of Chicago</u>, 08 C 3645, which had been filed on the same morning that <u>Heller</u> was decided.  All three cases charged that municipal ordinances that made it unlawful for any person to posses a handgun ran afoul of the Second Amendment, as incorporated against the States via the Fourteenth Amendment.

Because this Court followed (as it was obligated to do) existing Supreme Court and Seventh Circuit precedent (both pre-<u>Heller</u>, of course), it ruled that the Second Amendment was not incorporated against the States, and Village and City were therefore granted judgment on the pleadings.  After consolidating the appeals in all three cases, our Court of Appeals affirmed this Court's ruling in <u>NRA v. City of Chi.</u>, 567 F.3d 856 (7th Cir. 2009).

---

Village responses as "C. Mot. —."

2

NRA and McDonald then filed separate petitions for writs of certiorari in the Supreme Court.  Although the Supreme Court granted the McDonald petition, it did not act on the NRA petition until after it issued its June 28, 2010 opinion in McDonald v. City of Chi., 130 S. Ct. 3020 (2010), holding that the Fourteenth Amendment does incorporate the Second Amendment.  On the next day the Supreme Court granted NRA's petition and remanded the case to the Seventh Circuit for further proceedings (NRA v. City of Chi., 130 S.Ct. 3544 (2010)).

Three days later (on July 2) City replaced its gun ordinance with one that does not contain a total ban on handguns (Journal of the Proceedings of the City Council of the City of Chicago, Illinois at 96235).  For its part, Village repealed its gun ordinance on July 19 (Approved Minutes -- Regular Board Meeting, Village of Oak Park p.4, http://www.oak-park.us/public/pdfs/2010%20Minutes/07.19.10_minutes.pdf).  In light of those actions, our Court of Appeals vacated this Court's judgment in all three cases and remanded with instructions to dismiss them as moot (NRA v. City of Chi., 2010 WL 3398395 (7th Cir. Aug. 25)).  On October 12, 2010 this Court followed that direction.

### Attorney's Fee Awards under Section 1988

Both sides agree that the Supreme Court opinion in Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &

3

<u>Human Resources</u>, 532 U.S. 598 (2001) brought a sea change in the jurisprudence governing Section 1988 attorney's fee awards.  It deep-sixed the "catalyst" concept that the vast majority of federal courts had been applying consistently in that area, replacing it instead with a more demanding standard.

Section 1988(b) states that in a Section 1983 action "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs."  In the wake of <u>Buckhannon</u> the Supreme Court has reconfirmed its earlier view that "[t]he touchstone of the prevailing party inquiry ... is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute" (<u>Sole v. Wyner</u>, 551 U.S. 74, 82 (2007) (internal quotation marks omitted)).

On that score <u>Buckhannon</u>, 532 U.S. at 604 had held "that enforceable judgments on the merits and court-ordered consent decrees create" the essential "material alteration."  Thus the Court distinguished settlements memorialized by consent decrees from private settlements on the ground that consent decrees are "court-ordered" (<u>id</u>.).  In elaborating on its reasons for rejecting the "catalyst theory," the Court reasoned that a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial <u>imprimatur</u> on the change"

4

(id. at 605). Buckhannon, id. at 606 (internal quotation marks
omitted) succinctly summarized the Court's concerns and the
applicable standard:

> We cannot agree that the term "prevailing party" authorizes
> federal courts to award attorney's fees to a plaintiff who,
> by simply filing a nonfrivolous but nonetheless potentially
> meritless lawsuit (it will never be determined), has reached
> the sought-after designation without obtaining any judicial
> relief.

Closer to the bone, our Court of Appeals has implemented
Buckhannon in Zessar v. Keith, 536 F.3d 788 (7th Cir. 2008), a
case where as here a statute had been found unconstitutional.
Zessar, id. at 796 held that alone was not enough -- instead such
a situation "gives a plaintiff a hurdle to overcome if he is to
show that he is a prevailing party because the Supreme Court has
repeatedly held that, other than a settlement made enforceable
under a consent decree, a final judgment on the merits is the
normative judicial act that creates a prevailing party." NRA
fails to clear that hurdle.

Simply put, there has never been a final judgment on the
merits in these cases. There was no final court order requiring
Village or City to do anything. After the Supreme Court remanded
the cases to the Seventh Circuit for proceedings consistent with
its McDonald opinion, this Court never had the opportunity to
conduct such proceedings because it was ordered by the Court of
Appeals to dismiss the cases as moot. Both Village (by repealing
its ordinance) and City (by adopting a new one that eliminated

5

any outright prohibition) forwent the alternative of litigating
the actions to an ultimate conclusion.

