APPEAL, SCHENKIER, TERMED

# United States District Court
# Northern District of Illinois − CM/ECF LIVE, Ver 4.2 (Chicago)
# CIVIL DOCKET FOR CASE #: 1:08−cv−03645
## *Internal Use Only*

McDonald et al v. City of Chicago et al
Assigned to: Honorable Milton I. Shadur
Case in other court: 08−04112
08−04244
11−01016
Cause: 42:1983 Civil Rights Act

Date Filed: 06/26/2008
Date Terminated: 12/18/2008
Jury Demand: Defendant
Nature of Suit: 950 Constitutional − State Statute
Jurisdiction: Federal Question

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/26/2008 | 1 | 6 | COMPLAINT filed by Plaintiffs Illinois State Rifle Association, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc.; Filing fee $ 350.(smm) (Entered: 06/26/2008) |
| 06/26/2008 | 2 | 18 | CIVIL Cover Sheet. (smm) (Entered: 06/26/2008) |
| 06/26/2008 | 6 | 19 | MOTION by Alan Gura on behalf of Plaintiffs McDonald, Orlov, Lawsons, Second Amdment Found, ISRA for Leave to Appear Pro Hac Vice, Filing fee $ 50, Paid Receipt # 4624004966. (smm) (Entered: 06/27/2008) |
| 06/27/2008 | 7 | 21 | MINUTE entry before the Honorable Milton I. Shadur:Enter Memorandum Order. This memorandum order is issued sua sponte to strip the Complaint of some surplusage − − listed in the order of appearance, rather than in any effort to rank the stricken allegations in terms of importance − − that does not conform to the directive of Fed. R. Civ. P. 8(a) as to the content of a federal complaint.Mailed notice (srn, ) (Entered: 06/27/2008) |
| 06/27/2008 | 8 | 22 | MEMORANDUM Order Signed by the Honorable Milton I. Shadur on 6/27/2008:Mailed notice(srn, ) (Entered: 06/27/2008) |
| 06/27/2008 | 19 | 55 | MINUTE entry before the Honorable Milton I. Shadur: Defendant Richard M. Daley is dismissed from this action.Mailed notice (srn, ) (Entered: 07/17/2008) |
| 07/02/2008 | 13 | 25 | RESPONSE by Plaintiffs Illinois State Rifle Association, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc. to memorandum opinion and order 8 (Attachments: # 1 Notice of Filing)(Sigale, David) (Entered: 07/02/2008) |
| 07/02/2008 | 14 | 33 | |

| | | | |
|---|---|---|---|
| | | | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Second Amendment Foundation, Inc. (Sigale, David) (Entered: 07/02/2008) |
| 07/02/2008 | 15 | 34 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Illinois State Rifle Association (Sigale, David) (Entered: 07/02/2008) |
| 07/07/2008 | 16 | 35 | MINUTE entry before the Honorable Milton I. Shadur:Enter Memorandum Order. Accordingly this court declines any invitation to revisit its June 27 memorandum order.Mailed notice (srn, ) (Entered: 07/07/2008) |
| 07/07/2008 | 17 | 36 | MEMORANDUM Order Signed by the Honorable Milton I. Shadur on 7/7/2008:Mailed notice(srn, ) (Entered: 07/07/2008) |
| 07/15/2008 | 21 | 57 | IT is ordered that the applicant herein may appear pro hac vice in the above−entitled case. Receipt no. 4624004966; paid on 6/26/08. (smm) (Entered: 07/21/2008) |
| 07/16/2008 | 18 | 39 | ANSWER to Complaint with Jury Demand by City of Chicago(Worseck, Andrew) (Entered: 07/16/2008) |
| 07/17/2008 | 20 | 56 | MINUTE entry before the Honorable Milton I. Shadur: Status hearing set for 8/22/2008 at 09:00 AM.Mailed notice (srn, ) (Entered: 07/17/2008) |
| 07/22/2008 | 22 | 59 | MOTION by Defendant City of Chicago to reassign case (Worseck, Andrew) (Entered: 07/22/2008) |
| 07/23/2008 | 24 | 75 | MOTION to reassign case (Attachments: # 1 Exhibit A)(Karaca, Jacob) (Entered: 07/23/2008) |
| 07/25/2008 | 26 | 87 | MINUTE entry before the Honorable Milton I. Shadur:Motion to reassign case 22 is granted; Motion hearing held on 7/25/2008 regarding motion to reassign case 22 Mailed notice (srn, ) (Entered: 07/28/2008) |
| 07/29/2008 | 27 | 88 | MINUTE entry before the Honorable Milton I. Shadur:Motion to reassign case 24 is granted; Motion hearing held on 7/29/2008 regarding motion to reassign case 24 . Status hearing set for 9/26/2008 at 09:00 AM. The August 22 status date is vacated.Mailed notice (srn, ) (Entered: 07/29/2008) |
| 07/29/2008 | 28 | 89 | MOTION to vacate *and Set Briefing Schedule* (Attachments: # 1 Exhibit A, # 2 Certificate of Service)(Howard, William) (Entered: 07/29/2008) |
| 07/31/2008 | 30 | 96 | MOTION by Plaintiffs Illinois State Rifle Association, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc. to strike answer to complaint 18 (Sigale, David) (Entered: 07/31/2008) |
| 07/31/2008 | 32 | 104 | |

| | | | |
|---|---|---|---|
| | | | MOTION by Plaintiffs Illinois State Rifle Association, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc. for summary judgment (Sigale, David) (Entered: 07/31/2008) |
| 07/31/2008 | 34 | 106 | MEMORANDUM by Illinois State Rifle Association, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc. in support of motion for summary judgment 32 (Attachments: # 1 Statement of Material Facts, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Declaration of Otis McDonald, # 9 Declaration of Adam Orlov, # 10 Declaration of Colleen Lawson, # 11 Declaration of David Lawson, # 12 Declaration of Alan Gottlieb, # 13 Declaration of Richard Pearson)(Sigale, David) (Entered: 07/31/2008) |
| 08/01/2008 | 35 | 154 | Exhibit G to Memorandum in Support of Plaintiffs' Motion for Summary Judgment by Illinois State Rifle Association, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc. (Sigale, David) (Entered: 08/01/2008) |
| 08/01/2008 | 36 | 156 | MINUTE entry before the Honorable Milton I. Shadur:Motion to strike 30 is entered and continued. MOTION for summary judgment 32 is entered and continued; Motion to vacate is entered and continued. NRA Plaintiff's further submission on the motion to vacate is due on or before August 8, 2008. Motion hearing held on 8/1/2008. Motion Hearing set for 8/18/2008 at 09:15 AM.Mailed notice (srn, ) (Entered: 08/01/2008) |
| 08/08/2008 | 39 | 157 | MOTION by Plaintiffs National Rifle Association of America, Inc., Robert Klein Engler, Gene A. Reisinger to vacate order on motion to reassign case,, motion hearing,, set/reset hearings, 27 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Certificate of Service)(Howard, William) (Entered: 08/08/2008) |
| 08/18/2008 | 40 | 217 | MINUTE entry before the Honorable Milton I. Shadur:Motion to strike 30 is denied without prejudice. City of Chicago's Amended Answer is due on or before September 2, 2008.; Motion to vacate is denied.; Status hearing held on 8/18/2008. The September 26, 2008 status date is vacated. Status hearing set for 9/10/2008 at 09:00 AM.Mailed notice (srn, ) (Entered: 08/18/2008) |
| 09/05/2008 | 41 | 218 | *Amended* ANSWER to Complaint with Jury Demand by City of Chicago(Alfert, Rebecca) (Entered: 09/05/2008) |
| 10/21/2008 | 43 | 234 | MOTION by Plaintiffs Illinois State Rifle Association, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc.Narrow Legal Issues Pursuant to FRCivP 16 (Sigale, David) (Entered: 10/21/2008) |

| | | | |
|---|---|---|---|
| 11/13/2008 | 46 | 249 | MINUTE entry before the Honorable Milton I. Shadur:Enter Memorandum Order. This Court will put aside the Postal Service's apparent determination that this Court is a non−person, even though it has been occupying the Room 2388 judicial chambers for years − − instead this memorandum is issued simply to reassure plaintiff's counsel that no violation of court rules is to be placed at his doorstep.Mailed notice (srn, ) (Entered: 11/13/2008) |
| 11/13/2008 | 47 | 250 | MEMORANDUM Order Signed by the Honorable Milton I. Shadur on 11/13/2008:Mailed notice(srn, ) (Entered: 11/13/2008) |
| 12/03/2008 | 48 | 251 | MINUTE entry before the Honorable Milton I. Shadur:The December 4, 2008 status date is vacated. This Court will set a new status date after the completion of the trial that it is currently conducting. Mailed notice (srn, ) (Entered: 12/03/2008) |
| 12/04/2008 | 49 | 252 | MINUTE entry before the Honorable Milton I. Shadur:Enter Memorandum Order.MOTION for summary judgment 32 is denied; Motion 43 is denied. Status hearing set for 12/9/2008 at 08:45 AM.Mailed notice (srn, ) (Entered: 12/04/2008) |
| 12/04/2008 | 50 | 253 | MEMORANDUM Order Signed by the Honorable Milton I. Shadur on 12/4/2008:Mailed notice(srn, ) (Entered: 12/04/2008) |
| 12/05/2008 | 51 | 255 | NOTICE of appeal by Illinois State Rifle Association, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc. regarding orders 50 Filing fee $ 455, receipt number 07520000000003330512. (Sigale, David) (Entered: 12/05/2008) |
| 12/09/2008 | 55 | 256 | MINUTE entry before the Honorable Milton I. Shadur:Status hearing held on 12/9/2008. Counsel is to submit a draft order for consideration. Status hearing set for 12/18/2008 at 08:45 AMMailed notice (srn, ) (Entered: 12/09/2008) |
| 12/18/2008 | 56 | 257 | NOTICE of appeal by Illinois State Rifle Association, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc. regarding orders 49 Filing fee $ 455, receipt number 07520000000003371470. (Sigale, David) (Entered: 12/18/2008) |
| 12/18/2008 | 59 | 259 | MINUTE entry before the Honorable Milton I. Shadur:Status hearing held. Enter order. This Court hereby grants the contested 12/9/08 oral motion of the City of Chicago, pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings on Counts I−V of the complaint. Judgment is hereby entered in favor of the City of Chicago and against Plaintiffs on all counts of the complaint. Civil case terminated. (For further detail see separate order(s).) Mailed notice (smm) (Entered: 12/22/2008) |

| | | | |
|---|---|---|---|
| 12/18/2008 | 60 | 260 | ORDER Signed by the Honorable Milton I. Shadur on 12/18/2008.(smm) (Entered: 12/22/2008) |
| 12/18/2008 | 61 | 261 | ENTERED JUDGMENT. (smm) (Entered: 12/22/2008) |
| 10/12/2010 | 82 | 262 | MINUTE entry before Honorable Milton I. Shadur:This action is hereby dismissed as moot. Mailed notice (srn, ) (Entered: 10/12/2010) |
| 12/27/2010 | 83 | 263 | MOTION by Plaintiffs Illinois State Rifle Association, Colleen Lawson, David Lawson, Otis McDonald, Adam Orlov, Second Amendment Foundation, Inc. for attorney fees (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Sigale, David) (Entered: 12/27/2010) |
| 12/29/2010 | 85 | 319 | MINUTE entry before Honorable Milton I. Shadur:Motion for attorney fees 83 is entered and continued. Motion hearing held on 12/29/2010.Mailed notice (srn, ) (Entered: 12/29/2010) |
| 01/03/2011 | 86 | 320 | MINUTE entry before Honorable Milton I. Shadur: Enter Memorandum Opinion and Order. In summary, counsel for the McDonald Plaintiffs have not separated themselves or their clients from what this Court ruled in the NRA Opinion. Their motion for "prevailing party" status andMotion for attorney fees 83 is denied.Mailed notice (srn, ) (Entered: 01/04/2011) |
| 01/03/2011 | 87 | 321 | MEMORANDUM Opinion and Order Signed by the Honorable Milton I. Shadur on 1/3/2011:Mailed notice(srn, ) (Entered: 01/04/2011) |
| 01/04/2011 | 88 | 325 | NOTICE of appeal by Illinois State Rifle Association, Colleen Lawson, David Lawson, Otis McDonald, Adam Orlov, Second Amendment Foundation, Inc. regarding orders 87 , 86 Filing fee $ 455, receipt number 0752−5571287. (Gura, Alan) (Entered: 01/04/2011) |
| 01/07/2011 | 92 | 327 | MINUTE entry before Honorable Milton I. Shadur:Enter Supplement To Memorandum Opinion and Orders. And that, given the intervening repeal of the ordinance, was clearly a dismissal for mootness, again not a Buckhannon − qualifying ruling. Mailed notice (srn, ) (Entered: 01/10/2011) |
| 01/07/2011 | 93 | 328 | Supplement to MEMORANDUM Opinion and Order Signed by the Honorable Milton I. Shadur on 1/7/2011:Mailed notice(srn, ) (Entered: 01/10/2011) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION, | ) | Case No. |
| Plaintiffs, | ) | **COMPLAINT** |
| v. | ) | **FILED: JUNE 26, 2008**<br>**08CV3645**<br>**JUDGE SHADUR**<br>**MAGISTRATE JUDGE SCHENKIER**<br>**AEE** |
| CITY OF CHICAGO and MAYOR RICHARD M. DALEY, | ) | |
| Defendants. | ) | |

## COMPLAINT

**COME NOW** the Plaintiffs, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and through undersigned counsel, and complain of the Defendants as follows:

## THE PARTIES

1. Plaintiff Otis McDonald is a natural person and a citizen of the United States, residing in Chicago, Illinois. Mr. McDonald resides in a high-crime neighborhood and is active in community affairs. As a consequence of trying to make his neighborhood a better place to live, Mr. McDonald has been threatened by drug dealers.

2. Plaintiff Adam Orlov is a natural person and a citizen of the United States, residing in Chicago, Illinois. Mr. Orlov is a former Evanston, Illinois, police officer. As a police

officer, Mr. Orlov was entrusted with a handgun for the purpose of defending himself and others from violent crime.

3.  Plaintiff Colleen Lawson is a natural person and a citizen of the United States, residing in Chicago, Illinois.  Ms. Lawson's home has been targeted by burglars.

4.  Plaintiff David Lawson is a natural person and a citizen of the United States, residing in Chicago, Illinois.  Mr. Lawson's home has been targeted by burglars.

5.  Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington.  SAF has over 600,000 members and supporters nationwide, including many in Chicago.  The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control.  SAF brings this action on behalf of itself and its members.

6.  Plaintiff Illinois State Rifle Association ("ISRA") is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois.  ISRA has over 17,000 members and supporters in Illinois, including many in Chicago.  The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation.  ISRA brings this action on behalf of itself and its members.

7.  Defendant City of Chicago is a municipal entity organized under the Constitution and laws of the State of Illinois.

8.  Defendant Richard M. Daley is the Mayor of the City of Chicago, and as such is responsible for executing and administering the City of Chicago's laws, customs, practices, and

policies. In that capacity, Mr. Daley is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in both his individual and official capacities.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

10. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

**STATEMENT OF FACTS**

11. Mr. McDonald lawfully owns a handgun, which he keeps outside the City of Chicago. Mr. McDonald presently intends to possess the handgun within his home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

12. Mr. McDonald applied for permission to possess a handgun within his Chicago home. On June 13, 2008, that application was refused pursuant to the policies complained of in this action.

. 13. Mr. McDonald fears arrest, criminal prosecution, incarceration, and fine if he were to possess a handgun within his home.

14. Mr. McDonald owns a shotgun which he keeps in his Chicago home. This shotgun is lawfully registered pursuant to the Chicago Municipal Code.

15. Mr. McDonald fears arrest, criminal prosecution, incarceration, and fine if he were to continue to possess the shotgun in his Chicago home without re-registering it annually as required by the Chicago Municipal Code.

16. Mr. Orlov lawfully owns a handgun, which he keeps outside the City of Chicago. Mr. Orlov presently intends to possess the handgun within his home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

17. Mr. Orlov applied for permission to possess the handgun within his Chicago home. On May 6, 2008, that application was refused pursuant to the policies complained of in this action.

18. Mr. Orlov fears arrest, criminal prosecution, incarceration, and fine if he were to possess a handgun within his home.

19. Ms. Lawson lawfully owns a handgun, which she keeps outside the City of Chicago. Ms. Lawson presently intends to possess the handgun within her home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

20. Ms. Lawson applied for permission to possess the handgun within her Chicago home. On January 3, 2008, that application was refused pursuant to the policies complained of in this action.

21. Ms. Lawson fears arrest, criminal prosecution, incarceration, and fine if she were to possess a handgun within her home.

22. Mr. Lawson lawfully owns a handgun, which he keeps outside the City of Chicago. Mr. Lawson presently intends to possess the handgun within his home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

23. Mr. Lawson applied for permission to possess the handgun within his Chicago home. On January 23, 2008, that application was refused pursuant to the policies complained of in this action.

24. Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess a handgun within his home.

25. Mr. Lawson owns various long arms which are kept in his Chicago home and are lawfully registered pursuant to the Chicago Municipal Code.

26. Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to continue to possess these arms in his Chicago home without re-registering them annually as required by the Chicago Municipal Code.

27. On May 4, 2008, the registration for one of Mr. Lawson's rifles, a K31, lapsed. The rifle thus became permanently unregisterable within the City of Chicago. Mr. Lawson removed the rifle from his Chicago home and now keeps it outside the City of Chicago.

28. Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess the lapsed K31 rifle within his Chicago home. Mr. Lawson presently intends to possess the K31 rifle within his home, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

29. In 2007, Mr. Lawson applied to purchase a rifle from the federal Civilian Marksmanship Program ("CMP"). On October 18, 2007, Mr. Lawson was informed via email that his application was granted and the rifle would be delivered to his Chicago home. The Civilian Marksmanship Program requires that delivery be made to Mr. Lawson's Chicago home,

because that is the address listed both in Mr. Lawson's driving license and Illinois Firearms

Owner Identification Card.

30.     On October 19, 2007, the CMP rifle arrived at the Lawson home via the U.S.

Postal Service.  Mr. Lawson thus had approximately a day's notice that he would be receiving the

CMP rifle.  Only upon receiving the CMP rifle could Mr. Lawson learn the gun's serial number,

necessary to apply for a Chicago registration certificate for the firearm.

31.     Mr. Lawson relocated the rifle outside of Chicago and, on November 30, 2007

applied to register the rifle.   On December 11, 2007, that application was refused pursuant to the

policies complained of in this action.

32.     Mr. Lawson presently intends to possess the CM P rifle within his home, but is

prevented from doing so only by Defendants' active enforcement of the policies complained of in

this action.  Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to

possess the CMP rifle within his home.

33.     The Second Amendment to the United States Constitution provides: "A well

regulated Militia being necessary to the security of a free State, the right of the people to keep

and bear Arms shall not be infringed."

34.     At a minimum, the Second Amendment guarantees individuals a fundamental

right to possess a functional, personal firearm, including a handgun, within the home.

35.     The Fourteenth Amendment to the United States Constitution provides, in

pertinent part: "No State shall make or enforce any law which shall abridge the privileges or

immunities of citizens of the United States; nor shall any State deprive any person of life, liberty,

or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

36. Chicago Municipal Code § 8-20-040(a) mandates that

> All firearms in the City of Chicago shall be registered in accordance with the provisions of this chapter. It shall be the duty of a person owning or possessing a firearm to cause such firearm to be registered. No person shall within the City of Chicago, possess, harbor, have under his control . . . or accept any firearm unless such person is the holder of a valid registration certificate for such firearm. No person shall, within the City of Chicago, possess, harbor, have under his control . . . or accept any firearm which is unregisterable under the provisions of this chapter.

37. Chicago Municipal Code § 8-20-050 provides: "No registration certificate shall be issued for any of the following types of firearms: . . .(c) handguns . . ." While Section 8-20-050(c) provides exceptions for certain handguns owned prior to the law's effective date, and handguns owned by police officers, security personnel, and private detectives, the provision, in conjunction with Section 8-20-040, generally bars the private home possession of handguns by law-abiding adult citizens.

38. Chicago Municipal Code § 8-20-090(a) provides: "A registration certificate shall be obtained prior to any person taking possession of a firearm from any source."

39. Chicago Municipal Code § 8-20-200 provides:

> (a) Every registrant must renew his registration certificate annually. Applications for renewal shall be made by such registrants 60 days prior to the expiration of the current registration certificate.
>
> (b) The application for renewal shall include the payment of a renewal fee as follows:
>
> 1 firearm . . . . $20.00; 2-10 firearms . . . . 25.00; More than ten firearms . . . . 35.00
>
> (c) Failure to comply with the requirement for renewal of registration of a firearm shall cause that firearm to become unregisterable.

(d) All terms, conditions and requirements of this chapter for registration of firearms shall be applicable to renewal or registration of such firearms.

(e) The renewal fee shall not be applicable to duty-related handguns of peace officers domiciled in the City of Chicago.

40. Many Chicago gun owners fail to re-register their firearms every year. Among these recently was Alderman Richard Mell, whose firearms became unregisterable when he failed to timely renew his registration certificates.

41. Accordingly, Alderman Mell proposed an ordinance amending the law to permit, for one month, lapsed guns to be re-registered if their owners had attempted to re-register their guns between May 1, 2007 and April 1, 2008, a period that would have covered his lapsed firearm registrations.

42. Defendant Mayor Daley endorsed Mell's proposal, stating: "A lot of people go back and forth to their summer homes . . . A lot of people move their shotguns. A lot of 'em are bird hunters, gun collectors. . . . They move 'em back from Wisconsin, Michigan, [other] parts of Illinois."

43. Defendant Mayor Daley added: "It's one time [for] one month . . . You want to have 'em register. There's nothing wrong with that . . . People want to just register. A lot of 'em bring 'em back from hunting trips. So, why not?"

44. Speaking of Alderman Mell's desire to re-register his lapsed guns, Defendant Mayor Daley stated: "He has a home in Wisconsin. He brings 'em back and forth. He's not running out with a shotgun and hurting people."

45. The proposed re-registration amnesty bill was passed by the Chicago City Council, with the amnesty period extended to 120 days. The fee for re-registering a lapsed firearm under the amnesty bill is $60.00.

46. A first violation of Chicago's ban on the ownership or possession of unregistered firearms within the home is punishable by a fine of "not less than $300.00, nor more than $500.00; or [incarceration] for not less than ten days nor more than 90 days or both." Chicago Municipal Code § 8-20-250. Subsequent violations are punishable by a fine of $500.00 and incarceration ranging from ninety days to six months. Id.

**FIRST CAUSE OF ACTION – HANDGUN BAN**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

47. Paragraphs 1 through 46 are incorporated as though fully stated herein.

48. The Second Amendment right is incorporated as against the states and their political subdivisions pursuant to the Due Process Clause of the Fourteenth Amendment.

49. The Second Amendment right to keep and bear arms is a privilege and immunity of United States citizenship which, pursuant to the Fourteenth Amendment, states and their political subdivisions may not violate.

50. Handguns, as a class of weapons, are "arms" whose possession by law-abiding adult citizens is protected by the Second Amendment right to keep and bear arms.

51. By banning handguns, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in

violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**SECOND CAUSE OF ACTION – RE-REGISTRATION REQUIREMENT**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

52. Paragraphs 1 through 51 are incorporated as though fully stated herein.

53. By requiring Plaintiffs to annually re-register each firearm, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**THIRD CAUSE OF ACTION – PRE-ACQUISITION REGISTRATION REQUIREMENT**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

54. Paragraphs 1 through 53 are incorporated as though fully stated herein.

55. By requiring Plaintiffs to register all firearms prior to their acquisition, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement

and maintenance of Defendants' unconstitutional customs, policies, and practices.

**FOURTH CAUSE OF ACTION – UNREGISTERABLE STATUS PENALTY**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

56. Paragraphs 1 through 55 are incorporated as though fully stated herein.

57. By declaring specific firearms "unregisterable" as a penalty for not complying with registration requirements, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**FIFTH CAUSE OF ACTION – UNREGISTERABLE STATUS PENALTY**
**EQUAL PROTECTION**
**U.S. CONST., AMEND. XIV, 42 U.S.C. § 1983**

58. Paragraphs 1 through 57 are incorporated as though fully stated herein.

59. By declaring specific firearms "unregisterable" as a penalty for not complying with registration requirements, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**PRAYER FOR RELIEF**

Plaintiffs request judgment be entered in their favor and against Defendants as follows:

1. An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Chicago Municipal Code § 8-20-050(c), barring registration of handguns; Chicago Municipal Code § 8-20-200, requiring the annual renewal of firearms registrations; Chicago Municipal Code § 8-20-090, mandating that registration certificates for firearms be obtained prior to taking possession of a firearm; Chicago Municipal Code § 8-20-040, as applied to prohibiting possession of an unregistered firearm within a period of time reasonably necessary to obtain registration; and any custom, policy, or practice of deeming a firearm "unregisterable" for the sole reason that it has previously been not validly registered.

2. Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

3. Declaratory relief consistent with the injunction;

4. Costs of suit; and

5. Any other further relief as the Court deems just and appropriate.

Dated: June 26, 2008

Respectfully submitted,

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
*Pro Hac Vice* Application Pending

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By: /s/David G. Sigale/
David G. Sigale

Attorneys for Plaintiffs

# CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form isrequired for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**

Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc. and Illinois State Rifle Association

**DEFENDANTS**

City of Chicago and Mayor Richard M. Daley

**(b)** County of Residence of First Listed Plaintiff Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Law Firm of David G. Sigale, P.C.
Corporate West I / 4300 Commerce Court, Suite 300-3
Lisle, IL 60532 (630.452.4547)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (excl. vet.)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Inj.

PERSONAL INJURY
☐ 362 Personal Injury— Med. Malpractice
☐ 365 Personal Injury — Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 ADA—Employment
☐ 446 ADA — Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Security/Commodity/Exch.
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☒ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

42 U.S.C. § 1983: Chicago Mun. Code § 8-20-050, banning handguns, violates the Second and Fourteenth Amendments.

## VII. PREVIOUS BANKRUPTCY MATTERS (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter perviously adjudicated by a judge of this Court. Use a separate attachment if necessary)

**VIII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 **DEMAND $** CHECK YES only if demanded in complaint: **JURY DEMAND:** ☐ Yes ☒ No

**IX. This case** ☒ **is not a refiling of a previously dismissed action.**
☐ **is a refiling of case number** ____________ **, previously dismissed by Judge** ____________

DATE June 26, 2008 SIGNATURE OF ATTORNEY OF RECORD /s/ David G. Sigale



(Revised 06/08)

# United States District Court Northern District of Illinois
# MOTION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Case Title: Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, et al | Plantiff(s) |
| VS. | |
| City of Chicago and Mayor Richard M. Daley | Defendant(s) |
| Case Number: 08 CV 3645 | Judge: Shadur |

I, Alan Gura hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

Plaintiffs McDonald, Orlov, Lawsons, Second Amdmnt. Found., ISRA by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | Date Admitted |
|---|---|
| Supreme Court of California | 12/01/95 |
| District of Columbia Court of Appeals | 01/06/97 |
| Supreme Court of Virginia | 11/04/04 |
| | |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
|---|---|---|
| | | |
| | | |
| | FILED | |
| | JUN 2 6 2008 TC | |

Jun 26, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

*If denied, please explain:
(Attach additional form if necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

**Has the applicant designated local counsel? Yes** (•) **No** ( )

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Has the applicant ever been:

| | | | | |
|---|---|---|---|---|
| **censured, suspended, disbarred, or otherwise disciplined by any court?** | **Yes** | | **No** | X |
| **or is the applicant currently the subject of an investigation of the applicant's professional conduct?** | **Yes** | | **No** | X |
| **transferred to inactive status, voluntarily withdrawn, or resigned from the bar of any court?** | **Yes** | | **No** | X |
| **denied admission to the bar of any court?** | **Yes** | | **No** | X |
| **held in contempt of court?** | **Yes** | | **No** | X |

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

5/23/08

Date

Signature of Applicant

| | | | | |
|---|---|---|---|---|
| Applicant's Name | Last Name<br>Gura | | First Name<br>Alan | Middle Name/Initial |
| Applicant's Law Firm | Gura & Possessky, PLLC | | | |
| Applicant's Address | Street Address<br>101 N. Columbus Street | | | Room/Suite Number<br>Ste 405 |
| | City<br>Alexandria | State<br>VA | ZIP Code<br>22314 | Work Phone Number<br>703.835.9085 |

**(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)**

(Fee Stamp)

PAID
JUN 2 6 2008 TC
4624004966
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

NOTE: Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of this Court. The fee for admission to the General Bar is $100.00 The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

**ORDER**

IT IS ORDERED that the applicant herein may appear in the above-entitled case.

DATED: ____________________

____________________
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.1**
**Eastern Division**

Otis McDonald, et al.

Plaintiff,

v.

Case No.: 1:08−cv−03645
Honorable Milton I. Shadur

City of Chicago, et al.

Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, June 27, 2008:

MINUTE entry before the Honorable Milton I. Shadur:Enter Memorandum Order. This memorandum order is issued sua sponte to strip the Complaint of some surplusage − − listed in the order of appearance, rather than in any effort to rank the stricken allegations in terms of importance − − that does not conform to the directive of Fed. R. Civ. P. 8(a) as to the content of a federal complaint.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OTIS McDONALD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08 C 3645 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM ORDER

This newly-filed action has been assigned to this Court's calendar. From a reading of the Complaint it appears that plaintiffs' counsel may view this litigation--which is entitled to serious consideration on its own merit--as a vehicle for some other purposes as well. This memorandum order is issued sua sponte to strip the Complaint of some surplusage--listed in the order of appearance, rather than in any effort to rank the stricken allegations in terms of importance--that does not conform to the directive of Fed. R. Civ. P. 8(a) as to the content of a federal complaint.

1. Because yesterday's Supreme Court decision in District of Columbia v. Heller, No. 07-290, 554 U.S. __, 2008 WL 2520816 (U.S. June 26) requires no independent justification for the ownership and possession of firearms under the Second Amendment (see Complaint ¶34),[1] all but the

[1] Nothing in the Supreme Court's opinion addresses the registration and licensing requirements targeted by the Complaint (see Heller, id. at *28 n.26 and *30), and no view is of course

first sentence of each of Complaint ¶¶1 through 4 are stricken.

2. Complaint ¶8 appears to reflect an inaccurate characterization of the form of government that is prescribed for the City of Chicago. Absent some showing to the contrary by plaintiffs' counsel, that paragraph will be stricken, Richard Daley will be dismissed as a defendant and all of the Complaint's references to "Defendants" will be converted to singular form.

3. Because 28 U.S.C. §§2201 and 2202 are not independent sources of federal subject matter jurisdiction, reference to those sections is stricken from Complaint ¶9.

4. Complaint ¶¶40 through 45 are stricken as patently inappropriate.

5. All of the Complaint's references to "Cause of Action" are also stricken. In that respect, see NAACP v. American Family Mut. Ins. Co., 978 F.2d 287, 291-93 (7th Cir. 1992)).

No effort has been made here to be comprehensive in terms of identifying any other possible pleading defects, nor (as n.1 states) has this memorandum order sought to identify any possible substantive deficiencies, in the Complaint. Any such possible

---

expressed here as to such substantive issues.

flaws will be left to defense counsel to raise.

Milton I. Shadur
Senior United States District Judge

Date: June 27, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS McDONALD, et al., | ) | Case No. 08-CV-3645 |
| Plaintiffs, | ) | RESPONSE TO ORDER OF JUNE 27, 2008 |
| v. | ) | |
| CITY OF CHICAGO, et al., | ) | |
| Defendants. | ) | |

RESPONSE TO ORDER OF JUNE 27, 2008

Pursuant to the second paragraph of the Court's Order of June 27, 2008, Plaintiffs respectfully submit the following showing re: the inclusion of Chicago Mayor Richard M. Daley as a defendant in this action:

Plaintiffs and counsel appreciate the Court's indication that this litigation is "entitled to serious consideration on its own merit," *Order*, June 27, 2008 ¶ 1, and seek to assure the Court that the Complaint is not intended to act as "a vehicle for some other purposes as well." *Id.* The only purpose of the Complaint is to vindicate plaintiffs' Second and Fourteenth Amendment rights, as requested in the prayer for relief. Counsel did not include any allegations or statements in the Complaint that were not specifically intended to advance this goal.

Inclusion of Mayor Daley as a party defendant to this action is based upon the good faith beliefs that (1) Mayor Daley is a "person" under 42 U.S.C. § 1983; (2) naming mayors and cities both as defendants in civil rights actions is accepted practice; and (3) such practice promotes judicial efficiency and assures the availability of complete relief.

On a web page entitled "Role of the Mayor," apparently operated by defendant City of Chicago and accessible through www.cityofchicago.org, defendant Mayor Daley is described as follows, in pertinent part: "The Mayor of Chicago, the city's chief executive officer, directs city departments and appoints department heads, with the advice and consent of the City Council."

Accordingly, counsel believe Mayor Daley to be a "person" within the meaning of 42 U.S.C. § 1983. It appears to be common practice to sue Mayor Daley, in his capacity as Mayor, in actions challenging the conduct of Chicago's government. *See*, *e.g. Federation of Adver. Indus. Representatives, Inc.* v. *City of Chicago*, 189 F.3d 633 (7th Cir. 1999); *McKenzie* v. *City of Chicago*, 118 F.3d 552 (7th Cir. 1997). Counsel note that on the same day of the Court's order in this case, another set of plaintiffs asserting similar claims filed suit in this Court, also naming the City of Chicago and Mayor Daley as defendants. *Nat'l Rifle Ass'n of America, Inc.* v. *City of Chicago*, U.S. Dist. Ct. N.D. Ill. No. 08-CV-3697. Lawsuits challenging gun bans in Evanston, Oak Park, and Morton Grove were also filed that day in this Court, each naming as defendants the municipal entity and its chief executive. *Nat'l Rifle Ass'n of America, Inc.* v. *City of Evanston*, U.S. Dist. Ct. N.D. Ill. No. 08-CV-3693; *Nat'l Rifle Ass'n of America, Inc.* v. *Village of Oak Park*, U.S. Dist. Ct. N.D. Ill. No. 08-CV-3696; *Nat'l Rifle Ass'n of America, Inc.* v. *Village of Morton Grove*, U.S. Dist. Ct. N.D. Ill. No. 08-CV-3694.

The practice of naming mayors as defendants in Section 1983 cases is also common elsewhere. Notably, Washington, D.C. Mayor Adrian M. Fenty was a respondent in the Section 1983 case referenced by the Court's Order, *District of Columbia, et al.* v. *Heller*, U.S. Sup. Ct. No. 07-290. That case was originally filed against the District of Columbia and former Washington Mayor Anthony Williams, who did not object to being named as a party-defendant.

On appeal, Mayor Williams was accidentally omitted from the docket, prompting a consent motion to correct the docket. On December 29, 2005, the Clerk of the D.C. Circuit Court of Appeals granted the consent motion, directing that the docket be corrected to include Mayor Williams.[1] The D.C. Circuit substituted Mayor Fenty, upon his accession to the mayoralty, for former Mayor Williams, pursuant to Fed. R. App. P. 43(b)(2). Mayor Fenty petitioned the Supreme Court for *certiorari* in the case. *See* Pet. for Cert., No. 07-290 at ii (parties to the proceeding).

Notably, the filing of *Heller* (originally styled *Parker* v. *District of Columbia*) prompted duplicative litigation by other plaintiffs, raising overlapping claims. *Seegars* v. *Ashcroft*, 297 F. Supp. 2d 201 (D.D.C. 2004), *aff'd*, 396 F.3d 1248 (D.C. Cir. 2005). *Seegars* was brought against not only then-Attorney General John Ashcroft, but also against then-Washington, D.C. Mayor Anthony Williams. The District of Columbia was never itself a party to *Seegars*, but the Mayor was represented by the same city attorneys who handled *Heller*. At no time was it suggested that the Mayor was an inappropriate party to the *Seegars* litigation.[2]

The practice of naming mayors and cities as defendants together in Section 1983 actions, or of naming mayors alone in such actions, is not mere convention. Failing to name a city official as a defendant invites some defense attorneys to claim that any statements or conduct of that official relating to the subject matter of the litigation does not reflect the city defendant's official position, and thus cannot be cited to establish a constitutional violation. This much

[1]The order is available at the D.C. Circuit's PACER website, www.cadc.uscourts.gov , under docket no. 04-7041 (Parker v. Dist. of Columbia).

[2]Counsel in *Heller* did not name Ashcroft as a defendant because he was deemed unnecessary to the litigation.

proved to be counsel's experience in *Heller*. As counsel's experience with this issue in *Heller* informed the decision to include Mayor Daley as a party defendant in this action, counsel respectfully ask the Court's indulgence in briefly reviewing this relevant history.

The latter-filed *Seegars* action was the first decided by the District Court, and thus the first to be appealed. On appeal, *Heller* was held in abeyance pending the resolution of *Seegars*. After ordering *Seegars* dismissed for lack of standing, the D.C. Circuit turned its attention to *Heller*, asking whether that lawsuit was sufficiently distinguishable from *Seegars* so as to allow it to proceed. The parties were repeatedly ordered to file motions exploring the issue.

In seeking to distinguish *Heller* from *Seegars*, plaintiffs relied in part on statements given by the Mayor's official spokesperson, and the Deputy Mayor for Public Safety and Justice to a local newspaper, in which they strongly suggested that the plaintiffs would be prosecuted were they to violate the challenged laws.[3] Defendants ignored the Deputy Mayor's statements, but argued that the statements by the Mayor's spokesperson were meaningless because, among other reasons, the spokesperson lacked authority to threaten prosecution. D.C. Cir. No. 04-7041, Mot. for Summary Affirmance, Feb. 23, 2005, at 2. Plaintiffs responded:

> The Mayor is a defendant-appellee in this lawsuit, because, as the chief executive of the defendant-appellee District of Columbia, he is the individual responsible for perpetuating the unconstitutional practices at issue. If the Mayor did not enforce these laws, he would not have been named as a defendant, and likely there would have been no cause to bring this action. At no time has the Mayor suggested that he is not a proper defendant in this case (or, for that matter, in the *Seegars* lawsuit). His official spokesman, therefore, speaks on behalf of a party to this litigation. FRE 801(d)(2)(C), (D).

---

[3]Federal courts have relied upon newspaper accounts of public officials' statements. *May* v. *Cooperman*, 572 F. Supp. 1561, 1564 n.2 (D.N.J. 1983), *aff'd*, 780 F.2d 240 (3d Cir. 1985); *Loewen* v. *Turnipseed*, 488 F. Supp. 1138, 1149 (N.D. Miss. 1980); *United States* v. *Louisiana*, 225 F. Supp. 353, 375 n.59 (E.D. La. 1963) (three judge court); *see also* Fed. R. Evid. 902(6).

D.C. Cir. No. 04-7041, Opp. and Reply, March 3, 2005, at 6.

Indeed, nothing short of a statement by an actual party defendant appeared to dissuade defendants' counsel from advancing lack-of-authority arguments. Defendants even claimed they were not bound by their counsel's concessions at oral argument because "trial counsel [was] not a criminal prosecutor" authorized to issue threats of enforcement. D.C. Cir. 04-7041, Rep. Br. in Support of Summ. Aff., March 8, 2005, at 2-3.

Eventually, Mayor Williams supplied such relevant statements of a party defendant, at a public forum attended by some of the *Heller* plaintiffs. The D.C. Circuit was apprised of these statements. D.C. Cir. 04-7041, Reply Br., August 5, 2005, and accompanying declarations.

The D.C. Circuit motions panel concluded *Seegars* and *Heller* were sufficiently different to warrant the court's consideration of the latter case, and ordered the parties to brief both the merits of the claim and the standing issue. Order, D.C. Cir. 04-7041, Nov. 2, 2005. Although the panel that decided *Heller* settled on a different theory of standing, *Parker* v. *Dist. of Columbia*, 478 F.3d 370 (D.C. Cir. 2007), the ability to refer to admissions of a mayoral party defendant may have been critical to preserving the case. At the very least, the Mayor's presence in the litigation as a defendant appeared to preclude claims that his statements bound no defendant.

Thus, including Mayor Daley in this litigation was intended by counsel to narrow the scope of possible disputes, not expand it. Mayor Daley has made relevant statements about the subject matter of the litigation, and can be expected to continue speaking publicly on the issue while enforcing the challenged laws. If he is a defendant in the action, potential arguments about whether the Mayor truly acts and speaks for the city could be avoided. In *Heller*, after all, the

Mayor's spokesperson, the Deputy Mayor, and even the city's attorney at oral argument were not acknowledged by the defense as representative of the city. Counsel's sole objective in naming Mayor Daley as a party defendant was to avoid such questions from arising in the first instance and thus assure the availability of complete relief.

Balanced against the potential benefits of having Mayor Daley as a defendant, counsel could see no inconvenience to the Court, to opposing counsel, or even to Mayor Daley stemming from his being named in the lawsuit. There being no apparent conflict between the defendants, plaintiffs expect that the two defendants would be represented jointly, in the same pleadings, by the same attorneys. The Mayor's presence in the case does not expand the legal issues to be considered. Nor is the Mayor expected to devote any more time to this litigation than might be required of him were he not named as a defendant.

The Complaint seeks no damages from Mayor Daley. And given the nature of the case, Plaintiffs do not anticipate the need to take any discovery, certainly not of the Mayor, although Defendants' litigating posture is unknown at this time. Plaintiffs also do not foresee this case requiring the Mayor's attendance in court proceedings, which are not expected to include a trial as the case presents purely questions of law. In short, Mayor Daley's inclusion in the lawsuit is not expected to have any personal impact on him at all. Certainly, none was intended.

The Court would be correct in concluding that Mayor Daley's inclusion as a defendant is unnecessary were the Court prepared to accept that the Mayor's relevant statements and conduct reflect the official policy of the City of Chicago. The city, after all, can only act through its officers and employees. Counsel readily acknowledge that this point may appear quite obvious, and respectfully ask only that the Court understand the decision to sue a mayor in a Section 1983

case against a city – a decision made frequently by civil rights lawyers throughout the country without incident – was born of a different experience, and nothing more.

Having advised the Court of the rationale underlying the decision to include Mayor Daley as a party defendant, plaintiffs do not object to whatever decision the Court makes in this regard in the exercise of its discretion.

Finally, Plaintiffs note this litigation reflects, at most, a policy disagreement with the Mayor concerning the application of the Second and Fourteenth Amendments. This litigation should not be construed as any personal commentary on Mayor Daley or any other city official. Plaintiffs and counsel well-recognize that reasonable people of good will may and do legitimately disagree as to the various public policy issues that might be raised by this action. We have no personal knowledge of the Mayor, and no particular grievance against him or the city. This lawsuit merely questions certain customs, policies, and practices that we believe in good faith to be unconstitutional.

Dated: July 2, 2008

Respectfully submitted,

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
*Pro Hac Vice* Application Pending

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By: /s/David G. Sigale/
David G. Sigale

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| Plaintiffs, | ) | |
| | ) | No. 08 CV 3645 |
| v. | ) | |
| CITY OF CHICAGO and MAYOR RICHARD M. DALEY, | ) | |
| Defendants. | ) | |

**CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING**

The undersigned certifies that:

1. On July 2, 2008, the Plaintiffs' Response To Order of June 27, 2008 was electronically filed with the District Court Clerk *via* CM/ECF filing system;

2. Pursuant to FRCP 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

/s/ David G. Sigale
Attorney for Plaintiffs

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
*Pro Hac Vice* Application Pending

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| Plaintiffs, | ) | No. 08 CV 3645 |
| v. | ) | |
| CITY OF CHICAGO and MAYOR RICHARD M. DALEY, | ) | |
| Defendants. | ) | |

**LR 3.2 NOTIFICATION OF AFFILIATES**

Pursuant to Local Rule 3.2 of the Rules of the United States District Court for the Northern District of Illinois, Plaintiff, Second Amendment Foundation, Inc., a non-profit corporation, hereby states that it has no publicly held affiliates.

Respectfully submitted,

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
*Pro Hac Vice* Application Pending

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By: ___/s/David G. Sigale________
David G. Sigale

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| Plaintiffs, | ) | No. 08 CV 3645 |
| v. | ) | |
| CITY OF CHICAGO and MAYOR RICHARD M. DALEY, | ) | |
| Defendants. | ) | |

**<u>LR 3.2 NOTIFICATION OF AFFILIATES</u>**

Pursuant to Local Rule 3.2 of the Rules of the United States District Court for the Northern District of Illinois, Plaintiff, Illinois State Rifle Association, a non-profit corporation, hereby states that it has no publicly held affiliates.

Respectfully submitted,

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
*Pro Hac Vice* Application Pending

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By: ___/s/David G. Sigale________
David G. Sigale

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.1**
**Eastern Division**

Otis McDonald, et al.
Plaintiff,
v.
Case No.: 1:08−cv−03645
Honorable Milton I. Shadur
City of Chicago, et al.
Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Monday, July 7, 2008:

MINUTE entry before the Honorable Milton I. Shadur:Enter Memorandum Order. Accordingly this court declines any invitation to revisit its June 27 memorandum order.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OTIS McDONALD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08 C 3645 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM ORDER

Counsel for plaintiffs in this action have filed their "Response to Order of June 27, 2008," seeking to explain their reason for having included Mayor Richard M. Daley as well as the City of Chicago as a defendant in their recently-filed Complaint (this Court's sua sponte memorandum order had dismissed Mayor Daley from the lawsuit). Although the Response concludes by voicing no objection to whatever this Court ultimately decides in that respect, this brief memorandum order is issued to explain why both the original Complaint and the Response appear to reflect a misunderstanding of 42 U.S.C. §1983 ("Section 1983") jurisprudence.

It is of course true that Mayor Daley is a "person" for Section 1983 purposes--the failure of a putative defendant to fit into that concept typically impacts only on the state and its agencies (Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989)). But any notion that "naming mayors and cities both as defendants in civil rights actions is accepted practice"

(Response at 1) is not itself a predicate for targeting Mayor Daley here--that general notion is basically at odds with the teaching of Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 691 (1978) and its almost innumerable progeny, which ground Section 1983 liability solely on a defendant's direct involvement, rather than on respondeat superior principles.

Despite such pejorative characterizations in connection with Chicago-style politics as "King Daley" (a label more often attached to the first Mayor Richard Daley than to the present incumbent), the legal control of Chicago's government is not essentially vested in its Mayor.  When the Illinois Municipal Code was revamped and codified in 1961, the one provision of the Revised Cities and Villages Act of 1941 that was not repealed was its Article 21 dealing with the City of Chicago, which was retained and is now found at 65 ILCS 20/0.01 et seq.  Nothing in that statute appears to place the matters that are the subject of plaintiffs' Complaint within Mayor Daley's purview.

Hence whatever may be the case as to the mayors of cities elsewhere in the United States, or of Illinois cities other than Chicago, to this Court's knowledge the matters that form the gravamen of the present Complaint are not powers vested in Mayor Daley.  It should be remembered that Section 1983 liability is generally imposed only on municipal "decisionmakers" (see, e.g.,

this Court's opinion in Limes-Miller v. City of Chicago, 773 F.Supp. 1130, 1136 (N.D. Ill. 1991)). And so far as this Court is aware, the situation here is not of the type that brings into play the variant on that doctrine described in Auriemma v. Rice, 987 F.2d 397, 399 (7th Cir. 1992).

Accordingly this Court declines any invitation to revisit its June 27 memorandum order. Moreover, it agrees with the ultimate conclusion on the part of plaintiffs' counsel that with the City of Chicago itself in the case and capable of being fully responsive if plaintiffs prevail, no useful purpose would appear to be served by retaining Mayor Daley as a codefendant.

Milton I. Shadur
Senior United States District Judge

Date: July 7, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| Plaintiffs, | ) | JUDGE SHADUR |
| v. | ) | MAGISTRATE JUDGE SCHENKIER |
| CITY OF CHICAGO and MAYOR RICHARD M. DALEY, | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S ANSWER**
**TO PLAINTIFFS' COMPLAINT, DEFENSE, AND JURY DEMAND**

Defendant City of Chicago ("City"), by and through its attorney, Mara S. Georges, Corporation Counsel for the City of Chicago, hereby submits its Answer to Plaintiffs' Complaint, its Defense, and its Jury Demand.[1]

## ANSWER

### THE PARTIES

1. Plaintiff Otis McDonald is a natural person and a citizen of the United States, residing in Chicago, Illinois. Mr. McDonald resides in a high-crime neighborhood and is active in community affairs. As a consequence of trying to make his neighborhood a better place to live, Mr. McDonald has been threatened by drug dealers.

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, all but the first sentence of this paragraph is stricken. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1.

---

[1] The Court's Memorandum Orders of June 27, 2008 and July 7, 2008 indicate that Mayor Daley has been dismissed as a defendant. Until such time as a minute order is entered to that effect, Mayor Daley, in an abundance of caution, hereby adopts the City's Answer, Defense, and Jury Demand in their entirety.

2. Plaintiff Adam Orlov is a natural person and a citizen of the United States, residing in Chicago, Illinois. Mr. Orlov is a former Evanston, Illinois, police officer. As a police officer, Mr. Orlov was entrusted with a handgun for the purpose of defending himself and others from violent crime.

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, all but the first sentence of this paragraph is stricken. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 2.

3. Plaintiff Colleen Lawson is a natural person and a citizen of the United States, residing in Chicago, Illinois. Ms. Lawson's home has been targeted by burglars.

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, all but the first sentence of this paragraph is stricken. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3.

4. Plaintiff David Lawson is a natural person and a citizen of the United States, residing in Chicago, Illinois. Mr. Lawson's home has been targeted by burglars.

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, all but the first sentence of this paragraph is stricken. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4.

5. Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 600,000 members and supporters nationwide, including many in Chicago. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. SAF brings this action on behalf of itself and its members.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5.

6. Plaintiff Illinois State Rifle Association ("ISRA") is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 17,000 members and supporters in Illinois, including many in Chicago. The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation. ISRA brings this

action on behalf of itself and its members.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6.

7. Defendant City of Chicago is a municipal entity organized under the Constitution and laws of the State of Illinois.

**ANSWER:** The City admits the allegations contained in Paragraph 7.

8. Defendant Richard M. Daley is the Mayor of the City of Chicago, and as such is responsible for executing and administering the City of Chicago's laws, customs, practices, and policies. In that capacity, Mr. Daley is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in both his individual and official capacities.

**ANSWER:** Pursuant to the Court's Memorandum Orders of June 27, 2008 and July 7, 2008, this paragraph is stricken.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, the references in Paragraph 9 to 28 U.S.C. §§ 2201 and 2202 are stricken. The City admits that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. The City denies the remaining allegations contained in Paragraph 9.

10. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

**ANSWER:** The City admits the allegations contained in Paragraph 10.

## STATEMENT OF FACTS

11. Mr. McDonald lawfully owns a handgun, which he keeps outside the City of Chicago. Mr. McDonald presently intends to possess the handgun within his home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 11.

12.     Mr. McDonald applied for permission to possess a handgun within his Chicago home.  On June 13, 2008, that application was refused pursuant to the policies complained of in this action.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 12.

13.     Mr. McDonald fears arrest, criminal prosecution, incarceration, and fine if he were to possess a handgun within his home.

**ANSWER:**  The City is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 13.

14.     Mr. McDonald owns a shotgun which he keeps in his Chicago home.  This shotgun is lawfully registered pursuant to the Chicago Municipal Code.

**ANSWER:**  The City is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 14.

15.     Mr. McDonald fears arrest, criminal prosecution, incarceration, and fine if he were to continue to possess the shotgun in his Chicago home without re-registering it annually as required by the Chicago Municipal Code.

**ANSWER:**  The City is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 15.

16.     Mr. Orlov lawfully owns a handgun, which he keeps outside the City of Chicago.  Mr. Orlov presently intends to possess the handgun within his home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

**ANSWER:**  The City is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 16.

17.     Mr. Orlov applied for permission to possess the handgun within his Chicago home.  On May 6, 2008, that application was refused pursuant to the policies complained of in this action.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17.

18. Mr. Orlov fears arrest, criminal prosecution, incarceration, and fine if he were to possess a handgun within his home.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18.

19. Ms. Lawson lawfully owns a handgun, which she keeps outside the City of Chicago. Ms. Lawson presently intends to possess the handgun within her home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19.

20. Ms. Lawson applied for permission to possess the handgun within her Chicago home. On January 3, 2008, that application was refused pursuant to the policies complained of in this action.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20.

21. Ms. Lawson fears arrest, criminal prosecution, incarceration, and fine if she were to possess a handgun within her home.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21.

22. Mr. Lawson lawfully owns a handgun, which he keeps outside the City of Chicago. Mr. Lawson presently intends to possess the handgun within his home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22.

23. Mr. Lawson applied for permission to possess the handgun within his Chicago

home.  On January 23, 2008, that application was refused pursuant to the policies complained of in this action.

**ANSWER:**  The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23.

24.     Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess a handgun within his home.

**ANSWER:**  The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24.

25.     Mr. Lawson owns various long arms which are kept in his Chicago home and are lawfully registered pursuant to the Chicago Municipal Code.

**ANSWER:**  The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25.

26.     Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to continue to possess these arms in his Chicago home without re-registering them annually as required by the Chicago Municipal Code.

**ANSWER:**  The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26.

27.     On May 4, 2008, the registration for one of Mr. Lawson's rifles, a K31, lapsed. The rifle thus became permanently unregisterable within the City of Chicago.  Mr. Lawson removed the rifle from his Chicago home and now keeps it outside the City of Chicago.

**ANSWER:** The City admits that section 8-20-200(c) of the Chicago Municipal Code states that "Failure to comply with the requirement for renewal of registration of a firearm shall cause that firearm to become unregisterable."  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 27.

28.     Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess the lapsed K31 rifle within his Chicago home.  Mr. Lawson presently intends to possess the K31 rifle within his home, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28.

29.     In 2007, Mr. Lawson applied to purchase a rifle from the federal Civilian Marksmanship Program ("CMP"). On October 18, 2007, Mr. Lawson was informed via email that his application was granted and the rifle would be delivered to his Chicago home. The Civilian Marksmanship Program requires that delivery be made to Mr. Lawson's Chicago home, because that is the address listed both in Mr. Lawson's driving license and Illinois Firearms Owner Identification Card.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29.

30.     On October 19, 2007, the CMP rifle arrived at the Lawson home via the U.S. Postal Service. Mr. Lawson thus had approximately a day's notice that he would be receiving the CMP rifle. Only upon receiving the CMP rifle could Mr. Lawson learn the gun's serial number, necessary to apply for a Chicago registration certificate for the firearm.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30.

31.     Mr. Lawson relocated the rifle outside of Chicago and, on November 30, 2007 applied to register the rifle. On December 11, 2007, that application was refused pursuant to the policies complained of in this action.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31.

32.     Mr. Lawson presently intends to possess the CMP rifle within his home, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action. Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess the CMP rifle within his home.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32.

33.     The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

**ANSWER:** The City admits that the Second Amendment to the United States Constitution states that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The City denies the remaining allegations contained in Paragraph 33.

34. At a minimum, the Second Amendment guarantees individuals a fundamental right to possess a functional, personal firearm, including a handgun, within the home.

**ANSWER:** The City denies the allegations contained in Paragraph 34.

35. The Fourteenth Amendment to the United States Constitution provides, in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**ANSWER:** The City admits that the Fourteenth Amendment to the United States Constitution contains the language quoted in Paragraph 35. The City denies the remaining allegations contained in Paragraph 35.

36. Chicago Municipal Code § 8-20-040(a) mandates that

> All firearms in the City of Chicago shall be registered in accordance with the provisions of this chapter. It shall be the duty of a person owning or possessing a firearm to cause such firearm to be registered. No person shall within the City of Chicago, possess, harbor, have under his control... or accept any firearm unless such person is the holder of a valid registration certificate for such firearm. No person shall, within the City of Chicago, possess, harbor, have under his control... or accept any firearm which is unregisterable under the provisions of this chapter.

**ANSWER:** The City admits that § 8-20-040(a) of the Chicago Municipal Code contains the language cited in Paragraph 36. The City denies that Paragraph 36 fully and completely cites the entirety of § 8-20-040(a). The City denies the remaining allegations contained in Paragraph 36.

37. Chicago Municipal Code § 8-20-050 provides: "No registration certificate shall be issued for any of the following types of firearms: . . .(c) handguns . . ." While Section 8-20-

050(c) provides exceptions for certain handguns owned prior to the law's effective date, and handguns owned by police officers, security personnel, and private detectives, the provision, in conjunction with Section 8-20-040, generally bars the private home possession of handguns by law-abiding adult citizens.

**ANSWER:** The City admits that § 8-20-050 of the Chicago Municipal Code contains the language cited in Paragraph 37. The City denies that Paragraph 37 fully and completely cites the entirety of § 8-20-050. The City denies the remaining allegations contained in Paragraph 37.

38. Chicago Municipal Code § 8-20-090(a) provides: "A registration certificate shall be obtained prior to any person taking possession of a firearm from any source."

**ANSWER:** The City admits the allegations in Paragraph 38.

39. Chicago Municipal Code § 8-20-200 provides:

(a) Every registrant must renew his registration certificate annually. Applications for renewal shall be made by such registrants 60 days prior to the expiration of the current registration certificate.

(b) The application for renewal shall include the payment of a renewal fee as follows:

1 firearm .... $20.00; 2-10 firearms .... 25.00; More than ten firearms .... 35.00

(c) Failure to comply with the requirement for renewal of registration of a firearm shall cause that firearm to become unregisterable.

(d) All terms, conditions and requirements of this chapter for registration of firearms shall be applicable to renewal or registration of such firearms.

(e) The renewal fee shall not be applicable to duty-related handguns of peace officers domiciled in the City of Chicago.

**ANSWER:** The City admits the allegations contained in Paragraph 39, except that the City denies that § 8-20-200(b) of the Chicago Municipal Code contains semicolons.

40. Many Chicago gun owners fail to re-register their firearms every year. Among these recently was Alderman Richard Mell, whose firearms became unregisterable when he failed to timely renew his registration certificates.

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, this paragraph

is stricken.

41. Accordingly, Alderman Mell proposed an ordinance amending the law to permit, for one month, lapsed guns to be re-registered if their owners had attempted to re-register their guns between May 1, 2007 and April 1, 2008, a period that would have covered his lapsed firearm registrations.

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, this paragraph is stricken.

42. Defendant Mayor Daley endorsed Mell's proposal, stating: "A lot of people go back and forth to their summer homes ... A lot of people move their shotguns. A lot of 'em are bird hunters, gun collectors. ... They move 'em back from Wisconsin, Michigan, [other] parts of Illinois."

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, this paragraph is stricken.

43. Defendant Mayor Daley added: "It's one time [for] one month . . . You want to have 'em register. There's nothing wrong with that . . . People want to just register. A lot of 'em bring 'em back from hunting trips. So, why not?"

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, this paragraph is stricken.

44. Speaking of Alderman Mell's desire to re-register his lapsed guns, Defendant Mayor Daley stated: "He has a home in Wisconsin. He brings 'em back and forth. He's not running out with a shotgun and hurting people."

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, this paragraph is stricken.

45. The proposed re-registration amnesty bill was passed by the Chicago City Council, with the amnesty period extended to 120 days. The fee for re-registering a lapsed firearm under the amnesty bill is $60.00.

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, this paragraph is stricken.

46. A first violation of Chicago's ban on the ownership or possession of unregistered

firearms within the home is punishable by a fine of "not less than $300.00, nor more than $500.00; or [incarceration] for not less than ten days nor more than 90 days or both." Chicago Municipal Code § 8-20-250. Subsequent violations are punishable by a fine of $500.00 and incarceration ranging from ninety days to six months. Id.

**ANSWER:** The City admits that § 8-20-250 of the Chicago Municipal Code states that "Any person who violates any provision of this chapter, where no other penalty is specifically provided, shall upon conviction for the first time, be fined not less than $300.00, nor more than $500.00; or be incarcerated for not less than ten days nor more than 90 days or both. Any subsequent conviction for a violation of this chapter shall be punishable by a fine of $500.00 and by incarceration for a term of not less than 90 days, nor more than six months." The City denies the remaining allegations contained in Paragraph 46.

**FIRST CAUSE OF ACTION - HANDGUN BAN**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

47. Paragraphs 1 through 46 are incorporated as though fully stated herein.

**ANSWER:** The City hereby incorporates its answers to Paragraphs 1-46, above.

48. The Second Amendment right is incorporated as against the states and their political subdivisions pursuant to the Due Process Clause of the Fourteenth Amendment.

**ANSWER:** The City denies the allegations contained in Paragraph 48.

49. The Second Amendment right to keep and bear arms is a privilege and immunity of United States citizenship which, pursuant to the Fourteenth Amendment, states and their political subdivisions may not violate.

**ANSWER:** The City denies the allegations contained in Paragraph 49.

50. Handguns, as a class of weapons, are "arms" whose possession by law-abiding adult citizens is protected by the Second Amendment right to keep and bear arms.

**ANSWER:** The City denies the allegations contained in Paragraph 50.

51. By banning handguns, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals,

including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**ANSWER:** The City denies the allegations contained in Paragraph 51. The City further denies that Plaintiffs are entitled to the relief sought in this Paragraph.

**SECOND CAUSE OF ACTION - RE-REGISTRATION REQUIREMENT
RIGHT TO KEEP AND BEAR ARMS
U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

52. Paragraphs 1 through 51 are incorporated as though fully stated herein.

**ANSWER:** The City hereby incorporates its answers to Paragraphs 1-51, above.

53. By requiring Plaintiffs to annually re-register each firearm, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**ANSWER:** The City denies the allegations contained in Paragraph 53. The City further denies that Plaintiffs are entitled to the relief sought in this Paragraph.

**THIRD CAUSE OF ACTION - PRE-ACQUISITION REGISTRATION REQUIREMENT
RIGHT TO KEEP AND BEAR ARMS
U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

54. Paragraphs 1 through 53 are incorporated as though fully stated herein.

**ANSWER:** The City hereby incorporates its answers to Paragraphs 1-53, above.

55. By requiring Plaintiffs to register all firearms prior to their acquisition, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**ANSWER:** The City denies the allegations contained in Paragraph 55. The City further denies that Plaintiffs are entitled to the relief sought in this Paragraph.

**FOURTH CAUSE OF ACTION - UNREGISTERABLE STATUS PENALTY**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

56. Paragraphs 1 through 55 are incorporated as though fully stated herein.

**ANSWER:** The City hereby incorporates its answers to Paragraphs 1-55, above.

57. By declaring specific firearms "unregisterable" as a penalty for not complying with registration requirements, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**ANSWER:** The City denies the allegations contained in Paragraph 57. The City further denies that Plaintiffs are entitled to the relief sought in this Paragraph.

**FIFTH CAUSE OF ACTION - UNREGISTERABLE STATUS PENALTY**
**EQUAL PROTECTION**
**U.S. CONST., AMEND. XIV, 42 U.S.C. § 1983**

58. Paragraphs 1 through 57 are incorporated as though fully stated herein.

**ANSWER:** The City hereby incorporates its answers to Paragraphs 1-57, above.

59. By declaring specific firearms "unregisterable" as a penalty for not complying with registration requirements, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**ANSWER:** The City denies the allegations contained in Paragraph 59. The City further denies that Plaintiffs are entitled to the relief sought in this Paragraph.

## PRAYER FOR RELIEF

Plaintiffs request judgment be entered in their favor and against Defendants as follows:

1. An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Chicago Municipal Code § 8-20-050(c), barring registration of handguns; Chicago Municipal Code § 8-20-200, requiring the annual renewal of firearms registrations; Chicago Municipal Code § 8-20-090, mandating that registration certificates for firearms be obtained prior to taking possession of a firearm; Chicago Municipal Code § 8-20-040, as applied to prohibiting possession of an unregistered firearm within a period of time reasonably necessary to obtain registration; and any custom, policy, or practice of deeming a firearm "unregisterable" for the sole reason that it has previously been not validly registered.

2. Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

3. Declaratory relief consistent with the injunction;

4 Costs of suit; and

5. Any other further relief as the Court deems just and appropriate. Dated: June 26, 2008.

**ANSWER:** The City denies that the Plaintiffs are entitled to the relief sought in the Prayer for Relief. The City further requests that judgment be entered in its favor and against Plaintiffs.

## DEFENSE - FAILURE TO STATE A CLAIM

1. The Complaint fails to state any claims upon which relief can be granted.

## JURY DEMAND

The City demands trial by jury.

Respectfully submitted,

Mara S. Georges, Corporation Counsel for
the City of Chicago

By: /s/ Andrew Worseck
Assistant Corporation Counsel

Michael A. Forti
Deputy Corporation Counsel
Mardell Nereim
Chief Assistant Corporation Counsel
Andrew W. Worseck
Assistant Corporation Counsel
William Macy Aguiar
Assistant Corporation Counsel
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230
Chicago, IL 60602
312-744-9010

Dated: July 16, 2008.

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the City of Chicago, hereby certifies that on July 16, 2008, he served a copy of the **Defendant City of Chicago's Answer to Plaintiffs' Complaint, Defense, and Jury Demand**, along with this certificate of service, on:

David G. Sigale
Law Firm of David G. Sigale, P.C.
Corporate West 1
4300 Commerce Court, Suite 300-3
Lisle, IL 60532

by electronic means pursuant to Electronic Case Filing (ECF), and on:

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314

by first class United States Mail, postage pre-paid, by placing them in the United States Mail box at 30 North LaSalle Street, Chicago, Illinois 60602.

/s/ Andrew Worseck

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.1**
**Eastern Division**

Otis McDonald, et al.

Plaintiff,

v.

Case No.: 1:08−cv−03645
Honorable Milton I. Shadur

City of Chicago, et al.

Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Friday, June 27, 2008:

MINUTE entry before the Honorable Milton I. Shadur: Defendant Richard M. Daley is dismissed from this action.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 3645 | **DATE** | 7/17/2008 |
| **CASE TITLE** | Otis McDonald vs. City of Chicago | | |

**DOCKET ENTRY TEXT**

A status hearing is set for August 22, 2008 at 9:00 a.m.

■[ For further details see text below.]

Notices mailed by Judicial staff.

**STATEMENT**

(Reserved for use by the Court)

## ORDER

This order is being entered shortly after the filing of the Complaint. Counsel for plaintiff(s) are ordered to cause a copy of this order to be delivered forthwith to each defendant in the same manner that process has been or is being served on such defendant.

There will be a status hearing--a "scheduling conference", as that term is used in attached Fed. R. Civ. P. ("Rule") 16(b), at 9:00 a.m. on August 22, 2008 (the "Status Hearing Date"). Counsel for plaintiff(s) and for each defendant that has been served with process or has appeared at least 28 days before that Status Hearing Date are ordered to meet not later than 14 days before the Status Hearing Date to comply with the provisions of attached Rules 26(f) and 26(a)© and this District Court's LR 26.1 (also attached). Counsel for the parties are urged to undertake serious settlement efforts before the scheduled Status Hearing when no major investment in counsel's time (and clients' money) has yet taken place. If such efforts are unsuccessful, counsel should be prepared to attend the scheduled Status Hearing prepared to discuss briefly their proposed discovery plan and other subjects appropriate for inclusion in the scheduling order as referred to in Rule 16(b).

Although this Court will not set a close-of-discovery scheduling order until both sides have a good sense of the time needed for that purpose, the parties are urged to join in setting their own target dates in that respect at their initial Rule 26(f) conference and to review those target dates regularly during the discovery process. Special attention must be given to the December 1, 2006 amendments to Rules 26(f), 26(a)(1), 34 and 45 that deal with electronically stored information (ESI) and that establish obligations for both lawyers and clients, and to the impact of the Rule 26 amendments on the scope of discovery under other provisions of Rule 26 (see Rules 26(a)(1), (b)(2) and (b)(5)). Counsel should also become familiar with the helpful Committee Notes dealing with the 2006 amendments.

If any party is unrepresented by counsel, that party must comply with this order personally.



(Revised 06/08)

## United States District Court Northern District of Illinois
## MOTION FOR LEAVE TO APPEAR PRO HAC VICE

| Case Title: | Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, et al<br>VS.<br>City of Chicago and Mayor Richard M. Daley | Plantiff(s)<br><br>Defendant(s) |
|---|---|---|
| Case Number: 08 CV 3645 | Judge: Shadur | |

I, Alan Gura hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

Plaintiffs McDonald, Orlov, Lawsons, Second Amdmnt. Found., ISRA by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | Date Admitted |
|---|---|
| Supreme Court of California | 12/01/95 |
| District of Columbia Court of Appeals | 01/06/97 |
| Supreme Court of Virginia | 11/04/04 |
| | |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
|---|---|---|
| | | |
| | | |
| | FILED | |
| | JUN 2 6 2008 TC | |

*If denied, please explain:
(Attach additional form if necessary)

Jun 26, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

**Has the applicant designated local counsel? Yes ◉ No ○**

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Case 1:08-cv-03645 Document 6 Filed 06/26/2008 Page 2 of 2

Has the applicant ever been:

| | | | | |
|---|---|---|---|---|
| **censured, suspended, disbarred, or otherwise disciplined by any court?** | **Yes** | ☐ | **No** | X |
| **or is the applicant currently the subject of an investigation of the applicant's professional conduct?** | **Yes** | ☐ | **No** | X |
| **transferred to inactive status, voluntarily withdrawn, or resigned from the bar of any court?** | **Yes** | ☐ | **No** | X |
| **denied admission to the bar of any court?** | **Yes** | ☐ | **No** | X |
| **held in contempt of court?** | **Yes** | ☐ | **No** | X |

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. **I declare** under penalty of perjury that the foregoing is true and correct.

5/23/08

Date

Signature of Applicant

| | | | |
|---|---|---|---|
| Applicant's Name | Last Name<br>Gura | First Name<br>Alan | Middle Name/Initial |
| Applicant's Law Firm | Gura & Possessky, PLLC | | |
| Applicant's Address | Street Address<br>101 N. Columbus Street | | Room/Suite Number<br>Ste 405 |
| | City<br>Alexandria | State<br>VA | ZIP Code<br>22314 | Work Phone Number<br>703.835.9085 |

**(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)**

(Fee Stamp)

PAID
JUN 26 2008 TC
4624009666
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**NOTE:** Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of this Court. The fee for admission to the General Bar is $100.00 The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

**ORDER**

IT IS ORDERED that the applicant herein may appear in the above-entitled case.

DATED: July 15, 2008

United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION, | ) | 08 CV 3645 |
| Plaintiffs, | ) | JUDGE SHADUR |
| v. | ) | MAGISTRATE JUDGE SCHENKIER |
| CITY OF CHICAGO and MAYOR RICHARD M. DALEY, | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S MOTION TO REASSIGN CASE AS RELATED**

Defendant City of Chicago ("City"), by and through its counsel, Mara S. Georges, Corporation Counsel of the City of Chicago, hereby respectfully moves the Court to reassign the case National Rifle Association of America, Inc., et al. v. City of Chicago, et al., No. 08 CV 3697, currently pending in this District before Judge Leinenweber (hereinafter "NRA v. Chicago"), to the calendar of this Court as a related case under Local Rule 40.4. A copy of the Complaint in NRA v. Chicago is attached hereto as Exhibit A. In support of this motion, the City states as follows:

1. On July 26, 2008, Plaintiffs filed the instant lawsuit. In a nutshell, Plaintiffs allege that various provisions of the City's Municipal Code regulating the ownership and/or possession of firearms violate the Second Amendment, as incorporated against the States by the Fourteenth Amendment. In particular, Plaintiffs challenge (1) the restrictions on the possession of handguns, Chicago Mun. Code §§ 8-20-040(a); 8-20-050(c); (2) the requirement that

permissible firearms be registered prior to an owner taking possession of the firearm, id. § 8-20-090(a); (3) the requirement that registrations for permissible firearms be renewed annually, id. § 8-20-200(a); and (4) the requirement that a firearm become unregisterable if its registration is not properly renewed, id. § 8-20-200(c). See Compl., ¶¶ 36-39, 47-57. Plaintiffs also raise an Equal Protection challenge to § 8-20-200(c). See Compl., ¶¶ 58-59.

2. On July 27, 2008, a different group of individual and organizational plaintiffs filed NRA v. Chicago against the City and Mayor Daley.[1] NRA v. Chicago contains three counts. Count I alleges (like the instant case) that the City's restrictions on the possession of handguns violate the Second Amendment, as incorporated against the States by the Fourteenth Amendment. Ex. A hereto, ¶¶ 20-22. Count II raises an Equal Protection challenge to those provisions. Id., ¶¶ 23-27. Finally, Count III raises a claim under 18 U.S.C. § 926A. That claim alleges that the statute preempts and invalidates certain of the City's requirements governing the transport of firearms into or through Chicago. Id., ¶¶ 28-31.

3. Local Rule 40.4(c) requires a motion for reassignment based on relatedness to be filed with the judge before whom the lowest-numbered case of the claimed related set is pending. A later-filed case may be reassigned based on relatedness to the calendar of a judge before whom an earlier-numbered case is assigned if two conditions are met: First, the two cases must be related within the meaning of Local Rule 40.4(a). A case is related under Local Rule 40.4(a) if one or more of the following conditions is met: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one or more of the classes involved in the

---

[1] The NRA v. Chicago complaint has not yet been served.

cases is or are the same. Second, each of the criteria for reassignment set forth in Local Rule 40.4(b) must be met. Those criteria are that: (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding.

4. The City respectfully submits that NRA v. Chicago should be reassigned to this calendar as related to the instant case pursuant to Local Rule 40.4. As to the criteria of Local Rule 40.4(a), common issues of fact or law pervade both suits. In particular, both suits raise the issue of whether the Second Amendment is incorporated against the States and their subdivisions by the Fourteenth Amendment. Moreover, both suits challenge the validity under the Second Amendment of various Municipal Code provisions regulating firearms. While the provisions challenged in each suit are not identical across the board, both suits challenge the restrictions on the possession of handguns. These issues will all require an analysis and application of the Supreme Court's recent decision in District of Columbia v. Heller, No. 07-290, 554 U.S. __, 2008 WL 2520816 (U.S. June 26, 2008). In addition, both suits challenge certain Municipal Code firearms provisions on Equal Protection grounds. And to the extent that discovery is taken of the City, that discovery will likely be, by and large, the same in both lawsuits.

5. Moreover, each of the criteria for reassignment set forth in Local Rule 40.4(b) is met. First, both cases are pending in the Northern District of Illinois. Second, the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort. In particular, judicial resources will be substantially conserved if a single judge addresses (i) the

constitutional issues, some of which may be significant, that are common to and pervade both suits, and (ii) all of the various Municipal Code provisions challenged between the two suits, rather than two judges addressing those provisions on a piecemeal basis. Third, as the instant case is not even a month old, it has not progressed to the point where reassignment of NRA v. Chicago would delay its resolution. Finally, given the commonality of issues, both cases are susceptible to resolution in a single proceeding.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the City respectfully requests that National Rifle Association of American, Inc., et al. v. City of Chicago, et al., No. 08 CV 3697, N.D. Ill., be reassigned to the calendar of this Court pursuant to Local Rule 40.4.

Respectfully submitted,

Mara S. Georges, Corporation Counsel for the City of Chicago

By: /s/ Andrew Worseck
Assistant Corporation Counsel

Michael A. Forti
Deputy Corporation Counsel
Mardell Nereim
Chief Assistant Corporation Counsel
Andrew W. Worseck
Assistant Corporation Counsel
William Macy Aguiar
Assistant Corporation Counsel
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230
Chicago, IL 60602
312-744-9010

Dated: July 22, 2008.

# <u>EXHIBIT A</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., DR. KATHRYN TYLER, ANTHONY BURTON, VAN F. WELTON, and BRETT BENSON, | ) | FILED: JUNE 27, 2008<br>08CV3697<br>JUDGE LEINENWEBER<br>MAGISTRATE JUDGE KEYS<br>EDA |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. |
| THE CITY OF CHICAGO and RICHARD M. DALEY, Mayor of the City of Chicago, | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiffs, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., DR. KATHRYN TYLER, ANTHONY BURTON, VAN F. WELTON and BRETT BENSON, by and through their attorneys, Stephen P. Halbrook, Ph. D. and Stephen A. Kolodziej (the latter of Brenner, Ford, Monroe & Scott, Ltd.), as and for their complaint against Defendants, THE CITY OF CHICAGO and RICHARD M. DALEY, Mayor, City of Chicago, state as follows:

1. This is an action to vindicate the rights of residents of Chicago, Illinois, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution, which guarantees the right of law-abiding citizens to keep handguns in the home for lawful defense of their families and other lawful purposes.

**PARTIES**

2. Plaintiff, National Rifle Association of America, Inc. (hereafter "NRA"), is a non-profit association incorporated under the laws of New York, with its principal place of business in Fairfax, Virginia. NRA has a membership of 4 million persons many of which reside in or travel

through Chicago, Illinois. The purposes of the NRA include the protection of the right of citizens to have firearms for the lawful defense of their families, persons, and property, and to promote public safety and law and order. NRA brings this action on behalf of itself and its members.

3. Plaintiffs, Dr. Kathryn Tyler ("Tyler"), Anthony Burton ("Burton"), Van F. Welton ("Welton") and Brett Benson ("Benson") are residents of Chicago, Illinois, citizens of the United States, and members of the NRA.

4. Numerous members of Plaintiff-NRA who are not residents of Chicago frequently travel through Chicago.

5. Defendant, Richard M. Daley (hereinafter "Daley") is the Mayor of the City of Chicago, which is his principal place of business. He is being sued in his official capacity. The City of Chicago is a political subdivision of the State of Illinois. Daley and the City of Chicago and their officers, agents and employees are sometimes hereinafter referred to as "Defendants".

**JURISDICTION**

6. Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of Illinois and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

7. This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

**BACKGROUND**

8. The City of Chicago prohibits possession of a firearm unless it is registered. Municipal Code of Chicago, § 8-20-040(a). "No registration certificate shall be issued for any of

the following types of firearms: . . . (c) Handguns . . . ." § 8-20-050(c). The only non-governmental exceptions are "Those validly registered to a current owner in the City of Chicago prior to the effective date of this chapter" in 1982, § 8-20-050(c)(I), and those owned by security personnel or private detective agencies. § 8-20-050(c)(2) & (3). "'Handgun' means a firearm designed to be held and fired by the use of a single hand, and includes a combination of parts from which such firearm can be assembled." § 8-20-030(k).

9.     The registration requirement, and hence the handgun prohibition, does not apply to: "Any nonresident of the City of Chicago participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction; provided, that such weapon shall be unloaded and securely wrapped and that his possession or control of such firearm is lawful in the jurisdiction in which he resides. . . ." § 8-20-040(b )(5).

10.     Any person possessing a firearm "shall have on his person or within his immediate custody a valid registration certificate for such firearm issued hereunder, which shall be exhibited for inspection to any peace officer upon demand." § 8-20-150. Failure to exhibit a registration certificate "shall be presumptive evidence that he is not authorized to possess such firearm" and "shall also be cause for the confiscation of such firearms." *Id.* A confiscated firearm, when not needed as evidence, must be destroyed. § 8-20-220.

11.     A first violation is punishable by a fine of not less than $300 or more than $500, and incarceration for not less than ten days or more than 90 days. A subsequent conviction is punishable by a fine of $500 and by incarceration of not less than 90 days or more than six months. § 8-20-250.

12.     Defendant Daley is responsible for enforcing the above provisions through law enforcement agencies under his direction and control.

13.     Defendant Daley and the law enforcement agencies that operate under his supervision have no legal duty to protect Chicago residents, including plaintiffs, from robbery, rape, murder, or any other crime.

## FACTS

14.     Plaintiffs, as well as thousands of members of Plaintiff-NRA, reside in Chicago. But for Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-250, and the enforcement thereof by Defendants, Plaintiffs and numerous such NRA members would forthwith (a) lawfully obtain handguns to keep at home for lawful purposes including self-protection and the protection of their families and loved ones and (b) transfer handguns which they lawfully store outside of Chicago to their homes.  Should they do so in violation of such provisions, they would be subject to arrest, prosecution, imprisonment, and fines.

15.     Plaintiffs, and thousands of members of Plaintiff-NRA, either travel through or need to travel through Chicago.  Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-250 and the enforcement thereof by Defendants subjects such persons who are otherwise lawfully transporting firearms to the threat of arrest, prosecution, imprisonment, and fines or requires them to travel on other routes to avoid arrest, prosecution, imprisonment, and fines.

16.     Plaintiff Welton wishes to obtain a handgun.  He is eligible under the laws of the United States and of the State of Illinois to possess firearms.  But for Municipal Code of Chicago, § 8-20-050(c), he would forthwith obtain and register a handgun to keep at home for self-protection.

17.     Plaintiff Burton is a tow truck driver.  Plaintiff Tyler is a veterinarian.  They lawfully own and store handguns outside the City of Chicago.  But for Municipal Code § 8-20-050(c), they would forthwith register their handguns and keep them at their residences in the City of Chicago for self-protection.

18. Plaintiff Benson wants to own a handgun but cannot as he has no place to store it outside of the City of Chicago. If allowed to possess a handgun in the City, he and others in his position could keep handguns in their homes for lawful defense from any unlawful, sudden, deadly attack by an intruder. However, Plaintiffs and others face arrest, prosecution, and incarceration should they possess an unregistered handgun in violation of Municipal Code of Chicago, § 8-20-050(c), § 8-20-040(a), and § 8-20-250. As a result of § 8-20-040(a), Defendants and their agents and employees refuse to register any handgun. But for § 8-20-040(a), members of NRA and the individual Plaintiffs would imminently obtain handguns and register them pursuant to § 8-20-040(a).

19. As a proximate cause of Municipal Code of Chicago, § 8-20-050(c), § 8-20-040(a), and § 8-20-250 and the enforcement thereof by Defendants and their agents and employees, Plaintiffs are subjected to irreparable harm in that they are unable to obtain handguns to protect themselves in their homes, subjecting them to endangerment from criminal intruders and violating their constitutional rights as set forth herein.

## COUNT I

## (Second and Fourteenth Amendments)

20. Paragraphs 1 through 19 are realleged and incorporated herein by reference.

21. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Fourteenth Amendment to the United States Constitution provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal

protection of the laws." The Second Amendment is applicable to the States and political subdivisions thereof through the Fourteenth Amendment.

22. Because Municipal Code of Chicago, § 8-20-050(c) requires all firearms to be registered, but § 8-20-040(a) prohibits the registration of any handgun, § 8-20-040(a) infringes on the right of the people, including Plaintiffs and members of Plaintiff-NRA, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution and is thus null and void.

WHEREFORE, Plaintiffs pray that the Court:

A. Enter a declaratory judgment that Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-040(b)(5), and 8-20-150 are null and void because such provisions infringe on the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution.

B. Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-040(b)(5), and 8-20-150.

C. Issue preliminary and permanent injunctions and a writ of mandamus requiring Defendants and their officers, agents, and employees to register handguns on behalf of Plaintiffs herein pursuant to Municipal Code of Chicago, §§ 8-20-050(c).

D. Grant such other and further relief as may be proper.

E. Award Plaintiffs attorneys' fees and costs.

**COUNT II**

**(Equal Protection)**

23. Paragraphs 1 through 22 are realleged and incorporated herein by reference.

24. The Fourteenth Amendment to the United States Constitution provides that no State shall deny to any person the equal protection of the laws.

25. Possession of handguns is prohibited to persons generally, including Plaintiffs and to members of Plaintiff-NRA. Municipal Code of Chicago, §§ 8-20-040(a), 8-20-050(c).

26. However, the following categories of persons are exempted from the prohibition:

(a) Handguns "validly registered to a current owner in the City of Chicago prior to the effective date of this chapter" in 1982, § 8-20-050(c)(1);

(b) Handguns owned by security personnel or private detective agencies, § 8-20-050(c)(2) & (3); and,

(c) Any nonresident of the City of Chicago participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction.... § 8-20-040(b)(5).

27. The above exemptions irrationally discriminate against all non-exempted persons, including Plaintiffs and members of Plaintiff-NRA, denying to them the equal protection of the laws, in violation of the Fourteenth Amendment.

WHEREFORE, Plaintiffs pray that the Court:

A. Enter a declaratory judgment that Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-040(b)(5), and 8-20-150 are null and void because such provisions violate the equal protection of the laws guaranteed by the Fourteenth Amendment.

B. Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-040(b)(5), and 8-20-150.

C. Issue preliminary and permanent injunctions and a writ of mandamus requiring Defendants and their officers, agents, and employees to register handguns on behalf of Plaintiffs herein pursuant to Municipal Code of Chicago, §§ 8-20-050(c).

D. Grant such other and further relief as may be proper.

E. Award Plaintiffs attorneys' fees and costs.

**COUNT III**

**(18 U.S.C. § 926A)**

28. Paragraphs 1 through 27 are realleged and incorporated herein by reference.

29. Plaintiffs and members of Plaintiff-NRA may lawfully transport firearms through the City of Chicago pursuant to the Firearms Owners' Protection Act of 1986 ("FOPA"), 18 U.S.C. § 926A, which provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

30. Chicago's registration requirement for firearms, and hence the handgun prohibition, does not apply to: "Any nonresident of the City of Chicago participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction; provided, that such weapon shall be unloaded and securely wrapped and that his possession or control of such firearm is lawful in the jurisdiction in which he resides . . . ." II Municipal Code of Chicago, § 8-20-040(b)(5). Chicago thus limits such transportation (a) to non-residents, precluding

residents who lawfully store unregistered firearms, including handguns, outside of Chicago from such transportation, and (b) to participation in recreational activities, precluding other lawful activities.

30. Moreover, Chicago provides that any person possessing a firearm "shall have on his person or within his immediate custody a valid registration certificate for such firearm issued hereunder, which shall be exhibited for inspection to any peace officer upon demand." § 8-20-150. Failure to exhibit a registration certificate "shall be presumptive evidence that he is not authorized to possess such firearm" and "shall also be cause for the confiscation of such firearms." *Id.* Persons lawfully transporting firearms through Chicago are thereby subject to arrest and prosecution.

31. The above provisions and the enforcement thereof by Defendants violate the entitlement of persons, including Plaintiffs and members of Plaintiff-NRA, to transport firearms pursuant to 18 U.S.C. § 926A, and are thus preempted and void.

WHEREFORE, Plaintiffs pray that the Court:

A. Enter a declaratory judgment that Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-040(b)(5), and 8-20-150 are null and void because such provisions are preempted by 18 U.S.C. § 926A.

B. Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Municipal Code of Chicago, §§ 8-20-050(c), 8-20-040(a), 8-20-040(b)(5), and 8-20-150.

C. Issue preliminary and permanent injunctions and a writ of mandamus requiring Defendants and their officers, agents, and employees to register handguns on behalf of Plaintiffs herein pursuant to Municipal Code of Chicago, §§ 8-20-050(c).

D.      Grant such other and further relief as may be proper.

E.      Award Plaintiffs attorneys' fees and costs.

Respectfully Submitted,

**NATIONAL RIFLE ASSOCIATION
OF AMERICA, INC.,**
Plaintiff

By:   s/  Stephen A. Kolodziej
        Stephen A. Kolodziej
        One of Its Attorneys

Local Counsel:
**Stephen A. Kolodziej**
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn Street
Suite 300
Chicago, Illinois 60602
Tel.:  312-781-1970
Fax:  312-781-9202

**Stephen P. Halbrook**
10560 Main Street
Suite 404
Fairfax, Virginia 22030
Tel.: 703-352-7276
Fax:  703-359-0938
(*Pro hac vice* application pending)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., DR. KATHRYN TYLER, ANTHONY BURTON, VAN F. WELTON, and BRETT BENSON, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. |
| THE CITY OF CHICAGO and RICHARD M. DALEY, Mayor of the City of Chicago, | ) | |

**LR 3.2 Notification Of Affiliates**

Pursuant to Local Rule 3.2 of the Rules of the United States District Court for the Northern District of Illinois, Plaintiff National Rifle Association of America, Inc., a non-profit corporation, hereby states that it has no publicly held affiliates.

s/ Stephen A. Kolodziej

Stephen A. Kolodziej
One of the Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION, | ) | Hon. Milton I. Shadur<br>Mag. Sidney I. Schenkier |
| Plaintiffs, | ) | 08-C-3645 |
| v. | ) | |
| CITY OF CHICAGO and MAYOR RICHARD M. DALEY, | ) | |
| Defendants. | ) | |

**MOTION FOR REASSIGNMENT**

NOW COME the DEFENDANTS, VILLAGE OF OAK PARK (the "Village") and DAVID POPE, President, by and through their attorneys Klein, Thorpe and Jenkins, Ltd., and hereby move this Court for reassignment of the case entitled *NRA, et al. v. Village of Oak Park, et al.*, No. 08-cv-3696, assigned to Judge Lefkow, with this case, entitled *McDonald v. City of Chicago*, No. 08-C-3645, pursuant to LR 40.4. A copy of the *NRA v. Village of Oak Park* case is attached hereto as *Exhibit A*. In support of their motion, the Defendants state:

1. The Plaintiffs filed the Complaint in the *NRA v. Village of Oak Park* case on June 27, 2008, and the case was assigned to Judge Lefkow, numbered 08-cv-3696. (*See Exhibit A*.)

2. Neither of the Defendants has yet been served in the *NRA v. Village of Oak Park* case.

3. The *NRA v. Village of Oak Park* case challenges several provisions of the Oak Park Municipal Code relating to handgun restrictions within the Village: (1) Section 27-1-1, prohibiting the possession of "guns and small arms of a size and character that may be concealed on or about the person, commonly known as handguns"; and (2) Section 27-2-1, restricting the manner of transport of rifles and shotguns in vehicles. (*See Exhibit A*.)

4. The *NRA* Plaintiffs plead three counts against the Oak ParkDefendants related to these ordinances: (1) that the Village's provisions violate their Second Amendment right to "keep and bear arms" (2) that the Village's provisions regarding rifles and shotguns irrationally discriminate in favor of hunters and theatre groups; and (3) that the Village's

provisions regarding weapon transport contradict the provisions set forth in the federal Firearms Owners' Protection Act of 1986 (18 U.S.C. § 926A).

5. The *McDonald v. City of Chicago* case, No. 08-cv-3645, was filed on June 26, 2008, and was assigned to Judge Shadur.

6. The *NRA v. City of Chicago* case, No. 08 C 3697 was filed on June 27, 2008, and was assigned to Judge Leinenweber.

7. On July 22, 2008, the City of Chicago moved this Court for reassignment of the *NRA v. City of Chicago* case to Judge Shadur's call with the *McDonald* case.

8. All three of these cases invoke the same issues of law, namely the application of the Second Amendment to the United States Constitution to local governments' gun control ordinances and equal protection challenges to those same gun control provisions.

9. These three cases also challenge local gun control ordinances as a violation of equal protection.

10. The two NRA cases also challenge the local gun control ordinances as preempted by the federal Firearms Owners' Protection Act of 1986.  18 U.S.C. § 926A.

11. Local Rule 40.4 governs the procedure for reassignment of cases for judicial economy within the Northern District of Illinois, Eastern Division.

12. As *McDonald v. City of Chicago* is the lowest numbered of these cases,  the Village has filed this motion before this Court in compliance with LR 40.4(a).

13. LR 40.4 requires two sets of conditions to be met by a party moving for reassignment: (1) relatedness (§ 40.4(a)) and (2) procedural efficiency (40.4(b)).

14. In order for a case to be "related," pursuant to LR 40.4, it must meet one of four criteria:

> (1) the cases involve the same property;
> (2) the cases involve *some of the same issues of fact or law*;
> (3) the cases grow out of the same transaction or occurrence; or
> (4) in class action suits, one or more of the classes involved in the cases is or are the same.

LR 40.4(a) (emphasis added).

15. The *NRA v. Village of Oak Park* case, the *McDonald v. City of Chicago* case, and the *NRA v. City of Chicago* case all involve substantially "the same issues of [. . .] law."

16. All three cases involve Second Amendment and equal protection claims against municipal gun regulations.  Moreover, both *NRA* cases involve challenges based upon the federal Firearms Owners' Protection Act of 1986.  18 U.S.C. § 926A.

17. In order for a case to meet the procedural efficiency requirements, it must meet each of four elements:

    (1) both cases are pending in this Court;
    (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;
    (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and
    (4) the cases are susceptible of disposition in a single proceeding.

    LR 40.4(b).

18. All three cases (*McDonald* and the two *NRA* cases) are pending in the Northern District of Illinois, Eastern Division. Because all three cases were filed on the heels of *District of Columbia v. Heller*, No. 07-290, 554 U.S. ____, 2008 WL 2520816 (U.S. June 26, 2008), they all three will involve similar legal arguments and similar litigation trajectories. *MacDonald* has just been answered by the City of Chicago on July 16, 2008, and the initial court status has not yet been held. Finally, these three cases involve legal interpretations of similar local gun control ordinances as they relate to the U.S. Constitution, thus making the three cases "*susceptible* of disposition in a single proceeding."

19. Thus, the entirety of the requirements for reassignment as described in LR 40.4 (subsections (a), (b) and (c)) would be met by the reassignment of *NRA v. Village of Oak Park* to this Court under *MacDonald v. City of Chicago*.

20. Moreover, the resources of the United States District Court for the Northern District of Illinois will be conserved with this requested reassignment of the Oak Park case under the prior-filed *McDonald v. City of Chicago* case with Judge Shadur.

WHEREFORE, for all the reasons stated above, the DEFENDANTS, VILLAGE OF OAK PARK and DAVID POPE, President, by and through their attorneys Klein, Thorpe and Jenkins, Ltd., hereby move this Court for reassignment under this case of the case entitled *NRA, et al. v. Village of Oak Park, et al.*, No. 08-cv-3696, assigned to Judge Lefkow, with the case entitled *McDonald v. City of Chicago*, No. 08-C-3645, pursuant to LR 40.4.

Respectfully submitted,

/s/ Jacob Karaca
One of Defendant's Attorneys

Lance C. Malina
Jacob Karaca
Klein, Thorpe and Jenkins, Ltd.
20 N. Wacker Dr., Suite 1660
Chicago, IL 60606-2903
312-984-6400

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED: JUNE 27, 2008
08CV3696
JUDGE LEFKOW
MAGISTRATE JUDGE ASHMAN
EDA

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ROBERT KLEIN ENGLER, and DR. GENE A. REISINGER, )

Plaintiffs, )

v. ) Civil Action No.

VILLAGE OF OAK PARK and DAVID POPE, President, )

Defendants. )

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiffs, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ROBERT KLEIN ENGLER and DR. GENE A. REISINGER, by and through their attorneys, Stephen P. Halbrook, Esq. and William N. Howard, Esq. (the latter of Freeborn & Peters LLP), as and for their complaint against Defendants, VILLAGE OF OAK PARK and DAVID POPE, its President, state as follows:

1. This is an action to vindicate the rights of residents of Oak Park, Illinois, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution, which guarantees the right of law-abiding citizens to keep handguns in the home for the lawful defense of their families and for other lawful purposes.

**PARTIES**

2. Plaintiff, National Rifle Association of America, Inc. (hereafter "NRA"), is a non-profit association incorporated under the laws of New York, with its principal place of business in Fairfax, Virginia. NRA has a membership of 4 million persons, some of which reside in or travel through Oak Park, Illinois. The purposes of the NRA include the protection of the right of citizens

to have firearms for the lawful defense of their families, persons, and property, and to promote public safety and law and order. NRA brings this action on behalf of itself and its members.

3. Plaintiff, Robert Klein Engler ("Engler"), is a resident of Oak Park, Illinois, a citizen of the United States, and a member of the NRA.

4. Plaintiff, Dr. Gene A. Reisinger ("Reisinger"), is a resident of Oak Park, Illinois, a citizen of the United States, and a member of the NRA.

5. Numerous members of Plaintiff NRA who are citizens of the United States but not residents of Oak Park frequently travel through Oak Park, Illinois.

6. Defendant, David Pope ("Pope"), is the President of the Village of Oak Park, which is his principal place of business. He is being sued in his official capacity.

7. Defendant, the Village of Oak Park, is a political subdivision of the State of Illinois. Pope and the Village of Oak Park and their officers, agents and employees are sometimes hereinafter referred to as "Defendants."

## JURISDICTION

8. Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of Illinois and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

9. This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND

10. The Village of Oak Park prohibits possession of a handgun. The Oak Park Municipal Code provides: "It shall be unlawful for any person to possess or carry, or for any person to permit another to possess or carry on his/her land or in his/her place of business any firearm . . . ." Oak Park Municipal Code, § 27-2-1. "FIREARMS: For the purpose of this Article firearms are: pistols, revolvers, guns and small arms of a size and character that may be concealed on or about the person, commonly known as handguns." § 27-1-1.

11. It is further unlawful "to carry" a rifle, shotgun, or firearm in a vehicle, or to permit another to do so in a vehicle one owns, "or about his/her person, except that a person may carry any rifle or shotgun when on his/her land or in his/her abode or fixed place of business . . . ." § 27-2-1. There is an exemption for licensed hunters or fishermen commuting with a rifle or shotgun to or from established game areas. § 27-2-1(H). Also exempt is the transportation of weapons "broken down in a nonfunctioning state and not immediately accessible," but if it is a firearm (handgun), the transportation must not originate or terminate in Oak Park. § 27-2-1(1).

12. None of the above provisions apply to "Licensed firearm collectors." § 27-2-1 (K). "LICENSED FIREARM COLLECTOR: Any person licensed as a collector by the Secretary of the Treasury of the United States under and by virtue of Title 18, United States Code, Section 923; provided however, that a copy of said license is filed with the Chief of Police." § 27-1-1.

13. Exempt from the handgun prohibition are: "Members of established theater organizations located in Oak Park and performing a regular performance schedule to the public, utilizing only blank ammunition in the discharge of weapons only during rehearsals, classes or performances; provided further that said organization maintains possession and control over these

weapons in a safe place with a designated member of the organization when the weapons are not in use. . . ." § 27-2-1 (L).

14. Violation is punishable with a fine of not more than $1,000 for the first offense and $2,000 for a subsequent offense. § 27-4-1 (A). Weapons involved in offenses are to be confiscated and destroyed. § 27-4-1 (C). A motor vehicle which a police officer has probable cause to believe contains a weapon in violation of the above is subject to seizure and impoundment, and may be released on payment of a $500 fine. § 27-4-4.

15. It is unlawful to sell or give away a "firearm" as defined, whether by a dealer or a single individual, without a license approved by the Chief of Police and the Village Manager. §§ 27-1-3, -4, -5. A firearm may only be transferred to law enforcement entities. § 27-1-2.

16. Defendant-Pope is responsible for enforcing the above provisions through law enforcement agencies under his direction and control.

17. Defendant-Pope and the law enforcement agencies that operate under his supervision have no legal duty to protect Oak Park residents, including Plaintiffs, from robbery, rape, murder, or any other crime.

## FACTS

18. Plaintiffs, Engler and Dr. Reisinger, as well as other members of Plaintiff NRA, reside in Oak Park. But for Oak Park Municipal Code, § 27-2-1, and the enforcement thereof by Defendant-Pope, Plaintiffs and numerous other NRA members who reside in Oak Park would forthwith (a) lawfully obtain handguns to keep at home for lawful purposes including self-protection and the protection of their families and loved ones and (b) transfer handguns which they lawfully store outside the jurisdiction to their homes. Should they do so in violation of such provisions, they would be subject to arrest, prosecution, imprisonment, and fines.

19.     Plaintiffs, and numerous members of Plaintiff NRA either travel through or need to travel through Oak Park.  Oak Park Municipal Code § 27-2-1, and the enforcement thereof by Defendant Pope, subjects such persons who are otherwise lawfully transporting firearms to the threat of arrest, prosecution, imprisonment, and fines or requires them to travel on other routes to avoid arrest, prosecution, imprisonment, and fines.

20.     Plaintiffs, Engler and Dr. Reisinger, lawfully own and store handguns outside the Village of Oak Park.  But for Oak Park Municipal Code § 27-2-1, they would forthwith keep their handguns at their residences in the Village of Oak Park.  But for Oak Park Municipal Code § 27-2-1, they have not brought their handguns into the Village of Oak Park so that they could be used for self-protection.

21.     Plaintiffs, Engler and Dr. Reisinger, and numerous members of Plaintiff NRA, wish to obtain and possess handguns to keep in their homes for lawful defense from any unlawful, sudden, deadly attack by an intruder and to lawfully transport their handguns through the Village of Oak Park.  However, individuals face arrest, prosecution, and incarceration should they possess a handgun in violation of Oak Park Municipal Code, § 27-2-1.  But for § 27-2-1, members of Plaintiff NRA would imminently obtain handguns pursuant to the laws of the United States and the State of Illinois.

22.     As a proximate cause of Oak Park Municipal Code § 27-2-1, and the enforcement thereof by Defendants and their agents and employees, Plaintiffs and members of Plaintiff NRA are subjected to irreparable harm in that they are unable to obtain handguns to protect themselves in their homes, subjecting them to endangerment from criminal intruders and violating their Constitutional rights as set forth herein.

**COUNT I**

**(Second and Fourteenth Amendments)**

23. Paragraphs 1 through 22 are realleged and incorporated herein by reference.

24. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Fourteenth Amendment to the United States Constitution provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Second Amendment is applicable to the States and political subdivisions thereof through the Fourteenth Amendment.

25. Because Oak Park Municipal Code, § 27-2-1 prohibits the possession of a handgun, it infringes on the right of the people, including Plaintiffs and members of Plaintiff NRA, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution and is thus null and void.

WHEREFORE, Plaintiffs pray that the Court:

A. Enter a declaratory judgment that Oak Park Municipal Code, § 27-2-1 is null and void because it infringes on the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution.

B. Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Oak Park Municipal Code, § 27-2-1.

C. Grant such other and further relief as may be proper.

D. Award Plaintiffs attorneys' fees and costs.

**COUNT II**

**(Equal Protection)**

26. Paragraphs 1 through 25 are realleged and incorporated herein by reference.

27. The Fourteenth Amendment to the United States Constitution provides that no State shall deny to any person the equal protection of the laws.

28. Possession of handguns is prohibited to persons generally, including Plaintiffs and members of Plaintiff NRA. Oak Park Municipal Code, § 27-2-1. However, the following categories of persons are exempted from the prohibition:

(a) "Licensed firearm collectors," § 27-2-1 (K); and,

(b) "Members of established theater organizations located in Oak Park and performing a regular performance schedule to the public," § 27-2-1 (L).

29. The above exemptions irrationally discriminate against all non-exempted persons, including Plaintiffs and members of Plaintiff NRA, denying to them the equal protection of the laws, in violation of the Fourteenth Amendment.

WHEREFORE, Plaintiffs pray that the Court:

A. Enter a declaratory judgment that Oak Park Municipal Code, § 27-2-1 is null and void because it, in conjunction with § 27-2-1(K) & (L), violates the equal protection of the laws guaranteed by the Fourteenth Amendment.

B. Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Oak Park Municipal Code, § 27-2-1.

C. Grant such other and further relief as may be proper.

D. Award Plaintiffs attorneys' fees and costs.

**COUNT III**

**(18 U.S.C. § 926A)**

30. Paragraphs 1 through 29 are realleged and incorporated herein by reference.

31. Plaintiffs and members of Plaintiff NRA may lawfully transport firearms through the Village of Oak Park pursuant to the Firearms Owners' Protection Act of 1986 ("FOPA"), 18 U.S.C. § 926A, which provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

32. However, Oak Park makes it unlawful to possess a handgun, or to carry a rifle, shotgun, or firearm in a vehicle, or to permit another to do so in a vehicle one owns. Oak Park Municipal Code, § 27-2-1. Exempted are: "Licensed hunters or fishermen while commuting to or from established game areas; provided, however, that this exemption shall not apply to the possession or carrying of 'firearms'" (handguns). § 27-2-1(H). Also exempt are: "Transportation of weapons broken down in a nonfunctioning state and not immediately accessible." § 27-2-1(1).

33. The Village of Oak Park thus limits transportation of rifles and shotguns to licensed hunters and fishermen and otherwise requires weapons to be broken down in a nonfunctioning state, contrary to 18 U.S.C. § 926A. Persons transporting rifles, shotguns, and handguns in compliance with § 926A through Oak Park are thereby subject to arrest and prosecution.

34. The above provisions and the enforcement thereof by Defendants violate the entitlement of persons, including Plaintiffs and members of Plaintiff NRA, to transport firearms, including rifles, shotguns, and handguns, pursuant to 18 U.S.C. § 926A, and are thus preempted and void.

WHEREFORE, Plaintiffs pray that the Court:

A. Enter a declaratory judgment that Oak Park Municipal Code, § 27-2-1 is null and void because it is preempted by 18 U.S.C. § 926A.

B. Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Oak Park Municipal Code, § 27-2-1.

C. Grant such other and further relief as may be proper.

D. Award Plaintiffs attorneys' fees and costs.

Respectfully Submitted,

**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ROBERT KLEIN ENGLER,** and **DR. GENE A. REISINGER,**
Plaintiff

BY: s/ William N. Howard
One of Their Attorneys

Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
(312) 360-6415

Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA 22030
(703) 352-7276
(*Pro Hac Vice pending*)

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.1**
**Eastern Division**

Otis McDonald, et al.

Plaintiff,

v.

Case No.: 1:08−cv−03645
Honorable Milton I. Shadur

City of Chicago, et al.

Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Friday, July 25, 2008:

MINUTE entry before the Honorable Milton I. Shadur:Motion to reassign case [22] is granted; Motion hearing held on 7/25/2008 regarding motion to reassign case[22] Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.1**
**Eastern Division**

Otis McDonald, et al.
Plaintiff,
v.
City of Chicago, et al.
Defendant.

Case No.: 1:08−cv−03645
Honorable Milton I. Shadur

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Tuesday, July 29, 2008:

MINUTE entry before the Honorable Milton I. Shadur:Motion to reassign case [24] is granted; Motion hearing held on 7/29/2008 regarding motion to reassign case[24]. Status hearing set for 9/26/2008 at 09:00 AM. The August 22 status date is vacated.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS MCDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION, | ) | Honorable Milton I. Shadur |
| Plaintiffs, | ) | Case No. 08-CV-3645 |
| v. | ) | |
| CITY OF CHICAGO, and MAYOR RICHARD M. DALEY, | ) | |
| Defendants. | ) | |

**MOTION TO VACATE ORDER**
**AND SET BRIEFING SCHEDULE**

Plaintiffs National Rifle Association of America, Inc., Robert Klein Engler, and Dr. Gene A. Reisinger ("NRA Plaintiffs"), by and through their counsel, Freeborn & Peters LLP, file this Motion to Vacate Order and Set Briefing Schedule, and in support hereof state as follows:

1. On July 23, 2008, the City of Oak Park ("Oak Park") filed a motion in this matter to have Case No. 08-CV-3696, (the "Oak Park Action") in which Oak Park is a defendant, reassigned to this Court (the "Reassignment Motion"). (Dkt. No. 24.) The NRA Plaintiffs are plaintiffs in the Oak Park Action. On the same day, Oak Park filed a Notice of Motion indicating that it had served the Reassignment Motion on counsel for the NRA Plaintiffs, William Howard, via facsimile and United States Mail. (Dkt. No. 25.) The Notice of Motion indicated that the Reassignment Motion would be presented to the Court on July 29, 2008 at 9:15 a.m. (*See id.*)

2. Mr. Howard did not receive the facsimile transmission of the Notice of Motion or the motion. (*See* Declaration of William N. Howard, at ¶ 3, 4, attached as Exhibit A.) Mr.

Howard received the mailed copies of the Notice of motion and the Reassignment Motion on July 29, 2008 at approximately 11:00 a.m. – after the hearing on the motion.  (*Id.* at ¶ 4.) Because Mr. Howard is not counsel of record in this action, and the NRA Plaintiffs are not parties to this action, Mr. Howard did not receive ecf notice of the Reassignment Motion.  (*Id.* at ¶ 4.)

3.      As a result of not receiving timely notice of the Reassignment Motion, Counsel for the NRA Plaintiffs did not attend the hearing on the motion and was not able to request an opportunity to brief and argue the motion.   Had the NRA Plaintiffs received notice of the Reassignment Motion, counsel would have appeared before the Court at the July 29 hearing and requested an opportunity to brief and argue the motion. (*Id.* at ¶ 5.)

4.      On July 29, 2008, the NRA Plaintiffs learned by speaking with counsel for Oak Park that the Court granted the Reassignment Motion without argument but stated that the NRA Plaintiffs would be granted an opportunity to move the Court to reconsider its ruling.

5.      The NRA Plaintiffs request an opportunity to brief and argue the Reassignment Motion because the ordinances at issue in Oak Park and Chicago have material differences and because the relief sought in the Oak Park case differs materially from the relief sought in this case.

WHEREFORE, the NRA Plaintiffs respectfully request that the Court vacate the order granting the Reassignment Motion and allow the NRA Plaintiffs 10 days to respond to that motion.

Dated: July 29, 2008

Respectfully submitted,

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ROBERT KLEIN ENGLER, and DR. GENE A. REISINGER

By: s/ William N. Howard

Local Counsel:

William N. Howard, Esq.
Daniel S. Dooley
**FREEBORN & PETERS LLP**
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6534

Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, Virginia 22030
(703) 352-7276
(*Pro Hac Vice* pending)

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS MCDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION, | ) | Honorable Milton I. Shadur |
| Plaintiffs, | ) | Case No. 08-C-3645 |
| v. | ) | |
| CITY OF CHICAGO, and MAYOR RICHARD M. DALEY, | ) | |
| Defendants. | ) | |

**DECLARATION OF WILLIAM N. HOWARD**

I, William N. Howard, under penalty of perjury, hereby declare that the following statements are true and correct based on my personal knowledge:

1. I am an attorney licensed to practice in the State of Illinois and before this Court.

2. I am a partner with the law firm of Freeborn & Peters LLP, 311 S. Wacker Drive, Suite 3000, Chicago, Illinois 60606. I am counsel of record for Plaintiffs in *NRA v. Oak Park*, No. 08-cv-3696.

3. I did not receive notice that the Village of Oak Park would be presenting its Motion for Reassignment on Tuesday, July 29, 2008 prior to the Motion being heard, nor did I receive a copy of the Motion.

4. I received a copy, via U.S. Mail, of the Notice of Motion and Motion this morning, July 29, 2008, at approximately 11:00 a.m., and after the 9:15 motion call. I did

not receive a faxed copy of the Notice of Motion. Because I am not counsel of record in, nor are my clients parties to, *McDonald v. City of Chicago*, 08-c-2645, I did not receive an ecf copy of the Notice of Motion.

5. Had I received timely notice of the Motion for Reassignment, I would have appeared before the Court at the motion call this morning to request a briefing schedule due to the fact that my clients, the Plaintiffs in *NRA v. Oak Park*, oppose the Motion for Reassignment.

William N. Howard

Dated: July 29, 2008

**CERTIFICATE OF SERVICE**

I, William N. Howard, an attorney, certify that I caused a copy of this Notice, and the attachment(s) described therein to be served upon the below named party(ies), via electronic filing and/or U.S. Mail as specified below, pursuant to the local rules of the Northern District of Illinois, at or before 5:00 p.m., on July 29, 2008:

*Via electronic filing*:

David G. Sigale
Law Firm of David G. Sigale, P.C.
Corporate West 1
4300 Commerce Court, Suite 300-3
Lisle, Illinois 60532

Lance C. Malina
Jacob Karaca
Klein, Thorpe and Jenkins, Ltd.
20 N. Wacker Drive – Suite #1600
Chicago, IL 60606-2903

*Via U.S. Mail and Facsimile*:

Alan Gura
Gura & Possessky, PLLC
101 North Columbus Street – Suite #405
Alexandria, VA 22314
Fax: 703-997-7665

Stephen A. Kolodziej (Counsel for Plaintiff in *NRA v. Chicago*, No. 08-cv-3697)
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn Street – Suite #300
Chicago, IL 60602
Fax: 312-781-9202

Michael A. Forti (Counsel for Defendants in *NRA v. Chicago*, No. 08-cv-3697)
Mardell Nerim
Andrew W. Worseck
William Macy Aguiar
City of Chicago Department of Law
30 N. LaSalle Street – Suite #1230
Chicago, IL 60602
Fax: 312-742-3925

/s/William N. Howard

1595643v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION,

Plaintiffs,

v.

CITY OF CHICAGO and MAYOR RICHARD M. DALEY,

Defendants.

No. 08 CV 3645

**FRCP RULE 12(f)(2) MOTION TO STRIKE CITY OF CHICAGO'S ANSWER TO PLAINTIFFS' COMPLAINT**

NOW COME the Plaintiffs, OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC. and ILLINOIS STATE RIFLE ASSOCIATION, by and through LAW FIRM OF DAVID G. SIGALE, P.C. and GURA & POSSESSKY, PLLC, their attorneys, and, pursuant to Rule 12(f)(2) of the Federal Rules of Civil Procedure (FRCP 12(f)(2)) move this honorable Court to strike the Defendant's Answer to the Plaintiffs' Complaint. In support thereof, Plaintiffs state as follows:

1. Plaintiffs filed the instant suit on June 26, 2008, asserting the Defendant's ban on handgun possession within the City limits, as well as certain pre-registration and re-registration requirements violate the Plaintiffs' individual rights under the Second Amendment to the United States Constitution.

2. Defendant filed an Answer to the Complaint on July 16, 2008, docketed as Document

18 in the Court file.

3. However, certain of Defendant's Answers violate Rule 8 of the Federal Rules of Civil Procedure (FRCP 8), which reads in relevant part:

> **Rule 8. General Rules of Pleading**
>
> . . .
>
> **(b) Defenses; Admissions and Denials.**
>
> . . .
>
> **(5) *Lacking Knowledge or Information.*** A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.
>
> **(6) *Effect of Failing to Deny.*** An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.

**<u>Answer to Paragraph 12</u>**

4. Plaintiffs alleged in Paragraph 12 that "Mr. McDonald applied for permission to possess a handgun within his Chicago home. On June 13, 2008, that application was refused pursuant to the policies complained of in this action."

5. Defendant answered the allegation by stating: "The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12."

6. A true and correct copy of Defendant's denial of Mr. McDonald's application to register a handgun, with personal information redacted, is filed today as Exhibit A to Plaintiffs'

Motion for Summary Judgment.

**Answer to Paragraph 14**

7. Plaintiffs alleged in Paragraph 14 that "Mr. McDonald owns a shotgun which he keeps in his Chicago home. This shotgun is lawfully registered pursuant to the Chicago Municipal Code."

8. Defendant answered the allegation, particularly the second sentence therein, by stating: "The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14."

9. A true and correct copy of Defendant's registration record of Mr. McDonald's shotgun is filed today as Exhibit B to Plaintiffs' Motion for Summary Judgment.

**Answer to Paragraph 17**

10. Plaintiffs alleged in Paragraph 17 that Plaintiff "Orlov applied for permission to possess the handgun within his Chicago home. On May 6, 2008, that application was refused pursuant to the policies complained of in this action."

11. Defendant answered the allegation by stating: "The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17."

12. A true and correct copy of Defendant's denial of Mr. Orlov's application to register a handgun, with personal information redacted, is filed today as Exhibit C to Plaintiffs' Motion for Summary Judgment.

**Answer to Paragraph 20**

13. Plaintiffs alleged in Paragraph 20 that Plaintiff Colleen "Lawson applied for

permission to possess the handgun within her Chicago home. On January 3, 2008, that application was refused pursuant to the policies complained of in this action."

14. Defendant answered the allegation by stating: "The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20."

15. A true and correct copy of Defendant's denial of Ms. Lawson's application to register a handgun, with personal information redacted, is filed today as Exhibit D to Plaintiffs' Motion for Summary Judgment.

**<u>Answer to Paragraph 23</u>**

16. Plaintiffs alleged in Paragraph 23 that Plaintiff David Lawson "Lawson applied for permission to possess the handgun within his Chicago home. On January 23, 2008, that application was refused pursuant to the policies complained of in this action."

17. Defendant answered the allegation by stating: "The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23."

18. A true and correct copy of Defendant City's denial of Mr. Lawson's application to register a handgun, with personal information redacted, is filed today as Exhibit E to Plaintiffs' Motion for Summary Judgment.

**<u>Answer to Paragraph 25</u>**

19. Plaintiffs alleged in Paragraph 25 that "Mr. Lawson owns various long arms which are kept in his Chicago home and are lawfully registered pursuant to the Chicago Municipal

Code."

20.     The Defendant answered the allegation by stating: "The City is without

knowledge or information sufficient to form a belief as to the truth of the allegations contained in

Paragraph 25."

21.     True and correct copies of Mr. Lawson's various gun registration certificates, with

personal information redacted, are filed today as Exhibit F to Plaintiffs' Motion for Summary

Judgment.

**Answer to Paragraph 27**

22.     Plaintiffs allege in Paragraph 27 that "On May 4, 2008, the registration for one of

Mr. Lawson's rifles, a K31, lapsed. The rifle thus became permanently unregisterable within the

City of Chicago. Mr. Lawson removed the rifle from his Chicago home and now keeps it outside

the City of Chicago."

23.     Defendant answered the allegation, particularly the first sentence contained

therein, by stating: "The City admits that section 8-20-200(c) of the Chicago Municipal Code

states that "Failure to comply with the requirement for renewal of registration of a firearm shall

cause that firearm to become unregisterable.  The City is without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 27."

**Answer to Paragraph 31**

24.     Plaintiffs allege in Paragraph 31 that: "Mr. Lawson relocated the [CMP] rifle

outside of Chicago and, on November 30, 2007 applied to register the rifle. On December 11,

2007, that application was refused pursuant to the policies complained of in this action."

25.     Defendant answered the allegations by stating: "The City is without knowledge or

information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31."

26. A true and correct copy of Defendant City's administrative denial of Mr. Lawson's appeal of the CMP rifle registration denial, with personal information redacted, is filed today as Exhibit G to Plaintiffs' Motion for Summary Judgment.

**ARGUMENT**

27. In all of the above-described allegations, Plaintiffs pled facts that are within the Defendant's knowledge and control; namely, whether the Plaintiffs applied to register certain firearms with the Defendant, and the disposition of those applications. This is particularly true since the Defendant acted on the various applications and, presumably, kept records of the applications and responses thereto. Therefore, under FRCP 12(f)(2) the Defendant's claims of ignorance as to these factual issues should be stricken and these allegations should be deemed admitted.

28. The Seventh Circuit addressed this very issue in *American Photocopy Equipment Company v. Rovico, Inc.*, 359 F.2d 745 (7th Cir. 1966), when in a patent dispute the plaintiff/counter-defendant claimed it lacked sufficient information to answer allegations the Court found were squarely within that party's knowledge. The court held that ". . . this failure of plaintiff to frankly reply on a matter, which it, as patent owner and manufacturer must have had within its knowledge, exhibits a lack of fairness which completely discredits its statement that it is without knowledge of or information sufficient to form a belief as to the truth of said averment of defendant . . . [we] hold that plaintiff has not in effect denied the aforesaid averment of defendant. Rule 8(b) affords no shelter to plaintiff, in view of the facts presented in Rovico's answer and counterclaim." *Id.* at 746-47.

29. The *American Photocopy* Court went on to note that "[u]nder comparable provisions of the Federal Rules of Civil Procedure, an answer asserting want of knowledge sufficient to form a belief as to the truth of facts alleged in a complaint does not serve as a denial if the assertion of ignorance is obviously sham. In such circumstances the facts alleged in the complaint stand admitted." *Id.* at 747 (quoting *Harvey Aluminum (Incorporated) v. N.L.R.B.*, 335 F.2d 749 (9th Cir. 1964)).

30. The Northern District has also addressed this issue on at least one occasion. In *Exchange National Bank of Chicago v. Brown*, 1985 WL 2274 (N.D.IL 1985), the Court held that "[a] denial based on lack of knowledge of information regarding matters of public record or general notice cannot be sustained because it cannot be said that the party denying the averment is without knowledge or information sufficient to form a belief as to the truth of such averment." *Exchange National Bank* at *2.

31. Applying the standard from the above cases to the instant situation, the Defendant cannot claim ignorance about public records over which it has control. Presumably, the Plaintiffs' firearm applications and responses are in a computer, or file cabinet, or other storage means in a City building, and the City simply decided not to look them up. That is not grounds for claiming ignorance, and it was disingenuous of the Defendants to so claim. Under FRCP 12(f)(2), the Defendant's Answers to the above-referenced allegations in the Plaintiffs' Complaint should be stricken, their denials held for naught, and the allegations should be deemed admitted for purposes of this litigation.

WHEREFORE, the Plaintiffs, OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC. and ILLINOIS STATE RIFLE ASSOCIATION, pray this honorable Court strike the Defendant's Answers to Paragraphs 12, 14, 17, 20, 23, 25, 27 and 31 of Plaintiff's Complaint, in whole or in part as described above. Plaintiffs also request any and all further relief as this Court deems just and proper.

Respectfully submitted,

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By: /s/David G. Sigale
David G. Sigale

By: /s/ Alan Gura
Alan Gura

Attorneys for Plaintiffs

**CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING**

The undersigned certifies that:

1. On July 31, 2008, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

2. Pursuant to FRCP 5, the undersigned faxed this document to Stephen A. Kolodziej, Lance C. Malina and Jacob Karaca. The undersigned certifies that, to his best information and belief, there are no other non-CM/ECF participants in this matter.

/s/ David G. Sigale
Attorney for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS McDONALD, et al., | ) | Case No. 08-CV-3645 |
| | ) | |
| Plaintiffs, | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MOTION FOR SUMMARY JUDGMENT**

**COME NOW** the Plaintiffs, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and through undersigned counsel, and move this Honorable Court pursuant to Fed. R. Civ. P. 56 for entry of summary judgment in their favor and against defendant City of Chicago, granting them injunctive and declaratory relief in accordance with Plaintiffs' Complaint.

Dated: July 31, 2008

Respectfully submitted,

Alan Gura (admitted pro hac vice)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

By: /s/ Alan Gura/
Alan Gura

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By: /s/ David G. Sigale/
David G. Sigale

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on July 31, 2008, he served a copy of the above **Motion for Summary Judgment**, **supporting Separate Statement, Exhibits, and Declarations,** and this certificate of service, on:

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230
Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF). Pursuant to FRCP 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

The undersigned also effect service of the foregoing on:

Stephen A. Kolodziej (Counsel for Plaintiffs in *NRA* v. *City of Chicago*, No. 08-3697)
Brenner, Ford, Monroe & Scott
33 N. Dearborn Street, Suite 300
Chicago, IL 60602
Fax: 312-781-9202

Stephen Halbrook (Counsel for Plaintiffs in *NRA* v. *City of Chicago*, No. 08-3697)
10560 Main Street, Suite 404
Fairfax, VA 22030
Fax: 703-359-0938

by facsimile and by first class United States Mail, postage pre-paid.

_______/s/David G. Sigale_______

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| OTIS McDONALD, et al., | ) Case No. 08-CV-3645 |
| | ) |
| Plaintiffs, | ) **MEMORANDUM OF POINTS** |
| | ) **AND AUTHORITIES IN** |
| v. | ) **SUPPORT OF PLAINTIFFS'** |
| | ) **MOTION FOR SUMMARY** |
| CITY OF CHICAGO, | ) **JUDGMENT** |
| | ) |
| Defendant. | ) |
| | ) |
| ______________________________ | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**COME NOW** the Plaintiffs, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and through undersigned counsel, and submit their memorandum of points and authorities in support of their motion for summary judgment.

Dated: July 31, 2008

Respectfully submitted,

Alan Gura (admitted pro hac vice)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By: /s/ Alan Gura/
Alan Gura

By: /s/ David G. Sigale/
David G. Sigale

Attorneys for Plaintiffs

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. The Right to Arms Secured by the Second Amendment is a Privilege Or Immunity Within the Meaning of the Fourteenth Amendment, Which the States Shall Not Abridge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. The Second Amendment Is Incorporated Under the Fourteenth Amendment's Due Process Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. The Challenged Laws Violate Plaintiffs' Right to Keep Arms . . . . . . . . . . . . . . . . . . . . . 13

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

Constitutional Provisions

U.S. Const. art. I, sec. 10. . . . . . . 7

U.S. Const. amend. II. . . . . . . passim

U.S. Const. amend. XIV. . . . . . . passim

Statutes

Chicago Mun. Code § 8-20-140. . . . . . . 14

Cases

*Barron ex rel. Tiernan* v. *Mayor of Baltimore*, 32 U.S. (7 Pet.) 243 (1833). . . . . . . 6, 7, 12

*Cameo Convalescent Center, Inc.* v. *Percy*, 800 F.2d 108 (7th Cir. 1986). . . . . . . 13

*Cruzan* v. *Dir., Mo. Dept. of Health*, 497 U.S. 261 (1990). . . . . . . 10

*District of Columbia* v. *Heller*, 554 U.S. ___, 128 S. Ct. 2783 (2008). . . . . 4, 8, 9, 10, 11, 12, 13

*Duncan* v. *Louisiana*, 391 U.S. 145 (1968). . . . . . . 9, 11

*EEOC* v. *Sears, Roebuck & Co.*, 417 F.3d 789 (7th Cir. 2005). . . . . . . 13

*Eisenstadt* v. *Baird*, 405 U.S. 438 (1972). . . . . . . 10

*Fox* v. *Ohio*, 46 U.S. (5 How.) 410 (1847). . . . . . . 12

*Gideon* v. *Wainright*, 372 U.S. 335 (1963). . . . . . . 6

*Lawrence* v. *Texas*, 539 U.S. 558 (2003). . . . . . . 10

*Miller* v. *Texas*, 153 U.S. 535 (1894). . . . . . . 11, 12

*Murdock* v. *Pennsylvania*, 319 U.S. 105 (1943). . . . . . . 14

*Murphy* v. *People*, 2 Cow. 815 (N.Y. 1824). . . . . . . 12

*Palko* v. *Connecticut*, 302 U.S. 319 (1937). . . . . . . 8

*People's Rights Org.* v. *City of Columbus*, 152 F.3d 522 (6th Cir. 1998). . . . . . . . . . . . . . . . . . . . 14

*Planned Parenthood* v. *Casey*, 505 U.S. 833 (1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Poe* v. *Ullman*, 367 U.S. 497 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Presser* v. *Illinois*, 116 U.S. 252 (1886). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Quilici* v. *Village of Morton Grove*, 695 F.2d 261 (7th Cir. 1982).. . . . . . . . . . . . . . . . . . . . . . 12, 13

*Rochin* v. *California*, 342 U.S. 165 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Saenz* v. *Roe*, 526 U.S. 489 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Scott* v. *Sandford*, 60 U.S. (19 How.) 393 (1857). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Silveira* v. *Lockyer*, 312 F.3d 1052 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1873).. . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8

*Twitchell* v. *Commonwealth*, 74 U.S. (7 Wall.) 321 (1869). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States* v. *Cruikshank*, 92 U.S. 542 (1876). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*United States* v. *Emerson*, 270 F.3d 203 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Zobel* v. *Williams*, 457 U.S. 55 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Scholarly Material

Akhil Reed Amar, THE BILL OF RIGHTS (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Akhil Reed Amar, *The Bill of Rights and the Fourteenth Amendment*, 101 Yale L.J. 1193 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Richard L. Aynes, *Constricting the Law of Freedom: Justice Miller, the Fourteenth Amendment, and the Slaughter-House Cases*, 70 Chi. Kent L. Rev. 627 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Michael Anthony Lawrence, *Second Amendment Incorporation Through the Privileges or Immunities and Due Process Clauses*, 72 Mo. Law. R. 1 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Laurence H. Tribe, *Taking Text and Structure Seriously: Reflections on Free-Form Method in Constitutional Interpretation*, 108 Harv. L. Rev. 1121 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Eugene Volokh, *State Constitutional Rights to Keep and Bear Arms*, 11 Tex. Rev. Law & Pol. 191 (2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Other Sources

Brief of Amici States Texas, et al., Supreme Court No. 07-290. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cong. Globe, 39th Cong., 1st Sess. (1866). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Cong. Globe, 42d Cong., 1st Sess. (1871). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Robert Channick, *Morton Grove repeals 27-year old gun ban*, Chicago Tribune (July 28, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## PRELIMINARY STATEMENT

But for the laws challenged in this action, plaintiffs would possess handguns in their homes. And while plaintiffs do not contest the constitutionality of gun registration *per se*, they seek to bring Chicago's gun registration program into compliance with constitutional standards.

The facts of this case are not subject to dispute. Nor can the challenged laws be thought compatible with the right to keep and bear arms. The only significant legal issue before the Court is whether the Second Amendment is binding upon state and local governmental entities through application of the Fourteenth Amendment. Plaintiffs submit that under any theory of Fourteenth Amendment incorporation, Chicago is bound to respect their rights under the Second Amendment. Plaintiffs are thus entitled to a summary judgment granting them injunctive relief.

## STATEMENT OF FACTS

Defendant City of Chicago generally bans the home possession of handguns by requiring that all firearms be registered, but refusing the registration of handguns. Statement of Material Fact ("SMF") 13. The individual plaintiffs have each tried to register a handgun for possession in their Chicago homes, but the city has denied each of plaintiffs' handgun registration applications per its handgun registration ban. SMF 14-17. Orlov and David Lawson's were also denied handgun registration because their handguns were acquired prior to submission of the registration forms. SMF 15, 17. Each individual plaintiff fears arrest, criminal prosecution, incarceration, and fine if he or she were to possess a handgun within the home. SMF 18. Each individual plaintiff presently intends to possess a handgun within the home for self-defense, but is prevented from doing so by the city's active enforcement of the handgun ban. SMF 19.

Defendant City mandates that all lawfully registered guns be re-registered each year. SMF 20.  If a registered gun is not timely re-registered, that particular gun becomes "unregisterable" and thus illegal to possess in Chicago.  SMF 21.  Plaintiff McDonald owns a shotgun lawfully registered pursuant to the Chicago Municipal Code.  SMF 22.  Mr. Lawson likewise owns various guns lawfully registered in the city.  SMF 23.  McDonald and Lawson fear arrest, criminal prosecution, incarceration, and fine if they were to possess their guns in Chicago without re-registering them annually.  SMF 24.

On May 4, 2008, the registration for one of Mr. Lawson's rifles, a K31, lapsed.  The rifle thus became permanently unregisterable within the City of Chicago.  SMF 25.  Mr. Lawson removed the rifle from his Chicago home and now keeps it outside the City of Chicago.  SMF 26. Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess the lapsed K31 rifle within his Chicago home without benefit of registration.  SMF 27.

Plaintiff Lawson is not the only Chicagoan who had inadvertently allowed his firearm registration to lapse and thus render his gun "unregisterable."  The phenomenon is responsible for a decline in the number of registered guns that does not reflect the true firearm population in the city.  SMF 28.  When Alderman Richard Mell had various firearms become unregisterable for lack of timely re-registration, he successfully sponsored an amnesty ordinance permitting the re-registration of lapsed firearms, for a limited time, upon payment of a fine.  SMF 29.  The amnesty ordinance does not repeal the re-registration requirement.  SMF 30.

The city also requires that all firearms be registered prior to their acquisition, lest they become unregisterable.  SMF 31.  At times, compliance with this requirement is not strictly possible.  In 2007, plaintiff David Lawson applied to purchase a rifle from the federal Civilian

Marksmanship Program ("CMP"). On October 18, 2007, Mr. Lawson was informed via e-mail that his application was granted and the rifle would be delivered to his Chicago home. SMF 32. The CMP requires that delivery be made to Mr. Lawson's Chicago home, because that is the address listed both in Mr. Lawson's driving license and Illinois Firearms Owner Identification Card. SMF 33.

On October 19, 2007, the CMP rifle arrived at the Lawson home via the U.S. Postal Service. SMF 34. Mr. Lawson thus had approximately a day's notice that he would be receiving the CMP rifle. Only upon receiving the CMP rifle could Mr. Lawson learn the gun's serial number, necessary to apply for a Chicago registration certificate for the firearm. SMF 35.

Mr. Lawson relocated the rifle outside of Chicago and, on November 30, 2007 applied to register the rifle. SMF 36. On December 11, 2007, that application was refused because Lawson did not effectuate registration of the rifle prior to taking possession of it. SMF 37. Mr. Lawson presently intends to possess the CMP rifle within his home, but is prevented from doing so only by the city's active enforcement of the pre-acquisition registration requirement and now unregisterable status of that firearm. SMF 38. Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess this rifle within his home. UMF 39.

Plaintiffs Second Amendment Foundation and Ilinois State Rifle Association each have individual members who are impacted by the challenged laws. SMF 6, 8. Vindication of the right to keep and bear arms is germane to these organizations' purposes. SMF 5, 7.

**SUMMARY OF ARGUMENT**

Applying Fourteenth Amendment incorporation tests to the Second Amendment right to keep and bear arms, there can be only one result: the Second Amendment applies to the states.

The right to keep and bear arms is among the privileges and immunities of United States citizenship which the states are forbidden from abridging. Indeed, the Fourteenth Amendment was intended and originally understood to stop the states' abridgement of the right to keep and bear arms. The Fourteenth Amendment's Privileges and Immunities Clause may have been given a wrong, parsimoniously narrow interpretation by the Supreme Court in *The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1873), but Second Amendment incorporation through that provision remains the most logical course of action. Considering the widely held view that the current Privileges or Immunities Clause jurisprudence is incorrect, and the recent suggestion by an Associate Justice of the Supreme Court that this doctrine be revisited, plaintiffs would in good faith urge that this precedent be reconsidered to better honor the original intent, meaning, and plain text of the Fourteenth Amendment.

Yet other precedent requires entry of judgment for plaintiffs. However *Slaughter-House* hampers incorporation through the Privileges or Immunities Clause, the Supreme Court's well-established doctrine of selective incorporation through the Fourteenth Amendment's Due Process Clause mandates that the City of Chicago respect its residents' Second Amendment rights.

Applying the Second Amendment to the challenged laws, the latter must yield. A ban on the home possession of handguns by law-abiding adults is clearly unconstitutional. *District of Columbia* v. *Heller*, 554 U.S. ___, 128 S. Ct. 2783, 2818 (2008). And while *Heller* did not purport to define the precise standard of review under which gun regulations must be examined in Second Amendment cases, Chicago's re-registration and pre-acquisition registration requirements, and "unregisterability" penalty, fail any possible standard of review.

## ARGUMENT

### I. THE RIGHT TO ARMS SECURED BY THE SECOND AMENDMENT IS A PRIVILEGE OR IMMUNITY WITHIN THE MEANING OF THE FOURTEENTH AMENDMENT, WHICH THE STATES SHALL NOT ABRIDGE.

The Fourteenth Amendment provides, in pertinent part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, sec. 1, cl. 2. The Fourteenth Amendment Privileges or Immunities Clause was originally intended and understood to incorporate the Bill of Rights – including, specifically, the Second Amendment – as against the states. It should be given this effect today.

Plaintiffs acknowledge that this argument is foreclosed in this Court by *The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1873), holding that the Privileges or Immunities Clause guarantees only rights that flow from the existence of United States citizenship, such as the rights to diplomatic protection abroad or to access the navigable waterways of the United States. *Slaughter-House* may be binding law, but "'everyone' agrees the Court [has] incorrectly interpreted the Privileges or Immunities Clause." Richard L. Aynes, *Constricting the Law of Freedom: Justice Miller, the Fourteenth Amendment, and the Slaughter-House Cases*, 70 Chi. Kent L. Rev. 627 (1994); *see also* Laurence H. Tribe, *Taking Text and Structure Seriously: Reflections on Free-Form Method in Constitutional Interpretation*, 108 Harv. L. Rev. 1121, 1297 n. 247 (1995) ("*[T]he Slaughter-House Cases* incorrectly gutted the Privileges or Immunities Clause"); Akhil Reed Amar, *The Bill of Rights and the Fourteenth Amendment*, 101 Yale L.J. 1193, 1258-59 (1992). "Legal scholars agree on little beyond the conclusion that the Clause does not mean what the Court said it meant in 1873." *Saenz* v. *Roe*, 526 U.S. 489, 523 n.1 (1999) (Thomas, J. dissenting) (citations omitted). Indeed, Justice Thomas, joined by Chief Justice

Rehnquist, declared that he "would be open to reevaluating [the Privileges or Immunities Clause's] meaning in an appropriate case." *Saenz*, 526 U.S. at 528 (Thomas, J., dissenting).[1] This is an appropriate such case, considering that no modern court has considered the interplay between the Second Amendment, properly understood, and the Fourteenth Amendment.

Before the Civil War, the Supreme Court held that states were not bound by the Bill of Rights. *Barron ex rel. Tiernan* v. *Mayor of Baltimore*, 32 U.S. (7 Pet.) 243 (1833). *Barron* proved intolerable during Reconstruction. With recalcitrant southern states actively oppressing Americans just freed from slavery, Congress saw the need to constitutionally define American citizenship and imbue that citizenship with meaningful federal protection. Thus the Fourteenth Amendment's first section was designed to overrule two Supreme Court precedents. The first clause dispensed with *Scott* v. *Sandford*, 60 U.S. (19 How.) 393 (1857), which held that people of African descent could not be American citizens or citizens of American states. The Privileges or Immunities Clause was aimed squarely at overruling *Barron*.

"[I]n drafting section one," Fourteenth Amendment author Rep. John Bingham

> looked to *Barron* itself for guidance. Within the words of Chief Justice John Marshall he found clear instructions: "Had the framers of these amendments intended them to be limitations on the powers of the state governments, they would have imitated the framers of the original constitution, and have expressed that intention."

Michael Anthony Lawrence, *Second Amendment Incorporation Through the Privileges or Immunities and Due Process Clauses*, 72 Mo. Law. R. 1, 18 (2007) (hereafter "Lawrence")

---

[1]"Since the adoption of [the Fourteenth] Amendment, ten Justices have felt that it protects from infringement by the States the privileges, protections, and safeguards granted by the Bill of Rights . . . Unfortunately it has never commanded a Court. Yet, happily, all constitutional questions are always open." *Gideon* v. *Wainright*, 372 U.S. 335, 345-46 (1963) (Douglas, J., concurring) (citation omitted).

(quoting Cong. Globe, 42d Cong., 1st Sess. 84 App. (1871); *Barron*, 32 U.S. at 250). The opening words of the Privileges or Immunities Clause thus imitate directly the command of Article I, Section 10 referenced by *Barron*: "No state shall." Bingham made explicit that *Barron*'s suggestion was followed in order to bind the states. Id., at 18-19 and citations therein.

As for the privileges and immunities that "no state shall . . . abridge," these included, at a minimum, the Bill of Rights. "Congress in 1866 understood perfectly well that section one was intended to repudiate *Barron*. 'Over and over [John Bingham] described the privileges-or-immunities clause as encompassing 'the bill of rights' – a phrase he used more than a dozen times in a key speech . . .'" Lawrence, 72 Mo. L. Rev. at 19 (quoting Akhil Reed Amar, THE BILL OF RIGHTS 182 (1998) (hereafter "Amar"). The Fourteenth Amendment's Senate sponsor, Senator Jacob Howard, explained the Privileges or Immunities Clause's incorporating scope:

> To these privileges and immunities, whatever they may be – for they are not and cannot be fully defined in their entire extent and precise nature – to these should be added the personal right guarantied and secured by the first eight amendments of the Constitution; such as the freedom of speech, . . . *and the right to keep and to bear arms* . . . . The great object of the first section of this amendment is, therefore, to restrain the power of the States and compel them at all times to respect these great fundamental guarantees.

Cong. Globe, 39th Cong., 1st Sess. 2765-66 (1866) (emphasis added).

These and numerous other widely-reported congressional comments expressing the Fourteenth Amendment's repudiation of *Barron* were unopposed. Amar, at 186-87. Indeed, the Fourteenth Amendment's southern opponents understood that the Privileges or Immunities Clause incorporated the Bill of Rights, as did those who promoted the Fourteenth Amendment's ratification among the states. *See discussion in* Lawrence, at 22-27. And arguably, the right to keep and bear arms was the right whose incorporation was most urgently desired. "With respect

to the proposed [Fourteenth] Amendment, Senator Pomeroy described as one of the three "indispensable" "safeguards of liberty . . . under the Constitution" a man's "right to bear arms for the defense of himself and family and his homestead." *Heller*, 128 S. Ct. at 2811 (citing Cong. Globe, 39th Cong., 1st Sess., 1182 (1866)).

Accordingly, until *Slaughter-House*, it was perfectly understood by fans and foes of the Fourteenth Amendment alike that the Privileges or Immunities Clause incorporates the entire Bill of Rights as against the states – including the Second Amendment. For purposes of this motion, it suffices to note that *Slaughter-House*'s evisceration of the Privileges or Immunities Clause was wrong the day it was decided and remains wrong today.

## II. THE SECOND AMENDMENT IS INCORPORATED UNDER THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE.

*Slaughter-House* may have rendered the Privileges or Immunities Clause meaningless, but the Supreme Court would discover another approach to Fourteenth Amendment incorporation. It is now well-established that the amendment's Due Process Clause has a substantive dimension, and that deprivation of enumerated constitutional rights is thus largely incompatible with due process. Almost every provision of the Bill of Rights considered for incorporation in the modern era has been incorporated.

In the early days of incorporation, the Supreme Court explained that "immunities that are valid as against the federal government by force of the specific pledges of particular amendments have been found to be implicit in the concept of ordered liberty, and thus, through the Fourteenth Amendment, become valid as against the states." *Palko* v. *Connecticut*, 302 U.S. 319, 324-25 (1937). The Second Amendment, given its forceful command and basis in the inherent human

right of self-preservation, would surely pass this test. But the Supreme Court would settle on an analysis proven yet more amenable to incorporation. The modern incorporation test asks whether a right is "fundamental to the American scheme of justice," *Duncan* v. *Louisiana*, 391 U.S. 145, 149 (1968), or "necessary to an Anglo-American regime of ordered liberty," id., at 150 n.14. *Duncan*'s analysis suggested looking to the right's historical acceptance in our nation, its recognition by the states, any trend regarding state recognition, and the purpose behind the right.

The right to bear arms clearly meets the modern incorporation standard. "By the time of the founding, the right to have arms had become fundamental for English subjects." *Heller*, at 2798 (citations omitted). The violation of that right by George III "provoked polemical reactions by Americans invoking their rights as Englishmen to keep arms." Id., at 2799. The Second Amendment "codified a right inherited from our English ancestors." Id., at 2802 (citation omitted). Indeed, when the constitution was considered, demands for a bill of rights prevailed in five of seven constitutional ratifying conventions; the only provisions common to all bill of rights demands were freedom of religion and the right to arms. Forty-four of the fifty states secure a right to arms in their constitutions, and of these, fifteen are either new or strengthened since 1970. Eugene Volokh, *State Constitutional Rights to Keep and Bear Arms*, 11 Tex. Rev. Law & Pol. 191 (2006). And in *Heller*, thirty-two states advised the Supreme Court that the individual Second Amendment "is properly subject to incorporation." Brief of Amici States Texas, et al., Supreme Court No. 07-290, at 23 n.6.[2]

The Second Amendment's purpose confirms its incorporation. "The inherent right of self-defense has been central to the Second Amendment right." *Heller*, at 2818. Blackstone

---

[2]North Carolina joined the brief's 31 original signatories by letter.

described that right as preserving "'the natural right of resistance and self- preservation,' and 'the right of having and using arms for self-preservation and defence.'" *Heller*, at 2792 (citations omitted). The Supreme Court binds the states to respect unenumerated rights which, like the Second Amendment, are rooted in deference to personal autonomy. Observing that "no right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law," *Cruzan* v. *Dir., Mo. Dept. of Health*, 497 U.S. 261, 269 (1990) (citation omitted), the Supreme Court recognized a right to refuse life-sustaining medical care. Id., at 278; *see also Eisenstadt* v. *Baird*, 405 U.S. 438, 453 (1972) ("the right of the individual . . . to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child"); *Lawrence* v. *Texas*, 539 U.S. 558, 562 (2003) ("liberty of the person both in its spatial and more transcendent dimensions" supports right to consensual intimate relationships); *Rochin* v. *California*, 342 U.S. 165 (1952) (right of bodily integrity against police searches).

It is unfathomable that the states are constitutionally limited in their regulation of medical decisions or intimate relations, because these matters touch upon personal autonomy, but are unrestrained in their ability to trample upon the enumerated right to arms designed to enable self-preservation. If abortion is protected because "[a]t the heart of liberty is the right to define one's own concept of existence," *Planned Parenthood* v. *Casey*, 505 U.S. 833, 851 (1992), the right of armed self-defense against violent criminal attack is surely deserving of incorporation. Indeed, *Casey* invoked the second Justice Harlan's celebrated passage describing the liberty protected by the Due Process Clause as broader than "a series of isolated points pricked out in terms of the

taking of property; the freedom of speech, press, and religion; *the right to keep and bear arms*; the freedom from unreasonable searches and seizures; and so on." Id., at 848 (quoting *Poe* v. *Ullman*, 367 U.S. 497, 543 (1961) (Harlan, J., dissenting)) (emphasis added). Liberty cannot now be defined so narrowly as to exclude one of its more obvious attributes.

The Second Amendment also has another purpose, spelled out in the prefatory clause: preservation of the people's ability to act as militia. *Heller*, at 2800-01. The Amendment's framers believed this purpose was "necessary to the security of a free state." U.S. Const. amend. II. By its own terms, the Second Amendment secures a fundamental right.

Three Supreme Court decisions have rejected the Second Amendment's direct application to the states. But these holdings did not discuss Fourteenth Amendment incorporation.

> With respect to *Cruikshank*'s [*United States* v. *Cruikshank*, 92 U.S. 542 (1876)] continuing validity on incorporation, a question not presented by this case, we note that *Cruikshank* also said that the First Amendment did not apply against the States and did not engage in the sort of Fourteenth Amendment inquiry *required by our later cases*.

*Heller*, 128 S. Ct. at 2813 n.23 (emphasis added).

*Heller* noted that *Presser* v. *Illinois*, 116 U.S. 252 (1886) and *Miller* v. *Texas*, 153 U.S. 535 (1894) "reaffirmed that the Second Amendment applies only to the Federal Government." Id. But both these cases precede the incorporation era, and suffer from the same flaw that renders *Cruikshank* non-authoritative: an absence of the "required" modern incorporation analysis. *See also Duncan*, 391 U.S. at 155 (complete non-incorporation "a position long since repudiated"). *Miller*'s observation that the Second Amendment did not bind the states referenced the Fourth Amendment for the same proposition. *Miller*, 153 U.S. at 538. Clearly the city would not cite *Miller*'s language for the proposition that its police force need not obey the Fourth Amendment.

In any event, *Miller*'s non-incorporation language is dicta; the case was dismissed because the constitutional claims were not preserved at trial.  *Miller*, 153 U.S. at 537-38.

As for *Presser*, the Supreme Court in that case reasoned that the Second Amendment "is one of the amendments that has no other effect than to restrict the powers of the National government."  *Presser*, 116 U.S. at 265.  Among the other amendments suggested by *Presser* as not being incorporated are the First (citing *Cruikshank*), Fifth,[3] and Sixth.[4]  Id.  *Presser* relied upon cases that are clearly no longer authoritative, and failed to engage in the now-required incorporation analysis that would not be announced until deep into the following century.

The Seventh Circuit once reasoned that *Presser* precluded Second Amendment incorporation.  *Quilici* v. *Village of Morton Grove*, 695 F.2d 261 (7th Cir. 1982).  But *Quilici* has been all but overruled by *Heller*.  *Quilici*'s dicta that "the right to keep and bear handguns is not guaranteed by the Second Amendment," *Quilici*, 695 F.2d at 270 (footnote omitted), is no longer recognized as law.  As for *Presser*'s relevance to incorporation, *Quilici* noted that "appellants offer[ed] no authority, other than their own opinions, to support their arguments that *Presser* is no longer good law or would have been decided differently today."  *Quilici*, 695 F.2d at 270.

Times have changed.  As noted *supra*, the Supreme Court explained that *Cruikshank*, upon which *Presser* relied, did not "engage in the sort of Fourteenth Amendment inquiry required by our later cases."  *Heller*, at 2813 n.23.  *Quilici*'s refusal to consider "historical

---

[3]Takings Clause not incorporated, citing *Barron;* Double Jeopardy Clause not incorporated, citing *Fox* v. *Ohio*, 46 U.S. (5 How.) 410 (1847).

[4]Right to be informed of accusation not incorporated, citing *Twitchell* v. *Commonwealth*, 74 U.S. (7 Wall.) 321 (1869); right to criminal jury trial not incorporated, citing  *Murphy* v. *People*, 2 Cow. 815 (N.Y. 1824).

analysis of the development of English common law and the debate surrounding the adoption of the second and fourteenth amendments," *Quilici*, 695 F.2d at 270 n.8, key aspects of "the sort of inquiry" now "required" by *Heller*, at 2813 n.23, further undercut *Quilici*'s authority.

Since *Quilici*, two circuits concluded *Presser* had been overtaken by the incorporation doctrine. Judge Reinhardt, in elucidating the "collective right" theory rejected in *Heller*, agreed that *Presser* and *Cruikshank* "rest on a principle that is now thoroughly discredited." *Silveira* v. *Lockyer*, 312 F.3d 1052, 1066 n.17 (9th Cir. 2002) (citing *United States* v. *Emerson*, 270 F.3d 203, 221 n.13 (5th Cir. 2001)). After *Heller*, the Seventh Circuit would surely conduct a modern incorporation analysis, as should this Court. *Quilici* poses no obstacle. "Our decisions do not bind the district court when there has been a relevant intervening change in the law." *EEOC* v. *Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005) (citation omitted); *cf. Cameo Convalescent Center, Inc.* v. *Percy*, 800 F.2d 108, 110 (7th Cir. 1986). *Heller*'s limitation of *Cruikshank*, and instruction that modern incorporation analysis is required to resolve the issue of Second Amendment incorporation, constitute a relevant intervening change in the law. The Village of Morton Grove must understand *Quilici*'s limitations, as it just repealed its handgun ban in the face of a post-*Heller* challenge. Robert Channick, *Morton Grove repeals 27-year old gun ban*, Chicago Tribune (July 28, 2008).

**III. THE CHALLENGED LAWS VIOLATE PLAINTIFFS' RIGHT TO KEEP ARMS.**

Handgun bans of the sort at issue here clearly violate the Second Amendment. *Heller*, at 2818. With respect to the other challenged provisions, *Heller* made clear that the standard of review in Second Amendment cases should be one befitting other enumerated constitutional rights. *Heller*, at 2818 n.27. The Fifth Circuit employs a version of strict scrutiny, allowing

those laws that are "limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country." *Emerson*, 270 F.3d at 261. Regardless of the standard to be applied, the challenged laws fail.

Whatever the value of registration, the requirement that guns be constantly re-registered burdens gun ownership but serves no useful purpose. The city already mandates that registrants immediately notify police of any changes in their registration information, including loss or disposition of a gun or registration certificate. Chicago Mun. Code § 8-20-140. Moreover, "[a] state may not impose a charge for the enjoyment of a right granted by the Federal Constitution." *Murdock* v. *Pennsylvania*, 319 U.S. 105 (1943). The penalty for lapsed or improper registration rendering the subject firearm "unregisterable" is likewise unconstitutional. Whatever penalty the City might wish to impose for non-compliance with a registration scheme (within other constitutional limitations), permanently banning the gun at issue from lawful possession is an extreme, unwarranted deprivation of the right to keep arms.

But the non-registerability penalty is not merely a Second Amendment violation. The penalty violates the Equal Protection Clause as well, because the would-be registrant is fully capable of registering an identical firearm – just not the particular firearm whose registration lapsed or failed for some reason. The non-registerability penalty thus creates two classes of identical firearms: one which can be possessed, and one which cannot, and the only distinction between the two is that an item falling in the latter category was once subject to a registration failure. This is precisely the sort of classification held to violate the Equal Protection Clause, under a rational basis analysis, in *People's Rights Org.* v. *City of Columbus*, 152 F.3d 522, 532

(6th Cir. 1998) (unconstitutional to base registerability of firearms upon prior compliance with registration law). Of course, whatever the standard of review for equal protection analysis in cases touching upon Second Amendment rights, it must be now be higher than rational basis. *See Zobel* v. *Williams*, 457 U.S. 55, 60-61 (1982) (failing lowest standard, no need for testing higher standard). Defendant itself realized that the practice of rendering guns whose registration has lapsed "unregisterable" frustrates legitimate gun ownership, and that annual re-registration is so burdensome as to discourage compliance with the registration program.

The pre-acquisition registration requirement, at least as applied to plaintiffs, is likewise unconstitutional. The city has no valid interest regulating the acquisition of firearms outside its borders, and should not ban the registration of firearms lawfully acquired elsewhere if they are otherwise registerable. And as David Lawson's attempt to register a CMP rifle demonstrates, rigid application of the pre-acquisition rule can bar even innocuous activity. People should be afforded a reasonable opportunity to comply with the registration requirements.

**CONCLUSION**

Defendant is bound to respect Plaintiffs' Second Amendment rights by the Fourteenth Amendment. There being no factual dispute, Plaintiffs are entitled to summary judgment.

Dated: July 31, 2008

Respectfully submitted,

Alan Gura (admitted pro hac vice)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

By: /s/ Alan Gura/
Alan Gura

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By: /s/ David G. Sigale/
David G. Sigale
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on July 31, 2008, he served a copy of the above **Memorandum of Points and Authorities in Support of Motion for Summary Judgment**, and this certificate of service, on:

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230
Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF). Pursuant to FRCP 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

The undersigned also effect service of the foregoing on:

Stephen A. Kolodziej (Counsel for Plaintiffs in *NRA* v. *City of Chicago*, No. 08-3697)
Brenner, Ford, Monroe & Scott
33 N. Dearborn Street, Suite 300
Chicago, IL 60602
Fax: 312-781-9202

Stephen Halbrook (Counsel for Plaintiffs in *NRA* v. *City of Chicago*, No. 08-3697)
10560 Main Street, Suite 404
Fairfax, VA 22030
Fax: 703-359-0938

by facsimile and by first class United States Mail, postage pre-paid.

/s/David G. Sigale

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OTIS McDONALD, et al., | ) Case No. 08-CV-3645 |
| | ) |
| Plaintiffs, | ) **SEPARATE STATEMENT OF** |
| | ) **MATERIAL FACTS IN** |
| v. | ) **SUPPORT OF PLAINTIFFS'** |
| | ) **MOTION FOR SUMMARY** |
| CITY OF CHICAGO, | ) **JUDGMENT** |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**SEPARATE STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**COME NOW** the Plaintiffs, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and through undersigned counsel, and submit their separate statement of material facts as to which there is no genuine dispute in support of their motion for summary judgment.

Dated: July 31, 2008

Respectfully submitted,

Alan Gura (admitted pro hac vice)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By: /s/ Alan Gura/
Alan Gura

By: /s/ David G. Sigale/
David G. Sigale

Attorneys for Plaintiffs

**SEPARATE STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

THE PARTIES

| | Fact | | Support |
|---|---|---|---|
| 1. | Plaintiff Otis McDonald is a natural person residing in Chicago, Illinois. | 1. | McDonald Decl., Exh. A, B. |
| 2. | Plaintiff Adam Orlov is a natural person residing in Chicago, Illinois. | 2. | Orlov Decl., Exh. C. |
| 3. | Plaintiff Colleen Lawson is a natural person residing in Chicago, Illinois. | 3. | C. Lawson Decl., Exh. D. |
| 4. | Plaintiff David Lawson is a natural person residing in Chicago, Illinois. | 4. | D. Lawson Decl., Exh. E-G. |
| 5. | Plaintiff Second Amendment Foundation, Inc. is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 600,000 members and supporters nationwide, including many in Chicago. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. | 5. | Gottlieb Decl., ¶ 2. |
| 6. | The Second Amendment Foundation has individual members who are impacted by the laws challenged in this litigation. | 6. | Gottlieb Decl., ¶ 3. |
| 7. | Plaintiff Illinois State Rifle Association is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 17,000 members and supporters in Illinois, including many in Chicago. The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation. | 7. | Pearson Decl., ¶ 2. |

8. The Illinois State Rifle Association has individual members who are impacted by the laws challenged in this litigation.

8. Pearson Decl., ¶ 3.

9. Defendant City of Chicago is a municipal entity.

9. Answer, ¶ 7.

JURISDICTION

10. The Court has subject matter jurisdiction over this action as the claims present questions of federal law.

10. *See generally* Complaint; 28 U.S.C. §§ 1331, 1343.

11. The Court has personal jurisdiction over defendant City of Chicago as the city is located within the jurisdictional reach of the Court.

11. 28 U.S.C. § 93(a)(1).

VENUE

12. Venue is proper in this Court as the defendant is located within this judicial district, plaintiffs reside in this judicial district, and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

12. 28 U.S.C. § 1391; *see generally* Complaint; Answer, ¶ 10; Declarations and Exhibits to this motion.

MATERIAL FACTS

13. Defendant City of Chicago generally bans the home possession of handguns by requiring that all firearms be registered, but refusing the registration of handguns.

13. Chicago Mun. Code §§ 8-20-040; 8-20-050; Answer, ¶¶ 36, 37.

14. Plaintiff Otis McDonald applied to register a handgun for possession in his Chicago home, but was denied per the city's handgun ban.

14. McDonald Decl.,¶ 1; Exh. A

15. Plaintiff Adam Orlov applied to register a handgun for possession in his Chicago home, but was denied per the city's handgun ban and pre-acquisition registration requirement.

15. Orlov Decl., ¶ 1; Exh. C.

16. Plaintiff Colleen Lawson applied to register a handgun for possession in her Chicago home, but was denied per the city's handgun ban.

16. C. Lawson Decl., ¶ 1; Exh. D

| | | | |
|---|---|---|---|
| 17. | Plaintiff David Lawson applied to register a handgun for possession in his Chicago home, but was denied per the city's handgun ban and pre-acquisition registration requirement. | 17. | D. Lawson Decl., ¶ 1; Exh. D |
| 18. | Each individual plaintiff fears arrest, criminal prosecution, incarceration, and fine if he or she were to possess a handgun within the home. | 18. | McDonald Decl., ¶ 2; Orlov Decl., ¶ 2; C. Lawson Decl., ¶ 2; D. Lawson Decl., ¶ 2. |
| 19. | Each plaintiff presently intends to possess a handgun within the home for self-defense, but is prevented from doing so only by the city's active enforcement of the handgun ban. | 19. | McDonald Decl., ¶ 2, 3; Orlov Decl., ¶ 2; C. Lawson Decl., ¶ 2; D. Lawson Decl., ¶ 2. |
| 20. | Defendant city mandates that all registered guns be re-registered each year. | 20. | Chicago Mun. Code § 8-20-200; Answer, ¶ 39. |
| 21. | If a registered gun is not timely re-registered, that particular gun becomes "unregisterable" and thus illegal to possess in Chicago. | 21. | Chicago Mun. Code § 8-20-200(c); Answer, ¶ 39. |
| 22. | Plaintiff McDonald owns a shotgun lawfully registered pursuant to the Chicago Municipal Code. | 22. | McDonald Decl. ¶ 4; Exh. B. |
| 23. | Plaintiff David Lawson owns various guns lawfully registered pursuant to the Chicago Municipal Code. | 23. | D. Lawson Decl. ¶ 3; Exh. F. |
| 24. | Plaintiffs McDonald and David Lawson fear arrest, criminal prosecution, incarceration, and fine if they were to possess their guns in Chicago without re-registering them annually. | 24. | McDonald Decl., ¶ 4; D. Lawson Decl., ¶ 4. |
| 25. | On May 4, 2008, the registration for one of Mr. Lawson's rifles, a K31, lapsed. The rifle thus became permanently unregisterable within the City of Chicago. | 25. | D. Lawson Decl., ¶ 5. |
| 26. | Mr. Lawson removed the rifle from his Chicago home and now keeps it outside the City of Chicago. | 26. | D. Lawson Decl., ¶ 5. |

| | Fact | | Source |
|---|---|---|---|
| 27. | Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess the lapsed K31 rifle within his Chicago home without benefit of registration. | 27. | D. Lawson Decl., ¶ 5. |
| 28. | The unregisterability penalty and re-registration requirement have caused a decline in the number in the number of registered guns, such that the city's registry does not reflect the true firearm population in the city. | 28. | Fran Spielman, *Daley backs Mell's gun plan*, Chicago Sun-Times (May 21, 2008); Fran Spielman, *Aldermen extend amnesty to re-register guns in city*, Chicago Sun-Times (June 4, 2008); Hal Dardick, *Committee OKs gun registry changes*, Chicago Tribune (June 4, 2008). |
| 29. | When Alderman Richard Mell had various firearms become unregisterable for lack of timely re-registration, he successfully sponsored an amnesty ordinance permitting the re-registration of lapsed firearms upon payment of a fine. | 29. | Fran Spielman, *Daley backs* Sun-Times (May 21, 2008); Fran Spielman, *Aldermen extend amnesty to re-register guns in city*, Chicago Sun-Times (June 4, 2008); Hal Dardick, *Committee OKs gun registry changes*, Chicago Tribune (June 4, 2008). |
| 30. | The amnesty ordinance does not repeal the re-registration annual requirement. | 30. | Chicago City Clerk Document S02008-2626, Ordinance of June 11, 2008. |
| 31. | The city also requires that all firearms be registered prior to their acquisition, lest they become unregisterable. | 31. | Chicago Mun. Code § 08-20-090; Answer, ¶ 38; Exh. G. |
| 32. | In 2007, plaintiff David Lawson applied to purchase a rifle from the federal Civilian Marksmanship Program ("CMP"). On October 18, 2007, Mr. Lawson was informed via email that his application was granted and the rifle would be delivered to his Chicago home. | 32. | D. Lawson Decl., ¶ 6; Exh. G |

| | | | |
|---|---|---|---|
| 33. | The CMP requires that delivery be made to Mr. Lawson's Chicago home, because that is the address listed both in Mr. Lawson's driving license and Illinois Firearms Owner Identification Card. | 33. | D. Lawson Decl., ¶ 6; Exh. G |
| 34. | On October 19, 2007, the CMP rifle arrived at the Lawson home via the U.S. Postal Service. | 34. | D. Lawson Decl., ¶ 7; Exh. G |
| 35. | Mr. Lawson thus had approximately a day's notice that he would be receiving the CMP rifle. Only upon receiving the CMP rifle could Mr. Lawson learn the gun's serial number, necessary to apply for a Chicago registration certificate for the firearm. | 35. | D. Lawson Decl., ¶ 7; Exh. G |
| 36. | Mr. Lawson relocated the rifle outside of Chicago and, on November 30, 2007 applied to register the rifle. | 36. | D. Lawson Decl., ¶ 8; Exh. G |
| 37. | On December 11, 2007, that application was refused because Lawson did not effectuate registration of the rifle prior to taking possession of it. | 37. | D. Lawson Decl., ¶ 8; Exh. G |
| 38. | Mr. Lawson presently intends to possess the CMP rifle within his home, but is prevented from doing so only by the city's active enforcement of the pre-acquisition registration requirement and now unregisterable status of that firearm. | 38. | D. Lawson Decl., ¶ 10. |
| 39. | Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess the CMP rifle within his home. | 39. | D. Lawson Decl., ¶ 10. |



**City of Chicago / Department of Police**
Gun Registration Program
3510 S. Michigan Avenue, Room 1027
Chicago, Illinois 60653
(312) 745-5164

Richard M. Daley, Mayor
Jody P. Weis, Superintendent of Police

June 13, 2008

Mr. OTIS MCDONALD

Chicago, IL

Dear Mr. OTIS MCDONALD:

A review of your application and the records maintained by the Chicago Police Department indicate that you are ineligible to register the below referenced firearm. Pursuant to Chapter 8-20 of the Municipal Code of the City of Chicago, your firearm registration(s) are denied for the following reason:

---- Firearm cannot be registered pursuant to Municipal Code Section 8-20-050. Hanguns cannot be registered.

The following firearm(s) are affected by this notification:

| Registration Number | Make/Manufacturer | Model | Serial Number |
|---|---|---|---|
| **D007685L** | **Beretta Usa Corp** | **950** | **C74057** |

Pursuant to the Municipal Code Section 8-20-130, you may file a written request for hearing before the Mayor's License Commission. This request for hearing must be made in writing or by fax within 10 days after receipt of this notice. The request should be sent to:

Municipal Division Chief
Department of Administration Hearings
Municipal Hearings Division
740 N. Sedgwick, 2nd Floor
Chicago, IL 60610

The request can be faxed to (312) 742-8248

If you do not appeal this denial, you are directed to do one of the following: 1) peaceably surrender to the Chicago Police Department the firearm for which you were denied registration, or 2) remove your unregistered firearm(s) from the City of Chicago corporate limits within 10 days fo receiving this notification or within 3 days after notification of an unfavorable decision by the Mayor's License Commission, or 3) otherwise lawfully dispose of your interest in such firearm(s).

If the subject firearm has already been sold or transferred, complete the enclosed Firearm Dispositon Form(CPD-31.610) and mail the hard copy directly to the Gun Registration Program. If you are surrendering a firearm, you should call "911" and a police officer will pick up the weapon. The police officer will send the form to the Gun Registration Program. You Should retain the top copy of this form for your records.

Gun Registration Program
Chicago Police Department

Firearm Registration

Name: **MCDONALD ,OTIS**

1. Applicant Information ▸ 2.Firearms ▸ 3.Review

[ Save ] | [ Done ]

Steps: 2.Firearms

## Firearms

| | Registration No | Serial No | Firearm Make | Firearm Model | Firearm Type | Caliber | Barrel length | Registration Status |
|---|---|---|---|---|---|---|---|---|
| Edit | 171187 | N529976V | REMINGTON ARMS CO. | 1100 | SHOTGUN | 12 | 300 | Jessie W Jones Posted Aug 8th 04 EXPIRED ~~STOLEN~~ |
| Edit | D007319L | 1914545 | REMINGTON ARMS CO. | 552 | RIFLE | 22 | 23 | DENIED-MISCELLANEOUS DENIALS ✓ |
| Edit | D007321S | 70825 | SPANISH MILITARY | UNKNOWN | PISTOL | 32 | 5 | DENIED-NO FIREARM SOLD OR TRANSFERRED WITHI ✓ |
| Edit | D007685L | C74057 | BERETTA USA CORP | 950 | PISTOL | 22 | 9 | DENIED-NO HAND GUNS REGISTERED ✓ |
| Edit | R007358L | N771385 | WINCHESTER | 1400 | SHOTGUN | 20 | 27 | NEW REGISTRATION 12 JUN. 2008 |

row(s) 1 - 5 of 5

User: PC0M927
Module: 13420 $Revision: 1.110 $

Copyright © 2002, All rights reserved.

**City of Chicago / Department of Police**
Gun Registration Program
3510 S. Michigan Avenue, Room 1027
Chicago, Illinois 60653
(312) 745-5164

Richard M. Daley, Mayor
Jody P. Weis, Superintendent of Police

May 6, 2008

Mr. ADAM ORLOV

Chicago, IL

Dear Mr. ADAM ORLOV:

A review of your application and the records maintained by the Chicago Police Department indicate that you are ineligible to register the below referenced firearm. Pursuant to Chapter 8-20 of the Municipal Code of the City of Chicago, your firearm registration(s) are denied for the following reason:

---- Firearm cannot be registered pursuant to Municipal Code Section 8-20-050. Hanguns cannot be registered.

---- A registration certificate was not obtained prior to the applicant taking possession of the firearm in violation of 8-20-090. (filing time)

The following firearm(s) are affected by this notification:

| Registration Number | Make/Manufacturer | Model | Serial Number |
|---|---|---|---|
| **D007411S** | **S.I.G. (Swiss Industriel Gesellshaft),Sig-Arms,Sig-Sauer** | **P220** | **G247678** |

Pursuant to the Municipal Code Section 8-20-130, you may file a written request for hearing before the Mayor's License Commission. This request for hearing must be made in writing or by fax within 10 days after receipt of this notice. The request should be sent to:

Municipal Division Chief
Department of Administration Hearings
Municipal Hearings Division
740 N. Sedgwick, 2nd Floor
Chicago, IL 60610

The request can be faxed to (312) 742-8248

If you do not appeal this denial, you are directed to do one of the following: 1) peaceably surrender to the Chicago Police Department the firearm for which you were denied registration, or 2) remove your unregistered firearm(s) from the City of Chicago corporate limits within 10 days fo receiving this notification or within 3 days after notification of an unfavorable decision by the Mayor's License Commission, or 3) otherwise lawfully dispose of your interest in such firearm(s).

If the subject firearm has already been sold or transferred, complete the enclosed Firearm Dispositon Form(CPD-31.610) and mail the hard copy directly to the Gun Registration Program. If you are surrendering a firearm, you should call "911" and a police officer will pick up the weapon. The police officer will send the form to the Gun Registration Program. You Should retain the top copy of this form for your records.

Gun Registration Program
Chicago Police Department

**City of Chicago / Department of Police**
Gun Registration Program
3510 S. Michigan Avenue, Room 1027
Chicago, Illinois 60653
(312) 745-5164

Richard M. Daley, Mayor
Dana V. Starks, Interim Superintendent of Police

January 3, 2008

Ms. COLLEEN LAWSON

Chicago, IL

Dear Ms. COLLEEN LAWSON:

A review of your application and the records maintained by the Chicago Police Department indicate that you are ineligible to register the below referenced firearm. Pursuant to Chapter 8-20 of the Municipal Code of the City of Chicago, your firearm registration(s) are denied for the following reason:

--- Firearm cannot be registered pursuant to Municipal Code Section 8-20-050. Hanguns cannot be registered.

The following firearm(s) are affected by this notification:

| Registration Number | Make/Manufacturer | Model | Serial Number |
|---|---|---|---|
| **D006489S** | **Smith & Wesson** | **M&P** | **MPP8429** |

Pursuant to the Municipal Code Section 8-20-130, you may file a written request for hearing before the Mayor's License Commission. This request for hearing must be made in writing or by fax within 10 days after receipt of this notice. The request should be sent to:

Municipal Division Chief
Department of Administration Hearings
Municipal Hearings Division
740 N. Sedgwick, 2nd Floor
Chicago, IL 60610

The request can be faxed to (312) 742-8248

If you do not appeal this denial, you are directed to do one of the following: 1) peaceably surrender to the Chicago Police Department the firearm for which you were denied registration, or 2) remove your unregistered firearm(s) from the City of Chicago corporate limits within 10 days fo receiving this notification or within 3 days after notification of an unfavorable decision by the Mayor's License Commission, or 3) otherwise lawfully dispose of your interest in such firearm(s).

If the subject firearm has already been sold or transferred, complete the enclosed Firearm Dispositon Form(CPD-31.610) and mail the hard copy directly to the Gun Registration Program. If you are surrendering a firearm, you should call "911" and a police officer will pick up the weapon. The police officer will send the form to the Gun Registration Program. You Should retain the top copy of this form for your records.

Gun Registration Program
Chicago Police Department

**City of Chicago / Department of Police**
Gun Registration Program
3510 S. Michigan Avenue, Room 1027
Chicago, Illinois 60653
(312) 745-5164

Richard M. Daley, Mayor
Jody P. Weis, Superintendent of Police

January 23, 2008

Mr. DAVID LAWSON

Chicago, IL

Dear Mr. DAVID LAWSON:

A review of your application and the records maintained by the Chicago Police Department indicate that you are ineligible to register the below referenced firearm. Pursuant to Chapter 8-20 of the Municipal Code of the City of Chicago, your firearm registration(s) are denied for the following reason:

---- Firearm cannot be registered pursuant to Municipal Code Section 8-20-050. Hanguns cannot be registered.

---- A registration certificate was not obtained prior to the applicant taking possession of the firearm in violation of 8-20-090. (filing time)

The following firearm(s) are affected by this notification:

| Registration Number | Make/Manufacturer | Model | Serial Number |
|---|---|---|---|
| **D006343L** | **Springfield Armory,Geneseo,Il** | **M1** | **3031203** |

Pursuant to the Municipal Code Section 8-20-130, you may file a written request for hearing before the Mayor's License Commission. This request for hearing must be made in writing or by fax within 10 days after receipt of this notice. The request should be sent to:

Municipal Division Chief
Department of Administration Hearings
Municipal Hearings Division
740 N. Sedgwick, 2nd Floor
Chicago, IL 60610

The request can be faxed to (312) 742-8248

If you do not appeal this denial, you are directed to do one of the following: 1) peaceably surrender to the Chicago Police Department the firearm for which you were denied registration, or 2) remove your unregistered firearm(s) from the City of Chicago corporate limits within 10 days fo receiving this notification or within 3 days after notification of an unfavorable decision by the Mayor's License Commission, or 3) otherwise lawfully dispose of your interest in such firearm(s).

If the subject firearm has already been sold or transferred, complete the enclosed Firearm Dispositon Form(CPD-31.610) and mail the hard copy directly to the Gun Registration Program. If you are surrendering a firearm, you should call "911" and a police officer will pick up the weapon. The police officer will send the form to the Gun Registration Program. You Should retain the top copy of this form for your records.

Gun Registration Program
Chicago Police Department



**A FIREARMS REGISTRATION**
CITY OF CHICAGO/ DEPARTMENT OF POLICE

☐ NEW ☐ RENEWAL ☐ TRANSFER ☐ AMENDMENT

DATE REGISTERED DAY MONTH YEAR: AUG 21 2007

REGISTRATION NO.: R004100L

DO NOT WRITE ABOVE DOUBLE LINES

FIREARM SERIAL NO.: 4677

MAKE/MANUFACTURER: TTN

MODEL: MODEL 1878 COACH

FIREARM TYPE: ☐ 1. REVOLVER ☐ 2. RIFLE ☒ 3. SHOTGUN ☐ 4. SEMI-AUTOMATIC PISTOL ☐ 5. OTHER (Describe)

IS THE FIREARM ☐ MODIFIED ☐ INOPERABLE

CALIBER/GAUGE: 12ga.

PREVIOUS CHICAGO GUN REGISTRATION NO.

BARREL LENGTH: 20"

MAGAZINE CAPACITY: 2

FINISH: ☐ 1. BLUE ☒ 2. BLACK ☐ 3. CHROME ☐ 4. NICKEL ☐ 5. STAINLESS ☐ 6. TWO TONE

IL. FIREARM OWNER I.D. NO.

SOCIAL SECURITY NO.

NAME OF APPLICANT (LAST - FIRST- M.I.): LAWSON, DAVID W

DRIVERS LICENSE NO. - STATE: IL

HOME ADDRESS (STREET)

CITY - STATE - ZIP CODE: CHICAGO, IL

HOME PHONE

APPLICANT'S BUSINESS ADDRESS

BUSINESS PHONE

DATE OF BIRTH

☒ MALE ☐ FEMALE ☐ ORGANIZATION

☒ U.S. CITIZEN ☐ OTHER (Specify)

RACE CODE (CIRCLE ONE): 1 (2) 3 4 5 6 7 (Describe Other Below)
See reverse side for race codes.

ARE YOU A PEACE OFFICER? ☐ YES ☒ NO
If yes, see instruction No. 6 on reverse side.

APPLICANT'S SIGNATURE X

DATE

CHICAGO POLICE DEPT VALIDATED

CPD-31.562 (Rev. 9/05)

**A FIREARMS REGISTRATION**
CITY OF CHICAGO/ DEPARTMENT OF POLICE

☐ NEW ☐ RENEWAL ☐ TRANSFER ☐ AMENDMENT

DATE REGISTERED DAY MONTH YEAR: AUG 21 2007

REGISTRATION NO.: R004101L

DO NOT WRITE ABOVE DOUBLE LINES

FIREARM SERIAL NO.: 9130084309

MAKE/MANUFACTURER: MOSIN NAGANT

MODEL: M91/30

FIREARM TYPE: ☐ 1. REVOLVER ☒ 2. RIFLE ☐ 3. SHOTGUN ☐ 4. SEMI-AUTOMATIC PISTOL ☐ 5. OTHER (Describe)

IS THE FIREARM ☐ MODIFIED ☐ INOPERABLE

CALIBER/GAUGE: 7.62 mm

PREVIOUS CHICAGO GUN REGISTRATION NO.

BARREL LENGTH: 28.75 in

MAGAZINE CAPACITY: 5

FINISH: ☒ 1. BLUE ☐ 2. BLACK ☐ 3. CHROME ☐ 4. NICKEL ☐ 5. STAINLESS ☐ 6. TWO TONE

IL FIREARM OWNER I.D. NO.

SOCIAL SECURITY NO.

NAME OF APPLICANT (LAST - FIRST- M.I.): LAWSON, DAVID W

DRIVERS LICENSE NO. - STATE: IL

HOME ADDRESS (STREET)

CITY - STATE - ZIP CODE: CHICAGO IL

HOME PHONE

APPLICANT'S BUSINESS ADDRESS

BUSINESS PHONE

DATE OF BIRTH

☒ MALE ☐ FEMALE ☐ ORGANIZATION

☒ U.S. CITIZEN ☐ OTHER (Specify)

RACE CODE (CIRCLE ONE): 1 (2) 3 4 5 6 7 (Describe Other Below)
See reverse side for race codes.

ARE YOU A PEACE OFFICER? ☐ YES ☒ NO
If yes, see instruction No. 6 on reverse side.

APPLICANT'S SIGNATURE X

DATE

CHICAGO POLICE DEPT VALIDATED

CPD-31.562 (Rev. 9/05)

**A FIREARMS REGISTRATION**
**CITY OF CHICAGO/ DEPARTMENT OF POLICE**

☐ NEW ☐ RENEWAL ☐ TRANSFER ☐ AMENDMENT

DATE REGISTERED DAY MONTH YEAR: MAY 03 2007

REGISTRATION NO.: R003169L

DO NOT WRITE ABOVE DOUBLE LINES

| FIREARM SERIAL NO. | MAKE/MANUFACTURER | MODEL |
|---|---|---|
| 750304 | SCHMIDT RUBIN | 1931 |

FIREARM TYPE: ☐ 1. REVOLVER ☒ 2. RIFLE ☐ 3. SHOTGUN ☐ 4. SEMI-AUTOMATIC PISTOL ☐ 5. OTHER (Describe)

IS THE FIREARM ☐ MODIFIED ☐ INOPERABLE

CALIBER/GAUGE: 7.5 mm

PREVIOUS CHICAGO GUN REGISTRATION NO.

BARREL LENGTH: 24"

MAGAZINE CAPACITY: 6

FINISH: ☐ 1. BLUE ☒ 2. BLACK ☐ 3. CHROME ☐ 4. NICKEL ☐ 5. STAINLESS ☐ 6. TWO TONE

IL FIREARM OWNER I.D. NO.

SOCIAL SECURITY NO.

NAME OF APPLICANT (LAST - FIRST - M.I.): LAWSON, DAVID, W

DRIVERS LICENSE NO. - STATE: IL

HOME ADDRESS (STREET)

CITY - STATE - ZIP CODE: CHICAGO, IL

HOME PHONE

APPLICANT'S BUSINESS ADDRESS

BUSINESS PHONE

DATE OF BIRTH

☒ MALE ☐ FEMALE ☐ ORGANIZATION

☒ U.S. CITIZEN ☐ OTHER (Specify)

RACE CODE (CIRCLE ONE): 1 (2) 3 4 5 6 7 (Describe Other Below) See reverse side for race codes.

ARE YOU A PEACE OFFICER? ☐ YES ☒ NO — If yes, see instruction No. 6 on reverse side.

APPLICANT'S SIGNATURE X

DATE

CPD-31.562 (Rev. 9/05)

A FIREARMS REGISTRATION
CITY OF CHICAGO/ DEPARTMENT OF POLICE
☐ NEW ☐ RENEWAL ☐ TRANSFER ☐ AMENDMENT

DATE REGISTERED DAY MONTH YEAR: JAN 17 2008
REGISTRATION NO.: R006639L
DO NOT WRITE ABOVE DOUBLE LINES

| FIREARM SERIAL NO. | MAKE/MANUFACTURER | MODEL |
|---|---|---|
| A2515 | MAUSER | M48 |

FIREARM TYPE: ☐ 1. REVOLVER ☒ 2. RIFLE ☐ 3. SHOTGUN ☐ 4. SEMI-AUTOMATIC PISTOL ☐ 5. OTHER (Describe)
IS THE FIREARM ☐ MODIFIED ☐ INOPERABLE
CALIBER/GAUGE: 8 mm
PREVIOUS CHICAGO GUN REGISTRATION NO.:
MAGAZINE CAPACITY: 5
BARREL LENGTH: 23.6"
FINISH: ☒ 1. BLUE ☐ 2. BLACK ☐ 3. CHROME ☐ 4. NICKEL ☐ 5. STAINLESS ☐ 6. TWO TONE
IL. FIREARM OWNER I.D. NO.:
SOCIAL SECURITY NO.:
NAME OF APPLICANT (LAST - FIRST- M.I.): LAWSON, DAVID, W
DRIVERS LICENSE NO. - STATE:
HOME ADDRESS (STREET):
CITY - STATE - ZIP CODE: CHICAGO IL
HOME PHONE:
APPLICANT'S BUSINESS ADDRESS:
BUSINESS PHONE:
DATE OF BIRTH MO
☒ MALE ☐ FEMALE ☐ ORGANIZATION
☒ U.S. CITIZEN ☐ OTHER (Specify)
RACE CODE (CIRCLE ONE): 1 (2) 3 4 5 6 7 (Describe Other Below)
See reverse side for race codes.
ARE YOU A PEACE OFFICER? ☐ YES ☒ NO
If yes, see instruction No. 6 on reverse side.
APPLICANT'S SIGNATURE DATE
X

CHICAGO POLICE VALIDATED

CPD-31.562 (Rev. 9/05)

A FIREARMS REGISTRATION
CITY OF CHICAGO/ DEPARTMENT OF POLICE
☒ NEW ☐ RENEWAL ☐ TRANSFER ☐ AMENDMENT

DATE REGISTERED DAY MONTH YEAR: SEP 25 2007
REGISTRATION NO.: R004575L
DO NOT WRITE ABOVE DOUBLE LINES

| FIREARM SERIAL NO. | MAKE/MANUFACTURER | MODEL |
|---|---|---|
| 350-80222 | RUGER | 10/22 |

FIREARM TYPE: ☐ 1. REVOLVER ☒ 2. RIFLE ☐ 3. SHOTGUN ☐ 4. SEMI-AUTOMATIC PISTOL ☐ 5. OTHER (Describe)
IS THE FIREARM ☐ MODIFIED ☐ INOPERABLE
CALIBER/GAUGE: .22
PREVIOUS CHICAGO GUN REGISTRATION NO.: R004575L
MAGAZINE CAPACITY: 10
BARREL LENGTH: 20"
FINISH: ☐ 1. BLUE ☐ 2. BLACK ☐ 3. CHROME ☐ 4. NICKEL ☒ 5. STAINLESS ☐ 6. TWO TONE
IL. FIREARM OWNER I.D. NO.:
SOCIAL SECURITY NO.:
NAME OF APPLICANT (LAST - FIRST- M.I.): LAWSON DAVID W
DRIVERS LICENSE NO. - STATE:
HOME ADDRESS (STREET):
CITY - STATE - ZIP CODE: CHICAGO IL
HOME PHONE:
APPLICANT'S BUSINESS ADDRESS:
BUSINESS PHONE:
DATE OF BIRTH
☒ MALE ☐ FEMALE ☐ ORGANIZATION
☒ U.S. CITIZEN ☐ OTHER (Specify)
RACE CODE (CIRCLE ONE): 1 (2) 3 4 5 6 7 (Describe Other Below)
See reverse side for race codes.
ARE YOU A PEACE OFFICER? ☐ YES ☒ NO
If yes, see instruction No. 6 on reverse side.
APPLICANT'S SIGNATURE DATE
X

CHICAGO POLICE VALIDATED

CPD-31.562 (Rev. 9/05)

**A FIREARMS REGISTRATION**
CITY OF CHICAGO / DEPARTMENT OF POLICE

☐ NEW ☐ RENEWAL ☐ TRANSFER ☐ AMENDMENT

DATE REGISTERED DAY MONTH YEAR: JAN 17 2008

REGISTRATION NO.: R006638L

DO NOT WRITE ABOVE DOUBLE LINES

| FIREARM SERIAL NO. | MAKE/MANUFACTURER | MODEL |
|---|---|---|
| 245523 | MAUSER | M/96 |

FIREARM TYPE: ☐ 1. REVOLVER ☒ 2. RIFLE ☐ 3. SHOTGUN ☐ 4. SEMI-AUTOMATIC PISTOL ☐ 5. OTHER (Describe)

IS THE FIREARM ☐ MODIFIED ☐ INOPERABLE

CALIBER/GAUGE: 6.5 mm

PREVIOUS CHICAGO GUN REGISTRATION NO.:

BARREL LENGTH: 29.1"

MAGAZINE CAPACITY: 5

FINISH: ☒ 1. BLUE ☐ 2. BLACK ☐ 3. CHROME ☐ 4. NICKEL ☐ 5. STAINLESS ☐ 6. TWO TONE

IL. FIREARM OWNER I.D. NO.: | SOCIAL SECURITY NO.:

NAME OF APPLICANT (LAST - FIRST - M.I.): LAWSON, DAVID W

DRIVERS LICENSE NO. - STATE: IL

HOME ADDRESS (STREET) | CITY - STATE - ZIP CODE: CHICAGO IL | HOME PHONE

APPLICANT'S BUSINESS ADDRESS | BUSINESS PHONE | DATE OF BIRTH MO YR

☒ MALE ☐ FEMALE ☐ ORGANIZATION

☒ U.S. CITIZEN ☐ OTHER (Specify)

RACE CODE (CIRCLE ONE): 1 (2) 3 4 5 6 7 (Describe Other Below)
See reverse side for race codes.

ARE YOU A PEACE OFFICER? ☐ YES ☒ NO
If yes, see instruction No. 6 on reverse side.

APPLICANT'S SIGNATURE X | DATE

CHICAGO POLICE ... VALIDATED

CPD-31.562 (Rev. 9/05)

A FIREARMS REGISTRATION
CITY OF CHICAGO/ DEPARTMENT OF POLICE

☐ NEW ☐ RENEWAL ☐ TRANSFER ☐ AMENDMENT

DATE REGISTERED DAY MONTH YEAR: JAN 19 2008

R002419L

FIREARM SERIAL NO.: C961064M
MAKE/MANUFACTURER: REMINGTON
MODEL: 870 EXPRESS

DO NOT WRITE ABOVE DOUBLE LINES

FIREARM TYPE: ☐ 1. REVOLVER ☐ 2. RIFLE ☒ 3. SHOTGUN ☐ 4. SEMI-AUTOMATIC PISTOL ☐ 5. OTHER (Describe)
IS THE FIREARM ☐ MODIFIED ☐ INOPERABLE
CALIBER/GAUGE: 12ga
PREVIOUS CHICAGO GUN REGISTRATION NO.
MAGAZINE CAPACITY: 5
BARREL LENGTH: 20"
FINISH: ☒ 1. BLUE ☐ 2. BLACK ☐ 3. CHROME ☐ 4. NICKEL ☐ 5. STAINLESS ☐ 6. TWO TONE
ILLINOIS FIREARM OWNER I.D. NO.
SOCIAL SECURITY NO.

NAME OF APPLICANT (LAST - FIRST - M.I.): LAWSON, DAVID, W
DRIVERS LICENSE NO. STATE: IL
HOME ADDRESS STREET
CITY - STATE - ZIP CODE: CHICAGO IL
HOME PHONE
APPLICANT'S BUSINESS ADDRESS
BUSINESS PHONE
DATE OF BIRTH
☒ MALE ☐ FEMALE ☐ ORGANIZATION
☒ U.S. CITIZEN ☐ OTHER (Specify)
RACE CODE (CIRCLE ONE) 1 (2) 3 4 5 6 7 (Describe Other Below) (See reverse side for race codes.)
ARE YOU A PEACE OFFICER? ☐ YES ☒ NO
If yes, see instruction No. 6 on reverse side.
APPLICANT'S SIGNATURE DATE
X

CPD-31.567 (Rev. 8/05)

---

A FIREARMS REGISTRATION
CITY OF CHICAGO/ DEPARTMENT OF POLICE

☐ TRANSFER ☐ AMENDMENT

DATE REGISTERED DAY MONTH YEAR: JAN 19 2007

R002419L

FIREARM SERIAL NO.: C961064M
MAKE/MANUFACTURER: REMINGTON
MODEL: 870 EXPRESS

DO NOT WRITE ABOVE DOUBLE LINES

FIREARM TYPE: ☐ 1. REVOLVER ☐ 2. RIFLE ☒ 3. SHOTGUN ☐ 4. SEMI-AUTOMATIC PISTOL ☐ 5. OTHER (Describe)
IS THE FIREARM ☐ MODIFIED ☐ INOPERABLE
CALIBER/GAUGE: 12ga
PREVIOUS CHICAGO GUN REGISTRATION NO.
MAGAZINE CAPACITY: 5
BARREL LENGTH: 20"
FINISH: ☒ 1. BLUE ☐ 2. BLACK ☐ 3. CHROME ☐ 4. NICKEL ☐ 5. STAINLESS ☐ 6. TWO TONE
IL FIREARM OWNER I.D. NO.
SOCIAL SECURITY NO.

NAME OF APPLICANT (LAST - FIRST - M.I.): LAWSON, DAVID, W
DRIVERS LICENSE NO. STATE: IL
HOME ADDRESS STREET
CITY - STATE - ZIP CODE: CHICAGO IL
HOME PHONE
APPLICANT'S BUSINESS ADDRESS
BUSINESS PHONE
DATE OF BIRTH
☒ MALE ☐ FEMALE ☐ ORGANIZATION
☒ U.S. CITIZEN ☐ OTHER (Specify)
RACE CODE (CIRCLE ONE) (1) 2 3 4 5 6 7 (Describe Other Below) (See reverse side for race codes.)
ARE YOU A PEACE OFFICER? ☐ YES ☒ NO
If yes, see instruction No. 6 on reverse side.
APPLICANT'S SIGNATURE DATE
X

CPD-31.567 (Rev. 8/05)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OTIS McDONALD, et al., | ) Case No. 08-CV-3645 |
| | ) |
| Plaintiffs, | ) **DECLARATION OF** |
| | ) **OTIS MCDONALD** |
| v. | ) |
| | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**DECLARATION OF OTIS MCDONALD**

I, Otis McDonald, am competent to state, and declare the following based on my personal knowledge:

1. I tried to register a handgun for possession inside my Chicago home. Exhibit A is a true and correct copy of the city's rejection of my handgun application (with some personal information redacted).

2 I fear arrest, criminal prosecution, incarceration, and fine if I were to possess a handgun within my home. I presently intend to possess a handgun within the home for self-defense, but am prevented from doing so by the city's active enforcement of the handgun ban as outlined in their letter to me.

3. After my handgun application was denied, I tried to communicate to the police that the handgun had never been in the city, but the police insisted that I completely dispose of the handgun. I did so, and reported that event to the city on the proper form, but have since re-acquired the handgun. The handgun is not kept in the city. I still intend to register the handgun

and would do so but for the fact of the city's handgun ban.

4. I own a lawfully registered shotgun. The shotgun registration application was approved by the city on June 12, 2008. On June 19, 2008, I visited the gun registration office and asked about the delay in receiving the registration certificate. An officer I believe is named Passiki gave me a printout of my registration records, and noted in his writing that the shotgun registration was approved June 12. Exhibit B is a true and correct copy of that printout. I've since been told that the certificate itself should be in the mail to me shortly. I fear arrest, criminal prosecution, incarceration, and fine if I were to possess my shotgun in Chicago without re-registering it annually.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 31 day of July, 2008

Otis McDonald

Otis McDonald

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS McDONALD, et al., | ) | Case No. 08-CV-3645 |
| | ) | |
| Plaintiffs, | ) | **DECLARATION OF** |
| | ) | **ADAM ORLOV** |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DECLARATION OF ADAM ORLOV

I, Adam Orlov, am competent to state, and declare the following based on my personal knowledge:

1. I tried to register a handgun for possession inside my Chicago home. Exhibit C is a true and correct copy of the city's rejection of my handgun application (with some personal information redacted).

2 I fear arrest, criminal prosecution, incarceration, and fine if I were to possess a handgun within my home. I presently intend to possess a handgun within the home for self-defense, but am prevented from doing so by the city's active enforcement of the handgun ban as outlined in their letter to me. I have never brought my handgun into Chicago, except during the time I was employed as a police officer in Evanston, and it was my service weapon.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 30 day of July, 2008

[signature]
Adam Orlov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OTIS McDONALD, et al.,

Plaintiffs,

v.

CITY OF CHICAGO,

Defendant.

Case No. 08-CV-3645

**DECLARATION OF COLLEEN LAWSON**

**DECLARATION OF COLLEEN LAWSON**

I, Colleen Lawson, am competent to state, and declare the following based on my personal knowledge:

1. I tried to register a handgun for possession inside my Chicago home. Exhibit D is a true and correct copy of the city's rejection of my handgun application (with some personal information redacted).

2 I fear arrest, criminal prosecution, incarceration, and fine if I were to possess a handgun within my home. I presently intend to possess a handgun within the home for self-defense, but am prevented from doing so by the city's active enforcement of the handgun ban as outlined in their letter to me. I have never brought my handgun into Chicago.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 29 day of July 2008

Colleen Lawson

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS McDONALD, et al., | ) | Case No. 08-CV-3645 |
| | ) | |
| Plaintiffs, | ) | **DECLARATION OF** |
| | ) | **DAVID LAWSON** |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**DECLARATION OF DAVID LAWSON**

I, David Lawson, am competent to state, and declare the following based on my personal knowledge:

1. I tried to register a handgun for possession inside my Chicago home. Exhibit E is a true and correct copy of the city's rejection of my handgun application (with some personal information redacted).

2 I fear arrest, criminal prosecution, incarceration, and fine if I were to possess a handgun within my home. I presently intend to possess a handgun within the home for self-defense, but am prevented from doing so by the city's active enforcement of the handgun ban as outlined in their letter to me. I have never brought my handgun into Chicago.

3. I own various guns lawfully registered in the city, which I keep at my home. Exhibit F is a true and correct copy of my firearm registration certificates (with some personal information redacted).

4.      I fear arrest, criminal prosecution, incarceration, and fine if I were to continue possessing these guns in Chicago without re-registering them annually.

5.      On May 4, 2008, the registration for one of my rifles, a K31, lapsed.  The rifle thus became permanently unregisterable within the City of Chicago.  I therefore removed the rifle from my Chicago home and now keep it outside the City of Chicago.  I fear arrest, criminal prosecution, incarceration, and fine if I were to possess the lapsed K31 rifle within my Chicago home without benefit of registration.

6.      In 2007, I applied to purchase a rifle from the federal Civilian Marksmanship Program ("CMP").  On October 18, 2007, I was informed via email that my application was granted and the rifle would be delivered to my Chicago home.  The CMP requires that delivery be made to my Chicago home, because that is the address listed both in my driving license and Illinois Firearms Owner Identification Card.

7.      On October 19, 2007, the CMP rifle arrived at my home via the U.S. Postal Service.  I thus had approximately a day's notice that I would be receiving the CMP rifle.  Only upon receiving the CMP rifle could I learn the gun's serial number, necessary to apply for a Chicago registration certificate for the firearm.

8.      I relocated the rifle outside of Chicago and, on November 30, 2007 applied to register the rifle.  I was unable to complete the registration process any earlier on account of travel.  On December 11, 2007, that application was refused because I did not effectuate registration of the rifle prior to taking possession of it.

9.      I appealed the denial of my CMP rifle registration to the city's Department of Administrative Hearings.  The city denied my appeal.  Exhibit G is a true and correct copy of the administrative decision in that case (with some personal information redacted).

10. I presently intend to possess the CMP rifle within my home, but am prevented from doing so only by the city's active enforcement of the pre-acquisition registration requirement and now unregisterable status of that firearm. I fear arrest, criminal prosecution, incarceration, and fine if I were to possess this rifle within my home.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 31st day of JULY, 2008

David W. Lawson

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OTIS McDONALD, et al., Plaintiffs, v. CITY OF CHICAGO, Defendant. | Case No. 08-CV-3645 **DECLARATION OF ALAN GOTTLIEB** |

**DECLARATION OF ALAN GOTTLIEB**

I, Alan Gottlieb, am competent to state, and declare the following based on my personal knowledge:

1. I am the Founder and Executive Vice President of the Second Amendment Foundation, Inc.

2. The Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 600,000 members and supporters nationwide, including many in Chicago. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control.

3. SAF has individual members and supporters who are adversely impacted by the laws being challenged in this litigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 29TH day of JULY, 2008

Alan M. Gottlieb

Alan Gottlieb

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| OTIS McDONALD, et al., | ) Case No. 08-CV-3645 |
| Plaintiffs, | ) **DECLARATION OF RICHARD PEARSON** |
| v. | ) |
| CITY OF CHICAGO, | ) |
| Defendant. | ) |

**DECLARATION OF RICHARD PEARSON**

I, Richard Pearson, am competent to state, and declare the following based on my personal knowledge:

1. I am the Executive Director of the Illinois State Rifle Association.

2. The Illinois State Rifle Association ("ISRA") is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 17,000 members and supporters in Illinois, including many in Chicago. The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation.

3. ISRA has individual members and supporters who are adversely impacted by the laws being challenged in this litigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 30 day of July, 2008

Richard A Pearson

Richard Pearson

**THE CITY OF CHICAGO, ILLINOIS**
**DEPARTMENT OF ADMINISTRATIVE HEARINGS**
**MUNICIPAL HEARINGS DIVISION**

| | | |
|---|---|---|
| IN RE PROCEEDINGS CONCERNING GUN REGISTRATION, | ) | |
| REQUESTED BY: | ) | |
| David Lawson | ) | No. 07 GR-000122 |
| Chicago, IL | ) | |
| Registration No. D006343L<br>Serial No. 3031203 | ) | |

**DECISION**

1. I find that there is jurisdiction over the subject matter and the parties.

2. According to City Exhibit No. 4, applicant acquired the firearm through the mail on October 19, 2007 from the Civilian Marksmanship Program in Anniston, Arizona. The registration application was submitted November 30, 2007. Applicant testified the program periodically sells firearms and interested parties can bid for the right to buy them. In October 2007 applicant learned via e-mail that his request to purchase the firearm at issue in this case was granted. Applicant testified that the gun was delivered to his Chicago home the next day, October 19, 2007 and remained there for less than a week before being taken to Bloomington, Illinois. He said he could not register the firearm prior to receiving possession because he would be unable to properly list the serial number and other information on the application without possessing the firearm. He added the program required delivery to his home since that is the address on both his driver's license and firearm owner's identification card. Applicant testified that the Chicago Police gun desk told him he had 30 days to register the firearm from the date of purchase. He explained that this application was beyond that time limit due to travel.

3. Section 8-20-040 of the Municipal Code of the City of Chicago requires that all firearms in the City be registered.. Section 8-20-040 (a) states:

(a) All firearms *in the City of Chicago* shall be registered in accordance with the provisions of this chapter. It shall be the duty of a person owning or possessing a firearm to cause such firearm to be registered. No person shall, *within* the City of Chicago possess, harbor, have under his control, transfer, offer for sale, sell, give, deliver or accept any firearm unless such person is the holder of a valid registration certificate for such firearm. No person shall, *within* the

City of Chicago, possess, harbor, have under his control, transfer, offer for sale, sell, give, deliver or accept any firearm which is unregisterable under the provisions of this chapter. (Emphasis added).

4. I find that the applicant possessed the firearm in question within the City of Chicago without first properly registering it. Applicant resides in the City of Chicago and the firearm was delivered to his home. Section 8-20-090(a) requires a firearm be registered before an applicant takes possession of the firearm. This section by its plain language is applicable to firearms *within* the City of Chicago. Further, the case of City of Chicago v. Cotton, 356 Ill. App. 3d1, 826 N.E. 2d 405 (1st. Dist 2005) holds that the use of the term "shall" in the Chicago Municipal Code is mandatory, not discretionary. Therefore, I find that I have no discretion in this matter and, as a result, since Applicant did not register the firearm prior to possessing it in the City of Chicago, the firearm is unregisterable.

5. Therefore, the denial of Applicant's application for registration of this firearm is affirmed.

6. Pursuant to Section 2-14-102 of the Chicago Municipal Code, this final decision is subject to review under the Illinois Administrative Review Act.

*Gregory G. Plesha*
Gregory G. Plesha
Administrative Law Officer

Dated: March 8, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.1**
**Eastern Division**

Otis McDonald, et al.

Plaintiff,

v.

Case No.: 1:08−cv−03645
Honorable Milton I. Shadur

City of Chicago, et al.

Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Friday, August 1, 2008:

MINUTE entry before the Honorable Milton I. Shadur:Motion to strike [30] is entered and continued. MOTION for summary judgment [32] is entered and continued; Motion to vacate is entered and continued. NRA Plaintiff's further submission on the motion to vacate is due on or before August 8, 2008. Motion hearing held on 8/1/2008. Motion Hearing set for 8/18/2008 at 09:15 AM.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

OTIS MCDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION,

Plaintiffs,

v.

CITY OF CHICAGO, and MAYOR RICHARD M. DALEY,

Defendants.

Honorable Milton I. Shadur

Case No. 08-CV-3645

**MOTION TO VACATE AND TO**
**OPPOSE ORDER REASSIGNING CASE**

Plaintiffs, Robert Klein Engler, Dr. Gene A. Reisinger, National Rifle Association of America, Inc. ("NRA Plaintiffs"), by and through their counsel, Freeborn & Peters LLP, file this Motion to Reconsider Order Finding Relatedness, and in support hereof state as follows:

**INTRODUCTION**

The Village of Oak Park's ("Oak Park") Motion for Reassignment provides virtually no factual or legal support for its arguments that the NRA Plaintiffs' case should be reassigned to this Court. On that basis alone, the Motion fails to meet this District's local rules for a motion for reassignment. But even if Oak Park had attempted to provide more detail, that detail would illuminate many, many differences between the Oak Park and Chicago firearms ordinances at issue and the facts underlying these cases. Those differences render the two actions insusceptible to a finding of relatedness and make reassignment improper.

The Oak Park ordinance is a broad, explicit ban on the possession of all handguns and on the transportation of rifles and shotguns without certain licenses. Chicago's ordinance, on the other hand, is a registration ordinance that prohibits the new registration of handguns and sets the procedure for registering other types of firearms. Unlike Oak Park, the Chicago ordinance does not ban the transportation of rifles and shotguns. Moreover, Oak Park provides certain discriminatory exceptions to its ban that the Chicago ordinance does not contemplate. As a result of these and other differences, the plaintiffs in the two cases are seeking different types of relief specific to the idiosyncrasies of the two ordinances.

Complicating matters even further, the NRA Plaintiffs and the plaintiffs in this action are represented by different counsel. Given the differences between the two ordinances, and the facts underlying the cases, the use of separate counsel likely will lead to different strategies and approaches that are not suited to both sets of plaintiffs. The Court therefore should vacate its order finding the two cases related and should not reassign the Oak Park matter.

**PROCEDURAL HISTORY**

The current motion is a culmination of a somewhat complex procedural history involving three separate cases. That history can be summarized as follows:

- June 26, 2008 – Original plaintiffs in this action ("*McDonald* Plaintiffs") file complaint challenging Chicago's firearms ordinance. (Dkt. No. 1.)

- June 27, 2008 – NRA Plaintiffs file their complaint against Oak Park ("*Oak Park* Complaint" or "*Oak Park* Case") challenging Oak Park's firearms ordinance. That case is assigned to Judge Lefkow as Case No. 08-3696.

- June 27, 2008 – NRA and four other plaintiffs file a separate case against the City of Chicago challenging Chicago's firearms ordinance. That case is assigned to Judge Leinenweber as Case No. 08-3697.

- July 22, 2008 – City of Chicago seeks reassignment of Case No. 08-3697 to this Court's calendar. (Dkt. No. 22.)

- July 23, 2008 – Oak Park moves to reassign Case No. 08-3696 to this Court's Calendar and seeks consolidation with this case. (Dkt. No. 24.)[1]

- July 25, 2008 – Court enters an order reassigning Case No. 08-3697 to this Court's calendar, but does not consolidate that case with this case. (Dkt. No. 26.)

- July 29, 2008 – Court grants Oak Park's Motion for Reassignment, but provides the NRA Plaintiffs an opportunity to oppose reassignment. (Dkt. Nos. 27, 36.) The Court does not consolidate the Oak Park Case with this case.

Thus, although the Court has ordered reassignment of the NRA's Chicago case and the *Oak Park Case* to this Court, neither of those matters has been consolidated with this case. This Motion seeks to have the Court vacate its order reassigning the *Oak Park* Case.

## FACTUAL BACKGROUND

### The *McDonald* Complaint

The *McDonald* Complaint focuses solely on Chicago's firearms ordinance, and alleges that the Chicago Municipal Code § 8-20-040 *et. seq.*, which describes the process for registering firearms in the City of Chicago, violates the Second Amendment to the United States Constitution because it prohibits the registering of handguns within the City of Chicago. *See* Chicago Mun. Code § 8-20-050. (Dkt. No. 1, *McDonald* Compl., at ¶¶ 36-59.) According to the *McDonald* Plaintiffs, the prohibition upon registering handguns violates the Second Amendment because handguns must be registered in order to possess them in Chicago. Chicago Mun. Code §8-20-040(a). (Dkt. No. 1, *McDonald* Compl., at ¶¶ 47-51.) The *McDonald* Plaintiffs seek relief under 42 U.S.C. § 1983. (*Id.* at ¶ 9.)

In addition to the allegations regarding handguns, the *McDonald* Plaintiffs also allege that Chicago's annual registration requirement for non-handgun firearms, its requirement that individuals register a firearm prior to taking possession, and a prohibition on registering firearms

---

[1] Oak Park does not expressly seek consolidation, which technically is distinct from reassignment. Oak

after an annual registration has lapsed violate their rights under the Second and Fourteenth Amendments.  (*Id.* at ¶¶ 52-59.)  The annual registration requirement is promulgated under section 8-20-200 of the code.  The prior-registration requirement is codified at section 8-20-090(a).  The prohibition on re-registration after an annual registration has lapsed is codified at section 8-20-200(c).

**The NRA *Oak Park* Complaint**

The Oak Park Complaint, attached hereto as Exhibit A, differs significantly from the *McDonald* Complaint.  First, none of the *McDonald* Plaintiffs are named in the *Oak Park* Complaint.  But more importantly, rather than describing a firearm registration process, the NRA Plaintiffs allege that the Oak Park ordinance simply bans handguns: "It shall be unlawful for any person to possess or carry, or for any person to permit another to possess or carry on his/her land or in his/her place of business any firearm [handgun]." Oak Park Mun. Code § 27-2-1.  The NRA Plaintiffs allege that the Oak Park ordinance also has irrational exceptions to its handgun ban that allow certain theater performers and licensed firearm collectors to possess handguns.  (*See Oak Park* Compl. at ¶¶ 12-13, citing Oak Park Mun. Code §§ 27-2-1(K) and (L)).  The NRA Plaintiffs allege that the prohibition on possessing handguns violates the Second Amendment and that the exceptions for theater performers and licensed firearm collectors violate the Equal Protection Clause of the Fourteenth Amendment.  (*See Oak Park* Compl. at ¶¶ 23-29.)

In addition to the handgun ban, the NRA Plaintiffs allege that Oak Park prohibits the transportation of handguns, rifles and shotguns in a vehicle, and that irrational exceptions exist only for the transportation of rifles and shotguns by licensed hunters or fishermen.  (*See Oak Park* Compl. at ¶ 11, citing Oak Park Mun. Code 27-2-1(H) and (L)).  The NRA Plaintiffs allege

---

Park's motion does, however, suggest that it is seeking consolidation by asking the court to reassign the Oak Park case "under" and "with" this case. (*See* Oak Park. Mot. at ¶ 20 and Wherefore Clause.)

that the prohibition on transporting handguns, rifles and shotguns violates their rights under the Second Amendment and that the exceptions for hunters and fishers violate the Equal Protection Clause of the Fourteenth Amendment. (*See Oak Park* Compl. at ¶¶ 23-29.) The NRA Plaintiffs also allege that the prohibition on transporting handguns, rifles, and shotguns is preempted by 18 U.S.C §926A. (*See id.* at ¶¶ 30-34.)

**ARGUMENT**

Oak Park's Motion for Reassignment fails to provide the required detail for a finding of relatedness or for reassignment. The Court should deny the motion on that basis alone. But even if Oak Park included that detail, it would show that the Chicago and the Oak Park municipal codes set forth materially different laws regarding the possession, registration, and transportation of firearms. The Court therefore cannot find that all of the criteria for reassignment have been met, and therefore should vacate its order reassigning the *Oak Park* Case.

**I. Oak Park Fails to Allege Sufficient Detail to Find the *Oak Park* and *McDonald* Cases Related or to Warrant Reassignment.**

Under this Court's local rules, in order to successfully move for a finding of relatedness and to reassign, Oak Park must set forth sufficient detail to find the cases related and to find that reassignment will be beneficial. Oak Park's motion fails to set forth sufficient detail for either finding.

**A. Oak Park Provides Insufficient Detail to Find the Cases Related.**

Under Local Rule 40.4(a), two or more civil cases may be related if one or more of the following conditions are met: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one or more of the classes involved in the cases is or are the same. Local

District Court Rules for the Northern District of Illinois ("LR") 40.4(a). In this case, only item 2 – the requirement that the cases involve some of the same issues of law or fact – is at issue.

In order to move for a finding of relatedness, a party must comply with Local Rule 40.4(c)(1). Under that rule, a motion for a finding of relatedness must identify particular issues of fact or law that are common to all plaintiffs. *Donahue v. Elgin Riverboat Resort*, No. 04 C 816, 2004 WL 2495642, at *1 (N.D. Ill. Sept. 28, 2004).[2] Asserting "that the cases . . . generally involve the same types of allegations [is] not sufficient to show the cases are related pursuant to Local rule 40.4(a)." *Id.* at *3. Likewise, allegations that the cases both are brought under the same federal statute and contain similar, but distinct, fact patterns is not sufficient to find cases related. *See id.* at *1. In *Donahue*, for example, the plaintiffs argued that five cases all had been brought under Title VII and that each alleged discriminatory hiring practices by the same defendant. *See id.* at *1. The Court held that those allegations were insufficient to find the cases related. *See id.* at *3. The Court held that, although the cases shared those two aspects, the plaintiffs failed "to identify any particular issues of fact or law that are common to all plaintiffs." *Id.* at *3.

Here, as in *Donahue*, Oak Park has not alleged sufficient similarities of law or fact to find the *Oak Park* and *McDonald* cases related. Like the plaintiffs in *Donahue*, Oak Park merely makes conclusory allegations: "all three cases involve Second Amendment and equal protection claims against municipal gun regulations. Moreover, both NRA cases involve challenges based upon the federal Firearms Owners' Protection Act of 1986." (Oak Park Mot. at ¶ 16.) But *Oak Park has not described a single fact in common between the NRA and McDonald Plaintiffs*. No doubt that is because the NRA plaintiffs and the *McDonald* Plaintiffs – none of which are plaintiffs in both cases – have been affected by two completely separate and substantively

different ordinances.[3] And Oak Park has failed to explain how the Second or Fourteenth Amendments will apply in the same manner when the two ordinances are substantially different. The Court therefore should hold that Oak Park's Motion for Reassignment fails to adequately allege relatedness pursuant to Local Rule 40.4(c)(1).

**B. Oak Park Does Not Adequately Set Forth The Necessary Elements For Reassignment.**

As with its description of relatedness, Oak Park fails to set forth in sufficient detail how reassigning the *Oak Park* case will meet the standards set forth by this District's local rules. In order for a party to successfully move for reassignment, it must demonstrate that the two cases meet all the criteria of Local District Court Rule 40.4(b). Those requirements are:

> (1) both cases are pending in this Court;
> (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;
> (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and
> (4) the cases are susceptible of disposition in a single proceeding.

Under Local Rule 40.4(c)(2), a motion for reassignment must "indicate the extent to which the conditions required by section (b) will be met if the cases are found to be related." *See* LR 40.4(c)(2). "Courts have interpreted LR 40.4(c) to impose an obligation on movants to specifically identify why each of the four conditions for reassignment under LR 40.4(b) is met." *Sunstar, Inc. v. Alberto-Culver Co., Inc.* No. 01 C 0736, 2003 WL 21801428, at *3 (N.D. Ill. Aug. 1, 2003). Courts therefore "may deny a motion to reassign if a party fails to sufficiently apply the facts of the case to each of 40.4(b)'s requirements." *Machinery Movers, Riggers, and*

---

[2] All unpublished decisions are attached in alphabetical order as Group Exhibit B.

[3] Those differences are discussed more fully in Section II A of this Motion. Briefly, though, the Chicago Ordinance is a registration ordinance while Oak Park's ordinance is an outright ban on handguns. Moreover, Oak Park's ordinance is broader, encompassing a ban on the transportation of shotguns and

*Machinery Erectors, Local 136 Defined Contribution Retirement Fund v. Joseph/Anthony, Inc.*, No. 03 C 8707, 2004 WL 1631646, at *3 (N.D. Ill. July 16, 2004). Conclusory allegations that reassigning a case will save substantial judicial time and effort, or that both cases are susceptible to disposition in a single proceeding, are not sufficient to allow reassignment. *Id.; see also Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893, 2003 WL 21011757, at *3 (N.D. Ill. May 5, 2003) (holding that merely providing legal conclusions does not satisfy Local Rule 40.4(c)). Rather, the party moving for reassignment must explain *how* reassignment will result in substantial savings of judicial resources and *why* the cases are susceptible to disposition in a single proceeding. *Machinery Movers*, 2004 WL 1631646, at *3; *Sunstar*, 2003 WL 21801428, at *3; *Lawrence*, 2003 WL 21011757, at *3.

In this case, Oak Park's motion provides *no* explanation of how judicial resources will be conserved by reassignment. The motion fails on that basis alone. And Oak Park *has offered nothing but conclusory opinions* that the two cases are susceptible to disposition in a single proceeding. The most specific statement Oak Park makes is that the cases "involve similar legal arguments and similar litigation trajectories" and that they involve "legal interpretations of similar local gun control ordinances as they relate to the U.S. Constitution." (*Oak Park* Compl. at ¶ 18.) Simply setting forth a few alleged "similarities" between the cases does not explain why they are susceptible to disposition in single proceeding. Oak Park does not explain how the Court will coordinate different discovery or how it will decide separate issues of law and fact in separate motions for summary judgment concerning *different* ordinances. Accordingly, the Court should deny Oak Park's motion for failing to set forth in sufficient detail why the *Oak Park* Case should be reassigned.

---

rifles that Chicago's ordinance does not contain. Each city's ordinance also contains different exceptions to their general prohibitions that will require separate analysis.

## II. Reassignment of the *Oak Park* Case Is Not Warranted.

Even if Oak Park had adequately moved for a finding of relatedness and for reassignment, reassignment would *violate* Local Rule 40.4(b)(2) and (4). The cases are not susceptible to disposition in a single proceeding and the Court will not save substantial judicial time and effort by reassigning the *Oak Park* Case.

### A. The *Oak Park* and *McDonald* Cases Are Not Susceptible to Disposition in a Single Proceeding.

Reassignment is not proper where the two subject cases are not susceptible to disposal in a single proceeding. *See* LR 40.4(b)(4). "Where 'individual questions of fact and law in each case outweigh the common, and consolidation of the later filed case with the earlier is likely to cause substantial delay,'" reassignment is inappropriate. *Snitchler v. Allsteel, Inc.*, No. 95 C 4975, 1995 WL 769327, at *2 (N.D. Ill. Dec. 28, 1995). Before a case can be reassigned, courts generally require that similar issues of both law and fact predominate over the differences. *Lawrence*, 2003 WL 21011757, at * 3. Thus, where the legal claims in the two cases differ, and will require separate motions for summary judgment, the cases usually cannot be disposed of in a single proceeding. *Williams v. Walsh Constr.*, No. 05 C 6807, 2007 WL 178309, at *2 (N.D. Ill. Jan. 16, 2007). And even where there are some issues of fact and law in common, those issues must outweigh the differences in order to find reassignment is proper. *Lawrence*, 2003 WL 21011757, at *3.

Here, there simply are too many legal and factual differences in the cases to dispose of them in a single proceeding. Those differences will create the need for separate discovery, separate legal analyses, and separate dispositive motions. The differences, combined with the

fact that there is no overlap amongst the parties, outweigh any similarities between the cases, and make reassignment of the *Oak Park* Case improper.

First, the very ordinances at issue have material differences that will require different legal analyses. The Oak Park Ordinance, for example, *prohibits* the transportation of rifles and shotguns without specified licenses in addition to its outright ban on handguns. *See* Oak Park Mun. Code § 27-2-1. The Chicago Ordinance, on the other hand, *permits* possession and transportation of rifles and shotguns as long as they are registered in the city. Because the Supreme Court's decision in *District of Columbia v. Heller*, No. 07-290 (S. Ct. June 26, 2008) only considered an ordinance that applied to handguns, that decision's application to the Oak Park Ordinance may differ significantly from its application to the Chicago Ordinance. The very existence of this extra portion of the Oak Park Ordinance will require different legal analysis and different motions for summary judgment in the two cases, and may require different discovery. The two cases therefore are not susceptible to disposition in a single proceeding.

More generally, the two ordinances differ in the manner in which they prohibit handgun possession. The Oak Park Ordinance creates an *outright ban* on handgun possession. *See* Oak Park Mun. Code § 27-2-1. The Chicago Ordinance, on the other hand, focuses on the *registration and re-registration* of firearms, including handguns. *See* Chicago. Mun. Code § 8-20-40(a)-(c). As a result, the *McDonald* Complaint contains several counts challenging the registration renewal process. (*See McDonald* Compl. at ¶¶ 52-59.) For example, the *McDonald* Plaintiffs challenge Chicago's requirement that individuals re-register firearms each year and Chicago's requirement that individuals register firearms prior to taking possession of them. (*McDonald* Compl. at ¶¶ 52-55.) The *McDonald* Plaintiffs also challenge Chicago's prohibition

on re-registering firearms if an individual allows the annual registration to lapse. (*Id.* at ¶¶ 56-59.) Oak Park's ordinance does not speak to registration at all.

The two ordinances also approach exceptions to their handgun prohibitions differently. Chicago's ordinance provides for "grandfathering" in those who owned handguns prior to the ordinance's enactment. *See* Chicago Mun. Code § 8-20-50(c). Oak Park does not provide any such exception. Oak Park does, however, provide different exceptions to its ordinance. Oak Park irrationally discriminates in favor of theater groups and licensed firearm dealers by allowing individuals in those groups to possess firearms, including handguns, under certain circumstances. *See* Oak Park Mun. Code at § 27-2-1(K)-(L). Chicago does not have similar exceptions. The manner in which the Court will apply the Second and Fourteenth Amendments to these varying exceptions thus may differ significantly under *Heller*.

The differences between Chicago and Oak Park's ordinances also have resulted in the parties seeking different types of relief. The *Oak Park* Complaint seeks a remedy under the Equal Protection Clause relating to Oak Park's irrational exemptions for theater groups and licensed gun collectors. (*Oak Park* Compl. at ¶¶ 26-29.) The *McDonald* Plaintiffs do not seek a remedy under the Equal Protection clause relating to any of the exemptions to the Chicago ordinance. The *McDonald* Plaintiffs, do however, seek a remedy under the Equal Protection Clause relating to Chicago's prohibition on re-registering firearms after the annual registration has lapsed – an issue not in play in the *Oak Park* Case. (*See McDonald* Compl. at ¶¶52-59.)

Finally, as a result of Oak Park's prohibition on the transportation of firearms, the *Oak Park* Complaint also challenges those provisions on the grounds that they are preempted by 18 U.S.C. § 926A, which allows for transportation shotguns, rifles, and handguns. (*Oak Park*

Compl. at ¶¶ 30-34.)  The *McDonald* Plaintiffs do not have any counts challenging transportation provisions under section 926A, and thus preemption is not an issue.[4]

In addition to the many disparate legal issues, factual differences also make reassignment inappropriate.  The *McDonald* and *Oak Park* cases do not share a single plaintiff or defendant in common.  The dramatic difference in the parties suggests that reassigning the *Oak Park* Case to this Court will create the need for divergent discovery.  In particular, Chicago's registration requirements will result in discovery regarding the McDonald Plaintiffs' registration efforts. That discovery will not be necessary in the *Oak Park* Case because registration is not at issue.

Other significant factual differences exist as well.  The *Oak Park* Complaint alleges that the NRA Plaintiffs wish to transport firearms within, and through, the Village of Oak Park.  (*Oak Park* Compl. at ¶¶ 18-19.)  The *McDonald* Complaint makes no allegations regarding the transportation of firearms.  This difference is significant because the *Heller* decision did not specifically address the transportation of firearms.  It is therefore possible that the Oak Park parties will engage in significant analysis of the differences between the possession of a firearm in the home and the transportation of a firearm outside the home.

These factual and legal differences far outweigh any similarities among the *Oak Park* and *McDonald* cases.  This is particularly true in light of the recent *Heller* decision.  The Court will be required to apply separate legal analyses to the two ordinances and to the facts underlying each case.  And no doubt the plaintiffs in each case ultimately will file separate motions for

---

[4] Oak Park argues that the case brought by separate defendants against the City of Chicago at No. 08-3697 contains a § 926A claim and thus the two cases are related.  (*Oak Park* Compl. at ¶ 16.)  But that fact is irrelevant.  Oak Park seeks to have the *Oak Park* Case found related to, and reassigned "under" and "with" this case, not with Case No. 08-3697.  In any event, the differences between the Oak Park and Chicago ordinances still are too great to reassign the *Oak Park* Case to this Court.

summary judgment.[5] The cases therefore are not susceptible to disposition in a single proceeding and reassignment is not warranted.

**B. Reassigning the *Oak Park* Case Will Not Result in Judicial Efficiency.**

The fact that the cases are not susceptible to disposition in a single proceeding dispels the notion that judicial economy will be served by reassignment. After all, "if the cases will require different discovery, legal findings, defenses or summary judgment motions, it is unlikely that reassignment will result in a substantial judicial savings." *Williams*, 2007 WL 178309, at *3 (*citing Hollinger Int'l, Inc. v. Hollinger, Inc.*, No 04 C 0698, 2004 WL 1102327, at *2 (N.D. Ill. May 5, 2004)). Different discovery, defenses, summary judgment motions, and legal findings often will be required where the parties in the two cases are substantially different and where the legal claims in the two cases differ. *See Hollinger*, 2004 WL 1102327, at *2. Thus, reassignment generally is not warranted where there is little overlap amongst the parties in the separate proceedings and where there are different legal claims. *Id.*; *see also Goldhamer v. Nagode*, No. 07 C 5286, 2007 WL 4548228, at *2 (N.D. Ill. Dec. 20, 2007).

In a case similar to this one – where two sets of plaintiffs sought relief in part under the same federal statute but also brought separate claims under different facts – the court *refused* to reassign one of the cases. In *Goldhamer*, both sets of plaintiffs brought section 1983 actions for false arrest that occurred at the same location on the same day and during the same event. *See* 2007 WL 4548228, at *1. Both sets of plaintiffs also alleged that Chicago ordinances violated the First and Fourteenth Amendments. The court held that the plaintiffs in the two cases alleged different factual scenarios (for example, the presence of different arresting officers), and that "additional legal claims . . . will require different discovery and motions, and will generally raise

[5] In fact, this has already happened. As discussed further *infra*, the *McDonald* Plaintiffs already filed a motion for summary judgment that does not seek any relief from the Oak Park ordinance. (Dkt. No. 32.)

different legal issues than are presented to this court . . . ." *See id.*; *see also Williams*, 2007 WL 178309, at *3 (holding that additional claims prevented reassignment).

As in *Goldhamer*, the many legal and factual differences between the cases, including the differences among the plaintiffs, the differences between the two cities' ordinances, and the differences in the claims for relief, will require separate discovery, separate legal analyses, and separate dispositive motions. As a result, the Court will be required to make separate rulings and findings in the two cases even if the *Oak Park* Case is reassigned. As in *Goldhamer*, these differences outweigh the superficial similarities of bringing separate cases under the same Constitutional Amendments and will make reassignment inefficient.

In addition to the legal and factual disparities, the fact that the *McDonald* and NRA Plaintiffs have separate counsel also will add to the inefficiency of reassigning the *Oak Park* Case. A glaring example of those difficulties already has occurred. After the Court granted the Village of Oak Park's motion to reassign the *Oak Park* Case to this Court's calendar (*see* Dkt. No. 27.), but before the Oak Park Plaintiffs could even be heard on any substantive issue in the case, the *McDonald* Plaintiffs filed a motion for summary judgment. (*See* Dkt. No. 32.)

Clearly, the *McDonald* Plaintiffs' counsel did not consult the NRA Plaintiffs' counsel on the appropriate strategy for, or the timing of, pursuing summary judgment. The *McDonald* Plaintiffs' motion does nothing to advance the NRA Plaintiffs' claims regarding: (1) Oak Park's ban on the possession of handguns, (2) the exceptions to that prohibition, (3) Oak Park's prohibition on transporting rifles or shotguns, (4) the exceptions to those prohibitions, or (5) the preemption issue raised by the Oak Park Plaintiffs' complaint. Thus, already, the NRA and *McDonald* Plaintiffs are in very different procedural postures should the *Oak Park* Case be reassigned. As a result, no time or effort will be saved by reassigning the *Oak Park* Case.

## CONCLUSION

Oak Park's Motion for Reassignment is woefully inadequate at demonstrating relatedness or the need to reassign the *Oak Park* Case. But even if the motion provided more information, the myriad differences between the *Oak Park* Case and the *McDonald* Case present too many divergent legal and factual issues for the Court to reassign the *Oak Park* Case. The differences will prevent the Court from deciding the cases in a single proceeding and no increase in judicial economy will result from reassignment.

WHEREFORE, Plaintiffs Robert Klein Engler, Dr. Gene A. Reisinger and National Rifle Association of America, Inc. respectfully request that the Court vacate its order reassigning case No. 08 C 3693, and grant such further relief as the Court deems just and appropriate.

Dated: August 8, 2008

Respectfully submitted,

**ROBERT KLEIN ENGLER, DR. GENE A. REISINGER, and NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.**

BY: s/ William N. Howard
One of Their Attorneys

Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
(312) 360-6415

Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA 22030
(703) 352-7276
(*Pro Hac Vice* pending)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED: JUNE 27, 2008
08CV3696
JUDGE LEFKOW
MAGISTRATE JUDGE ASHMAN
EDA

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ROBERT KLEIN ENGLER, and DR. GENE A. REISINGER,

Plaintiffs,

v.

VILLAGE OF OAK PARK and DAVID POPE, President,

Defendants.

Civil Action No.

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiffs, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ROBERT KLEIN ENGLER and DR. GENE A. REISINGER, by and through their attorneys, Stephen P. Halbrook, Esq. and William N. Howard, Esq. (the latter of Freeborn & Peters LLP), as and for their complaint against Defendants, VILLAGE OF OAK PARK and DAVID POPE, its President, state as follows:

1. This is an action to vindicate the rights of residents of Oak Park, Illinois, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution, which guarantees the right of law-abiding citizens to keep handguns in the home for the lawful defense of their families and for other lawful purposes.

**PARTIES**

2. Plaintiff, National Rifle Association of America, Inc. (hereafter "NRA"), is a non-profit association incorporated under the laws of New York, with its principal place of business in Fairfax, Virginia. NRA has a membership of 4 million persons, some of which reside in or travel through Oak Park, Illinois. The purposes of the NRA include the protection of the right of citizens

to have firearms for the lawful defense of their families, persons, and property, and to promote public safety and law and order. NRA brings this action on behalf of itself and its members.

3.    Plaintiff, Robert Klein Engler ("Engler"), is a resident of Oak Park, Illinois, a citizen of the United States, and a member of the NRA.

4.    Plaintiff, Dr. Gene A. Reisinger ("Reisinger"), is a resident of Oak Park, Illinois, a citizen of the United States, and a member of the NRA.

5.    Numerous members of Plaintiff NRA who are citizens of the United States but not residents of Oak Park frequently travel through Oak Park, Illinois.

6.    Defendant, David Pope ("Pope"), is the President of the Village of Oak Park, which is his principal place of business. He is being sued in his official capacity.

7.    Defendant, the Village of Oak Park, is a political subdivision of the State of Illinois. Pope and the Village of Oak Park and their officers, agents and employees are sometimes hereinafter referred to as "Defendants."

## JURISDICTION

8.    Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of Illinois and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

9.    This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND

10. The Village of Oak Park prohibits possession of a handgun. The Oak Park Municipal Code provides: "It shall be unlawful for any person to possess or carry, or for any person to permit another to possess or carry on his/her land or in his/her place of business any firearm . . . ." Oak Park Municipal Code, § 27-2-1. "FIREARMS: For the purpose of this Article firearms are: pistols, revolvers, guns and small arms of a size and character that may be concealed on or about the person, commonly known as handguns." § 27-1-1.

11. It is further unlawful "to carry" a rifle, shotgun, or firearm in a vehicle, or to permit another to do so in a vehicle one owns, "or about his/her person, except that a person may carry any rifle or shotgun when on his/her land or in his/her abode or fixed place of business . . . ." § 27-2-1. There is an exemption for licensed hunters or fishermen commuting with a rifle or shotgun to or from established game areas. § 27-2-1(H). Also exempt is the transportation of weapons "broken down in a nonfunctioning state and not immediately accessible," but if it is a firearm (handgun), the transportation must not originate or terminate in Oak Park. § 27-2-1(1).

12. None of the above provisions apply to "Licensed firearm collectors." § 27-2-1 (K). "LICENSED FIREARM COLLECTOR: Any person licensed as a collector by the Secretary of the Treasury of the United States under and by virtue of Title 18, United States Code, Section 923; provided however, that a copy of said license is filed with the Chief of Police." § 27-1-1.

13. Exempt from the handgun prohibition are: "Members of established theater organizations located in Oak Park and performing a regular performance schedule to the public, utilizing only blank ammunition in the discharge of weapons only during rehearsals, classes or performances; provided further that said organization maintains possession and control over these

weapons in a safe place with a designated member of the organization when the weapons are not in use. . . ." § 27-2-1 (L).

14. Violation is punishable with a fine of not more than $1,000 for the first offense and $2,000 for a subsequent offense. § 27-4-1 (A). Weapons involved in offenses are to be confiscated and destroyed. § 27-4-1 (C). A motor vehicle which a police officer has probable cause to believe contains a weapon in violation of the above is subject to seizure and impoundment, and may be released on payment of a $500 fine. § 27-4-4.

15. It is unlawful to sell or give away a "firearm" as defined, whether by a dealer or a single individual, without a license approved by the Chief of Police and the Village Manager. §§ 27-1-3, -4, -5. A firearm may only be transferred to law enforcement entities. § 27-1-2.

16. Defendant-Pope is responsible for enforcing the above provisions through law enforcement agencies under his direction and control.

17. Defendant-Pope and the law enforcement agencies that operate under his supervision have no legal duty to protect Oak Park residents, including Plaintiffs, from robbery, rape, murder, or any other crime.

**FACTS**

18. Plaintiffs, Engler and Dr. Reisinger, as well as other members of Plaintiff NRA, reside in Oak Park. But for Oak Park Municipal Code, § 27-2-1, and the enforcement thereof by Defendant-Pope, Plaintiffs and numerous other NRA members who reside in Oak Park would forthwith (a) lawfully obtain handguns to keep at home for lawful purposes including self-protection and the protection of their families and loved ones and (b) transfer handguns which they lawfully store outside the jurisdiction to their homes. Should they do so in violation of such provisions, they would be subject to arrest, prosecution, imprisonment, and fines.

19.     Plaintiffs, and numerous members of Plaintiff NRA either travel through or need to travel through Oak Park.  Oak Park Municipal Code § 27-2-1, and the enforcement thereof by Defendant Pope, subjects such persons who are otherwise lawfully transporting firearms to the threat of arrest, prosecution, imprisonment, and fines or requires them to travel on other routes to avoid arrest, prosecution, imprisonment, and fines.

20.     Plaintiffs, Engler and Dr. Reisinger, lawfully own and store handguns outside the Village of Oak Park.  But for Oak Park Municipal Code § 27-2-1, they would forthwith keep their handguns at their residences in the Village of Oak Park.  But for Oak Park Municipal Code § 27-2-1, they have not brought their handguns into the Village of Oak Park so that they could be used for self-protection.

21.     Plaintiffs, Engler and Dr. Reisinger, and numerous members of Plaintiff NRA, wish to obtain and possess handguns to keep in their homes for lawful defense from any unlawful, sudden, deadly attack by an intruder and to lawfully transport their handguns through the Village of Oak Park.  However, individuals face arrest, prosecution, and incarceration should they possess a handgun in violation of Oak Park Municipal Code, § 27-2-1.  But for § 27-2-1, members of Plaintiff NRA would imminently obtain handguns pursuant to the laws of the United States and the State of Illinois.

22.     As a proximate cause of Oak Park Municipal Code § 27-2-1, and the enforcement thereof by Defendants and their agents and employees, Plaintiffs and members of Plaintiff NRA are subjected to irreparable harm in that they are unable to obtain handguns to protect themselves in their homes, subjecting them to endangerment from criminal intruders and violating their Constitutional rights as set forth herein.

**COUNT I**

**(Second and Fourteenth Amendments)**

23. Paragraphs 1 through 22 are realleged and incorporated herein by reference.

24. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Fourteenth Amendment to the United States Constitution provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Second Amendment is applicable to the States and political subdivisions thereof through the Fourteenth Amendment.

25. Because Oak Park Municipal Code, § 27-2-1 prohibits the possession of a handgun, it infringes on the right of the people, including Plaintiffs and members of Plaintiff NRA, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution and is thus null and void.

WHEREFORE, Plaintiffs pray that the Court:

A. Enter a declaratory judgment that Oak Park Municipal Code, § 27-2-1 is null and void because it infringes on the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution.

B. Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Oak Park Municipal Code, § 27-2-1.

C. Grant such other and further relief as may be proper.

D. Award Plaintiffs attorneys' fees and costs.

## COUNT II

**(Equal Protection)**

26. Paragraphs 1 through 25 are realleged and incorporated herein by reference.

27. The Fourteenth Amendment to the United States Constitution provides that no State shall deny to any person the equal protection of the laws.

28. Possession of handguns is prohibited to persons generally, including Plaintiffs and members of Plaintiff NRA. Oak Park Municipal Code, § 27-2-1. However, the following categories of persons are exempted from the prohibition:

(a) "Licensed firearm collectors," § 27-2-1 (K); and,

(b) "Members of established theater organizations located in Oak Park and performing a regular performance schedule to the public," § 27-2-1 (L).

29. The above exemptions irrationally discriminate against all non-exempted persons, including Plaintiffs and members of Plaintiff NRA, denying to them the equal protection of the laws, in violation of the Fourteenth Amendment.

WHEREFORE, Plaintiffs pray that the Court:

A. Enter a declaratory judgment that Oak Park Municipal Code, § 27-2-1 is null and void because it, in conjunction with § 27-2-1(K) & (L), violates the equal protection of the laws guaranteed by the Fourteenth Amendment.

B. Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Oak Park Municipal Code, § 27-2-1.

C. Grant such other and further relief as may be proper.

D. Award Plaintiffs attorneys' fees and costs.

**COUNT III**

**(18 U.S.C. § 926A)**

30. Paragraphs 1 through 29 are realleged and incorporated herein by reference.

31. Plaintiffs and members of Plaintiff NRA may lawfully transport firearms through the Village of Oak Park pursuant to the Firearms Owners' Protection Act of 1986 ("FOPA"), 18 U.S.C. § 926A, which provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

32. However, Oak Park makes it unlawful to possess a handgun, or to carry a rifle, shotgun, or firearm in a vehicle, or to permit another to do so in a vehicle one owns. Oak Park Municipal Code, § 27-2-1. Exempted are: "Licensed hunters or fishermen while commuting to or from established game areas; provided, however, that this exemption shall not apply to the possession or carrying of 'firearms'" (handguns). § 27-2-1(H). Also exempt are: "Transportation of weapons broken down in a nonfunctioning state and not immediately accessible." § 27-2-1(1).

33. The Village of Oak Park thus limits transportation of rifles and shotguns to licensed hunters and fishermen and otherwise requires weapons to be broken down in a nonfunctioning state, contrary to 18 U.S.C. § 926A. Persons transporting rifles, shotguns, and handguns in compliance with § 926A through Oak Park are thereby subject to arrest and prosecution.

34. The above provisions and the enforcement thereof by Defendants violate the entitlement of persons, including Plaintiffs and members of Plaintiff NRA, to transport firearms, including rifles, shotguns, and handguns, pursuant to 18 U.S.C. § 926A, and are thus preempted and void.

WHEREFORE, Plaintiffs pray that the Court:

A. Enter a declaratory judgment that Oak Park Municipal Code, § 27-2-1 is null and void because it is preempted by 18 U.S.C. § 926A.

B. Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Oak Park Municipal Code, § 27-2-1.

C. Grant such other and further relief as may be proper.

D. Award Plaintiffs attorneys' fees and costs.

Respectfully Submitted,

**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ROBERT KLEIN ENGLER,** and **DR. GENE A. REISINGER,**
Plaintiff

BY: s/ William N. Howard
One of Their Attorneys

Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
(312) 360-6415

Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA 22030
(703) 352-7276
(*Pro Hac Vice pending*)

# GROUP EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d
Page 1
Not Reported in F.Supp.2d, 2004 WL 2495642 (N.D.Ill.), 94 Fair Empl.Prac.Cas. (BNA) 1132
**2004 WL 2495642 (N.D.Ill.)**

**C**
Donahue v. Elgin Riverboat Resort
N.D.Ill.,2004.

United States District Court,N.D. Illinois, Eastern Division.
Darryl W. DONAHUE; Lawrence D. Williams; Jennifer Thomas; Noelle Olivier; Keith Moody; Delores Miller; Robert Curtington; Ramona Camprindo; Evelyn D. Norris; and Tamara R. Turner, Plaintiffs,
v.
ELGIN RIVERBOAT RESORT, d/b/a Grand Victoria Riverboat; Nevada Landing Partnership; and RBG L.P., Defendants.
**No. 04 C 816.**

Sept. 28, 2004.

Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, IL, for Plaintiffs.
Jane M. McFetridge, Joel W. Rice, Matt David Strubbe, Fisher and Phillips LLP, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

GUZMÁN, J.
*1 Before the Court is Defendants Elgin Riverboat Resort d/b/a Grand Victoria Riverboat, Nevada Landing Partnership, and RBG, L.P.'s (collectively "Elgin") Motion for a Reassignment Of Related Cases pursuant to Local Rule 40.4. For the reasons that follow, the motion is denied.

*BACKGROUND*

On November 6, 1998, Plaintiffs Lisa Ellis, Marcia English, Yvonne Mason, and Derrick Denson filed a putative class action suit, *Ellis v. Elgin Riverboat Resort d/b/a Grand Victoria Casino,* No. 98 C 7093, alleging that Elgin engaged in a pattern and practice of discriminatory hiring based on race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. On March 27, 2000, Judge Gottschall conditionally certified the class pursuant to Federal Rule of Civil Procedure 23(b)(2), On August 21, 2003, Magistrate Judge Ashman [FN1] decertified the class because the Ellis plaintiffs failed to demonstrate that a common question of law or fact existed, that their claims were typical of those of the class, or that they could adequately represent the class. *See Ellis v. Elgin Riverboat Resort,* 217 F.R.D. 415, 427-29 (N.D.Ill.2003). After decertification, five former class members filed individual lawsuits, the lowest-numbered of which is the present case.[FN2]Elgin now seeks a finding that all four individual suits are related and asks that they be reassigned to this Court.[FN3]

FN1. The parties consented to the jurisdiction of the magistrate, and on November 7, 2001, the Ellis lawsuit was reassigned to Magistrate Judge Ashman pursuant to Local Rule 73.1.

FN2. The five new lawsuits are: (1) *Donahue v. Elgin Riverboat Resort,* No. 04 CV 816 (Judge Guzman); (2)*Burks v. Elgin Riverboat Resort,* No. 04 CV 818 (Judge Lefkow); (3)*Atkins v. Elgin Riverboat Resort,* No. 04 C 819 (Judge Kennelly); (4)*Okoh v. Elgin Riverboat Resort,* No. 04 C 936 (Judge Plunkett); and (5)*Dismuke Cureton v. Elgin Riverboat Resort,* No. 04 C 4132 (Judge Leinenweber).*Dismuke Cureton* was filed after the present motion, and Elgin informed the Court of its existence through a supplemental notice.

FN3. More precisely, Elgin asks that all five cases be reassigned to Magistrate Judge Ashman or alternatively, to this Court. However, Elgin it offers no case law or rule that would allow this Court to transfer all five cases to Judge Ashman. Elgin also provides no support for its al-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 2
Not Reported in F.Supp.2d, 2004 WL 2495642 (N.D.Ill.), 94 Fair Empl.Prac.Cas. (BNA) 1132
**2004 WL 2495642 (N.D.Ill.)**

ternative request that if the cases are consolidated, they be referred to Judge Ashman, who is not the magistrate assigned to the present case, for pretrial supervision.

*DISCUSSION*

To have a case reassigned based on relatedness, the movant must satisfy both Local Rule 40.4(a) and (b).*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,* No. 02 C 5893, 2003 U.S. Dist. LEXIS 7466, at *3 (N.D.Ill. May 5, 2003). This Court has the sound discretion whether to reassign a case under Local Rule 40.4. *Clark v. Ins. Car Rentals Inc.,* 42 F.Supp.2d 846, 847 (N.D.Ill.1999). Local Rule 40.4(a) provides that:

Two or more civil cases may be related if one or more of the following conditions are met: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one or more of the classes involved in the cases is or are of the same.

N.D. Ill. L.R. 40.4(a).

Elgin argues the lawsuits satisfy Local Rule 40.4(a)(2) because all five cases are brought against the same defendant, involve a violation of Title VII of the Civil Rights Act of 1964 based on allegations that the plaintiffs were not hired because of their race, and "[t]herefore, on a general level," involve the same legal issues. (Defs.' Mot. Reassignment Related Cases Ex. A, Mot. at 4).[FN4] Elgin's motion, however, fails to identify any particular issues of fact or law that are common to all plaintiffs. *See* Local Rule 40.4(c)(1) (requiring that a motion for reassignment "shall ... set forth the points of commonality of the cases in sufficient detail to indicate that the cases are related within the meaning of section (a)"). As Elgin successfully argued before Judge Ashman in its motion to decertify, the hiring process was decentralized and subjective, and each of the hiring decisions rested on a unique set of facts, including the applicants' experience and the casino's hiring needs. *See Ellis,* 217 F.R.D. at 426-27;*see also Davis v. Quebecor World,* No. 01 C 8014, 2002 WL 27660, at *4 (N.D.Ill. Jan.10, 2002) (refusing to find cases related where, among other things, the charges of discrimination do not involve the same decisionmakers).

FN4. Defendants' motion incorporates by reference the motion for reassignment it originally presented to Judge Ashman on March 25, 2004. As a magistrate judge, Judge Ashman could not reassign later-filed cases pending before district judges, and the motion was therefore denied without prejudice. *See* N.D. Ill. L.R. 40.4(c) ("Where one or more of the cases claimed to be related is assigned to a magistrate judge on consent and one or more of the remaining cases is assigned to a district judge, the motion shall be filed with the district judge having the lowest-numbered case.").

***2** Elgin maintains that the standards for class certification and a finding of relatedness are not the same, but the decertification order is certainly instructive as to the lack of commonality among the various plaintiffs' claims. Moreover, Elgin has failed to specify any common issues of fact and law other than those resolved in the decertification order which would warrant a finding of relatedness. *Cf. Murry v. Am.'s Mortgage Banc, Inc.,* No. 03 C 5811, 2004 WL 407010, at *2 (N.D.Ill. Mar.1, 2004) (finding relatedness where both cases will necessarily involve a determination of the legality of the defendant's specific actions in procuring mortgage loans); *Fairbanks Capital Corp. v. Jenkins,* No. 02 C 3930, 2002 WL 31655277, at *2 (N.D.Ill. Nov.25, 2002) (holding that cases are related where they each involve the legality of a defendant's particular lending practice); *Smith v. N.E. Ill. Univ.,* No. 98 C 3555, 2002 WL 377725, at *4 (N.D.Ill. Feb.28, 2002) (finding relatedness where cases have common issues of a hostile work envir-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 3
Not Reported in F.Supp.2d, 2004 WL 2495642 (N.D.Ill.), 94 Fair Empl.Prac.Cas. (BNA) 1132
**2004 WL 2495642 (N.D.Ill.)**

onment). The fact that the cases are brought against the same defendant and generally involve the same types of allegations are not sufficient to show the cases are related pursuant to Local Rule 40.4(a). Therefore, Elgin's motion must be denied on this basis alone.

Furthermore, even if Elgin had shown the cases are related, the motion does not demonstrate that reassignment is proper under Local Rule 40.4(b), which provides:

[A] case may be reassigned to the calendar of another judge if it is found to be related to an earlier-numbered case assigned to that judge and each of the following criteria is met: (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding.

N.D. Ill. L.R. 40.4(b); *see* N.D. Ill. L.R. 40.4(c)(2) (requiring a motion for reassignment to "indicate the extent to which the conditions required by section (b) will be met if the cases are found to be related").

The first and third conditions are satisfied here because all five cases are pending in the Northern District of Illinois and the present case has not progressed to the point that it would substantially delay the litigation if the other cases were reassigned as related. However, Elgin has failed to show that it has met the second and fourth conditions.

As to the fourth requirement, whether the cases are susceptible of disposition in a single proceeding, Elgin cites *Fairbanks Capital,* 2002 WL 31655277, for the proposition that Local Rule 40.4(b)(4)"merely means that a ruling in one case will likely be applicable or even dispositive in the other case."(Defs.' Mot. Reassignment Related Cases Ex. A, Mot. at 6.) Unlike the present case, however, resolution of the common issue in *Fairbanks Capital* would be "outcome-determinative" of the same issue in the other cases, and thus the cases were susceptible of determination in a single proceeding. *See Fairbanks Capital,* 2002 WL 31655277, at *3. In this case, each individual case relies on a different set of facts, and a finding in one case would not be dispositive of any issues in the other cases. Therefore, Elgin has failed to satisfy Local Rule 40.4(b)(4).

***3** For the same reasons, Elgin has not shown that reassignment would result in a "substantial saving of judicial time and effort," the second necessary condition. *See* N.D. Ill. L.R. 40.4(b)(2). As explained in detail in the order decertifying the *Ellis* class, each plaintiff's claim requires individualized proof and is subject to unique defenses. *See Ellis,* 217 F.R.D. at 429. Thus, each plaintiff's claims will have to be separately litigated, whether in one proceeding or in four separate proceedings. Local Rule 40.4(b)(2) requires a "substantial saving" of judicial resources, and Elgin has failed to demonstrate reassignment would result in the saving of even a single trial day. Accordingly, the cases must not be reassigned pursuant to Local Rule 40.4(b).

*CONCLUSION*

For the foregoing reasons, Defendant Elgin Riverboat Resort d/b/a Grand Victoria Riverboat, Nevada Landing Partnership and RBG, L.P.'s Motion for a Reassignment of Related Cases pursuant to Local Rule 40 .4 [doc. no. 5-1] is denied.

SO ORDERED

N.D.Ill.,2004.
Donahue v. Elgin Riverboat Resort
Not Reported in F.Supp.2d, 2004 WL 2495642 (N.D.Ill.), 94 Fair Empl.Prac.Cas. (BNA) 1132

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# GROUP EXHIBIT B-2

C
Goldhamer v. Nagode
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
Don GOLDHAMER and Robin Schirmer, Plaintiffs,
v.
Lt. NAGODE, et al., Defendants.
**No. 07 C 5286.**

Dec. 20, 2007.

Jonathan I. Loevy, Arthur R. Loevy, Kurt Henry Feuer, Loevy & Loevy, Jeffrey H. Frank, Law Offices of Jeffrey Frank, Charles Nissim-Sabat, Chicago, IL, for Plaintiffs.
Devlin Joseph Schoop, Joseph Michael Gagliardo, Lawrence Jay Weiner, Laner, Muchin, Dombrow, Becker, Chicago, IL, for Defendants.

***MEMORANDUM OPINION***

SAMUEL DER-YEGHIAYAN, District Judge.
***1** This matter is before the court on Defendants' motion to reassign Case No. 07-cv-5286, *Goldhamer v. Nagode,* to this court pursuant to Rule 40.4 of the Local Rules of the United States District Court for the Northern District of Illinois ("L.R.40.4"). For the reasons stated below, we deny Defendants' motion to reassign.

**BACKGROUND**

On July 2, 2006, Plaintiff Melissa Woo ("Woo"), Plaintiff Crystal Wilson ("Wilson"), Plaintiff Megan Gallagher ("Gallagher"), (4) Plaintiff Alberto Guevarra ("Guevarra"), Plaintiff Don Goldhamer ("Goldhamer"), and Plaintiff Robin Schirmer ("Schirmer") were all allegedly present at the taste of Chicago. Sometime that day, City of Chicago Police Lt. Al Nagode ("Nagode") allegedly issued an order to disperse, pursuant to an ordinance, to a large group of people gathered near a United States Armed Services information booth. Subsequently, Wilson, Gallagher, Guevarra, Goldhamer and Schirmer were allegedly arrested at different times by different members of the Chicago Police Department and each was charged with disorderly conduct. Woo individually alleges she was arrested prior to the order to disperse.

On July 6, 2007, Woo, Wilson, Gallagher, and Guevarra (collectively referred to as "Woo Plaintiffs") filed a civil rights action, Case No. 07-cv-3818 ("Woo Action"), against Nagode, other Chicago Police officers, and the City of Chicago ("City"). On September 19, 2007, Goldhamer and Schirmer (collectively referred to as "Goldhamer Plaintiffs") filed a civil rights action, Case No. 07-cv-5286 ("Goldhamer Action"), against Nagode, other Chicago Police officers (not also named in the Woo Action), and the City. The Woo Action was assigned to this court and the Goldhamer Action was assigned to another judge of this district. In the Woo Action, the Woo Plaintiffs have brought a claim under 42 U.S .C. § 1983 ("Section 1983") for false arrest and pendant state law claims for malicious prosecution. In the Goldhamer Action, the Goldhamer Plaintiffs have also brought a claim under Section 1983 for false arrest and pendant state law claims for malicious prosecution. In addition, the Goldhamer Plaintiffs have brought several other claims under Section 1983, a *Monell* claim against the City of Chicago, and other constitutional claims including a facial challenge to the constitutionality of the City's disorderly conduct ordinance.

On October 3, 2007, the Defendants in the Goldhamer Action ("Goldhamer Defendants") filed the instant motion to reassign the Goldhamer Action to this court to be consoli with the Woo Action, pursuant to L.R. 40.4. The Goldhamer Plaintiffs oppose the motion and the proposed consolidation of the two cases, arguing that Defendants have not met the requirements of L.R. 40.4 for consolidation since they have not shown that the actions are sufficiently

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

similar.

**LEGAL STANDARD**

Northern District of Illinois Local Rule 40.4(b) ("L.R.40.4(b)") provides that a case may be reassigned to the calendar of another judge if it is found to be related to an earlier-numbered case assigned to that judge and each of the following criteria are met:

***2** (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding.

N.D. Ill. L.R. 40.4(b).

**DISCUSSION**

In exercising our discretion on the issue of consolidation and reassignment, we look to the Local Rules for guidance. The criteria that courts consider for reassignment of a case are set out in L.R. 40.4(b). The first factor under the Local Rules standard is not in dispute. Both matters are pending in United States District Court for the Northern District of Illinois. However, the parties dispute the remaining three factors.

Under Local Rule 40.4, the burden is on the moving party to specifically identify why each of the factors has been met, and the motion should be denied if the moving party fails to satisfy each of the requirements. *Williams v. Walsh Construction,* 2007 WL 178309, at *2 (N.D.Ill.2007). The Goldhamer Plaintiffs argue that "there are different facts and legal claims that will require different discovery, legal findings, defenses and summary judgment motions."(Gold. P Resp. 5-10). They argue that, based on the factual and legal differences in the two cases, the Goldhamer Defendants have not shown that consolidation would likely result in the substantial saving of judicial time and effort and that the cases are not susceptible to disposition in a single proceeding. We agree.

*I. Alleged Factual and Legal Distinctions Between the Two Actions*

Based on the factual allegations that exist in the pleadings filed thus far in the Woo Action and the Goldhamer Action, it is clear that there are numerous alleged factual distinctions between the two actions. The Goldhamer Plaintiffs have alleged that they were not members of the same group as the Woo Plaintiffs and that they were not participating in a group protest with the Woo Plaintiffs. (Gold.Compl.Par. 8). The Goldhamer Plaintiffs specifically point out that they have alleged that Goldhamer alone was not handing out leaflets, and thus did not disobey the order to disperse. (Gold. P Resp. 2). The Goldhamer Plaintiffs further allege that the Woo Plaintiffs were each arrested by officers who were not involved in the arrest of the Goldhamer Plaintiffs and who are not named in the Goldhamer Action. (Gold.Compl.Par. 20). The Goldhamer Plaintiffs also point out that it is alleged that one of the Woo Plaintiffs was arrested prior to the order to disperse that was issued by Nagode. (Gold.Compl.Par. 14).

It is also clear from the pleadings that the Goldhamer Action and the Woo Action involve different legal claims as well. Specifically, there are additional claims in the Goldhamer Action which make that case significantly different. In addition to the Section 1983 claims and pendant state law claims for malicious prosecution that are duplicated in the Woo Action, the Goldhamer Plaintiffs have also brought other claims under Section 1983, a *Monell* claim against the City of Chicago, and other constitutional claims including a facial challenge to the constitutionality of the City's disorderly conduct ordinance. (Gold.Compl.25-31, 50-52). These additional legal claims that exist in the Goldhamer Ac-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

tion will require different discovery and motions, and will generally raise different legal issues that are presented to this court in the Woo Action.

*II. Factors for Consolidation*

*3 Based on the factual and legal differences between the two Actions, the Goldhamer Defendants have not met the second, third and fourth prong of the local rules standard. The handling of both cases by one judge will not likely result in the substantial saving of judicial time and effort since different individual police officers, other than Nagode, are involved in the two actions. The only fact cited by the Goldhamer Defendants in support of their argument that consolidation of the Woo Action and the Goldhamer Action would save substantial time is that there may be overlapping third-party witnesses in the two cases. (Gold. D Reply 6-7). The Goldhamer Defendants have the burden of satisfying "stringent criteria" to qualify for case reassignment. *Williams,* 2007 WL 178309 at *2. Here, the mere fact that third-party witnesses may overlap in both cases is not enough to satisfy these stringent requirements.

It is also clear that the Woo Action has proceeded to a point where consolidation will substantially delay that proceeding. The Woo Defendants have answered the amended complaint in the Woo Action and this court has already set discovery dates. Consolidation will delay that action.

Finally, it is clear from the factual and legal distinctions between the two actions that both would not be susceptible to disposition in a single proceeding, and may require separate trials. As stated above, the adjudication of Goldhamer's claims, in particular, are likely to involve different legal issues since Goldhamer is alleging that he did not disobey the order and both Goldhamer Plaintiffs are challenging the constitutionality of the ordinance. Based on the information presented to this court, the Goldhamer Defendants have not established that this matter is appropriate for consolidation under the local rules. Therefore, we exercise our discretion and deny the Goldhamer Defendants' motion to reassign.

**CONCLUSION**

Based on the foregoing analysis, we deny the Goldhamer Defendants' motion to reassign.

N.D.Ill.,2007.
Goldhamer v. Nagode
Slip Copy, 2007 WL 4548228 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# GROUP EXHIBIT B-3

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1102327 (N.D.Ill.)
**2004 WL 1102327 (N.D.Ill.)**

Page 1

**H**
Hollinger Intern., Inc. v. Hollinger, Inc.
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
HOLLINGER INTERNATIONAL, INC., Plaintiff,
v.
HOLLINGER, INC., et al. Defendants.
**No. 04 C 0698.**

May 5, 2004.

Ian Simmons, Henry C. Thumann, O'Melveny & Myers, Washington, DC, Jonathan Rosenberg, Andrew J. Geist, O'Melveny & Myers, New York, NY, Mark V. Chester, Steven Lawson, Joan M. Meyers, Johnson & Colmar, Chicago, IL, for Plaintiff.
Nathan P. Eimer, Andrew George Klevorn, Adam B. Deutsch, Vanessa G. Jacobsen, Eimer Stahl Klevorn & Solberg, LLP, Brian L. Crowe, Cary E. Donham, Douglas Michael Ramsey, Shefsky & Froelich, Ltd., Paula Enid Litt, Veronica Gomez, Lisa Beth Swedenborg, Schopf & Weiss, Joseph J. Duffy, Stetler & Duffy, Ltd., Stephen C. Voris, Burke, Warren, MacKay & Serritella, P.C., Chicago, IL, Laurent S. Wiesel, John L. Warden, Robin D. Fessel, David H. Braff, James V. Masella, III, Sullivan & Cromwell, Greg A. Danilow, Richard A. Rothman, Anthony Albanese, Weil, Gotshal & Manges LLP, Ira Lee Sorkin, Donald A. Corbett, Carter, Ledyard & Milburn, New York, NY, for Defendants.

*MEMORANDUM AND ORDER*

MANNING, J.
***1** The Present matter comes before this Court on Defendant Hollinger, Inc.'s ("Inc.")' Motion for Finding of Relatedness and Reassignment of Actions. Pursuant to Local Rule 40.4, Inc. seeks to have the following shareholder class actions ("the Class Actions") assigned to this Court: *Teachers Retirement System of Louisiana v. Black, et al.,* No. 04 C 0834 (Judge Coar); *Mozingo v. Black, et al.,* No. 04 C 1276 (Judge Manning); and *Washington Area Carpenters Pension and Retirement Fund v. Hollinger International, Inc.,* No. 04 C 2505 (Judge Anderson).[FN1] For the Reasons set forth below, this Court DENIES this motion on the grounds the Court does not find that all four of the requirements in Local Rule 40.4(b) are met.

FN1. The Plaintiffs in case Nos. 04 C 0834 and 04 C 1276 have joined in Inc.'s mo- tion.

Plaintiff Hollinger International, Inc. ("International") brought this diversity action against its controlling shareholders, which includes Inc., the Ravalston Corporation, and Conrad Black, and three other related entities and persons ("the International Action"). International alleges that Defendants breached their common law fiduciary duties and were unjustly enriched by accepting improper payments from International, including "non-compete" payments and "management service fee payments." In all, International seeks to recover over $200 million in alleged wrongful payments.

Subsequent to the filing of the International Action, purchasers of International's stock brought the Class Actions alleging misconduct under Federal and Illinois securities laws against International, the International Action Defendants, International's former outside auditor, and International's current and former board members. The Class Action Plaintiffs seek to certify a class consisting of all purchasers of International stock during the relevant time period. The Class Action Plaintiffs also seek to recover the dilution in value of their shares caused by alleged fraudulent and misleading statements by International and its directors, owners, and auditors, which allegedly stem from the "non-compete" payments and "management service fee payments" made to the International Defendants.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 2
Not Reported in F.Supp.2d, 2004 WL 1102327 (N.D.Ill.)
**2004 WL 1102327 (N.D.Ill.)**

Whether to reassign a case under Local Rule 40.4 lies within the sound discretion of this Court. *Clark v. Ins. Car Rentals Inc.,* 42 F.Supp.2d 846, 847 (N.D.Ill.1999). To have a case reassigned based on relatedness, the moving parties must meet the requirements of both Local Rule 40.4(a) and (b).*Lawrence Jaffe Pension Plan v. Household Int'l, Inc.,* No. 02 C 5893, 2002 WL 21011757, at *1 (N.D.Ill. May 5, 2003). Local Rule 40.4(a) states that "[t]wo or more civil cases may be related if" at least one of the conditions are met:

(1) the cases involve the same property;

(2) the cases involve some of the same issues of fact or law;

(3) the cases grow out of the same transaction or occurrence; or

(4) in class action suits, one or more of the classes involved in the cases is or are of the same.

Local Rule 40.1(a).

***2** The second and more onerous of the reassignment criteria, *see, e.g.,Clark,* 42 F.Supp.2d at 848, states that a case may be reassigned only if "each of the following criteria are met":

(1) both cases are pending in this Court;

(2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;

(3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and

(4) the cases are susceptible of disposition in a single proceeding.

Local Rule 40.4(b).

Here, although International admits that all the actions "involve, at least in part, [the International Defendants'] misconduct in diverting International's assets to their own uses through improper non-competition fees and excessive management fees," it contends that factor (2)-(4) of Local Rule 40.4(b) are not met because "there are vast differences between the substantive claims, remedies, and defenses" in the International Action and the Class Actions.

In support of this contention, International cites *Lawrence Jaffe Pension Plan,* 2002 WL 21011757, a case in which Judge Guzman denied a motion to reassign a shareholder class action and a corporate derivative action, on the grounds that subsections (b)(2) and (4) of Local Rule 40.4 were not met.[FN2] The plaintiff in the derivative action alleged that corporate officers of the defendant corporation breached their duties of loyalty and due care and were unjustly enriched by wasting corporate assets. *Id.* at *1. In the shareholder class action, the plaintiffs alleged that the CEO and CEO made material misrepresentations in violation of federal securities law. *Id.* In finding that the two cases where related under Local Rule 40.4(a), the Court found that both actions involved "some common issues of fact," namely that the underlying wrong doing in each case was the same. *Id.*

FN2. The Court notes that *Lawrence Jaffe Pension Plan* is the only case in this district which involved a Local Rule 40.4 motion to reassign a shareholder class action and a corporate derivative action. Although Inc. attempts to distinguish this case, this Court finds it closely analogous to the present matter.

Judge Guzman, however, found that reassignment would not result in "substantial saving of judicial time and effort," as required by subsection (b)(2).*Id.* at *2. In making this finding, the court noted that the two actions "are fundamentally distinct" in that the class action alleges violations of federal securities law on behalf of a class of stock purchasers, while the derivative action alleges common law breach of fiduciary duty violations. *Id.*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 3
Not Reported in F.Supp.2d, 2004 WL 1102327 (N.D.Ill.)
**2004 WL 1102327 (N.D.Ill.)**

This distinction was important because the facts required to prove a federal securities violation "are clearly substantially different" than the facts needed to hold the defendants liable for breach of fiduciary duty.*Id.* The court also noted that while the cases included some of the same defendants, there were numerous defendants named in the derivative action not named in the securities action. *Id.* Consequently, Judge Guzman held that his "handling of both cases would not be likely to result in substantial saving of judicial time and effort."[FN3]*Id.*

FN3. In making this finding, Judge Guzman acknowledged that "there would be some degree of savings of judicial time and effort," but not "substantial savings" as required by subsection (b)(2).

***3** The Court also found that subsection (b)(4) was not met because the two actions "are fundamentally distinct ... making it extremely unlikely that the court could dispose of both cases in a single proceeding .... [in that] [a]ny motions for summary judgment would be unique to each particular case."*Id.* at *3. Accordingly, Judge Guzman denied the motion to reassign.

Here, this Court finds that, similar to *Lawrence Jaffe Pension Plan,* the criteria of Local Rule 40.4(b) are not met. Although the International Action and the Class Actions involve some of the same factual issues, resolving these issues together will not result in substantial judicial savings, as required by subsection (b)(2). The actions involve "fundamentally distinct" claims-breach of common law duties and securities law claims-which will require different discovery and legal findings. For example, the International Action is an action by International seeking recovery of the funds allegedly misappropriated by the International Defendants, while the Class Actions seek redress for the loss in value of the class members' stock. These different forms of relief will require different discovery and will require this Court to make distinct factual and legal findings. Likewise, the Class Actions will require the Court to decide whether to certify a class and which attorney to appoint as class counsel. Such a determination, which is not required in the International Action, will, in most likelihood, require discovery and substantial time to brief all the relevant legal and factual issues. Similarly, while the International Action names six defendants, the Class Actions seek recovery from not only these six but from International, its former outside auditor, and its current and former board members. Consequently, this Court finds granting the motion to reassign will not likely result in substantial judicial savings, as required by subsection (b)(2).

Accordingly, this Court DENIES the Motion for Finding of Relatedness and Reassignment of Actions.

CONCLUSION

For the reasons discussed, the Court DENIES the Motion for Finding of Relatedness and Reassignment of Actions. It is so ordered.

N.D.Ill.,2004.
Hollinger Intern., Inc. v. Hollinger, Inc.
Not Reported in F.Supp.2d, 2004 WL 1102327 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# GROUP EXHIBIT B-4

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21011757 (N.D.Ill.)
**2003 WL 21011757 (N.D.Ill.)**

Page 1

**H**

Lawrence E. Jaffe Pension Plan v. Household Intern., Inc.
N.D.Ill.,2003.
Only the Westlaw citation is currently available.

United States District Court,N.D. Illinois, Eastern Division.

LAWRENCE E. JAFFE PENSION PLAN, On Behalf of Itself and All Others Similarly Situated, Plaintiff,

v.

HOUSEHOLD INTERNATIONAL, INC., Arthur Andersen, LLP, W.F. Aldinger, and D.A. Schoenholz, Defendants.

**No. 02 C 5893.**

May 5, 2003.

*MEMORANDUM OPINION AND ORDER*

GUZMAN, J.

*1 Before the Court is Lawrence E. Jaffe Pension Plan's ("Jaffe") Motion for a Finding of Relatedness pursuant to Local Rule ("LR") 40.4 between *Williamson v. Aldinger,* case no. 03 C 331, related to a case pending before this Court, *Jaffe v. Household International Inc.,* case no. 02 C 5893.For the following reasons, the Court denies the motion with prejudice.

*BACKGROUND*

Presently pending before another judge of this Court is *Williamson v. Aldinger.*In that case, plaintiff Leland Williamson, has sued defendants derivatively on behalf of Household International, Inc. and alleges that defendant members of the board of directors of Household International and several of its top officers violated the Sarbanes-Oxley Act, breached their fiduciary duties of loyalty and due care, wasted corporate assets, abused their control, and were unjustly enriched by their improper actions. (Pl.'s Mot. Finding Relatedness at Ex. A, ¶ 1 (hereinafter "Pl.'s Mot.").) Presently pending before this Court is *Jaffe v. Household International, Inc.* Jaffe alleges in a shareholder class action that defendant Household International materially misrepresented critical information and filed false and misleading statements in violation of Rule 10b-5 of the Security Exchange Act, 17 C.F.R. § 240.10b-5. (Pl.'s Mot. at Ex. A, ¶¶ 1-5.)

*DISCUSSION*

In order to reassign a case under LR 40.4, the movant must satisfy the requirements of both LR 40.4(a) and LR 40.4(b). First, under LR 40.4(a), "[t]wo or more cases may be related if one or more of the following conditions are met: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one or more of the classes involved in the cases is or are of the same."

Here, the movant satisfies the third criterion that the cases involve *some* of the same issues of fact or law. Both the shareholder class action in *Jaffe* and the derivative suit in *Williamson* are based on allegations that Household International misrepresented financial information to the public and to its shareholders by overstating its profits, and misled the public and its shareholders by failing to disclose critical information regarding its general accounting practices. Specifically, Count 1 of *Jaffe* alleges that defendant Household International and its Chief Executive Officer ("CEO") and Chief Operating Officer ("COO") violated Section 10b-5 of the Securities and Exchange Act by releasing materially false and misleading statements, reports, and press releases. Similarly, in *Williamson,* to establish violations of the Sarbanes-Oxley Act and common law, plaintiffs rely in part on the conduct of the CEO, COO, as well as fourteen other directors in relation to the alleged materially false and misleading statements by the board of Household Interna-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 2
Not Reported in F.Supp.2d, 2003 WL 21011757 (N.D.Ill.)
**2003 WL 21011757 (N.D.Ill.)**

tional. To resolve at least some of the issues in both cases, a court must make a factual determination as to the conduct relating to the representations made by the CEO and COO of Household International. Therefore, the cases involve at least some common issues of fact, satisfying Rule 40.4(a)(2).

***2** Second, LR 40.4(b) requires that each of the following four criteria is met:

(1) both cases are pending in this Court;

(2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort

(3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and

(4) the cases are susceptible of disposition in a single proceeding.

Here, the first and third conditions are satisfied. Both cases are pending before the United States District Court for the Northern District of Illinois, and the *Jaffe* case has not progressed to the point where designating the *Williamson* case as related would be likely to delay substantially the proceedings in the *Jaffe* case.

Defendant Arthur Anderson argues that the second condition has not been met because reassignment would not result in a substantial saving of judicial time and effort. (Opp'n Pl.'s Mot, at 2.) The Court agrees. Specifically, the Court finds that the causes of action in *Jaffe* and *Williamson* are fundamentally distinct. While *Jaffe* is a class action that alleges Household, Arthur Andersen, W.F. Aldinger and D.A. Schoenholz violated the Securities and Exchange Act by making false and misleading statements, *Williamson* is a derivative suit alleging a violation of the Sarbancs-Oxley Act, breach of fiduciary duty, and other violations of common law. (*Id.*)

Although the Court acknowledges that there would be some degree of savings of judicial time and effort, the Court finds that such savings would not be substantial. In this case, there are some common issues of fact related to the conduct of two of the individual defendants, W.F. Aldinger and D.A. Schoenholz. In *Jaffe,* Aldinger as CEO and Schoenholz as COO are the only individual defendants, and they are sued based on the theory of control person liability for issuing materially false and misleading statements, reports and press releases to the public which overstated its net income by $386 million beginning in 1994 and misled investors regarding its credit card services. In *Williamson,* Aldinger and Schoenholz are two of sixteen individual defendants, and they are sued for causing, approving, or authorizing: (1) the sale of Household to HSBC Holdings, PLC for 2.675 HSBC ordinary shares or 0.535 HSBC American Depository Shares for each share of Household common stock; (2) the insulation of the board of directors from liability in exchange for indemnity from HSBC for their past deeds; (3) improper actions which resulted in the $484 million fine to settle the claims related to Household's non-prime consumer lending business; (4) improper accounting treatment of payments related to credit card services; (5) manipulation of reported results due to re-aging delinquent accounts; and (6) improper accounting and financial reporting of earned future employee benefits as income instead of a pension expense resulting in overstating net income by $386 million. Thus there is some overlap regarding issues of fact as to Aldinger and Schoenholz's conduct relating to (4)-(6), but not (1)-(3). Further, the facts required to prove the elements of the Security Exchange Act violation as they relate to Aldinger and Schoenholz conduct in the *Jaffe* case are clearly substantially different than the facts needed to hold Aldinger and Schoenholz liable on the various legal theories forwarded in the *Williamson* case. Accordingly, the Court finds that its handling of both cases would not be likely to result in a substantial saving of judicial time and effort.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 3
Not Reported in F.Supp.2d, 2003 WL 21011757 (N.D.Ill.)
**2003 WL 21011757 (N.D.Ill.)**

***3** Next, the Court finds that the fourth condition, LR 40.4(b)(4), which requires the movant to demonstrate that a reassignment would be susceptible to disposition in a single proceeding has not been satisfied. Judges of this Court have ruled that a movant satisfies this condition if issues of *both* law and fact are the same in the related cases. *See Fairbanks Capital Corp. v. Jenkins,* No. 02 C 3930, 2002 WL 31655277, at *3 (N.D.Ill. Nov. 25, 2002) (holding that LR 40.4(b)(4) was satisfied where a determination of the key, common legal and factual issues would be outcome determinative to all of the cases); *Popovich v. McDonald's Corp.,* 189 F.Supp.2d 772, 778 (N.D.Ill.2002) (holding that LR 40.4(b)(4) was satisfied where a case before another court was the equivalent of a cross-claim before that court); *Anderson v. Cornejo,* 199 F.R.D. 228, 262 (N.D.Ill.2000) (holding that LR 40.4(b)(4) was satisfied where there were common issues of law and fact in two employment discrimination cases). Here, there are not common issues of both law and fact. As defendant Arthur Anderson points out, the underlying causes of action in *Jaffe* and *Williamson* are fundamentally distinct, (Opp'n Pl.'s Mot., at 2), making it extremely unlikely that the Court could dispose of both cases in a single proceeding. Any motions for summary judgment would be unique to each particular case. *See Clark v. Ins. Car Rentals Inc.,* 42 F.Supp.2d 846, 849 (N.D.Ill.1999). Additionally, while both cases involve at least some common issues of fact, these commonalities are not so great as to outweigh the dissimilarities. In particular, the *Williamson* case involves many issues of fact that are not at issue in *Jaffe.*For example, the *Williamson* plaintiffs allege that defendants wasted corporate assets and were unjustly enriched by taking huge bonuses in the face of financial instability. (Pl.'s Mot., Ex. B ¶¶ 132-34.) That is not an issue in the *Jaffe* case. Further, the *Williamson* plaintiffs allege that the defendants breached their fiduciary duties by entering into an agreement with HSBC which insulates defendants from any liability. (*Id.* ¶ 11.)This is also not an issue in *Jaffe.*

Moreover, even if the movant could satisfy LR 40.4(b)(4) on the merits, under LR 40.4(c), a motion to reassign must explicitly indicate how conditions required by section (b) will be met if the cases are found to be related. The judges of this Court have interpreted subsection (c) to impose an obligation on the moving party to specifically identify why each of the four conditions for reassignment under LR 40.4(b) is met. Here, the movant has failed to comply with LR 40.4(c) because the movant has failed to articulate why the cases are susceptible of disposition in a single proceeding. Although the common facts in this case may indirectly implicate LR 40.4(b)(4), nothing in the four corners of the motion argues that the cases are susceptible of disposition in a single proceeding. The plaintiff alleges that there is substantial overlap of issues and parties, but does not argue that a reassignment would satisfy Rule 40.4(b)(4). In *Davis v. Quebecor World,* No. 01 C 8014, 2002 WL 27660, at *3 (N.D.Ill. Jan. 10, 2002), another judge of this Court denied the motion to reassign because the movant failed to address whether the cases could be disposed of in a single proceeding and whether a reassignment would result in savings of judicial time and effort. Similarly, in *Daniels v. Pipefitters' Ass'n Local Union No. 597,* 174 F.R.D. 408, 411 (N.D.Ill.1997), another judge of this Court denied a motion to reassign because the movant failed to specifically explain how the conditions for reassignment were met, but rather made the general conclusory assertion that the conditions were met. This Court will not stray from the holdings of those courts so as to lower the bar for pleading under LR 40.4(c), which requires a movant to explicitly articulate reasons that satisfy each of the four LR 40.4(b) conditions. The movant in this case has failed to demonstrate how this Court could resolve the two cases in a single proceeding.

*CONCLUSION*

***4** For the foregoing reasons, the Court denies with prejudice plaintiff's Motion for a Finding of Relatedness [doc. no. 45-1].

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 4
Not Reported in F.Supp.2d, 2003 WL 21011757 (N.D.Ill.)
**2003 WL 21011757 (N.D.Ill.)**

SO ORDERED.

N.D.Ill.,2003.
Lawrence E. Jaffe Pension Plan v. Household Intern., Inc.
Not Reported in F.Supp.2d, 2003 WL 21011757 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# GROUP EXHIBIT B-5

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1631646 (N.D.Ill.)
**2004 WL 1631646 (N.D.Ill.)**

Page 1

**H**

Machinery Movers, Riggers and Machinery Erectors, Local 136 Defined Contribution Retirement Fund v. Joseph/Anthony, Inc.
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
MACHINERY MOVERS, RIGGERS, AND MACHINERY ERECTORS, LOCAL 136 DEFINED CONTRIBUTION RETIREMENT FUND, et al., Plaintiffs,
v.
JOSEPH/ANTHONY, INC., a/k/a Joseph Anthony & Associates, Inc., et al., Defendants.
**No. 03 C 8707.**

July 16, 2004.

Marc M. Pekay, Idala H. Strouse, Marc M. Pekay, P.C., Chicago, IL, for Plaintiffs and Counter-Defendants.
Brian V. Alcala, Matkov, Salzman, Madoff & Gunn, Craig T. Boggs, Perkins Coie LLC, Chicago IL, for Defendants and Counter-Claimants.
Thomas L. Campbell, James H. Mutchnik, Petra Renee Wicklund, Andrew Paul Bautista, Kirkland & Ellis LLP, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

ASPEN, J.
*1 Presently before us is Nationwide Investment Services Corporation's ("Nationwide's") motion to reassign Case No. 04 C 0821 (the "Ironworkers" action) pursuant to Local Rule 40.4 based on that case's alleged relatedness to a case currently pending before this Court, Case No. 03 C 8707 (the "Machinery Movers" action). Nationwide also requests that we stay all further proceedings in the Ironworkers action pending the non-appealable disposition of criminal cases which have been filed against several of the parties and witnesses involved in the Ironworkers and Machinery Movers

actions. For the following reasons, we deny the motion to reassign the case and therefore do not address Nationwide's motion to stay.

*BACKGROUND*

A. The Machinery Movers Action

The plaintiffs in the Machinery Movers action are a group of employee benefit funds (the "Machinery Movers Funds") that are administered pursuant to collective bargaining agreements between Machinery Movers, Riggers and Machinery Erectors, Local 136 (the "Machinery Movers Union") and various employers. The Machinery Movers Funds, along with their trustees, filed suit against: Joseph/Anthony, Inc. ("Joseph/Anthony"); Nationwide Investment Services Corporation ("Nationwide"); Liz/Mar and Associates, Inc. ("Liz/Mar"); and Michael Linder, the President of both Joseph/Anthony and Liz/Mar. According to the complaint, Joseph/Anthony was the administrator of the Machinery Movers Funds. The plaintiffs allege that, as President of Joseph/Anthony, Michael Linder recommended that the trustees select Nationwide to receive all of the funds' future investments. Unbeknownst to the plaintiffs, Linder (via Joseph/Anthony) received unauthorized commissions from Nationwide for bringing the in funds' business. The complaint also alleges that Linder set up another entity, Liz/Mar, which received additional unauthorized commission payments from Nationwide. The plaintiffs claim that the scheme set up by Linder via Joseph/Anthony and Liz/Mar violated various provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA").

B. The Ironworkers Action

The Ironworkers action is brought by a different group of plaintiff benefit funds and their trustees. The suit names as defendants: Nationwide Life In-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

surance Company; Nationwide Financial Services, Inc.; Nationwide Trust Company, FSB; Nationwide Financial Institution Distributors Agency, Inc.; and Nationwide Investment Services Corporation. Paragraph 13 of the Ironworkers action provides a summary of the allegations brought against the defendants:

While the Nationwide Defendants are separate legal entities, upon information and belief, some or all of them, along with persons and corporations acting as their employees or agents, acted to deprive the Plaintiff Funds and their participants of money that should have been invested on their behalf, through a scheme in which the Nationwide Defendants deducted money from Fund assets and paid fees, kickbacks, commissions, or other things of value to Michael G. Linder ("Linder") Liz/Mar and Associates, Inc. ("Liz/Mar"), and/or Joseph/Anthony & Associates, Inc. ("Joseph/Anthony"), in return for Linder's recommendation that the Funds invest their assets with Nationwide.

***2** The Ironworkers Action is brought pursuant to the Racketeer Influence and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"). However, several of the predicate acts which underlie the RICO claims are premised upon alleged violations of ERISA. In Counts III, IV, and V, the Ironworkers plaintiffs also request rescission of the allegedly fraudulent contracts entered into between the funds and the defendants.

*ANALYSIS*

Northern District of Illinois Local Rule 40.4 provides for the reassignment of civil cases from one judge to another if certain conditions have been met. First, under Rule 40.4(a), the cases must be related. According to the rule, cases are related if they: 1) involve the same property; 2) involve the same issues of fact or law; 3) grow out of the same transaction or occurrence; or 4) in a class action, one or more of the classes involved are the same. Nationwide argues that the Ironworkers and Machinery Movers cases are related because they involve the same issues of fact or law.

Rule 40.4(a)"does not require complete identity of issues in order for cases to be considered related,"*Fairbanks Capital Corp. v. Jenkins,* 02-C-3930, 2002 WL 31655277, at *2 (N.D.Ill. Nov.25, 2002), rather it is enough that the two cases "involve *some* of the same issues of fact or law."*Lawrence E. Jaffe Pension Plan v. Household Int'l., Inc.,* 02-C-5893, 2003 WL 21011757, at *3 (N.D.Ill. May 5, 2003) (emphasis in original). Here, although there is very little overlap between the parties in each case, the allegations contained in both complaints are quite similar and involve the same group of alleged wrongdoers. Furthermore, although the central legal claims brought in each action appear to be different-the Machinery Movers action claims violations of ERISA, whereas the Ironworkers action brings claims under RICO-the predicate acts alleged in the RICO counts are based on underlying ERISA violations. Because there are some overlapping issues of fact and law in both cases, they are related within the meaning of 40.4(a).

Once the cases have been found to be related, Local Rule 40.4(b) imposes four additional conditions that must be satisfied before a case may be reassigned: 1) both cases must be pending in the Northern District of Illinois; 2) reassignment must result in a substantial savings of judicial time and effort; 3) "the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially;" and 4) the actions are susceptible to disposition in a single proceeding. Both the Machinery Movers and the Ironworkers actions are currently pending in the Northern District of Illinois, so the first criterion is easily satisfied. The plaintiffs in the Ironworkers action also concede that the Machinery Movers case is in the relatively early stages of litigation. Upon the parties' joint motion, the proceedings in the Machinery Movers action were stayed not long after

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 3
Not Reported in F.Supp.2d, 2004 WL 1631646 (N.D.Ill.)
**2004 WL 1631646 (N.D.Ill.)**

the defendants answered the complaint. The Ironworkers action is also in the very early stages of litigation; the complaint was filed on February 2, 2004 and Judge Guzman has granted the defendants' request to file their answer within five business days following this Court's decision on the motion to reassign. Therefore, the only two contentious issues regarding reassignment are whether doing so will result in a substantial savings of judicial time and effort and whether the actions are susceptible to disposition in a single proceeding.

***3** The Ironworkers plaintiffs argue that we should deny the motion to reassign because the defendants provide only conclusory statements as to how reassignment will result in substantial savings of judicial time and resources. Local Rule 40.4(c) requires parties to "indicate the extent to which the conditions required by section (b) will be met if the cases are found to be related."Furthermore, "[t]he judges of this Court have interpreted subsection (c) to impose an obligation on the moving party to specifically identify why each of the four conditions for reassignment under LR 40.4(b) is met."*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,* 02-C-5893, 2003 WL 21011757, at *3 (N.D.Ill. May 5, 2003). Thus, a court may deny a motion to reassign if a party fails to sufficiently apply the facts of the case to each of 40.4(b)'s requirements. *Id.* In this case, we agree that Nationwide's explanation regarding how reassignment will result in a substantial savings of judicial time and resources is inadequate. Nationwide states only that "[t]he weight of common factual and legal issues ... suggests strongly that there will be a substantial conservation of judicial resources if one court considers and decides those common issues ... By contrast, permitting the cases to proceed on separate tracks would result in duplication of (but not parallel or coordinated) discovery efforts, excess use of judicial resources, and the possibility of incongruent factual rulings on identical contracts."(Mem. in Support of Nationwide's Mtn. for Reassignment at 9.) Aside from offering these conclusory allegations, Nationwide fails to specify *how* combining the cases will result in a substantial savings of judicial resources, nor does it pinpoint what issues for discovery will be the same in both cases or what matters are susceptible to disposition in a single proceeding. This failure to comply with Local Rule 40.4(c)'s requirement that parties "indicate the extent to which the conditions required by section (b) will be met if the cases are found to be related" is sufficient grounds, in and of itself, for denial of the motion to reassign. We need not rely on this technical ground for denial, however, because the parties cannot meet the requirements of Local Rules 40.4(b)(2), which requires that reassignment will result in a substantial savings of judicial time and effort or 40.4(b)(4), which requires that the actions be susceptible to disposition in a single proceeding.

First, comparison of the Ironworkers' complaint with the Machinery Movers' complaint reveals that we should deny the motion for reassignment on the merits because reassignment would not result in a substantial savings of judicial time and resources. First, although the schemes alleged in the two cases are similar, both the plaintiffs and the defendants are different in each case. As the Ironworkers plaintiffs point out, each of the cases is brought by a different group of plaintiffs and the only party officially named in both actions as a defendant is Nationwide Investment Services Corporation. This is because the Ironworkers plaintiffs chose to sue only legal entities associated with Nationwide; they did not include Linder, Liz/Mar, or Joseph/Anthony as defendants. Furthermore, the two cases are premised on different legal theories. The Machinery Movers complaint sets forth claims pursuant to ERISA only, whereas the Ironworkers case is brought under RICO. There is *some* overlap between the cases because the predicate acts which underlie the RICO action are premised on violations of ERISA. However, the alleged ERISA violations make up just one element of a RICO claim. To succeed in a RICO action, the Ironworkers plaintiffs must demonstrate that the defendants engaged in: 1) the conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity. *See*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

*Richmond v. Nationwide Cassel, L.P.,* 52 F.2d 640, 644 (7th Cir.1995). The issues of whether the various Ironworkers defendants comprised an "enterprise" within the meaning of RICO or whether the alleged ERISA violations amounted to a pattern of racketeering activity are not at all relevant to the Machinery Movers action. Furthermore, the Ironworkers plaintiffs have also brought rescission claims that are unrelated to the Machinery Movers case. All of these issues would have to be dealt with separately in the Ironworkers action, and the reassignment of the case to this Court's calendar would not make the proceedings any more efficient this respect. In short, although there may be *some* judicial resources saved by bringing together the two actions, there will not be the *"substantial* saving of judicial time and effort" that is contemplated by Rule 40.4. *See*L.R. 40.4(b)(2) (emphasis added); *see also Lawrence E. Jaffe Pension Plan,* 2003 WL at *2 (emphasizing that the saving of judicial time and effort must be *substantial* in order for reassignment to be appropriate under Rule 40.4(b)(2)).

***4** These same considerations lead us to find that Nationwide has not satisfied its burden of demonstrating that Rule 40.4(b)'s fourth requirement-that the cases are amenable to disposition in a single proceeding-is met. Courts have held that cases are not susceptible to disposition in one proceeding where both cases present unique issues of law and fact. *Id.* at 3;*see also Clark v. Insurance Car Rentals, Inc.,* 42 F.Supp.2d 846, 849 (N.D.Ill.1999). As set forth above, although there is some legal and factual overlap between the Ironworkers and Machinery Movers actions, the issues that are unique to each case predominate. We thus find that reassignment is not appropriate.

*CONCLUSION*

For the foregoing reasons, Nationwide's motion to reassign is denied. It is so ordered.

N.D.Ill.,2004.
Machinery Movers, Riggers and Machinery Erectors, Local 136 Defined Contribution Retirement Fund v. Joseph/Anthony, Inc.
Not Reported in F.Supp.2d, 2004 WL 1631646 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# GROUP EXHIBIT B-6

**H**
Snitchler v. Allsteel, Inc.
N.D.Ill.,1995.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Horace SNITCHLER, Plaintiff,
v.
ALLSTEEL, INC., Defendant.
**No. 95 C 4975.**

Dec. 28, 1995.

*MEMORANDUM AND ORDER*

MORAN, Senior District Judge:
*1 Plaintiff Horace Snitchler (Snitchler) brought this action against Allsteel, Inc. (Allsteel) for breaching its fiduciary duty to the participants in the All-Steel Pension Plan No. 1 (Plan) in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461. In a different matter currently pending in the Northern District of Illinois before Judge Manning, *Johnson, et al. v. Allsteel, Inc., et al.,* No. 95 C 4976, Allsteel is one of four named defendants charged by a group of Plan participants headed by Charles Johnson (Johnson plaintiffs) with breach of fiduciary duty, wrongful refusal to pay benefits and violation of § 204(g) of ERISA and § 301 of the Labor-Management Relations Act (LMRA) in relation to the distribution of 1991 supplements under the Plan. Defendant Allsteel now moves to transfer the *Johnson* case to our calendar and to consolidate it with the *Snitchler* case. We deny the motion.

*DISCUSSION*

Under Local Rule 2.31(B) of the Northern District of Illinois, reassignment of a case to the calendar of another judge is appropriate only when each of the following criteria is met:

(1) both cases are pending;

(2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;

(3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and

(4) where a finding of relatedness is requested on the basis of common questions of law, such questions are complex or numerous; or where such a finding is requested on the basis of common questions of fact, such questions are susceptible of resolution in a joint hearing.

Two cases are related if they involve the same property, the same issues of fact or law, or grow out of the same transaction or occurrence. Local Rule 2.31(A) (May, 1995).

Here, Allsteel asserts that the *Johnson* and *Snitchler* actions are related to one another and meet the criteria for reassignment enumerated *supra.* We disagree with both assertions. The *Johnson* case deals exclusively with the 1991 amendment to the Plan and defendants' withholding of pension supplements from allegedly eligible Plan participants.[FN1] The Johnson plaintiffs claim that they intended to retire within the required time to receive early retirement benefits, but did not do so because defendants misinformed them about the actual cutoff date for retirement. The case was brought against not only Allsteel, the Plan's fiduciary, but against Allsteel's parent company, BTR Nylex, Limited (Nylex), Nylex's parent, BTR, PLC (BTR), and a John Doe insurance company, ABC Insurance Company (ABC). Plaintiffs' only claim for relief is to receive the pension supplements that they assert were wrongfully denied them.

In contrast, the *Snitchler* case is significantly more broad-based, names only Allsteel as a defendant,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

and pursues an equitable rather than a legal remedy. Snitchler seeks to have Allsteel removed as Plan administrator, to have the Plan assets placed in a constructive trust, to ensure that the Plan be funded properly and to force Allsteel to reimburse the Plan for assets improperly spent. While Allsteel's failure to distribute the 1991 pension supplements to eligible participants is part of Snitchler's complaint, plaintiff claims no personal damages from it. It appears that the 1991 pension supplements will be only one of many issues in *Snitchler,* which relates to Allsteel's more general shortcomings as the Plan's fiduciary.

***2** Specifically, Snitchler alleges that Allsteel "routinely failed to give participants a fair administrative hearing on their claims;" "failed to provide benefits to all participants entitled [to them];" "failed to provide in a timely and appropriate manner information to participants as to their rights and obligations under the Plan;" "failed to fund [the Plan] as required by the Plan and ERISA;" "conducted [a related litigation] in a manner that is inconsistent with its duties as fiduciary;" "improperly expended Plan resources to defend against meritorious claims;" acted discriminatorily against certain applicants for benefits; acted to protect its litigation interests rather than the interests of the Plan participants; "retained counsel that has not rendered advice in the interest of Plan participants and that has a conflict of interest that significantly affects counsel's objectivity;" and "inappropriately ceded discretionary authority to pay participants' claims to its insurer and has, as a result, not paid, or offered to pay, claims, or portions of claims, which payment Allsteel otherwise believes warranted, because the insurer will not reimburse such payment." The *Johnson* case does not raise any of these issues.

Individual questions of fact and law thus greatly outweigh those that are common between the *Johnson* and *Snitchler* actions.[FN2] As a result, there is little to suggest that the cases can be more efficiently resolved by one judge rather than two. Nor are we greatly concerned at this stage with the possibility of there being different judgments on the common issues. Even if Allsteel is found to have breached its duty to the Plan participants in one case but not the other, the risk of imposing inconsistent or conflicting obligations on Allsteel is slight since the actions seek entirely different, non-overlapping remedies.

Furthermore, despite the fact that defendants have not yet filed an answer in *Johnson,* it appears that the case is almost ready for trial. In a case recently settled in this district, *Meredith, et al. v. Allsteel, Inc.,* No. 92 C 1856, many of the legal issues involved in *Johnson* were resolved and the factual construct for recovery established. *See Meredith v. Allsteel, Inc.,* 814 F.Supp. 657 (N.D.Ill.1992), *aff'd in part, reversed in part,* 11 F.3d 1354 (7th Cir.1994), *on remand to* 1994 WL 383925 (N.D.Ill.1994). *Snitchler,* which is much broader than both *Meredith* and *Johnson,* and probably will encounter significant delays due to discovery and the resolution of unique legal issues, is not close to trial. Thus, if we were to consolidate the case with *Snitchler* at this point, the prompt resolution of *Johnson* would be jeopardized.[FN3] Where "individual questions of fact and law in each case outweigh the common, and consolidation of the later filed case with the earlier is likely to cause substantial delay," reassignment under Rule 2.31 is inappropriate. *Henderson v. National R.R. Passenger Corp.,* 118 F.R.D. 440, 441 (N.D.Ill.1987). Furthermore, although the naming of different defendants in the later-filed action, *see Applied Web Systems, Inc. v. Catalytic Combustion Corp.,* 1991 WL 70893, *2 (N.D.Ill.1991), and the seeking of different relief, *see Chicago Fire Fighters Union Local No. 2, et al. v. Harold Washington, et al.,* 1989 WL 6770, *3 (N.D.Ill.1989),[FN4] do not prohibit us from granting Allsteel's motion for reassignment, they do constitute additional factors against it.

***3** In sum, we find *Johnson* and *Snitchler* not to be related under Local Rule 2.31(A), and we decline to authorize *Johnson's* reassignment to our calendar or

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

to consolidate the action with *Snitchler.* We expect, however, the parties in the two cases to coordinate discovery to the extent practicable, so as to avoid any duplication.

*CONCLUSION*

For the foregoing reasons, we deny defendant's motion to transfer and consolidate.

FN1. Allsteel notes that the *Johnson* complaint contains one paragraph which makes more general allegations. Specifically, the Johnson plaintiffs allege:

Allsteel *routinely* conducts itself as an adversary to participants, unnecessarily and improperly withholds requested information from participants, intimidates participants attempting to vindicate their rights under the Plan and acts with open antagonism or indifference to participants' interests. *Johnson* complaint ¶ 40 (emphasis added).

This paragraph is identical to paragraph 41 of the *Snitchler* complaint. It is clear, however, that these general issues will be relatively minor ones as the case proceeds, for the Johnson plaintiffs only seek to recover the pension supplements which they claim were wrongly denied them. Since no general relief is sought, it seems unlikely that Allsteel's "routine" as fiduciary of the pension fund will be explored to any great extent.

FN2. This is true despite the facts that Allsteel is a party in both cases, the Plan is the focus of each case, plaintiff's counsel is the same in the two actions, and entire paragraphs and extensive sections of other paragraphs of the complaints are identical. Indeed, as Allsteel notes, virtually the entire "Background" sections of the complaints are the same, each focusing on the 1991 pension supplements. However, the crux of *Snitchler* 's case is found in its breach of fiduciary duty count, and it is in this section of the complaint that the case fundamentally differs from *Johnson.*

FN3. Allsteel argues that the factual situation presented in the *Johnson* and *Snitchler* actions parallels that of the two cases consolidated in *Robbins v. Pepsi Cola Metropolitan Bottling Co.,* 1985 WL 5130 (N.D.Ill.1985). We disagree. The *Robbins* actions were found to have "overriding factual and legal similarit[ies]," and Judge Nordberg determined that consolidation would "result in a considerable saving of judicial time and effort." *Id.* at *2-3. Neither of these factors is present here. Since *Johnson* is essentially ready for trial, a point which Allsteel barely contests, few if any resources would be saved by reassigning it or consolidating it with *Snitchler* at this stage. Furthermore, the partial resolution of complex issues in *Meredith* distinguishes this situation from the one in *Robbins,* where *both* actions involved novel, complex, and unresolved legal issues. Judge Manning's effort in the *Johnson* case will not simply duplicate the resources expended in these chambers.

FN4. There appears to be no precedent for the reassignment and consolidation of two cases which seek *wholly different* relief, such as the *Johnson* and *Snitchler* actions.

N.D.Ill.,1995.
Snitchler v. Allsteel, Inc.
Not Reported in F.Supp., 1995 WL 769327 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# GROUP EXHIBIT B-7

Westlaw.
Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21801428 (N.D.Ill.)
**2003 WL 21801428 (N.D.Ill.)**

Page 1

**H**
Sunstar, Inc. v. Alberto-Culver Co., Inc.
N.D.Ill.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
SUNSTAR, INC., Plaintiff,
v.
ALBERTO-CULVER COMPANY, INC. and Bank One Corporation f/k/a First National Bank of Chicago, Defendants.
andALBERTO-CULVER COMPANY, a Delaware Corporation, Plaintiff,
v.
SUNSTAR, INC., a Japanese corporation, Sunstar Group Company (f/k/a Alberto-Sunstar Co., Ltd.), a Japanese corporation, Kaneda, Kasan, Kabushiki Kaisha, a Japanese corporation, and Bank One, National Association, as Trustee under Trust Agreement No. 22-81196, dated February 27, 1980, a national banking association, Defendants.
**No. Civ.A. 01 C 0736, Civ.A. 01 C 5825.**

Aug. 1, 2003.

*MEMORANDUM OPINION AND ORDER*

GUZMAN, J.
*1 This matter is before the Court on Sunstar, Inc. and Kaneda, Kosan, Kabushiki Kaisha's Motion for Reassignment Based on Relatedness pursuant to Local Rule 40.4 between *Alberto-Culver Co. v. Sunstar,* No. 03 C 0123 (*"Alberto II"* ) and two previously consolidated cases pending before this Court-*Sunstar v. Alberto-Culver Co.,* No. 01 C 0736 (the "*Sunstar* Action") and *Alberto-Culver Co. v. Sunstar,* No. 01 C 5825 (*"Alberto I"* ) (collectively, the "Consolidated Cases"). For the following reasons, the Court denies Movants' motion without prejudice.

*BACKGROUND*

In February 1980, Sunstar, Inc. ("Sunstar"), Alberto-Culver Company ("Alberto"), and Bank One, National Association f/k/a First National Bank of Chicago ("Bank One") entered into various agreements regarding the sale of Japanese VO5 trademarks (the "1980 Agreements"). Specifically, Alberto sold and assigned certain Japanese VO5 trademark registrations (the "Licensed Trademarks") to Sunstar, to be held in trust by Bank One as Trustee for Sunstar's benefit for 99 years. Concurrently, the Trustee granted Sunstar a 99-year exclusive Japanese trademark license for the Licensed Trademarks in Japan. After the 99-year term of the license was over, Sunstar would assume full legal title to the Licensed Trademarks. (Sunstar's Mot. for Reassignment Based on Relatedness, Ex. E, at 3.)

In 1999, a dispute developed between Sunstar and Alberto regarding whether a particular mark that Sunstar was using in Japan (the "1999 Mark") was or was not within the scope of Sunstar's license rights under the 1980 Agreements. That dispute gave rise to the *Sunstar* Action and *Alberto I,* which cases currently are pending before this Court and were consolidated in August 2001.(*Id.*)

The *Sunstar* Action was filed in February 2001. In that action, Sunstar asserted various tort and contract claims against Alberto and Bank One arising from Bank One's suspension of Sunstar's license rights under the 1980 Agreements. The alleged ground for Bank One's suspension of Sunstar's license rights was Sunstar's use of the 1999 Mark in violation of the 1980 Agreements. In response to Sunstar's complaint, Alberto filed affirmative defenses and counterclaims, and it initiated *Alberto I.*(*Id.* at 5.)

In *Alberto I,* which was attached to the *Sunstar* Action as a related case in July 2001, Alberto complained that Sunstar's use of the 1999 Mark was a supposed breach of the 1980 Agreements. It sought an injunction preventing Sunstar from using the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 2
Not Reported in F.Supp.2d, 2003 WL 21801428 (N.D.Ill.)
**2003 WL 21801428 (N.D.Ill.)**

1999 Mark or the Licensed Trademarks and requested termination of the License Agreement. The Consolidated Cases proceeded through discovery. Then, following the close of discovery, Alberto moved to amend the *Alberto I* complaint. Therein, Alberto sought to add counts alleging Sunstar's failure to keep the Licensed Trademarks in continuous use in violation of Japanese trademark-use requirements and alleging Sunstar's submission of false use certificates in violation of the 1980 Agreements.*Id.* at 9. The court denied leave to amend, specifically stating that discovery had closed and "the date for amendment of the pleadings ha[d] far passed."(Order denying Pl.'s Mot. for Leave to Amend Its Compl., Affirmative Defenses, and Countercls. (Oct. 29, 2002) (the "Oct. 29, 2002 Order").)

***2** *Alberto II* is presently pending before another judge of this Court. In *Alberto II,* Alberto raised issues virtually identical to those contained in its proposed amendment to the *Alberto I* complaint, which the court denied leave to amend on October 29, 2002.

By the instant motion, Movants' seek to reassign *Alberto II* based on relatedness with the Consolidated Cases.

*DISCUSSION*

To reassign a case under LR 40.4, Movants must satisfy the requirements of LR 40.4(a) and LR 40.4(b). First, LR 40.4(a) provides that "[t]wo or more civil cases may be related if one or more of the following conditions are met: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one or more of the classes involved in the cases is or are of the same."

Here, *Alberto II* meets the requirements of LR 40.4(a) for relatedness. It is undisputed that the *Sunstar* Action, *Alberto I,* and *Alberto II* each arise from a dispute surrounding Sunstar's use of the 1999 Mark and the parties' rights in the Licensed Trademarks. Further, each case has at its core a claim for breach of the 1980 Agreements, and none are class actions suits. Thus, LR 40.4(a) is satisfied.

Second, LR 40.4(b) requires that each of the following four criteria be met: "(1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the case are susceptible of disposition in a single proceeding."

Here, the first and fourth conditions are satisfied. *Alberto II* and the Consolidated Cases are pending before the United States District Court for the Northern District of Illinois and, had the cases been brought together in a timely manner, they likely would have been susceptible of disposition in a single proceeding. The cases, however, fail to satisfy the second and third conditions of LR 40.4(b).

The Court finds that LR 40.4(b)(3), which requires Movants to show that the Consolidated Cases have not progressed to the point where designating *Alberto II* as related would delay the proceedings in the Consolidated Cases substantially, has not been met. Discovery closed in the Consolidated Case approximately one year ago; dispositive motions were ruled upon on November 7, 2002. A trial date was initially set in the Consolidated Cases for November 25, 2002, and they were transferred to this Court on November 14, 2002, specifically for trial. Although a new trial date has not yet been set, the Consolidated Cases have progressed to the eve of trial, whereas *Alberto II* is merely six months old and pending on preliminary motions. *See Erwin v. City of Chicago,* No. 90 C 905, 1998 WL 801830, at *2 (N.D.Ill. Nov. 12, 1998) (denying reassignment where one case had progressed to the eve of trial but the other had not); *Robinson v. Burlington N.R..R..,* No. 95 C 6781, 1997 U.S. Dist. LEXIS

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 3
Not Reported in F.Supp.2d, 2003 WL 21801428 (N.D.Ill.)
**2003 WL 21801428 (N.D.Ill.)**

7886, at *4 (N.D. Ill. June 3, 1997) (denying reassignment where cases were not proceeding at the same pace); *S Indust. v. GMI Holdings,* No. 96 C 2232, 96 C 4140, 1996 U.S. Dist. LEXIS 18285, at *5 (N.D.Ill.Dec. 5, 1996) (same). Should *Alberto II* be reassigned based on relatedness to the *Sunstar* Action and *Alberto I* at this time, it would inevitably lead to substantial delay in disposition of these earlier cases.

***3** Next, this Court finds there would be no "substantial" saving of judicial time and effort as required by LR 40.4(b)(2). To the contrary, because the Consolidated Cases have progressed to the eve of trial and *Alberto II* is at the pleadings stage, reassigning *Alberto II* based on relatedness would not only delay the proceedings in the Consolidated Cases but it would be an inefficient use of judicial time. *Id.* Moreover, a decision rendered in the Consolidated Cases could collaterally estop relitigation of those issues in *Alberto II,* and the court could apply those rulings when deciding this latter-filed case. *See Research Res. v. Dawn Food Prods.,* No. 01 CV 1906, 2001 WL 1223556, at *9 (N.D.Ill. Oct. 11, 2001).

Even if Movants could satisfy LR 40.4(b)(2) and (3) on the merits, judges of this Court have interpreted LR 40.4(c) to impose an obligation on Movants to specifically identify why each of the four conditions for reassignment under LR 40.4(b) is met. Here, Movants failed to comply with LR 40.4(c) because Movants' motion merely asserts conclusions of law without more. *See Davis v. Quebecor World,* No. 01 C 8014, 2002 WL 27660, at *3 (N.D.Ill. Jan. 10, 2002) (denying reassignment where movant failed to explain relatedness in sufficient detail to satisfy LR 40.4(c)); *Daniels v. Pipefitters' Ass'n Local Union No. 597,* 174 F.R.D. 408, 411 (N.D.Ill.1997) (denying reassignment where movant failed to specifically explain how the conditions for reassignment were met, but rather made general conclusory assertions that the conditions were met)."This Court will not stray from the holdings of those courts so as to lower the bar for pleading under LR 40.4(c), which requires [Movants] to explicitly articulate reasons that satisfy each of the four LR 40.4(b) conditions."*Lawrence E. Jaffe Pension Plan v. Household Int'l,* No. 02 C 5893, 2003 WL 21011757, at *3 (N.D.Ill. May 5, 2003).

Finally, a judge of this Court previously denied Alberto leave to amend its complaint in the Consolidated Cases. (Oct. 29, 2002 Order.) The recently-filed *Alberto II* complaint is comprised of issues virtually identical to those contained in its proposed amendment to the *Alberto I* complaint. Therefore, this Court finds *Alberto II* is an inappropriate attempt to circumvent this Court's Order of October 29, 2002.

Movants in this case have failed to demonstrate how the handling of both cases by this Court is likely to result in a substantial saving of judicial time and effort and that the Consolidated Cases have not progressed to the point where designating *Alberto II* as related would be likely to delay the proceedings in the Consolidated Cases substantially. Further, this Court will not entertain Alberto's thinly-veiled attempt to circumvent its Orders.

*CONCLUSION*

For the foregoing reasons, the Court denies without prejudice Movants' Motion for Reassignment Based on Relatedness [# 0-1].

So Ordered.

N.D.Ill.,2003.
Sunstar, Inc. v. Alberto-Culver Co., Inc.
Not Reported in F.Supp.2d, 2003 WL 21801428 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# GROUP EXHIBIT B-8

**C**

Williams v. Walsh Const.
N.D.Ill.,2007.
Only the Westlaw citation is currently available.

United States District Court,N.D. Illinois, Eastern Division.

Alphonso WILLIAMS, Plaintiff,
v.
WALSH CONSTRUCTION, Defendants.

**No. 05 C 6807.**

Jan. 16, 2007.

Michael Irving Leonard, Meckler, Bulger & Tilson, Chicago, IL, for Plaintiff.
Tom H. Luetkemeyer, Aimee Elizabeth Delaney, Hinshaw & Culbertson LLP, Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

DARRAH, J.

*1 Plaintiff, Alphonso Williams, filed suit against Defendant, Walsh Construction, alleging race discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964. Presently before the Court is Defendant's Motion for Reassignment of an allegedly related case pursuant to Local Rule 40.4.

BACKGROUND

On December 1, 2005, Williams filed suit in this Court against his former employer, Walsh Construction ("the Williams case"). Williams alleged that he was employed by Walsh from September 2000 until his termination on February 10, 2002. At the time of his termination, Williams was a Labor Supervisor. Based on Williams' race, African-American, Walsh: reduced his hours of work; denied him the means to perform his duties, including tools and a truck to carry tools; treated non-African-American employees more favorably; denied Williams' incentive and bonus pay; and forced Williams to single out other African-American employees for termination. Williams' claims are: race discrimination, harassment, and retaliation in Violation of Title VII and 42 U.S.C. § 1981.

In early 2006, the parties in the Williams case engaged in settlement negotiations, which were unsuccessful. Thereafter, the case was scheduled for a April 30, 2007 jury trial, with discovery closing on December 26, 2006, and a pretrial conference scheduled for April 26, 2007.

On July 28, 2006, Wallace Bolden and eleven other named plaintiffs filed a class-action complaint against Walsh ("the Class Action"). This later suit, 06 C 4104, was assigned to Judge Joan H. Lefkow. The named plaintiffs in the Class Action were laborers, labor supervisors, and labor foremen. The Class Action alleges that Walsh discriminated against African-American employees from January 2001 though the present by laying-off, discharging, constructively discharging, and/or failing to hire African-Americans. The eleven counts of the Class Action are race discrimination, retaliation, and termination in violation of Title VII and 42 U.S.C. § 1981. The allegations that form the basis of the claims include: a hostile work environment, disparate impact, denial of overtime, receipt of more dangerous assignments because of race, retaliation for complaining of sexual harassment, and refusal to hire or rehire based on race.

Pursuant to Judge Lefkow's October 31, 2006 Minute Order, non-expert class-certification discovery for the Class Action is to be completed by June 15, 2007; and plaintiffs' motion for class certification is to be briefed as follows: motion to be filed by November 16, 2007, response due by December 14, 2007, and reply brief due by January 28, 2008.

Williams and the Class Action plaintiffs oppose reassignment of the Class Action.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

LEGAL STANDARD

In reviewing a motion to reassign a case on the basis of relatedness, the moving party must satisfy the requirements of both LR 40.4(a) and 40.4(b).*Hollinger International, Inc. v. Hollinger, Inc.,* 2004 WL 1102327, at *1 (N.D.Ill. May 5, 2004)(*Hollinger* ). The court has discretion to reassign the case pursuant to LR 40.4. *Clark v. Ins. Car Rentals Inc.,* 42 F.Supp.2d 846, 847 (N.D.Ill.1999)(*Clark* ). Under LR 40.4(a), "[t]wo or more civil cases may be related if: "(1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class-action suits, one or more of the classes involved in the cases is or are of the same."LR 40.4. Only one of the above conditions must be met to satisfy LR 40.4(a).

***2** Once the cases are determined to be related under LR 40.4(a), LR 40.4(b) requires more stringent criteria for the case to qualify for reassignment. *See Clark,* 42 F.Supp.2d at 848. LR 40.4(b) requires that to be reassigned: "(1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later-filed case as related would be likely to substantially delay the proceedings in the earlier case; and (4) the cases are susceptible of disposition in a single proceeding."Under 40.4(b)(2), the judicial savings alleged by the moving party must be substantial; a mere assertion that some judicial time and effort would be saved by reassignment is insufficient. *Hollinger,* 2004 WL 1102327 at *2 (citing *Lawrence Jaffe Pension Plan v. Household Int'l, Inc.,* 2003 WL 21011757 at *2 (N.D.Ill. May 5, 2003)). Likewise, if the cases will require different discovery, legal findings, defenses or summary judgment motions, it is unlikely that reassignment will result in a substantial judicial savings. *See Hollinger,* 2004 WL 1102327 at *2;*Donahue v. Elgin Riverboat Resort,* 2004 WL 2495642 at *1 (N.D.Ill. Sept.28, 2004)(*Donahue* ). Also, cases are rarely susceptible to disposition in one proceeding pursuant to 40.4(b)(4) where the cases involve unique issues of law and fact and those unique characteristics are dominant. *See Machinery Movers, Riggers, and Machinery Erectors, Local 136 Defined Contribution Retirement Fund v. Joseph/Anthony, Inc.,* 2004 WL 1631646 at *4 (N.D.Ill. July 16, 2004)(*Machinery Movers* ) (citing *Clark,* 42 F.Supp.2d at 849);*see also Donahue,* 2004 WL 2495642 at *1 (motion to reassign denied where all cases involved Title VII claims, but each case was based on a unique set of facts different from every other case involved).

In addition, LR 40.4(c) requires that a motion to reassign: "(1) set forth the points of commonality of the cases in sufficient detail to indicate that the cases are related within the meaning of section (a) and (2) indicate the extent to which the conditions required by section (b) will be met if the cases are found to be related."These provisions "impose an obligation on the moving party to specifically identify why each of the four conditions under LR 40.4(b) is met."*Machinery Movers,* 2004 WL 1631646 at *3 (N.D.Ill. July 16, 2004); *Lawrence Jaffe Pension Plan,* 2003 WL 21001757 at *3. Thus, a motion for reassignment may be denied if a party fails to sufficiently plead each of 40.4(b)'s requirements. *Machinery Movers,* 2004 WL 1631646 at *3.

ANALYSIS

Both cases involve *some* of the same issues of fact or law; accordingly, the cases are related under LR 40.4(a). However, Walsh has failed to demonstrate that the cases satisfy all of the requisite criteria of LR 40.4(b). While the cases are both pending in court in this district, Walsh has failed to demonstrate that: (1) handling of both cases would likely result in a substantial savings of judicial time and effort; (2) the Williams case has not progressed to a point where reassigning the later-filed case would likely substantially delay the proceedings in the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Williams case; and (3) the cases are susceptible of disposition in a single proceeding.

***3** Walsh argues that reassigning the Class Action would likely result in a substantial savings of judicial time and effort because of the similar allegations and claims between the plaintiffs. While some of the claims and allegations are similar in both suits, the Class Action contains allegations and claims that are not present in the Williams suit. The most obvious distinction is the extensive discovery and motion practice involved in the class allegations that are not present in the Williams case. Furthermore, in light of the different claims and specific supporting allegations, a finding in one case would not likely be dispositive of any issues in the other cases. *See Donahue,* 2004 WL 2495642 at *3. Thus, the cases are not likely to reach disposition in a single proceeding.

More significantly, the Williams case has progressed to a point where reassigning the Class Action would substantially delay the proceedings in the Williams case. The parties in the Williams case have unsuccessfully attempted to settle the case. Discovery in the Williams case is scheduled to close December 26, 2006; and trial is scheduled for April 30, 2007. On the other hand, non-expert class discovery for the Class Action is not scheduled to close until June 15, 2007; and the motion for class certification will not be fully briefed until January 28, 2008. Accordingly, without reassignment, the Williams case is scheduled to progress through trial before non-expert class discovery is scheduled to close and more than six months before the motion for class certification will be decided. Clearly, reassignment would result in a *significant* delay in the Williams case if the class-action discovery, briefing and certification schedule were imposed on this case through reassignment of Judge Lefkow's case to this Court.

Based on the above, LR 40.4(b) has not been met. Accordingly, Walsh's Motion for Reassignment is denied.

CONCLUSION

For the reasons stated above, Walsh's Motion for Reassignment is denied.

N.D.Ill.,2007.
Williams v. Walsh Const.
Slip Copy, 2007 WL 178309 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**CERTIFICATE OF SERVICE**

Daniel S. Dooley, an attorney, certifies that true and correct copies of the foregoing Motion to Vacate and to Oppose Order Reassigning Case were transmitted to and served upon counsel for the parties named below, in the methods described below, on August 8, 2008.

**ELECTRONIC NOTICE *VIA* ECF**

David G. Sigale
Law Firm of David G. Sigale, P.C.
Corporate West 1
4300 Commerce Court, Suite 300-3
Lisle, Illinois 60532
*Counsel for Illinois State Rifle Association, Second Amendment Foundation, Adam Orlov, Colleen Lawson, David Lawson, and Otis McDonald*

Alan Gura
Gura & Possessky, PLLC
101 North Columbus Street
Suite 405
Alexandria, Virginia 22314
*Counsel for Illinois State Rifle Association, Second Amendment Foundation, Adam Orlov, Colleen Lawson, David Lawson, and Otis McDonald*

Lance C. Malina
Jacob Karaca
Klein, Thorpe and Jenkins, Ltd.
20 North Wacker Drive, Suite 1660
Chicago, Illinois 60606
*Counsel for the Village of Oak Park*

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert
City of Chicago Department of Law
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
*Counsel for the City of Chicago*

***VIA* FACSIMILE and US MAIL**

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn Street
Suite 300
Chicago, Illinois 60602
Fax: 312-781-9202
*Counsel for National Rifle Association of America, Inc., Dr. Kathryn Tyler, Anthony Burton, Van F. Welton, and Brett Wilson*

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.1**
**Eastern Division**

Otis McDonald, et al.
Plaintiff,
v.
City of Chicago, et al.
Defendant.

Case No.: 1:08−cv−03645
Honorable Milton I. Shadur

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Monday, August 18, 2008:

MINUTE entry before the Honorable Milton I. Shadur:Motion to strike [30] is denied without prejudice. City of Chicago's Amended Answer is due on or before September 2, 2008.; Motion to vacate is denied.; Status hearing held on 8/18/2008. The September 26, 2008 status date is vacated. Status hearing set for 9/10/2008 at 09:00 AM.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION,** | ) | **No. 08 C 3645** |
| **Plaintiffs,** | ) | **Judge Milton I. Shadur** |
| **v.** | ) | **Magistrate Judge Schenkier** |
| **CITY OF CHICAGO and MAYOR RICHARD M. DALEY,** | ) | |
| **Defendants.** | ) | |

**DEFENDANT CITY OF CHICAGO'S AMENDED ANSWER**
**TO PLAINTIFFS' COMPLAINT, DEFENSE, AND JURY DEMAND**

Defendant City of Chicago ("City"), by and through its attorney, Mara S. Georges, Corporation Counsel for the City of Chicago, hereby submits its Answer to Plaintiffs' Complaint, its Defense, and its Jury Demand.

**ANSWER**

**THE PARTIES**

1. Plaintiff Otis McDonald is a natural person and a citizen of the United States, residing in Chicago, Illinois. Mr. McDonald resides in a high-crime neighborhood and is active in community affairs. As a consequence of trying to make his neighborhood a better place to live, Mr. McDonald has been threatened by drug dealers.

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, all but the first sentence of this paragraph is stricken. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1.

2.      Plaintiff Adam Orlov is a natural person and a citizen of the United States, residing in Chicago, Illinois. Mr. Orlov is a former Evanston, Illinois, police officer. As a police officer, Mr. Orlov was entrusted with a handgun for the purpose of defending himself and others from violent crime.

**ANSWER:**  Pursuant to the Court's June 27, 2008 Memorandum Order, all but the first

sentence of this paragraph is stricken.  The City is without knowledge or information sufficient to

form a belief as to the truth of the remaining allegations contained in Paragraph 2.

3.      Plaintiff Colleen Lawson is a natural person and a citizen of the United States, residing in Chicago, Illinois. Ms. Lawson's home has been targeted by burglars.

**ANSWER:**  Pursuant to the Court's June 27, 2008 Memorandum Order, all but the first

sentence of this paragraph is stricken.  The City is without knowledge or information sufficient to

form a belief as to the truth of the remaining allegations contained in Paragraph 3.

4.      Plaintiff David Lawson is a natural person and a citizen of the United States, residing in Chicago, Illinois. Mr. Lawson's home has been targeted by burglars.

**ANSWER:**  Pursuant to the Court's June 27, 2008 Memorandum Order, all but the first

sentence of this paragraph is stricken.  The City is without knowledge or information sufficient to

form a belief as to the truth of the remaining allegations contained in Paragraph 4.

5.      Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 600,000 members and supporters nationwide, including many in Chicago.  The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control.  SAF brings this action on behalf of itself and its members.

**ANSWER:**  The City is without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 5.

6.      Plaintiff Illinois State Rifle Association ("ISRA") is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois.  ISRA has over 17,000 members and supporters in Illinois, including many in Chicago.  The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation. ISRA brings this action

on behalf of itself and its members.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6.

7.     Defendant City of Chicago is a municipal entity organized under the Constitution and laws of the State of Illinois.

**ANSWER:** The City admits the allegations contained in Paragraph 7.

8.     Defendant Richard M. Daley is the Mayor of the City of Chicago, and as such is responsible for executing and administering the City of Chicago's laws, customs, practices, and policies.  In that capacity, Mr. Daley is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in both his individual and official capacities.

**ANSWER:** Pursuant to the Court's Memorandum Orders of June 27, 2008 and July 7, 2008, this paragraph is stricken.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, the references in Paragraph 9 to 28 U.S.C. §§ 2201 and 2202 are stricken.  The City admits that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.  The City denies the remaining allegations contained in Paragraph 9.

10.     Venue lies in this Court pursuant to 28 U.S.C. § 1391.

**ANSWER:** The City admits the allegations contained in Paragraph 10.

## STATEMENT OF FACTS

11.     Mr. McDonald lawfully owns a handgun, which he keeps outside the City of Chicago.  Mr. McDonald presently intends to possess the handgun within his home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 11.

12.    Mr. McDonald applied for permission to possess a handgun within his Chicago home. On June 13, 2008, that application was refused pursuant to the policies complained of in this action.

**ANSWER:**   The City admits that Mr. McDonald applied to the City for permission to register a handgun and that the application was refused on June 13, 2008, pursuant to Chicago Municipal Code § 8-20-050.   The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 12.

13.    Mr. McDonald fears arrest, criminal prosecution, incarceration, and fine if he were to possess a handgun within his home.

**ANSWER:**   The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13.

14.    Mr. McDonald owns a shotgun which he keeps in his Chicago home.  This shotgun is lawfully registered pursuant to the Chicago Municipal Code.

**ANSWER:**   The City admits that a shotgun is currently registered with the City under Mr. McDonald's name.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 14.

15.    Mr. McDonald fears arrest, criminal prosecution, incarceration, and fine if he were to continue to possess the shotgun in his Chicago home without re-registering it annually as required by the Chicago Municipal Code.

**ANSWER:**   The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15.

16.    Mr. Orlov lawfully owns a handgun, which he keeps outside the City of Chicago. Mr. Orlov presently intends to possess the handgun within his home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

**ANSWER:**   The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16.

17. Mr. Orlov applied for permission to possess the handgun within his Chicago home. On May 6, 2008, that application was refused pursuant to the policies complained of in this action.

**ANSWER:** The City admits that Mr. Orlov applied to the City for permission to register a handgun and that the application was refused on May 6, 2008, pursuant to Chicago Municipal Code §§ 8-20-050 and 8-20-090. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 17.

18. Mr. Orlov fears arrest, criminal prosecution, incarceration, and fine if he were to possess a handgun within his home.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18.

19. Ms. Lawson lawfully owns a handgun, which she keeps outside the City of Chicago. Ms. Lawson presently intends to possess the handgun within her home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19.

20. Ms. Lawson applied for permission to possess the handgun within her Chicago home. On January 3, 2008, that application was refused pursuant to the policies complained of in this action.

**ANSWER:** The City admits that Ms. Lawson applied to the City for permission to register a handgun and that the application was refused on January 3, 2008, pursuant to Chicago Municipal Code § 8-20-050. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 20.

21. Ms. Lawson fears arrest, criminal prosecution, incarceration, and fine if she were to possess a handgun within her home.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 21.

22.     Mr. Lawson lawfully owns a handgun, which he keeps outside the City of Chicago. Mr. Lawson presently intends to possess the handgun within his home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 22.

23.     Mr. Lawson applied for permission to possess the handgun within his Chicago home. On January 23, 2008, that application was refused pursuant to the policies complained of in this action.

**ANSWER:** The City admits that Mr. Lawson applied to the City for permission to register

a handgun and that the application was refused on January 23, 2008, pursuant to Chicago Municipal

Code §§ 8-20-050 and 8-20-090.  The City is without knowledge or information sufficient to form

a belief as to the truth of the remaining allegations contained in Paragraph 23.

24.     Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess a handgun within his home.

**ANSWER:**  The City is without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 24.

25.     Mr. Lawson owns various long arms which are kept in his Chicago home and are lawfully registered pursuant to the Chicago Municipal Code.

**ANSWER:** The City admits that it has approved various registration applications filed by

Mr. Lawson for various long arms.  The City is without knowledge or information sufficient to form

a belief as to the truth of the allegations contained in Paragraph 25.

26.     Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to continue to possess these arms in his Chicago home without re-registering them annually as required by the Chicago Municipal Code.

**ANSWER:**  The City is without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 26.

      27.    On May 4, 2008, the registration for one of Mr. Lawson's rifles, a K31, lapsed. The rifle thus became permanently unregisterable within the City of Chicago. Mr. Lawson removed the rifle from his Chicago home and now keeps it outside the City of Chicago.

      **ANSWER:** The City admits that, on May 3, 2007, the City approved the registration of one of Mr. Lawson's rifles, Serial No. 750304, and that Mr. Lawson has not filed an application to re-register that rifle. The City further admits that section 8-20-200(c) of the Chicago Municipal Code states that "Failure to comply with the requirement for renewal of registration of a firearm shall cause that firearm to become unregisterable." The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 27.

      28.    Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess the lapsed K31 rifle within his Chicago home. Mr. Lawson presently intends to possess the K31 rifle within his home, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

      **ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28.

      29.    In 2007, Mr. Lawson applied to purchase a rifle from the federal Civilian Marksmanship Program ("CMP"). On October 18, 2007, Mr. Lawson was informed via email that his application was granted and the rifle would be delivered to his Chicago home. The Civilian Marksmanship Program requires that delivery be made to Mr. Lawson's Chicago home, because that is the address listed both in Mr. Lawson's driving license and Illinois Firearms Owner Identification Card.

      **ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29.

      30.    On October 19, 2007, the CMP rifle arrived at the Lawson home via the U.S. Postal Service. Mr. Lawson thus had approximately a day's notice that he would be receiving the CMP rifle. Only upon receiving the CMP rifle could Mr. Lawson learn the gun's serial number, necessary to apply for a Chicago registration certificate for the firearm.

      **ANSWER:** The City is without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 30.

31. Mr. Lawson relocated the rifle outside of Chicago and, on November 30, 2007 applied to register the rifle. On December 11, 2007, that application was refused pursuant to the policies complained of in this action.

**ANSWER:** The City admits that Mr. Lawson applied to the City for permission to register a rifle on November 30, 2007, and that on December 11, 2007, that application was refused pursuant to Chicago Municipal Code § 8-20-090. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 31.

32. Mr. Lawson presently intends to possess the CMP rifle within his home, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action. Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess the CMP rifle within his home.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32.

33. The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

**ANSWER:** The City admits that the Second Amendment to the United States Constitution states that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The City denies the remaining allegations contained in Paragraph 33.

34. At a minimum, the Second Amendment guarantees individuals a fundamental right to possess a functional, personal firearm, including a handgun, within the home.

**ANSWER:** The City denies the allegations contained in Paragraph 34.

35. The Fourteenth Amendment to the United States Constitution provides, in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**ANSWER:** The City admits that the Fourteenth Amendment to the United States Constitution contains the language quoted in Paragraph 35. The City denies the remaining allegations contained in Paragraph 35.

36. Chicago Municipal Code § 8-20-040(a) mandates that

> All firearms in the City of Chicago shall be registered in accordance with the provisions of this chapter. It shall be the duty of a person owning or possessing a firearm to cause such firearm to be registered. No person shall within the City of Chicago, possess, harbor, have under his control... or accept any firearm unless such person is the holder of a valid registration certificate for such firearm. No person shall, within the City of Chicago, possess, harbor, have under his control... or accept any firearm which is unregisterable under the provisions of this chapter.

**ANSWER:** The City admits that § 8-20-040(a) of the Chicago Municipal Code contains the language cited in Paragraph 36. The City denies that Paragraph 36 fully and completely cites the entirety of § 8-20-040(a). The City denies the remaining allegations contained in Paragraph 36.

37. Chicago Municipal Code § 8-20-050 provides: "No registration certificate shall be issued for any of the following types of firearms: . . .(c) handguns . . ." While Section 8-20-050(c) provides exceptions for certain handguns owned prior to the law's effective date, and handguns owned by police officers, security personnel, and private detectives, the provision, in conjunction with Section 8-20-040, generally bars the private home possession of handguns by law-abiding adult citizens.

**ANSWER:** The City admits that § 8-20-050 of the Chicago Municipal Code contains the language cited in Paragraph 37. The City denies that Paragraph 37 fully and completely cites the entirety of § 8-20-050. The City denies the remaining allegations contained in Paragraph 37.

38. Chicago Municipal Code § 8-20-090(a) provides: "A registration certificate shall be obtained prior to any person taking possession of a firearm from any source."

**ANSWER:** The City admits the allegations in Paragraph 38.

39. Chicago Municipal Code § 8-20-200 provides:

(a) Every registrant must renew his registration certificate annually. Applications for renewal shall be made by such registrants 60 days prior to the expiration of the current registration certificate.

(b) The application for renewal shall include the payment of a renewal fee as follows:

1 firearm .... $20.00; 2-10 firearms .... 25.00; More than ten firearms .... 35.00

(c) Failure to comply with the requirement for renewal of registration of a firearm shall cause that firearm to become unregisterable.

(d) All terms, conditions and requirements of this chapter for registration of firearms shall be applicable to renewal or registration of such firearms.

(e) The renewal fee shall not be applicable to duty-related handguns of peace officers domiciled in the City of Chicago.

**ANSWER:** The City admits the allegations contained in Paragraph 39, except that the City denies that § 8-20-200(b) of the Chicago Municipal Code contains semicolons.

40. Many Chicago gun owners fail to re-register their firearms every year. Among these recently was Alderman Richard Mell, whose firearms became unregisterable when he failed to timely renew his registration certificates.

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, this paragraph is stricken.

41. Accordingly, Alderman Mell proposed an ordinance amending the law to permit, for one month, lapsed guns to be re-registered if their owners had attempted to re-register their guns between May 1, 2007 and April 1, 2008, a period that would have covered his lapsed firearm registrations.

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, this paragraph is stricken.

42. Defendant Mayor Daley endorsed Mell's proposal, stating: "A lot of people go back and forth to their summer homes ... A lot of people move their shotguns. A lot of 'em are bird hunters, gun collectors. ... They move 'em back from Wisconsin, Michigan, [other] parts of Illinois."

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, this paragraph is stricken.

43. Defendant Mayor Daley added: "It's one time [for] one month . . . You want to have 'em register. There's nothing wrong with that . . . People want to just register. A lot of 'em bring 'em back from hunting trips. So, why not?"

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, this paragraph is stricken.

44. Speaking of Alderman Mell's desire to re-register his lapsed guns, Defendant Mayor Daley stated: "He has a home in Wisconsin. He brings 'em back and forth. He's not running out with a shotgun and hurting people."

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, this paragraph is stricken.

45. The proposed re-registration amnesty bill was passed by the Chicago City Council, with the amnesty period extended to 120 days. The fee for re-registering a lapsed firearm under the amnesty bill is $60.00.

**ANSWER:** Pursuant to the Court's June 27, 2008 Memorandum Order, this paragraph is stricken.

46. A first violation of Chicago's ban on the ownership or possession of unregistered firearms within the home is punishable by a fine of "not less than $300.00, nor more than $500.00; or [incarceration] for not less than ten days nor more than 90 days or both." Chicago Municipal Code § 8-20-250. Subsequent violations are punishable by a fine of $500.00 and incarceration ranging from ninety days to six months. Id.

**ANSWER:** The City admits that § 8-20-250 of the Chicago Municipal Code states that "Any person who violates any provision of this chapter, where no other penalty is specifically provided, shall upon conviction for the first time, be fined not less than $300.00, nor more than $500.00; or be incarcerated for not less than ten days nor more than 90 days or both. Any subsequent conviction for a violation of this chapter shall be punishable by a fine of $500.00 and by incarceration for a term of not less than 90 days, nor more than six months." The City denies the remaining allegations contained in Paragraph 46.

**FIRST CAUSE OF ACTION - HANDGUN BAN**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

47. Paragraphs 1 through 46 are incorporated as though fully stated herein.

**ANSWER:** The City hereby incorporates its answers to Paragraphs 1-46, above.

48.     The Second Amendment right is incorporated as against the states and their political subdivisions pursuant to the Due Process Clause of the Fourteenth Amendment.

**ANSWER:** The City denies the allegations contained in Paragraph 48.

49.     The Second Amendment right to keep and bear arms is a privilege and immunity of United States citizenship which, pursuant to the Fourteenth Amendment, states and their political subdivisions may not violate.

**ANSWER:** The City denies the allegations contained in Paragraph 49.

50.     Handguns, as a class of weapons, are "arms" whose possession by law-abiding adult citizens is protected by the Second Amendment right to keep and bear arms.

**ANSWER:** The City denies the allegations contained in Paragraph 50.

51.     By banning handguns, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution.  Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983.  Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**ANSWER:** The City denies the allegations contained in Paragraph 51.  The City further

denies that Plaintiffs are entitled to the relief sought in this Paragraph.

**SECOND CAUSE OF ACTION - RE-REGISTRATION REQUIREMENT**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

52.     Paragraphs 1 through 51 are incorporated as though fully stated herein.

**ANSWER:** The City hereby incorporates its answers to Paragraphs 1-51, above.

53.     By requiring Plaintiffs to annually re-register each firearm, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution.  Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983.  Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**ANSWER:** The City denies the allegations contained in Paragraph 53. The City further denies that Plaintiffs are entitled to the relief sought in this Paragraph.

**THIRD CAUSE OF ACTION - PRE-ACQUISITION REGISTRATION REQUIREMENT**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

54. Paragraphs 1 through 53 are incorporated as though fully stated herein.

**ANSWER:** The City hereby incorporates its answers to Paragraphs 1-53, above.

55. By requiring Plaintiffs to register all firearms prior to their acquisition, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**ANSWER:** The City denies the allegations contained in Paragraph 55. The City further denies that Plaintiffs are entitled to the relief sought in this Paragraph.

**FOURTH CAUSE OF ACTION - UNREGISTERABLE STATUS PENALTY**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

56. Paragraphs 1 through 55 are incorporated as though fully stated herein.

**ANSWER:** The City hereby incorporates its answers to Paragraphs 1-55, above.

57. By declaring specific firearms "unregisterable" as a penalty for not complying with registration requirements, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**ANSWER:** The City denies the allegations contained in Paragraph 57. The City further denies that Plaintiffs are entitled to the relief sought in this Paragraph.

**FIFTH CAUSE OF ACTION - UNREGISTERABLE STATUS PENALTY**
**EQUAL PROTECTION**
**U.S. CONST., AMEND. XIV, 42 U.S.C. § 1983**

58.     Paragraphs 1 through 57 are incorporated as though fully stated herein.

**ANSWER:**  The City hereby incorporates its answers to Paragraphs 1-57, above.

59.     By declaring specific firearms "unregisterable" as a penalty for not complying with registration requirements, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution.  Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983.  Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**ANSWER:** The City denies the allegations contained in Paragraph 59.  The City further denies that Plaintiffs are entitled to the relief sought in this Paragraph.

**PRAYER FOR RELIEF**

Plaintiffs request judgment be entered in their favor and against Defendants as follows:

1.     An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Chicago Municipal Code § 8-20-050(c), barring registration of handguns; Chicago Municipal Code § 8-20-200, requiring the annual renewal of firearms registrations; Chicago Municipal Code § 8-20-090, mandating that registration certificates for firearms be obtained prior to taking possession of a firearm; Chicago Municipal Code § 8-20-040, as applied to prohibiting possession of an unregistered firearm within a period of time reasonably necessary to obtain registration; and any custom, policy, or practice of deeming a firearm "unregisterable" for the sole reason that it has previously been not validly registered.

2.     Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

3.     Declaratory relief consistent with the injunction;

4     Costs of suit; and

5.     Any other further relief as the Court deems just and appropriate. Dated: June 26, 2008.

**ANSWER:** The City denies that the Plaintiffs are entitled to the relief sought in the Prayer

for Relief. The City further requests that judgment be entered in its favor and against Plaintiffs.

**DEFENSE - FAILURE TO STATE A CLAIM**

1. The Complaint fails to state any claims upon which relief can be granted.

**JURY DEMAND**

The City demands trial by jury.

Respectfully submitted,

Mara S. Georges, Corporation Counsel for the City of Chicago

By: /s/ Rebecca Alfert Hirsch
Assistant Corporation Counsel

Michael A. Forti
Deputy Corporation Counsel
Mardell Nereim
Chief Assistant Corporation Counsel
Andrew W. Worseck
Assistant Corporation Counsel
William Macy Aguiar
Assistant Corporation Counsel
Rebecca Alfert Hirsch
Assistant Corporation Counsel
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230
Chicago, IL 60602
312-744-9010

Dated: Sept. 5, 2008.

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the City of Chicago, hereby certifies that on September 5, 2008, she served a copy of the **Defendant City of Chicago's Amended Answer to Plaintiffs' Complaint, Defense, and Jury Demand**, along with this certificate of service, on:

David G. Sigale
Law Firm of David G. Sigale, P.C.
Corporate West 1
4300 Commerce Court, Suite 300-3
Lisle, IL 60532

by electronic means pursuant to Electronic Case Filing (ECF), and on:

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314

by first class United States Mail, postage pre-paid, by placing them in the United States Mail box at 30 North LaSalle Street, Chicago, Illinois 60602.

/s/ Rebecca Alfert Hirsch

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| OTIS McDONALD, et al., | ) Case No. 08-CV-3645 |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MOTION TO NARROW LEGAL ISSUES**
**Fed. R. Civ. Proc. 16(a)(1), (c)(2)(A)**

NOW COME the Plaintiffs, OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC. and ILLINOIS STATE RIFLE ASSOCIATION, by and through LAW FIRM OF DAVID G. SIGALE, P.C. and GURA & POSSESSKY, PLLC, their attorneys, and, pursuant to Rule 16(a)(1) and (c)(2)(A) of the Federal Rules of Civil Procedure move this honorable Court to narrow the legal issues in this matter by ruling the Second Amendment to the United States Constitution applies to the Defendant CITY OF CHICAGO through the Fourteenth Amendment to the United States Constitution. In support thereof, Plaintiffs state as follows:

**INTRODUCTION**

In pleadings and appearances before the Court in this matter, as well as in public statements, the parties and Court have acknowledged that the primary threshold legal issue in this case is incorporation. Plaintiffs submit that under any theory of Fourteenth Amendment incorporation, Defendant is bound to respect their Second Amendment rights as recently

delineated in *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008).  In contrast, Defendant maintains the Second Amendment does not apply to it.

The Court must therefore determine the critical issue of this case: whether the rights secured by the Second Amendment to the United States Constitution are applicable to state and local governments through the Privileges or Immunities and/or Due Process Clauses of the Fourteenth Amendment.  It is especially wise to decide this before the parties engage in lengthy and costly discovery.  It would also be a waste of judicial resources to litigate this case without expediently determining the legal issue that is, by everyone's account, the crux of the matter.

The Court has noted this, and suggested the filing of this motion.

The question of Fourteenth Amendment incorporation must be decided in Plaintiffs' favor.  As described herein, the protection of the people's right to keep and bear arms against the states' attempted abridgements of that right was one of the primary purposes of the Fourteenth Amendment.  It is widely acknowledged the Supreme Court wrongly interpreted the Privileges or Immunities Clause in *The Slaughter-House Cases,* giving it an unduly narrow interpretation that is long overdue for correction.  Since Second Amendment incorporation through that provision is proper, Plaintiffs respectfully request this Court to avail itself of the opportunity to honor the original intent, meaning, and plain text of the Fourteenth Amendment by holding the Second Amendment's freedoms apply to the Defendant in this case.

Additionally, the United States Supreme Court has ruled that certain fundamental Constitutional rights, including those enumerated in the Bill of Rights, are incorporated as against the states through the Fourteenth Amendment's Due Process Clause.  Applying the modern selective incorporation test of whether a right is to be incorporated, as described in

*Duncan* v. *Louisiana*, 391 U.S. 145 (1968), the only proper conclusion is that the rights secured by the Second Amendment must be incorporated as against the states and their political subdivisions, including the Defendant, via the Due Process Clause of the Fourteenth Amendment. The cases relied upon by Defendant were decided before the advent of the modern incorporation doctrine, and thus did not acknowledge or engage in the required incorporation analysis.

Plaintiffs respectfully request this Court enter an order holding that the rights secured by the Second Amendment to the United States Constitution are incorporated as against the Defendant through the Privileges or Immunities and/or Due Process Clauses of the Fourteenth Amendment.

## STATEMENT OF FACTS

On June 27, 2008, the United States Supreme Court struck down Washington, D.C.'s municipal handgun ban and ban on the possession of functional firearms for self-defense as violations of Second Amendment rights. *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008). Plaintiffs filed the instant suit the same day. In addition to banning home handgun possession, these ordinances require the registration of non-banned firearms prior to possessing them, in circumstances that sometimes make firearm ownership impossible, and further impose unnecessary and burdensome annual firearm re-registration requirements. There is no practical distinction between Washington, D.C.'s former handgun ban and the handgun ban maintained by Defendant. Under *Heller*, Defendant's ordinances banning residents' possession of handguns in their homes for self-defense, as well as certain ordinances governing firearm pre-registration and re-registration requirements, plainly violate Plaintiffs' Second Amendment rights.

The individual Plaintiffs assert in their Complaint that they applied for permits to own handguns and various long arms in their homes, and that these applications were denied by Defendant, or are subject to the various challenged registration restrictions. In its Amended Answer, Defendant admits both the applications and denials, even citing the respective ordinances on which the denials were based, and does not otherwise challenge the content and operation of the ordinances as alleged by Plaintiff. Defendant's sole affirmative defense is that the Complaint fails to state a claim.

## SUMMARY OF ARGUMENT

Applying Fourteenth Amendment incorporation analysis to the Second Amendment right to keep and bear arms, there can be only one result: the Second Amendment's freedoms apply to the states and their political subdivisions, including the Defendant.

The right to keep and bear arms is among the privileges or immunities of United States citizenship which the states are forbidden from abridging. Indeed, the Fourteenth Amendment was intended and originally understood to stop the states' abridgement of the right to keep and bear arms. The Fourteenth Amendment's Privileges or Immunities Clause may have been given a wrong, parsimoniously narrow interpretation by the Supreme Court in *The Slaughter-House Cases,* 83 U.S. (16 Wall.) 36 (1873), but Second Amendment incorporation through that provision remains the most logical course of action. Considering the widely held view that the current Privileges or Immunities Clause jurisprudence is incorrect, and the recent suggestion by an Associate Justice of the Supreme Court that this doctrine be revisited, Plaintiffs would in good faith urge that this precedent be reconsidered to better honor the original intent, meaning, and plain text of the Fourteenth Amendment.

Yet other precedent requires a ruling in Plaintiffs' favor on the issue of Fourteenth Amendment incorporation. However *Slaughter-House* hampers incorporation through the Privileges or Immunities Clause, the Supreme Court's well-established doctrine of selective incorporation through the Fourteenth Amendment's Due Process Clause mandates that Defendant respect its residents' Second Amendment rights.

Applying the Second Amendment to the challenged laws, the latter must yield. A ban on the home possession of handguns by law-abiding adults is clearly unconstitutional. *Heller,* 128 S. Ct. at 2818. And while *Heller* did not purport to define the precise standard of review under which gun regulations must be examined in Second Amendment cases, Defendant's re-registration and pre-acquisition registration requirements, and "unregisterability" penalty, fail any possible standard of review.

The outcome of this case thus hinges upon resolution of the incorporation question.

## ARGUMENT

### I. THE RIGHT TO ARMS SECURED BY THE SECOND AMENDMENT IS A PRIVILEGE OR IMMUNITY WITHIN THE MEANING OF THE FOURTEENTH AMENDMENT, WHICH THE STATES SHALL NOT ABRIDGE.

The Fourteenth Amendment provides, in pertinent part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, sec. 1, cl. 2. The Fourteenth Amendment Privileges or Immunities Clause was originally intended and understood to incorporate the Bill of Rights – including, specifically, the Second Amendment – as against the states. It should be given this effect today.

Plaintiffs acknowledge that this argument is foreclosed in this Court by *The Slaughter-House Cases,* 83 U.S. (16 Wall.) 36 (1873), holding that the Privileges or Immunities Clause

guarantees only rights that flow from the existence of United States citizenship, such as the rights to diplomatic protection abroad or to access the navigable waterways of the United States. *Slaughter-House* may be binding law, but "'everyone' agrees the Court [has] incorrectly interpreted the Privileges or Immunities Clause." Richard L. Aynes, *Constricting the Law of Freedom. Justice Miller, the Fourteenth Amendment, and the Slaughter-House Cases,* 70 Chi. Kent L. Rev. 627 (1994); *see also* Laurence H. Tribe, *Taking Text and Structure Seriously. Reflections on Free-Form Method in Constitutional Interpretation,* 108 Harv. L. Rev. 1121, 1297 n. 247 (1995) ("*[T]he Slaughter-House Cases* incorrectly gutted the Privileges or Immunities Clause"); Akhil Reed Amar, *The Bill of Rights and the Fourteenth Amendment,* 101 Yale L.J. 1193, 1258-59 (1992).

"Legal scholars agree on little beyond the conclusion that the Clause does not mean what the Court said it meant in 1873." *Saenz* v. *Roe,* 526 U.S. 489, 523 n.1 (1999) (Thomas, J. dissenting) (citations omitted). Indeed, Justice Thomas, joined by Chief Justice Rehnquist, declared that he "would be open to reevaluating [the Privileges or Immunities Clause's] meaning in an appropriate case." *Saenz,* 526 U.S. at 528 (Thomas, J., dissenting).[1] This is such an appropriate case, considering that no modern court has considered the interplay between the Second Amendment, properly understood, and the Fourteenth Amendment.

Before the Civil War, the Supreme Court held that states were not bound by the Bill of Rights. *Barron ex rel. Tiernan* v. *Mayor of Baltimore,* 32 U.S. (7 Pet.) 243 (1833). *Barron*

---

[1]"Since the adoption of [the Fourteenth] Amendment, ten Justices have felt that it protects from infringement by the States the privileges, protections, and safeguards granted by the Bill of Rights . . . Unfortunately it has never commanded a Court. Yet, happily, all constitutional questions are always open." *Gideon* v. *Wainright,* 372 U.S. 335, 345-46 (1963) (Douglas, J., concurring) (citation omitted).

proved intolerable during Reconstruction. With recalcitrant southern states actively oppressing Americans just freed from slavery, Congress saw the need to constitutionally define American citizenship and imbue that citizenship with meaningful federal protection. Thus the Fourteenth Amendment's first section was designed to overrule two Supreme Court precedents. The first clause dispensed with *Scott* v. *Sandford,* 60 U.S. (19 How.) 393 (1857), which held that people of African descent could not be American citizens or citizens of American states. The Privileges or Immunities Clause was aimed squarely at overruling *Barron*.

> "[I]n drafting section one," Fourteenth Amendment author Rep. John Bingham
>
> looked to *Barron* itself for guidance. Within the words of Chief Justice John Marshall he found clear instructions: "Had the framers of these amendments intended them to be limitations on the powers of the state governments, they would have imitated the framers of the original constitution, and have expressed that intention."

Michael Anthony Lawrence, *Second Amendment Incorporation Through the Privileges or Immunities and Due Process Clauses,* 72 Mo. Law. R. 1, 18 (2007) (hereafter "Lawrence") (quoting Cong. Globe, 42d Cong., 1st Sess. 84 App. (1871); *Barron,* 32 U.S. at 250). The opening words of the Privileges or Immunities Clause thus imitate directly the command of Article I, Section 10 referenced by *Barron:* "No state shall." Bingham made explicit that *Barron*'s suggestion was followed in order to bind the states. *Id.* at 18-19 and citations therein.

As for the privileges and immunities that "no state shall . . . abridge," these included, at a minimum, the Bill of Rights. "Congress in 1866 understood perfectly well that section one was intended to repudiate *Barron.* 'Over and over [John Bingham] described the privileges-or-immunities clause as encompassing 'the bill of rights' – a phrase he used more than a dozen times in a key speech . . .'" Lawrence, 72 Mo. L. Rev. at 19 (quoting Akhil Reed Amar, THE BILL

OF RIGHTS 182 (1998) (hereafter "Amar").  The Fourteenth Amendment's Senate sponsor,

Senator Jacob Howard, explained the Privileges or Immunities Clause's incorporating scope:

> To these privileges and immunities, whatever they may be – for they are not and cannot be fully defined in their entire extent and precise nature – to these should be added the personal right guarantied and secured by the first eight amendments of the Constitution; such as the freedom of speech, . . . *and the right to keep and to bear arms* . . . . The great object of the first section of this amendment is, therefore, to restrain the power of the States and compel them at all times to respect these great fundamental guarantees.

Cong. Globe, 39th Cong., 1st Sess. 2765-66 (1866) (emphasis added).

These and numerous other widely-reported congressional comments expressing the

Fourteenth Amendment's repudiation of *Barron* were unopposed.  Amar, at 186-87.  Indeed, the

Fourteenth Amendment's southern opponents understood that the Privileges or Immunities

Clause incorporated the Bill of Rights, as did those who promoted the Fourteenth Amendment's

ratification among the states.  *See discussion in* Lawrence, at 22-27.  Arguably, the right to keep

and bear arms was the right whose incorporation was most urgently desired.  "With respect to the

proposed [Fourteenth] Amendment, Senator Pomeroy described as one of the three

"indispensable" "safeguards of liberty . . . under the Constitution" a man's "right to bear arms for

the defense of himself and family and his homestead."  *Heller,* 128 S. Ct. at 2811 (citing Cong.

Globe, 39th Cong., 1st Sess., 1182 (1866)).

Accordingly, until *Slaughter-House,* it was perfectly understood by fans and foes of the

Fourteenth Amendment alike that the Privileges or Immunities Clause incorporates the entire Bill

of Rights as against the states – including the Second Amendment.  For purposes of this Motion,

it suffices to note that *Slaughter-House*'s evisceration of the Privileges or Immunities Clause was

wrong when it was decided and remains wrong today.

## II. THE SECOND AMENDMENT IS INCORPORATED UNDER THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE.

*Slaughter-House* may have rendered the Privileges or Immunities Clause meaningless, but the Supreme Court would discover another approach to Fourteenth Amendment incorporation. It is now well-established that the amendment's Due Process Clause has a substantive dimension, and that deprivation of enumerated constitutional rights is thus largely incompatible with due process. Almost every provision of the Bill of Rights considered for incorporation in the modern era has been incorporated.

In the early days of incorporation, the Supreme Court explained that "immunities that are valid as against the federal government by force of the specific pledges of particular amendments have been found to be implicit in the concept of ordered liberty, and thus, through the Fourteenth Amendment, become valid as against the states." *Palko* v. *Connecticut*, 302 U.S. 319, 324-25 (1937). The Second Amendment, given its forceful command and basis in the inherent human right of self-preservation, would surely pass this test. But the Supreme Court would settle on an analysis proven yet more amenable to incorporation. The modern incorporation test asks whether a right is "fundamental to the American scheme of justice," *Duncan* v. *Louisiana*, 391 U.S. 145, 149 (1968), or "necessary to an Anglo-American regime of ordered liberty," *id.*, at 150 n.14. *Duncan*'s analysis suggested looking to the right's historical acceptance in our nation, its recognition by the states, any trend regarding state recognition, and the purpose behind the right.

The right to bear arms clearly meets the modern incorporation standard. "By the time of the founding, the right to have arms had become fundamental for English subjects." *Heller*, at 2798 (citations omitted). The violation of that right by George III "provoked polemical reactions

by Americans invoking their rights as Englishmen to keep arms." *Id.*, at 2799. The Second Amendment "codified a right inherited from our English ancestors." *Id.*, at 2802 (citation omitted). Indeed, when the constitution was considered, demands for a bill of rights prevailed in five of seven constitutional ratifying conventions. The only provisions common to all bill of rights demands were freedom of religion and the right to arms.

Forty-four of the fifty states secure a right to arms in their constitutions, and of these, fifteen are either new or strengthened since 1970. Eugene Volokh, *State Constitutional Rights to Keep and Bear Arms*, 11 Tex. Rev. Law & Pol. 191 (2006). And in *Heller*, thirty-two states advised the Supreme Court that the individual Second Amendment "is properly subject to incorporation." Brief of Amici States Texas, et al., Supreme Court No. 07-290, at 23 n.6.[2]

The Second Amendment's purpose confirms its incorporation. "The inherent right of self-defense has been central to the Second Amendment right." *Heller*, at 2818. Blackstone described that right as preserving "'the natural right of resistance and self-preservation,' and 'the right of having and using arms for self-preservation and defence.'" *Heller*, at 2792 (citations omitted). The Supreme Court binds the states to respect unenumerated rights which, like the Second Amendment, are rooted in deference to preserving personal autonomy. Observing that "no right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law," *Cruzan* v. *Dir., Mo. Dept. of Health*, 497 U.S. 261, 269 (1990) (citation omitted), the Supreme Court recognized a right to refuse life-sustaining medical care. *Id.*, at 278; *see also Eisenstadt* v. *Baird*, 405 U.S.

[2]North Carolina joined the brief's 31 original signatories by letter.

438, 453 (1972) ("the right of the individual . . . to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child"); *Lawrence* v. *Texas*, 539 U.S. 558, 562 (2003) ("liberty of the person both in its spatial and more transcendent dimensions" supports right to consensual intimate relationships); *Rochin* v. *California*, 342 U.S. 165 (1952) (right of bodily integrity against police searches).

It is unfathomable that the states are constitutionally limited in their regulation of medical decisions or intimate relations, because these matters touch upon personal autonomy, but are unrestrained in their ability to trample upon the enumerated right to arms designed to enable self-preservation. If abortion is protected because "[a]t the heart of liberty is the right to define one's own concept of existence," *Planned Parenthood* v. *Casey*, 505 U.S. 833, 851 (1992), the right of armed self-defense against violent criminal attack is surely deserving of incorporation. Indeed, *Casey* invoked the second Justice Harlan's celebrated passage describing the liberty protected by the Due Process Clause as broader than "a series of isolated points pricked out in terms of the taking of property; the freedom of speech, press, and religion; *the right to keep and bear arms*; the freedom from unreasonable searches and seizures; and so on." *Id.*, at 848 (quoting *Poe* v. *Ullman*, 367 U.S. 497, 543 (1961) (Harlan, J., dissenting)) (emphasis added). Liberty cannot now be defined so narrowly as to exclude one of its more obvious attributes.

The Second Amendment also has another purpose, spelled out in the prefatory clause: preservation of the people's ability to act as militia. *Heller*, at 2800-01. The amendment's framers believed this purpose was "necessary to the security of a free state." U.S. Const. amend. II. By its own terms, the Second Amendment secures a fundamental right.

Three Supreme Court decisions have rejected the Second Amendment's direct application

to the states. But these holdings predate and therefore did not discuss the incorporation doctrine.

> With respect to *Cruikshank*'s [*United States* v. *Cruikshank*, 92 U.S. 542 (1876)] continuing validity on incorporation, a question not presented by this case, we note that *Cruikshank* also said that the First Amendment did not apply against the States and did not engage in the sort of Fourteenth Amendment inquiry *required by our later cases*.

*Heller*, 128 S. Ct. at 2813 n.23 (emphasis added).

*Heller* noted that *Presser* v. *Illinois*, 116 U.S. 252 (1886) and *Miller* v. *Texas*, 153 U.S. 535 (1894) "reaffirmed that the Second Amendment applies only to the Federal Government." *Id.* But both these cases precede the incorporation era, and suffer from the same flaw that renders *Cruikshank* non-authoritative: an absence of the "required" modern incorporation analysis. *See also Duncan*, 391 U.S. at 155 (complete non-incorporation "a position long since repudiated"). *Miller*'s observation that the Second Amendment did not bind the states referenced the Fourth Amendment for the same proposition. *Miller*, 153 U.S. at 538. Clearly the city would not cite *Miller*'s language for the proposition that its police force need not obey the Fourth Amendment. In any event, *Miller*'s non-incorporation language is dicta; the case was dismissed because the constitutional claims were not preserved at trial. *Miller*, 153 U.S. at 537-38.

As for *Presser*, the Supreme Court in that case reasoned that the Second Amendment "is one of the amendments that has no other effect than to restrict the powers of the National government." *Presser*, 116 U.S. at 265. Among the other amendments suggested by *Presser* as not being incorporated are the First (citing *Cruikshank*), Fifth,[3] and Sixth.[4] *Id.* *Presser* relied

---

[3]Takings Clause not incorporated, citing *Barron;* Double Jeopardy Clause not incorporated, citing *Fox* v. *Ohio*, 46 U.S. (5 How.) 410 (1847).

[4]Right to be informed of accusation not incorporated, citing *Twitchell* v. *Commonwealth*, 74 U.S. (7 Wall.) 321 (1869); right to criminal jury trial not incorporated, citing *Murphy* v. *People*, 2 Cow. 815 (N.Y. 1824).

upon cases that are clearly no longer authoritative, and failed to engage in the now-required incorporation analysis that would not be announced until deep into the following century.

The Seventh Circuit once reasoned that *Presser* precluded Second Amendment incorporation. *Quilici* v. *Village of Morton Grove*, 695 F.2d 261 (7th Cir. 1982). But *Quilici* has been all but overruled by *Heller*. *Quilici*'s dicta that "the right to keep and bear handguns is not guaranteed by the Second Amendment," *Quilici*, 695 F.2d at 270 (footnote omitted), is no longer recognized as law. As for *Presser*'s relevance to incorporation, *Quilici* noted that "appellants offer[ed] no authority, other than their own opinions, to support their arguments that *Presser* is no longer good law or would have been decided differently today." *Quilici*, 695 F.2d at 270.

Times have changed. As noted *supra*, the Supreme Court explained that *Cruikshank*, upon which *Presser* relied, did not "engage in the sort of Fourteenth Amendment inquiry required by our later cases." *Heller*, at 2813 n.23. *Quilici*'s refusal to consider "historical analysis of the development of English common law and the debate surrounding the adoption of the second and fourteenth amendments," *Quilici*, 695 F.2d at 270 n.8, key aspects of "the sort of inquiry" now "required" by *Heller*, at 2813 n.23, further undercut *Quilici*'s authority.

Since *Quilici*, two circuits concluded *Presser* had been overtaken by the incorporation doctrine. Judge Reinhardt, in elucidating the "collective right" theory rejected in *Heller*, agreed that *Presser* and *Cruikshank* "rest on a principle that is now thoroughly discredited." *Silveira* v. *Lockyer*, 312 F.3d 1052, 1066 n.17 (9th Cir. 2002) (citing *United States* v. *Emerson*, 270 F.3d 203, 221 n.13 (5th Cir. 2001)). After *Heller*, the Seventh Circuit would surely conduct a modern incorporation analysis, as should this Court. *Quilici* poses no obstacle. "Our decisions do not bind the district court when there has been a relevant intervening change in the law." *EEOC* v.

*Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005) (citation omitted); *cf. Cameo Convalescent Center, Inc.* v. *Percy*, 800 F.2d 108, 110 (7th Cir. 1986). *Heller*'s limitation of *Cruikshank*, and instruction that modern incorporation analysis is required to resolve the issue of Second Amendment incorporation, constitute a relevant intervening change in the law. The Village of Morton Grove must understand *Quilici*'s limitations, as it just repealed its handgun ban in the face of a post-*Heller* challenge. Robert Channick, *Morton Grove repeals 27-year old gun ban*, Chicago Tribune (July 28, 2008).

**CONCLUSION**

Incorporation is the controlling, threshold legal issue in this case. In the interest of judicial efficiency, this Court should, at this time, determine whether the Second Amendment applies to the Defendant. Under the modern incorporation doctrine, Defendant is bound to respect Plaintiffs' Second Amendment rights by operation of the Privileges or Immunities and/or the Due Process Clauses of the Fourteenth Amendment.

Plaintiffs respectfully request this Court rule on this legal issue in their favor, and that this Court grant Plaintiffs all further relief consistent with that ruling.

Dated: October 21, 2008

Respectfully submitted,

Alan Gura (admitted *pro hac vice*)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By: /s/ Alan Gura/
Alan Gura

By: /s/ David G. Sigale/
David G. Sigale

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on October 21, 2008, he served a copy of the above **Fed. R. Civ. Proc. 16(a)(1) and (c)(2)(A) Motion to Narrow Legal Issues,** and this certificate of service, on:

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230
Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF). Pursuant to FRCP 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

The undersigned also effect service of the foregoing on:

Stephen A. Kolodziej (Counsel for Plaintiffs in *NRA* v. *City of Chicago,* No. 08-3697)
Brenner, Ford, Monroe & Scott
33 N. Dearborn Street, Suite 300
Chicago, IL 60602
Fax: 312-781-9202

Stephen Halbrook (Counsel for Plaintiffs in *NRA* v. *City of Chicago,* No. 08-3697) 10560 Main Street, Suite 404
Fairfax, VA 22030
Fax: 703-359-0938

by facsimile and by first class United States Mail, postage pre-paid.

/s/David G. Sigale
David G. Sigale

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.2**
**Eastern Division**

Otis McDonald, et al.
Plaintiff,
v.
Case No.: 1:08−cv−03645
Honorable Milton I. Shadur
City of Chicago, et al.
Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Thursday, November 13, 2008:

MINUTE entry before the Honorable Milton I. Shadur:Enter Memorandum Order. This Court will put aside the Postal Service's apparent determination that this Court is a non−person, even though it has been occupying the Room 2388 judicial chambers for years − − instead this memorandum is issued simply to reassure plaintiff's counsel that no violation of court rules is to be placed at his doorstep.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OTIS McDONALD, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 08 C 3645 |
| CITY OF CHICAGO, et al., | ) | |
| Defendants. | ) | |

MEMORANDUM ORDER

On October 21, 2008 plaintiffs' counsel filed a "Motion To Narrow Legal Issues," intending to comply with this District Court's Rule (and this Court's website reference to that rule) by contemporaneously mailing a paper counterpart of that electronic filing to this Court's chambers. Counsel's express-mail transmittal was properly addressed to:

The Honorable Milton I. Shadur
Everett McKinley Dirksen Building
Room 2388
219 South Dearborn Street
Chicago IL 60604

Mysteriously the postal authorities stamped the envelope "Addressee unknown," and nearly two weeks later the mailing found its way back to counsel's office in Lisle, Illinois. This Court will put aside the Postal Service's apparent determination that this Court is a non-person, even though it has been occupying the Room 2388 judicial chambers for years--instead this memorandum is issued simply to reassure plaintiffs' counsel that no violation of court rules is to be placed at his doorstep.

Milton I. Shadur
Senior United States District Judge

Date: November 13, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.2**
**Eastern Division**

Otis McDonald, et al.

Plaintiff,

v.

Case No.: 1:08−cv−03645
Honorable Milton I. Shadur

City of Chicago, et al.

Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Wednesday, December 3, 2008:

MINUTE entry before the Honorable Milton I. Shadur:The December 4, 2008 status date is vacated. This Court will set a new status date after the completion of the trial that it is currently conducting. Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.2**
**Eastern Division**

Otis McDonald, et al.

Plaintiff,

v.

Case No.: 1:08−cv−03645
Honorable Milton I. Shadur

City of Chicago, et al.

Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Thursday, December 4, 2008:

MINUTE entry before the Honorable Milton I. Shadur:Enter Memorandum Order.MOTION for summary judgment [32] is denied; Motion [43] is denied. Status hearing set for 12/9/2008 at 08:45 AM.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OTIS McDONALD, et al., Plaintiffs, | ) | |
| v. | ) | No. 08 C 3645 |
| CITY OF CHICAGO, et al., Defendants. | ) | |

MEMORANDUM ORDER

This is one of three cases on this Court's calendar that seek to extrapolate from the Supreme Court's decision in Dist. of Columbia v. Heller, 128 S.Ct. 2783 (2008) to invalidate municipal ordinances that ban handguns--indeed, plaintiffs' counsel brought this lawsuit only one day after Heller came down (obviously having anticipated the decision reached by the five-Justice majority). This case, like National Rifle Association of America, Inc. v. City of Chicago, 08 C 3697, attacks Chicago's handgun ordinance, while National Rifle Association of America, Inc. v. Village of Oak Park, 08 C 3696 (brought by the same plaintiffs' counsel who are handling 08 C 3697) challenges the Oak Park ordinance.

Today this Court has issued an opinion that rejects, as contrary to jurisprudential principles, the invitation by counsel in the other two cases to "overrule" Quilici v. Village of Morton Grove, 695 F.2d 261 (7th Cir. 1982). Quilici is an on-all-fours decision by our Court of Appeals that takes the opposite position

from that now pressed by plaintiffs in all three cases before this Court.

There is no need to repeat what is said in that opinion, for it might well have been written for this case too. Instead this memorandum order simply denies (1) plaintiffs' two pending motions--their Motion for Summary Judgment (Dkt. 32) and their Motion To Narrow Legal Issues (Dkt. 43)--and (2) sets this case as well for a status hearing at 8:45 a.m. December 9, 2008.

Milton I. Shadur
Senior United States District Judge

Date: December 4, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, ILLINOIS STATE RIFLE ASSOCIATION, and SECOND AMENDMENT FOUNDATION, INC.,

Plaintiffs,

v.

CITY OF CHICAGO,

Defendant.

Case No. 08-CV-3645

**NOTICE OF APPEAL**

**NOTICE OF APPEAL**

**NOTICE IS HEREBY GIVEN** that Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc., and Illinois State Rifle Association, plaintiffs in the above named case, and pursuant to 28 U.S.C. 1292(a)(1), hereby appeal to the United States Court of Appeals for the Seventh Circuit from the order denying Plaintiffs' Rule 56 Motion for Summary Judgment, including injunctive relief, entered in this action on the 4th day of December, 2008.

Dated: December 5, 2008

Respectfully submitted,

Alan Gura (admitted pro hac vice)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

By: /s/ Alan Gura
Alan Gura

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By: /s/ David G. Sigale
David G. Sigale

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.2**
**Eastern Division**

Otis McDonald, et al.
Plaintiff,
v.
Case No.: 1:08−cv−03645
Honorable Milton I. Shadur
City of Chicago, et al.
Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, December 9, 2008:

MINUTE entry before the Honorable Milton I. Shadur:Status hearing held on 12/9/2008. Counsel is to submit a draft order for consideration. Status hearing set for 12/18/2008 at 08:45 AMMailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, ILLINOIS STATE RIFLE ASSOCIATION, and SECOND AMENDMENT FOUNDATION, INC.,

Plaintiffs,

v.

CITY OF CHICAGO,

Defendant.

Case No. 08-CV-3645

**NOTICE OF APPEAL**

**NOTICE OF APPEAL**

**NOTICE IS HEREBY GIVEN** that Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc., and Illinois State Rifle Association, plaintiffs in the above named case, hereby appeal to the United States Court of Appeals for the Seventh Circuit from the order denying Plaintiffs' Rule 56 Motion for Summary Judgment, entered in this action on the 4th day of December, 2008, and the order entering judgment for the Defendant City of Chicago on all Counts, based on F.R.Civ.P. 12(c), on the 18th day of December, 2008.

Dated: December 18, 2008

Respectfully submitted,

Alan Gura (admitted pro hac vice)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

By: /s/ Alan Gura
Alan Gura

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By: /s/ David G. Sigale
David G. Sigale
Attorneys for Plaintiffs

**CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING**

The undersigned certifies that:

1. On December 18, 2008, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

2. Pursuant to FRCP 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

/s/ David G. Sigale
Attorney for Plaintiffs

David G. Sigale, Esq. (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547
dsigale@sigalelaw.com



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 3645 | **DATE** | 12/18/2008 |
| **CASE TITLE** | McDonald vs. City of Chicago | | |

**DOCKET ENTRY TEXT**

Status hearing held. Enter Order. This Court hereby grants the contested December 9, 2008 oral motion of the City of Chicago, pursuant to Fed. R. Civ. P. 12( c) for judgment on the pleadings on Counts I-V of the Complaint. Judgment is hereby entered in favor of the City of Chicgao and against Plaintiffs on all counts of the Complaint.

■ [ For further detail see separate order(s).] Docketing to mail notices.

00:15

U.S. DISTRICT COURT

2008 DEC 18 PM 2: 05

FILED

| | Courtroom Deputy Initials: | SN |
|---|---|---|

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, ILLINOIS STATE RIFLE ASSOCIATION, and SECOND AMENDMENT FOUNDATION, INC., | ) | |
| Plaintiffs, | ) | Case No. 08-CV-3645 |
| v. | ) | |
| CITY OF CHICAGO, | ) | |
| Defendant. | ) | |

**ORDER**

On December 4, 2008, the Court ruled it is bound by Quilici v. Village of Morton Grove, 695 F.2d 261 (7th Cir. 1982) to reject incorporation of the Second Amendment *via* the Fourteenth Amendment as against Defendant City of Chicago. Accordingly, the Court denied Plaintiffs' Rule 56 motion for summary judgment, holding Plaintiffs cannot prevail absent incorporation of the Second Amendment. On the same grounds as announced earlier by the Court, and over Plaintiffs' objection for the reasons stated in their Rule 56 and Rule 16 Motions and in open court, the Court hereby grants the contested December 9, 2008 oral motion of the Defendant City of Chicago, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings on Counts I-V of the Complaint. Judgment is hereby entered in favor of the City of Chicago and against Plaintiffs on all counts of the Complaint.

Dated: December 18, 2008

ENTERED:

The Honorable Milton I. Shadur
United States District Court Judge

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

McDonald

v.

City of Chicago

**JUDGMENT IN A CIVIL CASE**

Case Number: 08 C 3645

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that final judgment is entered in favor of the City of Chicago and against Plaintiffs on all counts of the Complaint.

Michael W. Dobbins, Clerk of Court

Date: 12/18/2008

/s/ Sandy Newland, Deputy Clerk

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 4.1.1**
**Eastern Division**

Otis McDonald, et al.

Plaintiff,

v.

Case No.: 1:08−cv−03645
Honorable Milton I. Shadur

City of Chicago, et al.

Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, October 12, 2010:

MINUTE entry before Honorable Milton I. Shadur:This action is hereby dismissed as moot. Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS McDONALD, et al., | ) | Case No. 08-C-3645 |
| | ) | |
| Plaintiffs, | ) | PLAINTIFFS' MOTION FOR INSTRUCTIONS |
| | ) | RE: ATTORNEY FEES AND COSTS |
| v. | ) | [LOCAL RULE 54.3(g)] |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLAINTIFFS' MOTION FOR INSTRUCTIONS RE:**
**ATTORNEY FEES AND COSTS**

NOW COME the Plaintiffs, OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC. and ILLINOIS STATE RIFLE ASSOCIATION, by and through LAW FIRM OF DAVID G. SIGALE, P.C. and GURA & POSSESSKY, PLLC, their attorneys, and, pursuant to Local Rule 54.3(g) move this honorable Court for instructions regarding their Motion for Attorney Fees and Costs.

In support of said motion, Plaintiffs aver:

1. On June 28, 2010, the Supreme Court entered a "judgment" for Plaintiffs and against Defendant; *see* Exhibit 1;

2. The Supreme Court had recently held that municipal handgun bans violate the Second Amendment. "Whatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid." *District of Columbia* v. *Heller*, 128 S. Ct. 2783, 2818 (2008);

3. The Supreme Court's opinion in this case held that the Second Amendment is "fully applicable" to Defendant. *McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3026 & 3046 (2010) (plurality); 130 S. Ct. at 3058 (Thomas, J.);

4. Recognizing that this opinion struck down its handgun ban, Defendant immediately repealed its handgun ban;

5. Notwithstanding the existence of other claims, the Seventh Circuit held the case was mooted by repealing legislation. On remand, the Seventh Circuit provided that "[i]f plaintiffs believe that the repeals entitle them to attorneys' fees under 28 [sic] U.S.C. §1988, they may file appropriate motions in the district court." The Seventh Circuit stated that it expressed no opinion on the availability of fees;

6. Pursuant to Local Rule 54.3, Plaintiffs had already begun negotiations regarding the amount of attorney fees and costs to which they are entitled under 42 U.S.C. § 1988. Requested settlement information was provided to Defendant on August 6 and again on August 30, and the parties discussed the provided information;

7. Despite numerous requests, Defendant steadfastly refused to respond to Plaintiffs' demands, other than to promise, repeatedly, that a substantive response was forthcoming and the numbers would be negotiated;

8. Notwithstanding its repeated promises to Plaintiffs, Defendant defaulted completely on its obligations under Local Rule 54.3;

9. Under Local Rule 54.3, Plaintiffs have until January 11, 2011 to file their motion for attorney fees and costs;

10. Plaintiffs in the related cases of *NRA* v. *City of Chicago* and *NRA* v. *Village of Oak Park* had sought a discovery and briefing schedule regarding their attorney fees and costs demands. Responding to that motion, this Court ordered the parties in those related cases to brief the issue of whether *NRA* Plaintiffs were prevailing parties;

11. Plaintiffs in this case were not provided with notice of the fee proceedings in the related cases;[1]

12. Plaintiffs only learned of the fee proceedings in the related cases when, demanding Defendant's participation in the preparation of the joint statement envisioned by Local Rule 54.3(e), Defendant suddenly – for the first time – mentioned those proceedings as an excuse justifying their failure to abide by the requirements of Local Rule 54.3;

13. Plaintiffs immediately sought to have the related case proceedings held in abeyance pending their ability to be heard on the issue of whether they are prevailing parties;

---

[1]The Court's order in the related NRA cases notes that *McDonald* counsel offered "vigorous criticism at having assertedly been kept out of the loop by NRA's counsel." While NRA counsel should have provided *McDonald* counsel notice, the record will reflect that *McDonald* counsel are specifically criticizing *the City*'s counsel. Opposing counsel agreed to settlement negotiations, and played along with discussions of Plaintiffs' numbers while promising an eventual response, all the while litigating the issue in the related case without notice to *McDonald* plaintiffs. Indeed, the City's counsel sought to avoid offering its settlement position until after the status conference in the related case would be conducted, and following the Court's decision in the related cases, predicted that Plaintiffs' fee petition would likewise be denied. Of course, the existence or litigation of the related NRA cases did not absolve the City of its obligations in this case.

14. The Court denied Plaintiffs' request, and promptly entered an order in the related cases that provides, inter alia, "the Supreme Court's decision in *McDonald* -- which, it will be remembered, resulted in no judicial implementation on remand -- did not meet the requirements of Section 1988 under [*Buckhannon Board & Care Home, Inc.* v. *West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001)];"

15. This Court nonetheless suggested that *McDonald* Plaintiffs might be able to distinguish their arguments from those offered by NRA;

16. Following the Court's suggestion, Plaintiffs now seek instruction pursuant to Local Rule 54.3(g) regarding the filing of their motion for attorney fees and costs. Plaintiffs hereby adopt the many excellent arguments offered by the NRA Plaintiffs as though fully stated herein, and of course, expect no different result here on the basis of these claims.

17. However, "our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Greenlaw* v. *United States*, 128 S. Ct. 2559, 2564 (2008). And *McDonald* Plaintiffs do have different, additional arguments to offer regarding prevailing party status.

18. This Court found that NRA "[sought] to put the old 'catalyst theory' wine into new bottles," and that NRA "demonstrate[d] its essential reliance on the 'catalyst theory.'" *McDonald* Plaintiffs' arguments are not solely dependent on the catalyst theory, and *Buckhannon* does not vitiate their prevailing party status.

19. In addition to adopting and endorsing the NRA's arguments, Plaintiffs claim:

*I. Binding Chicago to Abide By Second Amendment Rights Changed the Legal Relationship Between the Parties*

20. On June 28, 2010, the Supreme Court recognized, in the opinion issued in this case, that the Fourteenth Amendment altered the relationship between the parties with respect to Second Amendment rights. Recounting earlier decisions of the Supreme Court and of the Seventh Circuit, this Court had held that Defendant was not bound to recognize that Plaintiffs enjoyed any rights of the kind secured by the Second Amendment. That is now changed;

21. This changed legal status among the parties is a "judicially sanctioned change in the legal relationship of the parties," and is very much "the stuff of which legal victories are made." *Buckhannon*, 532 U.S. at 605 (citation omitted);

22. This Court has previously held that the *Buckhannon* dissent's description of the majority's holding governs interpretation of *Buckhannon*'s scope. Under that interpretation, a party prevails by "secur[ing] a court entry memorializing her victory. The entry need not be a judgment on the merits. Nor need there be any finding of wrongdoing." *Johnie's Icehouse, Inc.* v. *Amateur Hockey Ass'n of Il.*, 2001 U.S. Dist. LEXIS 11671 at *9 (N.D. Ill. Aug. 7, 2001) (quoting *Buckhannon*, 532 U.S. at 622 (Ginsburg, J., dissenting));

23. Although the change in the legal relationship – recognition that Defendant is bound to recognize Second Amendment rights – qualifies Plaintiffs under the plain language of *Buckhannon*'s majority opinion, Plaintiffs further note that they

are prevailing parties under the interpretation of *Buckhannon* offered by the dissent, as previously accepted by this Court, in that the Supreme Court's opinion is "a document filed in court . . . memorializing [their] victory." *Buckhannon*, 532 U.S. at 622 (Ginsburg, J., dissenting).

*II. The Supreme Court Struck Down Defendant's Handgun Ban*

24. As noted *supra*, the Supreme Court had already held that handgun bans violate the Second Amendment. By holding that the Second Amendment "fully applies" to Defendant, there was nothing left to litigate with respect to the handgun ban. The matter was fully and finally terminated by the Supreme Court. The Supreme Court's decision rendered the handgun ban unenforceable; any person enforcing it as of June 28, 2010 would not have enjoyed qualified immunity from liability;

25. Any claim that the handgun ban could have been defended on remand is untenable. Indeed, as the NRA alluded to but failed to fully point out, the City took this position not merely in the media – but in the Supreme Court;

26. Chicago did not merely argue that the Fourteenth Amendment did not make the Second Amendment applicable to states and localities. Chicago addressed, head on, the constitutionality of the handgun ban itself. Having offered that it could reasonably conclude that "handgun bans . . . enhanc[e]. . . a system of ordered liberty," Respondents' Br. 4 (Exhibit 2), Chicago directly attacked *Heller*'s handgun ban holding: "Features that cause handguns to be regarded by many as the 'quintessential self-defense weapon' (*Heller*, 128 S. Ct. at 2818) also make

them attractive for criminal purposes, including homicide, suicide, and other violent crimes." *Id*. 15;

27. Indeed, Chicago understood that the Supreme Court would be passing upon the constitutionality of its handgun ban. Chicago claimed that "[*McDonald*] Petitioners and NRA both limit their argument in this Court to handgun bans," but then noted that "both [*McDonald* Petitioners and NRA] raised other issues." Id. at 80 n.27. Describing these "other issues," Chicago concluded, "If the judgment is reversed, the lower courts should be directed to address those claims in the first instance." Id. at 81 n. 27;

28. Clearly, Chicago differentiated between the handgun ban, and the "other issues," and acknowledged that there would be no need for the lower courts to address the handgun ban "in the first instance." A clearer admission that the handgun ban was in fact being litigated before the Supreme Court could not have been offered;

29. The Supreme Court emphatically rejected arguments that the handgun ban was constitutional, arguments which it described as follows:

> Municipal respondents . . . urge us to allow state and local governments to enact any gun control law that they deem to be reasonable, *including a complete ban on the possession of handguns in the home for self-defense*. . . . Unless we turn back the clock or adopt a special incorporation test applicable only to the Second Amendment, municipal respondents' argument must be rejected. Under our precedents, if a Bill of Rights guarantee is fundamental from an American perspective, then, unless stare decisis counsels otherwise, that guarantee is *fully binding* on the States . . .

*McDonald*, 130 S. Ct. at 3046 (emphasis added) (footnote omitted);

30.     Plainly, there was nothing voluntary about the handgun ban repeal – the City

        litigated its handgun ban before the Supreme Court, and asked the Court only to

        be allowed to defend the *other* challenged provisions should the Court hold – as it

        unmistakably did – that the full measure and content of the Second Amendment

        binds Defendant. As of June 28, there was nothing "potentially meritless,"

        *Buckhannon*, 532 U.S. at 606, about Plaintiffs' challenge to the handgun ban. Nor

        would there have been anything "potentially" meritless about defending the

        handgun ban on remand; such defense would have been definitively frivolous, the

        issue having been *conclusively litigated and determined* by the Supreme Court, as

        acknowledged before the Supreme Court by Defendant;

                              *III. Buckhannon Was Wrongly Decided*

31.     In addition to (1) adopting NRA's positions, (2) asserting that the changed legal

        relationship at issue is the application of the Second Amendment to Defendant,

        and (3) pointing out that the Supreme Court actually did strike down the Chicago

        handgun ban, as Defendant acknowledged it would under any decision applying

        Second Amendment rights to Chicago, *McDonald* Plaintiffs respectfully reserve

        for a higher authority the position that *Buckhannon* is simply wrong, for the

        reasons ably offered by petitioners in that case, their amici, and the dissenters.

        *Buckhannon* must be overruled.

*Conclusion*

WHEREFORE, Plaintiffs maintain that they indeed prevailed, within the meaning of Section 1988 and even within the meaning of *Buckhannon*. Plaintiffs would ask only that they have until January 31 to file their motion for attorney fees and costs, which should not overly tax the Court's resources given Defendant's calculated decision to default on its Rule 54.3 obligations.

Wherefore, Plaintiffs respectfully request that the motion be granted.

Dated: December 27, 2010

Respectfully submitted,

Alan Gura (admitted *pro hac vice*)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314

703.835.9085/Fax 703.997.7665

By: /s/ Alan Gura
Alan Gura

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
4300 Commerce Court, Suite 300-3
Lisle, IL 60532

630.452.4547/Fax 630.596.4445

By: /s/ David G. Sigale
David G. Sigale

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on December 27, 2010, he served a copy of the above motion and this certificate of service, on:

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
City of Chicago Department of Law
Constitutional and Commercial Litigation Division 30
N. LaSalle Street, Suite 1230
Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF). Pursuant to FRCP 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

The undersigned also effect service of the foregoing on:

Stephen A. Kolodziej (Counsel for Plaintiffs in *NRA* v. *City of Chicago,* No. 08-3697)
Brenner, Ford, Monroe & Scott
33 N. Dearborn Street, Suite 300
Chicago, IL 60602
Fax: 312-781-9202

Stephen Halbrook (Counsel for Plaintiffs in *NRA* v. *City of Chicago,* No. 08-3697) 10560
Main Street, Suite 404
Fairfax, VA 22030
Fax: 703-359-0938

by facsimile and by first class United States Mail, postage pre-paid.

/s/David G. Sigale
David G. Sigale

**Supreme Court of the United States**
**Office of the Clerk**
**Washington, DC 20543-0001**

**William K. Suter**
Clerk of the Court
(202) 479-3011

July 30, 2010

Clerk
United States Court of Appeals
for the Seventh Circuit
219 South Dearborn Street
Chicago, Illinois 60604

**Re: Otis McDonald, et al.**
**v. City of Chicago, Illinois, et al.**
**No. 08-1521 (Your docket Nos. 08-4241, 08-4243, 08-4244)**

Dear Clerk:

Attached please find a certified copy of the judgment of this Court in the above-entitled case. You may obtain a copy of the opinion by visiting our website @www.supremecourt.gov.

Sincerely,

WILLIAM K. SUTER, Clerk

By [signature]

Elizabeth Brown
Judgments/Mandates Clerk

Enc.
cc: All counsel of record

# Supreme Court of the United States
# Office of the Clerk
# Washington, DC 20543-0001

**William K. Suter**
Clerk of the Court
(202) 479-3011

July 30, 2010

Mr. Alan Gura
Gura & Possessky, PLLC
101 N. Columbus St., Suite 405
Alexandria, VA 22314

**Re: Otis McDonald, et al.
v. City of Chicago, Illinois, et al.
No. 08-1521**

Dear Mr. Gura:

A certified copy of the judgment of this Court in the above-entitled case was emailed to the Clerk of the United States Court of Appeals for the Seventh Circuit today.

The petitioners are given recovery of costs in this Court as follows:

| | |
|---|---|
| **Printing of record:** | **$2,252.70** |
| **Clerk's costs:** | **300.00** |
| **Total:** | **$2,552.70** |

This amount may be collected from the respondents.

Sincerely,

WILLIAM K. SUTER, Clerk

By [signature]

Elizabeth Brown
Judgments/Mandates Clerk

cc: All counsel of record
Clerk, USCA for the Seventh Circuit
(Your docket Nos. 08-4241, 08-4243, 08-4244)

# Supreme Court of the United States

***No.*** **08-1521**

**OTIS McDONALD, ET AL.,**

Petitioners

v.

**CITY OF CHICAGO, ILLINOIS, ET AL.**

**ON WRIT OF CERTIORARI** to the United States Court of Appeals for the Seventh Circuit.

**THIS CAUSE** came on to be heard on the transcript of the record from the above court and was argued by counsel.

**ON CONSIDERATION WHEREOF,** it is ordered and adjudged by this Court that the judgment of the above court is reversed with costs, and the case is remanded to the United States Court of Appeals for the Seventh Circuit for further proceedings.

**IT IS FURTHER ORDERED** that the petitioners Otis McDonald, et al. recover from City of Chicago, Illinois, et al. Two Thousand Five Hundred Fifty-two Dollars and Seventy Cents ($2,552.70) for costs herein expended.

June 28, 2010

| | |
|---|---|
| **Printing of record:** | **$2,252.70** |
| **Clerk's costs:** | **300.00** |
| **Total:** | **$2,552.70** |

A True copy WILLIAM K. SUTER
Test
Clerk of the Supreme Court of the United States
By: [signature]

No. 08-1521

IN THE

# Supreme Court of the United States

OTIS MCDONALD, *et al.*,
*Petitioners*,

v.

CITY OF CHICAGO,
*Respondent.*

**On Writ of Certiorari to the United States Court of Appeals for the Seventh Circuit**

# BRIEF FOR RESPONDENTS CITY OF CHICAGO AND VILLAGE OF OAK PARK

JAMES A. FELDMAN
Special Assistant
Corporation Counsel
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015
(202) 730-1267

MARA S. GEORGES
Corporation Counsel
of the City of Chicago
BENNA RUTH SOLOMON*
Deputy Corporation Counsel
MYRIAM ZRECZNY KASPER
Chief Assistant Corporation Counsel
SUZANNE M. LOOSE
Assistant Corporation Counsel
ANDREW W. WORSECK
Assistant Corporation Counsel
30 N. LaSalle Street, Suite 800
Chicago, Illinois 60602
(312) 744-7764

*Counsel of Record

*Counsel for the City of Chicago*

[Additional Counsel Listed Inside Cover]

WILSON-EPES PRINTING CO., INC. – (202) 789-0096 – WASHINGTON, D. C. 20002

'selective incorporation'" and "the Court has not telegraphed any plan to overrule *Slaughter-House* and apply all of the amendments to the states through the privileges and immunities clause, despite scholarly arguments that it should do this." *Id.* at 5.

## SUMMARY OF ARGUMENT

To address the problem of handgun violence in their communities, Chicago and Oak Park have enacted stringent firearms regulations prohibiting the possession of handguns by most individuals. The Court should reaffirm that the Second Amendment does not bind state and local governments. Neither the Court's selective incorporation doctrine under the Due Process Clause nor the Privileges or Immunities Clause provides a basis for imposing the Second Amendment on the States and establishing a national rule limiting arms regulation.

I. Bill of Rights provisions are incorporated into the Due Process Clause only if they are implicit in the concept of ordered liberty. That is an exacting standard that appropriately protects federalism values at the root of our constitutional system and is particularly appropriate when addressing firearms regulation. Firearms are designed to injure or kill; conditions of their use and abuse vary widely around the country; and different communities may come to widely varying conclusions about the proper approach to regulation. Thus, Chicago and Oak Park may reasonably conclude that in their communities, handgun bans or other stringent regulations are the most effective means to reduce fear, violence, injury, and death, thereby enhancing, not detracting from, a system of ordered liberty. Although other approaches are possible and may be effective elsewhere, it cannot

best address the very serious problem of handgun crime and violence in their communities.[4] That approach is at the very least a reasonable approach to a difficult social problem on which definitive answers remain elusive. Because that approach aims to protect personal security, it is consistent with, and supportive of, a free society and a system of ordered liberty.

Features that cause handguns to be regarded by many as the "quintessential self-defense weapon" (*Heller*, 128 S. Ct. at 2818) also make them attractive for criminal purposes, including homicide, suicide, and other violent crimes. Handguns can be stored where readily accessible; they are small and lightweight; they are easier to control if someone tries to take them away; and they can be pointed at someone with one hand while leaving the other hand free. See *ibid*.

Because handguns are so well adapted for the commission of crimes and the infliction of injury and death, stringent handgun regulations, including prohibitions, can be reasonably thought to create the conditions necessary to foster ordered liberty, rather than detracting from it. Enforcing handgun control laws can make a difference in curbing firearms violence. See, *e.g.*, Lawrence Rosenthal, *Second Amendment Plumbing After Heller: Of Standards of Scrutiny, Incorporation, Well-Regulated Militias, and Criminal Street Gangs*, 41 Urb. Lawyer 1, 30-44

---

[4] The Chicago ordinance at issue in this case was adopted by the City Council. See p. 1, *supra*. The Oak Park ordinance was first adopted by the town council. The following year, the citizens of Oak Park voted in an advisory referendum. See Brief of Oak Park Citizens' Committee for Handgun Control as *Amicus Curiae* in Support of Respondents.

Under similar circumstances, the Court in *Brown v. Board of Education*, 347 U.S. 483 (1954), expressly refused to "turn the clock back to 1868" when reassessing *Plessy v. Ferguson*, 163 U.S. 537 (1896) (*Brown*, 347 U.S. at 492), stressing that, while some congressional members believed that the Amendment removed "all legal distinctions" based on race, others read it to have "the most limited effect" (*id.* at 489). With such varying views, "[w]hat others in Congress and the state legislatures had in mind cannot be determined with any degree of certainty." *Ibid.* And recently, in *Boumedienne v. United States*, 128 S. Ct. 2229 (2008), this Court declined to rest its decision about the scope of the protection of the writ of habeas corpus upon a historical understanding because the historical evidence "reveals no certain conclusions." *Id.* at 2248. Likewise here, petitioners' only argument for upsetting longstanding precedent is based upon a historical record that simply fails to reveal a unified public understanding that the Privileges or Immunities Clause would incorporate the Second Amendment. Petitioners' argument should be rejected.[27]

---

Rights, many other scholars have reached contrary conclusions. The claim of a "near unanimous" agreement on "the history and meaning of the Clause" (Brief of Constitutional Law Professors as *Amici Curiae* in Support of Petitioners 3) simply disregards a vast amount of scholarship finding a lack of evidence that Bill of Rights guarantees were considered privileges or immunities of national citizenship. See, *e.g.*, Berger, *supra,* at 133-56; Currie, *supra*, at 406; Fairman, *supra*, at 139; Nelson, *supra*, at 123; Rosenthal, *New Originalism*, *supra*, at 27; Thomas, *Riddle*, *supra*, at 1628; see also Brief of Legal Scholars as *Amici Curiae* in Support of Respondents.

[27] Petitioners and NRA both limit their argument in this Court to handgun bans. In the courts below, both raised other issues. Petitioners challenged Chicago's annual and pre-acquisition registration requirements and the penalty of unregisterability for failure to comply with those requirements. J.A. 27-

## CONCLUSION

The judgment of the court of appeals should be affirmed.

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel
of the City of Chicago
BENNA RUTH SOLOMON*
Deputy Corporation Counsel
MYRIAM ZRECZNY KASPER
Chief Assistant
Corporation Counsel
SUZANNE M. LOOSE
Assistant Corporation Counsel
ANDREW W. WORSECK
Assistant Corporation Counsel
30 N. LaSalle Street, Suite 800
Chicago, Illinois 60602
(312) 744-7764

JAMES A. FELDMAN
Special Assistant
Corporation Counsel
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015
(202) 730-1267

*Counsel of Record

*Counsel for the City of Chicago*

RAYMOND L. HEISE
Village Attorney of
Oak Park
123 Madison Street
Oak Park, Illinois 60302
(708) 358-5660

HANS GERMANN
RANJIT HAKIM
ALEXANDRA SHEA
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600

*Counsel for the Village of Oak Park*

December 30, 2009

---

30. NRA's separate suits against Chicago and Oak Park, which are not before the Court, challenged Chicago's exceptions for handguns registered before the ban; owned by detective agencies and security personnel; and possessed by non-residents participating in or traveling to lawful firearm-related recreation, and Oak Park's exceptions for licensed firearm collectors and theater organizations. If the judgment is reversed, the lower courts should be directed to address those claims in the first instance.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., DR. KATHRYN TYLER, VAN F. WELTON, and BRETT BENSON, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | No. 08 CV 3697 |
| | ) | Judge Milton I. Shadur |
| THE CITY OF CHICAGO, | ) | |
| Defendant. | ) | |

**DECLARATION OF STEPHEN A. KOLODZIEJ**

I, Stephen A. Kolodziej, am competent to state, and declare the following based upon my personal knowledge:

1. I am designated local counsel for the plaintiffs in the above-captioned matter.

2. I am also designated local counsel for plaintiffs in the case of *Benson, et al. v. City of Chicago, et al.*, No. 10-CV-4184, currently pending before the Honorable Judge Ronald A. Guzman of this Court.

3. Attached hereto is a copy of the City of Chicago's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)(A) that was served upon me by defendants on October 15, 2010 in the *Benson* matter. In item No. 1 of that disclosure, the City of Chicago identified the record of proceedings held by the Chicago City Council Committee on Police and Fire on June 18, June 29, and July 1, 2010, and a copy of that record was enclosed with the Disclosure.

4. Attached to the Memorandum in Support of Plaintiffs' "Prevailing Party" Status in Relation to their Motion for Attorneys' Fees that has been filed with this Court is an Appendix,

which consists of excerpts from the record of proceedings that was served upon me by the City of Chicago with its Rule 26(a)(1)(A) Disclosure in the *Benson* lawsuit, and that was identified in that Disclosure as the record of proceedings held by the Chicago City Council Committee on Police and Fire on June 18, June 29, and July 1, 2010.

I declare under penalty of perjury that the foregoing is true and correct.

Dated December 9, 2010.

s/ Stephen A. Kolodziej

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn Street, Suite 300
Chicago, Illinois 60602
312-781-1970
skolodziej@brennerlawfirm.com



**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

October 15, 2010

Jesse Panuccio
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
*Delivered via U.S. Mail*

Stephen Kolodziej
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn Street, Suite 300
Chicago, IL 60602
*Delivered via messenger*

**Re: Benson v. City of Chicago, 10 C 4184**

Dear Counsel:

Enclosed please find the Defendants' Rule 26(a)(1)(A) disclosures and the legislative record described therein.

Sincerely,

Andrew Worseck
312-744-7129





**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BENSON, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-CV-4184** |
| | ) | **Judge Ronald A. Guzman** |
| **CITY OF CHICAGO, ET AL.,** | ) | **Magistrate Judge Geraldine Soat Brown** |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)(A)**

Defendants City of Chicago and Mayor Richard M. Daley, by and through their attorney, Mara S. Georges, Corporation Counsel for the City of Chicago, hereby submit their Fed. R. Civ. P. 26(a)(1)(A) disclosures.

**I. Rule 26(a)(1)(A)(i) & (ii).**

Defendants state that in supporting their claims or defenses, they may use the record of proceedings held by the Chicago City Council Committee on Police and Fire ("Committee") on June 18, June 29, and July 1, 2010. A copy of that record is being produced herewith. Defendants may also use the proceedings of the Chicago City Council on July 2, 2010. Those proceedings have not been transcribed but can be viewed at: http://www.chicityclerk.com/City_Council_Video/2010_Video_Meetings/July2_2010/ .

Further, (1) without waiving any arguments as to the proper standard(s) of scrutiny that govern Plaintiffs' various claims, and the factual material that is relevant under a particular standard or to a particular claim, (2) reserving all objections to any discovery propounded by Plaintiffs upon Defendants or upon third-parties, including but not limited to the objections that

the discovery seeks irrelevant information, or improper or premature expert discovery, and (3) without warranting that the following individuals or subject matters are within the permissible bounds of discovery, Defendants state that the name, address and telephone number (if known), and subject matter of testimony of individuals who testified at the Committee proceedings identified above, or of individuals who authored studies, reports, or other documents that were discussed at or submitted during those proceedings, are contained within the record of the proceedings. Further, Defendants state that these disclosures are preliminary, that their investigation continues, and that they reserve the right to supplement these disclosures.

**II. Rule 26(a)(1)(A)(iii).**

Not applicable.

**III. Rule 26(a)(1)(A)(iv).**

Not applicable.

Dated: October 15, 2010

Respectfully submitted,

MARA S. GEORGES,
Corporation Counsel for the City of Chicago

By: [signature]
Assistant Corporation Counsel

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division

30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-9018 / 6975  / 7129 / 4216

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I, Andrew Worseck, an attorney, hereby certify that on this, the 15th day of September, 2010, I caused a copy of the forgoing **Defendants' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)(A),** to be served by first-class United States mail, postage prepaid, on:

Charles J. Cooper
David H. Thompson
Jesse Panuccio
Cooper & Kirk, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036

and by messenger delivery on:

Stephen Kolodziej
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn Street, Suite 300
Chicago, IL 60602

[signature]

# APPENDIX A

ORIGINAL

CITY OF CHICAGO
COMMITTEE ON POLICE AND FIRE

RE: HEARING TO DISCUSS GUN VIOLENCE AND FIREARM REGISTRATION REGULATION

REPORT OF PROCEEDINGS of a meeting of the City of Chicago, Committee on Police and Fire, taken on June 18th, 2010, 10:00 a.m., City Council Chambers, Chicago, Illinois, and presided over by ALDERMAN ANTHONY A. BEALE, Chairman.

Reported by: Bernice Betts, C.S.R.

ALDERMAN BEALE: It's 10:08, and the Committee on Police and Fire will now come to order. We have a public hearing today to discuss gun violence and firearm registration regulation. And we have quite a few people that want to testify. If there's anyone who wishes to testify, if you can please fill out the appropriate paper work and get it turned in.

We're going to try to move this hearing along as quickly as possible, because we have a lot of testimony.

First, we want to bring Mara Georges up from Corporation Counsel to discuss the importance of having gun registration, and to discuss some gun violence.

CORPORATION COUNSEL GEORGES: For the record, my name is Mara Georges G-e-o-r-g-e-s. I'm the Corporation Counsel for the City of Chicago. Mr. Chair, Members of the City Council's Police and Fire Committee and honored guests.

After a dully noted finding that firearms, and especially handguns, play a major

role in the commission of homicides, aggravated assaults and armed robberies on March 19th of 1982, Alderman Edward M. Burke moved to pass, and the Chicago City Council enacted, by a vote of 30 yeas and 11 nays a firearms ordinance, which renders most handguns unregistrable in the city of Chicago.

The ordinance, still in effect today with modification, allows for the registration of rifles and shotguns that are not sawed off, short barreled or assault weapons. It requires registrable firearms to be registered before being possessed in Chicago and registration must be renewed annually. Failure to renew shall "cause the firearm to become unregistrable." The ordinance provides that no person may possess "any firearm which is unregistrable" within the city confines.

On June 26th of 2008, 26 years after the enactment of that handgun ban the Illinois State Rifle Association and various other Plaintiffs in the McDonald case filed in the Federal District Court for the Northern District of

Illinois a challenge to the city's handgun ban and certain registration requirements contained in the ordinance.

The Plaintiffs in the McDonald case alleged in pertinent part that Chicago's handgun ban violates the Second Amendment as allegedly incorporated into the 14th Amendment's due process clause and privileges or immunities clause.

The following day, June 27th of 2008, the National Rifle Association filed two similar lawsuits. One challenging Chicago's handgun ban, and the other Oak Park's. McDonald and the two NRA cases proceeded before the same District Court Judge, and on December 18th of 2008, Judge Milton I. Schader (phonetic) entered judgment on the pleadings in favor of the city and Oak Park in all three cases on the basis that the Second Amendment does not apply to the states.

The Seventh Circuit Court of Appeals consolidated the cases and affirmed the District Court's decisions on June 2nd of 2009. The Court held that it was bound by previous decisions of the

United States Supreme Court refusing to apply the Second Amendment to the states.

The Supreme Court granted certiorari in the McDonald case on September 30th of 2009 and heard oral argument on March 2nd of 2010. The issue of incorporation of the Second Amendment to the states is the issue being considered by the United States Supreme Court.

The Supreme Court has publicized that opinions will be issued on Monday, June 21st and Monday, June 28th, and experts believe the court will also release opinions on Thursday, June 24th, and Wednesday, June 30th.

When the Supreme Court issued its opinion in the Heller case involving Washington, D.C.'s handgun ban, the opinion was issued on the last day of the term. If the Supreme Court were to follow suit, that day would be June 30th of this year.

If the Supreme Court were to find incorporation of the Second Amendment, the city's handgun ban would be invalidated. As the Court's

decision in Heller has already found a right to possess a handgun in the home for self-defense purposes.

Assuming hypothetically that the city's handgun ban were to be invalidated, the city could seek approval from the City Council for a new ordinance regulating firearms. The Council could consider limitations on number of firearms, insurance and training requirements, ballistics testing, and minimum qualifications for handgun eligibility.

In today's hearing a number of individuals who have spent years studying various aspects of the firearms industry will testify. These individuals have specific recommendations regarding potential aspects of a new ordinance. They realized that of the 412 homicides caused by firearms in the city of Chicago during 2008, 98 percent of those or 402 resulted from handguns. Thank you.

CHAIRMAN BEALE: Thank you. Any questions? I'm sorry, not so fast. Alderman Rugai.

**APPENDIX B**

COPY

CITY OF CHICAGO

COMMITTEE ON POLICE AND FIRE

REPORT OF PROCEEDINGS of a meeting of the City of Chicago, Committee on Police and Fire, taken on June 29, 2010, 1:00 p.m., City Council Chambers, Chicago, Illinois, and presided over by ALDERMAN ANTHONY BEALE, Chairman.

Reported by: Donna T. Wadlington, C.S.R.

CHAIRMAN BEALE: It's 1:10. The Committee on Police and Fire is now called to order. We're going to go out of regular order of business. Alderman Pope.

ALDERMAN POPE: Thank you, Mr. Chairman.

I'd like to make a motion that we reconsider the five items that were heard at yesterday's hearing, all that were approved by this body. So a motion to reconsider, please.

CHAIRMAN BEALE: There's a motion to reconsider.

All in favor? All opposed?

The no's have it. Those items will be reported out tomorrow at City Council.

The item before us now is off the supplemental agenda regarding the gun ban. We have expert testimony from quite a few people. First, we're going to bring up Mara George from Corporation Counsel.

CORPORATION COUNSEL GEORGES: Alderman, do you mind if I turn this around?

CHAIRMAN BEALE: Sure. Do you want me to get that for you?

CORPORATION COUNSEL GEORGES: Good afternoon. My name is Mara Georges, G-e-o-r-g-e-s. I'm the Corporation Counsel of the City of Chicago.

Mr. Chair, members of the Police and Fire Committee, yesterday in a landmark five to four decision that reversed 130 years of case law, the United States Supreme Court ruled that the Second Amendment of the U.S. Constitution applies to state and local governments, as well as the Federal Government.

As the Mayor said, this decision was disappointing but not surprising given the Court's ruling in the *Heller* case.

I'm sure that many of you have questions about what this ruling means for Chicago's current ordinance and the extent to which we can regulate firearms in the future.

The Supreme Court did not strike down any part of our ordinance. The

Court reversed the lower court decision upholding our handgun ban and remanded the case to the Seventh Circuit Court of Appeals for further proceedings. Therefore, technically, our current ordinance is still in effect until the Seventh Circuit invalidates it. However, as a practical matter, the section of our ordinance that prohibits the registration of handguns is unenforceable.

It is clear that such a provision will ultimately be struck down based on the Supreme Court's decision in the *Heller* case, in which the Court ruled that Washington, DC's handgun ban violated the Second Amendment. Therefore, it is important that we continue to work to craft a new ordinance that promotes safe and responsible gun ownership and complies with the Court's ruling in this case.

As we move forward, I want to emphasize that the case before the Supreme Court involved only the ban on the ownership of a handgun in the home for self-defense purposes.

APPENDIX C

COPY

CITY OF CHICAGO

COMMITTEE ON POLICE AND FIRE

REPORT OF PROCEEDINGS of a meeting of the City of Chicago, Committee on Police and Fire, taken on July 1, 2010, 10:00 a.m., City Council Chambers, Chicago, Illinois, and presided over by ALDERMAN ANTHONY BEALE, Chairman.

Reported by: Donna T. Wadlington, C.S.R.

ALDERMAN BALCER: I'd like to call the meeting to order of the Police and Fire Committee.

And I'd also like to recess it at this time until the Chairman returns. Recessed until the Chairman gets here.

(WHEREUPON, the Committee is in recess.)

CHAIRMAN BEALE: It's 11:25. The Committee on Police and Fire will continue its recessed meeting.

The sole purpose of this meeting is to consider on the agenda an ordinance introduced directly into Committee by Corporation Counsel concerning responsible gun ownership.

On June 18th and June 29th, the Committee held a hearing on gun violence and took testimony from experts on possible policies to reduce such violence in our city. These hearings contemplated the impact of the United States Supreme Court's ruling -- *McDonald*

decision on the City's handgun ban and the future policies the City can enact to address gun violence.

More than 30 people testified at the hearing. We heard from numerous experts on gun violence from the Corporation Counsel, other legal experts, from the Superintendent of the Chicago Police Department, and other CPD officers, from business owners, from leaders of our faith-based community, community organizations and others who have lost loved ones to gun violence and even some from the Plaintiffs in the *McDonald* case.

Among those experts testified were Robyn Thomas, David Hemenway, Thom Mannard, Tom VandenBerk, Mark Walsh, Dr. Marie Crandall, Claude Robinson, Annette Holt, Juliet Leftwich, and Daniel Webster.

I would also like to acknowledge one of the experts we invited. Dr. Jens Ludwig, a Professor of Social Service Administration, Law and Public Policy at the

University of Chicago's Crime Lab, was unable to testify but we also distributed -- more testimony from -- his testimony was also submitted to the record.

During prior hearings we also distributed and placed on the record testimony from several of our other experts, as well as references from other work of numerous and other studies in case and effect of gun violence and recommend that we -- what we can do to address the problem.

From the evidence that we presented at the hearing, the Committee would like to make the following findings:

Chicago, like other big cities, have serious problems of gun violence. The total economic and social costs of gun violence in Chicago are substantial. Gun violence severely impacts Chicago's criminal justice and health care system. Gun violence foments fears in Chicago's communities, which can harm property value and drive residents from

-- and also fleeing our neighborhoods. It also can increase -- I'm sorry.

An increase in the number of guns in circulation can contribute to an increase in the number of incidents of gun violence. The presence of guns can also make crime more lethal and would be -- also it can be -- I'm sorry. I need some water.

An increase in the number of guns in circulation contribute to an increase in the number of incidents of gun violence. The presence of guns makes crime more lethal than others when guns are not present. Handguns are extremely -- to an extreme degree disproportionately contribute to gun violence and death in Chicago.

A strong permitting system from firearms owners is vital. A vigorous firearm registration system is necessary. Registration gives law enforcement essential information about firearm ownership allowing first responders to determine in advance whether

individuals may be -- may have firearms.

Shootings -- I'm sorry. Shootings in the home are a major cause of death, particularly in children and minors, requiring owners to secure or store their firearms when minors are present.

Requiring owners to quickly notify law enforcement of the lost, theft or destruction of their firearm aid law enforcement in reducing illegal gun trafficking and identifying the -- and prosecuting gun traffickers.

Limiting the number of guns in circulation is essential to public safety. Limiting registration of handguns to one person per month would help limit handgun injuries and also reduce crime.

The carrying of firearms in public should be prohibited. In a dense urban environment like Chicago, public carrying presents a high risk that everyday interpersonal conflicts will result in injury.

The public safety requires a ban on assault weapons.

Okay. Mara, suggested that I submit the rest of this for the record, and we will get right into testimony. Thank you.

Corporation Counsel, Mara Georges. And I do apologize. I'm extremely tired you all. It's been a long day.

CORPORATION COUNSEL GEORGES: Good morning, Chairman Beale and members of the Police and Fire Committee. My name is Mara Georges, G-e-o-r-g-e-s. I'm the Corporation Counsel for the City of Chicago.

With me and to my right is Rose Kelly, who is the drafter of the Responsible Gun Ownership Ordinance, which is before you today and on which we urge your support.

This was an ordinance drafted in response to the Supreme Court decision earlier this week in the *McDonald* case. We believe that this ordinance effectively balances

the right to possess a gun in the home for the purpose of self-defense, with the substantial risks to public safety that are associated with guns.

The proposed ordinance is comprehensive. It regulates the sale and possession of firearms, establishes a permit process for gun owners, and includes a registration requirement for guns that allows for the registration of handguns.

First, I think it's easiest to begin by describing what is banned under this ordinance.

Banned are the sale of firearms in the city of Chicago, certain types of ammunition, including metal and armor piercing bullets and 50 caliber bullets, the sale of any ammunition to minors, laser-sight accessories, silencers, and mufflers, certain types of guns including sawed-off shotguns, 50 caliber rifles, machine guns, short-barreled rifles and assault weapons, and handguns deemed

unsafe by the Police Superintendent.

These guns are unregisterable and it is illegal to possess an unregisterable weapon within the city of Chicago. Also banned are shooting galleries and target ranges, except for law enforcement purposes.

Consistent with the Supreme Court's ruling, we are allowing the possession of handguns in a limited circumstance. That is, within the home for self-defense purposes.

So that there is no confusion about the scope of handgun possession within the city of Chicago, home is defined in the ordinance as the inside of a person's dwelling unit which is traditionally used for living purposes. Not the garage, not porches, not the stairs, not the back, side or front yard space. Dormitories, hotels, and group living homes are excluded from the definition of home within the ordinance.

In addition, there is a two step registration requirement for guns. The

first step requires individuals to obtain a Chicago Firearm Permit, a CFP, prior to owning a gun. And the second step requires gun owners to obtain a registration certificate for each of their firearms. Both the CFP and the registration certificate are issued by the Chicago Police Department.

The ordinance imposes reasonable limitations on who can obtain a CFP. For example, individuals must be at least 21 years of age or 18 to 20 years of age with parental permission to be eligible for a CFP. They must possess a valid Illinois FOID card. They must not have been convicted of a violent crime or of two or more offenses for driving under the influence of alcohol or drugs.

They must not have been convicted of an unlawful use of weapon charge involving a firearm. They must not have violated any other Municipal Code provision regarding possession of laser-sight accessories, silencers or mufflers, or unlawful sales of

firearms, or otherwise be ineligible to possess a firearm under any law.

Individuals must demonstrate that they've undergone firearm safety training both in a classroom and on a firing range.

As I previously stated, the CFP must be obtained prior to taking possession of any gun, and it must be renewed every three years.

As with our previous ordinance, the responsible gun ownership ordinance includes a registration requirement for guns. The new ordinance, however, allows for the registration of handguns. A registration certificate is required for every firearm. The application for the registration certificate must be submitted no more than five business days after taking possession of the gun.

Each applicant will be issued only one registration certificate per month for a handgun which must be used for the home in

which the applicant resides. So, in other words, we're limiting the amount of handguns to one per month for use within the home.

Individuals have 90 days after the effective date of the ordinance to register weapons, including guns that were not previously registered, like handguns. So we're urging members of the public to come in within this 90-day period after the ordinance's effective date, assuming that this body were to approve it, and register their unregistered weapons.

The ordinance also contains a procedure for individuals who are denied either a CFP or a firearm registration certificate to appeal such denials.

I'd like to briefly discuss the regulations contained in the responsible gun ownership ordinance regarding where guns can be possessed. These regulations are in addition to any applicable state laws.

As I previously mentioned, handguns are only allowed in the registrant's

home for self-defense purposes. Long guns are only allowed in the individual's home or fixed place of business. You cannot possess a gun in your vehicle, unless it's broken down into a non-functioning state.

Each person who keeps or possesses a firearm in his or her home must keep no more than one firearm in the home assembled and operable. All other firearms must be broken down in a non-functioning state or have a trigger lock or other mechanism making the firearm temporarily inoperable.

In homes with minors under the age of 18, guns must be kept secured, secured on the person of the registrant, with trigger locks or in locked boxes.

This ordinance also establishes a gun offender registry. Any gun offender, a person convicted of a gun offense, who lives, works or attends school in the city must register with the Police Superintendent. The registry will be posted on the Police

Department's website and available for review by the public.

Consequences for violating the responsible gun ownership ordinance are severe. Penalties include fines of $1,000 to $5,000 and incarceration for not less than 20, nor more than 90 days for certain offenses. Subsequent convictions are punishable by fines of $5,000 to $10,000 and by incarceration of not less than 30 days, nor more than six months, the maximum allowable under state law for the City to impose.

Further, the ordinance authorizes the seizure and destruction of any weapons kept in violation of the chapter. This ordinance was crafted through careful discussion and review. We have listened to the Council and tried to accommodate the Council's wishes in crafting this ordinance.

Further, we are confident that this ordinance is consistent with the Supreme Court's rulings in the *Heller* and *McDonald*

decisions. We are hopeful that you will support it. Thank you.

CHAIRMAN BEALE: Thank you.

Any questions from the committee? Alderman Rugai.

ALDERMAN RUGAI: Thank you, Mr. Chairman.

We heard it discussed this morning that the ages of many that commit crimes of handguns are 13 to 16 year olds, and there is no real punishment for those youths. As in some of our previous legislation perhaps for curfew, for example, we have the parents responsible and they are fined in that instance.

Have we ever looked at or are we just prohibited from making the parents responsible if those young people are arrested and convicted of possessing a handgun and using it?

CORPORATION COUNSEL GEORGES: It's a good point, Alderman, but the problem is, of course, if we were to prosecute a minor under

our ordinance, typically, that goes then to juvenile court where we can't be imposing our ordinance as a mechanism.

ALDERMAN RUGAI: And not this ordinance. I mean, can we do something separately to make parents responsible -- you know, they are responsible for their children. And if they -- their children were to be found with guns, could they be prosecuted?

CORPORATION COUNSEL GEORGES: I think you raise a very good point and we will look at it.

ALDERMAN RUGAI: I mean, because it's another side of our ordinance that's before us today, but it was something that stuck in my mind from the press conference this morning that I thought we need to be attending to that side of it as well.

CORPORATION COUNSEL GEORGES: Yes. Good point.

ALDERMAN RUGAI: Thank you.

CHAIRMAN BEALE: Alderman Balcer.

ALDERMAN BALCER: Thank you, Mr. Chairman.

What is the -- are there provisions in here for retired police officers --

CORPORATION COUNSEL GEORGES: Yes.

ALDERMAN BALCER: -- and their right to carry a -- or have weapons?

CORPORATION COUNSEL GEORGES: We exclude many classes of people from many of the ordinance requirements, and many of those exclusions apply to current police officers, retired police officers, current military personnel and the like. So we have tried to accommodate what we heard from Chairman Burke and the others in hearings, that many of these provisions should not apply to retired CPD.

ALDERMAN BALCER: So we're not -- people can still defend their homes if they're inside of their homes?

CORPORATION COUNSEL GEORGES: The idea is that individuals have a right to a handgun

within the home for self-defense purposes, and we're allowing them to register one per month; one of those handguns per month to have within their home to use for self-defense purposes.

ALDERMAN BALCER: For self-defense purposes. No one's right is being taken away to defend their home?

CORPORATION COUNSEL GEORGES: Correct.

ALDERMAN BALCER: Good. My next question and I just -- you can have long rifles and shotguns except sawed-off shotguns; am I correct?

CORPORATION COUNSEL GEORGES: That is correct. We allow rifles and other long guns.

ALDERMAN BALCER: And you can have one, two, three, four -- you can have as many as you want?

CORPORATION COUNSEL GEORGES: Correct.

ALDERMAN BALCER: And you can have a pistol. You can buy one pistol per month?

CORPORATION COUNSEL GEORGES: Correct.

ALDERMAN BALCER: They can have twelve

in a year?

CORPORATION COUNSEL GEORGES: Yes. Each qualified applicant.

ALDERMAN BALCER: Can have twelve in a year?

CORPORATION COUNSEL GEORGES: Can have twelve in a year. Yes.

ALDERMAN BALCER: I think that's quite fair. I'll be honest. I think that's quite fair to a person.

And right now you can have as many rifles that meet the requirements and shotguns if you -- if you want? And they are registered and so on?

CORPORATION COUNSEL GEORGES: Correct. And that continues. That it is an unlimited number.

ALDERMAN BALCER: That continues. That -- there's no -- nothing prohibiting that. There's nothing saying you can't have one rifle, one shotgun. You can have --

I'll be honest. I think

that's quite fair. And quite honest, if you can't defend your home with umpteen rifles and shotguns and a pistol, I don't see what else a person can ask for in this. Thank you.

CORPORATION COUNSEL GEORGES: You're welcome.

CHAIRMAN BEALE: Alderman Fioretti.

ALDERMAN FIORETTI: Thank you, Mr. Chairman.

When we started the hearing the other day, you described the -- still I want to refer to the decision, that the mandate would probably come down within 30 days give or take, correct?

CORPORATION COUNSEL GEORGES: Correct.

ALDERMAN FIORETTI: And then you said at that time that we can go into court to ask for some kind of advisory assistance here in the drafting of this -- of this ordinance. Wasn't that correct?

CORPORATION COUNSEL GEORGES: I don't believe that's what I said. No.

I said when the mandate came back to the Court of Appeals, the Court of Appeals may ask us for briefs, position papers, kind of on where we stand, saying to us, all right, now in light of the decision from the Supreme Court in *McDonald*, saying you have a right to a handgun in your home for self-defense, City, how do you defend your handgun ban? And at that point it really becomes impossible to defend it.

ALDERMAN FIORETTI: Okay. And so what was legal or what is illegal out of the ordinance as it existed the day before the decision was handed down?

CORPORATION COUNSEL GEORGES: What the Supreme Court has said is that the Second Amendment applies to the City, and the Second Amendment guarantees a right to a handgun in the home for self-defense.

So in other words, a ban by the City on handguns will not withstand the *McDonald* decision.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 4.2**
**Eastern Division**

Otis McDonald, et al.

Plaintiff,

v.

Case No.: 1:08−cv−03645
Honorable Milton I. Shadur

City of Chicago, et al.

Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Wednesday, December 29, 2010:

MINUTE entry before Honorable Milton I. Shadur:Motion for attorney fees [83] is entered and continued. Motion hearing held on 12/29/2010.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 4.2**
**Eastern Division**

Otis McDonald, et al.

Plaintiff,

v.

Case No.: 1:08−cv−03645
Honorable Milton I. Shadur

City of Chicago, et al.

Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, January 3, 2011:

MINUTE entry before Honorable Milton I. Shadur: Enter Memorandum Opinion and Order. In summary, counsel for the McDonald Plaintiffs have not separated themselves or their clients from what this Court ruled in the NRA Opinion. Their motion for ";prevailing party" status andMotion for attorney fees [83] is denied.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OTIS McDONALD, et al., )
)
Plaintiffs, )
)
v. ) No. 08 C 3645
)
CITY OF CHICAGO, et al., )
)
Defendants. )

MEMORANDUM OPINION AND ORDER

Counsel for plaintiffs in this action (collectively "McDonald Plaintiffs") have sought to distance themselves from this Court's December 22 opinion in the two comparable National Rifle Association cases ("NRA Opinion," 2010 WL 5185083) by claiming that they were (as NRA was not) "prevailing parties" for 42 U.S.C. §1988(b)("Section 1988(b)") purposes so as to obtain an award of attorneys' fees. That effort fails.

It should first be noted that this Court again inquired at the December 29 motion hearing, noticed up by counsel for the McDonald Plaintiffs, whether the conduct of the City of Chicago in assertedly having led counsel down the garden path by stonewalling on the fees issue--all the while planning to bring the "prevailing party" question on against NRA--was an arguable basis for reaching a different result. McDonald Plaintiffs' counsel disavowed that, so that this opinion will go forward solely on the grounds advanced in counsel's submission captioned "Plaintiffs' Motion for Instructions Re: Attorney Fees and

Costs."

On the first of those grounds, counsel urge a different reading of the Supreme Court's Buckhannon opinion than this Court stated and applied in the NRA Opinion. But in material part that argument distorts and mischaracterizes the nine-year-old opinion by this Court in Johnny's IceHouse, Inc. v. Amateur Hockey Ass'n of Ill., No. 00 C 7363, 2001 WL 893840 (N.D. Ill. Aug. 7)). Here is what McDonald Plaintiffs' counsel say in that respect (Motion ¶22):

> This Court has previously held that the Buckhannon dissent's description of the majority's holding governs interpretation of Buckhannon's scope.[1]

But then counsel commit the cardinal sin of selective quotation, which can be just as misleading as misquotation. They reproduce two sentences that this Court quoted from Justice Ginsberg's

---

[1] [Footnote by this Court]  Although counsel's real distortion is the omission next referred to in the text, counsel have also failed to quote the cautious caveat voiced by this Court in Johnny's IceHouse, id. at *3 n.2:

> This Court is of course well aware that it can be perilous to rely too heavily on a dissenting opinion's characterization of the majority's holding (sometimes advanced as a kind of rear-guard action, in an effort to limit the scope of a holding opposed by the dissenters). In this instance, though, the quoted language is a fair statement of the majority opinion as it impacts on this case.

Buckhannon dissent, but they stop short of reproducing the very next sentence that actually controlled the ruling in Johnny's IceHouse:

> A court-approved settlement will do.

As this Court then went on to explain after that quotation, plaintiff in Johnny's IceHouse was a "prevailing party" precisely because this Court had entered an "Order formalizing and memorializing [defendant's] commitment [that] legally altered the relationship between the parties, making Johnny's IceHouse a prevailing party under the standard announced in Buckhannon." No such order, no legal equivalent of the type required by Buckhannon, was entered in this action. And that of course is the whole point.

Next McDonald Plaintiffs' counsel point to the Supreme Court's legal ruling as to Chicago's handgun ban, as though that alone made them prevailing parties. But that contention studiously ignores, just as NRA's counsel had, the fact that the Supreme Court's order was one that remanded the case before it "for further proceedings."[2] And as the NRA Opinion stressed, no "further proceedings" took place--instead the City of Chicago's action in repealing its ordinance compelled the dismissal of the action on mootness grounds.

---

[2] Remember the universal principle that courts speak definitively through the orders, not through the language in their opinions that explains the basis for the orders themselves.

Finally counsel for the McDonald Plaintiffs argue that Buckhannon was wrongly decided. In doing so, of course, counsel acknowledge that they are tendering that argument for purposes of making a record, not (of course) to urge this Court to so hold (as it would have no power to do).

In summary, counsel for the McDonald Plaintiffs have not separated themselves or their clients from what this Court ruled in the NRA Opinion. Their motion for "prevailing party" status and for a corollary award of attorney's fees is denied.

Milton I. Shadur
Senior United States District Judge

Date: January 3, 2011

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, ILLINOIS STATE RIFLE ASSOCIATION, and SECOND AMENDMENT FOUNDATION, INC., Plaintiffs, v. CITY OF CHICAGO, Defendant. | ) | Case No. 08-C-3645 **NOTICE OF APPEAL** |

**NOTICE OF APPEAL**

**NOTICE IS HEREBY GIVEN** that Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc., and Illinois State Rifle Association, plaintiffs in the above named case, hereby appeal to the United States Court of Appeals for the Seventh Circuit from the order barring plaintiffs' motion for attorney fees and expenses pursuant to 42 U.S.C. § 1988, entered in this action on the 4th day of January, 2011.

Dated: January 4, 2011

Respectfully submitted,

Alan Gura (admitted pro hac vice)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

By: /s/ Alan Gura
Alan Gura

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By: /s/ David G. Sigale
David G. Sigale

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on January 4, 2011, he served a copy of the above notice of appeal and this certificate of service, on:

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
City of Chicago Department of Law
Constitutional and Commercial Litigation Division 30
N. LaSalle Street, Suite 1230
Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF). Pursuant to FRCP 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

/s/ Alan Gura
Alan Gura

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 4.2**
**Eastern Division**

Otis McDonald, et al.

Plaintiff,

v.

Case No.: 1:08−cv−03645
Honorable Milton I. Shadur

City of Chicago, et al.

Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Friday, January 7, 2011:

MINUTE entry before Honorable Milton I. Shadur:Enter Supplement To Memorandum Opinion and Orders. And that, given the intervening repeal of the ordinance, was clearly a dismissal for mootness, again not a Buckhannon − qualifying ruling. Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al.,

Plaintiffs,

v. No. 08 C 3696

VILLAGE OF OAK PARK, et al.,

Defendants.

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al.,

Plaintiffs,

v. No. 08 C 3697

CITY OF CHICAGO,

Defendant.

OTIS McDONALD, et al.,

Plaintiffs,

v. No. 08 C 3645

CITY OF CHICAGO, et al.,

Defendants.

SUPPLEMENT TO MEMORANDUM OPINIONS AND ORDERS

This Court has just had occasion, for a reason wholly unrelated to these cases,[1] to note an excerpt from an earlier

---

[1] Indeed, what has brought the subject of this supplement to this Court's attention is simply its consistently prompt review of slip opinions emanating from our Court of Appeals--in this instance, Bd. of Regents of the Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc., No. 08-4164, 2010 WL 5295853 at *21

opinion of our Court of Appeals that calls for a clarifying supplement to this Court's opinions in the captioned cases--in the NRA cases, 2010 WL 5185083 (N.D. Ill. Dec. 22) and in the McDonald case, 2011 WL 13755 (N.D. Ill. Jan. 3). That excerpt appears in the en banc opinion in United States v. Skoien, 614 F.3d 638, 641 (7th Cir. 2010).

In McDonald, 2011 WL 13755 at *1 this Court dropped this footnote 2 as an attempted amplification of the point (1) that the order by the Supreme Court in that case had remanded the case "for further proceedings" and (2) that no such proceedings then took place because the City of Chicago's swift action in repealing its ordinance compelled dismissal of the case on mootness grounds:

> Remember the universal principle that courts speak definitively through their orders, not through the language in their opinions that explains the basis for the orders themselves.

In that respect Judge Wood's dissent in Bd. of Regents has just repeated this sentence from Skoien, 614 F.3d at 641 that spoke of an aspect of the Heller case in these terms:

> This is the sort of message that, whether or not technically dictum, a court of appeals must respect, given the Supreme Court's entitlement to speak through its opinions as well as through its technical holdings.

Thus the McDonald footnote was an oversimplification of a more fundamental proposition that this Court has sought to

---

(7th Cir. Dec. 28).

emphasize in both its NRA opinion and its McDonald opinion: that if the Supreme Court had intended its McDonald opinion to be the last word on the matter, automatically constituting a final order as to the Chicago ordinance of the type required by Buckhannon to constitute a formal judicial imprimatur, the Supreme Court would surely have known how to do just that in so many words. What cannot be ignored is that its ruling was instead a remand "for further proceedings," leaving it to the lower court--our Court of Appeals--to determine what was called for. And that, given the intervening repeal of the ordinance, was clearly a dismissal for mootness, again not a Buckhannon-qualifying ruling.

Milton I. Shadur
Senior United States District Judge

Date: January 7, 2011