Nos. 10-3957 and 10-3965 (Consolidated)

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

––––––––––––––––––––

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., *et. al.*,

Plaintiffs-Appellants,

v.

CITY OF CHICAGO and VILLAGE OF OAK PARK,

Defendants-Appellees.

––––––––––––––––––––

BRIEF AND REQUIRED SHORT APPENDIX FOR
PLAINTIFFS-APPELLANTS NATIONAL RIFLE ASSOCIATION, *et. al.*

––––––––––––––––––––

*Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division, Case Nos. 08-3696, 08-3697
Honorable Milton I. Shadur Presiding*

William N. Howard
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 360-6415
Facsimile:  (312) 360-6996

Stephen P. Halbrook
3925 Chain Bridge Rd., Suite 403
Fairfax, VA   22030

*Counsel for Appellants:
National Rifle Association of America,
Inc. and Dr. Gene A. Reisinger, Case No.
10-3965*

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd
33 North Dearborn Street, Suite 300
Chicago, IL 60602
Telephone: (312) 781-1970
Facsimile: (312) 781-9202

Stephen P. Halbrook
3925 Chain Bridge Rd., Suite 403
Fairfax, VA   22030

*Counsel for Appellants:
National Rifle Association of America,
Inc., Kathryn Tyler, Van Welton, and
Brett Benson, Case No. 10-3957*

ORAL ARGUMENT REQUESTED

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No:   **10-3957 / 10-3965**

Short Caption:   **National Rifle Association, et al. v. City of Chicago**

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if his form is used.**

    **[___]  PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    **National Rifle Association of America, Inc.; Dr. Kathryn Tyler; Van F. Welton; and Brett Benson**

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    **Stephen P. Halbrook, Esq.**
    **Brenner, Ford, Monroe & Scott, Ltd.**

(3) If the party or amicus is a corporation:

    i)   Identify all its parent corporations, if any; and

       **N/A**

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

       **N/A**

---

Attorney's Signature: _____      Date: **February 11, 2011**

Attorney's Printed Name: **Stephen P. Halbrook**

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d). Yes **X**  No_

Address:  **3925 Chain Bridge Road, Fairfax, VA  22030**

Phone Number:  **703-352-7276**        Fax Number: **703-359-0938**

E-Mail Address:  **Protell@aol.com**

rev. 01/08 AK

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No:    **10-3957**

Short Caption:    **National Rifle Association, et al. v. City of Chicago**

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if his form is used.**

**[___]   PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

**National Rifle Association of America, Inc.**

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

**Stephen P. Halbrook, Esq.**
**Brenner, Ford, Monroe & Scott, Ltd.**

(3) If the party or amicus is a corporation:

      i)    Identify all its parent corporations, if any; and

         **N/A**

      ii)   list any publicly held company that owns 10% or more of the party's or amicus' stock:

         **N/A**

---

Attorney's Signature: _____    Date:  **February 10, 2011**

Attorney's Printed Name:  **Stephen A. Kolodziej**

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d). Yes **X** No__

Address:  Brenner, Ford, Monroe & Scott, Ltd., 33 North Dearborn Street, Suite 300, Chicago, IL   60602

Phone Number:  **(312) 781-1970**                    Fax Number:  **(312) 781-9202**

E-Mail Address:  **skolodziej@brennerlawfirm.com**

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No:     **10-3965 consolidated w/10-3957**

Short Caption:     **National Rifle Association, et al. v. Village of Oak Park**

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if his form is used.**

**[___]   PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

**National Rifle Association of America, Inc.; and Dr. Gene A. Reisinger**

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

**Freeborn & Peters LLP; and Stephen P. Halbrook, Esq.**

(3) If the party or amicus is a corporation:

i)    Identify all its parent corporations, if any; and

**N/A**

ii)   list any publicly held company that owns 10% or more of the party's or amicus' stock:

**N/A**

---

Attorney's Signature: _____     Date: **January 5, 2011**

Attorney's Printed Name:  **William N. Howard**

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).Yes **X**  No __

Address:  **Freeborn & Peters LLP, 311 S. Wacker Dr., Suite 3000, Chicago, IL   60606**

Phone Number:  **(312) 360-6415**          Fax Number:  **(312) 360-6996**

E-Mail Address:  **whoward@freebornpeters.com**

rev. 01/08 AK

Appellate Court No:     **10-3965 / 10-39578**

Short Caption:     **National Rifle Association, et al. v. Village of Oak Park**

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if his form is used.**

**[____]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

**National Rifle Association of America, Inc.; and Dr. Gene A. Reisinger**

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

**Stephen P. Halbrook, Esq. ; Freeborn & Peters LLP**

(3) If the party or amicus is a corporation:

      i)     Identify all its parent corporations, if any; and

          **N/A**

      ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:

          **N/A**

___

Attorney's Signature:  _____     Date:  **February 11, 2011**

Attorney's Printed Name:  **Stephen P. Halbrook**

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d). Yes  **X**  No_

Address:  **3925 Chain Bridge Road, Fairfax, VA   22030**

Phone Number:  **703-352-7276**          Fax Number:  **703-359-0938**

E-Mail Address:     **Protell@aol.com**

# Table Of Contents

**Page**

Table Of Authorities ................................................................. I

Statement Of Jurisdiction ........................................................ 1

Statement Of The Issues ........................................................... 2

Statement Of The Case ............................................................. 2

Statement Of The Facts ............................................................. 3

     Heller, McDonald, And The Cities' Repeal Of Their Handgun Bans ............. 3

     The Post-McDonald Attorney's Fees Litigation .............................. 8

Summary Of Argument ............................................................... 9

Standard Of Review ................................................................. 11

Argument .......................................................................... 11

I.    NRA Is A Prevailing Party As A Result Of The Supreme Court's
Decision in McDonald ............................................................. 13

    A.    Under Supreme Court and Seventh Circuit Case Law, NRA Is a
Prevailing Party .............................................................. 13

    B.    This Court's Case Law Recognizes That Substance Trumps
Form .......................................................................... 16

    C.    McDonald Was The Type Of Substantive Ruling Contemplated
By Palmetto Properties ........................................................ 17

    D.    The Cities Repealed Their Ordinances Involuntarily As A Result
Of The Ruling In McDonald ..................................................... 20

    E.    This Court's Other Cases Confirm That NRA Is A Prevailing
Party ......................................................................... 24

    F.    No Other Precedent Supports Denying Fees To NRA ......................... 26

II.    NRA Was A "Party" To The Supreme Court's Decision In McDonald........... 31

CONCLUSION........................................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Baird v. Renbarger,*
   576 F.3d 340 (7th Cir. 2009) ................................................. 21

*Black v. United States,*
   130 S.Ct. 2963 (2010) ........................................................... 32

*Buckhannon Board & Care Home, Inc. v.*
*West Virginia Department of Health & Human Resources,*
   532 U.S. 598 (2001) ........................................................ passim

*C.Z. ex rel. Ziemba v. Plainfield Community Unit School Dist. No. 202,*
   680 F. Supp. 2d 950 (N.D. Ill. 2010) ..................................... 31

*Cady v. City of Chicago,*
   43 F.3d 326 (7th Cir. 1994) ................................................. 29

*Charles v. Daley,*
   846 F.2d 1057 (7th Cir. 1988) .............................................. 22

*Cooter & Gell v. Hartmarx Corp.,*
   496 U.S. 384 (1990) ............................................................. 12

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ........................................................ passim

*Dupuy v. Samuels,*
   423 F.3d 714 (7th Cir. 2005) ........................................... 25, 26

*Farrar v. Hobby,*
   506 U.S. 103 (1992) ......................................................... 26, 29

*Federation of Advertising Industry Representatives, Inc. v. City of Chicago,*
   326 F.3d 924 (7th Cir. 2003) ........................................... 27, 28

*Franzen v. Ellis Corp.,*
   543 F.3d 420 (7th Cir. 2008) ............................................... 28

*Great Lakes Dredge & Dock Co. v. Comm. Union Assurance Co.,*
   2000 WL 1898533 (N.D. Ill. Sept. 18, 2000) ........................... 1

*Hastert v. Illinois State Bd. of Election Com'rs,*
    28 F.3d 1430 (7th Cir. 1993) ............................................................. 1, 2

*Hewitt v. Helms,*
    482 U.S. 755 (1987) ............................................................................ 30

*McDonald v. Chicago,*
    130 S. Ct. 3020 (2010) ..................................................................passim

*McDonald v. City of Chicago,*
    130 S.Ct. 1317 (2010) ............................................................. 2, 4, 33

*McDonald v. City of Chicago,*
    130 S. Ct. 3544 (2010) ........................................................................ 3

