No. 11-1016
(Consolidated with Nos. 10-3957 and 10-3965)

# In the United States Court of Appeals for the Seventh Circuit

OTIS MCDONALD, ET AL.,
                    Plaintiffs-Appellants,
                    v.                          Dist. Ct. No. 08-C-3645
CITY OF CHICAGO,
                    Defendant-Appellee.

---

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ET AL.,
                    Plaintiffs-Appellants,
                    v.                          Dist. Ct. No. 08-C-3696
CITY OF CHICAGO, ET AL.,                        Dist. Ct. No. 08-C-3697
                    Defendants-Appellees.

---

Appeal from a Judgment of the United States District Court
for the Northern District of Illinois
The Hon. Milton I. Shadur, Senior District Judge

---

APPELLANTS' BRIEF AND REQUIRED SHORT APPENDIX

David G. Sigale*                    Alan Gura
Law Firm of David G. Sigale, P.C.   Candice N. Hance
739 Roosevelt Road, Suite 304       Gura & Possessky, PLLC
Glen Ellyn, IL 60137                101 N. Columbus St., Ste. 405
630.452.4547/630.596.4445           Alexandria, VA 22314
*Counsel of Record                  703.835.9085/703.997.7665

# CORPORATE DISCLOSURE STATEMENT
## Fed. R. App. Proc. 26.1, Circuit Rule 26.1

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

>  Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc., Illinois State Rifle Association

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

>  Gura & Possessky, PLLC
>  Law Firm of David G. Sigale, P.C.

(3) If the party or amicus is a corporation:

>  i) Identify all its parent corporations, if any; and
>
>  None.
>
>  ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:
>
>  None.

>  /s/ Alan Gura_____
>  Alan Gura

# TABLE OF CONTENTS

Disclosure Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

Jurisdictional Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      1.   *Pre*-McDonald *Legal Landscape*. . . . . . . . . . . . . . . . . . . . 8

      2.   *Defendant's Arguments Before the Supreme Court*. . . . . . . 10

      3.   *The Supreme Court's Opinion*. . . . . . . . . . . . . . . . . . . . . 11

      4.   *Defendant's Reaction to the Supreme Court Opinion*. . . . . 13

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    I.   THE STANDARD OF REVIEW IN THIS CASE IS *DE NOVO*. . . . . 18

    II.   CIVIL RIGHTS PLAINTIFFS OBTAINING A JUDICIALLY
        SANCTIONED CHANGE IN THE LEGAL RELATIONSHIP
        AMONG THE PARTIES ARE ENTITLED TO RECOVER
        ATTORNEY FEES AND EXPENSES. . . . . . . . . . . . . . . . . . . . . . 19

III.    THE SUPREME COURT'S JUDGMENT IN THIS
CASE DRAMATICALLY ALTERED THE LEGAL
RELATIONSHIP AMONG THE PARTIES BY
MANDATING THAT DEFENDANT RESPECT PLAINTIFFS'
FUNDAMENTAL SECOND AMENDMENT RIGHTS.. . . . . . . . . . . 24

IV.    THE SUPREME COURT DETERMINED THAT CHICAGO'S
HANDGUN BAN WAS UNCONSTITUTIONAL... . . . . . . . . . . . . 30

V.    EVEN IF DEFENDANT'S REPEAL COULD BE DESCRIBED
AS VOLUNTARY, PLAINTIFFS WOULD NONETHELESS BE
ENTITLED TO SECTION 1988 RECOVERY FOR HAVING
PROMPTED DEFENDANT'S CONDUCT.. . . . . . . . . . . . . . . . 35

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

# TABLE OF AUTHORITIES

## Cases

*Andretti* v. *Borla Performance Indus., Inc.*,
  426 F.3d 824 (6th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Baird* v. *Renbarger*,
  576 F.3d 340 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Bingham* v. *New Berlin Sch. Dist.*,
  550 F.3d 601 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Buckhannon Board & Care Home, Inc.* v. *West Virginia Department of
  Health & Human Resources*,
      532 U.S. 598 (2001). . . . . . . . . . . . 4, 16, 22, 23, 29, 35, 38, 39

*Christiansburg Garment Co.* v. *EEOC*,
  434 U.S. 412 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Citizens for Better Forestry* v. *United States Dep't of Agric.*,
  567 F.3d 1128 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*City of Riverside* v. *Rivera*,
  477 U.S. 561 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Conn. Nat'l Bank* v. *Germain*,
  503 U.S. 249 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Cooter & Gell* v. *Hartmarx Corp.*,
  496 U.S. 384 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Dattner* v. *Conagra Foods, Inc.*,
  458 F.3d 98 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*District of Columbia* v. *Heller*,
    128 S. Ct. 2783 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11

*Dupuy* v. *Samuels*,
    423 F.3d 714 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 33

*Farrar* v. *Hobby*,
    506 U.S. 103 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25, 28

*Friends of Earth, Inc.* v. *Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Greenlaw* v. *United States*,
    128 S. Ct. 2559 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hardt* v. *Reliance Std. Life Ins. Co.*,
    130 S. Ct. 2149 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Institutionalized Juveniles* v. *Secretary of Public Welfare*,
    758 F.2d 897 (3d Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Kay* v. *Ehrler*,
    499 U.S. 432 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Manildra Milling Corp.* v. *Ogilvie Mills, Inc.*,
    76 F.3d 1178 (Fed. Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Marek* v. *Chesney*,
    473 U.S. 1 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Miles* v. *California*,
    320 F.3d 986 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Palmetto Props., Inc.* v. *County of DuPage*,
    375 F.3d 542 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . 19, 31, 32, 35

*Petersen* v. *Gibson*,
    372 F.3d 862 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Rhodes* v. *Stewart*,
    488 U.S. 1 (1988) (per curiam). . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Riviera Distributors, Inc.* v. *Jones*,
    517 F.3d 926 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Rodriguez de Quijas* v. *Shearson/Am. Express, Inc.*,
    490 U.S. 477 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Sole* v. *Wyner*,
    551 U.S. 74 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Southworth* v. *Board of Regents*,
    376 F.3d 757 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Stomper* v. *Amalgamated Transit Union, Local 241*,
    27 F.3d 316 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Studiengesellschaft Kohle mbH* v. *Eastman Kodak Co.*,
    713 F.2d 128 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Tex. State Teachers Ass'n* v. *Garland Indep. Sch. Dist.*,
    489 U.S. 782 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Tunison* v. *Continental Airlines Corp., Inc.*,
    162 F.3d 1187 (D.C. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States* v. *Skoien*,
    614 F.3d 638 (7th Cir. 2010) (en banc). . . . . . . . . . . . . . . . . . . . . 9

*Young* v. *City of Chicago*,
    202 F.3d 1000 (7th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . 33, 34

*Zessar* v. *Keith*,
536 F.3d 788 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Zinn* v. *Shalala*,
35 F.3d 273 (7th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Statutes, Regulations, and Rules

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1988. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 21

Fed. R. Civ. Proc. 54(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

N.D. Ill. Local Rule 54.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

Sup. Ct. R. 43.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Sup. Ct. R. 43.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 29

Other Authorities

Catherine R. Albiston & Laura Beth Nielsen,
*The Procedural Attack on Civil Rights: The Empirical*
*Reality of* Buckhannon *for the Private Attorney General*,
54 UCLA L. REV. 1087 (June 2007). . . . . . . . . . . . . . . . . . . . 38-41

H.R. Rep. No. 1558, 94th Cong., 2d Sess. 1 (1976). . . . . . . . . . . 20, 22, 37

Journal of Proceedings, July 2, 2010, available at
      http://www.chicityclerk.com/journals/2010/july2_2010/
      070210SP.pdf (last visited Feb. 12, 2011). . . . . . . . . . . . . . . . . . . . 14

Mayoral Press Release, *Mayor Daley Says City's New Ordinance*
      *Addresses Supreme Court Ruling*, July 2, 2010,
      http://mayor.cityofchicago.org/mayor/en/
      press_room/press_releases/2010/july_2010/
      0702_supreme_court.html (last visited February 12, 2011). . . . . 15

S. Rep. 1011, 94th Cong., 2d Sess. 1 (1976). . . . . . . . . . . . . . . . 20, 23, 37

Statement of Mayor Daley,
      Special Meeting of the Chicago City Council, July 2, 2010,
      *available at* http://ww.chicityclerk.com/
            City_Council_Video/2010_ Video _ Meetings/
            July2 _2010/  (last visited Jan. 31, 2010) . . . . . . . . . . . . . 15

Webster's Unabridged Dictionary (2d ed. 1979). . . . . . . . . . . . . . . . 22

## APPELLANTS' BRIEF

## JURISDICTIONAL STATEMENT

The District Court, which had subject-matter jurisdiction over this case under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1983, was empowered to hear Plaintiffs' motion for attorney fees and expenses pursuant to 42 U.S.C. § 1988. "It is well established that a federal court may consider collateral issues after an action is no longer pending," which include motions for costs or attorneys' fees. *Cooter & Gell* v. *Hartmarx Corp.*, 496 U.S. 384, 395 (1990).

This Court has jurisdiction under 28 U.S.C. § 1291. On January 3, 2011, the District Court denied Plaintiffs-Appellants' ("Plaintiffs") request for attorneys' fees and expenses. Short Appendix ("SA") 14-18. Plaintiffs filed a Notice of Appeal on January 4, 2011. Separate Appendix ("App.") 130. The District Court supplemented its opinion on January 7, 2011. SA 19-22.

Plaintiff Second Amendment Foundation, Inc., is a non-profit corporation, organized under the laws of Washington with its principal place of business in Bellevue, Washington. Plaintiff Illinois State Rifle

Association is a non-profit corporation, organized under the laws of Illinois with its principal place of business in Chatsworth, Illinois.

