RECORD NO. 11-1016
(Consolidated with Nos. 10-3957 and 10-3965)

# In The
# United States Court of Appeals
## For The Seventh Circuit

**OTIS MCDONALD,** *et al.*,
*Plaintiffs – Appellants*,

v.  **Dist. Ct. No. 08-C-3645**

**CITY OF CHICAGO,**
*Defendant – Appellee.*

RECORD NO. 11-1016

**NATIONAL RIFLE ASSOCIATION OF
AMERICA, INCORPORATED,** *et al.*,
*Plaintiffs – Appellants*,

v.  **Dist. Ct. No. 08-C-3696**
**Dist. Ct. No. 08-C-3697**

**CITY OF CHICAGO,** *et al.*,
*Defendants – Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
THE HONORABLE MILTON I. SHADUR, SENIOR DISTRICT JUDGE

————————

BRIEF OF *AMICUS CURIAE* INSTITUTE FOR JUSTICE
IN SUPPORT OF APPELLANTS FOR REVERSAL

————————

William H. Mellor
Clark M. Neily III*
Robert J. McNamara
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia 22203
(703) 682-9320

*Counsel for Amicus Curiae Institute for Justice*

No. 11-1016
(Consolidated with Nos. 10-3957 and 10-3965)
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
_____

OTIS MCDONALD, ET AL.,
       Plaintiffs-Appellants,
       v.                        Dist. Ct. No. 08-C-3645
CITY OF CHICAGO,
       Defendant-Appellee.

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ET AL.,
       Plaintiffs-Appellants,
       v.                        Dist. Ct. No. 08-C-3696
VILLAGE OF OAK PARK
       Defendant-Appellee.

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ET AL.,
       Plaintiffs-Appellants,
       v.                        Dist. Ct. No. 08-C-3697
CITY OF CHICAGO,
       Defendant-Appellee.

Appeal from a Judgment of the United States District Court
for the Northern District of Illinois
The Hon. Milton I. Shadur, Senior District Judge
_____

INSTITUTE FOR JUSTICE CORPORATE DISCLOSURE STATEMENT
Fed. R. App. Proc. 26.1, Circuit Rule 26.1

                              William H. Mellor
                              Clark M. Neily III*
                              Robert J. McNamara
                              Institute for Justice
                              901 N. Glebe Road, Suite 900
                              Arlington, VA  22203
                              703.682.9320/703.682.9321

Names of all law firms whose partners or associates have appeared for the *amicus* in the above-captioned case:

William H. Mellor
Clark M. Neily III
Robert J. McNamara
Institute for Justice
901 N. Glebe Road, Suite 900
Arlington, VA 22203
703.682.9320/703.682.9321
(*on its own behalf*)

*Amicus* the Institute for Justice is a 501(c)(3) nonprofit corporation with no parent corporations. No publicly held company owns any stock in the Institute for Justice.

_____
Clark M. Neily III
Institute for Justice
901 North Glebe Rd, Ste 900
Arlington, VA 22203
703.682.9320/703.682.9321

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTEREST OF AMICUS ....................................................................................1

SUMMARY OF ARGUMENT ..........................................................................2

ARGUMENT ......................................................................................................3

      I.      Unlike *Buckhannon*, the Plaintiffs in This Case Secured a
            Judgment That Materially Altered the Legal Relationship of the
            Parties ......................................................................................................3

      II.     This Court Routinely Considers Legislative Purpose and Seeks
            to Effect Congressional Intent When Interpreting Indefinite
            Statutory Terms .....................................................................................8

      III.    "Strategic Capitulation" by Government Defendants to Avoid
            Liability for Attorneys' Fees Is a Genuine, Documented
            Problem ..................................................................................................13

CONCLUSION .................................................................................................15

CERTIFICATE OF COMPLIANCE

RULE 31(e) CERTIFICATE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bingham v. New Berlin Sch. Dist.*,
    550 F.3d 601 (7th Cir. 2008) ................................................................. 13, 14

