IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.,
DR. KATHRYN TYLER, VAN F. WELTON, and BRETT BENSON,

Plaintiffs-Appellants,

v.

CITY OF CHICAGO,

Defendant-Appellee.

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.,
ROBERT KLEIN ENGLER, and DR. GENE A. REISINGER,

Plaintiffs-Appellants,

v.

VILLAGE OF OAK PARK and DAVID POPE, President,

Defendants-Appellees.

OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON,
DAVID LAWSON, SECOND AMENDMENT FOUNDATION,
INC., and ILLINOIS STATE RIFLE ASSOCIATION,

Plaintiffs-Appellants,

v.

CITY OF CHICAGO,

Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division
Nos. 08 CV 3645, 08 CV 3696, 08 CV 3697
The Honorable Milton I. Shadur, Judge Presiding
—————

**BRIEF OF DEFENDANTS-APPELLEES
CITY OF CHICAGO AND VILLAGE OF OAK PARK**
—————

MARA S. GEORGES
  Corporation Counsel
  of the City of Chicago
BENNA RUTH SOLOMON
  Deputy Corporation Counsel
MYRIAM ZRECZNY KASPER
  Chief Assistant Corporation Counsel
SUZANNE M. LOOSE
  Assistant Corporation Counsel
30 North LaSalle Street, Suite 800
Chicago, Illinois 60602
(312) 744-8519
Counsel for the City of Chicago

RAYMOND L. HEISE
Village Attorney of Oak Park
123 Madison Street
Oak Park, Illinois 60302
(708) 358-5660

ALEXANDRA SHEA
RANJIT HAKIM
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600
Counsel for the Village of Oak Park

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 10-3957, 10-3965, 11-1016
Short Caption: NRA, et al. v. City of Chicago; NRA, et al. v. Village of Oak Park; McDonald, et al. v. City of Chicago

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

      [ ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    Village of Oak Park

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Mayer Brown, LLP
    Klein, Thorpe & Jenkins, Ltd.

(3)    If the party or amicus is a corporation:
    i) Identify all its parent corporations, if any; and


    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

Attorney's Signature:                                  Date: 1/18/11
Attorney's Printed Name: Ranjit J. Hakim

    Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).     No

Address:         71 S. Wacker Drive, Chicago, IL 60606
Phone Number: 312-701-8758
Fax Number:   312-706-9124
E-Mail Address: rhakim@mayerbrown.com

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 10-3957, 10-3965, 11-1016
Short Caption: NRA, et al. v. City of Chicago; NRA, et al. v. Village of Oak Park; McDonald, et al. v. City of Chicago

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

    [ ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    Village of Oak Park

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Mayer Brown, LLP
    Klein, Thorpe & Jenkins, Ltd.

(3)    If the party or amicus is a corporation:
    i) Identify all its parent corporations, if any; and


    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

Attorney's Signature:                              Date: 1/18/11
Attorney's Printed Name: Alexandra Shea

    Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).    No

Address:        71 S. Wacker Drive, Chicago, IL 60606
Phone Number: 312-701-8398
Fax Number:  312-706-9318
E-Mail Address: ashea@mayerbrown.com

————

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    PLAINTIFFS ARE NOT "PREVAILING PARTIES" ENTITLED
    TO ATTORNEY'S FEES UNDER SECTION 1988. . . . . . . . . . . . . . . . 10

    A.    Plaintiffs Are Not Prevailing Parties Because There
        Was No Material Alteration Of The Legal
        Relationship Of The Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    B.    Plaintiffs' Arguments For "Prevailing Party" Status
        Fail. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        1.    Prevailing in the Supreme Court does not itself
            make plaintiffs prevailing parties in the litigation. . . . 23

        2.    The Court's decision in McDonald did not materially
            alter the legal relationship between the parties. . . . . . . 25

        3.    Repeal of the ordinances was voluntary because it
            was not pursuant to any legally enforceable ruling. . . . 36

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

# TABLE OF AUTHORITIES

———

Page(s)

## CASES

Baird v. Renbarger,
    576 F.3d 340 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Buckhannon Board & Care Home, Inc. v. West Virginia Department of
    Health & Human Resources,
    532 U.S. 598 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

District of Columbia v. Heller,
    554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Dupuy v. Samuels,
    423 F.3d 714 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Ekanem v. Health & Hospital Corp.,
    778 F.2d 1254 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Farrar v. Hobby,
    506 U.S. 103 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Federation of Advertising Industry Representatives, Inc. v. City of Chicago,
    326 F.3d 924 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Franzen v. Ellis Corp.,
    543 F.3d 420 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 24

Hanrahan v. Hampton,
    446 U.S. 754 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 23, 24

Hewitt v. Helms,
    482 U.S. 755 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 31

Lorillard Tobacco Co. v. Reilly,
    533 U.S. 525 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 38, 41

McDonald v. City of Chicago,
    130 S. Ct. 3020 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Palmer v. City of Chicago,
    806 F.2d 1316 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 24

Palmetto Properties, Inc. v. County of DuPage,
       375 F.3d 542 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 34, 43

People v. Dawson,
       934 N.E.2d 598 (Ill. App. Ct. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

People v. Foster,
       915 N.Y.S.2d 449 (N.Y. City Crim. Ct. 2010) . . . . . . . . . . . . . . . . . . . . . . . 28

Petersen v. Gibson,
       372 F.3d 862 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Rhodes v. Stewart,
       488 U.S. 1 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 30, 31

Richardson v. Penfold,
       900 F.2d 116 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 23

Riviera Distributors, Inc. v. Jones,
       517 F.3d 926 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Sole v. Wyner,
       551 U.S. 74 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13, 24, 39

Southworth v. Board of Regents,
       376 F.3d 757 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Thomas v. Fiedler,
       884 F.2d 990 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

United States v. Munsingwear,
       340 U.S. 36 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

United States v. Skoien,
       614 F.3d 638 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

United States v. Williams,
       616 F.3d 685 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

United States v. Yancey,
       621 F.3d 682 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Walker v. Calumet City,
    565 F.3d 1031 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

Young v. City of Chicago,
    202 F.3d 1000 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Zessar v. Keith,
    536 F.3d 788 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## STATUTES AND ORDINANCES

H.R. Rep. No. 94-1558 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

S. Rep. No. 94-1101 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

42 U.S.C. § 1988 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Chicago City Council, Journal of Proceedings, July 2, 2010 . . . . . . . . . . . . . . . . . . 41

Municipal Code of Chicago, Ill. § 8-20-010 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . 40

Municipal Code of Chicago, Ill. §§ 8-20-110, 8-20-140 (2011) . . . . . . . . . . . . . . . . . 5

Municipal Code of Oak Park, Ill. § 27-2-1 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . 40

Minutes of Regular Board Meeting, Village of Oak Park, July 19, 2010 . . . . . . . . 44

Village of Oak Park Ordinance No. 2010-0-47 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## RULES

Supreme Court Rule 43 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 24

Fed. R. App. P. 54(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# JURISDICTIONAL STATEMENT

———————————

The jurisdictional statements of plaintiffs-appellants are complete and correct.

# ISSUE PRESENTED

———————————

Whether plaintiffs are "prevailing parties" entitled to attorney's fees when their claims were dismissed as moot after a Supreme Court decision reversing judgment for defendants and remanding for further proceedings, but before any judgment or other order materially altering the legal relationship of the parties was entered in their favor on the merits of any of their claims.

# STATEMENT OF THE CASE

———————————

This appeal involves three lawsuits that challenged, on Second Amendment and other grounds, firearms restrictions in Chicago and Oak Park ordinances, including the prohibition of most handguns. Two were filed by the National Rifle Association of America, Inc., and several individuals (collectively, "NRA") against Chicago (No. 08 cv 3697) and Oak Park (No. 08 cv 3696). The third was filed against Chicago by Otis McDonald (No. 08 cv 3645), along with several other individuals, the Second Amendment Foundation, and the Illinois State Rifle Association (collectively, "McDonald").[1] The district court ruled that the Second Amendment applies only as a restriction on the federal government, and entered

———————————

[1] We refer to NRA and McDonald collectively as "plaintiffs."

judgment on the pleadings in favor of Chicago and Oak Park in all three cases.

This court affirmed. The Supreme Court granted McDonald's petition for writ of

certiorari. The Court's decision, issued on June 28, 2010, reversed this court,

holding that the Second Amendment binds state and local governments, and

remanded for further proceedings. See McDonald v. City of Chicago, 130 S. Ct.

3020 (2010).

NRA's petition was held until after McDonald was decided. On June 29,

2010, the Court granted NRA's petition based on McDonald and remanded to this

court for further proceedings. Separate Appendix to Brief for Plaintiffs-Appellants

National Rifle Association, et al. ("NRA Sep. App.") A-102 to A-103.[2]

In July 2010, both Chicago and Oak Park repealed their handgun bans. On

July 30, 2010, this court entered an order vacating the district court judgments for

Chicago and Oak Park, and remanding the cases to the district court with

instructions to dismiss them as moot. NRA Sep. App. A-104 to A-106. The district

court did so on October 12, 2010. Id. A-107 to A-108; McDonald R. 82.

NRA and McDonald subsequently sought attorney's fees under 42 U.S.C. §

1988 (2006). The district court denied those motions, ruling that the plaintiffs are

not "prevailing parties" entitled to attorney's fees because their lawsuits were

---

[2] NRA and McDonald each filed their own short and separate appendices, with many of the same documents, including the district court's Dec. 22, 2010 Memorandum Opinion and Order; its January 7, 2011 supplement; the Supreme Court's decision in McDonald; and the December 21, 2010 Transcript of Proceedings. When a document appears in both, we cite to the NRA's appendix because it has the lowest-numbered appeal.

dismissed as moot and they had no judgment resolving their claims in their favor. Brief and Required Short Appendix for Plaintiffs-Appellants National Rifle Association, *et.* [sic] *al.* ("NRA Br.") SA-1 to SA-13; Appellants' Brief and Required Short Appendix ("McDonald Br.") SA-14 to SA-17.

