Nos. 10-3957 and 10-3965 (Consolidated)

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., *et. al.*,

Plaintiffs-Appellants,

v.

CITY OF CHICAGO and VILLAGE OF OAK PARK,

Defendants-Appellees.
_____

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS
## NATIONAL RIFLE ASSOCIATION, *et. al.*
_____

*Appeal from the United States District Court for*
*the Northern District of Illinois, Eastern Division, Case Nos. 08-3696, 08-3697*
*Honorable Milton I. Shadur Presiding*

William N. Howard
Freeborn & Peters Llp
311 South Wacker Dr., Suite 3000
Chicago, Illinois 60606
Telephone: (312) 360-6415
Facsimile:  (312) 360-6996
*Counsel for NRA, et al.*
*NRA, et al. v. Village of Oak Park*

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd
33 North Dearborn Street, Suite 300
Chicago, IL 60602
Telephone: (312) 781-1970
Facsimile: (312) 781-9202
*Counsel for NRA, et al.*
*NRA, et al. v. City of Chicago*

Stephen P. Halbrook
3925 Chain Bridge Rd., Suite 403
Fairfax, VA   22030

Stephen P. Halbrook
3925 Chain Bridge Rd., Suite 403
Fairfax, VA   22030

*Counsel for Appellants:*
*National Rifle Association of America, Inc.*
*and Dr. Gene A. Reisinger*
*Case No. 10-3965*

*Counsel for Appellants:*
*National Rifle Association of America, Inc.,*
*Kathryn Tyler, Van Welton, and Brett*
*Benson, Case No. 10-3957*

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................. 1

ARGUMENT ..................................................................... 4

NRA WAS THE PREVAILING PARTY BASED ON
THE SUPREME COURT'S DECISION IN *MCDONALD* ........................................ 4

A.  Appellees Rely on an Overly Formalistic Reading
    of Section 1988 and Buckhannon ...................................... 4

B.  Under This Court's Section 1988 Doctrine,
    NRA Was the Prevailing Party ................................................. 8

C.  There Is No Material Difference Between the Question
    of Incorporation and the Substantive Question of the
    Constitutionality of the Handgun Bans. ............................. 17

CONCLUSION ................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Baird v. Renbarger,*
    576 F.3d 340 (7th Cir. 2009) ............................................................................. 14

*Buckhannon Bd. & Care Home, Inc. v. West Va. Dept. of Health & Human Res.,*
    532 U.S. 598 (2001) ................................................................................... passim

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) ................................................................................... passim

*Dupuy v. Samuels,*
    423 F.3d 714 (7th Cir. 2005) ............................................................................... 7

*Ekanem v. Health & Hospital Corp.,*
    778 F.2d 1254 (7th Cir. 1985) ............................................................................. 7

*Federation of Advertising Industry Representatives, Inc. v. City of Chicago,*
    326 F.3d 924 (7th Cir. 2003) ........................................................................ 6, 23

*Franzen v. Ellis Corp.,*
    543 F.3d 420 (7th Cir. 2008) ............................................................................... 7

*Hanrahan v. Hampton,*
    446 U.S. 754 (1980) ............................................................................................ 6

*Hewitt v. Helms,*
    482 U.S. 755 (1987) ............................................................................................ 6

*McDonald v. City of Chicago,*
    130 S. Ct. 3020 (2010) .............................................................................. passim

*NRA, et al. v. Oak Park,*
    617 F. Supp. 2d 752, 753 (2008) ...................................................................... 10

*Palmer v. City of Chicago,*
    806 F.2d 1316 (7th Cir. 1986) ............................................................................ 6

*Palmetto Properties, Inc. v. County of DuPage,*
    375 F.3d 542 (7th Cir. 2004) ........................................................... 2, 9, 15, 16

i

*Petersen v. Gibson,*
    372 F.3d 862 (7th Cir. 2004) ................................................................ 7

*Richardson v. Penfold,*
    900 F.2d 116 (7th Cir. 1990) ................................................................ 7

*Riviera Distributors, Inc. v. Jones,*
    517 F.3d 926 (7th Cir. 2008) ................................................................ 7

*Sole v. Wyner,*
    551 U.S. 74 (2007) ...................................................................... 1, 3, 7

*Southworth v. Bd. of Regents of Univ. of Wis. Sys.,*
    376 F.3d 757 (7th Cir. 2004)) ............................................................ 9, 17

*Texas State Teachers Assn. v. Garland Indep. Sch. Dist.,*
    489 U.S. 782 (1989) ........................................................................ 1, 3

*United States ex rel. Lawrence v. Woods,*
    432 F.2d 1072 (7th Cir. 1970) ............................................................ 12

*Zessar v. Keith,*
    536 F.3d 788 (7th Cir. 2008) ............................................................. 13

**STATUTES**

42 U.S.C. § 1988 ........................................................................ passim

## INTRODUCTION

The National Rifle Association was the prevailing party in this case for purposes of 42 U.S.C. § 1988, for the obvious reason that it prevailed in the Supreme Court and the Cities immediately capitulated in light of the judicial imprimatur on the NRA's position. In other words, the NRA's landmark victory in the Supreme Court in *McDonald* effected a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute" — "[t]he touchstone of the prevailing party inquiry." *Sole v. Wyner*, 551 U.S. 74, 83 (2007) (quoting *Texas State Teachers Assn. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793-793 (1989)). Here, NRA obtained from the Supreme Court a final judicial determination, in its favor, on the merits of the single, controlling issue in this case. That decision materially altered the legal relationship of the parties as a matter of both form and substance. As a matter of form, the Cities went from the proud owners of a judicial dismissal of the NRA's claims with res judicata effect to the losers in a landmark Supreme Court decision that eliminated their only serious legal basis to defend the ordinances. As a matter of substance, the NRA's victory was even more obvious. The NRA prevailed in the Supreme Court on the merits of the Second Amendment incorporation issue — thereby defeating the Cities' only defense. Indeed, so central was the incorporation issue to the Cities' legal defense that they capitulated faster than the mandate could travel to the District Court.

