No. 11-1016
(Consolidated with Nos. 10-3957 and 10-3965)

# In the United States Court of Appeals
## for the Seventh Circuit

OTIS MCDONALD, ET AL.,
            Plaintiffs-Appellants,
            v.                          Dist. Ct. No. 08-C-3645
CITY OF CHICAGO,
            Defendant-Appellee.

---

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ET AL.,
            Plaintiffs-Appellants,
            v.                          Dist. Ct. No. 08-C-3696
CITY OF CHICAGO, ET AL.,               Dist. Ct. No. 08-C-3697
            Defendants-Appellees.

Appeal from a Judgment of the United States District Court
for the Northern District of Illinois
The Hon. Milton I. Shadur, Senior District Judge

APPELLANTS' REPLY BRIEF

David G. Sigale*                     Alan Gura
Law Firm of David G. Sigale, P.C.    Gura & Possessky, PLLC
739 Roosevelt Road, Suite 304        101 N. Columbus St., Ste. 405
Glen Ellyn, IL 60137                 Alexandria, VA 22314
630.452.4547/630.596.4445            703.835.9085/703.997.7665
*Counsel of Record

# CORPORATE DISCLOSURE STATEMENT
## Fed. R. App. Proc. 26.1, Circuit Rule 26.1

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

> Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc., Illinois State Rifle Association

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

> Gura & Possessky, PLLC
> Law Firm of David G. Sigale, P.C.

(3) If the party or amicus is a corporation:

> i) Identify all its parent corporations, if any; and
>
> None.
>
> ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:
>
> None.

/s/ David G. Sigale
David G. Sigale

# TABLE OF CONTENTS

Disclosure Statement. .................................................................. i

Table of Contents. ...................................................................... ii

Table of Authorities. .................................................................. iii

Summary of Argument. ............................................................... 1

Argument. ................................................................................ 6

I.    The Supreme Court's Ruling In This Case Altered the Legal
      Landscape Between the Parties, with the Result that the
      *McDonald* Plaintiffs Prevailed in the Litigation. ............................ 6

II.   Defendants' Concession That *McDonald* Plaintiffs
      "Prevailed" for Cost Purposes Is Definitive. ................................. 14

III.  Defendants' Repeal of Their Handgun Bans Following the
      Supreme Court's Decision Was Not Voluntary, But Was the
      Defendants' Only Option. ...................................................... 15

Conclusion. .............................................................................. 18

# TABLE OF AUTHORITIES

Cases

*Buckhannon Board & Care Home, Inc.* v. *West Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001).................. passim

*District of Columbia* v. *Heller*,
554 U.S. 570 (2008) ......................................................... 5

*Dupuy* v. *Samuels*,
423 F.3d 714 (7th Cir. 2005)......................................... 12

*Farrar* v. *Hobby*,
506 U.S. 103 (1992)....................................................... 11

*Federation of Advertising Industry Representatives, Inc.* v. *City of Chicago*, 326 F.3d 924 (7th Cir. 2003). ........................... 10

*Greater New Orleans Broad. Ass'n* v. *United States*,
527 U.S. 173 (1999) ...................................................... 10

*Hewitt* v. *Helms*,
482 U.S. 755 (1987)....................................................... 12

*Lorillard Tobacco Company* v. *Reilly*,
533 U.S. 525 (2001)....................................................... 10

*Palmetto Props., Inc.* v. *County of DuPage*,
375 F.3d 542 (7th Cir. 2004) .................................... 8, 10

*Petersen v. Gibson*,
372 F.3d 862 (7th Cir. 2004) ....................................... 13

*Rhodes v. Stewart*,
488 U.S. 1(1988). .......................................................... 13

iii

*Riviera Distributors, Inc.* v. *Jones*,
    517 F.3d 926 (7th Cir. 2008) .................................................. 3, 14

*Sole* v. *Wyner*,
    551 U.S. 74 (2007) . ...................................................... 6, 13