It must be remembered that these cases have been closed by
final judgments of dismissal.  If either Village or City were to
decide to reenact its previous ordinance, NRA would not be able
to bring an enforcement action based upon some action previously
taken by this Court.  It would instead be required to file new
lawsuits to seek judgments on the merits.   This is just another
way of demonstrating that there was no court-ordered or court-
implemented material alteration of any legal relationship in
either action.  Under the prevailing precedents, NRA cannot
fairly be said to be a "prevailing party" under Section 1988.

And there is more to the same effect from our Court of
Appeals.  Walker v. Calumet City, 565 F.3d 1031 (7th Cir. 2009),
considered a case that had originated before this Court, one in
which plaintiff had sued claiming that municipality's point-of-
sale ordinance violated plaintiff's constitutional rights.  Upon
reinspection of plaintiff's property, Calumet City found it to be
in compliance and moved to dismiss the case as moot (id. at
1033).  This Court issued a dismissal order that in part listed
representations made by the city that it would not renege on its
promises (id.).  Then our Court of Appeals reversed this Court's
later award of attorney's fees under Section 1988 because there,
as here, this Court had "never reached the merits of

6

[plaintiff's] claims" (<u>id</u>. at 1034) and its order "did not provide for judicial enforcement" or "vest the court with continuing jurisdiction" (<u>id</u>. at 1035).

<u>Fed'n of Adver. Representatives, Inc. v. City of Chi.</u>, 326 F.3d 924 (7th Cir. 2003) is also instructive. There plaintiff claimed that City's advertising restrictions violated the First Amendment (<u>id</u>. at 928). After the Supreme Court had invalidated a similar restriction in a Massachusetts case,[3] Judge Kennelly granted City's motion for dismissal on mootness grounds in response to plaintiff's motion for summary judgment. In deciding the "prevailing party" issue on appeal, the Seventh Circuit assumed without deciding that City had changed its ordinance in response to the Supreme Court decision but still found that plaintiff was not entitled to "prevailing party" status (<u>id</u>. at 933).

NRA correctly points out that one reason for that decision was that plaintiff was not a party to the relevant Supreme Court case (<u>id</u>.). But even if NRA can distinguish the instant cases from <u>Federation</u> on the basis that it <u>was</u> a party to the Supreme

---

[3] Ironically the <u>Federation</u> case had originally been assigned to this Court's calendar, and it held City's ordinance invalid on preemption grounds. Then our Court of Appeals held such total preemption was incorrect and reversed in part, sending the case back. Further District Court proceedings were before this Court's colleague Honorable Matthew Kennelly, and it was during those later proceedings that the Supreme Court's decision on the Massachusetts statute confirmed the correctness of this Court's original preemption decision.

Court decision in <u>McDonald</u>,[4] that contention blithely ignores the
second and independent reason announced in <u>Federation</u>, <u>id</u>. as to
why City's change of conduct in response to the Supreme Court
decision did not confer "prevailing party" status on the
plaintiff there:

> Even assuming after [the Supreme Court decision], the
> district court would have granted [plaintiff's] motion had
> the [defendant] not repealed its ordinance, the fact remains
> that no such ruling was made and thus no judicial relief was
> awarded to Federation.

By the same token, even assuming that this Court would have ruled
for NRA had Village and City not done away with their challenged
ordinances, no such relief was awarded, and so no "prevailing
party" status can be conferred.

NRA fares no better with its other arguments. Though all of
them could be dispatched on the basis of the clear teaching of

---

[4] N. Mot. 2-3 argues in contrast that NRA should win
prevailing party status by virtue of being designated a party
respondent by the Supreme Court in <u>McDonald</u>. But that argument
is a red herring. As Village and City correctly point out and as
evidenced by the rest of this opinion, NRA's party-respondent
status in the Supreme Court is irrelevant because the Supreme
Court's decision in <u>McDonald</u> -- which, it will be remembered,
resulted in no judicial implementation on remand -- did not meet
the requirements of Section 1988 under <u>Buckhannon</u> (C. Mot. 5-6).
Indeed, NRA's argument demonstrates its essential reliance on the
"catalyst theory." Disputes over whether a litigant was a party
to a decision where the bound parties cannot easily be
determined, unlike a judgment on the merits or a consent decree,
invite the additional round of litigation expressly disfavored by
<u>Buckhannon</u>,532 U.S. at 609. That said, this discussion should
not be misunderstood as foreclosing any arguments that the
plaintiff in <u>McDonald</u> may raise to differentiate himself from NRA
for the purposes of "prevailing party" inquiry (more on this
later).

Buckhannon and its progeny as already described, this action will
go on to treat them -- albeit with some brevity.