*McDonald v. City of Chicago,*
    2010 WL 710088 (Mar. 2, 2010) ...................................................... 33

*McDonald v. City of Chicago,*
    No. 08-1521 (U.S.) ....................................................................... 2, 20

*National Rifle Ass'n v. City of Chicago,*
    567 F.3d 856 (7th Cir. 2009) ................................................... 2, 4, 32

*National Rifle Ass'n v. Village of Oak Park,*
    617 F. Supp.2d 752 (N.D. Ill. 2008), *aff'd sub nom., National Rifle Ass'n v.*
    *City of Chicago,* 567 F.3d 856 (7th Cir. 2009), *rev'd sub. nom., McDonald*
    *v. City of Chicago,* 130 S.Ct. 3020 (2010), *cert. granted* ...................... 32

*National Rifle Association of America, Inc., et al.*
    *v. City of Chicago, Ill., et al.,*
    Nos. 08-4241, 08-4243 ........................................................................ 9

*Newman v. Piggie Park Enters., Inc.,*
    390 U.S. 400 (1968) ............................................................................ 33

*NRA v. Chicago,*
    2010 WL 2571876 (U.S. 2010) ...................................................... 8, 32

*Palmetto Properties, Inc. v. County of Dupage,*
    375 F.3d 542 (7th Cir. 2004) .......................................................passim

*People Against Police Violence v. City of Pittsburgh,*
    520 F.3d 226 (3d Cir. 2008) ............................................................... 25

*People v. Dawson,*
    403 Ill. App. 3d 499, 934 N.E.2d 598 (1 Dist. 2010) .............................. 19

*People v. Foster,*
    __ N.Y.S.2d __, 2010 WL 5187702 (N.Y. City Crim. Ct. Dec. 15, 2010) .............. 19

*Petersen v. Gibson,*
    372 F.3d 862 (7th Cir. 2004) .................................................. 29

*Riviera Distributors, Inc. v. Jones,*
    517 F.3d 926 (7th Cir. 2008) .................................................. 31

*Shaw v. Hunt,*
    154 F.3d 161 (4th Cir. 1998) .................................................. 33

*Sole v. Wyner,*
    551 U.S. 74 (2007) ........................................................... 25

*Southworth v. Board of Regents of University of Wisconsin System,*
    376 F.3d 757 (7th Cir. 2004) .................................................. 24

*United States v. Bloom,*
    149 F.3d 649 (7th Cir. 1998) .................................................. 19

*United States v. Munsingwear, Inc.,*
    340 U.S. 36 (1950) ........................................................ 8, 14

*United States v. Skoien,*
    614 F.3d 638 (7th Cir. 2010) .................................................. 19

*Walker v. Calumet City, Ill.,*
    565 F.3d 1031 (7th Cir. 2009) ................................................. 27

*Wisconsin v. Hotline Industries, Inc.,*
    236 F.3d 363 (7th Cir. 2000) .................................................. 12

*Young v. City of Chicago,*
    202 F.3d 1000 (7th Cir. 2000) .............................................. 24, 25

*Zessar v. Keith,*
    536 F.3d 788 (7th Cir. 2008) .............................................. 26, 27

## STATUTES

28 U.S.C. § 1291 .................................................................. 1

28 U.S.C. § 1331 .................................................................. 1

28 U.S.C. § 1343(3) ................................................................. 1

28 U.S.C. §1988......................................................................passim

42 U.S.C. § 1988.....................................................................passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24(a) and (b) ............................................... 33

S. Ct. R. 12.6 ........................................................................ 4, 32

S. Ct. R 25.1 ......................................................................... 4, 32

*NRA, et al., Petition for Writ of Certiorari,*
   2009 WL 1556563 (Jun. 3, 2009) ................................... 8

*NRA, et al., Reply to Brief in Opposition,*
   2009 WL 2491800 (Aug. 14, 2009) ............................... 8

*NRA, et al., Brief in Support of Petitioners,*
   2009 WL 3844394 (Nov. 16, 2009) ............................... 33

*NRA, et al., Reply Brief in Support of Petitioners,*
   2010 WL 581625 (Jan. 29, 2010)................................... 33

# Statement Of Jurisdiction

The district court had jurisdiction over these actions pursuant to 28 U.S.C. § 1331 as this action arose under the United States Constitution and laws of the United States, and under 28 U.S.C. § 1343(3), in that these actions sought to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of Illinois and political subdivisions thereof, of rights, privileges or immunities secured by the Second and Fourteenth Amendments to the United States Constitution. The district court also retained jurisdiction over these cases to rule on any request by Plaintiffs-Appellants for the award of attorney's fees pursuant to 42 U.S.C. § 1988(b). *See, e.g., Great Lakes Dredge & Dock Co. v. Comm. Union Assurance Co.*, No. 94 C 2579, 2000 WL 1898533, at *13 (N.D. Ill. Sept. 18, 2000) ("Because post-judgment motions for attorneys' fees and costs are separate from and collateral to the final decision on the merits, the court retains jurisdiction to decide the motions").

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1291. Plaintiffs-Appellants appeal from a final judgment of the District Court, entered on December 22, 2010, which held that the Plaintiffs-Appellants are not prevailing parties pursuant to 42 U.S.C. § 1988, and thus are not entitled to recover their attorney's fees in this action. This Court has held that a denial of attorney's fees creates appellate jurisdiction separate from the merits of the underlying case. *See Hastert v. Illinois State Bd. of Election Com'rs*, 28 F.3d 1430, 1437, 1438-39 (7th Cir. 1993). Moreover, no other issues remain to be resolved by the district court. Plaintiffs-Appellants timely filed their Notice of Appeal on December 27, 2010.

## Statement Of The Issues

Whether the district court erred in holding that Appellants are not "prevailing parties" under 42 U.S.C. § 1988 even though the parties litigated this case all the way to the Supreme Court and Appellees only changed their laws after the Supreme Court's decision in Appellants' favor made it impossible for Appellees to continue to defend the challenged ordinances and thus led Appellees to repeal the ordinances.

## Statement Of The Case

Appellants National Rifle Association *et al.* (collectively, "NRA") filed two complaints on June 27, 2008, claiming that Chicago's and Oak Park's ("the Cities") municipal ordinances prohibiting handgun possession violated the right to keep and bear arms codified in the Second Amendment.[1] Based on its ruling that the Second Amendment was not incorporated through the Fourteenth Amendment against the States, the district court granted judgment on the pleadings in favor of the Cities. This Court affirmed. *NRA v. City of Chicago*, 567 F.3d 856 (7th Cir. 2009). The Supreme Court granted certiorari in a related case, *McDonald v. City of Chicago*, No. 08-1521 (U.S.), and granted NRA's motion to participate in oral argument as a respondent in support of petitioners. *McDonald v. City of Chicago*, 130 S.Ct. 1317 (2010) (mem.)

The Supreme Court reversed, holding that the right to keep and bear arms applies fully against the States through the Fourteenth Amendment. 130 S. Ct.

---

[1] Pursuant to this Court's January 6, 2011 order requiring consolidated briefing, the NRA plaintiffs file this brief jointly in their appeal of the district court's December 22, 2010 order in case numbers 08-3696 and 08-3697.

3020 (2010). (A-44-45.)[2] The next day, the Court granted the NRA's petition, vacated this Court's decision and remanded. 130 S. Ct. 3544 (2010). (A-102-03.) Three days later, Chicago repealed its handgun ban, and Oak Park did likewise shortly thereafter. On remand from the Supreme Court, this Court vacated the district court's judgment for the Cities and remanded with instructions to dismiss the case as moot. (A-104-06.) On October 12, 2010, the district court dismissed the case as moot. (A-108.) NRA moved for attorney's fees under 42 U.S.C. § 1988, and the Cities opposed. (A-109-112.) After a hearing on December 21, 2010, the district court denied NRA's motion for fees in a written order on the remarkable ground that although the NRA had litigated its case all the way to the Supreme Court and won, it was not a "prevailing party" as required by Section 1988. (SA-1-12.) The district court supplemented that order on January 7, 2011, but did not change its ruling. (SA-14.)

## Statement Of The Facts

### *Heller*, *McDonald*, And The Cities' Repeal Of Their Handgun Bans

In a landmark decision in 2008, the Supreme Court held that the Second Amendment codified an individual right to keep and bear arms. *See District of Columbia v. Heller*, 554 U.S. 570 (2008). Because the plaintiffs in *Heller* challenged a Washington, D.C. ordinance, the Court had no occasion to determine whether its ruling would extend to state or local laws. The day after the Supreme Court issued its decision in *Heller*, NRA filed its two complaints in this case. NRA challenged

---

[2] Citations to the separate Appendix accompanying this Brief shall appear as "A-__." Citations to the Short Appendix attached to this Brief shall appear as "SA-__."

ordinances of Chicago and Oak Park that were materially indistinguishable from the District of Columbia ordinance struck down in *Heller*: both Cities' ordinances amounted to a complete ban on handgun possession by ordinary law-abiding citizens.