## STATEMENT OF ISSUES

1. Did the Supreme Court's opinion in this case holding that Defendant is bound to respect Plaintiffs' fundamental Second Amendment rights alter the legal relationship among the parties?

2. As the Supreme Court declared that the Second Amendment is "fully applicable" to Defendant, and rejected Defendant's argument that it should be able to ban handguns notwithstanding the Second Amendment's application, could Defendant legally maintain a handgun ban notwithstanding the Supreme Court's opinion?

3. Do Plaintiffs prevail within the meaning of 42 U.S.C. § 1988 when their litigation prompts a Defendant to voluntarily or unilaterally satisfy Plaintiffs' demands?

## STATEMENT OF THE CASE

As the Court may recall, the District Court dismissed Plaintiffs' constitutional challenge to various City of Chicago firearm ordinances, holding that the Second Amendment did not apply to the States. From this Court's affirmation of the District Court's decision, Plaintiffs

successfully petitioned the United States Supreme Court for certiorari, and then prevailed before the Supreme Court on the merits of their claim.

The Supreme Court held that the Second Amendment is "fully applicable" to the States by operation of the Fourteenth Amendment, App. 5, 31, 55. The Supreme Court also made clear that the Second Amendment forbids the banning of handguns, rejecting Appellee-Defendant's argument ("Defendant") that handgun bans could be enacted notwithstanding the Second Amendment's application. App. 13, 24, 25, 31, 32, 55. The case was remanded to this Court for further proceedings. App. 25.

The day after Plaintiffs obtained a reversal of this Court's judgment and a remand of their case, the Supreme Court granted the *National Rifle Association* plaintiffs' certiorari petition in the related case, and remanded that matter to this Court for further proceedings as well.

On August 25, 2010, this Court held that the cases had been mooted by Defendants' intervening alteration of their firearms ordinances, and remanded the matters to the District Court with instructions to dismiss

the case. This Court offered that Plaintiffs could file motions for attorneys' fees, reserving judgment on whether Plaintiffs were entitled to fees. Order, Aug. 25, 2010. Although no party had raised the issue, this Court volunteered, *sua sponte*, the question of whether the fee motions might be barred by the rule of *Buckhannon Board & Care Home, Inc.* v. *West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). *Id.*[1]

Thereafter, the procedural course of the related cases diverged. The divergence is significant in its own right, and explains how the two sets of Plaintiffs came to raise arguments that only somewhat overlap.

The District Court maintains a comprehensive set of procedures governing the presentation of attorney fee motions, set forth in N.D. Ill. Local Rule 54.3.  The Rule requires counsel to meet and confer, exchange requested discovery, and sets forth a timetable for generating position statements regarding fee motions, culminating in a 91-day deadline for the filing of fee motions. Shortly after the Supreme Court's

---

[1] The City offered only that the case "should be remanded to the District Court for further proceedings, including the plaintiffs' claims for attorney's fees." Def. Circuit Rule 54 Statement, Aug. 23, 2010 at 4.

opinion, *McDonald* Plaintiffs' counsel began to meet and confer with Defendant's attorneys regarding the attorney fees and expenses issue. App. 155. *McDonald* Plaintiffs repeatedly provided requested information, and were advised that the City would respond with a settlement position of its own. App. 155.

Notwithstanding repeated requests, Defendants made no response, offering only that they would respond at some later time. App. 156. Finally, with the parties' deadline for preparing a Joint Fee Statement approaching, Defendant revealed to *McDonald* Plaintiffs that the District Court had already ordered briefing on the prevailing party issue—in the related case. *Id.* Defendant did not wish to discuss the attorney fee issue further until after a particular time, which *McDonald* Plaintiffs discovered was immediately following a hearing the District Court had set to review the prevailing party issue in the related case. App. 156, 157.

Despite the fact that the cases had been related, and notwithstanding the absence of any order de-relating the cases, *McDonald* Plaintiffs were provided no notice—not by the *NRA*

Plaintiffs; not by the Defendant City, which had insisted it would continue the settlement negotiations; and notably, not by the District Court—that the District Court was entertaining the issue of whether the Supreme Court opinion *McDonald* Plaintiffs obtained, in a case bearing their names, altered the legal relationship among the parties such that attorney fees could be awarded under Section 1988. App. 157.

*McDonald* Plaintiffs immediately filed a motion in the *NRA* case seeking the right to be heard on the attorney fee issue, and requesting that the District Court not rule on the matter until *McDonald* Plaintiffs had an opportunity to participate. Abeyance was requested only through the Plaintiffs' original deadline to file a motion for attorneys' fees. App. 149.[2]

The District Court's response to *McDonald* counsel's request to be heard included, "Are you – you think you are a better lawyer than they are?" App. 164; *contra Greenlaw* v. *United States*, 128 S. Ct. 2559, 2564 (2008) ("[O]ur adversary system is designed around the premise that

---

[2] The order to brief the prevailing party issue was prompted by *NRA* Plaintiffs' request for an extension of time and the setting of a discovery schedule regarding their attorney fee motion.

the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." ). The following day, prior to the presentation of *McDonald* Plaintiffs' motion to hold the matter in abeyance and twenty days before the attorney fee motion deadline that *NRA* Plaintiffs had sought to extend, the District Court entered an opinion and order in the *NRA* case providing, *inter alia*, "the Supreme Court's decision in *McDonald*—which, it will be remembered, resulted in no judicial implementation on remand—did not meet the requirements of Section 1988 under *Buckhannon*." SA 8.

Presented with this *fait accompli*, *McDonald* Plaintiffs nonetheless filed their own motion for instructions regarding the prevailing party issue, pursuant to N.D. Ill. Local Rule 54.3(g). Had the District Court entertained full and equal participation by all parties in determining the prevailing party issue, the Plaintiffs might have better coordinated and consolidated their various arguments.

As it were, the *McDonald* Plaintiffs adopted the *NRA* Plaintiffs' position, but also raised three points apparently not raised by *NRA*: first, the Supreme Court's holding applying the Second Amendment to

the States altered the legal relationship between the parties; second, the Supreme Court's opinion did not merely prompt Defendant to repeal its handgun ban, but actually decided, specifically, that handgun ban's unconstitutionality; and finally, with no expectation other than to preserve the issue for possible Supreme Court review, *McDonald* Plaintiffs asserted that *Buckhannon* was wrongly decided.

On January 3, 2011, the District Court barred the filing of *McDonald* Plaintiffs' Section 1988 motion by holding, under its earlier reasoning, that the Supreme Court's opinion in this case did not satisfy *Buckhannon*'s prevailing party definition. SA 14. *McDonald* Plaintiffs timely noticed their appeal. App. 130. Three days later, the District Court treated the two cases as related by entering one opinion for both, supplementing its reasoning. SA 19.

## STATEMENT OF FACTS

1. *Pre*-McDonald *Legal Landscape*.

In 2008, the Supreme Court held that the Second Amendment secured an individual right to keep and bear arms, unconnected with militia service. *District of Columbia* v. *Heller*, 128 S. Ct. 2783 (2008). In

the course of so holding, the Supreme Court struck down Washington, D.C.'s handgun ban. "Whatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid." *Id.* at 2818. *Heller* held that "the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense." *United States* v. *Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc).

*Heller* did not, however, directly hold that the Second Amendment applied as against the States by operation of the Fourteenth Amendment, "a question not presented in this case." *Heller*, 128 S.Ct. at 2813 n. 23. Seeking to resolve this question, *McDonald* Plaintiffs initiated this litigation challenging various Chicago firearms ordinances. Among other provisions, the Complaint challenged the constitutionality of Chicago's handgun ban, which functioned identically to that struck down in *Heller* by mandating firearm registration but forbidding the registration of handguns. App. 140-41. Plaintiffs' prayer for relief specifically demanded declaratory relief consistent with the injunction. App. 143.

2. *Defendant's Arguments Before the Supreme Court.*

Following losses in the District Court and before this Court, *McDonald* Plaintiffs successfully petitioned the Supreme Court for certiorari. In briefing its case, Defendant acknowledged that the Supreme Court would be passing upon the handgun ban's constitutionality. Defendant claimed that "[*McDonald*] Petitioners and NRA both limit their argument in this Court to handgun bans," but then noted that "both [*McDonald* Petitioners and NRA] raised other issues." App. 147 n.27. Describing these "other issues," Chicago concluded, "[i]f the judgment is reversed, the lower courts should be directed to address those claims in the first instance." App. 148 n. 27.

Accordingly, Defendant differentiated between the handgun ban, and the "other issues," and acknowledged that there would be no need for the lower courts to address the handgun ban "in the first instance" if the Court, in fact, were to fully apply the Second Amendment to it.

Seeking to avoid that result, Defendant did not merely argue that the Second Amendment was inapplicable to the States via the Fourteenth Amendment. Defendant addressed, head on, the

constitutionality of the handgun ban itself. It offered that "handgun bans . . . enhanc[e]. . . a system of ordered liberty," App. 145, and directly attacked *Heller*'s handgun ban holding: "Features that cause handguns to be regarded by many as the 'quintessential self-defense weapon' (*Heller*, 128 S. Ct. at 2818) also make them attractive for criminal purposes, including homicide, suicide, and other violent crimes." App. 146.

3. *The Supreme Court's Opinion.*

The Supreme Court rejected all arguments that the handgun ban was constitutional. The Court recounted that in *Heller*, "we found that this right [the Second Amendment] applies to handguns." App. 13; App. 24 ("[i]n *Heller*, we held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense"); *see also* App. 31-32 (Second Amendment right against home handgun ban); App. 55 (use of handguns against mob violence); App. 68 ("the gravamen of this complaint is plainly an appeal to keep a handgun or other firearm of one's choosing in the home.") (Stevens, J., dissenting).

The Supreme Court then found the Second Amendment "fully applicable" to Defendant. App. 5, 31, 55.