*Brown v. Board of Educ. of Topeka*,
    347 U.S. 483 (1954) ................................................................................. 11, 12

*Brown v. Board of Educ. of Topeka*,
    349 U.S. 294 (1955) ....................................................................................... 11

*Brown v. Board of Educ. of Topeka*,
    139 F. Supp. 468 (D. Kan. 1955) ................................................................. 12

*Buckhannon Board & Care Home, Inc. v.*
*West Virginia Dep't of Health & Human Resources*,
    532 U.S. 598 (2001) ............................................................................. *passim*

*Cole v. U.S. Capital*,
    389 F.3d 719 (7th Cir. 2004) ......................................................................... 8

*Colon v. Option One Mortg. Corp.*,
    319 F.3d 912 (7th Cir. 2003) ......................................................................... 9

*Evans v. City of Chicago*,
    434 F.3d 916 (7th Cir. 2006) ......................................................................... 9

*Fox v. Vice*,
    594 F.3d 423 (5th Cir.), *cert. granted*,
    131 S. Ct. 505 (2010) ..................................................................................... 1

*Humphries v. CBOCS West, Inc.*,
    474 F.3d 387 (7th Cir. 2007) ......................................................................... 9

*King v. Illinois State Board of Elections*,
    410 F.3d 404 (7th Cir. 2005) ................................................................. *passim*

*McDonald v. City of Chicago,*
    130 S. Ct. 3020 (2010)..........................................................................3, 7, 12

*McDonald v. City of Chicago,*
    No. 08-C-3645, 2011 WL 13755 (N.D. Ill. Jan. 3, 2011) ...........................12

*NRA of Am., Inc. v. City of Chicago,*
    567 F.3d 856 (7th Cir. 2009) .........................................................................3

*Palmetto Properties, Inc. v. County of Dupage,*
    375 F.3d 542 (7th Cir. 2004) ............................................................4, 6, 7, 8

*Perdue v. Kenny A.,*
    130 S. Ct. 1662 (2010)...................................................................................1

*Pourghoraishi v. Flying J, Inc.,*
    449 F.3d 751 (7th Cir. 2006) ..........................................................................9

*Roberson v. Giuliani,*
    346 F.3d 75 (2d Cir. 2003) .............................................................................6

*Sole v. Wyner,*
    551 U.S. 74 (2007)......................................................................................1, 3

*Square D Co. & Subsidiaries v. C.I.R.,*
    438 F.3d 739 (7th Cir. 2006) ..........................................................................8

*Vacchio v. Ashcroft,*
    404 F.3d 663 (2d Cir. 2005) ...........................................................................6

*Walker v. Abbott Laboratories,*
    340 F.3d 471 (7th Cir. 2003) ..........................................................................9

*Zessar v. Keith,*
    536 F.3d 788 (7th Cir. 2008) ..........................................................................5

## STATUTES

Voting Rights Act, 42 U.S.C. § 1973 ......................................................9

The Civil Rights Attorneys' fees Awards Act of 1976, 42 U.S.C. § 1988.......*passim*

42 U.S.C. § 1988(b) ......................................................................1

## OTHER AUTHORITIES

H.R. Rep. No. 94-1558 (1976)..............................................................11

Black's Law Dictionary 1145 (7th ed. 1999) ..........................................4

## PUBLICATIONS

Catherine R. Albiston & Laura Beth Nielsen, *The Procedural Attack on Civil Rights: The Empirical Reality of* Buckhannon *for the Private Attorney General*, 54 UCLA L. Rev. 1087 (2007) ..........................................13, 14

Stefan R. Hanson, Buckhannon, *Special Education Disputes, and Attorneys' Fees: Time for a Congressional Response Again*, 2003 BYU Educ. & L.J. 519 (2003) ..............................................................................14