NRA and McDonald appealed the denial of the three fee petitions, and this court consolidated the three appeals.

## STATEMENT OF FACTS

_____

**Prior Proceedings in the District Court and Seventh Circuit**

These three lawsuits were filed to challenge Chicago's and Oak Park's handgun bans, along with some other restrictions on firearms. NRA I R. 1; NRA II R. 1; McDonald R. 1.[3] A few months after the lawsuits were filed, plaintiffs filed motions asking the district court to rule on the threshold question whether the Second Amendment applies to state and local governments. NRA I R. 24; NRA II R. 16; McDonald R. 43. The district court issued opinions ruling that the Second Amendment does not apply to state and local governments, based on Supreme Court and Seventh Circuit precedent squarely holding that the Second Amendment applies only to the federal government. NRA I R. 30; NRA II R. 26; McDonald R. 50. Chicago and Oak Park subsequently made oral motions for judgment on the pleadings in all three cases, Dec. 9, 2008 Tr. 10, which the district court granted,

_____

[3] We cite documents in the record in <u>NRA v. Village of Oak Park</u> as "NRA I R. __"; in <u>NRA v. City of Chicago</u> as "NRA II R. __"; and in <u>McDonald v. City of Chicago</u> as "McDonald R. __."

3

NRA I R. 36, 37; NRA II R. 38, 39; McDonald R. 60, 61.

This court affirmed, agreeing that it was bound by Supreme Court precedent ruling that the Second Amendment does not apply to state and local governments. NRA v. City of Chicago, 567 F.3d 856 (7th Cir. 2009).

**Supreme Court Proceedings**

McDonald and NRA filed petitions for writs of certiorari in the Supreme Court. CA7 R. 76 (No. 08-4241); CA7 R. 71 (No. 08-4243). The petition in McDonald v. City of Chicago, No. 08-1521, was granted, and the Court issued its decision on June 28, 2010. NRA Sep. App. A-1. The plurality held that "the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in [District of Columbia v. Heller, 554 U.S. 570 (2008).]" Id. A-44. Justice Thomas, concurring in part and concurring in the judgment, id. A-46, also held that the Second Amendment applies to state and local governments, but through the Privileges or Immunities Clause of the Fourteenth Amendment, rather than the Due Process Clause, id. A-101. Accordingly, the Court ruled that "[t]he judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings." Id. A-44 to A-45. On July 30, 2010, the Clerk transmitted a certified copy of the judgment to this court and awarded McDonald costs in the Supreme Court. Appellants' Separate Appendix ("McDonald Sep. App.") 96-97.

On June 29, 2010, the Court granted NRA's petition based on McDonald, remanded the case for further proceedings, and awarded NRA costs in the Supreme Court. NRA Sep. App. A-102 to A-103. On August 2, 2010, the Clerk transmitted a

certified copy of the judgment to this court.  CA7 R. 81 (No. 08-4243).

**Repeal of the Handgun Bans**

Meanwhile, on July 2, 2010, Chicago repealed its handgun ban and amended various other ordinance provisions relating to ownership, possession, and registration of firearms in Chicago.  See Chicago City Council, Journal of Proceedings, July 2, 2010, at 96235.  Under this ordinance, Chicago residents may lawfully possess handguns in their homes if they obtain a valid Chicago Firearms Permit and register their handguns.  See Municipal Code of Chicago, Ill. §§ 8-20-110, 8-20-140 (2011).

On July 19, 2010, Oak Park passed an ordinance repealing its handgun ban.  See Village of Oak Park Ordinance No. 2010-0-47.

**Proceedings on Remand**

On August 25, 2010, this court issued an order vacating the district court's judgments and remanding the cases to the district court with instructions to dismiss, in light of the repeal by Chicago and Oak Park of the firearms restrictions at issue in these lawsuits.  NRA Sep. App. A-104 to A-106.  On October 12, 2010, the district court dismissed all three lawsuits.  Id. A-107 to A-108; McDonald R. 82.

**Claims for Attorney's Fees**

On October 21, 2010, NRA filed a Motion for Entry of Schedule for Motion for Attorney's Fees.  NRA Sep. App. A-111.  Pursuant to the district court's order, NRA II R. 66, NRA, Chicago, and Oak Park filed memoranda on whether NRA is a prevailing party entitled to attorney's fees under 42 U.S.C. § 1988, NRA I R. 58;

NRA II R. 70, 71.  McDonald filed a motion to hold the NRA's fee petitions in

abeyance, which the district court denied.  NRA I R. 63, 71.

On December 22, 2010, the district court ruled that NRA is not a "prevailing

party" entitled to attorney's fees.  NRA Br. SA-1.  The court explained that the

"touchstone of the prevailing party inquiry . . . is the material alteration of the legal

relationship of the parties."  Id. SA-4 (quoting Sole v. Wyner, 551 U.S. 74, 82

(2007)).  Such material alteration occurs with "enforceable judgments" and "consent

decrees," both of which have "the necessary judicial imprimatur" on a defendant's

changed conduct.  Id. (quoting Buckhannon Board & Care Home, Inc. v. West

Virginia Department of Health & Human Resources, 532 U.S. 598, 605 (2001)).  The

district court noted that, since Buckhannon, this court has held that judicial rulings

on legal issues are insufficient to confer prevailing-party status where there is no

enforceable judgment or consent decree.  Id. SA-5 (citing Zessar v. Keith, 536 F.3d

788, 796 (7th Cir. 2008)).  In this case, "[t]here was no final court order requiring

[Chicago or Oak Park] to do anything" because the cases were dismissed as moot

before the district court had the opportunity to conduct any proceedings on remand.

Id.  The district court rejected NRA's claims to prevailing-party status based on

statements by Chicago's Mayor and Corporation Counsel, Oak Park's Village

Attorney, and other municipal officials about whether the former ordinances had

been, or would be, declared unconstitutional, since those statements did not

constitute "the essential judicial imprimatur."  Id. SA-9.  Nor did NRA's success in

the Supreme Court on the question of Second Amendment incorporation make it a

prevailing party within the meaning of 42 U.S.C. § 1988 because such a "judicial pronouncement . . . does not render the plaintiff a prevailing party" when there has been "[n]o material alteration of the legal relationship between the parties." Id. (quoting Farrar v. Hobby, 506 U.S. 103, 112-13 (1992)).

McDonald subsequently filed a Motion for Instructions Regarding Attorney Fees and Costs. McDonald R. 83. The court denied that motion and ruled that McDonald is not a "prevailing party" for the same reasons that NRA is not. McDonald Br. SA-14; see also NRA Br. SA-14 to SA-16.

## SUMMARY OF ARGUMENT
————————

Plaintiffs' claims became moot and were properly dismissed before they were resolved by judgment, consent decree, or other judicially enforceable order. The Supreme Court made clear in Buckhannon that the plaintiff is not a "prevailing party" in such circumstances. And in cases both before and after Buckhannon, the Court has denied attorney's fees to a plaintiff who receives no favorable judgment, consent decree, or other court ruling that alters the legal relationship between the parties. Here, plaintiffs did not prevail on any of their claims; and under a straightforward application of precedent, the district court properly declined to deem them prevailing parties entitled to attorney's fees under 42 U.S.C. § 1988.

This court should reject plaintiffs' efforts to water down settled law, especially plaintiffs' invitation to revisit many of the same arguments the Supreme Court expressly rejected in Buckhannon. When the correct standard is applied, it is clear that plaintiffs do not meet it. Despite prevailing in the Supreme Court on a

substantive ruling, even one of landmark constitutional significance, plaintiffs did not obtain a material alteration of the legal relationship of the parties. The cases routinely refuse to award attorney's fees to litigants who have prevailed at one stage of the litigation but never receive, or simply do not yet have, a judgment on the merits of their claims. The Supreme Court's award of costs does not bridge this gap. The standard for obtaining the costs in the Supreme Court is defined by a Court rule, and it is different from the test applied under section 1988. Supreme Court Rule 43 presumes that a party obtaining reversal is entitled to costs. Section 1988, however, turns on whether a judicial action has altered the legal relationship of the parties based on the final resolution of claims.

NRA and McDonald both strain to find in the Court's decision in <u>McDonald</u> the necessary material alteration of the legal relationship of the parties. The most extreme version of this argument misrepresents the holding there. <u>McDonald</u> held that the Second Amendment applies to state and local governments and reversed the judgment on the pleadings for Chicago and Oak Park, but this court will find nothing in the lengthy opinions that invalidates the ordinances or resolves any of plaintiffs' claims. Nor did the Court foreclose Chicago and Oak Park from presenting any additional defenses they might have wanted to raise on remand. Of course, the Court's decision was a judicial ruling, but it is settled that not every favorable ruling will support an award of fees. In particular, a change in the legal landscape – essentially, a declaratory judgment – is not enough. Neither NRA nor McDonald finds a hook within settled attorney's fee jurisprudence for a significant

constitutional ruling that is made before any legal claims are decided, when those claims are never resolved before the case is dismissed as moot.  Plaintiffs' reliance on tests of their own creation, rulings that were never made in these cases, and the standard governing qualified immunity miss the mark.  Many of these are as unworkable as the catalyst theory rejected in <u>Buckhannon</u>, and they are all inconsistent with the case law on prevailing-party status.