The Cities' effort to suggest that the alacrity with which they surrendered in light of *McDonald* deprives the NRA of prevailing party status is frivolous.

The Cities' effort to deny the common sense conclusion that a party that prevails in the Supreme Court only to see its adversary capitulate is, in fact, a "prevailing party" depends on two inapposite lines of precedent. The first involves the so-called catalyst theory and situations in which a defendant voluntarily changes its conduct in the face of a filing of a lawsuit. But there is an obvious and outcome determinative difference between an early voluntary change in conduct and a capitulation after a judicial decision definitively disposing of a defendant's sole legal defense. This Court has recognized this difference is cases such as *Palmetto Properties, Inc. v. County of DuPage*, 375 F.3d 542 (7th Cir. 2004). The Cities' also invoke cases in which a plaintiff secures an early appellate victory only to lose on the merits. No amount of judicial alchemy can turn the ultimate loser in the case into a "prevailing party," but that has nothing to do with an appellate victory that presages not ultimate defeat, but total capitulation. In that case, nothing in Section 1988, *Buckhannon* or common sense precludes treating the prevailing party in the Supreme Court as the prevailing party in the litigation.

There is no great need for this Court to determine whether *McDonald* left the Cities with any room to defend their ordinances. Their actions speak louder than their words, and those actions – the repeal of the relevant ordinances – clearly

resulted from judicial imprimatur, not wholly voluntary conduct. But, in all events, it is clear that *McDonald* together with *District of Columbia v. Heller*, 554 U.S. 570 (2008), left the Cities with no option but to recognize defeat. In *Heller*, the Supreme Court struck down the District of Columbia's ban on the possession of handguns in the home. In *McDonald*, the Supreme Court observed that Chicago and Oak Park "have laws that are similar to the District of Columbia's, but Chicago and Oak Park argue that their laws are constitutional because the Second Amendment has no application to the States." *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026 (2010). The *McDonald* Court rejected the Cities' argument, holding that "the Second Amendment right is fully applicable to the States." *Id.* *McDonald* conferred prevailing party status on NRA because it was a "court-ordered 'change in the legal relationship between the plaintiff and the defendant.'" *Buckhannon Bd. & Care Home, Inc. v. West Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604 (2001) (quoting *Texas State Teacher's Assn.*, 489 U.S. at 792) (brackets omitted). *Accord Sole*, 551 U.S. at 86. Prior to *McDonald*, the Cities' handgun bans were not subject to the Second Amendment and the *Heller* precedent; after *McDonald*, they were. By holding that the Second Amendment applies to the States, *McDonald* rejected the Cities' lone argument for distinguishing *Heller* and effectively determined that the Cities' handgun bans were unconstitutional.

# ARGUMENT

## NRA WAS THE PREVAILING PARTY BASED ON
## THE SUPREME COURT'S DECISION IN *MCDONALD*

**A.    Appellees Rely on an Overly Formalistic Reading of Section 1988 and *Buckhannon*.**

Appellees adopt a reading of Section 1988 and *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Res.*, 532 U.S. 598 (2001), so remarkably formalistic, it gives wooden formalism a bad name.  The City of Chicago and Village of Oak Park (collectively, "the Cities") argue that, by repealing their handgun bans after and because of the Supreme Court's judgment in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), but before the mandate could travel back to the district court for any further judicial action, they deprived NRA of prevailing-party status.  This is not just wrong; it is nonsense.  When a defendant contests its liability all the way to the Supreme Court and loses, and then capitulates before the case can return to the lower court, the civil rights plaintiff is the prevailing party as a matter of form and substance.

The Cities' effort to invoke cases involving the catalyst theory and cases where a defendant changes its policy before any meaningful judicial action is wholly misplaced.  The catalyst for the cities' repeal was not the filing of lawsuit by the NRA, it was the Supreme Court's decision in *McDonald*.  Thus, *Buckhannon* and its rejection of the catalyst theory have no relevance here.  This was not a voluntary

4

repeal based on the mere filing of a lawsuit. NRA is a prevailing party because it prevailed in the Supreme Court — not because its lawsuit, itself, led the Cities to repeal their bans voluntarily.

Nothing in *Buckhannon*, however, remotely contemplates that a municipality could litigate a case all the way to the Supreme Court, be dealt a stinging appellate defeat that effectively renders the municipality's statute unconstitutional, and then avoid attorney's fees by the simple expedient of repealing its law before the lower courts can enforce the Supreme Court's judgment. Indeed, this case is light years removed from *Buckhannon*. Unlike in *Buckhannon*, the Cities did not decide to change their challenged conduct voluntarily because NRA simply filed a lawsuit. They changed their policies because, after litigating the case all the way to the Supreme Court, a Supreme Court decision forever changed the legal relationship between the parties and gave the Cities no choice. *Buckhannon* and its progeny govern the distinct situation in which a case settles in the early stages of litigation before meaningful judicial action. It has no application to a situation where resolution follows the most meaningful judicial action available in our system – a Supreme Court decision that clearly marks the victor as a prevailing party.