*Southworth* v. *Board of Regents*,
    376 F.3d 757 (7th Cir. 2004)............................................... 8, 9

*Young v. City of Chicago*,
    202 F.3d 1000 (7th Cir. 2000)............................................. 17

*Zessar* v. *Keith*,
    536 F.3d 788 (7th Cir. 2008)............................................. 9, 10

Statutes and Rules

28 U.S.C. § 1927 ...................................................... 4

42 U.S.C. § 1988.............................................................. passim

Fed. R. Civ. Proc. 11. ................................................ 4

Fed. R. Civ. Proc. 54. ................................................ 14

APPELLANTS' REPLY BRIEF

SUMMARY OF ARGUMENT

Appellee-Defendants' brief provides a study in self-contradiction. Depending upon an unprecedented and untenable elevation of form over the plain statutory substance of 42 U.S.C. § 1988, Defendants are forced to concede that:

- *McDonald* Plaintiffs "won a substantial victory when the Supreme Court decided . . . in their favor," Appellees' Br. 15;

- "There was an important—landmark, even—constitutional ruling by the Supreme Court . . . ." Appellees' Br. 35;

- "The Court's resolution of that question in *McDonald*'s favor was unquestionably a significant decision—both for its far-reaching impact on Second Amendment jurisprudence generally, *as well as for this case* . . ." Appellees' Br. 12 (emphasis added);

- "[T]here is no uncertainty, we fully agree that plaintiffs prevailed in the Supreme Court," Appellees' Br. 23;

- "Again, we agree *McDonald* prevailed in the Supreme Court, and that is why the Court awarded costs," Appellees' Br. 24;

- "To be sure, '[t]he Supreme Court's decision . . . was a judicial ruling,'" Appellees' Br. 30;
- "We fully acknowledge that *McDonald*'s impact is broad . . ." Appellees' Br. 32-33.

Indeed, Defendants go so far as to suggest that *McDonald* Plaintiffs obtained "a change in the legal landscape." Appellees' Br. 8.

These statements would indicate awareness that *McDonald* Plaintiffs won a resounding legal victory at the Supreme Court. But incredibly, Defendants offer that "while *McDonald* clearly altered the way in which Second Amendment law would apply to plaintiffs and everyone else in the country, it did not change the legal relationship between plaintiffs and defendants in these cases." Appellees' Br. 33. "Despite prevailing in the Supreme Court on a substantive ruling, even one of landmark constitutional significance, plaintiffs did not obtain a material alteration of the legal relationship of the parties." *Id.* at 7-8.

The notion that a "substantial victory" by parties who "prevail" in the Supreme Court—an "unquestionably significant" decision having "broad" and "far reaching impact," of "landmark constitutional significance," a "judicial ruling" that effects "a change in the legal

landscape," and that is "unquestionably . . . significant . . . for its far-reaching impact . . . for this case,"—somehow does not effectuate a "material alteration of the legal relationship of the parties" is, on its face, frivolous.

Also frivolous is Defendants' position that the word "prevail" means different things with respect to costs than it does with respect to attorney fees. *McDonald* Plaintiffs have cited to no fewer than *seven* circuits that reject such a distinction, Appellants' Br. 27-28, and one opinion strongly suggests this Court would be an eighth. *Id.* (citing *Riviera Distributors, Inc.* v. *Jones*, 517 F.3d 926, 928 (7th Cir. 2008) (awarding attorney fees in copyright litigation to party that obtained costs, as "[o]nly the prevailing party is entitled to costs.").

Defendants' brief is all but silent with respect to this argument. Beyond an unrelated citation to *Riviera*, it does not even address any of the numerous relevant cases. Defendants offer only that "prevailing" in one phase of the litigation does not mean "prevailing" in the entire litigation, a debatable distinction that finds no support in the text of Section 1988, and which has been rejected by precedent.