First NRA argues that in the wake of McDonald, Village and
City publicly acknowledged that their handgun bans were
unconstitutional (N. Mot. 6-9).  NRA cites numerous public
statements to that effect, both to the press and in the context
of local political proceedings (id.).  But that amounts to
nothing more than (to paraphrase Matthew 9:17) seeking to put the
old "catalyst theory" wine into new bottles.  Public statements,
however numerous and forceful, do not grant "prevailing party"
status when they have not received the essential judicial
imprimatur.

NRA also contends that it received "judicial relief" because
Village and City  "fought hard all the way to the Supreme Court"
(N. Mot. 11).  But that is plainly not enough -- as Farrar v.
Hobby, 506 U.S. 103, 112-13 (1992) (internal quotation marks and
citation omitted) put it:

> To be sure, a judicial pronouncement that the defendant has
> violated the Constitution, unaccompanied by an enforceable
> judgment on the merits, does not render the plaintiff a
> prevailing party.  Of itself, the moral satisfaction [that]
> results from any favorable statement of law cannot bestow
> prevailing party status.  No material alteration of the
> legal relationship between the parties occurs until the
> plaintiff becomes entitled to enforce a judgment, consent
> decree, or settlement against the defendant.

And at the risk of repetition, none of those things occurred in
these cases.

9

Nor is NRA assisted by any of the Seventh Circuit cases that it seeks to call to its aid. Although a mere reading of these opinions confirms their inapplicability to the situation here. this opinion will touch on the obvious distinctions.

Thus <u>Riviera Distribs., Inc. v. Jones</u>, 517 F.3d 927-28 (7th Cir. 2008) found that the plaintiffs were "prevailing parties" under the Copyright Act of 1976, though the district judge had never reached the merits of the case, because the case was dismissed with prejudice. That of course materially altered the legal relationship of the parties, in contrast to the wholly nonsubstantive dismissal of the cases here as moot.

<u>Palmetto Props., Inc. v. County of DuPage</u>, 375 F.3d 542 (7th Cir. 2004) presents a different scenario. There the district court dismissed the case as moot when defendants repealed an ordinance after the district court had held the ordinance unconstitutional on a motion for summary judgment, but before the Court entered final judgment (<u>id</u>. at 545-46). NRA's efforts to parallel its cases with <u>Palmetto</u> totally ignores the wholly different posture of the judicial rulings involved, as explained expressly in <u>Palmetto</u>, <u>id</u>. (emphasis in original):

> In <u>Buckhannon</u> the challenged state law was repealed, thereby mooting the case, <u>before</u> the district court had made <u>any</u> substantive rulings. ... In this case, not only did the district court make a substantive determination ... the County repealed the ordinance only <u>after</u> that determination had been made and presumably <u>because of it</u>.

Indeed, <u>Zessar</u>, 536 F.3d at 797 distinguished <u>Palmetto</u> from its

situation, where the district court found an Illinois statute unconstitutional on a motion for summary judgment but did not direct the parties to do anything pending further proceedings as to the appropriate relief.

Lastly in that group, NRA fares no better in its attempted reliance on Southworth v. Bd. of Regents of Univ. of Wis. Sys., 376 F.3d 757 (7th Cir. 2004). There our Court of Appeals (id. at 770) took pains to distinguish between post-trial court-ordered changes and voluntary changes made by the defendant -- the very distinction that this opinion has stressed in the present cases.

NRA tries to attach one more string to its bow, but that too is broken. It cites Young v. City of Chi., 202 F.3d 1000 (7th Cir. 2000)(per curiam), in which the district court granted plaintiffs a preliminary injunction against City, enjoining its imposition of a security perimeter around the 1996 Democratic National Convention. Though City's appeal of the preliminary injunction was later dismissed as moot after the convention ended, because the preliminary injunction of course applied only to that specific convention, Young, id. at 1000-01 upheld the award of fees to plaintiff under Section 1988.

On that score the obvious distinction is that the district court there had already granted relief to plaintiffs via its preliminary injunction order, clearly altering the legal relationship between the two parties. Hence the awarding of fees

11

simply prevented City from "taking steps to moot the case after the plaintiff has obtained the relief he sought" (<u>id</u>.).