Chicago and Oak Park did not argue that their ordinances were distinguishable from D.C.'s and thus could be constitutional even if the Second Amendment right were incorporated against the States through the Fourteenth Amendment. Rather, the Cities sought dismissal on the sole ground that the Second Amendment right is not applicable to the States. Following circuit precedent, the district court accepted that argument and granted the Cities judgment on the pleadings. Similarly following circuit precedent, this Court agreed and affirmed. *See* 567 F.3d 856.

The Supreme Court then granted certiorari in *McDonald*, which made NRA a respondent in support of petitioners. NRA participated in the case as a party by filing both an opening and reply brief as a respondent in support of petitioners on the schedule applicable to petitioners, *see* S. Ct. R. 12.6 & 25.1, and the Court granted NRA's motion for divided argument and heard oral argument from NRA as well as the McDonald petitioners. *McDonald v. City of Chicago*, 130 S.Ct. 1317 (2010) (mem.) The NRA's successful motion stressed its party status in order to emphasize its superior claim to argument time relative to a divided argument motion of an amicus, which the Court ultimately denied. On June 28, 2010, the Supreme Court reversed this Court's judgment and held in *McDonald* that the right

to keep and bear arms applies fully to the States through the Fourteenth Amendment under the same standards, enunciated in *Heller*, as bind the federal government. 130 S. Ct. at 3026. (A-44-45.)

The Supreme Court's ruling against the Cities provoked an immediate response from the Cities' officials. Before *McDonald* was issued, Corporation Counsel Mara Georges had advised that "[i]f the Supreme Court were to find incorporation of the Second Amendment, the city's handgun ban would be invalidated . . . ." City of Chicago, Committee on Police & Fire, Report of Proceedings, June 18, 2010, 5-6. (A-117-18.) After *McDonald*, she reiterated that recognition and recommended a new ordinance because "the section of our ordinance that prohibits the registration of handguns is unenforceable. It is clear that such a provision will ultimately be struck down based on the Supreme Court's decision in the *Heller* case . . . ." *Id.*, June 29, 2010, at 3-4 (A-121-22.) Ms. Georges said that the proposed new ordinance was "drafted in response to the Supreme Court decision earlier this week in the *McDonald* case." *Id.*, July 1, 2010, at 7 (A-129.) She added that, on remand, "it really becomes impossible to defend it [the existing ordinance]." *Id.* at 21. (A-143.)[3]

Chicago's Mayor Richard Daley echoed this recognition that the Supreme Court's decision doomed the ordinance: "'It's clear to all that our current handgun ordinance will soon be struck down by the 7th Circuit Court of Appeals. . . . With

---

[3] "What the Supreme Court has said is that the Second Amendment applies to the City, and the Second Amendment guarantees a right to a handgun in the home for self-defense. So in other words, a ban by the City on handguns will not withstand the *McDonald* decision." *Id.*

that in mind, today I want to announce our proposal to rewrite Chicago's gun laws.'"[4] In the ensuing session that repealed the handgun ban, Mayor Daley noted: "We're here because the Supreme Court decision was rendered against the City of Chicago." Special Meeting of the Chicago City Council (July 2, 2010).[5] Alderman Latasha Thomas added that "we're following the dictates of our Supreme Court. We are responding to what they have told us we can and can't do . . . ." *Id.* Alderman Toni Preckwinkle referred to "the Supreme Court justices that voted to strike down our handgun laws . . . ." *Id.* Alderman Ed Burke said the bill is "mandated by what the law is right now . . . ." *Id.*

Just four days after *McDonald* issued, the Chicago City Council unanimously repealed its handgun ban. *See* Journal of Proceedings of the City Council of the City of Chicago, Illinois, July 2, 2010, at 96235. The enactment stated that *McDonald* "ruled that the Second Amendment's right to possess a handgun for self-defense in the home also applied to the states . . . ." *Id.* It further found that "it is essential for the City Council of the City of Chicago to promptly pass an ordinance that provides for reasonable regulation of firearms *in compliance with the rulings of the United States Supreme Court . . . .*" *Id.* (emphasis added). On passage, Mayor Daley said that "Chicago's new gun ordinance . . . addresses this week's U.S.

---

[4] Mayor Daley Outlines Details of City's New Gun Ordinance, July 1, 2010, http://mayor.cityofchicago.org/mayor/en/press_room/press_releases/2010/july_2010/0701_supreme_ct_gun.html.

[5] *See* http://www.chicityclerk.com/City_Council_Video/ 2010_Video_Meetings/July2_2010/.

Supreme Court ruling . . . . The Court's June 28 ruling effectively overturned Chicago's previous handgun ban."[6]

Oak Park's voice in reaction to *McDonald* was Raymond L. Heise, Village Attorney of Oak Park, who was on the briefs as counsel in the Court of Appeals and the Supreme Court. The press reported that Mr. Heise acknowledged "a reality where Oak Park no longer has a handgun ban . . . . Heise, who as village attorney drafted Oak Park's handgun ban in the 1980s, said Monday [June 28] that the decision means Oak Park will eventually have to rescind its ban on the possession of handguns in homes."[7]

The proposed ordinance to repeal Oak Park's handgun ban was on the Village's Board agenda for July 19, 2010. According to the minutes, Mr. Heise explained the impact of *McDonald* to the Board. "Although the Village's handgun ordinance was not overturned, the provision regarding the right to possess a handgun in one's home for purposes of self defense was found to be unconstitutional. This amendment would ensure that the Village's ordinance was

---

[6]   Mayor Daley Says City's New Ordinance Addresses Supreme Court Ruling, July 2, 2010, http://mayor.cityofchicago.org/mayor/en/press_room/press_releases/2010/july_2010/0702_supreme_court.html.

[7]   Marty Stempniak, "Top court kills Oak Park gun ban," June 29, 2010, http://www.wednesdayjournalonline.com/main.asp?SectionID=1&SubSectionID=1&ArticleID=17855.

in compliance with the law."[8]  Ordinance 2010-0-47 repealing the handgun ban

passed unanimously.[9]

### The Post-*McDonald* Attorney's Fees Litigation

After issuing its opinion in *McDonald*, the Supreme Court granted NRA's

petition for a writ of certiorari and remanded the case to this Court.[10]  *NRA v.

Chicago*, 2010 WL 2571876 (U.S. 2010) (A-102-03.)  On remand, this Court issued

the following order:

> After the Supreme Court's decision in *McDonald v. Chicago*, 130 S. Ct.
> 3020 (2010), both the City of Chicago and the Village of Oak Park
> repealed the ordinances that had been the subject of this litigation.
> Accordingly, we vacate the district court's judgments and remand with
> instructions to dismiss as moot. *See United States v. Munsingwear,
> Inc.*, 340 U.S. 36 (1950). . . .
>
> If plaintiffs believe that the repeals entitle them to attorneys' fees
> under 28 U.S.C. §1988, they may file appropriate motions in the
> district court. We do not express any opinion on the question whether
> the repealers, enacted before the Supreme Court's decision could be
> implemented on remand, affect the availability of fees under the
> approach of *Buckhannon Board & Care Home, Inc. v. West Virginia
> Department of Health & Human Resources*, 532 U.S. 598 (2001).

---

[8]  Approved Minutes - Regular Board Meeting, Village of Oak Park, July 19, 2010, p.4,
http://www.oak-park.us/public/pdfs/2010%20Minutes/ 07.19.10_minutes.pdf.

[9]  *See id.*  Heise was elsewhere quoted as saying that the "high court justices' message was
clear on citizens' rights to have guns in their homes," "[t]he Supreme Court decision became
the law of the land the day they released it," and the decision "found that a narrow
provision of both the Chicago and Oak Park handgun ordinances was in fact
unconstitutional."  "Oak Park Gun Law Amended to Allow Guns in Registered Users'
Homes," Sun-Times Media Wire, July 20, 2010,
http://www.myfoxchicago.com/dpp/news/metro/gun-law-legalized-oak-park-registered-users-
homes-20100720.

[10]  *See* NRA's Petition for a Writ of Certiorari, 2009 WL 1556563 (Jun. 3, 2009), and NRA's
Reply to Brief in Opposition, 2009 WL 2491800 (Aug. 14, 2009).