Rejecting the argument that the Second Amendment does not secure the rights of minorities and politically-disfavored individuals, the Supreme Court added:

> If, as petitioners believe, their safety and the safety of other law-abiding members of the community would be enhanced by the possession of handguns in the home for self-defense, then the Second Amendment right protects the rights of minorities and other residents of high-crime areas whose needs are not being met by elected public officials.

App. 24.

And finally, the Supreme Court specifically rejected Defendant's claim that it should be allowed to maintain a handgun ban:

> Municipal respondents . . . urge us to allow state and local governments to enact any gun control law that they deem to be reasonable, *including a complete ban on the possession of handguns in the home for self-defense*. . . . Unless we turn back the clock or adopt a special incorporation test applicable only to the Second Amendment, municipal respondents' argument must be rejected. Under our precedents, if a Bill of Rights guarantee is fundamental from an American perspective, then, unless stare decisis counsels otherwise, that guarantee is *fully binding* on the States . . .

App. 21 (emphasis added).

4. *Defendant's Reaction to the Supreme Court Opinion.*

On June 18, 2010, ten days before the Supreme Court issued its opinion, Defendant's Corporation Counsel Mara Georges testified that "if the Supreme Court were to find incorporation of the Second Amendment, the city's handgun ban would be invalidated. As the Court's decision in Heller has already found a right to possess a handgun in the home for self-defense purposes." App. 103-04.

The day after the Court's decision, Ms. Georges testified, "[T]he section of our ordinance that prohibits the registration of handguns is unenforceable." App. 108.

> It is clear that such a provision [handgun ban] will ultimately be struck down based on the Supreme Court's decision in the *Heller* case, in which the Court ruled that Washington, DC's handgun ban violated the Second Amendment. Therefore it is important that we continue to work to craft a new ordinance that . . . complies with the Court's ruling in this case.

App. 108.

The City Council convened hearings that "contemplated the impact of the United States Supreme Court's ruling—*McDonald* decision on the City's handgun ban and the future policies the City can enact to address gun violence." App. 110-11. The hearings culminated in a new

comprehensive firearms ordinance. "This was an ordinance drafted in response to the Supreme Court decision earlier this week in the *McDonald* case." App. 115. Asserting compliance with the Supreme Court's decision in this case was important to Defendant, Ms. Georges testified, "we are confident that this ordinance is consistent with the Supreme Court's rulings in the *Heller* and *McDonald* decisions." App. 122-23; *see also* Journal of Proceedings, July 2, 2010, at 96237, available at http://www.chicityclerk.com/journals/2010/july2_2010/ 070210SP.pdf (last visited Feb. 12, 2011) (ordinance enacted to be "in compliance with the rulings of the United States Supreme Court").

"Consistent with the Supreme Court's ruling, we are allowing the possession of handguns in a limited circumstance." App. 117. Explaining this change in the law, Corporation Counsel repeatedly testified that the handgun ban was unenforceable and indefensible:

> [T]he Court of Appeals may ask us . . . in light of the decision from the Supreme Court in *McDonald*, saying you have a right to a handgun in your home for self-defense, City, how do you defend your handgun ban? And at that point it really becomes impossible to defend it.

App. 129.

What the Supreme Court has said is that the Second Amendment applies to the City, and the Second Amendment guarantees a right to a handgun in the home for self-defense.  So in other words, a ban by the City on handguns will not withstand the *McDonald* decision.

*Id.*

Mayor Daley also acknowledged that "[t]he Court's June 28 ruling effectively overturned Chicago's previous handgun ban."  Mayoral Press Release, *Mayor Daley Says City's New Ordinance Addresses Supreme Court Ruling*, July 2, 2010, http://mayor.cityofchicago.org/mayor/en/ press_room/press_releases/2010/july_2010/0702_supreme_court.html (last visited February 12, 2011). *See also* Statement of Mayor Daley, Special Meeting of the Chicago City Council, July 2, 2010, *available at* http://ww.chicityclerk.com/ City_Council_Video/2010_ Video _ Meetings/July2 _2010/ (last visited Jan. 31, 2010) (stating during the session that repealed the handgun ban, "We're here because the Supreme Court decision was rendered against the City of Chicago."); *id.* (various statements of city aldermen regarding "the Supreme Court justices who voted to strike down our handgun laws" and "the dictates of our Supreme Court," which prompted the City's response "to what they have told us we can and can't do").

## SUMMARY OF ARGUMENT

*McDonald* Plaintiffs obtained an historic, landmark Supreme Court judgment mandating compliance with a fundamental constitutional right by all levels of government throughout the United States. To claim that *McDonald* Plaintiffs somehow did not "prevail" in this litigation defies not only common sense, but the unambiguous command of precedent. By any measure, the Supreme Court's opinion in this case is very much "the stuff of which legal victories are made." *Buckhannon*, 532 U.S. at 605 (citation omitted). Section 1988 liability plainly attaches.

To be sure, *Buckhannon* wrongly narrowed the availability of attorney fee recovery in many cases by eliminating the so-called "catalyst theory" previously followed in almost all circuits, including this one. *See, e.g.*, *Zinn* v. *Shalala*, 35 F.3d 273, 274 (7th Cir. 1994). Since *Buckhannon*, defendants can resist meritorious civil rights litigation without fear of paying attorney fees so long as they unilaterally come into compliance at some point prior to a judicially-sanctioned change in the parties' legal relationship.

But *Buckhannon* did not erase Section 1988 from the books, nor did it completely reverse the Supreme Court's body of precedent relating to the provision. The decision came with its own limits—including at least one bright-line rule: once a court alters the legal relationship among the parties, a losing government must pay for having forced litigation to that point.

Accordingly, while *McDonald* Plaintiffs would have recovered their Section 1988 fees and expenses under the late catalyst theory, they are also entitled to a Section 1988 recovery for the simple reason that they obtained a judicially-sanctioned, profound change in the legal relationship among the parties. There is no need to examine the connection between *McDonald* Plaintiffs' Supreme Court victory and Defendant's conduct in response, because Plaintiffs' status as prevailing parties is grounded in the Supreme Court's decision, not in any conduct of Defendant, none of which, in any event, was voluntary.

The recognition that individuals, including Plaintiffs, enjoy a fundamental Second Amendment right as against the States profoundly altered the legal relationship among the parties, in the course of a

judicial document confirming Plaintiffs' status as prevailing parties. This declaration, standing alone, will forever impact Defendant's behavior.

Moreover, the Supreme Court's judgment itself declared, finally, that Defendant's handgun ban was unconstitutional, and expressly bound Defendant to avoid infringing its citizens' Second Amendment rights. This decision caused Defendant's involuntary repeal of its handgun ban and effected a material alteration in Defendant's legal relationship with Plaintiffs.

These changes confirm *McDonald* Plaintiffs' entitlement to Section 1988 recovery under existing precedent.[3]

## ARGUMENT

### I. THE STANDARD OF REVIEW IN THIS CASE IS *DE NOVO*.

Because the District Court's denial of attorneys' fees was based upon an interpretation of the term "prevailing party," a "purely legal conclusion[]," this Court has *de novo* review of the matter. *Dupuy* v.

---

[3] In the interest of being thorough, in the event this case were to return before the Supreme Court, *McDonald* Plaintiffs also reserve their argument that *Buckhannon* is simply wrong.

*Samuels*, 423 F.3d 714, 718 (7th Cir. 2005) (quoting *Palmetto Props., Inc.* v. *County of DuPage*, 375 F.3d 542, 547 (7th Cir. 2004)). "[F]actual matters underlying the fee award, such as the fee amount and a party's ultimate litigation goals," are reviewed for clear error. *Dupuy*, 423 F.3d at 718 (quoting *Palmetto Props.*, 375 F.3d at 547).

II.  CIVIL RIGHTS PLAINTIFFS OBTAINING A JUDICIALLY SANCTIONED CHANGE IN THE LEGAL RELATIONSHIP AMONG THE PARTIES ARE ENTITLED TO RECOVER ATTORNEY FEES AND EXPENSES.

Over 100 federal fee-shifting statutes provide successful plaintiffs attorney fee reimbursement. *See Marek* v. *Chesney*, 473 U.S. 1, 43-51 (1985) (listing federal statutes authorizing awards of attorneys' fees). Congress' logic in promulgating fee-shifting provisions like Section 1988 is clear. Sentimental idealism aside, the law will not be effectively enforced in our market economy unless someone pays attorneys their market rates to enforce it. The House and Senate Reports regarding Section 1988 observed as much plainly.

> If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases.

S. Rep. 1011, 94th Cong., 2d Sess. 5 (1976). "The effective enforcement of Federal civil rights statutes depends largely on the efforts of private citizens." H.R. Rep. No. 1558, 94th Cong., 2d Sess. 1 (1976).

> The purpose and effect of S. 2278 are simple—it is designed to allow courts to provide the familiar remedy of reasonable counsel fees to prevailing parties in suits to enforce the civil rights acts which Congress has passed since 1866. All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

S. Rep. No. 1011, *supra*, at 2.[4]

"If private citizens are to be able to assert their civil rights . . . then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." *Kay* v. *Ehrler*, 499 U.S. 432, 436 n.8 (1991) (quoting S. Rep. No. 1011, *supra*, at 2). Particularly in cases where only prospective relief is sought or "the amount of damages at stake would not otherwise make it feasible [for plaintiffs to enforce civil

---

[4] In the absence of a private enforcement mechanism for federal civil rights, the federal government would be expected to take on a greater role of enforcing these laws, causing federal taxpayers to effectively subsidize the bad behavior of local governmental actors (to say nothing of the relative inefficiency of a governmental substitute for a market-provided service).

rights laws]," fee and expense recovery is imperative because no damage award can offset the financial loss to the plaintiff. *See City of Riverside* v. *Rivera*, 477 U.S. 561, 577 (1986).