## INTEREST OF AMICUS

The Institute for Justice (IJ) is a non-profit, public interest law center dedicated to advancing the essential foundation of a free society: constitutional protection for individual liberty.  Since its founding in 1991, IJ has litigated in state and federal courts across the country, including the U.S. Supreme Court, to secure greater protection for constitutional rights and limited government.  IJ regularly litigates cases involving fee-shifting provisions and has a direct stake in courts' interpretation of the term "prevailing party" under 42 U.S.C. § 1988(b).  Given its mission, IJ has both an institutional and a civic interest in seeing that § 1988 is applied consistent with the legislative purpose of promoting enforcement of the Nation's civil rights laws through the efforts of private attorneys general.  IJ has filed amicus briefs concerning attorneys' fees in a number of Supreme Court cases, including *Fox v. Vice*, 594 F.3d 423 (5th Cir. 2010), *cert. granted*, 131 S. Ct. 505 (2010); *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010); *Sole v. Wyner*, 551 U.S. 74 (2007); and *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001).[1]

---

[1] This brief is filed with the consent of all parties.  No counsel for a party authored this brief in whole or in part, nor did any person or entity other than Amicus or its counsel make any monetary contribution intended to fund the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

At issue is whether a plaintiff who litigates a pathbreaking constitutional case to victory in the Supreme Court and secures both a favorable judgment and elimination of the challenged ordinances should be considered a "prevailing party" entitled to a reasonable attorney's fee under 42 U.S.C. § 1988. The average person not learned in the law would certainly say yes, as would any member of Congress familiar with the history and purpose of Section 1988's fee-shifting provision. To the extent some contrary understanding may be attributed to the case law interpreting Section 1988, that understanding both contradicts and undermines congressional intent.

The argument proceeds in three parts. First, amicus will show that the Supreme Court's decision in *Buckhannon* does not foreclose an award of attorneys' fees in this case and that this Court's post-*Buckhannon* decisions actually support the award of fees here. Second, amicus will show that when faced with indefinite statutory text, this Court routinely adverts to legislative purpose, which in this case weighs heavily in favor of awarding attorneys' fees. Finally, amicus will show that, whatever doubts the majority may have expressed in *Buckhannon*, it is now clear that "strategic capitulation" by government defendants seeking to avoid fee awards in civil rights cases is a genuine problem that should be resisted rather than encouraged.

# ARGUMENT

## I. Unlike *Buckhannon*, the Plaintiffs in This Case Secured a Judgment That Materially Altered the Legal Relationship of the Parties.

In its most recent explication, a unanimous Supreme Court emphasized that "[t]he touchstone of the prevailing party inquiry . . . is the material alteration in the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, 551 U.S. 74, 82 (2007) (internal quotation marks omitted); *see also King v. Ill. State Bd. of Elections*, 410 F.3d 404, 414 (7th Cir. 2005) (same).

Appellants (Plaintiffs below) brought these actions to change the legal status quo from one in which they had no enforceable right to keep and bear arms as against local or state authorities to one in which they *do* have these rights. Plaintiffs succeeded. *Compare NRA of Am., Inc. v. City of Chicago*, 567 F.3d 856 (7th Cir. 2009) *with McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). While it is possible to imagine a more specific "alteration of the legal relationship" between citizens and the government (such as an injunction or damages award), it is difficult to imagine a more profound one.

A civil rights plaintiff who secures a favorable judgment from the U.S. Supreme Court that reverses decades of circuit (and, indeed, Supreme Court) precedent and results in the elimination of the challenged restrictions would certainly be considered a "prevailing party" as a matter of common sense and

common usage.  No precedents compel this Court to reach a different conclusion in this case.

Indeed, the Supreme Court's decision in *Buckhannon* actually supports an award in this case.  In *Buckhannon*, the Supreme Court considered a plaintiff's fee application where the underlying lawsuit had been dismissed as moot before there had been any "substantive rulings" by any court—the defendant had mooted the case by simply changing his behavior voluntarily before any judicial intervention was possible.  *See Palmetto Properties, Inc. v. County of Dupage*, 375 F.3d 542, 550 (7th Cir. 2004) (describing *Buckhannon*'s procedural posture).