Moreover, Chicago's and Oak Park's repeals were voluntary precisely because no judgment required that conduct.  Chicago and Oak Park responded to <u>McDonald</u> by promptly re-evaluating their firearms ordinances in light of both that decision and <u>Heller</u>, which recognized an individual Second Amendment right to keep and bear arms in the home for self-defense purposes, and amended their firearms ordinances to comport with Supreme Court precedent while also ensuring the safety of Chicago and Oak Park residents.  This sort of self-assessment and correction is to be encouraged; and once the case is moot, there is no occasion for the court to assess the strength of either the claims or the defenses.  Beyond that, a sliding scale of voluntariness is just as unworkable as the catalyst theory the Court rejected in <u>Buckhannon</u>, precisely because it "is clearly not a formula for 'ready administrability'" and would result in exactly the kind of "second major litigation" the Court held a request for attorney's fees should not do.

## ARGUMENT

———

### PLAINTIFFS ARE NOT "PREVAILING PARTIES" ENTITLED TO ATTORNEY'S FEES UNDER SECTION 1988.

A district court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of its costs." 42 U.S.C. § 1988. Thus, a plaintiff's right to attorney's fees turns on whether he or she is a "prevailing party." While a district court's decision about attorney's fees is "usually reviewed for abuse of discretion," it is reviewed de novo "when that decision rests on the application of a principle of law." Zessar v. Keith, 536 F.3d 788, 795 (7th Cir. 2008). We agree review is de novo here.

In this case, plaintiffs' lawsuits were properly dismissed as moot since "repeal of a contested ordinance moots a plaintiff's injunction request," absent evidence that the provision will be re-enacted. Federation of Advertising Industry Representatives, Inc. v. City of Chicago, 326 F.3d 924, 930 (7th Cir. 2003). Even plaintiffs do not doubt that the cases were properly dismissed as moot under this standard – they did not object at the time this court ordered the cases dismissed, and they do not contend now that dismissal was in error. And it is quite settled that when a case becomes moot before liability is resolved by a final judgment, or some similar judicial action that marks a "material alteration of the legal relationship of the parties," the plaintiff is not a "prevailing party" entitled to fees.

Buckhannon, 532 U.S. at 604; accord Federation, 326 F.3d at 932.[4]  Because

plaintiffs had no such ruling before Chicago and Oak Park repealed their handgun

bans, they are not prevailing parties.

> ### A. Plaintiffs Are Not Prevailing Parties Because There Was No Material Alteration Of The Legal Relationship Of The Parties.

It is well established that the term "prevailing party," as used in federal fee-

shifting statutes like section 1988, includes only those parties that have achieved a

"judicially sanctioned change in the legal relationship of the parties." Buckhannon,

532 U.S. at 605.  And "[n]o material alteration of the legal relationship between the

parties occurs until the plaintiff becomes entitled to enforce a judgment, consent

decree, or settlement against the defendant." Farrar v. Hobby, 506 U.S. 103, 112-13

(1992).  While a plaintiff need not be successful on all claims to qualify as a

prevailing party, he or she must have obtained a "resolution of the dispute," and

"some relief on the merits of his claims." Id. at 111.  Plaintiffs do not meet these

standards.

In McDonald, the judgments of both the district court and this court were for

defendants.  Those judgments rested on the Supreme Court's precedent that the

Second Amendment applied only to the federal government.  To continue litigation

of their Second Amendment claims, plaintiffs presented that issue to the Supreme

---

[4] Buckhannon involved the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act of 1990, but the same standard governs under section 1988.  See, e.g., Buckhannon, 532 U.S. at 602-03 & n.4; Federation, 326 F.3d at 932 n.8.

Court, and the Court decided the preliminary legal issue upon which Chicago and Oak Park had been granted judgment on the pleadings – whether the Second Amendment binds state and local governments.  See NRA Sep. App. A-1 to A-2. The Court's resolution of that question in McDonald's favor was unquestionably a significant decision – both for its far-reaching impact on Second Amendment jurisprudence generally, as well as for this case, since that holding required reversal of this court's judgment in favor of Chicago and Oak Park.  But it was, nevertheless, a preliminary legal issue that did not resolve plaintiffs' claims against Chicago or Oak Park.  Even though it was a "favorable judicial statement of law in the course of litigation," that does not, standing alone, make a plaintiff a prevailing party when he does not go on to receive judgment on his claims.  Hewitt v. Helms, 482 U.S. 755, 763 (1987).  Indeed, even a "judicial pronouncement that the defendant has violated the Constitution" – which plaintiffs do not have here – "does not render the plaintiff a prevailing party" when it is "unaccompanied by an enforceable judgment on the merits."  Farrar, 506 U.S. at 112.  Neither does a declaratory judgment that does not "affect[ ] the behavior of the defendant toward the plaintiff."  Rhodes v. Stewart, 488 U.S. 1, 4 (1988) (per curiam).  Here, since the Court did not decide plaintiffs' claims that the handgun bans, and other laws, violate the Second Amendment, but only "remanded for further proceedings," NRA Sep. App. A-45, McDonald did not materially alter the legal relationship of the parties.

This rule, in fact, was settled long before Buckhannon.  The Court has

repeatedly held that interlocutory appellate rulings that do not resolve claims are "not the stuff of which legal victories are made." Hewitt, 482 U.S. at 760. In Hewitt, for example, the Court reversed an award of attorney's fees to a prisoner, where the "most that he obtained was an interlocutory ruling that his complaint should not have been dismissed for failure to state a constitutional claim." Id. Similarly, in Hanrahan v. Hampton, 446 U.S. 754 (1980) (per curiam), the Court ruled that no fees could be awarded based on favorable appellate court rulings that enabled plaintiffs there to proceed to trial because they did not "prevail[ ] on the merits of any of their claims." Id. at 758-59. As the Court explained, "[a]s a practical matter [plaintiffs were] in a position no different" than if they had "defeated the defendant's motion for a directed verdict" to begin with. Id. And in Sole v. Wyner, 551 U.S. 74 (2007), the Court denied attorney's fees to a plaintiff who had obtained a preliminary injunction allowing an expressive performance but went on to lose her request for permanent relief. That is because such a favorable substantive ruling may turn out to be only a "transient victory at the threshold of an action . . . if, at the end of the litigation, [plaintiff's] initial success is undone and she leaves the courthouse emptyhanded." Id. at 78.[5]

---

[5] Sole "express[ed] no view on whether, in the absence of a final decision on the merits of a claims for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." 551 U.S. at 86. Notwithstanding that reservation, Sole is an example of a case in which unquestionable success at one stage did not merit fees. Moreover, here plaintiffs cannot point to any relief akin to the preliminary injunction entered in Sole. And on the specific question whether fees can be awarded when the plaintiff obtains no judicial relief before the case becomes moot, Buckhannon is controlling.

To be sure, there was a period when this and other circuits had held that a plaintiff could be a prevailing party, notwithstanding its failure to obtain a judgment in its favor, if its lawsuit caused a defendant to abandon challenged legislation or conduct. But those days are long gone. The Supreme Court expressly held in <u>Buckhannon</u> that a plaintiff is not a prevailing party without such a judgment, regardless whether the defendant changes its conduct consistent with the plaintiff's demands. There, a nursing home sought to enjoin enforcement of a West Virginia fire safety law, alleging that it violated federal laws. <u>See</u> 532 U.S. at 600. While the suit was pending, the state legislature amended the law to eliminate the challenged provisions, and the case was dismissed as moot. <u>See</u> <u>id.</u> at 601. The nursing home sought attorney's fees, relying on the "catalyst theory," which posits "that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." <u>Id.</u> The Court rejected this theory as a basis for attorney's fees because the term "prevailing party" does not include "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." <u>Id.</u> at 600. The Court explained that a prevailing party "is one who has been awarded some relief by the court," <u>id.</u> at 603, and that "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." <u>Id.</u> at 604 (citations and quotations omitted). Justice

Scalia's concurrence added that "a judicial finding of liability was an understood requirement of 'prevailing,'" id. at 614, and there is no "prevailing party" in cases where "the merits of the plaintiff's case remain unresolved," id. at 617. Thus, the Court held that acting as a catalyst to bring about a desired change in the defendant's conduct was not a proper basis for fees because it "allows an award where there is no judicially sanctioned change in the legal relationship of the parties." Id. at 605.

This court, of course, must adhere to Buckhannon. Even McDonald, who preserves an argument that Buckhannon was wrong, agrees that it is not appropriate for this court to do anything other than follow it. See McDonald Br. 36. And Buckhannon, like the other cases we cite, makes clear that plaintiffs are not prevailing parties. They won a substantial victory when the Supreme Court decided the threshold question of Second Amendment incorporation in their favor, but they received neither a judicial pronouncement that Chicago and Oak Park violated the Constitution nor any other enforceable judicial relief. Thus, when Chicago and Oak Park repealed their handgun bans, they were acting voluntarily and not pursuant to any direction or requirement in any judgment, consent decree, or other judicial action that changed the legal relationship of the parties in this case.

Both before and after Buckhannon, this court has refused, time and again, to deem a plaintiff a prevailing party based on anything less than a court-approved final resolution of a claim. For example, in Federation, an advertising association

challenged, on federal preemption and First Amendment grounds, a Chicago ordinance that restricted alcohol and cigarette billboard advertising.  See 326 F.3d at 927.  The association moved for summary judgment, but before that motion was decided, the Supreme Court ruled in Lorillard Tobacco Co. v. Reilly, 533 U.S. 525 (2001), that a similar Massachusetts statute was preempted and violated the First Amendment.  See id. at 928.  The City decided to repeal based on "the risks of going forward in light of Lorillard," and the case was dismissed as moot.  Id.  The association's petition for attorney's fees was then denied.  See id.  This court affirmed the denial of attorney's fees, holding that even "[a]ssuming for the sake of argument" that the combination of the Supreme Court's decision in Lorillard and the association's motion for summary judgment caused the City to repeal, there was no "judgment that changed the legal relationship between the parties in this case – and that is what Buckhannon requires."  Id.