Indeed, each case that the Cities cite in support of their argument is inapposite. In their brief (Br. 10-19), the Cities cite cases that, among other things, involve parties retreating early in the litigation process, *see, e.g., Buckhannon*,

involve a party that repealed its law based on a quickly intervening Supreme Court decision litigated by others, *see, e.g., Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d 924 (7th Cir. 2003), or involve a party that initially prevailed at the preliminary injunction stage, but lost in seeking permanent relief, *see, e.g., Palmer v. City of Chicago*, 806 F.2d 1316 (7th Cir. 1986).

The Cities fare no better in invoking cases that involve an early appellate victory by a plaintiff that is followed by an ultimate and complete victory for the defendant. Obviously, a statute that awards fees only to a prevailing party does not authorize fees to a plaintiff whose claims are fully litigated and completely rejected. But an appellate victory for the plaintiff followed by the defendants' near instantaneous capitulation is a wholly different matter. Such a practical victory after a judicial determination on an outcome determinative issue makes the plaintiff the prevailing party as a matter of both form and substance.

Thus, the Cities' reliance (Br. 13) on decisions involving interlocutory appellate rulings that did not produce immediate and ultimate victories is misplaced. *See Hewitt v. Helms*, 482 U.S. 755, 757, 760-761 (1987) (holding that "a party who litigates to judgment and loses on all of his claims" is not a prevailing party and stating that the "real value of the judicial pronouncement . . . is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*") (emphasis added); *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980) (*per*

*curiam*) (ruling that plaintiffs were entitled to a trial in a wrongful death case, but that they were not at that point prevailing parties because "[t]he jury may or may not decide some or all of the issues in favor of the respondents"); *Sole v. Wyner*, 551 U.S. 74, 86 (2007) (preliminary injunction was entered in favor of plaintiff, but a permanent injunction was denied because the constitutionality of the challenged law was upheld). The Cities string cite to other cases where, unlike here, the plaintiff lost or got no relief.[1] Not one of the cases that the Cities cite deals with the precise issue at hand in this case: a substantive appellate victory for the plaintiffs followed by the defendant's complete capitulation. The Cities cannot try to mix and match cases rejecting the catalyst theory with cases failing to award fees for preliminary victories followed by ultimate defeat. When a plaintiff obtains complete victory, not by virtue of the defendants' voluntary action before a meaningful

---

[1]   *See* Cities Br. 16. *Franzen v. Ellis Corp.*, 543 F.3d 420, 430-31 (7th Cir. 2008) (plaintiff awarded no damages or judgment in his favor, and the attorney's fee statute there (unlike § 1988 here) explicitly required a "judgment"); *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) (party who "threw in the towel" and consented to a dismissal not a prevailing party); *Dupuy v. Samuels*, 423 F.3d 714, 720 (7th Cir. 2005) (rejecting award of interim attorney's fees where preliminary injunction entered but no decision on the merits); *Petersen v. Gibson*, 372 F.3d 862, 866 (7th Cir. 2004) (plaintiff awarded no damages in first trial and defendant paid, out of court, "a nuisance settlement to avoid the expense of a second trial on damages"); *Richardson v. Penfold*, 900 F.2d 116, 119 (7th Cir. 1990) ("A procedural victory that may be a way station to utter substantive defeat creates no right to fees."); *Ekanem v. Health & Hospital Corp.*, 778 F.2d 1254, 1258 (7th Cir. 1985) ("[B]ecause the preliminary injunction was reversed and Ekanem's individual claim failed both at trial and on appeal, he cannot be characterized as a 'prevailing party.'").

judicial action, by virtue of a hard fought Supreme Court victory, then attorneys' fees for that prevailing party should follow as a matter of course.

**B.    Under This Court's Section 1988 Doctrine, NRA Was the Prevailing Party.**

*Buckhannon* denied "prevailing party" status to a party that "achieved the desired result because *the lawsuit* brought about a voluntary change in the defendant's conduct." 532 U.S. at 600 (emphasis added.) The Cities quote these words, Cities Br. 14, as if the NRA's lawsuit, rather than *McDonald* decision, brought about a change, and as if that change was truly voluntary. The Cities further confuse "the lawsuit" for the Supreme Court decision when they assert that "NRA does not explain how a decision 'directly prompt[ing]' legislative change provides a basis for attorney's fees in light of *Buckhannon*'s holding that simply 'prompt[ing]' repeal does not." Cities Br. 22 (citing NRA Br. 27). But *Buckhannon* did not concern a definitive ruling prompting the repeal, and instead involved "a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief." 532 U.S. at 606. Nor can it be said that a Supreme Court ruling that the Second Amendment right to possess handguns applies to localities "lacks the necessary judicial imprimatur" as applied to local handgun bans. *See* Cities Br. 37 (quoting *Buckhannon*, 532 U.S. at 605).

The Cities correctly refer to "the uncontroversial proposition that where a claim has been litigated and decided, a material alteration of the legal relationship has occurred, even if the defendant takes advantage of the opportunity to correct unconstitutional behavior before a final judgment is entered against it, and the change moots the case before final judgment is entered." Cities Br. 19 (citing *Palmetto Properties, Inc. v. County of DuPage*, 375 F.3d 542 (7th Cir. 2004), and *Southworth v. Bd. of Regents of Univ. of Wis. Sys.*, 376 F.3d 757, 768 (7th Cir. 2004)). That proposition is not only correct; it is a proposition that makes the NRA's entitlement to fees manifest.