And of course, Defendants' position that they could have maintained their handgun bans in the face of the Supreme Court's decision is also frivolous. Any argument that Defendants' handgun bans could be maintained, following the Supreme Court's explicit instructions that the Second Amendment "fully applies" to Defendants, and that they are not entitled to claim that their allegedly unique circumstances permit their experimentation with handgun bans, would have violated Fed. R. Civ. Proc. 11(b)(1) and (2), and 28 U.S.C. § 1927.

Had Chicago persisted in its arguments that the handgun ban was enforceable, Corporation Counsel Georges' testimony that the handgun ban was "unenforceable," App. 108, "impossible to defend," App. 129, and "will not withstand the *McDonald* decision," *id.*, would have been Exhibit A in motions seeking sanctions for vexatiously and frivolously multiplying the proceedings. An attorney *may not* testify before the City Council that its ordinance is "impossible to defend" and "will not withstand" last week's Supreme Court decision addressing its constitutionality, then return before this or any other court and claim the opposite. Chicago's counsel do not seriously believe that the city could re-enact its handgun ban tomorrow.

Indeed, notably absent from Chicago's claim that its handgun ban differed in some material way from Washington, D.C.'s ban struck down in *District of Columbia* v. *Heller*, 554 U.S. 570 (2008) is any identification of such a difference. That is because there *is* no difference between the two bans. Chicago, like Washington, banned handguns by (1) mandating the registration of all firearms and (2) declaring handguns non-registerable. The Supreme Court held the Second Amendment fully applicable to Chicago, and rejected Chicago's arguments, *offered in defense of its handgun ban*, as to why it should be treated any differently.

Chicago's arguments are no less frivolous because they are asserted in an effort to escape liability for violating the people's constitutional rights, than they would have been if asserted on behalf of maintaining those constitutional violations. It defies credulity to claim that the handgun bans were repealed "voluntarily," as though from a sudden spirit of generosity toward Plaintiffs, or because City officials came to doubt their beliefs about the role handguns play in our society.

As Defendants concede, they sought "to ensure compliance with the rulings of the United States Supreme Court." Appellees' Br. 41

(citation omitted). Not compliance with some rule of law announced in some other cases involving similar facts among different parties that might inform a different view of their laws—but compliance in a case *they* lost concerning the very provisions at issue. Compliance with the Supreme Court is not "voluntary"—it is expected.

The Supreme Court would doubtless take a very dim view of the claim that its opinion in this case was merely advisory, and did not effect a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.'" *Sole* v. *Wyner*, 551 U.S. 74, 82 (2007) (citation omitted). Established law firmly rejects that view.

## ARGUMENT

I.  THE SUPREME COURT'S RULING IN THIS CASE ALTERED THE LEGAL LANDSCAPE BETWEEN THE PARTIES, WITH THE RESULT THAT THE MCDONALD PLAINTIFFS PREVAILED IN THE LITIGATION.

Defendants primarily argue that the Supreme Court's decision in this case does not count as a "judicial ruling" for Section 1988 purposes. This is a gross distortion of the meaning and impact of the *McDonald* decision, which did not just secure to all Americans the right to enforce

Second Amendment violations against States and municipalities in the abstract, but which also stated in language Defendants clearly understood that their handgun ban was unconstitutional.

Though Defendants argue there is a difference between "succeeding" and "prevailing" for Section 1988 purposes, the facts, law and history of this case show that the *McDonald* Plaintiffs did both. Prior to the Supreme Court's landmark ruling in this case, Defendants argued the Plaintiffs (or any other of their citizens) could not assert Second Amendment rights against them. This was based on outdated precedent, but it was Defendants' legal basis for defending their handgun bans, and they continued to advance that argument all the way to the Supreme Court. Following the Supreme Court's history-changing decision that the Second Amendment applied to local and state governments through the Fourteenth Amendment, and that handgun bans like those in *Heller* were unconstitutional in the states, the prior legal relationship between the parties no longer exists. Instead, a new relationship was forged: Plaintiffs have enforceable Second Amendment rights against Defendants, and Defendants may not take any actions that violate those rights.