### Conclusion

In the context of this case, the lesson taught by <u>Buckhannon</u> and its relevant progeny is that the proverbial handwriting on the wall does not alone suffice to trigger a Section 1988 entitlement to attorney's fees, no matter how clear the penmanship may appear to be. Instead that figurative handwriting must have been memorialized in a judicial ruling or like judicial action, and nothing of the sort had taken place in these two cases before Village and City dispatched their challenged ordinances and thus mooted the two cases. Accordingly NRA's motions for Section 1988 fee awards are denied.[5]

Date:    December 22, 2010    _____
                              Milton I. Shadur
                              Senior United States District Judge

---

[5] When these actions came on for a preset status hearing on December 21 for the sole purpose of confirming that the litigants had met head-on in addressing the issues posed by NRA's motions, counsel for plaintiff in the <u>McDonald</u> case appeared and voiced vigorous criticism at having assertedly been kept out of the loop by NRA's counsel. This Court, which of course had no knowledge of anything of the sort (it will be recalled that the cases had been terminated by the dismissal orders based on mootness, so that this Court had no need to follow its normal practice of setting periodic status hearing in all cases pending on its calendar), rejected the motion by McDonald's counsel to stay the determination of the fully briefed motions in these two cases. As this Court assured that lawyer, as and when he may advance a Section 1988 motion in that case this Court will address it on the merits, for which purpose it may or may not find that the <u>McDonald</u> plaintiffs occupy the same position announced here as to NRA (a function of whatever similarities and differences may exist as between the <u>McDonald</u> case and the two NRA cases).

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.2**
**Eastern Division**

National Rifle Association of America, Inc., et al.

Plaintiff,

v.                                                              Case No.:
                                                                1:08−cv−03697
                                                                Honorable Milton I.
                                                                Shadur

The City of Chicago, et al.

Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Friday, January 7, 2011:

        MINUTE entry before Honorable Milton I. Shadur:Enter Supplement to
Memorandum Opinions and Orders. And that,given the intervening repeal of the
ordinance, was clearly a dismissal for mootness, again not a Buckhannon−qualifying
ruling.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at *www.ilnd.uscourts.gov*.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.  08 C 3696 |
| VILLAGE OF OAK PARK, et al., | ) ) | |
| Defendants. | ) ) | |
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.  08 C 3697 |
| CITY OF CHICAGO, | ) ) | |
| Defendant. | ) ) | |
| OTIS McDONALD, et al., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.  08 C 3645 |
| CITY OF CHICAGO, et al., | ) ) | |
| Defendants. | ) | |

SUPPLEMENT TO MEMORANDUM OPINIONS AND ORDERS

This Court has just had occasion, for a reason wholly

unrelated to these cases,[1] to note an excerpt from an earlier

_____

   [1]  Indeed, what has brought the subject of this supplement
to this Court's attention is simply its consistently prompt
review of slip opinions emanating from our Court of Appeals--in
this instance, <u>Bd. of Regents of the Univ. of Wis. Sys. v.
Phoenix Int'l Software, Inc.</u>, No. 08-4164, 2010 WL 5295853 at *21

opinion of our Court of Appeals that calls for a clarifying

supplement to this Court's opinions in the captioned cases--in

the NRA cases, 2010 WL 5185083 (N.D. Ill. Dec. 22) and in the

McDonald case, 2011 WL 13755 (N.D. Ill. Jan. 3).  That excerpt

appears in the en banc opinion in United States v. Skoien, 614

F.3d 638, 641 (7th Cir. 2010).

     In McDonald, 2011 WL 13755 at *1 this Court dropped this

footnote 2 as an attempted amplification of the point (1) that

the order by the Supreme Court in that case had remanded the case

"for further proceedings" and (2) that no such proceedings then

took place because the City of Chicago's swift action in

repealing its ordinance compelled dismissal of the case on

mootness grounds:

> Remember the universal principle that courts speak
> definitively through their orders, not through the
> language in their opinions that explains the basis for
> the orders themselves.

In that respect Judge Wood's dissent in Bd. of Regents has just

repeated this sentence from Skoien, 614 F.3d at 641 that spoke of

an aspect of the Heller case in these terms:

> This is the sort of message that, whether or not
> technically dictum, a court of appeals must respect,
> given the Supreme Court's entitlement to speak through
> its opinions as well as through its technical holdings.

     Thus the McDonald footnote was an oversimplification of a

more fundamental proposition that this Court has sought to

_____

(7th Cir. Dec. 28).

emphasize in both its <u>NRA</u> opinion and its <u>McDonald</u> opinion:  that
if the Supreme Court had intended its <u>McDonald</u> opinion to be the
last word on the matter, automatically constituting a final order
as to the Chicago ordinance of the type required by <u>Buckhannon</u> to
constitute a formal judicial imprimatur, the Supreme Court would
surely have known how to do just that in so many words.  What
cannot be ignored is that its ruling was instead a remand "for
further proceedings," leaving it to the lower court--our Court of
Appeals--to determine what was called for.  And that, given the
intervening repeal of the ordinance, was clearly a dismissal for
mootness, again not a <u>Buckhannon</u>-qualifying ruling.

_____
Milton I. Shadur
Senior United States District Judge

Date:  January 7, 2011

3