*National Rifle Association of America, Inc., et al. v. City of Chicago, Ill., et al.*, Nos. 08-4241, 08-4243, & 08-4244 (7th Cir., Aug. 25, 2010). (A-104-05.) On remand from this Court, the district court dismissed the cases as moot. (A-107-08.) NRA then filed its motions for attorney's fees.[11] (A-109.)

The district court denied NRA's motions for fees. According to the district court, NRA was not a "prevailing party" because "there has never been a final judgment on the merits in these cases" and it was insufficient that the Supreme Court's decision put "the proverbial handwriting on the wall." (SA-5.)

## Summary Of Argument

The district court denied attorney's fees under a hyper-formalist interpretation of Section 1988 that has no support in law or logic or the decisions of this Court or the Supreme Court. In the district court's view, a plaintiff has not prevailed when the defendant fights all the way to the Supreme Court, loses on the only real issue in dispute, and recognizes that the Supreme Court's ruling makes further defense hopeless. When a defendant litigates a case all the way to the Supreme Court and loses on the only ground that provided a basis for defending its law, the party who prevailed in the Supreme Court is a prevailing party for

---

[11] The two NRA cases (challenging the Chicago and Oak Park bans, respectively) were not consolidated in the district court with the case of *McDonald v. Chicago*, No. 08 C 3645. At the conclusion of a status conference on the NRA petitions for attorney's fees, Chicago counsel informed the court that *McDonald* counsel accused Chicago counsel of deceiving him by not notifying him that the NRA petitions were being briefed. Transcript of Hearing, Dec. 21, 2010, at 6. (A-146.) Co-counsel for the *McDonald* plaintiffs appeared and asked the court to hold the NRA petitions in abeyance pending briefing by the *McDonald* plaintiffs, which the court denied. *Id.* at 7. (A-146.) The district court mistakenly wrote that *McDonald* counsel "appeared and voiced vigorous criticism at having assertedly been kept out of the loop *by NRA's counsel.*" (SA-12.) (emphasis added). *McDonald* counsel's complaint was directed at Chicago counsel; no mention was made in that context of NRA counsel.

purposes of Section 1988.  The losing party cannot avoid that obvious result by repealing its laws faster than a mandate can reach the District Court.

The situation here bears no resemblance to the "catalyst" scenario at issue in the case on which the District Court relied.  It is one thing when the mere filing of a lawsuit prompts a would-be defendant to change its law.  It is quite another when a defendant fights all the way to the Supreme Court and changes its law only when the Supreme Court has forever changed the law and the legal relations between the parties.  Under the latter circumstances, the absence of a final judgment cannot obscure that the defendant has lost and the plaintiff has prevailed.

The Cities did not repeal their handgun bans voluntarily because NRA's arguments made the Cities reevaluate the wisdom of banning handguns.  Nor did the Cities repeal their ordinances to avoid the risk that the Supreme Court would rule against them or to save the expense of litigating all the way to the Supreme Court.  The Cities already had incurred that expense and decided to take the risk that the Supreme Court would rule against them.  Rather, they repealed their ordinances involuntarily because the Supreme Court's decision — to say the least — materially altered the legal relationship between the parties and, by the Cities' own admissions, made it impossible for the Cities to continue to defend the ordinances. When a defendant loses in the Supreme Court and repeals its challenged ordinance because it can no longer defend it, the plaintiff has prevailed in every meaningful sense.

This Court's case law recognizes that prevailing-party status does not turn on the formality of a final judgment. To the contrary, the two touchstones for "prevailing party" status under this Court's precedent are that there must be a substantive ruling in the party's favor and the action that moots the case must not be voluntary — that is, must be prompted by that substantive ruling. This case easily satisfies those criteria. *McDonald* was not only a substantive decision, but definitively resolved the *only* real substantive issue in this case. The defendants repealed their ordinances *involuntarily* because the Supreme Court's decision left them no choice.

Finally, contrary to the Cities' argument before the district court—which the district court did not adopt—the NRA plaintiffs were "parties" in *McDonald*. NRA has participated in this litigation as a party — not as an amicus or in some other capacity — at every stage, including presenting oral argument before the Supreme Court in *McDonald*.

## Standard Of Review

"Under 42 U.S.C. § 1988 a 'prevailing party' is entitled to 'a reasonable attorney's fee.' When analyzing a district court's grant or denial of such fees, we review *de novo* the lower court's purely legal conclusions." *Palmetto Properties, Inc. v. County of Dupage*, 375 F.3d 542, 547 (7th Cir. 2004).

## Argument

Both before and after the Supreme Court's decision in *McDonald*, the Cities recognized by their words and their actions that their ability to defend the challenged ordinances turned on whether the Second Amendment right was

incorporated through the Fourteenth Amendment against the States. *Heller* had made clear that a ban on handgun possession by ordinary law-abiding citizens violated that individual right. Because the Cities' bans were no less draconian than the D.C. ban at issue in *Heller*, the Cities' bans would equally violate the right to keep and bear arms if that right applied to the States. That is why the Cities argued to the Supreme Court that only a limited, watered-down version of the Second Amendment, at most, should apply to the States.

When the Supreme Court expressly rejected that argument and held that the Second Amendment right applies fully to the States the same as to the federal government, the Cities correctly recognized that their handgun bans were indefensible in light of that judicial ruling. Indeed, it was so plain that *McDonald* invalidated the bans that the Cities immediately recognized as much and explained to their residents that they had no choice but to repeal the bans. That the Cities did so faster than a mandate travels and so preempted the formality of a final judgment does not make the lack of a final judgment anything other than a mere formality. In every sense that matters under Section 1988, NRA prevailed when the Supreme Court ruled in its favor and against the Cities.[12]

---

[12] A district court has collateral jurisdiction to consider petitions for attorney fees after a case is dismissed as moot. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990); *see also Wisconsin v. Hotline Industries, Inc.*, 236 F.3d 363, 365 (7th Cir. 2000) ("district courts retain jurisdiction to consider collateral matters after remand and . . . attorney's fees may be awarded under a separate order").

I.    NRA Is A Prevailing Party As A Result Of The Supreme Court's Decision in McDonald.

    A.    Under Supreme Court and Seventh Circuit Case Law, NRA Is a Prevailing Party.

The district court relied heavily on *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598 (2001), for its conclusion that by preventing the issuance of a final judgment in NRA's favor by repealing their handgun bans, the Cities deprived NRA of prevailing-party status. The district court erred. The "catalyst" theory rejected by *Buckhannon* is irrelevant to this case because there was nothing "voluntary" about the Cities' repeal of their bans. NRA is a prevailing party because it prevailed in the Supreme Court — not because its lawsuit, itself, led the Cities to repeal their bans voluntarily.

*Buckhannon* held that "a 'prevailing party' is one who has been awarded some relief by the court," which could take place "either in the trial court or on appeal." *Id.* at 603-04. That could include any "material alteration of the legal relationship of the parties," such as "enforceable judgments on the merits," "court-ordered consent decrees," or some other "judicially sanctioned change in the legal relationship of the parties." *Id.* at 604-05. *Buckhannon* rejected the "catalyst theory" in which the mere filing of a lawsuit leads to a voluntary change by the defendant, as "there is no judicially sanctioned change in the legal relationship of the parties." *Id.* at 605. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* "Prevailing party" excludes "a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless

lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief." *Id.* at 606.[13] Nothing in *Buckhannon* remotely contemplates that a party could litigate a case all the way to the Supreme Court only to have the loser snatch a fees victory from the jaws of defeat by the expedient of repealing its law faster than the mandate can travel.

Indeed, by the logic of the District Court and the Cities, they should have been able to procure a vacatur of the *McDonald* decision itself. Chicago repealed its law before the mandate could issue and before the time period for filing a reconsideration motion in the Supreme Court expired. By appellees' logic, they should have been able to ask for *Musingwear* vacatur. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 40-41 (1950). Of course, some combination of shame, the certain condemnation of this absurd tactic and judge-made doctrine precluding *Musingwear* vacatur in light of such obviously tactical behavior prevented Chicago from making that request. Those same forces should have prevented appellees from even making the argument that the District Court accepted.

The district court held that *Buckhannon* precluded an award of attorney fees here. (SA-12.) This case is light years removed from *Buckhannon*. Unlike in *Buckhannon*, however, NRA did not simply file a lawsuit and then see the Cities decide to change their challenged conduct voluntarily without the need for

---

[13] Concurring, Justice Scalia noted that status as a prevailing party "*presumes* the existence of a judicial ruling." *Id.* at 614 (Scalia, J., concurring). The term does not include a case in which "the merits of the plaintiff's case remain unresolved – when, for all one knows, the defendant only 'abandon[ed] the fray' because the cost of litigation – either financial or in terms of public relations – would be too great." *Id.* at 617.

litigation.  To the contrary, the Cities litigated the case in the district court, the court of appeals, and ultimately the Supreme Court, where NRA prevailed on the dispositive issue in the case.  It was the *Supreme Court's ruling* definitively rejecting the Cities' only legal defense that served as the catalyst for the Cities' capitulation.  *See* pp. 5-7, *supra*.  That is a far cry from *Buckhannon*, where the mere filing of the lawsuit *itself* prompted action by the defendant.