Fees to cover the cost of law enforcement are most equitably collected from violators, a principle vindicated in our legal system's pervasive imposition of court costs against violators.

> [T]he plaintiff is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority . . . when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law.

*Christiansburg Garment Co.* v. *EEOC*, 434 U.S. 412, 418 (1978) (citation and internal quotation marks omitted).

Private enforcement mechanisms may not be perfect, to be sure—but Congress was entitled to choose such a system for the enforcement of basic civil rights, and the courts must implement the system Congress designed in a realistic manner faithful to its design, as reflected in the plain, unambiguous text of 42 U.S.C. § 1988.

"[W]e begin by analyzing the statutory language, assuming that the ordinary meaning of that language accurately expresses the legislative purpose. We must enforce plain and unambiguous statutory language

according to its terms." *Hardt* v. *Reliance Std. Life Ins. Co.*, 130 S. Ct. 2149, 2156 (2010) (citations and internal punctuation marks omitted). A successful civil rights plaintiff "cross[es] the 'statutory threshold'" for recovering attorney fees and expenses by coming within Section 1988's definition of a "prevailing party." *Tex. State Teachers Ass'n* v. *Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989). "Prevail" means "to gain the victory." WEBSTER'S UNABRIDGED DICTIONARY 1426 (2d ed. 1979). Attorney fees and expenses are recovered in cases comprising "the stuff of which legal victories are made." *Buckhannon*, 532 U.S. at 605 (citations omitted).

"The touchstone of the prevailing party inquiry . . . is 'the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.'" *Sole* v. *Wyner*, 551 U.S. 74, 82 (2007) (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 792-793). "[T]he phrase 'prevailing party' is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits." H. R. Rep. 1558, *supra*, at 7. "[P]arties may be considered to

have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S. Rep. No. 1011, *supra,* at 5.

Accordingly, "[u]nder our generous formulation of the term, plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar* v. *Hobby*, 506 U.S. 103, 109 (1992) (citations and internal quotation marks omitted). "[A] 'prevailing party' is one who has been awarded some relief by the court . . ." *Buckhannon*, 532 U.S. at 603. Judgments on the merits, including nominal awards, and court-ordered consent decrees qualify as prevailing, *id.* at 604.

But this list is not exhaustive. "[T]he *Buckhannon* Court did not have reason to address how formal a judgment must be." *Citizens for Better Forestry* v. *United States Dep't of Agric.*, 567 F.3d 1128, 1131 (9th Cir. 2009). A declaratory judgment, for example, "will constitute relief, for purposes of Section 1988, if, and only if, it affects the behavior of the defendant toward the plaintiff." *Rhodes* v. *Stewart*, 488 U.S. 1, 4 (1988) (per curiam). And "[c]ases will sometimes arise where, despite there

being no final judgment or consent decree, the legal relationship of the parties will be changed due to a defendant's change in conduct brought about by a judicial act exhibiting sufficient finality." *Zessar* v. *Keith*, 536 F.3d 788, 798 (7th Cir. 2008).

Applying these principles, it becomes readily apparent that *McDonald* Plaintiffs prevailed in multiple ways.

III.    THE SUPREME COURT'S JUDGMENT IN THIS CASE DRAMATICALLY ALTERED THE LEGAL RELATIONSHIP AMONG THE PARTIES BY MANDATING THAT DEFENDANT RESPECT PLAINTIFFS' FUNDAMENTAL SECOND AMENDMENT RIGHTS.

The Supreme Court does not issue advisory, inconsequential opinions. Its opinion in this case was not a mere positive statement of law in the course of a losing case for the Plaintiffs, or a moral victory that did not benefit the Plaintiffs at the time it was issued. Plaintiffs, along with every individual in America today, benefit from the Supreme Court's *McDonald* opinion. As of 10:00 a.m. Eastern Time on June 28, 2010, a new constitutional order respecting a fundamental enumerated right prevailed throughout the Nation.

This very meaningful and profound alteration in the legal relationship between the people of the United States and their State

and local governments was precisely the *McDonald* Plaintiffs' litigation goal—far more critical than the elimination of the handgun ban. Obtaining judicial protection of Second Amendment rights against State and local officials—including, in particular, against Defendant—constitutes "succe[ss] on [a] significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar*, 506 U.S. at 109. It constitutes, by any measure, a material alteration in the legal relationship among the parties, bearing the Supreme Court's imprimatur.

*McDonald* Plaintiffs obtained the highest form of the declaratory relief sought in their complaint. As the record indicates, the Supreme Court's opinion forced the City to rewrite its entire firearms ordinance in a manner consistent with the new legal reality. Plaintiffs disagree that the City fully succeeded in conforming its laws to the Second Amendment's requirements, but the record is replete with acknowledgments that the Supreme Court's opinion regarding application of the Second Amendment prompted Defendant to change

its behavior. After all, the new ordinance was "drafted in response to the Supreme Court decision . . . in the *McDonald* case." App. 115.

And in testifying that the handgun ban was "unenforceable," App. 108, "impossible to defend," App. 129, and "will not withstand the *McDonald* decision," *id.*, Corporation Counsel conceded that any qualified immunity that Defendant might have previously been afforded in enforcing its handgun ban evaporated with the Supreme Court's ruling. *See, e.g.*, *Baird* v. *Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009) (holding that qualified immunity does not attach where a clearly established constitutional right is violated by the government).

The Supreme Court's optional decision to award *McDonald* Plaintiffs costs confirms that they "prevailed."  "If the Court reverses or vacates a judgment, the respondent or appellee shall pay costs unless the Court otherwise orders." Sup. Ct. R. 43.2. "When costs are allowed in this Court, the Clerk will insert an itemization of the costs in the body of the mandate or judgment sent to the court below. The *prevailing side* may not submit a bill of costs." Sup. Ct. R. 43.6 (emphasis added).

The "prevailing side" referred to by Sup. Ct. R. 43.6 would be *McDonald* Plaintiffs, who recovered costs inserted by the Clerk. App. 97, 98. Of course, the "prevailing side" does not ordinarily recover attorney fees, but that is a function of the common law rule to which Section 1988 creates a specific exception. If a party "prevails," it recovers costs, and if it otherwise qualifies for attorney fee recovery under some statutory mechanism, then it recovers attorney fees as well. But the fact that most "prevailing" parties have no avenue for fee recovery does not alter the definition of "prevailing," nor does it alter the fact that an award of costs is reserved for "prevailing" parties.

This Court has suggested, but did not decide, that "prevailing" might contain a different meaning with respect to costs than it does with respect to fees. *Petersen* v. *Gibson*, 372 F.3d 862, 867-68 (7th Cir. 2004). But *Buckhannon* "did not suggest—and there is no reason to conclude—that the distinction [between treatment of costs and fees] affects the meaning of the separate term 'prevailing party.'" *Dattner* v. *Conagra Foods, Inc.*, 458 F.3d 98,101 (2d Cir. 2006). At least seven circuits see no such distinction. "[I]n general, a litigant who is a

prevailing party for purposes of attorney's fees is also the prevailing party for purposes of costs." *Id.* (citing *Tunison* v. *Continental Airlines Corp., Inc.*, 162 F.3d 1187, 1189-90 (D.C. Cir. 1998); *Manildra Milling Corp.* v. *Ogilvie Mills, Inc.*, 76 F.3d 1178, 1180 n.1 (Fed. Cir. 1996); *Farrar*, 506 U.S. at 119-20 (O'Connor, J., concurring)); *see also Andretti* v. *Borla Performance Indus., Inc.*, 426 F.3d 824, 835-36 (6th Cir. 2005); *Miles* v. *California*, 320 F.3d 986, 989 (9th Cir. 2003); *Institutionalized Juveniles* v. *Secretary of Public Welfare*, 758 F.2d 897, 926 (3d Cir. 1985); *Studiengesellschaft Kohle mbH* v. *Eastman Kodak Co.*, 713 F.2d 128, 132 (5th Cir. 1983); *see also Riviera Distributors, Inc.* v. *Jones*, 517 F.3d 926, 928 (7th Cir. 2008) (awarding attorney fees in copyright litigation to party that obtained costs, as "[o]nly the prevailing party is entitled to costs.").

The Supreme Court could have denied Plaintiffs their costs, Sup. Ct. R. 43.2, and had it done so, Defendants would have a strong argument that Plaintiffs did not prevail, as indicated by the failure to obtain the hallmark of a prevailing party. But the Court chose to award costs, thus choosing to treat Plaintiffs as "prevailing" parties. That such a

determination happens to carry consequences under Section 1988 in this case does not mean that the word "prevailing" means two completely different things in Section 1988 and in cost provisions such as Sup. Ct. R. 43.6 and Fed. R. Civ. Proc. 54(d).

Respectfully, the notion that *McDonald* Plaintiffs did not prevail before the Supreme Court in obtaining the Second Amendment's application as against the States is not credible. It is, to say the least, in severe tension with the manner in which Americans understand the word "prevail." Moreover, it is an outcome subversive of Congressional purpose in enacting the law, as it would dissuade attorneys from seeking to vindicate civil rights in far less ambitious, yet critically important ways.

Only the most strained, unnatural twisting of precedent might distill a holding that the Supreme Court's recognition of a fundamental constitutional right is not "the stuff of which legal victories are made." *Buckhannon*, 532 U.S. at 605 (citations omitted). But

> We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.

*Conn. Nat'l Bank* v. *Germain*, 503 U.S. 249, 253-254 (1992) (citations and internal quotation marks omitted).

*McDonald* Plaintiffs changed constitutional history. That much is plainly within the meaning of "prevailing" under Section 1988.