Concluding that Congress used the term "prevailing party" as a legal term of art, the Court consulted Black's Law Dictionary, which defined "prevailing party" as one "'in whose favor a judgment is rendered. . . .  Also termed a *successful party*.'"  *Buckhannon*, 532 U.S. at 603 (quoting Black's Law Dictionary 1145 (7th ed. 1999)).  In finding that the plaintiff was not entitled to a fee award based on its "catalyst theory," *id.* at 610, the Court's chief concern was that such a theory would allow "an award where there is no judicially sanctioned change in the legal relationship of the parties."  *Id*. at 605 (majority op.); *id.* at 622 (Scalia, J., concurring).

Unlike the "catalyst theory" rejected in *Buckhannon*, however, the fee application in this case is justified both on the literal terms of Section 1988 and by the language and reasoning of *Buckhannon* itself. The *Buckhannon* plaintiffs argued that they were prevailing parties simply by dint of their having filed suit before the defendant changed his behavior; they obtained no judgment or other "court-ordered change in the legal relationship between the parties." *Id.* at 604 (internal quotation marks omitted). But plaintiffs here achieved exactly that—the judgment of the Supreme Court holding that these plaintiffs possess rights that are enforceable against these defendants represents an undeniable change in the parties' legal relationship. A fee award in this case would therefore be perfectly consonant with the logic of *Buckhannon*.

There is, of course, dicta in *Buckhannon* observing that "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorneys' fees." *Id*. at 604 (internal quotation and citation omitted). But the Supreme Court did not suggest that these are the *only* instances in which a fee award is permitted: As this Court has repeatedly noted, these are merely *examples* of situations in which fees may be awarded. *See*, *e.g.*, *Zessar v. Keith*, 536 F.3d 788, 798 (7th Cir. 2008) ("Cases will sometimes arise where, despite there being no final judgment or consent decree, the legal relationship of the parties will be

changed due to a defendant's change in conduct *brought about by a judicial act exhibiting sufficient finality*." (emphasis added)); *Palmetto Properties, Inc. v. County of DuPage*, 375 F.3d 542, 548 (7th Cir. 2004) (explaining that *Buckhannon* requires a judgment on the merits, a consent decree, or "some other judicially sanctioned change in the legal relationship of the parties").

This Circuit is not alone is realizing that *Buckhannon* does not limit fee awards to cases that result in final judgments or consent decress. As the Second Circuit has observed:

> it seems clear from even the majority opinion in *Buckhannon* that the Court intended its statements about judgments on the merits and court-ordered consent decrees as merely "examples" of the type of judicial action that could convey prevailing party status. . . . We therefore join the majority of courts to have considered the issue since *Buckhannon* in concluding that *judicial action other than a judgment on the merits or a consent decree* can support an award of attorneys' fees, so long as such action carries with it sufficient judicial imprimatur.

*Roberson v. Giuliani*, 346 F.3d 75, 81 (2d Cir. 2003) (emphasis added) (citations and internal footnote omitted); *see also Vacchio v. Ashcroft*, 404 F.3d 663, 673-74 (2d Cir. 2005).