And in Zessar, this court rejected the argument that a voter was a prevailing party when he won a partial summary judgment ruling on his challenge to absentee voting procedures, prompting statutory amendments that mooted the case.  See 536 F.3d at 797.  This court explained that the summary judgment ruling "lacked the finality" necessary for prevailing-party status where there was no enforceable judgment directing the defendant "to do, or refrain from doing, anything."  Id.  Indeed, a long string of cases demonstrates that "prevailing party" status always turns on whether the court resolved a claim and afforded judicial relief.  See, e.g., Walker v. Calumet City, 565 F.3d 1031, 1034 (7th Cir. 2009) (plaintiff not

prevailing party when case dismissed as moot before court reached the merits of the claim); Franzen v. Ellis Corp., 543 F.3d 420, 430-31 (7th Cir. 2008) (plaintiff not a prevailing party where he received a jury verdict in his favor on liability, but no judgment in his favor because he failed to prove damages); Riviera Distributors, Inc. v. Jones, 517 F.3d 926, 928 (7th Cir. 2008) (defendant was "prevailing party" where case was dismissed with prejudice since it had "obtained a favorable judgment"); Dupuy v. Samuels, 423 F.3d 714, 725 (7th Cir. 2005) (reversing interim award of fees based on preliminary injunction because plaintiffs are not prevailing parties at stage where "further proceedings on the merits clearly are contemplated"); Petersen v. Gibson, 372 F.3d 862, 866 (7th Cir. 2004) (plaintiff not a prevailing party where there was "a judicial pronouncement that the defendant has violated the Constitution unaccompanied by 'judicial relief'" and it was a settlement instead that afforded plaintiff relief); Richardson v. Penfold, 900 F.2d 116, 119 (7th Cir. 1990) (obtaining reversal of summary judgment did not make plaintiff prevailing party entitled to fees); Palmer v. City of Chicago, 806 F.2d 1316, 1320-21 (7th Cir. 1987) (plaintiff not prevailing party where preliminary injunction was reversed on appeal, and plaintiff later lost case, despite order to defendant to allow inspection of files); Ekanem v. Health & Hospital Corp., 778 F.2d 1254, 1258 (7th Cir. 1985) (preliminary injunction does not make plaintiff prevailing party if it merely preserves the status quo and is not a determination on the merits).  So, too, here – the Court's ruling in McDonald put plaintiffs in the position they occupied before the district court granted judgment on the pleadings, but did not make them

"prevailing parties" for purposes of section 1988.

The only cases where this court has held a judicial ruling short of a final judgment or consent decree nevertheless achieves the required material alteration of the legal relationship of the parties have still involved judicial rulings that resolved the merits of the plaintiff's claims. For example, in Palmetto Properties, Inc. v. County of DuPage, 375 F.3d 542 (7th Cir. 2004), the district court had granted partial summary judgment for a developer, declaring a part of the challenged ordinance unconstitutional, see id. at 549. The County then urged the court to delay entering final judgment in order to amend its ordinance, and repealed portions of it. See id. at 551. This court determined that the summary judgment order "changed the legal relationship of the parties," id., and made plaintiffs prevailing parties, especially since the district court had delayed final judgment at the County's request, see id. at 550-51. In Zessar, this court distinguished Palmetto on just this basis, noting that even though the district court in Palmetto had held off on entering final judgment, it had "issued an order concluding that . . . portions of the zoning laws were constitutionally infirm, and enjoining their enforcement." 536 F.3d at 796.

Similarly, in Southworth v. Board of Regents, 376 F.3d 757 (7th Cir. 2004), the district court held that rules for allocating student activity funds were unconstitutional, but allowed time for amendments before entering judgment, see id. at 768. This court held that the students were prevailing parties, in part because "the district court's order allowing the University to adopt new standards

18

(and thus avoid a judgment against it) . . . caused the University to adopt the criteria and procedures" that were subsequently upheld, id. at 767, and also because of this court's ruling that some of those changed procedures remained unconstitutional, see id. at 769. Together, Palmetto and Southworth demonstrate the uncontroversial proposition that where a claim has been litigated and decided, a material alteration of the legal relationship has occurred, even if the defendant takes advantage of the opportunity to correct unconstitutional behavior before a final judgment is entered against it, and the change moots the case before final judgment is entered. But of course these are not the facts here, since plaintiffs' legal claims had not been decided.

Young v. City of Chicago, 202 F.3d 1000 (7th Cir. 2000) (per curiam), also involved judicial resolution of the legal claims at issue in a way that plaintiffs' claims were not resolved here. There, would-be demonstrators at the 1996 Democratic National Convention in Chicago obtained an injunction against enforcement of a security perimeter. See id. The City's appeal was dismissed as moot, since the convention was over. See id. This court determined that the demonstrators were prevailing parties because "they obtained the relief [they] sought," and the "defendant cannot defeat a plaintiff's right to attorneys' fees by taking steps to moot the case after the plaintiff has obtained [that] relief." Id. Plaintiffs here received no judicial relief. In short, under both the Supreme Court's cases and those from this court, plaintiffs are not prevailing parties in this case.

## B.    Plaintiffs' Arguments For "Prevailing Party" Status Fail.

Plaintiffs make several, overlapping attempts to show that they are prevailing parties, but these can be reduced to three major themes.[6]  Plaintiffs claim that their success in the Supreme Court itself makes them prevailing parties in the litigation; that the Supreme Court's decision materially altered the legal relationship between the parties; and that repeal of the ordinances was not voluntary.  None of these arguments seriously grapples with decisions from the Supreme Court, as well as this court, that explain exactly what is meant by "prevailing party."  Accordingly, these arguments should be rejected.

Before turning to these, we put to the side plaintiffs' attempts to build a case for prevailing-party status based on the same arguments that Buckhannon expressly rejects, in either the majority opinion or the concurrence or both.  For example, even in the sections of McDonald's brief that do not purport to be

---

[6]  Indeed, precisely because the arguments in both briefs are so similar, plaintiffs have failed to heed this court's order of January 6, 2011, urging them "to avoid unnecessary duplication by filing a joint brief or a joint appendix or by adopting parts of a co-party's brief."  See also n.2, supra.  McDonald, at least, thinks that "the two sets of Plaintiffs came to raise arguments that only somewhat overlap," McDonald Br. 4, but his assertions regarding the proceedings in the district court are irrelevant to the legal issue before this court.  McDonald asserts that he asked Chicago to provide certain information relating to his attorney's fees petition, was awaiting an answer when he learned that prevailing-party status was being litigated in the related NRA cases, and that he was not provided notice of the NRA proceedings.  See id. at 4-5.  Nonetheless, since we do not argue waiver, McDonald lost no opportunity to make his own arguments for prevailing-party status, even if NRA's motion was decided first.  Indeed, he acknowledges that nothing about the order of proceedings is a ground for treating him any differently from NRA for purposes of determining whether he is a prevailing party.  McDonald Dec. 29, 2010 Tr. 6-7.

preserving an argument for overruling <u>Buckhannon</u>, he stresses the precise portions of the legislative history that <u>Buckhannon</u> considered and rejected in determining where to draw the line for prevailing-party status. <u>Compare</u> McDonald Br. 19-23 (citing S. Rep. No. 94-1011, at 5 (1976), and H.R. Rep. No. 94-1558, at 7 (1976)), <u>with</u> <u>Buckhannon</u>, 532 U.S. at 607 (discussing S. Rep. No. 94-1101, at 5 and H.R. Rep. No. 94-1558, at 7). McDonald also relies on Webster's Dictionary to define "prevail," <u>see</u> McDonald Br. 22, even though <u>Buckhannon</u> makes clear that "prevailing party" is "a legal term of art" that must be defined by reference to Black's Law Dictionary. 532 U.S. at 603; <u>see also</u> <u>id.</u> at 615 (Scalia, joined by Thomas, JJ., concurring); <u>id.</u> at 617 (rejecting Webster's definition). In the same vein, McDonald refers to "the manner in which Americans understand the word 'prevail,'" McDonald Br. 29, while the Institute for Justice, as <u>amicus curiae</u>, adds that "[t]he average person not learned in the law would say" that plaintiffs are "prevailing part[ies]," Brief of <u>Amicus Curiae</u> Institute for Justice in Support of Appellants for Reversal ("Amicus Br.") 2. These observations are irrelevant, since they emphasize the same common, everyday meaning that <u>Buckhannon</u> determined was inapt. <u>See also</u> <u>Petersen</u>, 372 F.3d at 865 ("[P]revailing party" has a narrow legal definition that may seem counter-intuitive to one who believes that a party who 'succeeds' is necessarily one who 'prevails'").

McDonald's policy argument that failure to find he is a prevailing party "would dissuade attorneys from seeking to vindicate civil rights," McDonald Br. 29, was similarly rejected in <u>Buckhannon</u>. As the Court explained, the claim that

"rejection of the 'catalyst theory' will deter plaintiffs with meritorious but expensive cases from bringing suit" is "entirely speculative and unsupported by any empirical evidence." 532 U.S. at 608. That does not mean McDonald can escape Buckhannon's limitations by providing this court with what he considers to be empirical evidence on this issue. See McDonald Br. 38-41. Indeed, McDonald recognizes as much. See id. at 36. On the understanding that McDonald presents this argument simply to "preserv[e] [his] reversal argument for Supreme Court consideration," id., we do not address it further.