The Cities attempt to escape the clear implications of that proposition with an erroneous qualification: "But of course these are not the facts here, since plaintiffs' legal claims had not been decided." Cities Br. 19. But the only legal claim that was seriously disputed – the Cities' claim that the Second Amendment does not apply to States and localities – was decided against the Cities. Indeed, the Cities have not suggested what was left to be decided besides what the Supreme Court already decided in *Heller* – that the Second Amendment prohibits a handgun ban by localities. That is presumably why the Cities wasted no time in capitulating. The Cities claim that "the lower courts had more to do than enter a formal judgment; they had to oversee the litigation of, and then decide, the merits of plaintiffs' claims." Cities Br. 29. Just what this litigation would consist of is a

mystery. Between *Heller* and *McDonald* there was no litigable issue left. And the cities' actions speak much louder than their attempts to hypothesize a remaining defense for their unconstitutional and repealed policies.

The Cities suggest that "NRA and McDonald over-emphasize the source of the ruling, instead of its substance." Cities Br. 31. But that emphasis is appropriate for two reasons. First, the Cities' effort to equate a voluntary reaction to the mere filing of a lawsuit with a capitulation in the wake of a Supreme Court decision is so audacious that it demands a response that cannot help but emphasize that the Supreme Court itself has spoken on the dispositive issue in this case. But second, emphasis on the Supreme Court is necessary because the Cities seek to capitalize on a quirk of Supreme Court procedure. The fact that the Supreme Court tends not to order relief itself and instead orders that "the case is remanded for further proceedings," *McDonald*, 130 S. Ct. at 3050, is the crux of the Cities' theory. That is what allowed the Cities to repeal their ordinances before the mandate reached the lower courts.[2]

_____

[2] Appellee's argument also fails because it is wholly inconsistent with the procedural history of the case. In the District Court, Appellants filed Rule 16 Motions specifically asking the Court to find that "the Second Amendment's guaranty of the right of the people to keep and bear arms, as construed in *Heller*, also extends to [Appellees] via the Fourteenth Amendment." *NRA, et al. v. Oak Park*, 617 F. Supp. 2d 752, 753 (2008). In ruling on Appellants' Rule 16 Motion, the District Court "decline[d] to rule that the Second Amendment is incorporated into the Fourteenth Amendment so as to be applicable to the Chicago or Oak Park ordinances." Id. at 754. Hence, it is clear from the procedural history of the case that the Parties understood and agreed that the incorporation issue was the determinative question in the case.

10

The absurdity of the Cities' position is illustrated by the fact that it rests entirely on the happenstance that they prevailed in the District Court and this Court before their Supreme Court defeat. Had they lost in the District Court and the District Court entered relief for the plaintiffs only to be reversed by this Court, the Cities' concede that fees would be appropriate.[3] But that makes no sense. What matters is what the Supreme Court decided, not the happenstance of whether the Supreme Court ruling was in accord with the District Court in the case. Indeed, plaintiffs' position would have the perverse effect of denying fees to the prevailing plaintiff whose Supreme Court victory changed the governing law, while granting fees to the plaintiff whose Supreme Court victory merely confirmed the status quo. That result is perverse and not compelled by text or precedent. The NRA is a "prevailing party" under any sense of the term and if there is a need for a meaningful judicial action to distinguish *Buckhannon* surely a Supreme Court victory suffices.

*McDonald*, the Cities contend, was merely "a constitutional ruling akin to a declaratory judgment." Cities Br. 32. That is wrong on two levels. First, it wholly

_____

[3] Chicago basically agrees with this scenario, stating: "With a small correction, this actually makes perfect sense. If plaintiffs had obtained from any court an enforceable judgment that survived later proceedings, they would be prevailing parties." Cities Br. 36. But Chicago would turn the status of the judicial hierarchy upside down, by making a Supreme Court ruling binding only if formalized on remand in an order by a district court.

ignores the Cities' capitulation in light of *McDonald* which clearly benefitted the NRA plaintiffs in concrete ways. As already noted, decisions rejecting a catalyst theory at a lawsuit's inception, do not suggest that courts should ignore the real world consequences of repeals prompted by judicial victories for the plaintiffs. Second, this analysis ignores the obligation of state and local officials to obey the Constitution when their only defense has been judicially repudiated. At the very core of our constitutional system is the legal duty to cease conduct which the judiciary, especially the Supreme Court of the United States, has declared to be unconstitutional. *See United States ex rel. Lawrence v. Woods*, 432 F.2d 1072, 1075 (7th Cir. 1970) (citation omitted). The legislative branches and executive heads of Chicago and Oak Park respected these basic features of our constitutional system, recognized that no credible reading of *McDonald* would be consistent with the constitutionality of the ordinances, and promptly repealed the ordinances.

The Cities state inconsistently that "while *McDonald* clearly altered the way in which Second Amendment law would apply to plaintiffs and everyone else in the country, it did not change the legal relationship between plaintiffs and defendants in these cases." Cities Br. 33. That is wrong as a matter of form and substance. As a matter of form, the decision forever altered the legal relationship between the parties. Absent that adverse Supreme Court decision, the Cities would be the proud owner of a judicial judgment against the NRA with res judicata effect. Thanks to

*McDonald*, that is not the case.  As a matter of substance, *McDonald* not only changes the relationship between every citizen and every municipality, it particularly changes the relationship between the NRA and two of the three municipalities in the country that saw fit to impose a handgun ban.