Defendants claim the Supreme Court's ruling "put plaintiffs in the position they occupied before the district court granted judgment on the pleadings. . . ." Appellees' Br. 17. This is not true. The Supreme Court's decision sent Plaintiffs back to the lower Courts with constitutional rights they could not enforce prior to the decision. The *status quo* was forever altered as of that date. This is exactly what is contemplated in *Buckhannon Board & Care Home, Inc.* v. *West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001).

Defendants falsely claim there is nothing in the Supreme Court decision that invalidates the ordinances. However, the Supreme Court flatly rejected Defendants' argument that, notwithstanding a ruling applying the Second Amendment to Defendants, they would be nonetheless allowed to maintain handgun bans. App. 21.

As noted in Appellants' brief, this case mirrors both *Palmetto Props., Inc.* v. *County of DuPage*, 375 F.3d 542 (7th Cir. 2004), where the defendant government rushed to repeal a zoning provision prior to entry of final judgment, and *Southworth* v. *Board of Regents*, 376 F.3d 757 (7th Cir. 2004), where "the Students obtained a court ruling in the

district court that the mandatory fee system violated the principle of viewpoint neutrality, and in response to the district court's order, the University adopted the detailed procedures, criteria, and appeals process governing funding decisions." *Id.* at 768. Here, *McDonald* Plaintiffs obtained a Supreme Court ruling that they enjoyed Second Amendment rights that were enforceable against the Defendants, and that Defendants' handgun bans violated the Second Amendment. In response to this clear and unambiguous ruling, Defendants repealed their handgun bans.

The cases upon which Defendants rely are distinguishable and inapplicable, but they nonetheless supply useful contrast. In *Zessar* v. *Keith*, 536 F.3d 788 (7th Cir. 2008), the plaintiff successfully challenged absentee ballot sections of the Election Code, but there was no final order. *Zessar* held the rulings of unconstitutionality were moot because the defendant's amendment to the Election Code section at issue came first. Here, the Defendants' handgun bans were only repealed *after* the Supreme Court ruled it unconstitutional. *Zessar* held that "the judicial act must bring about "a corresponding alteration in the legal relationship of the parties." *Id.* at 796.

9

That is exactly what happened in this case, which mirrors exactly the situation in *Palmetto Properties*. The *Zessar* Court noted that "[c]ases will sometimes arise where, despite there being no final judgment or consent decree, the legal relationship of the parties will be changed due to a defendant's change in conduct brought about by *a judicial act exhibiting sufficient finality*." *Id.* at 798 (emphasis added). The facts of *Zessar* did not fit the criteria, while those of *Palmetto Properties* did. *Id.* This case fits the criteria, and belies Defendants' argument that only an enforceable judgment will suffice. Defendants could have repealed their ordinances at any time prior to the Supreme Court's ruling, but made the deliberate decision not to do so. After the Supreme Court's ruling, they had no choice.

In *Federation of Advertising Industry Representatives, Inc.* v. *City of Chicago*, 326 F.3d 924 (7th Cir. 2003), the defendant amended the subject advertising ordinance on two occasions, when unrelated and coincidental Supreme Court cases, *Greater New Orleans Broad. Ass'n* v. *United States*, 527 U.S. 173 (1999) and *Lorillard Tobacco Company* v. *Reilly*, 533 U.S. 525 (2001), appeared to have an unfavorable impact on the ordinance in question. It could have credibly claimed that it would

have repealed the ordinances in the absence of the *Federation* litigation, simply owing to the developments in *New Orleans* and *Lorillard*.

That was obviously not the situation here. Defendants did not come to believe their ordinances were unlawful after learning of developments in distant cases. Defendants were not disinterested bystanders in *McDonald*. They, and their ordinances, stood before the Supreme Court, and *lost, directly*. The Supreme Court's *McDonald* opinion applied, without question, to Defendants and to the very ordinances at issue here.