In other words, the Supreme Court's decision in *McDonald* — not "the lawsuit" — "brought about" an *in*voluntary "change in the defendant's conduct." 532 U.S. at 600.  There could be no higher or clearer "judicial *imprimatur* on the change" than the Supreme Court decision, which created the material alteration of the legal relationship of the parties.  *Id.* at 605.  It cannot be said that NRA "simply fil[ed] a nonfrivolous but nonetheless potentially meritless lawsuit" and obtained its objective "without obtaining any judicial relief."  *Id.* at 606.  The NRA won in the Supreme Court, and having prevailed on the only issue that matters is a prevailing party for purposes of Section 1988.

Chicago and Oak Park do not suggest that they voluntarily repealed their bans because they changed their minds about the wisdom of banning handguns. They did not decide to repeal their ordinances rather than spend the money necessary to try to defend them; they spent the money necessary to defend the bans all the way to the Supreme Court — and thus obligated NRA to spend the money needed to pursue this suit all the way to the Supreme Court — and repealed them only once they concluded, correctly, that they could no longer defend them as a

matter of law.  Nor did the Cities repeal the bans in response to this lawsuit — or even in response to the Supreme Court's grant of certiorari — in an effort to avoid the risk of losing in court.   Instead, the Cities decided to take the risk that they would lose in court, and when they lost in the highest court in the land, they recognized that there was nothing left to do but acknowledge defeat.  The repeals were anything but "voluntary."

## B.   This Court's Case Law Recognizes That Substance Trumps Form.

This Court has previously rejected an approach to prevailing-party status that elevates "form over substance."  *Palmetto Properties, Inc. v. County of Dupage*, 375 F.3d 542, 551 (7th Cir. 2004).  In that case, the district court ruled certain zoning regulations unconstitutional, which prompted the municipal defendant to repeal them.  The case did not proceed to final judgment before the repeal and then was dismissed as moot.  *Id.* at 543-46.  The lack of a final judgment declaring the ordinance unconstitutional did not negate plaintiff's prevailing-party status:

> It would defy reason and contradict the definition of "prevailing party" under *Buckhannon* and our subsequent precedent to hold that simply because the district court abstained from entering a final order formally closing the case—a result of the Defendant's assertions that it would repeal the challenged portion of the ordinance—Palmetto somehow did not obtain a "judicially sanctioned change" in the parties' legal relationship.

*Id.* at 549-50.

The Court explained that, in *Buckhannon*, the repeal of the challenged law mooted the case "*before* the district court made *any* substantive rulings."  *Id.* at 550.  *Buckhannon* thus "construed the change in the defendants' conduct as *voluntary*, lacking the necessary judicial imprimatur."  *Id.*  But in *Palmetto*, the district court

16

ruled favorably on the constitutional claims, and "the County repealed the ordinance only *after* that determination had been made and presumably *because of it*." *Id.* The defendants may have been "free to moot the case *before* the summary-judgment ruling, in which case the action would have been voluntary." *Id.* But because they did not, "their action is most persuasively construed as involuntary— indeed exhibiting judicial imprimatur." *Id.* In short, "the County's 'voluntary cessation' of the 'challenged practice' . . . was done *after* the district court determined its illegality." *Id.* The plaintiff "secured a favorable substantive ruling from the district court, which, in turn, prompted the Defendants to repeal the zoning restriction." *Id.* at 551. The plaintiff was therefore a prevailing party entitled to attorney's fees. *Id.* at 551-52.

Thus, *Palmetto Properties* identified two touchstones for the prevailing-party analysis in the absence of a final judgment: first, the existence of a *substantive* ruling; and second, an *involuntary* change of behavior based on that ruling. This case meets both touchstones of *Palmetto Properties* and parallels that case.

### C.  *McDonald* Was The Type Of Substantive Ruling Contemplated By *Palmetto Properties.*

*McDonald* was not only a substantive ruling but a ruling on the *only* disputed substantive issue in the case—whether the right to keep and bear arms is incorporated through the Fourteenth Amendment. As the Court explained in *McDonald*, the Cities had "laws that are similar to the District of Columbia's [in *Heller*], but *Chicago and Oak Park argue that their laws are constitutional because the Second Amendment has no application to the States.*" 130 S. Ct. at 3026. The

Court explained that the "[m]unicipal respondents . . . urge us to allow state and local governments to enact . . . a complete ban on the possession of handguns in the home for self-defense." *Id.* at 3046. The dissent, too, recognized that "the gravamen of this complaint is plainly an appeal to keep a handgun or other firearm of one's choosing in the home." *Id.* at 3104 (Stevens, J., dissenting).

The Court rejected that rationale because "the Second Amendment right is fully applicable to the States." *Id.* at 3026. *McDonald* rejected the municipalities' argument "to treat the right recognized in *Heller* as a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees . . . ." *Id.* at 3044. The Court rejected that argument because the Second Amendment "guarantee is fully binding on the States and thus *limits* (but by no means eliminates) their ability to devise solutions to social problems that suit local needs and values." *Id.* at 3046. Thus, although *Heller* involved the handgun ban of a federal enclave, the analysis in *Heller* applies fully to the States because "[t]he relationship between the Bill of Rights' guarantees and the States must be governed by a single, neutral principle." *Id.* at 3032-33 (rejecting "the notion that the Fourteenth Amendment applies to the States only a watered-down, subjective version of the individual guarantees of the Bill of Rights" (citation omitted)). While as a technical matter *McDonald* was remanded for further proceedings, the Court's holding and its opinion made crystal clear that the ordinances — which, like D.C.'s unconstitutional ordinance, imposed a complete ban on handguns — were subject to the same fate as the ordinance voided in *Heller*.

The district court focused not on the substance of *McDonald* but on the timing of the repeals. Because the Cities repealed their ordinances before the Supreme Court's mandate returned to the district court, no final judgments were rendered. The district court treated the lack of final judgments as dispositive: "Simply put, there has never been a final judgment on the merits in these cases." cite. As already explained, however, this Court has not required a final judgment as a precondition to prevailing-party status. *See, e.g., Palmetto Properties*, 375 F.3d at 551; *see* p. 9, *supra*. (SA-5.) Moreover, as a matter of logic, it is clear that many kinds of judicial pronouncements short of a final judgment constitute a material alteration of the parties' relationship and the law.

Indeed, other courts have eschewed the district court's hyper-formalist approach and have read *McDonald* as striking down the ordinances. *See, e.g., People v. Dawson*, 403 Ill. App. 3d 499, 505, 934 N.E.2d 598 (1 Dist. 2010) ("In *McDonald*, the Supreme Court struck down a City of Chicago ordinance which prohibited any person within the city to possess any handgun . . . . *McDonald* also struck down a similar Oak Park ordinance."); *People v. Foster*, __ N.Y.S.2d __, 2010 WL 5187702, at *2 (N.Y. City Crim. Ct. Dec. 15, 2010) ("In *McDonald,* the Court held a City ordinance unconstitutional . . . .").[14]

---

[14] This Court, discussing certain *dictum* in *Heller*, likewise stated that "[t]his is the sort of message that, whether or not technically dictum, a court of appeals must respect, given the Supreme Court's entitlement to speak through its opinions as well as through its technical holdings." *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (*en banc*), citing *United States v. Bloom*, 149 F.3d 649, 653 (7th Cir. 1998).

**D.  The Cities Repealed Their Ordinances *Involuntarily* As A Result Of The Ruling In *McDonald*.**

As the above shows, the central issue in this case was not whether defendants' handgun bans would violate the Second Amendment; it was whether the Second Amendment applied to those regulations in the first place.  In their brief to the Supreme Court, Chicago and Oak Park recognized that they could not prevail if the Second Amendment is incorporated.  They conceded that their laws amounted to handgun bans, *see, e.g.,* Brief for Respondents City of Chicago *et al.*, No. 08-1521, *McDonald v. City of Chicago*, at 12 ("Chicago and Oak Park ban handgun possession nearly entirely"); *id.* at 14 ("[t]he people of Chicago . . . and Oak Park . . . have determined" to adopt "a handgun ban").  And they acknowledged that the Second Amendment as interpreted in *Heller* would be fatal to such sweeping restrictions.  *See id.* at 23 (under *Heller*, "the federal government may not ban . . . handguns, no matter how dangerous they are in a particular community and no matter the benefits of doing so"); *see also id.* at 13 ("Second Amendment incorporation would severely limit such regulation").