## IV. THE SUPREME COURT DETERMINED THAT CHICAGO'S HANDGUN BAN WAS UNCONSTITUTIONAL.

For the reasons offered *supra*, *McDonald* Plaintiffs agree with and adopt *NRA*'s position that Defendant's repeal of the handgun ban was involuntary. But it understates matters to suggest that the repeal of the handgun ban was merely the inexorable result of a process set in motion by the Supreme Court's decision. The Supreme Court's decision in this case itself struck down the handgun ban.

The Supreme Court reiterated that the Second Amendment forbade handgun bans, and applied the Second Amendment "fully" against Defendant. In so doing, the Supreme Court rejected Defendant's plea to administer a diluted form of Second Amendment rights that would tolerate handgun bans. And the Supreme Court acknowledged that the Second Amendment secures the rights of disadvantaged people by securing the right to possess handguns.

For its part, Defendant distinguished the handgun ban from the other laws challenged by Plaintiffs, and asked the Court, in the event of a loss, only for the ability to defend those other laws. Defendant could not have more clearly foreseen the handgun ban's judicial demise.

And, of course, it again bears repeating that in the wake of the Supreme Court's opinion, the City's Corporation Counsel testified, repeatedly, that a judgment specifically proscribing the handgun ban was an imminent technicality, the law already being unenforceable. The Mayor bluntly acknowledged the handgun ban had been struck down by the Court. Absent from the record is any hint that the City reconsidered the handgun ban as a matter of public policy.

Reviewing the Supreme Court's opinion, and Defendant's many frank and explicit descriptions of what it portended for the handgun ban, it is simply frivolous to suggest that the handgun ban's constitutionality could have been defended following the Supreme Court's opinion, or that its repeal was not directly compelled by the Supreme Court.

The current situation is indistinguishable from that presented in *Palmetto Properties*, *supra*, 375 F.3d 542. In *Palmetto,* a party prevailed

where it obtained a partial judgment that the defendant's zoning ordinance was unconstitutional, resulting in the defendant's subsequent repeal of the law. This Court specifically rejected any suggestion that because the judgment supporting the plaintiff was never made final or enforceable before the case was dismissed as moot, that the plaintiff did not prevail.

> It would defy reason and contradict the definition of "prevailing party" under *Buckhannon* and our subsequent precedent to hold that simply because the district court abstained from entering a final order formally closing the case—a result of the Defendant's assertions that it would repeal the challenged portion of the ordinance— Palmetto somehow did not obtain a "judicially sanctioned change" in the parties' legal relationship."

*Id.* at 550. Contrasting *Buckhannon*, where the offending statute was repealed before any judicial ruling on the merits and was deemed voluntary, this Court found that

> not only did the district court make a substantive determination as to essentially all the constitutional claims save one, the County repealed the ordinance only *after* that determination had been made and presumably *because of it*. To be sure, the Defendants were free to moot the case *before* the summary-judgment ruling, in which case the action would have been voluntary. They did not. Hence, their action is most persuasively construed as involuntary—indeed exhibiting judicial imprimatur.

*Id.* (emphasis in original).

Also instructive is this Court's decision in *Southworth* v. *Board of Regents*, 376 F.3d 757, 768 (7th Cir. 2004), holding that plaintiffs who successfully challenged a university fee system were prevailing parties, notwithstanding the university's immediate alteration of the challenged system. The plaintiffs had "obtain[ed] the protection they sought in their amended complaint—a mandatory fee system that satisfied the requirements of viewpoint neutrality—and this change resulted from a 'court-ordered 'change in the legal relationship between the plaintiff and the defendant.'" *Id.* (citations omitted).

Finally, in a pre-*Buckhannon* case, the ruling of which has since been confirmed as consistent with *Buckhannon*, *see Dupuy*, 423 F.3d at 720, 723, this Court found that Defendant City improperly acted to moot litigation over an unconstitutional speech restraint in an attempt to deny the plaintiffs' status as a "prevailing party." *Young* v. *City of Chicago*, 202 F.3d 1000, 1000-01 (7th Cir. 2000). In *Young*, plaintiffs obtained an injunction against the City, securing their right to demonstrate. The City waited to appeal that injunction until after the event occurred, thus mooting the case before the merits could be

determined. *Id.* at 1000. The Court held that "[a] defendant cannot defeat a plaintiff's right to attorneys' fees by taking steps to moot the case after the plaintiff has obtained the relief he sought, for in such a case mootness does not alter the plaintiff's status as a prevailing party." *Id.* at 1000-01.

Defendant may have logically desired to clean an unconstitutional law off its books. But claiming that action undermined the status of Plaintiffs' victory, which forced Defendant's conduct in the first place, is no less gimmicky than the claim this Court rejected in *Young*.

There was nothing voluntary about the handgun ban repeal—the City litigated its handgun ban before the Supreme Court, and asked the Court only to be allowed to defend the *other* challenged provisions should the Court hold—as it unmistakably did—that the full measure and content of the Second Amendment binds Defendant. Indeed, were Defendant's actions voluntary, and had it good grounds for banning handguns, then the handgun ban might be re-enacted at any time. For precisely this reason, *Buckhannon* minimized concerns about "mischievous defendants":

It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.

*Buckhannon*, 532 U.S. at 608-09 (quoting *Friends of Earth, Inc.* v. *Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (footnote and internal quotation marks omitted); *Palmetto,* 375 F.3d at 550.

As of June 28, 2010, there was nothing "potentially meritless," *Buckhannon*, 532 U.S. at 606, about Plaintiffs' challenge to the handgun ban. Nor would there have been anything "potentially meritless" about defending the handgun ban on remand; such defense would have been definitively frivolous, the issue having been conclusively litigated and determined by the Supreme Court, as acknowledged before the Supreme Court by Defendant.

V.   EVEN IF DEFENDANT'S REPEAL COULD BE DESCRIBED AS VOLUNTARY, PLAINTIFFS WOULD NONETHELESS BE ENTITLED TO SECTION 1988 RECOVERY FOR HAVING PROMPTED DEFENDANT'S CONDUCT.

"[I]n litigation as in battle one may prevail by persuading one's adversary to retire from the field." *Stomper* v. *Amalgamated Transit Union, Local 241*, 27 F.3d 316, 317 (7th Cir. 1994) (citations omitted).

Regrettably, the Supreme Court no longer recognizes this truth within the context of Section 1988. Although Plaintiffs again stress that their prevailing party status is secure under existing precedent, the catalyst theory still lies within the text of Section 1988, and it is worth preserving as an alternative basis for relief.

Plaintiffs recognize that this Court, as an intermediate appellate court, is tasked with following directly controlling Supreme Court precedent. *Bingham* v. *New Berlin Sch. Dist.*, 550 F.3d 601, 605 (7th Cir. 2008) (citing *Rodriguez de Quijas* v. *Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)). However, as this Court has suggested, *Bingham*, 550 F.3d at 604, based upon the "myriad scholarly critiques" of *Buckhannon*, Plaintiffs are preserving their reversal argument for Supreme Court consideration. Plaintiffs adopt the excellent arguments already made by *Buckhannon*'s Petitioners, Amici in Support of Petitioners, and dissenting justices, and offer here a few additional and extended arguments in that regard.

In considering Section 1988, the House made clear that "[t]he phrase 'prevailing party' is not intended to be limited to the victor only after

entry of a final judgment following a full trial on the merits." H.R. Rep. No. 1558, *supra*, at 7. Crucially, Congress also recognized:

> [A]fter a complaint is filed, a defendant might voluntarily cease the unlawful practice. A court should still award fees, even though it might conclude, as a matter of equity, that no formal relief, such as an injunction, is needed.

*Id.* Both the House and Senate reports supported these propositions by citing to precedent. *See id.*, S. Rep. No. 1011, *supra*, at 5. The decision to comply with the law early on is actually logical and utility-maximizing for governmental defendants who want to minimize litigation costs and any potential obligation for attorneys' fees, so it is appropriate that Congress' express intent encourages this outcome.

However, the Supreme Court's elimination of the catalyst theory, in contravention of Congress' will, has created perverse incentives for governmental defendants' conduct in civil rights cases and has led to backwards outcomes in those lawsuits, despite the the Court's contrary prediction. The Court posited in *Buckhannon* that rejecting the catalyst theory and restricting the number of parties who would qualify for attorneys' fees would reduce satellite litigation over the defendant's motivation for voluntarily providing relief and would stimulate this

voluntary relief by taking away the threat of paying fees. *See* 532 U.S. at 608-09. Unfortunately, the Court's view does not match the reality of current civil rights litigation.

Although the *Buckhannon* majority deemed concerns over strategic capitulation by defendants "entirely speculative and unsupported by any empirical evidence, " *id.* at 608, and "only a threat when equitable relief is sought," *id.* at 608-09, a recent empirical study illuminates the very real threat that such capitulation poses and confirms the reality of the *Buckhannon* dissenters' fears. *See* Catherine R. Albiston & Laura Beth Nielsen, *The Procedural Attack on Civil Rights: The Empirical Reality of* Buckhannon *for the Private Attorney General*, 54 UCLA L. REV. 1087 (June 2007).

In her *Buckhannon* dissent, Justice Ginsburg warned that eliminating the catalyst theory might discourage settlement by removing the threat of a large fee award if defendants did not settle, and would require plaintiffs of limited means to "wage total law" to obtain an enforceable judgment and win fees, an outcome that was far from certain. 532 U.S. at 636, 639. This uncertainty could also prevent

meritorious suits from being brought because of the expense of fully litigating claims, could "impede access to court," and could diminish Congressional incentives for private enforcement of federal laws. *Id.* at 623, 639-40.

In their study, Professors Catherine Albiston and Laura Beth Nielsen obtained quantitative and qualitative survey data in 2004 from 221 public interest organizations who litigate civil rights issues, resulting in responses that largely mirrored Justice Ginsburg's fears. Albiston, *supra*, at 1116. Their data shows that organizations that engage in litigation to promote systemic social change are more likely than other organizations to report a negative effect by the *Buckhannon* holding. *Id.* at 1120. Those most likely to experience these negative effects are organizations that "engage in impact litigation, litigate against government actors, bring class actions, and work in the environmental, civil rights, or poverty areas." *Id.* at 1120-21.