This Court's Section 1988 decisions since *Buckhannon* have held true to this understanding, underscoring that the inquiry into whether a party has "prevailed" requires more than a simple determination of whether the party obtained a technical final legal judgment subject to right of appeal. *See King v. Illinois State*

6

*Bd. of Elections*, 410 F.3d 404, 422 (7th Cir. 2005) ("[T]he test for a prevailing party must be one that does not exalt form over substance."). Thus, in *Palmetto Properties*, the defendant argued that plaintiffs who obtained a favorable partial summary judgment ruling were not "prevailing parties" under § 1988 where no final judgment was entered because the district court continued the case to give the county "a sufficient amount of time to correct its error." 375 F.3d at 549. The county repealed the challenged ordinance, and the case was dismissed as moot. *Id.* Rejecting the county's argument that the plaintiffs were not "prevailing parties" under Section 1988 and emphasizing the "judicially sanctioned change in the parties' legal relationship" language from *Buckhannon*, *id.* at 550, the Court concluded that the county had repealed the challenged ordinance only after the partial summary judgment ruling the plaintiffs' favor and "presumably" because of it. *Id.* As a result, the Court concluded that the county's action in repealing the ordinance "is most persuasively construed as involuntary—indeed, exhibiting judicial imprimatur." *Id.*

There is no material difference between *Palmetto Properties* and this case. The United States Supreme Court embraced plaintiffs' constitutional theory and rejected the government's, reversing decades of existing precedent to hold that plaintiffs have a right to keep and bear arms that is enforceable against state and local governments. *McDonald*, 130 S. Ct. at 3050. It was only in the wake of this

binding legal decision that the City of Chicago corrected its error and repealed the challenged ordinance. McDonald Appellants' Br. at 13-15. There can be no question that, as in *Palmetto Properties*, the government repealed the ordinance in direct response to the adverse legal ruling—indeed, the only difference is that in this case, the legal ruling in question came from the Supreme Court and was therefore unappealable. Plaintiffs are accordingly "prevailing parties" under *Buckhannon* and *Palmetto Properties* and entitled to an award of attorneys' fees.

## II. This Court Routinely Considers Legislative Purpose and Seeks to Effect Congressional Intent When Interpreting Indefinite Statutory Terms.

Even if this Court were construing Section 1988 on a blank canvas, it should still conclude that, as evidenced by clear legislative history, the plaintiffs in this case are precisely the sort of "prevailing party" Congress contemplated in the statute. The Court resolves ambiguity by interpreting terms "in the context of the entire statutory scheme" and avoids "construing statutes contrary to the clear intent" of that scheme. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 725 (7th Cir. 2004) (internal quotations and citation omitted). Even in situations where statutory language is unambiguous, courts should "consider the statutory scheme as a whole," to ensure consistency with the statute's overarching purpose. *Square D Co. & Subsidiaries v. Comm'r of the IRS*, 438 F.3d 739, 745 (7th Cir. 2006). This

Court has consistently followed that approach in a variety of contexts, including its

analysis of federal fee-shifting statutes.[2]

For example, in *King v. Illinois State Board of Elections*, 410 F.3d 404 (7th

Cir. 2005), this Court considered whether successful defendant-intervenors in a

voting rights case were entitled to a fee-award as "prevailing parties" under § 1988

and the Voting Rights Act, 42 U.S.C. § 1973. In resolving that question, the Court

first noted that neither statute affirmatively "preclude" defendants or defendant-

intervenors from recovering attorneys' fees, then looked to legislative intent for

guidance:

> The purpose of § 1973 *l* (e) and § 1988 is "to ensure effective
> access to the judicial process" for persons with civil rights or voting
> rights grievances. This court has recognized that, by providing a
> "reasonable attorneys' fee" to "those who as 'private attorneys
> general' take it upon *themselves* to invoke and thereby invigorate
> federal constitutional and statutory rights," Congress hoped "to

---

[2] *See*, *e.g.*, *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 397 (7th Cir. 2007)
(finding that a civil rights statute included a cause of action for retaliatory firing by
turning to legislative history which "confirm[ed] that Congress intended retaliation
to be included"); *Evans v. City of Chicago*, 434 F.3d 916, 927 (7th Cir. 2006)
(concluding that RICO laws do not compensate plaintiffs for pecuniary losses
because "we are of the opinion that Congress did not intend to do so");
*Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 757 (7th Cir. 2006) (noting that this
Court must look to "the intent of Congress at the time it adopted § 1981" in
determining how to apply it to particular facts of the case); *Walker v. Abbott
Laboratories*, 340 F.3d 471, 477 (7th Cir. 2003) (reversing district court
interpretation of civil rights statute because it would "contravene Congress's
intention"); *Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 918 (7th Cir. 2003)
(affirming district court's interpretation of bankruptcy statute because "the
legislative history, although not entirely conclusive, lends significant support to the
view that Congress intended to extend the right" at issue).