NRA does not urge that Buckhannon was wrongly decided but it likewise recycles arguments the Court rejected there. For example, NRA, like McDonald, believes that section 1988 should be interpreted to provide appropriate incentives to plaintiffs' lawyers, see NRA Br. 24, but as we explain, Buckhannon refused to interpret attorney's fees statutes as a system of incentives and disincentives, see 532 U.S. at 608. NRA also asserts that "the Supreme Court decision directly prompted the repeal of the ordinances." NRA Br. 27. NRA does not explain how a decision "directly prompt[ing]" legislative change provides a basis for attorney's fees in light of Buckhannon's holding that simply "prompt[ing]" repeal does not. Thus, even assuming NRA gets the causation right (a point we address in Part B.3, below), this looks like nothing quite so much as the catalyst theory expressly rejected in Buckhannon.

In short, this case is governed by Buckhannon, the Court's prior cases, and cases from this court, and not interpretive approaches and policy notions that have

already failed to persuade the Supreme Court about the meaning of the term "prevailing party." Those cases, without exception, insist on enforceable judicial relief on at least some aspect of the plaintiffs' legal claims. As we now explain, plaintiffs do not meet that standard, and they are therefore not entitled to attorney's fees.

### 1. Prevailing in the Supreme Court does not itself make plaintiffs prevailing parties in the litigation.

Both NRA and McDonald argue that their success in the Supreme Court makes them prevailing parties in the litigation. NRA contends that it "is a prevailing party because it prevailed in the Supreme Court." NRA Br. 13. And McDonald says "the notion that *McDonald* Plaintiffs did not prevail before the Supreme Court . . . is not credible." McDonald Br. 29. At the outset, so there is no uncertainty, we fully agree that plaintiffs prevailed in the Supreme Court. But that is not the question here. It is whether they are prevailing parties under section 1988. While NRA claims that "[i]n every sense that matters under Section 1988, NRA prevailed when the Supreme Court ruled in its favor and against the Cities," NRA Br. 12 (footnote omitted), any attempt to slide into prevailing-party status from momentum gained in the Supreme Court should be rejected. Numerous cases, most of which NRA and McDonald do even not cite, make clear that the plaintiff can succeed at one stage of the litigation and still not be a prevailing party under section 1988. See, e.g., Hanrahan, 446 U.S. at 758-59; Dupuy, 423 F.3d at 725; Petersen, 372 F.3d at 866; Richardson, 900 F.2d at 119.

23

This same error inheres in McDonald's argument that the Court's award of costs "confirms that [he] 'prevailed.'" McDonald Br. 26. Again, we agree McDonald prevailed in the Supreme Court, and that is why the Court awarded costs. His attempt to find broader significance in this routine order ignores that the Supreme Court's Rule on costs does not use section 1988's touchstone of "prevailing party." As relevant here, the Rule provides simply that "[i]f the Court reverses or vacates a judgment, the respondent or appellee shall pay costs unless the Court otherwise orders." S. Ct. R. 43.2. Thus, an award of costs in the Supreme Court reflects no more than that the petitioner has prevailed at that one stage of the litigation. Section 1988 requires far more than Rule 43.2. Indeed, it is well settled, as we explain above, that interim victories or success at one stage of the litigation, without ultimate success, will not support an award of attorney's fees under section 1988. See, e.g., Sole, 551 U.S. at 78; Hanrahan, 446 U.S. at 758-59; Franzen, 543 F.3d at 431; Palmer, 806 F.2d at 1320-21.

McDonald's further reliance on cases equating "prevailing party" for purposes of costs and fees, see McDonald Br. 27-28, is misleading. These cases involve Fed. R. App. P. 54(d) (or in one instance the Copyright Act), not Supreme Court Rule 43. But here, there has been no determination that McDonald is the "prevailing party" under Rule 54(d). Surely, he cannot bootstrap his request for section 1988 fees onto Rule 54 prevailing-party status he does not have. In fact, applying the cases McDonald cites, which recognize that prevailing-party status under Rule 54(d) is determined by the same standards used to assess prevailing-party status for

attorney's fees, plaintiffs are not prevailing parties under either.  McDonald gets it backward with an argument that seems to claim he is a prevailing party under both.

Running through both the NRA and McDonald briefs is the idea that winning in the Supreme Court ought to mean more than winning in other courts, at least when the decision is a significant constitutional ruling.  NRA, for example, says that the Supreme Court's ruling in <u>McDonald</u> is "a landmark decision," NRA Br. 3, and that it "changed the law," <u>id.</u> at 24, while McDonald says that it ushered in "a new constitutional order," McDonald Br. 24.  But we are aware of no case, statute, or rule that provides for fees based on that alone, and plaintiffs cite none.  Instead, the test is the same in that Court as in others, and it is, as we explain above, whether plaintiffs achieved a "judicially sanctioned change in the legal relationship of the parties." <u>Buckhannon</u>, 532 U.S. at 605.  Accordingly, we turn to plaintiffs' arguments on that issue.

> **2.  The Court's decision in <u>McDonald</u> did not materially alter the legal relationship between the parties.**

The most extreme version of plaintiffs' claims that the Supreme Court materially altered the legal relationship between the parties is McDonald's assertion that "[t]he Supreme Court's decision in this case itself struck down the handgun ban."  McDonald Br. 30.  That claim is false.  McDonald provides no quote, or even a cite, to anything in either the 38-page plurality opinion, or the 30-page concurring opinion by Justice Thomas, for this assertion.  There is none.  Even

though, as McDonald points out (without citation), the Court discussed its prior holding in Heller striking down Washington, D.C.'s handgun ban, and held the Second Amendment applies to Chicago and Oak Park, see id., the Court did not declare the Chicago or Oak Park ordinances unconstitutional.

Nor is it surprising that the Court ruled only on the incorporation question, and not also on the constitutionality of the ordinances.  This is the Court's normal practice when the lower courts have not passed on the merits of the claim, and in fact, McDonald did not even ask the Court to decide whether the ordinances ran afoul of the Second Amendment.  He presented only the question "[w]hether the Second Amendment right to keep and bear arms is incorporated as against the States by the Fourteenth Amendment's Privileges or Immunities or Due Process Clauses," Petitioners' Brief at i, McDonald v. City of Chicago, No. 08-1521 (U.S.), and asked that this court's judgment be reversed, see id. at 73.  NRA presented this same question, see Brief of Respondents the National Rifle Association of America, Inc., et al. in Support of Petitioners at i, McDonald v. City of Chicago, No. 08-1521 (U.S.), and similarly sought merely reversal, see id. at 47.

Indeed, McDonald himself has changed his position about what McDonald resolved since he filed his Rule 54 statement on remand to this court.  That statement set forth the ordinances McDonald challenged and went on to observe that the district court had "declined to order [Chicago] to brief an opposition to Plaintiffs' summary judgment motion."  CA7 R. 91 (No. 08-4241) at 1.  As a result, McDonald argued, this court "lack[ed] a complete record for review," and the case

needed to be "remanded to the District Court for further proceedings, so that Plaintiffs may be heard" on the "unresolved claims." Id. at 1-2. Nowhere in the statement did McDonald claim that his challenge to the former handgun ban was resolved. Instead, he put that claim in the same boat as the rest of his claims after McDonald was decided. McDonald got it right the first time – the handgun ban claim remained "unresolved" even after the Supreme Court's decision.

So lacking in any support in McDonald itself to show that the Court struck down Chicago's ordinance, McDonald resorts to drawing inferences from a footnote in our Supreme Court brief. That footnote observed that plaintiffs had addressed only the handgun ban in their Supreme Court briefs, and that there were "other issues" in their complaints that "the lower courts should be directed to address" "[i]f the judgment is reversed." McDonald Sep. App. 147-48 n.27. According to McDonald, this "acknowledged that there would be no need for the lower courts to address the handgun ban." McDonald Br. 10. The problems with relying on a footnote in our brief, necessarily submitted before the decision, as the basis for showing that the Court invalidated the ordinances are manifest. To begin, "differentiat[ing] between the handgun ban, and the 'other issues,'" id., does not acknowledge that a forthcoming decision on incorporation would also go on to resolve plaintiffs' claims directed to the handgun bans. Second, and more important, it does not matter what we believed the Supreme Court might order with respect to the handgun bans – to claim prevailing-party status based on the assertion that the Court invalidated the handgun bans, McDonald must point to

something actually in the Supreme Court's decision.

NRA does not expressly state that <u>McDonald</u> struck down the ordinances but holds up two state-court decisions that "have read <u>McDonald</u> as striking down the ordinances." NRA Br. 19. But the way to determine whether <u>McDonald</u> struck down the handgun bans is to read that decision itself. Moreover, the two cases NRA cites did not address a handgun ban. See <u>People v. Dawson</u>, 934 N.E.2d 598, 607 (Ill. App. Ct. 2010) (upholding Illinois aggravated unlawful use of a weapon statute against Second Amendment challenge); <u>People v. Foster</u>, 915 N.Y.S.2d 449, 450-52 (N.Y. Crim. Ct. 2010) (upholding New York City's firearms licensing law against Second Amendment challenge). The superfluous and incorrect statements about <u>McDonald</u> in those decisions cannot substitute for a holding by the Supreme Court. If <u>McDonald</u> had actually resolved plaintiffs' claims, plaintiffs would be able to cite at least one passage from <u>McDonald</u> to show it. That plaintiffs are reduced, instead, to a pre-decision footnote in our Supreme Court brief and some misstatements about <u>McDonald</u> in a couple state-court opinions speaks volumes.