The Cities concede that "a final judgment is not always needed," adding that "a judgment on the merits of a claim is the "normative judicial act that creates a prevailing party."  Cities Br. 33 (quoting *Zessar v. Keith*, 536 F.3d 788, 796 (7th Cir. 2008)).  The Cities further concede that "[o]ther judicial actions [may] suffice," Cities Br. 34 & n.11, and indeed that could include any "material alteration of the legal relationship of the parties," such as "enforceable judgments on the merits," "court-ordered consent decrees," or some other "judicially sanctioned change in the legal relationship of the parties."  *Buckhannon*, 532 U.S. at 604-605.

Despite the clarity of the Supreme Court decision in this case, the Cities make the policy argument: "Requiring the district courts to determine how many issues are in the case, how important each of them is, and how seriously any of them was disputed is a sure recipe for major litigation on the issue of prevailing party status."  Cities Br. 35.  But there is no need for judicial line drawing.  If a municipality continues to litigate after an adverse Supreme Court decision, the ultimate outcome of the litigation can determine prevailing party status.  But if the municipality repeals its policies in the immediate wake of a Supreme Court

decision, it takes no great act of judicial inference to determine that the Supreme Court decision prompted the change and resolved the dispositive issue.

The decision in *McDonald* rendered the Second Amendment right to possess a handgun a clearly-established right of plaintiffs which defendants well knew they could no longer violate. *See Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009) ("In ascertaining whether a right is clearly established, this court looks to controlling Supreme Court and 7th Circuit precedent."). The Cities aver: "That issue is governed by a different test from the one used to decide prevailing-party status." Cities Br. 36. But that issue sheds light on whether *McDonald* prompted a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon*, 532 U.S. at 604-605. Municipalities have a legal duty not to violate constitutional rights, and they are well informed of the existence thereof when, as here, the rights are clearly established based on the Supreme Court's decision. The Supreme Court basically told Chicago and Oak Park that their ordinances were unconstitutional, which changed the legal relationship of the parties and prompted the repeals.

The Cities simply ignore the elephant in the room – *McDonald* clearly and decisively resolved the only issue in this case. This is not a question of "whether plaintiffs' claims had merit or our [defendants'] defense did not have merit," Cities Br. 42, for the Supreme Court resolved the only claim and the only defense. That being so, the ruling did not leave open such issues as "whether the plaintiff had a

14

more-than-nonfrivolous claim, whether a court ruling leaves any remaining defenses, and if so how strong those defenses are." *Id.*

Indeed, this Court's holding in *Palmetto Properties, Inc. v. County of DuPage*, 375 F.3d 542 (7th Cir. 2004), provides the best guidance of how to resolve the present case. In *Palmetto*, the district court granted partial summary judgment to the plaintiff, finding portions of a city ordinance to be unconstitutional. The defendant, after presumably deciding that its appellate case was weak, "assured the district court and [the plaintiff] that it would repeal" its "offending provision." *Id.* at 549. The case was continued, the defendant repealed its ordinance, and the case then was dismissed as moot. The defendant subsequently argued that plaintiff was not entitled to attorney's fees because the partial summary judgment motion never became either final or enforceable before the case was dismissed as moot.

This Court disagreed, holding:

> It would defy reason and contradict the definition of "prevailing party" under *Buckhannon* and our subsequent precedent to hold that simply because the district court abstained from entering a final order formally closing the case – a result of the Defendant's assertions that it would repeal the challenged portion of the ordinance – Palmetto somehow did not obtain a "judicially sanctioned change" in the parties' legal relationship.

*Id.* at 549-550. This Court's holding turned on the timing of the county's repeal of its ordinance:

In *Buckhannon*, the challenged state law was repealed, thereby mooting the case, before the district court made any substantive rulings. Thus, the *Buckhannon* Court construed the change in the defendants' conduct as voluntary, lacking the necessary judicial imprimatur. In this case, not only did the district court make a substantive determination as to essentially all the constitutional claims save one, the County *repealed the ordinance only after that determination had been made and presumably because of it.* To be sure, the Defendants were free to moot the case before the summary-judgment ruling, in which case the action would have been voluntary. They did not. Hence, their action is most persuasively construed as involuntary-indeed exhibiting judicial imprimatur.

*Id.* at 550 (emphasis added). Likewise, in this case, the Cities were free to moot the case before the Supreme Court heard it on its merits. The Cities eschewed that path and put themselves in the same position as the county in *Palmetto*. And, just like the county in *Palmetto*, the Cities in this case must live with their litigation strategy. The Cities, no less than the County in *Palmetto*, is not in the same position as the defendant in *Buckhannon*. The courts do not need to speculate whether there might have been a voluntary change of heart unrelated to any judicial imprimatur. *Palmetto* stands for the proposition that nothing in *Buckhannon* requires a judge to suspend common sense. When an ordinance is repealed in direct response to an adverse judicial decision, the statute is satisfied. NRA is entitled to attorney's fees.

Similarly, in *Southworth* students obtained a court ruling that a university policy on student fees was not viewpoint neutral, and "in response to that ruling, the University altered the mandatory fee system . . . ." *Southworth*, 376 F.3d at 768. The students were prevailing parties because "the University substantially revised its funding system in response to a court ruling . . . ." *Id.* at 771. That is exactly what occurred here as well, and the Cities' discussion of *Southworth* (Cities Br. 18-19), fails to articulate any distinction with this case.