The pre-*Buckhannon* case of *Farrar* v. *Hobby*, 506 U.S. 103 (1992), involved a civil rights plaintiff who asked for $17 million dollars and received $1.00.  The Court held that was too insignificant a victory for the award of fees.  *Id*. at 114.  However, the Court held that "a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff," *id*. at 111-12, and that "a plaintiff who wins nominal damages is a prevailing party under § 1988." *Id*. at 112.

*McDonald* Plaintiffs won a lot more than nominal damages—they

won security of a fundamental civil right, and the ruling that forced the Defendants to repeal their unconstitutional ordinances. To the extent *Farrar* still applies in a post-*Buckhannon* analysis for the definition of "prevailing party," Plaintiffs fit squarely within.

Defendants' reliance upon *Hewitt v. Helms*, 482 U.S. 755 (1987), another pre-*Buckhannon* case, is especially distinguishable. In *Helms*, plaintiff won nothing but an interlocutory order reversing the dismissal of his complaint for failure to state a claim, but the *Helms* defendants won summary judgment, which was affirmed on appeal. *Helms* held only that "a favorable judicial statement of law in the course of litigation that results in judgment against the plaintiff does not suffice to render him a 'prevailing party.'" *Helms*, 482 U.S. at 763. Defendants are hardly in the position of having won summary judgment, a position in stark contrast to their standing on the losing side of a landmark Supreme Court decision.

In *Dupuy* v. *Samuels*, 423 F.3d 714 (7th Cir. 2005), an award of interim Section 1988 fees was reversed because ". . . the court stopped significantly short of deciding definitively any aspect of the case." *Id.* at 722. The Supreme Court ruled on the major legal issue of this case, and

declared handgun bans by the cities and states are unconstitutional. On these points, Plaintiffs received everything they asked for. This case is nothing like *Dupuy*.

Defendants cite *Sole v. Wyner*, *supra*, 551 U.S. 74, for the proposition that a preliminary injunction does not entitle a Plaintiff to Section 1988 fees where the plaintiff ultimately loses her case on the merits. Given that Plaintiffs prevailed in the Supreme Court (*See* Appellees' Br. 23 ("At the outset, so there is no uncertainty, we fully agree that plaintiffs prevailed in the Supreme Court")), *Sole* is inapplicable. Plaintiffs did not ultimately lose.

Finally, *Petersen v. Gibson*, 372 F.3d 862 (7th Cir. 2004) is inapposite. In *Petersen*, the plaintiff sued the police for alleged civil rights violations, but was not awarded any money damages. In that circumstance, the jury's finding that plaintiff's civil rights were violated did not count as a legal victory for Section 1988 purposes, since plaintiff in essence received nothing, and received no "judicial relief." *Id.* at 865 (citing *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988)). Unlike *Petersen*, where the plaintiff obtained a declaratory judgment but no real relief, Plaintiffs obtained the legal ruling that altered not only the litigation,

but also the legal relationship between the parties.  In *Petersen*, the plaintiff was suing for money and did not get what she wanted; here Plaintiffs received exactly what they wanted, thanks to the Supreme Court.

II.  DEFENDANTS' CONCESSION THAT *McDONALD* PLAINTIFFS "PREVAILED" FOR COST PURPOSES IS DEFINITIVE.

It bears repeating that apparently every one of the eight circuit courts of appeal that has considered the issue—including this one—has held or at least very strongly suggested that "prevailing" for purposes of costs means the same thing as "prevailing" for purposes of attorney fees. Appellants' Br. 27-28.

This Court, applying *Buckhannon*, formally equated the words "prevailing" under the Copyright Act's fee-shifting provisions with "prevailing" as a pre-requisite for costs under Fed. R. Civ. Proc. 54(d). *Riviera Distributors*, 517 F.3d at 928. Defendants' only answer to this argument is that *McDonald* Plaintiffs did not obtain costs under Rule 54, so even if *McDonald* Plaintiffs "prevailed" under one rule, they did not under another.