The fact that the Cities staked their defense on the incorporation issue — rather than on a purported difference between their ordinances and the one struck down in *Heller* — left them without a legal leg on which to stand after *McDonald*.  By holding that the Second Amendment is incorporated through the Fourteenth Amendment and applies fully to the States, the Supreme Court eliminated the Cities' *only* defense.  The ordinances were not simply repealed *after* the Supreme Court's ruling but *because* of it.  That *involuntary* change of behavior, driven by an

20

authoritative judicial decision rather than a mere complaint, is precisely what was contemplated in *Palmetto Properties*.

Indeed, the Cities had good reason to repeal their ordinances with special dispatch. If the Cities had continued to prohibit all handgun possession after the Supreme Court's decision, their officials would have been susceptible to individual-capacity civil rights lawsuits. Qualified immunity protects officials who make a reasonable mistake of law, such as enforcing an ordinance that has been held valid under existing precedent but subsequently is struck down by the Supreme Court. But after *Heller* it was clearly established that the right of ordinary law-abiding citizens to possess handguns in the home is guaranteed by the Second Amendment, and after *McDonald* it was clearly established that the States were obligated to respect that individual right to the same extent as the federal government. It would have been objectively unreasonable to adhere to the Cities' bans after the Supreme Court's decision. *See Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009) ("In ascertaining whether a right is clearly established, this court looks to controlling Supreme Court and 7th Circuit precedent.").

In addition, the Cities had every incentive not to incur additional attorney's fee liability for a battle they had already lost. It is one thing to deny attorney's fees where a lawsuit prompts a defendant to do the right thing voluntarily, without requiring the plaintiff to incur its own attorney's fees to obtain judicial action forcing the defendant's hand. But nothing in *Buckhannon*, any other precedent, or common sense suggests that a defendant should be able to escape attorney's fees by

conceding defeat after litigating all the way to the Supreme Court and losing. Certainly there is no reason to imagine that Congress intended such a result. Congress enacted Section 1988 to *encourage* the pursuit of civil rights lawsuits by private attorneys general, *Charles v. Daley*, 846 F.2d 1057, 1063 (7th Cir. 1988), not to subject them to having the right to a reasonable attorney's fee pulled out from under them by a thirteenth-hour concession of a defeat that has already occurred.

The Cities were not shy about acknowledging the obvious consequences of *McDonald*. Both before and after *McDonald* issued, they repeatedly declared that an adverse decision on incorporation would require repeal. Defendants' counsel publicly advised that incorporation rendered the ordinances "unenforceable." *See* p. 5, *supra*. (A-117-18, 121-22, 129.) Mayor Daley and other City officials echoed that sentiment and stated that repeal was "mandated" by the law. *See* p. 6-7, *supra*. The Cities' multiple, explicit public statements recognizing that the Supreme Court's decision left them no choice but to repeal the ordinances cannot be reconciled with the notion that the Cities somehow acted "voluntarily."

The district court opined that reliance on the statements of the Cities' officials amounts to reviving the "catalyst theory" rejected in *Buckhannon*. According to the district court, "[p]ublic statements, however numerous and forceful, do not grant 'prevailing party' status when they have not received the essential judicial imprimatur." (SA-9.) But that misses the point. It was the Supreme Court's *decision* on the substantive issue of incorporation that provided the judicial imprimatur to doom the ordinances. *See* pp. 5-7, *supra*. The

statements of the Cities' officials do not themselves "grant 'prevailing party' status," but they do vividly demonstrate the Cities' correct understanding of what the decision in practical terms *required* them to do. As a matter of law, the Supreme Court's decision made it impossible to defend the Cities' ordinances. That would have been no less true even if the Cities had pretended otherwise. But the Cities' own recognition that the only course of action open to them was repeal underscores that NRA prevailed in every meaningful sense when the Supreme Court ruled in its favor.[15]

The district court sought to distinguish *Palmetto Properties* on the basis that, in that case, *the district court* made a determination that an ordinance was unconstitutional, which led to the mooting of the case. (SA-10-11.) That reasoning makes no sense. If a district court's ruling short of a final judgment confers prevailing-party status, then *a fortiori* a decision of the Supreme Court must do so as well. Under this theory, moreover, NRA apparently would be entitled to fees if it had prevailed in the district court and had its victory affirmed by the Supreme Court, instead of losing in the district court before ultimately prevailing in the Supreme Court. But when a case reaches the Supreme Court, it makes no sense for prevailing-party status to turn on who won in the district court. Once the Supreme Court has decided the case, it does not matter who initially won in the district court. Indeed, the lawsuit here is one where fees are most important, because the lawsuit

---

[15] In opposing NRA's fees request, the Cities suggested for the first time that their handgun bans were different than that of D.C. and that they somehow could have successfully defended their ordinances. The district court was not so credulous as to accept this post-hoc litigation position, which directly contradicts the frank public statements of the Cities' officials explaining the necessity of repeal. *See* pp 5-7, *supra*.

here changed the law and the legal relations between the parties. If the law were already clear, NRA could have obtained a TRO or preliminary injunction early in the case that would clearly entitle it to fees. The NRA did not obtain that early relief because its lawsuit changed the law in a way that expanded the civil rights of the citizens. And that is precisely what Section 1988 seeks to incentivize.

### E. This Court's Other Cases Confirm That NRA Is A Prevailing Party.

In *Southworth v. Board of Regents of University of Wisconsin System*, 376 F.3d 757, 768 (7th Cir. 2004), students obtained a court ruling that a university policy on student fees was not viewpoint neutral, and "in response to that ruling, the University altered the mandatory fee system . . . ." "It was the district court's order allowing the University to adopt new standards (*and thus avoid a judgment against it*) that caused the University to adopt the criteria and procedures upheld in part [by this Court] in *Southworth II*." *Id.* (emphasis added.) The Court noted that "[t]hat decision was the last decision on the merits in this litigation." *Id.* at 764. The same could be said about the Supreme Court decision in this case. Contrary to the University's position, "the victory was more than moral—it was one protecting 'a concrete and particularized interest.'" *Id.* at 770. The students were prevailing parties, and *Buckhannon* was inapplicable, because "the University substantially revised its funding system in response to a court ruling . . . ." *Id.* at 771. Again, Chicago and Oak Park repealed their handgun bans in direct response to a court ruling.

In *Young v. City of Chicago*, 202 F.3d 1000 (7th Cir. 2000) (per curiam), a preliminary injunction was issued to allow demonstrations at a political convention.

The City appealed after the convention ended, and the Court "dismissed the appeal as moot, the injunction having been limited to demonstrations at that convention." *Id.* As in *Palmetto Properties*, the Court found that the absence of a final judgment did not preclude an award of attorney fees:

> The City appeals from that award, arguing that since the suit became moot before a definitive determination of its merits by this court, the plaintiffs cannot obtain fees. Not so. A defendant cannot defeat a plaintiff's right to attorneys' fees by taking steps to moot the case after the plaintiff has obtained the relief he sought, for in such a case mootness does not alter the plaintiff's status as a prevailing party.

*Id.* at 1000-01.[16] Although *Young* was decided before *Buckhannon*, its rule has since been reaffirmed. *See Dupuy v. Samuels*, 423 F.3d 714, 720 (7th Cir. 2005) ("We upheld the award despite the fact that a final judgment on the merits had not been entered. . . . In *Young*, the litigation manifestly had come to an end *despite* the lack of a final judgment on the merits.").

*Young*'s reasoning applies with particular force here. NRA prevailed on the critical substantive issue in the case—a decision by the Supreme Court that the Second Amendment applies to the States according to the same standards as the federal government. That decision made clear that the Cities' handgun bans were unconstitutional. That the Cities immediately recognized that "the litigation manifestly had come to an end despite the lack of a final judgment on the merits,"

---

[16] *See People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233 (3d Cir. 2008) ("This was not a case where the filing of the lawsuit resulted in voluntary change on the part of the City. . . . The ultimate mooting of plaintiffs' claims resulted not solely from the filing of the lawsuit but from the results of the legal process."); *cf. Sole v. Wyner*, 551 U.S. 74, 86 (2007) (no changed legal relationship between the parties existed where a preliminary injunction was entered and then dissolved, and the challenged law was ultimately held constitutional).

*Dupuy*, 423 F.3d at 720, may stop the running of liability for attorney's fees, in contrast to the additional fee liability the Cities would have incurred if they had attempted to fight the implementation of the Supreme Court's decision. But the Cities' compliance with that decision cannot rob NRA of its prevailing-party status.