Moreover, the decision affects not only fee recovery, but also "discourages settlement, facilitates strategic capitulation, and discourages [lawyers] from taking on public interest cases." *Id.* at 1128.

Respondents reported directly that defendants, particularly federal and State defendants, strategically mooted their cases just before final judgment in an effort to prevent plaintiffs' recovery of their own significant financial investment in the case. *Id*. at 1128, 1130. This behavior serves as a sort of punitive damage assessed upon those who would challenge unconstitutional statutory regimes.

Further, settlement is made more difficult because the necessity of a final judgment requires plaintiffs to litigate the case through and "takes away the potential for face-saving, out-of-court settlements in which defendants do not admit to wrongdoing." *Id*. This decision has also taken away any fee leverage plaintiffs might have had to persuade defendants into legal compliance and reduces the incentive for attorneys to take public interest cases "now that fee recovery is more doubtful." *Id*. at 1129.

Obtaining outside legal referrals and the assistance of co-counsel has also been negatively impacted, thus curbing the involvement of private attorneys general across the board. *Id*. at 1130. For those public interest attorneys not employed by organizations devoted to these

causes, *Buckhannon*'s impact may be far worse, because they do not have the funding available to those organizations, *id.* at 1131, and, consequently, may have to self-finance their clients' litigation.  The study also highlights the problems inherent in suing State defendants, who can delay ending their unconstitutional behavior until just before fees can be awarded and are then protected by sovereign immunity, which increases the likelihood of the case being mooted since only prospective relief can be obtained.  *Id.* at 1103, 1133.

Parties who succeed in defending the public from government encroachment on their rights should not have their recovery of attorneys' fees hinge on arbitrary timing, the type of relief they are seeking, or on the mischief level of their opposition. As a matter of statutory interpretation, *Buckhannon* is no more or less wrong today than it was the day it was decided, but even this short passage of time provides significant empirical evidence that the decision subverts the administration of justice and interferes with the purpose of Section 1988. The Supreme Court should move quickly to limit further harm.

# CONCLUSION

Our legal system allows few victories as profound as obtaining the Supreme Court's recognition that all levels of government must obey a fundamental civil right. And yet the Supreme Court went beyond even this threshold of altering the legal relationship among the parties, by specifically indicating that its decision would doom Chicago's handgun ban. The Supreme Court's decision in this case will be studied, debated—and applied—forever. Its corollary lesson should not be that Section 1988 is illusory.

The decision below must be reversed, and the cause remanded with instructions to allow *McDonald* Plaintiffs to be heard on their motion for attorney fees and expenses.

Dated:   February 14, 2011                    Respectfully submitted,

David G. Sigale*                          Alan Gura
Law Firm of David G. Sigale, P.C.          Candice N. Hance
739 Roosevelt Road, Suite 304             Gura & Possessky, PLLC
Glen Ellyn, IL 60137                      101 N. Columbus St., Ste. 405
630.452.4547/630.596.4445                 Alexandria, VA 22314
*Counsel of Record                        703.835.9085/703.997.7665


Attorneys for Plaintiffs-         By:   /s/ Alan Gura
Appellants Otis McDonald, et al.         Alan Gura

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,801 words, excluding the parts of the brief excluded by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using WordPerfect X4 in 14 point Century Schoolbook font.


/s/ Alan Gura
Alan Gura
Attorney for Plaintiffs-Appellants
Dated: February 14, 2011

# CERTIFICATE OF SERVICE

On this, the 14th day of February, 2011, I served two true and correct copies of the foregoing Appellants' Brief and Required Short Appendix on the following by Federal Express:

Stephen Kolodziej
Brenner, Ford & Monroe
33 N. Dearborn Street, Suite 300
Chicago, IL 60602

Suzanne M. Loose
City of Chicago Department of Law
Appeals Division
30 North LaSalle Street, Suite 800
Chicago, IL 60602

I further certify that on this, the 14th day of February, 2011, I served the electronic copy of the foregoing Appellants' Brief and Required Short Appendix on above-listed counsel by email to sloose@cityofchicago.org and skolodziej@brennerlawfirm.com.

The brief was also filed this day by dispatch to the Clerk via Federal Express.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 14th day of February, 2011.


/s/ Alan Gura
Alan Gura

# REQUIRED SHORT APPENDIX

## TABLE OF CONTENTS

CIRCUIT RULE 30(d) STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

MEMORANDUM OPINION AND ORDER, 08-C-3696, 08-C-3697.  SA-1

MEMORANDUM OPINION AND ORDER, 08-C-3645. . . . . . . . . .  SA-14

NOTIFICATION OF DOCKET ENTRY, 08-C-3645, 1/3/11. . . . . .  SA-18

MEMORANDUM OPINION AND ORDER,
    08-C-3645, 08-C3-696, 08-C-3697. . . . . . . . . . . . . . . . . . . . . . .  SA-19

NOTIFICATION OF DOCKET ENTRY, 08-C-3645, 1/7/11. . . . . .  SA-22

# CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) are included in the required short appendix. All materials required by Circuit Rule 30(b) are included in the separate appendix pursuant to Circuit Rule 30(b)(7).


/s/ Alan Gura
Alan Gura

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.  08 C 3696 |
| VILLAGE OF OAK PARK, et al., | ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) ) | |
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 3697 |
| CITY OF CHICAGO, | ) ) | |
| Defendant. | ) ) | |

MEMORANDUM OPINION AND ORDER

National Rifle Association of America, Inc. ("NRA") has

filed motions, pursuant to 42 U.S.C. §1988,[1] each seeking an

award of attorney's fees in a now-closed Section 1983 lawsuit

that had been initiated by NRA some 2-1/2 years ago -- one of

them targeting the Village of Oak Park ("Village") and the other

brought against the City of Chicago ("City").  Both motions[2]

_____

[1] All further references to Title 42's provisions will
simply take the form "Section --."

[2] Because NRA has filed identical motions in each case and
because Village has adopted City's response as its own, this
opinion cites to NRA's motions as "N. Mot. --" and to the City-

follow the cases' journey to the Supreme Court and back again, ending with the dismissal of both actions by this Court on mootness grounds. For the reasons stated below, both NRA motions are denied.

## Factual Background

NRA filed these lawsuits one day after the Supreme Court decided <u>Dist. of Columbia v. Heller</u>, 554 U.S. 570 (2008). This Court properly requested, and the Executive Committee of this District Court granted, the reassignment of both cases to its docket based on their relatedness to <u>McDonald v. City of Chicago</u>, 08 C 3645, which had been filed on the same morning that <u>Heller</u> was decided. All three cases charged that municipal ordinances that made it unlawful for any person to posses a handgun ran afoul of the Second Amendment, as incorporated against the States via the Fourteenth Amendment.

Because this Court followed (as it was obligated to do) existing Supreme Court and Seventh Circuit precedent (both pre-<u>Heller</u>, of course), it ruled that the Second Amendment was not incorporated against the States, and Village and City were therefore granted judgment on the pleadings. After consolidating the appeals in all three cases, our Court of Appeals affirmed this Court's ruling in <u>NRA v. City of Chi.</u>, 567 F.3d 856 (7th Cir. 2009).

---

Village responses as "C. Mot. -."

NRA and McDonald then filed separate petitions for writs of certiorari in the Supreme Court. Although the Supreme Court granted the <u>McDonald</u> petition, it did not act on the NRA petition until after it issued its June 28, 2010 opinion in <u>McDonald v. City of Chi.</u>, 130 S. Ct. 3020 (2010), holding that the Fourteenth Amendment does incorporate the Second Amendment. On the next day the Supreme Court granted NRA's petition and remanded the case to the Seventh Circuit for further proceedings (<u>NRA v. City of Chi.</u>, 130 S.Ct. 3544 (2010)).

Three days later (on July 2) City replaced its gun ordinance with one that does not contain a total ban on handguns (Journal of the Proceedings of the City Council of the City of Chicago, Illinois at 96235). For its part, Village repealed its gun ordinance on July 19 (Approved Minutes -- Regular Board Meeting, Village of Oak Park p.4, http://www.oak-park.us/public/pdfs/2010%20Minutes/07.19.10_minutes.pdf). In light of those actions, our Court of Appeals vacated this Court's judgment in all three cases and remanded with instructions to dismiss them as moot (<u>NRA v. City of Chi.</u>, 2010 WL 3398395 (7th Cir. Aug. 25)). On October 12, 2010 this Court followed that direction.

## Attorney's Fee Awards under Section 1988

Both sides agree that the Supreme Court opinion in <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &</u>

Human Resources, 532 U.S. 598 (2001) brought a sea change in the jurisprudence governing Section 1988 attorney's fee awards. It deep-sixed the "catalyst" concept that the vast majority of federal courts had been applying consistently in that area, replacing it instead with a more demanding standard.

Section 1988(b) states that in a Section 1983 action "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." In the wake of Buckhannon the Supreme Court has reconfirmed its earlier view that "[t]he touchstone of the prevailing party inquiry ... is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute" (Sole v. Wyner, 551 U.S. 74, 82 (2007) (internal quotation marks omitted)).

On that score Buckhannon, 532 U.S. at 604 had held "that enforceable judgments on the merits and court-ordered consent decrees create" the essential "material alteration." Thus the Court distinguished settlements memorialized by consent decrees from private settlements on the ground that consent decrees are "court-ordered" (id.). In elaborating on its reasons for rejecting the "catalyst theory," the Court reasoned that a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change"

4

SA-4

(id. at 605).  Buckhannon, id. at 606 (internal quotation marks omitted) succinctly summarized the Court's concerns and the applicable standard:

> We cannot agree that the term "prevailing party" authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the sought-after designation without obtaining any judicial relief.