encourage private citizens to initiate court action to correct violations of the Nation's civil rights statutes . . . and . . . to insure that those who violate the Nation's fundamental laws do not proceed with impunity."

*King*, 410 F.3d at 412 (internal citations omitted; elisions in original).

This Court explained that "[a]warding attorneys' fees to the intervenors promotes the underlying goals of the fee-shifting statutes" because "[t]he efforts of the intervenors furthered the rights that Congress sought to protect in the civil rights statutes." *Id.* at 419. "Because the intervenors were vindicating their civil rights," it would "frustrate the purposes of the voting rights provisions at issue here" if the court "require[d] the intervenors to pay their own attorneys' fees and costs." *Id.* at 423.

That reasoning is equally applicable here. The plaintiffs' efforts "furthered" the interests Congress sought to protect through the civil-rights statutes by obtaining a landmark Supreme Court ruling that reversed decades of precedent and recognized for the first time the existence of a fundamental Fourteenth Amendment right to keep and bear arms. It would frustrate the core purpose of the civil-rights statutes to require individuals who seek to vindicate their constitutional rights to bear all of their own costs when they succeed in actually vindicated those rights. *Cf. King*, 410 F.3d at 412 (fee-shifting statutes were intended "to insure that those who violate the Nation's fundamental laws do not proceed with impunity").

The legislative history of Section 1988 makes plain exactly what interests Congress was trying to further. Section 1988 was enacted with the express purpose of promoting enforcement of federal civil laws through the efforts of citizens acting as "private attorneys general." *King*, 410 F.3d at 412. As this Court has repeatedly noted, "Congress hoped to encourage private citizens to initiate court action to correct violations of the Nation's civil rights statutes"—as the plaintiffs did in the instant case—and "to insure that those who violate the Nation's fundamental laws do not proceed with impunity." *Id*. And, indeed, in enacting Section 1988 in 1976, Congress specifically noted the irony that, in *Brown v. Board of Education*, 347 U.S. 483 (1954), "the plaintiffs could not recover their attorney's fees, despite the significance of the ruling." H.R. Rep. No. 94-1558, at 4 (1976).

This reference to *Brown* is particularly significant because the lower court's reasoning in this case would actually lead to the conclusion that the plaintiffs in *Brown* would not be considered "prevailing parties." In *Brown*, the Supreme Court held that racial segregation public schools violated the Equal Protection Clause, *Brown v. Board of Educ. of Topeka*, 349 U.S. 294, 301 (1955), but remanded to the lower courts to fashion appropriate remedies. Despite finding that the desegregation plan presented by the Topeka School Board did not fully comply with the Supreme Court's decision, the Kansas District Court approved the plan

and imposed no injunction or other formal remedy. *Brown v. Board of Educ. of Topeka*, 139 F. Supp. 468, 470 (D. Kan. 1955).

Denying fees in this case would frustrate Congress's purpose of allowing fees for cases like *Brown*. The parallels between the cases are plain: Both cases were challenges to long-entrenched legal regimes that violated constitutional rights. Both were litigated by private parties, at their own expense, all the way to the nation's highest court. Both sets of plaintiffs received rulings in their favor from the Supreme Court, reversing decades of contrary precedent. *McDonald*, 130 S. Ct. at 3031; *Brown*, 347 U.S. at 494-95. And, under the analysis applied by the district court in this case, neither set of plaintiffs could be considered "prevailing parties," in the legal sense of the word, because no "formalizing and memorializing" defendant's loss "was entered in this action." *McDonald v. City of Chicago*, No. 08-C-3645, 2011 WL 13755, at *1-*3 (N.D. Ill. Jan. 3, 2011).