NRA calls the Court's "remand[ ] for further proceedings" a "technical matter" because the ordinances were bound to fail under <u>Heller</u>. NRA Br. 18. According to NRA, the entry of final judgment was a "mere formality" to be completed as soon as the "mandate travels." <u>Id.</u> at 12; <u>see also</u> <u>id.</u> at 31 ("decisive defeat" in Supreme Court needed only to be "memorialized in a final judgment").[7]

---

[7] Under the Supreme Court's Rules, it does not issue a mandate to a federal court, and none was issued here. The Clerk sends to the lower federal court a certified copy of the judgment. See S. Ct. R. 45.3; CA7 R. 81 (No. 08-4243);

NRA complains that the "loser" in the Supreme Court should not be allowed to "snatch a fees victory from the jaws of defeat by the expedient of repealing its law faster than the mandate can travel."[8] These claims fail for the same reason as McDonald's assertion that the Court struck down the handgun ban. As we explain, the Court addressed only the threshold legal issue upon which judgment for the defendants had rested. Thus, the lower courts had more to do than enter a formal judgment; they had to oversee the litigation of, and then decide, the merits of plaintiffs' claims. Plaintiffs can cite no case finding that a substantive ruling on a threshold issue that does not resolve a single claim in a plaintiff's favor nevertheless makes the plaintiff a "prevailing party." And "timing is often the difference between prevailing party status and no fees at all especially in the post-

_____

McDonald Sep. App. 96.

[8] NRA also strangely contends that, on our submission regarding mootness, we "should have been able to procure a vacatur of the McDonald decision itself," NRA Br. 14, but the point of this argument is unclear. To the extent that NRA means to challenge our submission that repeal of the ordinances mooted the prior lawsuit, that objection comes way too late. This court ordered the district court to dismiss the cases as moot on August 25, 2010. NRA Sep. App. A-104 to A-106. And nothing about our position, nor the district court's order, suggests that a "Munsingwear vacatur" of "the McDonald decision itself" would be warranted. United States v. Munsingwear, 340 U.S. 36 (1950), recognizes that "[t]he established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." Id. at 39 (emphasis added). This same rule applies to cases that become moot on appeal from the district court to the courts of appeals. See, e.g., Thomas v. Fiedler, 884 F.2d 990, 996 (7th Cir. 1989). And indeed, this court relied on Munsingwear in vacating the district court's judgments after the ordinances were repealed. See NRA Sep. App. A-104. But neither Munsingwear nor any other case supports a request to the Supreme Court to vacate its own decision when the case becomes moot after it issues a decision.

*Buckhannon* era." Petersen, 372 F.3d at 867.

To be sure, "[t]he Supreme Court's decision . . . *was* a judicial ruling." NRA Br. 31. But as we explain, and even plaintiffs seem to understand, not every favorable judicial ruling makes the plaintiff a prevailing party. "[A] 'prevailing party' is one who has been awarded some relief by the court," NRA Br. 13 (internal quotations omitted) (quoting Buckhannon, 532 U.S. at 603); and "[a] declaratory judgment . . . will constitute relief, for purposes of Section 1988, if, and only if, it affects the behavior of the defendant toward the plaintiff," McDonald Br. 23 (internal quotations omitted) (quoting Rhodes, 488 U.S. at 4). That is why "[n]o material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." Farrar, 506 U.S. at 112-13.[9] Instead, "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." Buckhannon, 532 U.S. at 604 (citations and quotations omitted).

NRA focuses on the wrong part of this requirement in urging that "[t]here could be no higher or clearer 'judicial imprimatur on the change' [in the defendants' conduct] than the Supreme Court decision." NRA Br. 15. See also id. at 23 ("If a

---

[9] NRA's distinction of Farrar as "involv[ing] no catalytic effect," NRA Br. 29 (citation omitted) is odd, since NRA also attempts to distance itself from the catalyst theory squarely rejected in Buckhannon. Regardless, this misses the relevance of Farrar. Precisely because plaintiffs purport to rely on a judicial ruling, it is appropriate to examine whether that ruling achieves the "material alteration of the legal relationship between the parties" that Farrar held is necessary to make the plaintiff a prevailing party.

district court's ruling short of a final judgment confers prevailing-party status, then *a fortiori* a decision of the Supreme Court must do so as well."). We do not contend plaintiffs are missing a judicial ruling. What they lack is an enforceable judgment. McDonald makes similar mistake. He seems to think that "obtaining judicial protection of Second Amendment rights against State and local officials – including, in particular, against [Chicago] – . . . achieve[d] some of the benefit the parties sought in bringing suit." McDonald Br. 25 (citing Farrar, 506 U.S. at 109). Indeed, he claims to have "obtained the highest form of the declaratory relief sought in [his] complaint." Id. In both of these statements, McDonald means simply to highlight "the Supreme Court's recognition of a fundamental constitutional right." Id. at 29. Thus, both NRA and McDonald over-emphasize the source of the ruling, instead of its substance. And neither comes to terms with cases such as Hewitt and Rhodes, which hold that a declaratory judgment unaccompanied by an enforceable judgment is not enough for prevailing-party status. See Rhodes, 488 U.S. at 3-4; Hewitt, 482 U.S. at 761. See also Dupuy, 423 F.3d at 719 (interim fees must be based on "substantive relief that is not defeasible by further proceedings); Federation, 326 F.3d at 933 (ruling that "actually did not provide . . . any relief at all" did not confer prevailing-party status). Indeed, NRA does not cite Rhodes, and McDonald does not cite Hewitt.

NRA and McDonald also make several more modest attempts to identify how McDonald altered the legal rights of the parties. These are nothing more than attempts to water down what constitutes a material alteration in the legal

relationship of the parties and accordingly should be rejected. For example, NRA simply announces that "the lawsuit here changed the . . . legal relations between the parties." NRA Br. 23-24. While NRA does not elaborate on this thought, elsewhere it relies on the Court's broad holding that the Second Amendment "guarantee is fully binding on the States." Id. at 18 (citation omitted). McDonald makes a similar attempt to explain what has changed and describes it as "a meaningful and profound alteration in the legal relationship between the people of the United States and their State and local governments." McDonald Br. 24-25. The Institute for Justice's amicus brief echos this, claiming only a material alteration of the relationship "between the citizens and the government," not between the parties, when the Court "reverse[d] decades of circuit (and, indeed, Supreme Court) precedent." Amicus Br. 3.

These rhetorical statements are just other ways of describing a constitutional ruling akin to a declaratory judgment. It is not necessary to enter the debate on whether McDonald was more than a "positive statement of law" or "moral victory," or whether "[p]laintiffs, along with every individual in America today, benefit from the Supreme Court's McDonald opinion." McDonald Br. 24.[10] We fully acknowledge

---

[10] McDonald's view that McDonald is a "benefit" is an ideological position that we do not address. As a legal matter, however, his claim is demonstrably false. Not every "individual in America" enjoys Second Amendment rights. Heller itself recognized that "longstanding prohibitions on the possession of firearms by felons and the mentally ill," 554 U.S. at 626, were "presumptively lawful regulatory measures," id. at 627 n.26. On this basis, this court has held upheld laws that foreclose the rights of certain categories of individuals to have firearms, without exception for the Heller-recognized Second Amendment right to have a handgun in the home for self-defense purposes. See United States v. Yancey, 621 F.3d 682 (7th

that McDonald's impact is broad – Second Amendment rights may now be asserted against state and local governments as well as the federal government.  But nothing in Buckhannon or any other case defining "prevailing party" turns on the broader significance or reach of a legal determination short of judicially enforceable relief.  The focus is exclusively on whether an action with "judicial imprimatur" has materially altered, not the state of the law, but the legal relationship of the parties.  And here, while McDonald clearly altered the way in which Second Amendment law would apply to plaintiffs and everyone else in the country, it did not change the legal relationship between plaintiffs and defendants in these cases.  When plaintiffs stood in the district court seeking fees, they could point to no additional legal rights that come with a final judgment, such as the ability to enforce a judgment or bring contempt proceedings against defendants for non-compliance.  To the contrary, their claims had been dismissed as moot.  A decision that "clarified the governing principles of law and gave the [lower courts] guidance on the legal framework in which further proceedings ought to take place" does not make plaintiffs prevailing parties.  Dupuy, 423 F.3d at 723.

NRA and McDonald both stress that a final judgment is not always needed. See, e.g., NRA Br. 19; see also id. at 16 (claiming this court rejects elevating "form over substance").  And while that is true, it is settled that a judgment on the merits of a claim is the "normative judicial act that creates a prevailing party."  Zessar,

Cir. 2010) (habitual drug-users); United States v. Williams, 616 F.3d 685 (7th Cir. 2010) (convicted felons); United States v. Skoien, 614 F.3d 638 (7th Cir. 2010) (en banc) (domestic-violence misdemeanants).