In sum, *McDonald* ruled the ordinances unconstitutional and unenforceable, and Chicago and Oak Park complied with the decision by promptly repealing the ordinances. The Court's definitive ruling on the only issue in this case altered the legal relationship between the parties in a manner such that NRA is a prevailing party.

**C.  There Is No Material Difference Between the Question of Incorporation and the Substantive Question of the Constitutionality of the Handgun Bans.**

The futility and incoherence of the Cities' argument can be seen readily through a simple hypothetical. If *McDonald* involved not the question of incorporation, but rather the substantive question of whether the Cities' handgun bans violated the Second Amendment and the procedural posture were the same (*i.e.*, the district court granted the Cities' motion to dismiss, the Court of Appeals affirmed, the Supreme Court reversed and remanded and, before a mandate issued, the Cities repealed their laws), the Cities could hardly claim that NRA was not a

prevailing party in the case. That would be true even if the Supreme Court decision remanded for the entry of judgment and the repeal occurred before the mandate reached the District Court. In other words, it strains credulity to think that the Cities can litigate a case through to its merits, lose, and then avoid paying attorney's fees by quickly repealing their unconstitutional ordinances. But there is no material difference between that hypothetical and what transpired here.

Nevertheless, the Cities' baseline argument is that "since the Court did not decide plaintiffs' claims that the handgun bans . . . violate the Second Amendment, but only 'remanded for further proceedings,' . . . *McDonald* did not materially alter the legal relationship of the parties." Cities Br. 12. That argument fails because *McDonald* ruled that the Second Amendment applies against the States with the same force that it applies to the federal government, thereby rendering any State or local handgun ban unconstitutional. Accordingly, *McDonald* did indeed materially alter the legal relationship of the parties.

The Cities seek to maintain this position only by assiduously avoiding any reference to *the manner* in which the Court held the Second Amendment to be incorporated. It characterizes as only "the preliminary legal issue" the question of "whether the Second Amendment binds state and local governments." Cities Br. 12. The "substantial victory" for petitioners when *McDonald* "decided the threshold question of Second Amendment incorporation in their favor" was not "a judicial

pronouncement that Chicago and Oak Park violated the Constitution nor any other enforceable judicial relief." *Id.* at 15. But this is a matter of linguistics. The Court's holding that the Second Amendment is incorporated into the Fourteenth Amendment with the same rigorous force that it applies to the United States is effectively a declaration that materially indistinguishable state and local handgun bans are void, in particular those in front of the Supreme Court in *McDonald*.

Given that decision, there was nothing left for the parties to litigate. It is pure fantasy to assert that "when Chicago and Oak Park repealed their handgun bans, they were acting voluntarily and not pursuant to any direction or requirement in any . . . judicial action that changed the legal relationship of the parties in this case." Cities Br. 15.

The Cities correctly state that "the way to determine whether *McDonald* struck down the handgun bans is to read that decision itself." Cities Br. 28. One "must point to something actually in the Supreme Court's decision" in order "to claim prevailing-party status based on the assertion that the Court invalidated the handgun bans . . . ." *Id.* at 27-28. NRA did just that in quoting the specific passages of *McDonald* that did so. NRA Br. 17-18. The Cities fail to refer to any of these, or any other, passages from *McDonald*.

*McDonald* could not be clearer. Recalling that *District of Columbia v. Heller,* 554 U.S. 570 (2008), "held that the Second Amendment protects the right to keep

and bear arms for the purpose of self-defense" and struck down the District's law that "banned the possession of handguns in the home," *McDonald* explained:

> The city of Chicago (City) and the village of Oak Park . . . have laws that are similar to the District of Columbia's, but Chicago and Oak Park argue that their laws are constitutional because the Second Amendment has no application to the States. We have previously held that most of the provisions of the Bill of Rights apply with full force to both the Federal Government and the States. Applying the standard that is well established in our case law, we hold that the Second Amendment right is fully applicable to the States.

*McDonald*, 130 S. Ct. at 3026.

This demonstrates the *inexorable nexus* between full incorporation and the invalidity of handgun bans. The Cities cannot hide from the Supreme Court's characterization of their argument that their handgun bans were "constitutional *because* the Second Amendment has no application to the States," or the Court's statement that the District's handgun ban violated the Second Amendment and that "the Second Amendment right is *fully* applicable to the States." *Id.*

The Cities fully recognized that the issues of incorporation and the handgun ban were inseparable. Noting the Cities' argument against Second Amendment incorporation based on federalism, *McDonald* stated: "Municipal respondents therefore urge us to allow state and local governments to enact . . . a complete ban on the possession of handguns in the home for self-defense." *Id.* at 3046. The Court responded: "Unless we turn back the clock or adopt a special incorporation test

applicable only to the Second Amendment, municipal respondents' argument must be rejected." *Id.* *McDonald* concluded:

> In *Heller,* we held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense. Unless considerations of *stare decisis* counsel otherwise, a provision of the Bill of Rights that protects a right that is fundamental from an American perspective applies equally to the Federal Government and the States. . . . We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller.* The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings.

*Id.* at 3050.

What was "the Second Amendment right recognized in *Heller*"? The opening sentence of *McDonald* states: "Two years ago, in [*Heller*], we held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense, and we struck down a District of Columbia law that banned the possession of handguns in the home." *Id.* at 3026.