This argument completely misses the point. *McDonald* plaintiffs

"prevailed" in the Supreme Court under a discretionary cost-shifting rule. The word "prevailing" must have the same meaning under all analogous provisions, as *Riviera* and the seven other circuit opinions demonstrate.

Moreover, nothing in Section 1988 limits the concept of "prevailing" to the District Court. It is silly to suggest that Congress would have only allowed a recovery to litigants who "prevail" in District Courts, but *not* to litigants who "prevail" in the Supreme Court. Indeed, following Defendants' logic, the only determining factor for fee awards is success before the District Court—even if Plaintiffs prevail on appeal, or, as in this case, in a landmark Supreme Court decision—notwithstanding that victories tend to be of greater importance, and more effectively serve the purposes of Section 1988, the higher up the court hierarchy they are won.

## III. DEFENDANTS' REPEAL OF THEIR HANDGUN BANS FOLLOWING THE SUPREME COURT'S DECISION WAS NOT VOLUNTARY, BUT WAS THE DEFENDANTS' ONLY OPTION.

When viewed in this proper legal context, not only is there an altered relationship against the parties, but Defendants' response to the Supreme Court's ruling was anything but voluntary. Instead, the

handgun bans' demise was a *fait accompli*.  The only question was whether Defendants would wait for additional confirmatory formality upon remand, or whether they would attempt to circumvent their inevitable liability by rushing to repeal first. Though Defendants chose the latter option, it was only because of the Supreme Court's ruling. Had Defendants possessed any remaining legal arguments, they would have doubtless advanced them instead.

Defendants argue that Plaintiffs are asking the Court to implement some unworkable sliding scale of voluntariness, but Plaintiffs are seeking nothing of the sort.  Nor are they asking the Court to carve out a new definition of "voluntary," which seems to be more the point of Defendants' brief.  Rather, Plaintiffs ask this Court to recognize that there was nothing voluntary about Defendants' actions. In light of the Supreme Court's decision, the handgun ban was unenforceable.  The only question was whether Defendants, after seeing "the handwriting on the wall," Appellees' Br. 45, would repeal the law themselves, or wait a few days for this Court to force them. Either way, the result is the same under *Buckhannon*, especially in light of this Court's precedent.

In *Young v. City of Chicago*, 202 F.3d 1000 (7th Cir. 2000), the defendant waited until a political convention was over to appeal the preliminary injunction obtained by would-be protestors at the convention. When the appeal was mooted because the convention was over, the defendant argued there was no final judgment and therefore the plaintiffs should not receive fees under Section 1988. This Court rejected that argument, holding that "[a] defendant cannot defeat a plaintiff's right to attorneys' fees by taking steps to moot the case after the plaintiff has obtained the relief he sought, for in such a case mootness does not alter a plaintiff's status as a prevailing party." *Id.* at 1000-01. Though Defendants try to twist the effect of the Supreme Court's ruling in this case, there is no question the Plaintiffs obtained the relief they sought, and changed the law in their favor in the process.

Defendants' representatives freely admitted that the repeal of the handgun bans was a forced response to a legal ruling that changed the landscape of constitutional law, and which left Defendants no other choice. Defendant Chicago's representatives, including City Councilpersons, the Mayor and Corporation Counsel, said this to each other, including in public meetings. *See* Appellants' Br. 13-15.

The only entity before which Defendant Chicago refuses to acknowledge its loss is the Court, because it knows that doing so is a concession of Section 1988 liability. Defendant argues that such statements do not matter, and that it does not matter what it believed, but such admissions reveal the involuntary nature of Defendant's post-Supreme Court actions. And of course, regardless of what Defendants' officers and attorneys have said in other fora, the fact remains that they offer no theory, let alone a plausible one, to explain exactly how it is that Chicago can still ban Otis McDonald's possession of a handgun.