###     F.     No Other Precedent Supports Denying Fees To NRA.

The district court relied heavily on an oversimplification of this Court's reasoning in *Zessar v. Keith*, 536 F.3d 788, 797 (7th Cir. 2008). (A-10-11.) In that case, fees were denied where plaintiff challenged an election code which was amended before the court entered judgment. Before the amendment, the district court had granted partial summary judgment finding the election code unconstitutional in part, but "the defendants were not directed to do, or refrain from doing, anything." *Id.* at 797 (citing *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)) (holding that a plaintiff prevails when the relief afforded modifies "the defendant's behavior in a way that directly benefits the plaintiff"). The district court concluded that *Zessar* precludes prevailing-party status where an ordinance is held unconstitutional without entry of final judgment.

But *Zessar* hardly overruled *Palmetto Properties'* holding that prevailing-party status does not hinge on the existence of a final judgment. As the Court stated in *Zessar*, "[c]ases will sometimes arise where, despite there being no final judgment or consent decree, the legal relationship of the parties will be changed due to a defendant's change in conduct brought about by a judicial act exhibiting sufficient finality. *Palmetto* was such a case." *Id.* at 798. So too here — the Supreme Court's decision changed the parties' legal relationship through an

authoritative judicial decision resolving the sole disputed substantive issue in NRA's favor and "brought about" a "change in conduct" by the Cities. Further, the facts of *Zessar* and this case are a complete mismatch. In *Zessar*, the parties *disputed* the key terms of the court's partial summary judgment ruling. *See id.* The election code amendments brought about by the court's decision did not resolve the case because the plaintiff "did not believe the amendments to the election Code afforded him the relief he sought," *id.* at 797, and thus pursued an unsuccessful challenge to the new code as amended. Here, the Supreme Court decision directly prompted the repeal of the ordinances and ended the case in NRA's favor.

The other cases cited by the district court are equally inapplicable. Fees were denied in *Walker v. Calumet City, Ill.,* 565 F.3d 1031, 1032-33 (7th Cir. 2009), in which — without *any* court ruling — the City found plaintiff to be in compliance with challenged rental code provisions and assured her that they would not be enforced against her. The subsequent order dismissing the case "for mootness did not impose a judicial imprimatur that would permit awarding attorney fees under *Buckhannon*." *Id.* at 1037. *Walker* explicitly contrasted *Palmetto Properties*, where "prior to the change in circumstances, the court made a decision on the merits in favor of the plaintiff." *Id.* That distinction — the existence of a substantive ruling in favor of plaintiffs — is dispositive.

In *Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 933 (7th Cir. 2003), the plaintiff Federation challenged Chicago's advertising restrictions, but the opinion of the Court of Appeals "did not

provide Federation any relief at all; rather, it further limited Federation's ability to advertise." *See also Franzen v. Ellis Corp.*, 543 F.3d 420, 431 (7th Cir. 2008) ("So far as the merits go, plaintiffs not only did not prevail but also suffered dismissal of their complaint with prejudice."). After Federation moved for summary judgment but before Chicago responded, the Supreme Court held in a wholly separate case that similar restrictions violated the First Amendment. *Federation*, 326 F.3d at 928. The fact that Chicago then repealed its restrictions did not make Federation a prevailing party in its case, because "neither Federation nor the City were parties to" the Supreme Court case. *Id.* at 933. Even if the Supreme Court decision supported Federation's position, "it was not a judgment that changed the legal relationship between the parties in this case — and that is what *Buckhannon* requires." *Id.* Because NRA was a party in *McDonald*, *see* pp. 31-33, *infra*, *Federation* simply does not apply.

The district court concluded that this case is in the same posture as *Federation* based on the statement: "Even assuming after [the Supreme Court decision], the district court would have granted [plaintiff's] motion had the [defendant] not repealed its ordinance, the fact remains that no such ruling was made and thus no judicial relief was awarded to Federation." (SA-8) (quoting *Federation,* 326 F.3d at 933) (bracketed items added by district court)). The difference is that the Supreme Court actually rendered a decision in *this* case in favor of NRA, but did not do so in *Federation*.

*Petersen v. Gibson*, 372 F.3d 862, 865 (7th Cir. 2004), is also off-point. The plaintiff there obtained the "moral satisfaction of being wronged," but no practical relief. "The relief requirement emphasizes the practical impact of the lawsuit, and the Supreme Court has repeatedly held that the relief must be real in order to qualify for fees." *Id.* at 865. *See Cady v. City of Chicago*, 43 F.3d 326, 330 (7th Cir. 1994) ("a direct benefit or redressed grievance other than the 'psychic satisfaction'" required).[17] The defendant paid a "nuisance settlement to avoid the expense" of further litigation. *Peterson*, 372 F.3d at 867. Repeal of the ordinances here was hardly equivalent to a nuisance settlement, and repeal gave NRA the practical benefit it sought, not merely "psychic satisfaction."

The district court's reliance on *Farrar v. Hobby*, 506 U.S. 103, 112-13 (1992), SA-9, is similarly misplaced. The court quoted *Farrar* as follows:

> To be sure, a judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party. Of itself, the moral satisfaction [that] results from any favorable statement of law cannot bestow prevailing party status. No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant. (Internal quotation marks and citation omitted).

(SA-9.) But *Farrar* "involved no catalytic effect," *Buckhannon*, 532 U.S. at 603 n.5 (citation and quotation marks omitted), and thus does not support the district court's decision. To the extent the court meant to rely on *Farrar*'s statement that "moral satisfaction [that] results from any favorable statement of law" is not

---

[17] In *Cady*, the plaintiff sued to allow him to put certain literature in a magazine rack outside an airport chapel. Chicago removed the rack without any judicial action, mooting the case. *Id.* at 327.

sufficient by itself, the court also erred.  As already explained, NRA is a prevailing party because it obtained the relief it sought in this case in the very practical sense of eliminating the handgun bans it challenged.  "Moral satisfaction" has nothing to do with NRA's fees request.

Likewise, in *Hewitt v. Helms*, 482 U.S. 755, 762 (1987), the referenced "favorable statement of law" that did not confer prevailing-party status was an opinion that led to an amendment of prison procedures *after* the plaintiff "had long since been released from prison."  *Id.* at 763.   Indeed, *Hewitt* began: "This case presents the peculiar-sounding question whether a party who litigates to judgment and loses on all of his claims can nonetheless be a 'prevailing party' for purposes of an award of attorney's fees."  *Id.* at 757.  That hardly happened here — it was the Cities that lost on the only real issue.  And as *Hewitt* further opined: "It is settled law, of course, that relief need not be judicially decreed in order to justify a fee award under § 1988. . . . The real value of the judicial pronouncement . . . is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*"  *Id.* at 760-61.[18]

The district court here concluded that *Buckhannon* holds "that the proverbial handwriting on the wall does not alone suffice to trigger a Section 1988 entitlement

---

[18]   The following words of *Hewitt*, *id.* at 761, seem written for this case:

> In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or *cessation of action*) by the defendant that the judgment produces – the payment of damages, or some specific performance, or the *termination of some conduct.*  (Emphasis added.)

to attorney's fees, no matter how clear the penmanship may appear to be. Instead that figurative handwriting must have been memorialized in a judicial ruling or like judicial action . . . ." (SA-12.) The Supreme Court's decision, however, *was* "a judicial ruling." To the extent the district court meant that even a clear and authoritative ruling on the key issue in the case is merely insufficient "handwriting on the wall" when the formality of a final judgment is lacking, the district court was wrong for the reasons already explained. *See supra,* pp. 12-25.

A "material alteration of the legal relationship of the parties" may occur even where "everyone denies liability as part of the underlying settlement, and the judge takes no position on the merits." *Riviera Distributors, Inc. v. Jones,* 517 F.3d 926, 928 (7th Cir. 2008). Where one party "threw in the towel" and consented to a dismissal, that did not make the other party "less the victor than it would have been had the judge granted summary judgment or a jury returned a verdict in its favor." *Id.* Given their decisive defeat in the Supreme Court, it does not matter that the Cities, quite responsibly, threw in the towel before the cases were remanded and their defeat could be memorialized in a final judgment.[19]

## II.  NRA Was A "Party" To The Supreme Court's Decision In *McDonald.*

The Cities argued below that NRA was not eligible to be a prevailing party because it was not even a "party." That argument is entirely meritless. NRA was a

---

[19]  Plaintiffs would not be prevailing parties if the defendant "changed its position without any judicial input." *C.Z. ex rel. Ziemba v. Plainfield Community Unit School Dist. No. 202,* 680 F. Supp. 2d 950, 955 (N.D. Ill. 2010) (citation omitted). However, where a favorable decision led to a change in policy and then a dismissal for mootness, it was "the height of absurdity" for a defendant to urge "the absence of court approval when any need for that was attributable to its own surrender . . . ." *Id.* at 956.