Closer to the bone, our Court of Appeals has implemented Buckhannon in Zessar v. Keith, 536 F.3d 788 (7th Cir. 2008), a case where as here a statute had been found unconstitutional. Zessar, id. at 796 held that alone was not enough -- instead such a situation "gives a plaintiff a hurdle to overcome if he is to show that he is a prevailing party because the Supreme Court has repeatedly held that, other than a settlement made enforceable under a consent decree, a final judgment on the merits is the normative judicial act that creates a prevailing party."  NRA fails to clear that hurdle.

Simply put, there has never been a final judgment on the merits in these cases.  There was no final court order requiring Village or City to do anything.  After the Supreme Court remanded the cases to the Seventh Circuit for proceedings consistent with its McDonald opinion, this Court never had the opportunity to conduct such proceedings because it was ordered by the Court of Appeals to dismiss the cases as moot.  Both Village (by repealing its ordinance) and City (by adopting a new one that eliminated

any outright prohibition) forwent the alternative of litigating the actions to an ultimate conclusion.

It must be remembered that these cases have been closed by final judgments of dismissal. If either Village or City were to decide to reenact its previous ordinance, NRA would not be able to bring an enforcement action based upon some action previously taken by this Court. It would instead be required to file new lawsuits to seek judgments on the merits. This is just another way of demonstrating that there was no court-ordered or court-implemented material alteration of any legal relationship in either action. Under the prevailing precedents, NRA cannot fairly be said to be a "prevailing party" under Section 1988.

And there is more to the same effect from our Court of Appeals. <u>Walker v. Calumet City</u>, 565 F.3d 1031 (7th Cir. 2009), considered a case that had originated before this Court, one in which plaintiff had sued claiming that municipality's point-of-sale ordinance violated plaintiff's constitutional rights. Upon reinspection of plaintiff's property, Calumet City found it to be in compliance and moved to dismiss the case as moot (<u>id</u>. at 1033). This Court issued a dismissal order that in part listed representations made by the city that it would not renege on its promises (<u>id</u>.). Then our Court of Appeals reversed this Court's later award of attorney's fees under Section 1988 because there, as here, this Court had "never reached the merits of

6

SA-6

[plaintiff's] claims" (id. at 1034) and its order "did not provide for judicial enforcement" or "vest the court with continuing jurisdiction" (id. at 1035).

Fed'n of Adver. Representatives, Inc. v. City of Chi., 326 F.3d 924 (7th Cir. 2003) is also instructive. There plaintiff claimed that City's advertising restrictions violated the First Amendment (id. at 928). After the Supreme Court had invalidated a similar restriction in a Massachusetts case,[3] Judge Kennelly granted City's motion for dismissal on mootness grounds in response to plaintiff's motion for summary judgment. In deciding the "prevailing party" issue on appeal, the Seventh Circuit assumed without deciding that City had changed its ordinance in response to the Supreme Court decision but still found that plaintiff was not entitled to "prevailing party" status (id. at 933).

NRA correctly points out that one reason for that decision was that plaintiff was not a party to the relevant Supreme Court case (id.). But even if NRA can distinguish the instant cases from Federation on the basis that it was a party to the Supreme

---

[3] Ironically the Federation case had originally been assigned to this Court's calendar, and it held City's ordinance invalid on preemption grounds. Then our Court of Appeals held such total preemption was incorrect and reversed in part, sending the case back. Further District Court proceedings were before this Court's colleague Honorable Matthew Kennelly, and it was during those later proceedings that the Supreme Court's decision on the Massachusetts statute confirmed the correctness of this Court's original preemption decision.

Court decision in <u>McDonald</u>,[4] that contention blithely ignores the second and independent reason announced in <u>Federation</u>, <u>id</u>. as to why City's change of conduct in response to the Supreme Court decision did not confer "prevailing party" status on the plaintiff there:

> Even assuming after [the Supreme Court decision], the district court would have granted [plaintiff's] motion had the [defendant] not repealed its ordinance, the fact remains that no such ruling was made and thus no judicial relief was awarded to Federation.

By the same token, even assuming that this Court would have ruled for NRA had Village and City not done away with their challenged ordinances, no such relief was awarded, and so no "prevailing party" status can be conferred.

NRA fares no better with its other arguments. Though all of them could be dispatched on the basis of the clear teaching of

---

[4] N. Mot. 2-3 argues in contrast that NRA should win prevailing party status by virtue of being designated a party respondent by the Supreme Court in <u>McDonald</u>. But that argument is a red herring. As Village and City correctly point out and as evidenced by the rest of this opinion, NRA's party-respondent status in the Supreme Court is irrelevant because the Supreme Court's decision in <u>McDonald</u> -- which, it will be remembered, resulted in no judicial implementation on remand -- did not meet the requirements of Section 1988 under <u>Buckhannon</u> (C. Mot. 5-6). Indeed, NRA's argument demonstrates its essential reliance on the "catalyst theory." Disputes over whether a litigant was a party to a decision where the bound parties cannot easily be determined, unlike a judgment on the merits or a consent decree, invite the additional round of litigation expressly disfavored by <u>Buckhannon</u>, 532 U.S. at 609. That said, this discussion should not be misunderstood as foreclosing any arguments that the plaintiff in <u>McDonald</u> may raise to differentiate himself from NRA for the purposes of "prevailing party" inquiry (more on this later).

Buckhannon and its progeny as already described, this action will
go on to treat them -- albeit with some brevity.

First NRA argues that in the wake of McDonald, Village and
City publicly acknowledged that their handgun bans were
unconstitutional (N. Mot. 6-9). NRA cites numerous public
statements to that effect, both to the press and in the context
of local political proceedings (id.). But that amounts to
nothing more than (to paraphrase Matthew 9:17) seeking to put the
old "catalyst theory" wine into new bottles. Public statements,
however numerous and forceful, do not grant "prevailing party"
status when they have not received the essential judicial
imprimatur.

NRA also contends that it received "judicial relief" because
Village and City "fought hard all the way to the Supreme Court"
(N. Mot. 11). But that is plainly not enough -- as Farrar v.
Hobby, 506 U.S. 103, 112-13 (1992) (internal quotation marks and
citation omitted) put it:

> To be sure, a judicial pronouncement that the defendant has
> violated the Constitution, unaccompanied by an enforceable
> judgment on the merits, does not render the plaintiff a
> prevailing party. Of itself, the moral satisfaction [that]
> results from any favorable statement of law cannot bestow
> prevailing party status. No material alteration of the
> legal relationship between the parties occurs until the
> plaintiff becomes entitled to enforce a judgment, consent
> decree, or settlement against the defendant.

And at the risk of repetition, none of those things occurred in
these cases.

SA-9

Nor is NRA assisted by any of the Seventh Circuit cases that it seeks to call to its aid.  Although a mere reading of these opinions confirms their inapplicability to the situation here. this opinion will touch on the obvious distinctions.

Thus <u>Riviera Distribs., Inc. v. Jones</u>, 517 F.3d 927-28 (7th Cir. 2008) found that the plaintiffs were "prevailing parties" under the Copyright Act of 1976, though the district judge had never reached the merits of the case, because the case was dismissed with prejudice.  That of course materially altered the legal relationship of the parties, in contrast to the wholly nonsubstantive dismissal of the cases here as moot.

<u>Palmetto Props., Inc. v. County of DuPage</u>, 375 F.3d 542 (7th Cir. 2004) presents a different scenario.  There the district court dismissed the case as moot when defendants repealed an ordinance after the district court had held the ordinance unconstitutional on a motion for summary judgment, but before the Court entered final judgment (<u>id</u>. at 545-46).  NRA's efforts to parallel its cases with <u>Palmetto</u> totally ignores the wholly different posture of the judicial rulings involved, as explained expressly in <u>Palmetto, id</u>. (emphasis in original):

> In <u>Buckhannon</u> the challenged state law was repealed, thereby mooting the case, <u>before</u> the district court had made <u>any</u> substantive rulings. ... In this case, not only did the district court make a substantive determination ... the County repealed the ordinance only <u>after</u> that determination had been made and presumably <u>because of it</u>.

Indeed, <u>Zessar</u>, 536 F.3d at 797 distinguished <u>Palmetto</u> from its

situation, where the district court found an Illinois statute unconstitutional on a motion for summary judgment but did not direct the parties to do anything pending further proceedings as to the appropriate relief.

Lastly in that group, NRA fares no better in its attempted reliance on Southworth v. Bd. of Regents of Univ. of Wis. Sys., 376 F.3d 757 (7th Cir. 2004). There our Court of Appeals (id. at 770) took pains to distinguish between post-trial court-ordered changes and voluntary changes made by the defendant -- the very distinction that this opinion has stressed in the present cases.

NRA tries to attach one more string to its bow, but that too is broken. It cites Young v. City of Chi., 202 F.3d 1000 (7th Cir. 2000)(per curiam), in which the district court granted plaintiffs a preliminary injunction against City, enjoining its imposition of a security perimeter around the 1996 Democratic National Convention. Though City's appeal of the preliminary injunction was later dismissed as moot after the convention ended, because the preliminary injunction of course applied only to that specific convention, Young, id. at 1000-01 upheld the award of fees to plaintiff under Section 1988.

On that score the obvious distinction is that the district court there had already granted relief to plaintiffs via its preliminary injunction order, clearly altering the legal relationship between the two parties. Hence the awarding of fees

11

simply prevented City from "taking steps to moot the case after the plaintiff has obtained the relief he sought" (<u>id</u>.).