As a matter of fidelity to legislative purpose, this Court should hold that parties who obtain a favorable ruling from the U.S. Supreme Court vindicating the central legal premise of their lawsuit are also "prevailing parties" within the meaning of Section 1988. It defies belief that Congress intended that civil-rights plaintiffs who take their case to the Nation's highest Court and vindicate key constitutional rights—as the plaintiffs in this case did—should be entitled to an award of attorneys' fees if they happened to pick up a favorable ruling in the lower

courts along the way (or if the government waited too long to repeal the law after losing in the Supreme Court), but otherwise not. That would be a manifestly arbitrary result and not remotely what Congress could have intended when it sought to augment the enforcement of federal civil-rights laws through fee-shifting.

## III.   "Strategic Capitulation" by Government Defendants to Avoid Liability for Attorneys' Fees Is a Genuine, Documented Problem.

Policy considerations also counsel in favor of a fee award here. As this Court has previously noted, critics have pointed out that a broad reading of *Buckhannon* would create perverse incentives for government actors to engage in strategic capitulation—that is, to moot cases after it has become clear that the government's conduct was unconstitutional, but before a final judgment has been entered, for the sole purpose of avoiding a fee award. *Bingham v. New Berlin Sch. Dist.*, 550 F.3d 601, 604-05 (7th Cir. 2008). This creates the incentive to waste judicial resources by prolonging litigation (rather than entering into a consent decree) simply to give legislators enough time to repeal an unconstitutional ordinance. It also frustrates Congress's plain legislative purpose by forcing successful civil-rights plaintiffs to bear their own costs whenever government officials are able to repeal a law faster than a court is able to enter a final order.

This problem is not merely theoretical—it is real and well-documented. *See* Catherine R. Albiston & Laura Beth Nielsen, *The Procedural Attack on Civil Rights: The Empirical Reality of* Buckhannon *for the Private Attorney General*, 54

UCLA L. Rev. 1087, 1092 (2007) (explaining survey data showing that the *Buckhannon* rule "encourages strategic capitulation, makes settlement more difficult, and discourages both public interest organizations and private counsel from taking on enforcement actions."); Stefan R. Hanson, Buckhannon, *Special Education Disputes, and Attorneys' Fees: Time for a Congressional Response Again*, 2003 BYU Educ. & L.J. 519, 546 (2003) (arguing that *Buckhannon* prolongs litigation rather than encouraging settlement). Simply put, allowing government officials to escape fee awards by strategically mooting cases appears to simultaneously make it more difficult to *bring* civil-rights litigation and make civil-rights lawsuits that are brought significantly less likely to settle. *See* Albiston & Nielsen, 54 UCLA L. Rev. at 1127-28.

In *Bingham*, this Court described the debate over the effects of the *Buckhannon* rule as "important," but nonetheless found itself constrained "to follow Supreme Court precedent where it has direct application in a case." 550 F.3d at 605. But, given that no precedent compels this Court to affirm the lower court's decision (and, indeed, as discussed *supra*, circuit precedent requires reversal), the policy implications should be given greater weight. Affirming the lower court and expanding *Buckhannon* to encompass cases where the government strategically moots a case after an adverse legal ruling would have wide-ranging consequences—both for judicial economy and for the future of civil-rights

litigation.  Efficiency and justice both demand that the lower court's opinion be reversed.

## CONCLUSION

This lawsuit was among the most closely watched civil-rights cases in recent memory.  Most Americans would likely be surprised to learn there is some dispute about which side "prevailed" in this case and chagrined to learn that the source of that doubt is a legal technicality engendered by Chicago's carefully timed surrender following a resounding loss in the United States Supreme Court.  The plaintiffs in this case performed exactly the role Congress envisioned when it adopted the fee-shifting provision of Section 1988, and they are entitled to a reasonable attorney's fee for the judgment they obtained and the service they provided to their fellow citizens.