536 F.3d at 796. Other judicial actions suffice only when they share the same type of finality and judicial enforceability, as we explain above. See, e.g., Buckhannon, 532 U.S. at 605.[11] That is precisely the rule that Palmetto follows, although NRA claims it uses an entirely different test. See NRA Br. 17. McDonald is more dramatic still, claiming that "[t]he current situation is indistinguishable from . . . Palmetto." McDonald Br. 31. NRA and McDonald are both wrong, for Palmetto applies the same test used in other cases. The difference is that the judgment that made the developer a prevailing party is nothing like the judgment here. In Palmetto, as we explain above, the district court, on summary judgment, "issued an order concluding that . . . portions of the zoning laws were constitutionally infirm, and enjoining their enforcement." Zessar, 536 F.3d at 796. Zessar also explains that Palmetto should be read in conjunction with the principles set forth by the Supreme Court and our prior cases." Id. at 798. In other words, Palmetto is an example of a rare circumstance in which another kind of "judicial act" exhibits "sufficient finality." Id. Indeed, Palmetto itself makes clear that "[d]efendants were free to moot the case before the summary-judgment ruling." 375 F.3d at 550. Of

---

[11] Both NRA and McDonald make versions of an argument that Buckhannon does not identify all types of relief that will make the plaintiff a prevailing party. See NRA Br. 13 ("'relief' . . . could include" the forms recognized in Buckhannon); McDonald Br. 23 (Buckhannon's "list is not exhaustive"). But there must always be a "resolution of a dispute which changes the legal relationship between [the plaintiff] and the defendant." Dupuy, 423 F.3d at 719 (citation omitted). In fact, the Court ruled nearly a decade before Buckhannon that "[n]o material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." Farrar, 506 U.S. at 112-13.

course, there was no summary judgment here for plaintiffs.  There was an important – landmark, even – constitutional ruling by the Supreme Court and then the cases were dismissed as moot.

Plaintiffs offer a variety of formulations of a test of their own creation, namely whether they "prevailed on the only issue that matters," NRA Br. 15, or "the critical substantive issue in the case," id. at 25; whether we "lo[st] on the only real issue," id. at 9, 30; or whether the decision "resolv[ed] the sole disputed substantive issue," id. at 27.  But any claim to prevailing-party status based on notions such as these is starkly inconsistent with the governing cases.  Beyond that, it is no more workable than "the nuanced 'three thresholds' test required by the catalyst theory," Buckhannon, 532 U.S. at 610, which Buckhannon rejected in part because "a request for attorney's fees should not result in a second major litigation," id. at 609 (citation omitted).  Requiring the district courts to determine how many issues are in the case, how important each of them is, and how seriously any of them was disputed is a sure recipe for major litigation on the issue of prevailing-party status.  Both the holding and the rationale of Buckhannon, therefore, preclude this approach.

NRA's musings about what might have been or could be enough in other circumstances are easily dispatched.  NRA contends it "would be entitled to fees if it had prevailed in the district court and had its victory affirmed by the Supreme Court, instead of losing in the district court before ultimately prevailing in the Supreme Court."  NRA Br. 23.  NRA goes on to say that "it makes no sense for

prevailing party status to turn on who won in the district court." Id.  With a small correction, this actually makes perfect sense.  If plaintiffs had obtained from any court an enforceable judgment that survived later proceedings, they would be prevailing parties.  Indeed, that is precisely what is meant by "prevailing party" under the fee-shifting statutes.  But judgments and relief NRA did not obtain, like "a TRO or preliminary injunction," id. at 24, do not factor in the equation.  Neither does the standard for qualified immunity of public officials.  See id. at 21; McDonald Br. 26.  That issue is governed by a different test from the one used to decide prevailing-party status.  "Public officials are shielded from liability if their conduct does not violate the clearly established rights of which a reasonable official would have known."  E.g., Baird v. Renbarger, 576 F.3d 340, 344 (7th Cir. 2009).  Like other efforts to shift the focus from judicial alteration of the legal relationship of the parties, these too should be rejected.

### 3. Repeal of the ordinances was voluntary because it was not pursuant to any legally enforceable ruling.

Finally, plaintiffs try to extract a test from the inverse of the holding in Buckhannon that fees will not be awarded where "the lawsuit brought about a voluntary change in the defendant's conduct."  532 U.S. at 600.  On plaintiffs' view, fees are available here because "there was nothing 'voluntary' about" the repeal of the ordinances challenged here.  NRA Br. 13.  See also id. at 20 ("The ordinances were not simply repealed after the Supreme Court's ruling but because of it.") (emphasis in original).  McDonald echoes this, contending that the Court's "decision

caused [Chicago]'s involuntary repeal of its handgun ban." McDonald Br. 18. <u>See also</u> <u>id.</u> at 25 ("the Supreme Court's opinion the forced City to rewrite" its ordinance).

This approach badly misconceives <u>Buckhannon</u>. That is why the precise argument attempting to trace prevailing-party status to statutory amendments "enacted not only following the district court's partial summary judgment order, but because of it" was rejected in <u>Zessar</u>. 536 F.3d at 797. <u>Buckhannon</u> identified the two possibilities for the test for prevailing-party status: a judgment on the merits or a court-ordered consent decree, on the one hand, and a voluntary change on the other. In context, it is plain that conduct is "voluntary" whenever no judicially enforceable judgment requires that conduct. This is clear throughout the opinions. For example, the Court concluded that the catalyst theory went farther than any circumstances it had previously recognized because "[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties. . . . [V]oluntary change in conduct . . . lacks the necessary judicial imprimatur . . . ." <u>Buckhannon</u>, 532 U.S. at 605. And the Court emphasized that "[n]ever have we awarded attorney's fees for a nonjudicial 'alteration of actual circumstances.'" <u>Id.</u> at 606 (citation omitted). The concurring opinion also identified changed circumstances – for example, death or bankruptcy of the defendant, which one would be hard-pressed to call voluntary – that are not enough to make the plaintiff the prevailing party. <u>See id.</u> at 615 (Scalia, J., concurring). All told, conduct that is not pursuant to court order is "voluntary" in the sense used in <u>Buckhannon</u>, and it

does not make the plaintiff a prevailing party. Certainly, <u>Buckhannon</u> should not be read to allow plaintiffs to substitute a sliding scale of voluntariness for the subjective, multi-faceted test the Court expressly rejected because it was unwieldy. <u>See</u> 532 U.S. at 609-10. Whether the defendant acted "because of" a court decision that does not order it to do anything "is clearly not a formula for 'ready administrability'" and would result in exactly the kind of "second major litigation" the Court held a request for attorney's fees should not produce. <u>Id.</u> at 609 (citation omitted).

In fact, the repeals here cannot be distinguished from the "good-faith attempt[ ]" to "maintain an effective ordinance that complies with the Constitution," and also "to avoid substantial litigation costs by removing a potentially unconstitutional law from the books," that was at issue in <u>Federation</u>. 326 F.3d at 931. There, the City admittedly amended its ordinance several times in response to court rulings, including <u>Lorillard</u>. As this court explained, one "can hardly fault the City for its attempts to craft an ordinance that passes constitutional muster and complies with judicial decisions." <u>Id.</u> And when the legislature does so before a judgment has been entered against it, it does so voluntarily.

Nor does voluntariness depend on the strength of the plaintiff's claims. Plaintiffs highlight the statement in <u>Buckhannon</u> that

> We cannot agree that the term "prevailing party" authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the "sought after destination" without obtaining any judicial relief.

Buckhannon, 532 U.S. at 606 (citation omitted).  According to NRA, this disqualifier

does not apply to a plaintiff with more than a nonfrivolous claim, a category NRA

puts itself in because it litigated an issue "all the way to the Supreme Court."  NRA

Br. 15.  McDonald likewise contends that "[a]s of [McDonald's issuance], there was

nothing 'potentially meritless' . . . about Plaintiffs' challenge to the handgun ban."

McDonald Br. 35.  Plaintiffs cannot cabin Buckhannon this way.  While the Court

described the facts of Buckhannon generically as a nonfrivolous but potentially

meritless case, it made clear that any case in which there is no judicially

enforceable relief will meet the same legal fate.  Numerous cases refusing to award

attorney's fees to plaintiffs, who like NRA and McDonald here, could claim to have

done much more than file a nonfrivolous lawsuit, confirm this reading of

Buckhannon.  See, e.g., Sole, 551 U.S. at 81 (preliminary injunction); Zessar, 536

F.3d at 797 (summary judgment rulings); Petersen, 372 F.3d at 864 (jury verdict).

        The strength of the defenses does not matter either.  NRA claims that

McDonald made the handgun bans "indefensible," NRA Br. 12, because Chicago and

Oak Park lost on incorporation issue, which it contends was "the only ground that

provided a basis for defending [the] law[s]," id. at 9; see also id. at 15 (Supreme

Court "reject[ed] the Cities' only legal defense"); id. at 20 (Chicago and Oak Park

"staked their defense on the incorporation issue"); id. (no "legal leg on which to

stand after McDonald").  But in fact, as the litigation played out, the Supreme

Court decided the overarching issue of incorporation, and other issues were never

litigated before the cases became moot.  NRA cannot avoid the effect of mootness

before judgment by relying on our characterization of the ordinances as "handgun ban[s]" or our characterization of <u>Heller</u> as holding that the federal government may not ban weapons in common use, NRA Br. 20 (citing Brief for Respondents City of Chicago and Village of Oak Park at 12, 14, 23, <u>McDonald v. City of Chicago</u>, No. 08-1521 (U.S.)).  For one thing, these statements are a far cry from "acknowledg[ing] that the Second Amendment as interpreted in <u>Heller</u> would be fatal."  NRA Br. 20.  For another, under the Supreme Court's judgment, Chicago and Oak Park remained free to raise defenses other than the argument that the Second Amendment does not bind state and local governments, including one that NRA alludes to – that there was a difference between their handgun bans and the one at issue in <u>Heller</u>.  <u>See id.</u>  Both Chicago and Oak Park allowed lawfully registered long guns in the home, and did not require that they be disassembled or bound by a trigger lock when in the owner's home or fixed place of business, <u>see</u> Municipal Code of Chicago, Ill. § 8-20-010 (2010); Municipal Code of Oak Park, Ill. § 27-2-1 (2010), whereas the Washington, D.C. ordinance at issue in <u>Heller</u> did not allow long guns in the home unless they were disassembled or bound by a trigger lock, <u>see</u> 554 U.S. at 575.  We had not pressed that defense in the district court, <u>see</u> NRA Br. 4, having won on the threshold question of Second Amendment incorporation before we even filed a brief.  But nothing in <u>McDonald</u> precluded us from pursuing other defenses going forward.