The Cities are silent about any of the above, or anything else *McDonald* said, other than the words that "the case is remanded for further proceedings." Cities Br. 12. *McDonald* is incompatible with any reading other than that the ordinances are unconstitutional and unenforceable. Surely the Supreme Court is entitled to rely on the lower courts to understand and implement its clear ruling and to enter appropriate orders on remand without spelling out anything further. It is not

required to express itself in language demanded by a losing litigant to avoid paying attorney's fees to a prevailing party.

The Cities claim that they may have had a further "defense" because *Heller* also involved a trigger-lock requirement for long guns, Cities Br. 40, but *Heller* invalidated that requirement independently of the handgun ban. 554 U.S. at 630. The Cities state that "[w]e had not pressed that defense in the district court, *see* NRA Br. 4," Cities Br. 40, but any such "defense" would have been frivolous. The cited page of the NRA brief in no way suggested that could be a defense and instead said that the ordinances here were "materially indistinguishable from the District of Columbia ordinance struck down in *Heller* . . . ." NRA Br. 4.

The Cities aver that "nothing in *McDonald* precluded us from pursuing other defenses going forward," Cities Br. 40, but *McDonald* had resolved the only issues and the Cities fail to suggest any conceivable defenses. The Cities add: "Nor does it matter, even if true, that Chicago and Oak Park repealed based on a belief that remaining defenses were not strong enough to carry the day. *See* NRA Br. 15." Cities Br. 40-41. To the contrary, "[i]t was the Supreme Court's ruling definitively rejecting the Cities' only legal defense that served as the catalyst for the Cities' capitulation." NRA Br. 15.

The Cities argue that "to the extent that plaintiffs' claim that the handgun bans were unconstitutional depends on *Heller*, Chicago and Oak Park were not

parties to that case." Cities Br. 41. Yet NRA does not rely on *Heller* as an independent decision warranting its prevailing party status in this case.[4] In *fully* incorporating the Second Amendment against the States, *McDonald* embodies *Heller*'s holding that handgun bans are unconstitutional. *McDonald*, 130 S. Ct. at 3026, 3046, 3050.

Assuming that *McDonald* somehow did not incorporate the holding in *Heller*, the Cities continue: "That means repeal was voluntary – even if it was intended to ensure 'compliance with the rulings of the United States Supreme Court,' Chicago City Council, Journal of Proceedings, July 2, 2010, at 96235, it was not pursuant to an enforceable judgment against defendants." Cities Br. 41. But the Chicago City Council saw the repeal as anything but voluntary. It unanimously found that *McDonald* "ruled that the Second Amendment's right to possess a handgun for self-defense in the home also applied to the states . . . ." Journal of Proceedings, *supra*, at 96235. It stated that "it is essential for the City Council of the City of Chicago to promptly pass an ordinance that provides for reasonable regulation of firearms *in*

---

[4]  That would be precluded by *Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 933 (7th Cir. 2003), which repealed its ordinance in an attempt to comply with the Constitution and avoid litigation costs based on a wholly separate Supreme Court decision not involving the parties in that case. Here, the Supreme Court decision in this case rendered the ordinances unconstitutional. *Cf.* Cities Br. 38.

*compliance with the rulings of the United States Supreme Court . . . ." Id.* (emphasis added).[5]

In light of this clear statement of law by the City Council, the Cities' argument that Corporation Counsel and not all members of the Council understood *McDonald* to have held the ordinances unconstitutional is insignificant. Compare NRA Br. 5-8 with Cities Br. 44-45. Given that *McDonald* "ruled that the Second Amendment's right to possess a handgun for self-defense" applied to the states, it cannot be said that the Chicago and Oak Park ordinances continued to be constitutional until a lower court verified that the Supreme Court decision meant what it said.

All of this makes clear that even examining the question on the Cities' own overly formalistic terms, the judgment in *McDonald did* materially alter the relationship between NRA and the Cities. No credible reading of *McDonald* would be consistent with the ordinances being constitutional, and the Cities suggest none. Still the Cities attempt to argue that "plaintiffs did not prevail on any of their

---

[5] The above finding is wholly inconsistent with the *post hoc* litigation argument that "Chicago's and Oak Park's repeals were voluntary precisely because no judgment required that conduct." Cities Br. 9. The ordinances were not arguably constitutional under any plausible reading of *McDonald*. Indeed, as the Cities concede: "Chicago and Oak Park responded to *McDonald* by promptly re-evaluating their firearms ordinances in light of both that decision and *Heller*, which recognized an individual Second Amendment right to keep and bear arms in the home for self-defense purposes, and amended their firearms ordinances to comport with Supreme Court precedent . . . ." Cities Br. 9.

claims," Cities Br. 7, adding: "Despite prevailing in the Supreme Court on a substantive ruling, even one of landmark constitutional significance, plaintiffs did not obtain a material alteration of the legal relationship of the parties." *Id.* at 7-8. Yet that substantive ruling resolved the only issue in the case, thereby materially altering the legal relationship of the parties.

## CONCLUSION

NRA respectfully requests that the Court reverse the judgment of the district court, hold that NRA is a "prevailing party" under 42 U.S.C. § 1988, and remand for a determination of the amount of fees to which NRA is entitled.