## CONCLUSION

Arguably the most difficult statement in Defendants' brief is their claim that their actions should be "encouraged," and that it is the Plaintiffs who are somehow responsible for a "second major litigation." Appellees' Br. 9. Let there be no mistake: sole responsibility for the entirety of this litigation lies with Defendants for having enacted and enforced unconstitutional laws. And given Defendants' numerous statements about the profound scope of *McDonald* Plaintiffs' Supreme Court victory, *McDonald* Plaintiffs can hardly be faulted for believing that they indeed prevailed in some meaningful way.

Moreover, whatever flaws might be inherent in *Buckhannon* with respect to true catalyst-type cases, *Buckhannon* represents an attempt to effectuate, not defeat, the language of Section 1988 where a court has unambiguously provided a civil rights plaintiff with a victory. The *Buckhannon* court most certainly did not approve of evasive tactics such as practiced here by Defendants. It believed that such evasion would not occur.

*Buckhannon* did not lay out a limited set of formalistic documents, beyond which nothing could be declared a compensable victory. It merely stands for the proposition that changes in the legal relationship among parties must be judicially-sanctioned before they can be said to trigger Section 1988. Again, to borrow from Defendants' brief, a "substantial victory" by parties who "prevail" in the Supreme Court—an "unquestionably significant" decision having "broad" and "far reaching impact," of "landmark constitutional significance," a "judicial ruling" that effects "a change in the legal landscape," and that is "unquestionably . . . significant . . . for its far-reaching impact . . . for this case," fully satisfies the requirements of Section 1988 as they are understood today by the Supreme Court.

The denial of Plaintiffs' Motion for Section 1988 fees below must

be reversed, and the case remanded with instructions that the

*McDonald* Plaintiffs are prevailing parties in this litigation, and that

the *McDonald* Plaintiffs must be granted leave to be heard on their

Section 1988 motion for attorneys' fees and expenses.

Dated: May 13, 2011   Respectfully submitted,

Alan Gura       David G. Sigale
Gura & Possessky, PLLC  Law Firm of David G. Sigale, P.C.
101 N. Columbus St., Ste. 405 739 Roosevelt Road, Suite 304
Alexandria, VA 22314   Glen Ellyn, IL 60137
703.835.9085/703.997.7665 630.452.4547/630.596.4445

By: /s/ David G. Sigale
   David G. Sigale

   Attorneys for Plaintiffs-Appellants
   Otis McDonald, Adam Orlov, Colleen
   Lawson, David Lawson, Second
   Amendment Foundation, Inc., and
   Illinois State Rifle Ass'n

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,602 words, excluding the parts of the brief excluded by Fed. R. App. P. 3 2(a) (7) (B) (iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using WordPerfect X4 in 14 point Century Schoolbook font.


/s/ Alan Gura
_____
Alan Gura
Attorney for Plaintiffs-Appellants
Dated: May 13, 2011

# CERTIFICATE OF SERVICE

On this, the 13th day of May, 2011, I caused to be served on all counsel in this matter an electronic copy of the foregoing brief by use of the Court's CM/ECF facilities.

    Accordingly the following counsel should be receiving electronic service of the brief:

Suzanne M. Loose
City of Chicago Department of Law
Appeals Division
30 North LaSalle Street, Suite 800
Chicago, IL 60602

Alexandra Shea
Mayer Brown, LLP
7 South Wacker Drive
Chicago, IL 60606

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd.
300 South Dearborn Street, Suite 300
Chicago, IL 60602

William N. Howard
Freeborn & Peters
311 S. Wacker Drive Ste 3000
Chicago, IL 60602

Stephen P. Halbrook
3925 Chain Bridge Road, Suite 403
Fairfax, Virginia 22030

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed this the 13th day of May, 2011.


/s/ David G. Sigale
David G. Sigale