"party" in the district court, this Court, and the Supreme Court. *See National Rifle Ass'n v. Village of Oak Park*, 617 F. Supp.2d 752 (N.D. Ill. 2008), *aff'd sub nom., National Rifle Ass'n v. City of Chicago*, 567 F.3d 856 (7th Cir. 2009), *rev'd sub. nom., McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010), *cert. granted & remanded, NRA v. City of Chicago*, 2010 WL 2571876 (U.S. 2010). Indeed, the district court did not find that NRA was not a party. (SA-7-8 & n.4.)

The Supreme Court originally granted the petition for a writ of certiorari of the *McDonald* plaintiffs, but not NRA's petition. NRA nonetheless remained a party in *McDonald* and participated as such. Under Supreme Court Rule 12.6, NRA was designated a "Respondent in Support of Petitioners." That Rule provides:

> All parties to the proceeding in the court whose judgment is sought to be reviewed are deemed parties entitled to file documents in this Court . . . . All parties other than the petitioner are considered respondents, but any respondent who supports the position of a petitioner shall meet the petitioner's time schedule for filing documents . . . . Parties who file no document will not qualify for any relief from this Court.

Rule 25.1, which governs briefs on the merits, likewise provides that "[a]ny respondent . . . who supports the petitioner . . . shall meet the petitioner's . . . time schedule for filing documents." *See also Black v. United States*, 130 S.Ct. 2963, 2966 n.1 (2010) (noting party who "is a respondent in support of petitioners who qualifies for relief under this Court's Rule 12.6").

NRA was a party "to the proceeding in the court whose judgment [was] sought to be reviewed," *i.e., National Rifle Ass'n v. City of Chicago*, 567 F.3d 856 (7th Cir. 2009). As a party "entitled to file documents" in the Supreme Court, NRA was a "respondent who support[ed] the position of [the] petitioner[s]," and thus met

"the petitioner[s'] time schedule for filing documents." Thus, NRA filed opening and reply briefs according to the petitioners' time schedule.[20]

The Court also granted NRA's motion for divided argument, *McDonald v. City of Chicago*, 130 S.Ct. 1317 (2010) (mem.), and NRA presented oral argument separately from the *McDonald* plaintiffs-petitioners. *See McDonald v. City of Chicago*, 2010 WL 710088, *17-28 (Oral Argument) (Mar. 2, 2010).

The Cities contended that the Supreme Court's procedural rule designating NRA as a party did not confer entitlement to attorney fees under § 1988, which they described as an unrelated federal statute. However, court rules designating "parties" apply to § 1988. Even intervenors have been found to be parties for purposes of § 1988 in part because they "appear in the Federal Rules under the general heading of 'Parties,' *see* Fed. R. Civ. P. 24(a) and (b) . . . ." *Shaw v. Hunt*, 154 F.3d 161, 165 (4th Cir. 1998). In *Shaw*, the court awarded fees to intervenors, who participated in argument before the Supreme Court, where their "position on the merits was vindicated." *Id.* at 166. The court concluded: "If recovery under § 1988 is meant to reward those who have undertaken successfully to fulfill the role of a private attorney general, . . . plaintiff-intervenors appear to have been veritable embodiments of that role." *Id.* (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)). There is no question that NRA is a "party" eligible for attorney fees here.

---

[20] *See* Brief for Respondents the National Rifle Association of America, Inc., *et al.*, in Support of Petitioners, 2009 WL 3844394 (Nov. 16, 2009); Reply Brief for Respondents the National Rifle Association of America, Inc., *et al.* in Support of Petitioners, 2010 WL 581625 (Jan. 29, 2010).

## Conclusion

Appellants respectfully request that the Court find that NRA is a "prevailing party" under 42 U.S.C. § 1988, reverse the judgment of the district court, and remand the cases for further proceedings.

Dated: February 14, 2011                                     Respectfully submitted,


By: _____               By: _____
    William N. Howard                               Stephen A. Kolodziej
    FREEBORN & PETERS LLP                           Brenner, Ford, Monroe & Scott, Ltd
    311 South Wacker Drive, Suite 3000              33 North Dearborn Street, Suite 300
    Chicago, Illinois 60606                         Chicago, IL 60602
    Telephone: (312) 360-6415                       Telephone: (312) 781-1970
    Facsimile:  (312) 360-6996                      Facsimile: (312) 781-9202

    Stephen P. Halbrook                             Stephen P. Halbrook
    3925 Chain Bridge Rd., Suite 403                3925 Chain Bridge Rd., Suite 403
    Fairfax, VA   22030                             Fairfax, VA   22030
    Telephone: (703) 359-0938                       Telephone: (703) 359-0938
    Facsimile: (703) 472-6439                       Facsimile: (703) 472-6439

    *Counsel for Appellants:*                       *Counsel for Appellants:*
    *National Rifle Association of*                 *National Rifle Association of*
    *America, Inc., Robert Klein Engler*            *America, Inc., Kathryn Tyler, Van F.*
    *and Dr. Gene A. Reisinger*                     *Welton, and Brett Benson*
    *Case No. 10-3965*                              *Case No. 10-3957*

## Certificate Of Compliance With Fed. R. App. P. 32(A)(7)

I, Stephen A. Kolodziej, hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as it contains 9605 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6), as qualified by Circuit Rule 32(b), as it has been prepared in a 12-point proportionately spaced typeface, Century, in the body and 11-point proportionately spaced typeface, Century, in the footnotes, by using Microsoft Word 2003.

Dated: February 14, 2011

By: _____

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd
33 North Dearborn Street, Suite 300
Chicago, IL 60602
Telephone: (312) 781-1970
Facsimile: (312) 781-9202

## Circuit Rule 31(E)(1) Certification

I, Stephen A. Kolodziej, hereby certify that I have filed electronically, pursuant to Circuit Rule 31(e), versions of this brief and all of the appendix items that are available in non-scanned PDF format. An electronic copy of the brief has been submitted to the Court and to Counsel on a CD that has been checked for viruses.

Dated: February 14, 2011

By: _____

       Stephen A. Kolodziej
       Brenner, Ford, Monroe & Scott, Ltd
       33 North Dearborn Street, Suite 300
       Chicago, IL 60602
       Telephone: (312) 781-1970
       Facsimile: (312) 781-9202

## Circuit Rule 30(d) Statement

I, Stephen A. Kolodziej, certify under Rule 30(d), that all materials required under Circuit Rule 30(a) and (b) are included in the short appendix bound with this brief.

Dated: February 14, 2011.

By: _____

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd
33 North Dearborn Street, Suite 300
Chicago, IL 60602
Telephone: (312) 781-1970
Facsimile: (312) 781-9202

## CERTIFICATE OF SERVICE

The undersigned, a non-attorney, being duly sworn on oath, hereby states that she caused three (3) true and correct copies of **Brief And Required Short Appendix For Plaintiffs-Appellants National Rifle Association,** *et. al.,* together with one (1) CD containing same, to be served upon the parties of record, as shown below, via **MESSENGER**, on the 14th day of **February, 2011.**

Under penalties as provided by law, pursuant to 735 ILCS 5/1-109, I certify that the statement set forth herein is true and correct.

_____
Debra A. O'Rourke
Assistant to William N. Howard
Freeborn & Peters LLP
311 S. Wacker Dr., Suite 3000
Chicago, IL 60606

## SERVICE LIST

Ranjit Hakim
Alexandra E. Shea
Marc R. Kadish
Mayer Brown LLP
71 S. Wacker Dr.
Chicago, IL 60606
*Attys. For Village of Oak Park*

Lance C. Malina
Jacob Henry Karaca
Klein, Thorpe & Jenkins, Ltd.
20 N. Wacker Dr., Suite 1660
Chicago, IL 60606-2903
*Attys. For Village of Oak Park*

Suzanne M. Loose
City of Chicago Law Department
30 N. LaSalle St., Suite 800
Chicago, IL 60602
*Attys. For City of Chicago.*

Mara S. Georges
Corporation Counsel
City of Chicago
121 N. LaSalle St., Suite 600
Chicago, IL 60602
*Atty. For City of Chicago*

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn Street, Suite 300
Chicago, IL 60602
*Atty. For NRA, et al.*

David G. Sigale
Law Firm of Dave G. Sigale, P.C.
739 Roosevelt Rd., Suite 304
Glen Ellyn, IL 60137
*Atty. For McDonald, et al.*

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
*Atty. For McDonald, et al.*