## Conclusion

In the context of this case, the lesson taught by <u>Buckhannon</u> and its relevant progeny is that the proverbial handwriting on the wall does not alone suffice to trigger a Section 1988 entitlement to attorney's fees, no matter how clear the penmanship may appear to be. Instead that figurative handwriting must have been memorialized in a judicial ruling or like judicial action, and nothing of the sort had taken place in these two cases before Village and City dispatched their challenged ordinances and thus mooted the two cases. Accordingly NRA's motions for Section 1988 fee awards are denied.[5]

Date:        December 22, 2010

_____
Milton I. Shadur
Senior United States District Judge

---

[5] When these actions came on for a preset status hearing on December 21 for the sole purpose of confirming that the litigants had met head-on in addressing the issues posed by NRA's motions, counsel for plaintiff in the <u>McDonald</u> case appeared and voiced vigorous criticism at having assertedly been kept out of the loop by NRA's counsel. This Court, which of course had no knowledge of anything of the sort (it will be recalled that the cases had been terminated by the dismissal orders based on mootness, so that this Court had no need to follow its normal practice of setting periodic status hearing in all cases pending on its calendar), rejected the motion by McDonald's counsel to stay the determination of the fully briefed motions in these two cases. As this Court assured that lawyer, as and when he may advance a Section 1988 motion in that case this Court will address it on the merits, for which purpose it may or may not find that the <u>McDonald</u> plaintiffs occupy the same position announced here as to NRA (a function of whatever similarities and differences may exist as between the <u>McDonald</u> case and the two NRA cases).

SA-13

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OTIS McDONALD, et al.,          )
                                )
                Plaintiffs,     )
                                )
     v.                         )     No.  08 C 3645
                                )
CITY OF CHICAGO, et al.,        )
                                )
                Defendants.     )

MEMORANDUM OPINION AND ORDER

Counsel for plaintiffs in this action (collectively "McDonald Plaintiffs") have sought to distance themselves from this Court's December 22 opinion in the two comparable National Rifle Association cases ("NRA Opinion," 2010 WL 5185083) by claiming that they were (as NRA was not) "prevailing parties" for 42 U.S.C. §1988(b)("Section 1988(b)") purposes so as to obtain an award of attorneys' fees.  That effort fails.

It should first be noted that this Court again inquired at the December 29 motion hearing, noticed up by counsel for the McDonald Plaintiffs, whether the conduct of the City of Chicago in assertedly having led counsel down the garden path by stonewalling on the fees issue--all the while planning to bring the "prevailing party" question on against NRA--was an arguable basis for reaching a different result.  McDonald Plaintiffs' counsel disavowed that, so that this opinion will go forward solely on the grounds advanced in counsel's submission captioned "Plaintiffs' Motion for Instructions Re:  Attorney Fees and

Costs."

On the first of those grounds, counsel urge a different reading of the Supreme Court's <u>Buckhannon</u> opinion than this Court stated and applied in the NRA Opinion.  But in material part that argument distorts and mischaracterizes the nine-year-old opinion by this Court in <u>Johnny's IceHouse, Inc. v. Amateur Hockey Ass'n of Ill.</u>, No. 00 C 7363, 2001 WL 893840 (N.D. Ill. Aug. 7)).  Here is what McDonald Plaintiffs' counsel say in that respect (Motion ¶22):

> This Court has previously held that the <u>Buckhannon</u> dissent's description of the majority's holding governs interpretation of <u>Buckhannon</u>'s scope.[1]

But then counsel commit the cardinal sin of selective quotation, which can be just as misleading as misquotation.  They reproduce two sentences that this Court quoted from Justice Ginsberg's

---

[1]  [Footnote by this Court]  Although counsel's real distortion is the omission next referred to in the text, counsel have also failed to quote the cautious caveat voiced by this Court in <u>Johnny's IceHouse</u>, <u>id</u>. at *3 n.2:

> This Court is of course well aware that it can be perilous to rely too heavily on a dissenting opinion's characterization of the majority's holding (sometimes advanced as a kind of rear-guard action, in an effort to limit the scope of a holding opposed by the dissenters). In this instance, though, the quoted language is a fair statement of the majority opinion as it impacts on this case.

2

SA-15

<u>Buckhannon</u> dissent, but they stop short of reproducing the very next sentence that actually controlled the ruling in <u>Johnny's IceHouse</u>:

> A court-approved settlement will do.

As this Court then went on to explain after that quotation, plaintiff in <u>Johnny's IceHouse</u> was a "prevailing party" precisely because this Court had entered an "Order formalizing and memorializing [defendant's] commitment [that] legally altered the relationship between the parties, making Johnny's IceHouse a prevailing party under the standard announced in <u>Buckhannon</u>." No such order, no legal equivalent of the type required by <u>Buckhannon</u>, was entered in this action. And that of course is the whole point.

Next McDonald Plaintiffs' counsel point to the Supreme Court's legal ruling as to Chicago's handgun ban, as though that alone made them prevailing parties. But that contention studiously ignores, just as NRA's counsel had, the fact that the Supreme Court's <u>order</u> was one that remanded the case before it "for further proceedings."[2] And as the NRA Opinion stressed, no "further proceedings" took place--instead the City of Chicago's action in repealing its ordinance compelled the dismissal of the action on mootness grounds.

---

[2] Remember the universal principle that courts speak definitively through the orders, not through the language in their opinions that explains the basis for the orders themselves.

3

SA-16

Finally counsel for the McDonald Plaintiffs argue that
<u>Buckhannon</u> was wrongly decided. In doing so, of course, counsel
acknowledge that they are tendering that argument for purposes of
making a record, not (of course) to urge this Court to so hold
(as it would have no power to do).

In summary, counsel for the McDonald Plaintiffs have not
separated themselves or their clients from what this Court ruled
in the NRA Opinion. Their motion for "prevailing party" status
and for a corollary award of attorney's fees is denied.

_____
Milton I. Shadur
Senior United States District Judge

Date: January 3, 2011

SA-17

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.2**
**Eastern Division**

Otis McDonald, et al.

                                        Plaintiff,

v.                                                      Case No.: 1:08−cv−03645
                                                        Honorable Milton I. Shadur

City of Chicago, et al.

                                        Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Monday, January 3, 2011:

      MINUTE entry before Honorable Milton I. Shadur: Enter Memorandum Opinion and Order. In summary, counsel for the McDonald Plaintiffs have not separated themselves or their clients from what this Court ruled in the NRA Opinion. Their motion for ";prevailing party" status andMotion for attorney fees [83] is denied.Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 3696 |
| VILLAGE OF OAK PARK, et al., | ) ) | |
| Defendants. | ) ) | |
| ————————————————— | ) | |
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 3697 |
| CITY OF CHICAGO, | ) ) | |
| Defendant. | ) ) | |
| ————————————————— | ) | |
| OTIS McDONALD, et al., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 3645 |
| CITY OF CHICAGO, et al., | ) ) | |
| Defendants. | ) | |

<u>SUPPLEMENT TO MEMORANDUM OPINIONS AND ORDERS</u>

This Court has just had occasion, for a reason wholly

unrelated to these cases,[1] to note an excerpt from an earlier

---

[1]  Indeed, what has brought the subject of this supplement
to this Court's attention is simply its consistently prompt
review of slip opinions emanating from our Court of Appeals--in
this instance, <u>Bd. of Regents of the Univ. of Wis. Sys. v.
Phoenix Int'l Software, Inc.</u>, No. 08-4164, 2010 WL 5295853 at *21

opinion of our Court of Appeals that calls for a clarifying supplement to this Court's opinions in the captioned cases--in the <u>NRA</u> cases, 2010 WL 5185083 (N.D. Ill. Dec. 22) and in the <u>McDonald</u> case, 2011 WL 13755 (N.D. Ill. Jan. 3). That excerpt appears in the en banc opinion in <u>United States v. Skoien</u>, 614 F.3d 638, 641 (7th Cir. 2010).

In <u>McDonald</u>, 2011 WL 13755 at *1 this Court dropped this footnote 2 as an attempted amplification of the point (1) that the order by the Supreme Court in that case had remanded the case "for further proceedings" and (2) that no such proceedings then took place because the City of Chicago's swift action in repealing its ordinance compelled dismissal of the case on mootness grounds:

> Remember the universal principle that courts speak definitively through their orders, not through the language in their opinions that explains the basis for the orders themselves.

In that respect Judge Wood's dissent in <u>Bd. of Regents</u> has just repeated this sentence from <u>Skoien</u>, 614 F.3d at 641 that spoke of an aspect of the <u>Heller</u> case in these terms:

> This is the sort of message that, whether or not technically dictum, a court of appeals must respect, given the Supreme Court's entitlement to speak through its opinions as well as through its technical holdings.

Thus the <u>McDonald</u> footnote was an oversimplification of a more fundamental proposition that this Court has sought to

_____

(7th Cir. Dec. 28).

SA-20

emphasize in both its <u>NRA</u> opinion and its <u>McDonald</u> opinion: that

if the Supreme Court had intended its <u>McDonald</u> opinion to be the

last word on the matter, automatically constituting a final order

as to the Chicago ordinance of the type required by <u>Buckhannon</u> to

constitute a formal judicial imprimatur, the Supreme Court would

surely have known how to do just that in so many words. What

cannot be ignored is that its ruling was instead a remand "for

further proceedings," leaving it to the lower court--our Court of

Appeals--to determine what was called for. And that, given the

intervening repeal of the ordinance, was clearly a dismissal for

mootness, again not a <u>Buckhannon</u>-qualifying ruling.

_____
Milton I. Shadur
Senior United States District Judge

Date: January 7, 2011

3

SA-21

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.2
### Eastern Division

Otis McDonald, et al.

Plaintiff,

v.                                              Case No.: 1:08–cv–03645

Honorable Milton I. Shadur

City of Chicago, et al.

Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, January 7, 2011:

     MINUTE entry before Honorable Milton I. Shadur:Enter Supplement To Memorandum Opinion and Orders. And that, given the intervening repeal of the ordinance, was clearly a dismissal for mootness, again not a Buckhannon – qualifying ruling. Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.