Respectfully submitted,

William H. Mellor
Clark M. Neily III*
Robert J. McNamara
Institute for Justice
901 N. Glebe Road, Suite 900
Arlington, VA 22203
703.682.9320/703.682.9321

By: _____
    Clark M. Neily III


*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P.
        28.1(e)(2) or 32(a)(7)(B) because:

        [ X ] this brief contains 3,589 words, excluding the parts of the brief
        exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

        [    ] this brief uses a monospaced typeface and contains [*state the number
        of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
        32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.
        32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        [ X ] this brief has been prepared in a proportionally spaced typeface using
        *Microsoft Word 2007* in *14pt Times New Roman*; *or*

        [    ] this brief has been prepared in a monospaced typeface using [*state
        name and version of word processing program*] with [*state number of
        characters per inch and name of type style*].


Dated: February 22, 2011          _____
                                  William H. Mellor
                                  Clark M. Neily III*
                                  Robert J. McNamara
                                  Institute for Justice
                                  901 N. Glebe Road, Suite 900
                                  Arlington, VA 22203
                                  703.682.9320/703.682.9321

                                  *Counsel for Amicus Curiae*

## RULE 31(e) CERTIFICATE

Pursuant to Circuit Rule 31(e), counsel for the Amicus Curiae hereby certify that the foregoing Brief has been filed electronically and that it is available in non-scanned PDF format. An electronic copy has also been served on all counsel via the Court's CM/ECF System. The electronic copy has been scanned for viruses with Symantec Endpoint Protection, Small Business Edition, version 12.0.1001.95 and is free of viruses.

_____
William H. Mellor
Clark M. Neily III*
Robert J. McNamara
Institute for Justice
901 N. Glebe Road, Suite 900
Arlington, VA 22203
703.682.9320/703.682.9321

*Counsel for Amicus Curiae*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 22nd day of February, 2011, I caused this Brief

of Amicus Curiae to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

William N. Howard
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6415

*Counsel for Appellants*
*National Rifle Association of*
*America, Inc. and Gene A. Reisinger*

Alan Gura
GURA & POSSESSKY
101 North Columbus Street, Suite 405
Alexandria, Virginia 22314
(703) 835-9085

*Counsel for Appellants*
*Otis McDonald, Adam Orlov,*
*Colleen Lawson, David Lawson, and*
*Second Amendment Foundation, Inc.*

Mara S. Georges
Suzanne M. Loose
OFFICE OF THE CORPORATION COUNSEL
Appeals Division
30 North LaSalle Street, Room 800
Chicago, Illinois 60602
(312) 744-7764

*Counsel for Appellee*
*City of Chicago*

Stephen A. Kolodziej
BRENNER, FORD & MONROE
33 North Dearborn Street, Suite 300
Chicago, Illinois 60602
(312) 781-1970

*Counsel for Appellants*
*Kathryn Tyler, Van Welton, and*
*Brett Benson*

David G. Sigale
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, Illinois 60137
(630) 452-4547

*Counsel for Appellants*
*Otis McDonald, Adam Orlov,*
*Colleen Lawson, David Lawson, and*
*Second Amendment Foundation, Inc.*

Ranjit J. Hakim
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 701-8758

*Counsel for Appellee*
*Village of Oak Park*

I further certify that on this 22nd day of February, 2011, I caused the required number of bound copies of this Brief of Amicus Curiae to be filed with the Clerk of this Court and two copies of the same to be served on all counsel at the above listed addresses, via UPS Next Day Air.

_____
William H. Mellor
Clark M. Neily III*
Robert J. McNamara
Institute for Justice
901 N. Glebe Road, Suite 900
Arlington, VA 22203
703.682.9320/703.682.9321

*Counsel for Amicus Curiae*