Nor does it matter, even if true, that Chicago and Oak Park repealed based on a belief that remaining defenses were not strong enough to carry the day.  <u>See</u>

NRA Br. 15.  Instead, that was a matter left to their own re-evaluation of the legal risks in light of both <u>McDonald</u> and <u>Heller</u> – precisely the type of "subjective motivations" that <u>Buckhannon</u> explicitly did not want considered.  532 U.S. at 609.  Whether the defenses would have been valid "will never be determined," but what we do know is that plaintiffs "reached the 'sought-after destination' without obtaining any judicial relief."  <u>Id.</u> at 606 (citation omitted).

On this issue as well, <u>Federation</u> is controlling.  <u>Federation</u> rejects the argument that the repeal there "was not voluntary" even if it was made because of "the combination of the Supreme Court's decision in <u>Lorillard</u> and [Federation's] own motion for summary judgment that was pending when <u>Lorillard</u> was decided."  326 F.3d at 933.  To the contrary, "<u>Lorillard</u> may support Federation's position, but it was not a judgment that changed the legal relationship between the parties in <u>this</u> case, and that is what <u>Buckhannon</u> requires."  <u>Id.</u>  Plaintiffs' attempted coupling fares no better here.  <u>McDonald</u> did not change the legal relationship between the parties in this case – as we explain above; and to the extent that plaintiffs' claim that the handgun bans were unconstitutional depends on <u>Heller</u>, Chicago and Oak Park were not parties to that case.  That means repeal was voluntary – even if it was intended to ensure "compliance with the rulings of the United States Supreme Court," Chicago City Council, Journal of Proceedings, July 2, 2010, at 96235, it was not pursuant to an enforceable judgment against defendants.

<u>Zessar</u> rejects a similar argument that legislative changes were

involuntarily.  Zessar maintained that the district court had declared election practices for absentee voters unconstitutional, and that the General Assembly's subsequent amendments "qualified him as a prevailing party because they were enacted not only following the district court's partial summary judgment, but because of it."  536 F.3d at 797.  This court explained that, because "the defendants had not been ordered to do, or refrain from doing, anything," the General Assembly "was still acting on its own volition in response to the proceedings in the lawsuit." Id. at 797-98.

In short, looking to whether plaintiffs' claims had merit or our defense did not have merit cannot be squared with Buckhannon.  Such tests evaluate not whether a court has resolved the plaintiff's claims and afforded relief, but whether the plaintiff had a more-than-nonfrivolous claim, whether a court ruling leaves any remaining defenses, and if so how strong those defenses are.  Moreover, these notions are just as unworkable as the catalyst theory or a test based on how voluntary the defendant's conduct is.  And beyond those significant obstacles, courts simply do not examine the merits of a moot case – not to decide it and not to determine whether the plaintiff is a prevailing party.

NRA also seems to complain that litigation choices by Chicago and Oak Park required plaintiffs to incur attorney's fees as well.  See NRA Br. 21.  But the availability of fees does not depend on how much effort plaintiffs expended before

the case was dismissed or how long it was between filing and dismissal.[12]  One –

and only one – thing matters, and that is judicially enforceable relief on at least

some aspect of the plaintiff's claims.  Thus, while NRA highlights <u>Palmetto</u>'s

characterization of <u>Buckhannon</u> as a case that became moot before "*any* substantive

rulings," <u>id.</u> at 16 (citing <u>Palmetto</u>, 375 F.3d at 550) (emphasis in <u>Palmetto</u>),

reliance on <u>Palmetto</u> mistakes both that case and <u>Buckhannon</u>.  As we explain

above, <u>Palmetto</u> involved far more than just a substantive ruling on a legal issue;

the district court there awarded partial summary judgment resolving the merits of

a claim.  Conversely, <u>Buckhannon</u>, as we also explain, did not turn on whether the

district court had made any substantive rulings but on the absence of judicially

enforceable relief.

Plaintiffs make much of post-<u>McDonald</u> statements by municipal officials – to

the press, during committee hearings, and during a City Council session held to

decide whether and how to amend the gun ordinances – about the impact of the

decision.  <u>See</u> NRA Br. 5-6; McDonald Br. 13-15.  But it does not matter how

<u>McDonald</u> was described outside the opinion itself; surely, if any official had

---

[12]  In fact, although the majority does not recount all the facts, NRA's
description of <u>Buckhannon</u> as a case in which "the mere filing of the lawsuit *itself*
prompted action by the defendant," NRA Br. 15, is not correct.  That case was filed
in October 1996, and an agreed temporary restraining order was entered on
November 1, 1996.  <u>See</u> 532 U.S. at 624 (Ginsburg, J., dissenting).  "[T]he parties
began discovery . . . ."  <u>Id.</u> at 601.  More than a year later, on January 2, 1998, the
damages claims were dismissed, and in February 1998, in response to defendants'
motion to dispose of the remainder of the case summarily, the District Court
determined that plaintiffs had presented triable claims."  <u>Id.</u> at 624 (Ginsburg, J.,
dissenting).  Less than a month later, the challenged provisions were repealed.

described McDonald as an across-the-board win for Chicago and Oak Park, that would not make it so.  And, in any event, the only statement plaintiffs cite that could be fairly characterized as demonstrating an understanding that McDonald held Chicago's ordinance unconstitutional was that of Alderman Toni Preckwinkle, who "referred to the Supreme Court justices that voted to strike down our handgun laws.'"  NRA Br. 6 (citation omitted).  But as we explain above, that misunderstands McDonald's holding and, moreover, is not authoritative on the holding of McDonald.

The rest of the statements plaintiffs cite are consistent with our submission that McDonald did not strike down the handgun bans.  Indeed, the Corporation Counsel could not have been more clear that "[t]he Supreme Court did not strike down any part of our ordinance," and it remained "in effect."  NRA Sep. App. A-121, to A-122.  Oak Park's Village Attorney was just as clear that "the Village's handgun ordinance was not overturned."  NRA Br. 7-8 (citing Minutes of Regular Board Meeting, Village of Oak Park, July 19, 2010 at 4).  The other statements demonstrate that municipal officials were responsibly examining the practical implications of McDonald and Heller on their firearms regulations.  For example, the Corporation Counsel considered the handgun ban to be "unenforceable," at least as a "practical matter," NRA Sep. App. A-122, and Chicago's Mayor was reported as describing the handgun ban as "effectively overturned," NRA Br. 15 (citation omitted), both of which mean that it had not been literally overturned.  Thus, while McDonald prompted Chicago and Oak Park to quickly enact new gun ordinances,

those swift legislative responses occurred based on the belief that the ordinances would be struck down, not because they already had been.  In short, Chicago and Oak Park officials recognized, and responded to, the handwriting on the wall.  As the district court explained, that "does not alone suffice to trigger a Section 1988 entitlement to attorney's fees."  NRA Br. SA-12.

## CONCLUSION

―――――

For these reasons, the district court's judgment should be affirmed.

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel
  of the City of Chicago

RAYMOND L. HEISE
Village Attorney
  of Oak Park


_____

SUZANNE M. LOOSE
Assistant Corporation Counsel
30 North LaSalle Street, Suite 800
Chicago, Illinois 60602
(312) 744-8519

Counsel for Chicago

_____

RANJIT HAKIM
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600

Counsel for Oak Park

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(B)(i)**

_____

In accordance with Fed. R. App. P. 32(a)(7)(C)(I), I certify that the Brief of the Defendants-Appellees City of Chicago and Village of Oak Park complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(i) because it contains 12,417 words, beginning with the words "JURISDICTIONAL STATEMENT" on page 1 and ending with the words "Respectfully submitted" on page 45.  In preparing this certificate, I relied on the word count of the word-processing system used to prepare the brief, which was WordPerfect 12.

_____
SUZANNE M. LOOSE, Attorney

**CERTIFICATE OF COMPLIANCE WITH 7TH CIR. R. 31(e)(1)**

_____

In accordance with 7th Cir. R. 31(e)(1), I certify that a digital version of the Brief of the Defendants-Appellees City of Chicago and Village of Oak Park has been furnished to the court.

_____
SUZANNE M. LOOSE, Attorney

**CERTIFICATE OF SERVICE**

_____

I certify that I caused the Brief of the Defendants-Appellees to be served by placing two bound paper copies and one computer disk containing the digital version in envelopes with sufficient postage affixed and directed to the persons named below at the addresses indicated, and by depositing the envelopes in the United States mail box located at 30 North LaSalle Street, Chicago, Illinois, 60602, before 5:00 p.m. on April 29, 2011.

_____
SUZANNE M. LOOSE, Attorney

**Persons served:**

Stephen P. Halbrook
Attorney at Law
Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030

Alan Gura
Gura & Possessky, PLLC
Suite 405
101 N. Columbus Street
Alexandria, VA 22314

David G. Sigale
Law Firm of David G. Sigale, P.C.
Corporate West I, Suite 300-3
4300 Commerce Court
Lisle, IL 60532

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn St., Suite 300
Chicago, IL 60602

William N. Howard
Freeborn & Peters
311 S. Wacker Drive, Suite 3000
Chicago, IL 60602

William H. Mellor
Clark M. Neily III
Robert J. McNamara
Institute for Justice
901 North Glebe Road
Suite 900
Arlington, VA 22203