Dated: May 13, 2011

Respectfully submitted,

By:  s/William N. Howard
FREEBORN & PETERS LLP
311 South Wacker Dr., Ste. 3000
Chicago, Illinois 60606
Telephone: (312) 360-6415
Facsimile:  (312) 360-6996
*Counsel for NRA, et al*
*NRA, et al. v. Village of Oak Park*

Stephen P. Halbrook
3925 Chain Bridge Rd., Suite 403
Fairfax, VA   22030
Telephone: (703) 359-0938
Facsimile: (703) 472-6439

*Counsel for Appellants:*
*National Rifle Association of*
*America, Inc., Robert Klein Engler*
*and Dr. Gene A. Reisinger*
*Case No. 10-3965*

By: s/Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd
33 North Dearborn St., Suite 300
Chicago, IL 60602
Telephone: (312) 781-1970
Facsimile: (312) 781-9202
*Counsel for NRA, et al.*
*NRA, et al. v. City of Chicago*

Stephen P. Halbrook
3925 Chain Bridge Rd., Suite 403
Fairfax, VA   22030
Telephone: (703) 359-0938
Facsimile: (703) 472-6439

*Counsel for Appellants:*
*National Rifle Association of America,*
*Inc., Kathryn Tyler, Van F. Welton, and*
*Brett Benson*
*Case No. 10-3957*

## <u>Certificate Of Compliance With Fed. R. App. P. 32(A)(7)</u>

The undersigned hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as it contains **6,382** words, excluding the portions of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6), as qualified by Circuit Rule 32(b), as it has been prepared in a 12-point proportionately spaced typeface, Century, in the body and 11-point proportionately spaced typeface, Century, in the footnotes, by using Microsoft Word 2003.

Dated: May 13, 2011

By:  s/William N. Howard
    William N. Howard
    FREEBORN & PETERS LLP
    311 South Wacker Drive, Suite 3000
    Chicago, Illinois 60606
    Telephone: (312) 360-6415
    Facsimile:  (312) 360-6996
    *Counsel for NRA, et al.*
    *NRA, et al. v. Village of Oak Park*


    s/Stephen P. Halbrook
    3925 Chain Bridge Rd., Suite 403
    Fairfax, VA   22030
    Telephone: (703) 359-0938
    Facsimile: (703) 472-6439

    *Counsel for Appellants:*
    *National Rifle Association of*
    *America, Inc.and Dr. Gene A.*
    *Reisinger, Case No. 10-3965*

By: s/Stephen A. Kolodziej
    Stephen A. Kolodziej
    Brenner, Ford, Monroe & Scott, Ltd
    33 North Dearborn Street, Suite 300
    Chicago, IL 60602
    Telephone: (312) 781-1970
    Facsimile: (312) 781-9202
    *Counsel for NRA, et al.*
    *NRA, et al. v. City of Chicago*


    s/Stephen P. Halbrook
    3925 Chain Bridge Rd., Suite 403
    Fairfax, VA   22030
    Telephone: (703) 359-0938
    Facsimile: (703) 472-6439

    *Counsel for Appellants:*
    *National Rifle Association of*
    *America, Inc., Kathryn Tyler, Van F.*
    *Welton, and Brett Benson,*
    *Case No. 10-3957*

## CERTIFICATE OF SERVICE

The undersigned hereby states that he caused the **Reply Brief For Plaintiffs-Appellants National Rifle Association, *et. al.*** to be served upon the parties of record, as shown below, via the Court's CM/ECF filing system on the **13**th day of **May, 2011**.

s/William N. Howard
Freeborn & Peters LLP
311 S. Wacker Dr., Suite 3000
Chicago, IL   60606

### SERVICE LIST

Suzanne M. Loose
City of Chicago Law Department
30 N. LaSalle St., Suite 800
Chicago, IL   60602
***Attys. For City of Chicago.***

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA  22314
***Atty. For McDonald, et al.***

David G. Sigale
Law Firm of Dave G. Sigale, P.C.
739 Roosevelt Rd., Suite 304
Glen Ellyn, IL   60137
***Atty. For McDonald, et al.***

Clark M. Neily III
901 N. Gleve Rd.
Arlington, VA   22203
***Atty. For Institute of Justice***

## CERTIFICATE OF SERVICE

The undersigned hereby states that he caused the **Reply Brief For Plaintiffs-Appellants National Rifle Association,** *et. al.* to be served upon the parties of record, as shown below, by depositing a copy of same, addressed to said parties, in the U.S. Mail, with postage prepaid, on the **13th** day of **May, 2011**.

s/William N. Howard
Freeborn & Peters LLP
311 S. Wacker Dr., Suite 3000
Chicago, IL   60606

## SERVICE LIST

Mara S. Georges
Corporation Counsel
City of Chicago
121 N. LaSalle St., Suite 600
Chicago, IL   60602
*Atty. For City of Chicago*

Stephen P. Halbrook
3925 Chain Bridge Rd., Suite 403
Fairfax, VA   22030
*Atty. For NRA*

Lance C. Malina
Jacob Henry Karaca
Klein, Thorpe & Jenkins, Ltd.
20 N. Wacker Dr., Suite 1660
Chicago, IL   60606-2903
*Attys. For Village of Oak Park*

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn Street, Suite 300
Chicago, IL   60602
*Atty. For NRA, et al.*

Ranjit Hakim
Alexandra E. Shea
Marc R. Kadish
Mayer Brown LLP
71 S. Wacker Dr.
Chicago, IL   60606
*Attys. For Village of Oak Park*

Raymond L. Heise, Esq.
123 Madison Street
Oak Park, IL  60302
*Atty. For Village of Oak Park*

2290552v1